IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE 1 and JOSEPH SHEER, individually and behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>SWIFT TRANSPORTATION CO., INC. and INTERSTATE EQUIPMENT LEASING, INC.,<br><br>Defendants. |  |

**COLLECTIVE & CLASS ACTION COMPLAINT**

1. This case is brought to remedy the failure of Defendants to pay Plaintiffs and Class Members all the wages required by federal and state wage and hour laws, including the Fair Labor Standards Act (FLSA), 29 U.S.C. §201 et seq. and state statutes prohibiting deductions from employee pay due for the tools of the trade.

2. Defendant SWIFT TRANSPORTATION CO., INC. ("SWIFT") and INTERSTATE EQUIPMENT LEASING, INC. ("IEL") are owned and operated by the same individuals for a common business purpose – moving freight interstate for customers of SWIFT at the lowest cost possible.

3. Defendants jointly control the Plaintiffs' work and by law employ the Plaintiffs to transport goods by truck for Swift's customers. Defendants control when, where, and how Plaintiffs deliver freight. They control the route truckers use. They control virtually every aspect of the way truckers perform their work. They control the equipment the truckers are to use, its maintenance, and condition. Everything about Plaintiffs' work is controlled by Defendants.

4. Even though Defendants employ Plaintiffs, Defendants treat Plaintiffs as

independent contractors and charge them tens of thousands of dollars per year for the lease of Defendants' trucks, for gas, tolls, insurance, bonding, accounting, repair and maintenance. Defendants also exact a financial profit for accounting transactions with the trucker employees. Defendants even charge the Plaintiffs an accounting fee to issue the paycheck upon which they pay Plaintiffs.

5. SWIFT reserves the right to terminate its contract with the employees at any time. However, in the contracts with the Plaintiffs, IEL and SWIFT define SWIFT's termination of the contract as a "default" by the Plaintiffs, which by contract then enables Defendants to then treat all remaining lease payments and lost profits as immediately due and owing.

6. The independent contractor agreement is an illegal contract by which Defendants together force truckers to work only for SWIFT for a lengthy period of years (though Defendants may fire them at any time). The Defendants' form contracts shift the business risks of the economic downturn to employees, makes the employees cover SWIFT's costs for fleet inventory, insurance, tolls, taxes, and equipment, and makes the employees pay various fees to SWIFT that enable SWIFT to exact further profit from employees who cannot leave their contracts without crushing financial consequences.

7. Plaintiffs seek unpaid wages, liquidated damages, interest, costs and attorneys' fees as well as declaratory relief under the FLSA and state wage laws. Plaintiffs bring this claim individually and on behalf of other similarly situated employees under the collective action provisions of the FLSA. 29 U.S.C. § 216(b).

8. By the conduct described in this Class Action Complaint, Defendants have also violated the wage and hour laws of New York and California by failing to pay their employees proper minimum wages, and making unlawful deductions from the Plaintiffs' wages. These violations arose out of Defendants' company-wide policies, and a pattern and practice of violating wage and hour laws.

**JURISDICTION**

9. Jurisdiction is conferred upon this Court by 29 U.S.C. §216(b) of the Fair Labor Standards Act, by 28 U.S.C. §1331, this action arising under laws of the United States, and by 28 U.S.C. §1337, this action arising under Acts of Congress regulating commerce. Jurisdiction over Plaintiffs' claims for declaratory relief is conferred by 28 U.S.C. §§2201 and 2202.

10. This Court has supplemental jurisdiction over the state claim raised by virtue of 28 U.S.C. § 1367(a).

**VENUE**

11. Jurisdiction is conferred upon this Court by 29 U.S.C. §216(b) of the Fair Labor Standards Act ("FLSA"), by 28 U.S.C. §1331, this action arising under laws of the United States, and by 28 U.S.C. §1337, this action arising under Acts of Congress regulating commerce. Jurisdiction over Plaintiffs' claims for declaratory relief is conferred by 28 U.S.C. §§2201 and 2202.

