**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **VIRGINIA VAN DUSEN, JOHN DOE 1 and JOSEPH SHEER, individually and on behalf of all other similarly situated persons,**<br><br>                    **Plaintiffs,**<br><br>v.<br><br>**SWIFT TRANSPORTATION CO., INC. and INTERSTATE EQUIPMENT LEASING, INC.,**<br><br>                    **Defendants.** | **1:09-cv-10376 (RMB)(JCF)** |

### FIRST AMENDED COLLECTIVE & CLASS ACTION COMPLAINT

1. Defendant SWIFT TRANSPORTATION CO., INC. ("SWIFT") and INTERSTATE EQUIPMENT LEASING, INC. ("IEL") are privately owned companies, owned and operated by related individuals for a common business purpose, i.e. moving freight interstate for customers of SWIFT. SWIFT is the largest truckload carrier in the United States, with approximate revenues of 3.4 billion dollars in 2008. Defendants jointly operate a scheme to treat SWIFT's employee workforce as independent contractors and to shift SWIFT's business expenses to its drivers.

2. SWIFT and IEL offers the Plaintiff truckers an integrated series of forms to lease Plaintiffs trucks owned by Defendants, and purporting to make Plaintiffs independent "owner-operator" "business partners" of SWIFT. SWIFT and IEL lead Plaintiffs to believe that these form contracts are provided on a "take it or leave it" basis that must be signed at the time they are provided to the Plaintiffs, so that Plaintiffs are prevented from seeking legal advice before

signing.

3.    Defendants jointly control Plaintiffs' work and, by law, employ the Plaintiffs to
transport goods by truck for SWIFT's customers. Defendants control when,
where, and how Plaintiffs deliver freight. They also control the equipment that
Plaintiffs use, including, its operation, maintenance, and condition. Defendants
control virtually every aspect of Plaintffs' performance of SWIFT's work and
the equipment that they use for that work.

4.    Even though Defendants act as Plaintiffs' employers, Defendants benefit
greatly by misclassifying Plaintiffs as independent contractors.  Defendants
charge Plaintiffs tens of thousands of dollars per year for the lease of
Defendants' trucks, and they also require Plaintiffs to pay for other equipment,
gas, tolls, insurance, bonding, repairs and maintenance, among other items.
Defendants even exact a financial profit for accounting transactions by
charging Plaintiffs an accounting fee to issue Plaintiffs' paychecks.

5.    SWIFT also reserves the right to terminate its contracts with Plaintiffs at any
time it chooses, in which case Plaintiffs must return the trucks while remaining
liable for all lease payments to the end of the contract. The contracts with the
Plaintiffs, IEL and SWIFT define SWIFT's unilateral right to terminate the
contract without cause as a "default" by the Plaintiffs of the lease agreement,
which by contract then enables Defendants to treat all remaining lease
payments and lost profits as immediately due and owing. Plaintiffs cannot
terminate the contracts without suffering the same crushing financial
consequences.

6.    In addition to this acceleration of all remaining lease payments, the "default"

2

provision enables Defendants to seize and repossess the truck and other equipment at any time and for any reason or no reason at all.

7.    Thus, Defendants may reap windfall profits, further penalize Plaintiffs, and even prevent Plaintiffs from earning a living using the leased truck – the most essential tool of Plaintiffs' trade -- while concurrently demanding excessive and unreasonable liquidated damages upon "default."

8.    Defendants' ability to put Plaintiffs in default on the lease at any time provides Defendants with the means to maintain exclusive control over their work, forces Plaintiffs to accept any terms Defendants wish to impose, and permits Defendants to make unilateral changes to the contract or lease.

9.    For the same reason, even though the contract provides that either party may terminate, Plaintiffs cannot terminate their contracts, because to do so also would trigger a "default" of the equipment lease with its severe financial penalties. Thus, Plaintiffs are forced to endure working under Defendants' exclusive control for leases lasting as long as four years, even when they are being paid sub-minimum wages.

10.   The independent contractor agreement is an illegal contract by which Defendants together force Plaintiffs to work only for SWIFT, without the ability to leave, although Defendants may fire them at any time.

11.   The Defendants' form contracts shift the business risks of the economic downturn to Plaintiff employees, forces them to cover SWIFT's costs for fleet inventory, insurance, tolls, taxes, and equipment, and forces them to pay various fees to SWIFT that enable SWIFT to exact further profit from Plaintiffs who cannot leave their contracts without crushing financial consequences.

12. Although some of the contract language Defendants use appears to permit Plaintiffs to work for other trucking companies, in fact, Plaintiffs are told that they may not drive for other trucking companies or they will be put in default. Defendants do not warranty the truck and do not guarantee Plaintiffs any amount of work. Since Defendants may seize the truck at any time, while simultaneously requiring Plaintiffs to pay their full lease obligation, Plaintiffs are forced to endure nearly feudal conditions of servitude, tied to SWIFT for as long as the lease period lasts.

13. By treating its truck drivers as independent contractors instead of employees, Defendants are also able to avoid worker's compensation and unemployment payments, social security, and other benefits otherwise owed to employees. Defendants are also able to avoid liability under wage protection statutes, avoid unions, evade liability under Title VII and other statutes, and shift the cost of their fleet inventory and other business expenses to their employees. Defendants obtain a vast competitive advantage over competitor trucking companies that treat employees as employees in compliance with the law. As the largest truckload carrier in the United States, Defendants' pay practices drive down trucker wages and undercut fair labor practices across the country.