12. This Court also has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.

13. The amount in controversy in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs.

14. At least one member of the proposed class is a citizen of a state different from

that of at least one Defendant.

15. Plaintiffs' claims involve matters of national or interstate interest.

16. Citizenship of the members of the proposed class is dispersed among at least two states: New York and California.

17. Greater than two-thirds of the members of all proposed Plaintiff classes in the aggregate are not citizens of Arizona.

18. At least one Defendant resides in New York.

19. At least one Defendant is subject to personal jurisdiction in New York.

20. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and at least one Defendant resides in this District.

**PARTIES**

**A.    Plaintiffs**

21. Plaintiff JOHN DOE 1 was an employee of Defendants. Plaintiff JOHN DOE 1 worked for Defendants in New York.

22. Plaintiff JOHN DOE 1 brings claims under New York Labor Law Articles 6 and 19 and their implementing regulations, 12 NYCRR §138-2.1, as a class action pursuant to Fed. R. Civ. P. 23 on behalf of a class of all persons employed by Defendants in New York between the period six years preceding the filing of this complaint, and the date of final judgment in this matter.

23. Plaintiff JOHN DOE 1 brings claims under the Fair Labor Standards Act, individually and on behalf of a collective action class of all persons employed by Defendants between the period three years preceding the filing of their

4

consent to sue in this case, and the date of final judgment in this matter.

24. Plaintiff SHEER was an employee of Defendant. Plaintiff SHEER worked for Defendants in California.

25. Plaintiff SHEER brings claims under Cal. Labor Code §§221, 450et seq., 1182.12, 1194, 2802 & IWC Wage Order 9-2001, Business and Corporations Code §§17203 & 17208 and implementing regulations as a class action pursuant to Fed. R. Civ. P. 23 on behalf of a class of all persons employed by Defendants in California between the period four years preceding the filing of this complaint, and the date of final judgment in this matter.

26. Plaintiffs bring claims under the Fair Labor Standards Act, individually and on behalf of a collective action class of all persons employed by Defendants between the period three years preceding the filing of their consent to sue in this case, and the date of final judgment in this matter.

27. Plaintiffs were engaged in commerce in their work for Defendants.

**B.  Represented Parties under FLSA**

28. The term "Plaintiff" or "Plaintiffs" as used in this Complaint refers to the named Plaintiffs and any additional represented Class Members pursuant to the collective action provision of 29U.S.C. §216(b).

29. The named Plaintiffs represent all truckers who lease a truck from IEL to drive for SWIFT.

30. The named Plaintiffs bring this case under the collective action provision of the FLSA as set forth in 29 U.S.C. §216(b) on behalf of themselves and a class of persons throughout the U.S. consisting of "all truckers who lease a truck from IEL to drive for SWIFT within the last three years for any Defendant."

5

C.  **Class Action Allegations**

31. Plaintiff JOHN DOE 1 brings the First and Second Causes of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of persons consisting of "all truckers employed by any Defendant in the last six years in New York who lease a truck from IEL to drive for SWIFT."

32. Plaintiff SHEER brings the First and Third Causes of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of persons consisting of "all truckers employed by any Defendant in the last six years in California who lease a truck from IEL to drive for SWIFT."

33. The term "Plaintiff" or "Plaintiffs" as used in this Complaint refers to the named Plaintiffs and any additional represented Rule 23 Class Members.

34. Excluded from any Rule 23 or Collective Action Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in any Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from any Rule 23 Class.