14. Plaintiffs seek unpaid wages, liquidated damages, interest, costs and attorneys' fees, as well as declaratory relief under the FLSA and state minimum wage and wage payment laws. Plaintiffs bring this claim individually and on behalf of other similarly situated employees under the collective action provisions of the FLSA. 29 U.S.C. § 216(b). Plaintiffs bring their state claims under the class action rules of Fed. R. Civ. P. Rule 23.

4

**JURISDICTION AND VENUE**

15. Jurisdiction is conferred upon this Court by 29 U.S.C. §216(b) of the Fair Labor Standards Act, by 28 U.S.C. §1331, this action arising under laws of the United States, and by 28 U.S.C. §1337, this action arising under Acts of Congress regulating commerce. Jurisdiction over Plaintiffs' claims for declaratory relief is conferred by 28 U.S.C. §§2201 and 2202.

16. This Court has supplemental jurisdiction over the state claim raised by virtue of 28 U.S.C. § 1367(a).  This Court also has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.

17. The amount in controversy in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs.

18. At least one member of the proposed class is a citizen of a state different from that of at least one Defendant.

19. Plaintiffs' claims involve matters of national or interstate interest.

20. Citizenship of the members of the proposed class is dispersed among at least two states: New York and California.

21. Greater than two-thirds of the members of all proposed Plaintiff classes in the aggregate are not citizens of Arizona.

22. Defendants reside in New York.

23. Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this District and at least one Defendant resides in this District.

**PARTIES**

**A.     Plaintiffs**

24.    Plaintiff VIRGINIA VAN DUSEN is a natural person residing in New York.
VAN DUSEN leases a truck from Defendants and signed Defendants'
Independent Contractor Operating Agreement ("ICOA") form contract. As a
matter of law, Plaintiff VAN DUSEN is an employee of Defendants as
described herein. Plaintiff VAN DUSEN works for Defendants in New York.

25.    Plaintiff VAN DUSEN brings claims under the Fair Labor Standards Act,
individually and on behalf of a collective action class as further described
herein.

26.    Plaintiff VAN DUSEN brings claims under New York Labor Law Articles 6
and 19 and their implementing regulations, individually and on behalf of a
class pursuant to Fed. R. Civ. P. 23 as further described herein.

27.    Plaintiff VAN DUSEN brings claims regarding the unconscionablility of the
lease portion of the contract and the contract as a whole under N.Y UCC 2A-
108 and New York common law, individually and on behalf of a class pursuant
to Fed. R. Civ. P. 23 as further described herein.

28.    Plaintiff JOHN DOE 1 is the anonymous designation of a natural person
residing in New York. JOHN DOE 1 leased a truck from Defendants and
signed Defendants' ICOA form contract. As a matter of law, Plaintiff JOHN
DOE 1 was an employee of Defendants as described herein. Plaintiff JOHN
DOE 1 worked for Defendants in New York.

29.    Plaintiff JOHN DOE 1 brings claims under the Fair Labor Standards Act,
individually and on behalf of a collective action class as further described
herein.

30.     Plaintiff JOHN DOE 1 brings claims under New York Labor Law Articles 6
        and 19 and their implementing regulations, 12 NYCRR §138-2.1, individually
        and on behalf of a class pursuant to Fed. R. Civ. P. 23 as further described
        herein.

31.     Plaintiff JOHN DOE 1 brings claims regarding the unconscionablility of the
        lease portion of the contract and the contract as a whole under N.Y UCC 2A-
        108 and New York common law, individually and on behalf of a class pursuant
        to Fed. R. Civ. P. 23 as further described herein.

32.     Plaintiff SHEER leased a truck from Defendants and signed Defendants'
        ICOA.  As a matter of law, Plaintiff SHEER was an employee of Defendants as
        described herein. Plaintiff SHEER worked for Defendants in California.

33.     Plaintiff SHEER brings claims under Cal. Labor Code §§221, 450 et seq.,
        1182.12, 1194, 2802 & IWC Wage Order 9-2001, Business and Corporations
        Code §§16600, 17203 & 17208, and implementing regulations, individually
        and as a class action as further described herein.

34.     Named Plaintiffs bring claims under the Fair Labor Standards Act (First Cause
        of Action), individually and on behalf of a collective action class as further
        described herein.

35.     Plaintiffs were engaged in commerce in their work for Defendants.

**B.      Represented Parties under FLSA**

36.     The term "Plaintiff" or "Plaintiffs" as used in this Complaint refers to the
        named Plaintiffs and any additional represented Class Members pursuant to the
        collective action provision of 29U.S.C. §216(b) and any additional Class
        Members pursuant to Rule 23.

7

37.     The named Plaintiffs bring this case under the collective action provision of the FLSA as set forth in 29 U.S.C. §216(b) on behalf of themselves and a class of persons throughout the U.S. consisting of "all truckers who lease a truck from IEL to drive for SWIFT during the three years preceding the filing of the initial complaint and up through the date of final judgment herein and subject to any equitable tolling for any applicable portion of the limitation period."