35. The persons in the Rule 23 Classes identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is not known to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

36. Upon information and belief, the size of the Rule 23 Class is at least 100 workers.

37. Defendants acted or refused to act on grounds generally applicable to the Rule

23 Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

38. The Second and Third Causes of Action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

   a. whether Defendants employed Plaintiffs but treated them as independent contractors;

   b. whether Defendants failed to pay Plaintiffs state statutory minimum wages in each week of work;

   c. whether Defendants made unlawful deductions from Plaintiffs' wages for trucks, other equipment, gas, bonds, insurance, tolls, and other costs and expenses of the employer's business;

   d. the nature and extent of Class-wide injury and the appropriate measure of damages for the Class;

   e. whether Defendants' policy of failing to pay minimum wages was instituted willfully or with reckless disregard of the law;

   f. whether Defendants wrongfully deducted money from the Class' paychecks for impermissible purposes;

   g. whether Defendants deductions from Class Members' paychecks and failure to pay Class Members for all hours worked compensate resulted in minimum wage violations;

   h. whether Defendants' failure to pay wages violates New York and California common law; and

7

      i. whether Defendants' wrongful deductions of money from the Class' paychecks violated New York and California common law.

      j. Whether Defendants violated wage deduction statutes by continuing to demand lease and other payments after they terminated Plaintiffs' employment.

39. The claims of Plaintiffs are typical of the claims of the Class they seek to represent. Plaintiffs and the Class members work or have worked for Defendants and have been subjected to a policy and pattern or practice of failing to pay wages, a pattern or practice of making unlawful deductions from their wages, and a pattern or practice of not paying the minimum wage for all hours worked. Defendants acted and refused to act on grounds generally applicable to the Class, thereby making declaratory relief with respect to the Class appropriate.

40. Plaintiffs will fairly and adequately represent and protect the interests of the Class.

      a. Plaintiffs understand that, as class representatives, they assume a fiduciary responsibility to the Class to represent its interests fairly and adequately.

      b. Plaintiffs recognize that as class representatives, they must represent and consider the interests of the Class just as they would represent and consider their own interests.

      c. Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over those of the Class.

    d.    Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class.

    e.    Plaintiffs understand that in order to provide adequate representation, they must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in their possession, and testify, if required, in a deposition and in trial.

41.    Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

42.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation - particularly in the context of wage litigation like the present action, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate Defendant. The members of the Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

### D. Defendants

43.    Upon information and belief, Defendants are business corporations having an office and place of business in New York and California.

44.    Defendant SWIFT is an Arizona business corporation having an office and place of business in Phoenix. Defendant SWIFT lists its headquarters and

principal office address as 2200 S. 75th Ave., Phoenix, AZ 85043-7410.

45. Defendant IEL is related to SWIFT. It leases trucks to SWIFT employees only. It leases trucks only to truckers who will drive for SWIFT. It requires truckers who sign leases to sign ICOAs with SWIFT.

46. Defendant IEL leases trucks to SWIFT employees for the sole use in helping SWIFT further its shipping business.

47. Upon information and belief, IEL is owned and operated by principal shareholders of SWIFT.

48. Upon information and belief, IEL and SWIFT have interlocking and overlapping officers and directors.

49. Jerry Moyes is the Chief Executive Officer of both SWIFT and IEL.

50. Chad Killebrew is the President of IEL and Executive Vice President of Business Transformation for SWIFT. He also recently served as Vice President of Swift's Owner Operator Division.

51. IEL leases trucks to citizens of New York and California.

52. IEL leases trucks to truckers who are employed by Defendants in New York and California.

53. Trucks leased to Plaintiffs through IEL are registered with the department of motor vehicles to SWIFT.

54. Defendant IEL is an Arizona business corporation having an office and place of business at the same location as SWIFT. Defendant IEL lists its principal office address as 2200 S 75th Ave., Phoenix, AZ 85043 and is registered with the state of Arizona at P.O. Box 29243, Phoenix, AZ 85038.

55. Defendant SWIFT is a motor carrier, engaged in interstate shipment of freight.

56. Defendants conduct business throughout the country.

57. Upon information and belief, Defendants each grossed more than $500,000 in each of the last six calendar years, individually and collectively.