## C.      Class Action Allegations

38.     The named Plaintiffs bring the Second and Third Causes of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a nationwide class of similarly situated persons consisting of "all truckers who lease a truck from IEL to drive for SWIFT during the limitation period preceding the filing of the initial complaint and up through the date of final judgment herein and subject to any equitable tolling for any applicable portion of the limitation period."

39.     Plaintiffs VAN DUSEN and JOHN DOE 1 bring the Fourth and Fifth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of "all truckers who lease a truck from IEL to drive for SWIFT in New York during the six years preceding the filing of the initial complaint and up through the date of final judgment herein and subject to any equitable tolling for any applicable portion of the limitation period."

40.     Plaintiff SHEER brings the Sixth and Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of persons consisting of "all truckers who lease a truck from IEL to drive for

SWIFT in California during the four years preceding the filing of the initial complaint and up through the date of final judgment herein and subject to any equitable tolling for any applicable portion of the limitation period."

41. Excluded from any Rule 23 or Collective Action Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in any Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from any Rule 23 Class.

42. The persons in the Rule 23 Classes identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is not known to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

43. Upon information and belief, the size of each Rule 23 Class numbers in the hundreds.

44. Defendants acted or refused to act on grounds generally applicable to the Rule 23 Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

45. The Second through Seventh Causes of Action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

    a.    whether Defendants are or were Plaintiffs' employers;

b.  whether Defendants imposed unconscionable contracts upon Plaintiffs;

c.  whether Defendants were unjustly enriched by imposition of unconscionable contracts upon Plaintiffs;

d.  whether Plaintiffs are entitled to declaratory judgment that Defendants' contracts with Plaintiffs are unconscionable,

e.  if Plaintiffs are found to be employees or the contracts are found to be unconscionable, whether the contracts are void and/or voidable;

f.  whether Defendants made unlawful deductions from Plaintiffs' wages or required that Plaintiffs bear Defendants' business expenses for trucks, other equipment, gas, maintenance, bonds, insurance, tolls, and other costs and expenses of the employer's business;

g.  whether Defendants failed to pay New York and California Class Plaintiffs state statutory minimum wages in each week of work;

h.  whether the equipment lease portion of the independent contractor agreement was unconscionable under Section 2A-108 of the New York Uniform Commercial Code and California Civil Code Division 3 Part 2, Title 4, §1670.5;

i.  the nature and extent of Class-wide injury and the appropriate measure of damages for the Classes;

j.  whether Defendants wrongfully deducted money from the Class' paychecks for impermissible purposes;

k.  whether Defendants wrongfully required Plaintiffs to expend money on Defendants' behalf;

l.  whether Defendants' failure to pay wages violates common law;

10

m.     whether Defendants' wrongful deductions of money from the Class' paychecks violated New York and California statutes; and

n.     whether Defendants violated wage deduction statutes by continuing to demand lease and other payments after they terminated Plaintiffs' employment.

46.     The claims of Plaintiffs are typical of the claims of the Class they seek to represent. Plaintiffs and the Class members work or have worked for Defendants and have been subjected to common contract terms and a policy and pattern or practice of failing to pay wages, a pattern or practice of making unlawful and excessive deductions from their wages, and a pattern or practice of not paying the minimum wage for all hours worked. Defendants acted and refused to act on grounds generally applicable to the Class, thereby making declaratory relief with respect to the Class appropriate.

47.     Plaintiffs will fairly and adequately represent and protect the interests of the Class.

a.     Plaintiffs understand that, as class representatives, they assume a fiduciary responsibility to the Class to represent its interests fairly and adequately.

b.     Plaintiffs recognize that as class representatives, they must represent and consider the interests of the Class just as they would represent and consider their own interests.

c.     Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over those of the Class.

11

     d.     Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class.

     e.     Plaintiffs understand that to provide adequate representation, they must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in their possession, and testify, if required, in a deposition and in trial.

48.     Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

49.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation - particularly in the context of wage litigation like the present action, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against the largest truckload carrier in the United States. The members of the Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

**D.**     **Defendants**

50.     Upon information and belief, Defendants are related business corporations having an office and place of business in New York.

51.     Defendant SWIFT is an Arizona business corporation having an office and place of business in Phoenix. Defendant SWIFT lists its headquarters and

principal office address as 2200 S. 75th Ave., Phoenix, AZ 85043-7410.

52.   Defendant IEL is related to SWIFT. It leases trucks to SWIFT employees only. It leases trucks only to truckers who will drive for SWIFT. It requires truckers who sign leases to sign ICOAs with SWIFT.

53.   Defendant IEL leases trucks to SWIFT employees for the sole use in helping SWIFT further its shipping business.

54.   Upon information and belief, IEL is owned and operated by principal shareholders of SWIFT or their relatives.

55.   Upon information and belief, IEL and SWIFT have interlocking and overlapping officers and directors.

56.   Jerry Moyes is the Chief Executive Officer of both SWIFT and IEL.

57.   Chad Killebrew is the President of IEL and Executive Vice President of Business Transformation for SWIFT. He also recently served as Vice President of Swift's Owner Operator Division.