58. Defendants are enterprises engaged in interstate commerce for purposes of the Fair Labor Standards Act.

59. Defendants have common control and a common business purpose and are operated as a single enterprise, within the meaning of 29 U.S.C. 203(r)(1).

60. All actions and omissions described in this complaint were made by Defendants directly or through their supervisory employees and agents.

**FACTS**

61. Plaintiffs and collective action and Rule 23 Class Members are truck drivers.

62. Upon information and belief, IEL and SWIFT are jointly owned and controlled by Jerry Moyes and/or his family members. Defendants' headquarters are at the same address.

63. SWIFT and IEL offered Plaintiffs an integrated series of forms to lease them trucks and purporting to make them independent "owner-operator" "business partners" of SWIFT.

64. Truckers who sign a lease with IEL are obligated to sign an ICOA agreement with SWIFT simultaneously.

65. These contracts exert complete control over the Plaintiffs work and ensure that Plaintiffs cannot independently conduct their work for other companies.

66. Defendant forces Plaintiffs to bear business expenses that Defendants would ordinarily bear as employers. Defendants force Plaintiffs to pay for the truck, the Qualcomm device by which Defendants send instructions to Plaintiffs, liability

11

insurance, (indemnifying SWIFT and IEL), taxes, tolls, gas, and maintenance.

67. Defendants' scheme described herein shifts the costs of maintaining SWIFT's fleet and general business operations to Plaintiffs. It also shifts the risk of trucking business downturn from Defendants to Plaintiffs, since Defendants are not obligated to give Plaintiffs any specific amount of work.

68. The contracts also permit Defendants to exact profits and reimbursements from the Plaintiffs which are not disclosed in the contract.

69. Defendants handle all the taxes, licensure, registration, bonding, insurance, and accounting related to Plaintiffs' trucks, for their own protection, but pass along all these costs (with markup for profit) to the Plaintiffs.

70. Defendants employ the named Plaintiffs and Class members.

71. Defendants control Plaintiffs' work to the extent that they are employees of Defendants.

72. Plaintiffs fulfill the primary business in which SWIFT engages – the transportation of goods.

73. Defendants dispatch Plaintiffs to jobs that it wishes them to perform. Defendants monitor and control the time of Plaintiffs' departure and the time of arrival. Defendants dictate and monitor the route Plaintiffs will travel. Defendants give job instructions by a pre-printed manual with which Plaintiffs are obligated to comply. Defendants give job instructions and monitor compliance by use of the Qualcomm on-board computer system, and by telephone. Defendants monitor Plaintiffs' exact location, speed, control of the truck, route, ETA, and other aspects of job performance by the on-board computerized Qualcomm system.

74. By the terms of the lease, IEL does not lease to truckers who will not drive for

SWIFT.

75. The IEL lease and SWIFT ICOA are part of a package that truckers are required to sign *in toto*.

76. The ICOA terms permit SWIFT to cancel the Plaintiffs' contracts and "fire Plaintiffs" immediately with "cause" or on 10 days notice without cause.

77. The IEL lease permits SWIFT to treat its own termination of Plaintiffs as a "default" by Plaintiffs. Similarly, the IEL lease permits IEL to treat a Plaintiffs' termination of the SWIFT ICOA as a lease "default."

78. When IEL puts a Plaintiff in "default," under the lease it can require the truckers to immediately surrender the truck and still pay all remaining lease payments due on the truck to IEL as well as liquidated damages. IEL engages in this practice.

79. Thus at any time, Defendants are permitted to call the loan in full and take the truck, refusing to permit Plaintiffs to drive for other companies. By this mechanism Plaintiffs become indebted to IEL for many tens of thousands of dollars, with no ability to generate income (from SWIFT or any other company) to pay back the loan.

80. IEL refers this purported indebtedness to bill collectors who hound any Plaintiffs who it puts in default and who cannot pay the exorbitant liquidated damages due Defendants under the contracts.