58.   IEL leases trucks to citizens of New York and California.

59.   IEL leases trucks to truckers who by law must be deemed employees of Defendants in New York and California.

60.   Trucks leased to Plaintiffs through IEL are registered with the department of motor vehicles to SWIFT.

61.   Defendant IEL is an Arizona business corporation having an office and place of business at the same location as SWIFT. Defendant IEL lists its principal office address as 2200 S 75th Ave., Phoenix, AZ 85043 and is registered with the state of Arizona at P.O. Box 29243, Phoenix, AZ 85038.

62.   Defendant SWIFT is a motor carrier, engaged in interstate shipment of freight.

13

63. Defendants conduct business throughout the country.

64. Upon information and belief, Defendants each grossed more than $500,000 in each of the last six calendar years, individually and collectively.

65. Defendants are enterprises engaged in interstate commerce for purposes of the Fair Labor Standards Act.

66. Defendants have common control and a common business purpose and are operated as a single enterprise, within the meaning of 29 U.S.C. 203(r)(1).

67. All actions and omissions described in this complaint were made by Defendants directly or through their supervisory employees and agents.

**FACTS**

68. SWIFT and IEL offered Plaintiffs an integrated series of forms to lease them trucks including a lease and "Independent Contractor Operating Agreement" (ICOA) which purported to make Plaintiffs independent contractor "owner-operator" "business partners" of SWIFT.

69. SWIFT and IEL do not permit Plaintiffs to take a copy of the proposed lease and ICOA with them to review prior to signing. Plaintiffs are made to sign the contract and ICOA "then and there" on SWIFT's premises.

70. In many cases, Plaintiffs are made to review the contracts at locations far from their home, with no practical transportation home, other than by signing such forms to lease the truck.

71. Plaintiffs who signed a lease with IEL were obligated by that lease to sign and maintain an ICOA agreement with SWIFT simultaneously.

72. The equipment lease portion of the form contract is for a term of years.

73. The service contract portion of the form contract is for one year.

14

74. The service contracts provide for unilateral modifications by Defendants, upon notice to Plaintiffs.

75. While the contracts state that Plaintiffs are independent contractors, these contracts allow Defendants to exert nearly complete control over Plaintiffs' work and ensure that Plaintiffs cannot independently work for other companies. Despite the declaration that Plaintiffs are "independent contractors" SWIFT treats Plaintiffs as employees.

76. Defendants' agents inform the Plaintiffs that they can only drive for SWIFT and are not permitted to drive for other carriers.

77. Defendants force Plaintiffs to bear Defendants' business expenses. Defendants force Plaintiffs to pay for the truck, the Qualcomm device by which Defendants send instructions to Plaintiffs, liability insurance, (indemnifying SWIFT and IEL), taxes, tolls, gas, and maintenance and other charges. Defendants reserve the right to claim depreciation on the leased trucks.

78. Defendants' scheme described herein shifts the costs of maintaining SWIFT's fleet and general business operations to Plaintiffs, but keeps all the benefits. This scheme also shifts the risk of trucking business downturn from Defendants to Plaintiffs, since Defendants are not obligated to give Plaintiffs any specific amount of work.

79. Defendants handle all the taxes, licensure, registration, bonding, insurance, and accounting related to Plaintiffs' trucks, for Defendants' own protection, but pass along all these costs (with markup for profit) to the Plaintiffs.

80. The contracts even permit Defendants to exact profits and reimbursements from the Plaintiffs which are not disclosed in the contract. For example, the

contracts permit defendants to charge undisclosed administrative fees and profits.

81. Defendants control Plaintiffs' work to the extent that they are, by law, employees of Defendants.

82. Plaintiffs fulfill the primary business in which SWIFT engages – the transportation of goods.

83. Defendants dispatch Plaintiffs to jobs that it wishes them to perform. Defendants monitor and control the time of Plaintiffs' departure and the time of arrival. Defendants can dictate and monitor the route Plaintiffs will travel. Defendants give job instructions by a pre-printed manual with which Plaintiffs are obligated to comply. Defendants give job instructions and monitor compliance by use of the Qualcomm on-board computer system, and by telephone. Defendants monitor Plaintiffs' exact location, speed, control of the truck, route, ETA, rest time and driving time and other aspects of job performance by the on-board computerized Qualcomm system. Defendants can even seize the truck if Plaintiff does not deliver a load correctly or on time.

84. By the terms of the lease, IEL does not lease to truckers who will not drive for SWIFT.

85. The IEL lease and SWIFT ICOA are part of a package that truckers are required to sign *in toto*.

86. The ICOA terms permit SWIFT to cancel the Plaintiffs' contracts and "fire Plaintiffs" immediately with "cause" or on 10 days notice without cause.

87. The IEL lease permits SWIFT to treat SWIFT's termination of Plaintiffs as a "default" by Plaintiffs.

88.     If a Plaintiff is put in default by SWIFT, defendants take possession of the
        truck and claims "liquidated damages" under a provision that guarantees all
        remaining lease payments, including anticipated profits will be paid to SWIFT,
        even though Defendants' own unilateral conduct terminating the contract may
        have caused the "default" and notwithstanding that any actual losses are
        capable of determination and mitigation through re-leasing the truck, and that
        any losses are far less than what Defendants unreasonably claim from their
        truckers..