81. Defendants did this to Plaintiff SHEER.

82. Defendants prohibit Plaintiffs from freely using the truck they lease from Defendants by a variety of means. First, Defendants tell Plaintiffs they cannot drive for third parties. Second, truckers would have to gain SWIFT's approval to remove SWIFT operating authority indicia from the truck and doing so would

13

then be at personal expense. Third, Plaintiffs must request that IEL approve a Plaintiff's request to drive for another company, which approval may not be granted. And IEL will put a Plaintiff in default for driving for another company without permission. Fourth, requesting permission to drive for another company puts a Plaintiff at risk that SWIFT will simply put the trucker in default, thereby requiring Plaintiffs to pay the net aggregate lease balance.

83. Thus, while the ICOA purports to permit Plaintiffs to drive for third parties, Plaintiffs are practically compelled to work only for SWIFT during the lengthy terms of their contract.

84. Plaintiffs' lease agreement calls for them to make weekly repayment of a portion of the total lease term.

85. The lease agreements signed by Plaintiffs require Plaintiffs to pay more than $500 per week for the lease of the Defendants' truck.

86. Defendants set the terms of Plaintiffs' work.

87. Defendants assign shipping work to the Plaintiffs through a Qualcomm system on which SWIFT sets the day and time for pick up and delivery of freight.

88. SWIFT pays Plaintiff and Class members by mileage rates.

89. SWIFT fails to pay wages to the Plaintiffs.

90. Instead, SWIFT calculates the pay for Plaintiffs by a weekly accounting that makes deductions from the mileage pay due to Plaintiffs and Class members, for various expenses, including but not limited to truck lease, gas, insurance, tolls, Qualcomm purchase, Swift and IEL's accounting, and maintenance.

91. Plaintiff DOE began his lease with IEL in 2009 and is still under the period of that lease.

92. Plaintiff SHEER began his lease with Defendants in or about August 7, 2006.

93. Plaintiff SHEER stopped working for Defendants in or about April 7, 2009.

94. Defendants insist that Plaintiffs and Class members use the truck solely for delivering freight for SWIFT.

95. But, Defendants do not guarantee any amount of work to Plaintiffs.

96. In some weeks, the deductions from Plaintiffs and Class Members' pay yield pay rates below federally and or state minimum wage guarantees.

97. Defendants failed to pay Plaintiff and Class members the minimum wage for each hour worked in some weeks.

98. Defendants' treatment of Plaintiffs as independent contractors caused them loss of wages, additional tax burdens, insurance obligations and a variety of other monetary and non-monetary compensable harm.

99. Defendants did not pay Plaintiffs and the Class their wages "free and clear."

100. Defendants also charged Plaintiffs for issuing their pay checks by making deduction from their pay to cover Defendants' accounting and administrative costs as well as to exact additional profit.

101. Defendants' failure to pay Plaintiffs and the Class the proper wages required by law was willful.

102. Defendants' unlawful conduct, as set forth in this Class Action Complaint, has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiffs and the Class.

103. Defendants were aware or should have been aware that the law required them to pay Plaintiffs and the Class members minimum wages for each workweek.

104. Upon information and belief, Defendants applied the same unlawful policies

and practices to employees in every state in which it operated.

105. The lease and ICOA contracts are unlawful and unconscionable, insofar as they a) call for the employment of Plaintiffs but treat them as independent contractors, b) allow SWIFT and IEL to terminate the Plaintiffs' lease and ICOA but to nevertheless require Plaintiffs to continue to make lease payments, c) coerce Plaintiffs to remain as employees for a period of time while hiding that coercion, since a Plaintiff who leaves the employment is obligated to continue to make lease payments even though they no longer have possession of the truck, d) shift Defendants' risk of business downturn to Plaintiffs, e) make Plaintiffs responsible for the costs of carrying and maintaining Defendants' fleet, and f) exact profits and reimbursements from the Plaintiffs.