89.     Defendants verbally and in writing prevent Plaintiffs from working for other
        common carriers, thereby ensuring their exclusive control over Plaintiffs work.

90.     Defendants frequently demand that Plaintiffs accept Defendants' unilateral
        contract modifications during the term of their contracts. Plaintiffs are forced to
        agree to such modifications because of Defendants' ability to terminate
        Plaintiffs without cause, and declare a default of the lease and thereby seize the
        trucks Plaintiffs drive. Because Defendants can default Plaintiffs, take the
        trucks, and hold Plaintiffs liable for all remaining payments, or because
        Defendants can refuse to dispatch Plaintiffs to new jobs, or because Defendants
        can place Plaintiffs on "safety holds" preventing them from working,
        Defendants can unilaterally change the contracts to which Plaintiffs are subject,
        and they often make such changes on multiple occasions in a single year. These
        contracts changes are invariably in favor of Defendants at Plaintiffs' expense.
        Plaintiffs have little or no choice but to accept the changes.

91.     Plaintiffs are not free to terminate the SWIFT ICOA or the IEL lease, since a
        Plaintiff's termination of the SWIFT ICOA is also termed a "default" in the

lease, leading to severe financial consequences to a Plaintiff.

92.  The ability to terminate the SWIFT ICOA is not mutual, since there are severe consequences to a Plaintiff regardless of who terminates the ICOA, including repossession of the truck and the trucker's liability to Defendants for liquidated damages.

93.  Because Defendants take possession of the truck, Plaintiffs are unable to use it to drive for other companies. Thus, Plaintiffs are forced to endure working under Defendants' exclusive control for the duration of their lease.

94.  Thus at any time, Defendants are permitted to call the loan in full and take the truck, thereby refusing to permit Plaintiffs to drive for other companies. By this mechanism Plaintiffs become indebted to IEL for many tens of thousands of dollars, with no ability to generate income (from SWIFT or any other company) to pay back the loan.

95.  In effect, the lease portion of the contract provides Defendants with the means to pressure and coerce Plaintiffs into allowing Defendants to maintain exclusive control over their work, because Plaintiffs fear being terminated and then becoming subject to the "default" provision in the lease.

96.  If Plaintiffs are terminated or choose to terminate their contract, Plaintiffs are deemed to have defaulted on the lease, allowing Defendants to reap windfall profits, and take the truck.

97.  The ICOA provides Defendants remedies to collect money owed for breach or termination but does not provide these remedies to Plaintiffs, who might be owed wages upon termination.

98.  IEL refers default charges to bill collectors who hound the Plaintiffs that it puts

in default and who cannot pay the exorbitant liquidated damages demanded by Defendants under the contracts. Defendants did this to Plaintiff SHEER.

99. Defendants prohibit Plaintiffs from freely using the truck they lease from Defendants by a variety of means, including but not limited to the following. Certain contract language explicitly states that SWIFT shall have exclusive control over the equipment. Defendants tell Plaintiffs they cannot drive for third parties. Certain contract language requires Plaintiffs to obtain SWIFT's approval to remove SWIFT operating authority indicia from the truck and requires such removal to be at personal expense, prior to driving for another carrier. IEL will put a Plaintiff in default for driving for another company without permission. Merely requesting permission to drive for another company puts a Plaintiff at risk that SWIFT and IEL will simply declare a default of the lease without cause, thereby requiring Plaintiffs to pay the net aggregate lease balance and surrender the truck at Plaintiffs' expense.

100. Thus, while the ICOA purports to permit Plaintiffs to be independent contractors, Plaintiffs are effectively compelled to work only for SWIFT during the terms of their contract.

101. Plaintiffs' equipment lease requires them to make weekly repayment of a portion of the total lease term. For example, $500 per week or more is deducted from each Plaintiff's wages for the lease of the Defendants' truck.

102. In addition to the lease payments, Plaintiffs are also responsible for taxes, equipment, maintenance and other costs in connection with the truck.

103. Defendants set the terms of Plaintiffs' work.

104. Defendants assign shipping work to the Plaintiffs through a Qualcomm system

on which SWIFT sets the day and time for pick up and delivery of freight.

105. Defendants deduct monthly fees for use of the Qualcomm regardless of whether Plaintiff purchases it from Defendants (incurring additional pay deductions) or elsewhere.

106. Plaintiffs are required to pay money to Defendants for a bond, and this required bond may be used for deductions for equipment charges, in which case Plaintiffs must replenish the bond.

107. Defendants can take possession of a Plaintiff's equipment if he fails to properly or timely deliver shipment.

108. SWIFT pays Plaintiff and Class members by mileage rates.

109. SWIFT fails to pay the wages required by law free and clear to the Plaintiffs.

110. Instead, SWIFT calculates the pay for Plaintiffs by a weekly accounting that makes deductions from the mileage pay due to Plaintiffs and Class members, for various expenses, including but not limited to truck lease, gas, insurance, tolls, Qualcomm purchase, SWIFT and IEL's accounting, and maintenance.