## FIRST CAUSE OF ACTION
## (FAIR LABOR STANDARDS ACT)

106. Defendants failed to pay minimum wages to Plaintiffs in violation of the Fair Labor Standards Act, 29 U.S.C. §206 et seq. and its implementing regulations.

107. Defendants' failure to pay proper minimum wages for each hour worked per week was willful within the meaning of the FLSA.

108. Defendants' failure to comply with the FLSA minimum wage protections caused Plaintiffs to suffer loss of wages and interest thereon.

## SECOND CAUSE OF ACTION
## (NEW YORK LABOR LAW)

109. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

110. Defendants failed to pay minimum wages and all wages due to Plaintiff JOHN DOE 1 and the Class in violation of New York Labor Law, Articles 6 and 19.

111. Defendants made unlawful deductions from the pay due to Plaintiff JOHN DOE 1 and

Class members in violation of Labor Law 193.

112. Defendants' failure to comply with New York Labor Law caused Plaintiffs to suffer loss of wages and interest thereon.

### THIRD CAUSE OF ACTION
### (CALIFORNIA LABOR CODE)

113. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

114. Defendants failed to pay minimum wages and all wages due to Plaintiff SHEER and the Class in violation of California Labor Law, implementing regulations and associated Wage Orders.

115. Defendants failed to pay Plaintiffs all wages owed under Cal. Lab. Code §§221, 450, 1182.12, 1194,& 2802 & IWC Wage Order 9, as well as California Business & Professions Code §§17203 & 17208.

116. Defendants failed to pay Plaintiffs minimum wages in each week in violation of California Labor Law §§1194 and 1182.12 and IWC Wage Order 9, Sec. 4.

117. Defendants made unlawful deductions from the pay due to Plaintiffs and Class Members in violation of California Labor Law §§221 and 2802 and IWC Wage Order 9, Sec. 9.

118. Defendants coerced or compelled Plaintiffs to patronize defendants or others in the purchase of things of value in violation of California Labor Law §450.

119. Defendants' failure to comply with California law caused Plaintiffs to suffer loss of wages, to bear expenses, and to suffer loss of interest thereon.

**WHEREFORE**, Plaintiffs request that this Court enter an Order:

  1. With respect to the FLSA violations

17

    a. Declaring that Defendants violated the FLSA;

    b. Approving this action as a collective action;

    c. Declaring that Defendants' violations of the FLSA were willful;

    d. Granting judgment to Plaintiffs and represented parties for their claims of unpaid wages as secured by the Fair Labor Standards Act, as well as an equal amount in liquidated damages and interest; and

    e. Awarding Plaintiffs and represented parties their costs and reasonable attorneys' fees.

2. With respect to the Classes:

    a. Certifying this action as a class action;

    b. Designating Plaintiffs as Class Representatives;

    c. Designating the undersigned counsel as Class Counsel;

    d. Entering a declaratory judgment that the practices complained of herein are unlawful under appropriate each respective state law;

    e. Fashioning appropriate equitable and injunctive relief to remedy Defendants' violations of state law, including but not necessarily limited to an order enjoining Defendants from continuing its unlawful practices;

    f. Awarding damages, liquidated damages, appropriate statutory penalties, and restitution to be paid by Defendants according to proof;

    g. Awarding Pre-judgment and Post-Judgment interest, as provided by law;

  h. Granting such other injunctive and equitable relief as the Court may deem just and proper; and

  i. Awarding attorneys' fees and costs of suit, including expert fees, interest, and costs.

Dated: December 21, 2009      Respectfully Submitted,

*[signature: Dan Getman]*

Dan Getman
Carol Richman
Tara Bernstein
Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
phone: (845)255-9370
fax: (845) 255-8649
Email: dgetman@getmansweeney.com

ATTORNEYS FOR PLAINTIFFS