111. When Plaintiffs cannot earn enough to make their truck payments and/or earn a living wage, SWIFT, at times, will provide advances on pay. By giving advances, SWIFT keeps Plaintiffs owing money each month and that money is continuously deducted from wages. This constant debt to SWIFT enhances its control over Plaintiffs, who must try to catch up with what they owe to SWIFT, make truck payments, and avoid default of the IEL lease. Thus advances further enhance Defendants' control over Plaintiffs

112. Plaintiff DOE began his lease with IEL in 2009 and completed the lease in 2010.

113.   Plaintiff SHEER began his lease with Defendants in or about August 7, 2006.

114.   Plaintiff SHEER stopped working for Defendants in or about April 7, 2009.

115.   Defendants insist that Plaintiffs and Class members use the truck solely for
       delivering freight for SWIFT.

116.   But, Defendants do not guarantee any amount of work to Plaintiffs.

117.   In some weeks, the deductions from Plaintiffs and Class Members' pay yield
       pay rates below federal and or state minimum wage guarantees.

118.   Defendants failed to pay Plaintiff and Class members the minimum wage for
       each hour worked in some weeks.

119.   Defendants' treatment of Plaintiffs as independent contractors caused them loss
       of wages, additional tax burdens, insurance obligations and a variety of other
       monetary and non-monetary compensable harm.

120.   Defendants also charged Plaintiffs for issuing their pay checks by making
       deductions from their pay to cover Defendants' accounting and administrative
       costs as well as to exact additional profit.

121.   Defendants' failure to pay Plaintiffs and the Class the proper wages required by
       law was willful.

122.   Defendants' unlawful conduct, as set forth in this Class Action Complaint, has
       been intentional, willful, and in bad faith, and has caused significant damages
       to Plaintiffs and the Class.

123.   Defendants were aware or should have been aware that the law required them
       to pay Plaintiffs and the Class members' minimum wages for each workweek.

124.   Upon information and belief, Defendants applied the same unlawful policies
       and practices to employees in every state in which it operated.

125. The lease and ICOA contracts are unlawful and unconscionable, insofar as they a) call for the employment of Plaintiffs but treat them as independent contractors, b) allow SWIFT and IEL to terminate the Plaintiffs' lease and ICOA but to nevertheless require Plaintiffs to continue to make lease payments, c) coerce Plaintiffs to remain as employees for a period of time while hiding that coercion, since a Plaintiff who leaves the employment is obligated to continue to make lease payments even though they no longer have possession of the truck, d) shift Defendants' risk of business downturn to Plaintiffs, e) make Plaintiffs responsible for the costs of carrying and maintaining Defendants' fleet , and f) exact profits and reimbursements from the Plaintiff employees.

## FIRST CAUSE OF ACTION
### (FAIR LABOR STANDARDS ACT)

126. Defendants failed to pay minimum wages to Plaintiffs in violation of the Fair Labor Standards Act, 29 U.S.C. §206 *et seq.* and its implementing regulations.

127. Defendants' failure to pay proper minimum wages for each hour worked per week was willful within the meaning of the FLSA.

128. Defendants' failure to comply with the FLSA minimum wage protections caused Plaintiffs to suffer loss of wages and interest thereon.

## SECOND CAUSE OF ACTION
### (RESTITUTION/UNJUST ENRICHMENT)

129. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

130. Defendants' lease and ICOA are unconscionable.

131. Defendants' unconscionable agreements are void, or alternatively, voidable by

Plaintiffs under the common law.

132.  Defendants have been unjustly enriched by the unconscionable terms of the contracts they imposed on the Plaintiffs.

133.  Plaintiffs are entitled to restitution or damages in quantum meruit for the value Defendants' unconscionable contracts conferred upon Defendants.

### THIRD CAUSE OF ACTION
### (DECLARATORY JUDGMENT)

134.  Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

135.  Defendants' lease and ICOA are unconscionable.

136.  Plaintiffs are entitled to declaratory judgment that Defendants' lease and ICOA are unconscionable.

### FOURTH CAUSE OF ACTION
### (NEW YORK LABOR LAW)

137.  Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

138.  Defendants failed to pay minimum wages in each week of work, to Plaintiff JOHN DOE 1 and the New York Class in violation of New York Labor Law, Article 19 and the administrative regulations implementing such provisions, as set forth in 12 NYCRR 142-1.1, *et seq.*

139.  Defendants failed to pay all wages when due to Plaintiff JOHN DOE 1 and the New York Class in violation of New York Labor Law, Article 6, and NY Labor Law §191, *et seq.*

140.  Defendants made unlawful deductions from the pay due to Plaintiff JOHN DOE 1 and Class members, and required that Plaintiffs pay for Defendants'

business expenses in violation of NY Labor Law § 193 and § 198-b.

141.    Defendants' failure to comply with New York Labor Law caused Plaintiffs to
suffer loss of wages and interest thereon.

## FIFTH CAUSE OF ACTION
## (NEW YORK STATUTORY CONTRACT LAW)

142.    Plaintiffs re-allege and incorporate by reference all allegations in all preceding
paragraphs.

143.    Defendants lease and independent contractor operating agreement are
unconscionable under Section 2A-108 of the New York Uniform Commercial
Code and under the common law of New York, as described more fully above,
but including insofar as they are contracts of adhesion, which Plaintiffs are not
permitted to review with an attorney or other advisors prior to signing, the
terms of which are entirely one-sided and terminable by Defendants but
binding on Plaintiffs for a period of years, which permit Defendants to
preclude Plaintiffs from gainful employment with other carriers and which
permit Defendants to take the truck purportedly leased, but require Plaintiffs to
continue to make payments, but without the ability to work, thereby placing
Plaintiffs in such fear of loss that they cannot request to work for another
carrier, must accept Defendants' unlawful wage deductions, accept
Defendants' unilateral alterations to the contract, and must continue to work
under a contract that falsely and misleadingly mischaracterizes Plaintiffs as
independent contractors, and unlawfully shifts the Defendants' business
expenses to the Plaintiffs.

144.    Defendants' lease establishes unreasonable liquidated damages in violation of

UCC Section 2-A-504.

145.   Defendants' failure to comply with New York Law of Contract caused

Plaintiffs to suffer loss of income, wages, and interest thereon, and caused

Plaintiffs to bear Defendants' business expenses, and caused Plaintiffs to incur

various other costs and expenses not properly charged to an employee,

including but not limited to taxes, unemployment, workers' compensation,

various insurance, and social security.

### SIXTH CAUSE OF ACTION
### (CALIFORNIA LABOR CODE)

146.   Plaintiffs re-allege and incorporate by reference all allegations in all preceding

paragraphs.

147.   Defendants failed to pay minimum wages and all wages due to Plaintiff

SHEER and the Class in violation of California Labor Law, implementing

regulations and associated Wage Orders.

148.   Beginning at a date presently unknown to the California Plaintiffs, but at least

as long ago as 2006, Defendants committed, and continues to commit, acts of

unfair competition as defined by the California Unfair Competition Law

("UCL"), by, among other things, engaging in the acts and practices described

herein. Defendants' conduct as alleged has injured the California Plaintiffs and

the California Class by wrongfully denying them earned wages, and therefore

was substantially injurious to the California Plaintiffs.

149.   Defendants engaged in unfair competition in violation of the UCL by violating,

*inter alia,* each of the following laws. Each of these violations constitutes an

independent and separate violation of the UCL: Cal. Lab. Code §§221, 450,

1182.12, 1194, & 2802 & IWC Wage Order 9. Defendants' conduct described herein significantly threatens or harms competition.

150. The unlawful and unfair business practices and acts of Defendants, described above, have injured the California Plaintiffs in that they were wrongfully denied the payment of minimum wages.

151. Defendants failed to pay California Plaintiffs minimum wages in each week in violation of California Labor Law §§1194 and 1182.12 and IWC Wage Order 9, Sec. 4.

152. Defendants made unlawful deductions from the pay due to Plaintiffs and Class Members and failed to pay for employer expenses borne by Plaintiffs in violation of California Labor Law §§221 and 2802 and IWC Wage Order 9, Sec. 9.

153. Defendants coerced or compelled Plaintiffs to patronize Defendants or others in the purchase of things of value in violation of California Labor Law §450.

154. Defendants' failure to comply with California law caused Plaintiffs to suffer loss of wages and other sums, to bear expenses, and to suffer loss of interest thereon.

## SEVENTH CAUSE OF ACTION
## (CALIFORNIA STATUTORY CONTRACT LAW)

155. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

156. Defendants lease and independent contractor operating agreement are unconscionable under California Civil Code Division 3 Part 2, Title 4, §1670.5. and under the common law of California, as described more fully above, but

26

including insofar as they are contracts of adhesion, which Plaintiffs are not permitted to review with an attorney or other advisors prior to signing, the terms of which are entirely one-sided and terminable by Defendants but binding on Plaintiffs for a period of years, which permit Defendants to preclude Plaintiffs from gainful employment with other carriers, and which permit Defendants to take the truck purportedly leased, but require Plaintiffs to continue to make payments thereon, but without the ability to work, thereby placing Plaintiffs in such fear of loss that they cannot request to work for another carrier and must accept Defendants' unlawful wage deductions, and accept Defendants' unilateral alterations to the contract, and must continue to work under a contract that falsely and misleadingly mischaracterizes Plaintiffs as independent contractors, and which unlawfully shifts the Defendants' business expenses to the Plaintiffs.

157. Defendants' lease establishes unreasonable liquidated damages under circumstances existing at the time the lease contract was signed in violation of Cal. Civil Code 1671.

158. Defendants' failure to comply with California statutes described in this cause of action caused Plaintiffs to suffer loss of money, time, income, wages and interest thereon, and caused Plaintiffs to bear Defendants' business expenses, and caused Plaintiffs to incur various other costs and expenses not properly charged to an employee, including but not limited to taxes, unemployment, workers' compensation, various insurance, and social security.

**WHEREFORE**, Plaintiffs request that this Court enter an Order:

1. With respect to the FLSA violations

  a. Declaring that Defendants violated the FLSA;

  b. Approving this action as a collective action;

  c. Declaring that Defendants' violations of the FLSA were willful;

  d. Granting judgment to Plaintiffs and represented parties for their claims of unpaid wages as secured by the Fair Labor Standards Act, as well as an equal amount in liquidated damages and interest; and

  e. Awarding Plaintiffs and represented parties their costs and reasonable attorneys' fees.

2. With respect to the Classes:

  a. Certifying this action as a class action;

  b. Designating Plaintiffs as Class Representatives;

  c. Designating the undersigned counsel as Class Counsel;

  d. Entering a declaratory judgment that the practices complained of herein are unlawful;

  e. Fashioning appropriate equitable and injunctive relief to remedy Defendants' violations of law, including but not necessarily limited to an order determining that the contract is void, or voidable, or alternatively severing any unconscionable clauses and enjoining Defendants from continuing their unlawful practices as described herein;

  f. Awarding statutory, compensatory and punitive damages, liquidated damages, appropriate statutory penalties, and restitution to be paid

by Defendants according to proof;

g.     Awarding Pre-judgment and Post-Judgment interest, as provided by

law;

h.     Granting such other injunctive and equitable relief as the Court may

deem just and proper; and

i.     Awarding attorneys' fees and costs of suit, including expert fees,

interest, and costs.

Dated: February 10, 2010

Respectfully Submitted,

Dan Getman (DG4613)
Carol Richman
Tara Bernstein
Edward Tuddenham, Of Counsel
Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
phone: (845)255-9370
fax: (845) 255-8649
Email: dgetman@getmansweeney.com

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JOHN DOE 1 and JOSEPH SHEER, individually and
behalf of all other similarly situated persons,

Plaintiffs,

v.

SWIFT TRANSPORTATION CO., INC. and
INTERSTATE EQUIPMENT LEASING, INC.,

Defendants.

## CONSENT TO SUE

I leased a truck from IEL and was treated by SWIFT as an owner-operator within the last 3 years. I hereby consent to sue defendants in this Fair Labor Standards Act case. I consent to representation by the named plaintiffs and the bringing of any claims I may have under the Fair Labor Standards Act (for unpaid overtime, liquidated damages, attorney's fees, costs and other relief) against the defendants in this action.

I authorize Getman & Sweeney, PLLC and its successors and assigns, to represent me in this case. By signing and returning this consent to sue, I understand that, if accepted for representation, I will be represented by the law firm without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted pro rata from my settlement or judgment first. I understand that the law firm may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount of fees received from the defendants or 1/3 of my settlement or judgment amount, whichever is greater. I understand that if the case is not successful, I will not be obligated to pay any fees or costs.

Dated: 2/9/2010

Signature: Virginia Van Dusen

Name (printed): VIRGINIA VAN DUSEN

Name exactly as it appears on company pay statements (if different) Virginia Van Dusen

Address: REDACTED

Phone: REDACTED

Email: REDACTED

Send this completed form for consideration to be represented by Getman & Sweeney, PLLC, to the following address: Getman Sweeney, 9 Paradies Lane, New Paltz, NY 12561 or fax it toll free to: 866-543-9619.

This Consent to Sue is not valid and effective until you have received a receipt from Getman & Sweeney indicating that it has been filed. If you have not received a receipt within 3 weeks from your transmission of the form to us, you must contact the firm by phone at 845-255-9370.

# CONSENT TO SUE UNDER THE FLSA

I, Joseph Mark Sheer, hereby consent to be a plaintiff in an action under the Fair Labor Standards Act, 29 U.S.C. §201 et seq., to secure any unpaid wages, minimum wages, overtime pay, liquidated damages, attorneys' fees, costs and other relief arising out of my employment with Swift Transportation, Inc , Swift Transportation Co. Inc., Interstate Equipment Leasing, Inc., and any other associated parties.

I authorize Getman & Sweeney, PLLC, Dan Getman, Esq., and any associated attorneys as well as any successors or assigns, to represent me in such action.

Dated: _11/10/09_                    _Mark Sheer_
                                    Joseph Mark Sheer

## CONSENT TO SUE UNDER THE FLSA

I, 'REDACTED'   John Doe , hereby consent to be a plaintiff in an action under the Fair Labor Standards Act, 29 U.S.C. §201 et seq., to secure any unpaid wages, minimum wages, overtime pay, liquidated damages, attorneys' fees, costs and other relief arising out of my employment with Swift Transportation, Inc , Swift Transportation Co. Inc., Interstate Equipment Leasing, Inc., and any other associated parties.

I authorize Getman & Sweeney, PLLC, Dan Getman, Esq., and any associated attorneys as well as any successors or assigns, to represent me in such action.

Dated: 11/30/2009

REDACTED     John Doe
_____

REDACTED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **VIRGINIA VAN DUSEN, JOHN DOE 1 and JOSEPH SHEER, individually and on behalf of all other similarly situated persons,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**SWIFT TRANSPORTATION CO., INC. and INTERSTATE EQUIPMENT LEASING, INC.,**<br><br>**Defendants.** | **1:09-cv-10376 (RMB)(JCF)** |

### Certificate of Service

I hereby certify that on February 10, 2010, I filed the Amended Complaint with the Clerk of the District Court by mailing the original by FedEx overnight mail and sending an electronic PDF version by email, to caseopenings@nysd.uscourts.gov.

And, I hereby certify that I have mailed the foregoing, by FedEx overnight mail, to following:

Gary D. Shapiro
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022
Counsel for Defendants

Dated: February 10, 2010

Respectfully submitted,

Carol Richman (CR1256)

1