Laurent Badoux, AZ Bar No. 020753
LITTLER MENDELSON, P.C.
Camelback Esplanade
2425 East Camelback Road, Suite 900
Phoenix, AZ  85016-4242
Telephone:    602. 474.3600
Facsimile:    602.957.1801
lbadoux@littler.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Virginia Van Dusen; John Doe 1; and Joseph Sheer, individually and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>Swift Transportation Co., Inc.; Interstate Equipment Leasing, Inc.; Chad Killibrew; and Jerry Moyes,<br><br>Defendants. | Case No. CV 10-899-PHX-JWS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFFS' CASE, OR IN THE ALTERNATIVE, TO STAY IT PENDING ARBITRATION**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendants submit the following Memorandum of Points and Authorities in support of their Motion to Compel Arbitration and Dismiss Plaintiff's Case, or In the Alternative, To Stay It Pending Arbitration.

Plaintiffs Virginia Van Dusen and Joseph Sheer[1] (collectively, "Plaintiffs") have filed a class action complaint alleging that they were misclassified under the Fair Labor Standards Act ("FLSA"), New York Labor Law, California Labor Code, additional causes of action for declaratory judgment, unjust enrichment, forced labor, and violations of New York Uniform Commercial Code and the California Civil Code.  Both Plaintiffs were independent contractors who formerly performed services for Defendant Swift Transportation Co., Inc.

---

[1] None of the defendants have ever employed an individual named John Doe 1.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

("Swift"). Upon being engaged by Swift, Plaintiffs each signed individual independent contractor agreements ("ICOAs"). The language of Plaintiffs' ICOAs is clear and unequivocal, and states as follows:

> ***All disputes and claims arising under, arising out of or relating to this Agreement, including an allegation of breach thereof, and any disputes arising out of or relating to the relationship created by the Agreement, including any claims or disputes arising under or relating to any state or federal laws, statutes or regulations, and any disputes as to the rights and obligations of the parties, including the arbitrability of disputes between the parties, shall be fully resolved by arbitration in accordance with Arizona's Arbitration Act and/or the Federal Arbitration Act.***

Per the Federal Arbitration Act ("FAA") and the straightforward language contained in their ICOAs with Swift, Plaintiffs should be required to arbitrate these disputes.

Separately, Plaintiffs entered into commercial equipment leases with IEL to rent tractors for their new businesses. Although those agreements do not have arbitration provisions, due to the nature of the allegations against IEL and the individual defendants, the case law is established that signatories to arbitration agreements (like Plaintiffs) must arbitrate claims against non-signatories (like IEL and Messrs Killebrew and Moyes) when those claims are inherently and inextricably intertwined with those posed against signatory defendants (like Swift). Because Plaintiffs allege that Swift, IEL, and the individual defendants acted as a common bloc in the creation and perpetuation of the wrongdoings alleged in the Second Amended Complaint, Plaintiffs should be compelled to arbitrate their claims against IEL and the individual defendants as well.

Although Defendants, through counsel, have notified Plaintiffs' that their Second Amended Complaint is subject to mandatory arbitration, they have failed to dismiss this action and submit it to arbitration voluntarily. Defendants now move for an order dismissing this case and compelling Plaintiffs to submit their claims to individual arbitration in accordance with the express terms of their ICOAs, Section 4 of the FAA, and the established case law on equitable estoppel in the arbitral context.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

2

## I. STATEMENT OF FACTS

On or about August 7, 2006, Plaintiff Sheer contracted with Swift as an Owner/Operator, the common term for independent contractors in the trucking industry. (*See* Declaration of Gary Dowell ("Dowell Decl."), attached hereto as Exhibit 1, at ¶ 4 and Ex. A). The precise terms of his relationship with Swift were documented in an ICOA, which he signed, and which included an arbitration provision. (Dowell Decl., Ex. A, generally, and at ¶ 24)  Plaintiff Van Dusen entered into an independent contractor agreement with Swift, which also included an arbitration provision, on March 3, 2009. (Dowell Decl., ¶ 8 and Ex. C (generally and at ¶ 24)).  The arbitration provision contained in both of those agreements states that the substantive law of the State of Arizona shall apply and that the arbitration shall be held in Maricopa County, Arizona.  The agreement is broad in scope and states, in pertinent part, the following:

> ***All disputes and claims arising under, arising out of or relating to this Agreement, including an allegation of breach thereof, and any disputes arising out of or relating to the relationship created by the Agreement, including any claims or disputes arising under or relating to any state or federal laws, statutes or regulations, and any disputes as to the rights and obligations of the parties, including the arbitrability of disputes between the parties, shall be fully resolved by arbitration in accordance with Arizona's Arbitration Act and/or the Federal Arbitration Act.***

(emphasis provided in Dowell Decl., Ex. C at ¶ 24; emphasis added to Ex. A, ¶ 24, to Dowell Decl.) Pursuant to the ICOA, the parties also "specifically agree that no dispute may be joined with the dispute of another and agree that class actions under this arbitration provision are prohibited." (*Id.*)  Sheer continued to perform services for Swift until April 7, 2009. (Dowell Decl., ¶ 6 and Ex. B).  Van Dusen remained an independent contractor of Swift until February 12, 2010.  (Dowell Decl., ¶ 10 and Ex. D).

Apart from their independent contractor relationships with Swift, Sheer and Van Dusen each elected to lease trucks from IEL. (*See* Declaration of Elizabeth Parrish ("Parrish Decl."), attached hereto as Exhibit 2, Ex. A, B).  IEL is strictly a truck leasing organization; it does not contract, employ, or pay wages or other compensation to individuals who drive

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

3

trucks and/or haul goods. (Parrish Decl., ¶ 3). Moreover, nothing in Swift's ICOAs with either Plaintiff required or encouraged them to lease their vehicles from IEL. (Dowell Decl., Ex. A, C). In fact, their ICOAs permitted them to use their own tractors, or ones leased from other companies, to haul loads with Swift. (Dowell Decl., Ex. A, C).

On or about December 22, 2009, Sheer, in contravention of the terms of the arbitration provision in his ICOA, filed the underlying complaint commencing this purported hybrid Rule 23/Section 216(b) action in the United States District Court for the Southern District of New York, alleging violations of the federal Fair Labor Standards Act, New York Labor Law, and California Labor Code. (*See* U.S.D.C. S.D.N.Y. Docket Entry # 1). Sheer filed his First Amended Complaint on or about February 11, 2010, adding Van Dusen as a Plaintiff and additional causes of action for declaratory judgment, unjust enrichment, and violations of New York Uniform Commercial Code and the California Civil Code. (U.S.D.C. S.D.N.Y. Docket Entry # 17). Defendants then filed a pre-motion request on February 17, 2010 to have this matter dismissed, or in the alternative, transferred to the U.S. District Court for the District of Arizona on the basis of improper venue. On March 19, 2010 Defendants[2] filed a pre-motion letter requesting permission to file a motion to stay the proceedings and compel arbitration.

On or about March 24, 2010, Plaintiffs, in a further attempt to avoid their duty to arbitrate these claims, filed their Second Amended Complaint. (U.S.D.C. S.D.N.Y. Docket Entry # 62). This Complaint added Jerry Moyes and Chad Killebrew as Defendants, and asserted an additional claim for "forced labor" in violation of 18 U.S.C. §§ 1589, 1595.

On April 5, 2010, the Honorable Richard M. Berman, U.S.D.J. S.D.N.Y., transferred this action to the U.S. District Court for the District of Arizona in accordance with the forum selection clauses contained in the ICOAs and other contracts. This matter was officially received by the Court on April 26, 2010. (U.S.D.C. D. Az. Docket # 90 - 91).

---

[2] This pre-motion letter was filed before Plaintiffs effectuated proper service on Defendants Moyes and Killebrew.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

4

## II. LEGAL ARGUMENT

### A. This Court Should Dismiss This Action Because Plaintiffs' Claims Are Subject to Arbitration Under The Federal Arbitration Act.

#### 1. Overview of The Federal Arbitration Act.

Congress enacted the Federal Arbitration Act ("FAA") to overcome courts' reluctance to enforce arbitration agreements. *Allied-Bruce Terminex Cos. v. Dobson*, 513 U.S. 265, 270 (1995). Under the FAA, "a written provision in any … contract … involving commerce to settle by arbitration a controversy thereafter arising … *shall be valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added).

The FAA not only placed arbitration agreements on equal footing with other contracts, but established a federal policy in favor of arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). As the Supreme Court stated in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, "Section 2 is a congressional declaration of a liberal free policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." 460 U.S. 1, 24 (1983). Similarly, the Ninth Circuit has noted that the policy in favor of arbitration is so significant that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25).

The FAA also provides a specific mechanism by which one party to an arbitration agreement may compel the other to honor that agreement:

> A party aggrieved by the alleged *failure, neglect, or refusal of another to arbitrate* under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction … for an order directing that such arbitration proceed in the manner provided for in such agreement. … The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court *shall make an order* directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4 (emphasis added). The Supreme Court has explained that the FAA requires

LITTLER MENDELSON
A Professional Corporation
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

5

courts to "rigorously enforce agreements to arbitrate" under this provision. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Indeed, the primary purpose of the FAA is to require courts to compel arbitration when the parties have, as here, agreed to arbitrate their disputes. *Id.* at 218; *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974).

### 2. The FAA Applies to Independent Contractors.

Defendants anticipate that Plaintiffs may try to avoid the obligations imposed on them by their arbitration agreements by contending that they are exempt from compulsory arbitration as a matter of federal law, pursuant to § 1 of the Federal Arbitration Act. Under that section, "contracts of employment of seaman, railroad employees, or any other class of workers engage in foreign or interstate commerce" are exempt.

Plaintiffs, though, *are not* employees of Swift, as evidenced by their independent contractor agreements, freedom from the direction of Swift and its agents and officers (including Mr. Moyes), and their exercise of independence in the operation of their own businesses. Also, Plaintiffs' relationship with IEL is of a strictly commercial nature. IEL is not in the freight transportation business, but rather in the equipment leasing one. Plaintiffs did not provide any services for IEL or Mr. Killebrew, or on either of their behalf.

In addition, neither the United States Supreme Court nor the U.S. Court of Appeals for the Ninth Circuit have ruled on whether transportation workers who are independent contractors are foreclosed from arbitrating claims with their commercial counterparty. Plaintiffs, who are independent contractors, should not be able to escape their contractual obligation to arbitrate through unsupported, conclusory pleading.

### 3. Gateway Issues of Arbitrability Are Expressly Reserved For The Arbitrator.

Previously, Plaintiffs alleged that they do not have an obligation to arbitrate because the contracts which contain the relevant arbitration provisions are unconscionable and were entered into under such circumstances as to be void. The clear and unambiguous terms of the arbitration provisions at issue, however, reserve such gateways issue for the arbitrator. (Dowell Decl., Ex. A and C at ¶¶ 24 (". . . any disputes as to the rights and obligations of the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

6

parties, including the arbitrability of disputes between the parties, shall be fully resolved by arbitration . . ..")). Accordingly, Plaintiffs are free to raise any defenses they may have to the arbitration provision, but they must do so in the arbitral forum. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("The question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter.") *See also AT&T Technologies Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986) (parties may agree to arbitrate arbitrability).

### 4. Plaintiffs' Claims Against Swift Are Covered By The ICOAs.

Plaintiffs' claims against Swift are for minimum wage violations under federal, New York, and California law, contract claims under New York and California common and statutory law, and forced labor under the United States Code. As stated above, the arbitration provision states as follows:

> ***All disputes and claims arising under, arising out of or relating to this Agreement, including an allegation of breach thereof, and any disputes arising out of or relating to the relationship created by the Agreement, including any claims or disputes arising under or relating to any state or federal laws, statutes or regulations, and any disputes as to the rights and obligations of the parties, including the arbitrability of disputes between the parties, shall be fully resolved by arbitration in accordance with Arizona's Arbitration Act and/or the Federal Arbitration Act.***

Dowell Decl. Ex. A and C at ¶24. Because the causes of action against Swift in this matter are "disputes arising out of or relating to the relationship created by the Agreement," or because they arise or relate to "any state or federal laws, statutes or regulations," Plaintiffs should be required, in accordance with the strong federal policy favoring arbitration, to arbitrate their claims. *See Simula*, 175 F.3d at 719 (liberally construing provision that required arbitration of "all disputes arising in connection with" parties' contract).

### 5. The Court Should Compel Plaintiffs To Arbitrate Their Claims Against IEL and the Individual Defendants.

Plaintiffs also filed FLSA, New York, California, and forced labor claims against IEL under the theory that it, along with Swift, is a joint employer of the Plaintiffs and putative

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

7

class members. Plaintiffs also added Jerry Moyes and Chad Killebrew, the principal officers for Swift and IEL, respectively, as defendants in their Second Amended Complaint. Regardless of the underlying merit of Plaintiffs' claims against IEL and the individual defendants, Plaintiffs must be required to arbitrate their claims against them.

Although Plaintiffs do not have separate agreements to arbitrate with IEL or the individual defendants, the law is clear that non-signatories may compel arbitration under an equitable estoppel theory. There are several instances where equitable estoppel applies, including where, as here, "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1432 (M.D. Ala. 1997).

To make such a showing, a non-signatory defendant must demonstrate that the dispute in question raises allegations of substantially interdependent and concerted misconduct by both a non-signatory and one or more of the signatories to the contract. *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 526 (5th Cir. 2004). In *Grigson*, the plaintiffs were movie producers who first sued the movie studio responsible for distributing a film. In response, the movie studio sought to compel arbitration under the distribution agreement. Plaintiffs then dropped their claims. After, plaintiffs sued one of the actors in the film and his talent agency on the theory that they influenced the studio to breach the distribution agreement. The defendants then sought to enforce the arbitration provision in the distribution agreement with the movie studio, although they were not signatories to it. The Fifth Circuit held that "it would be especially inequitable [to deny enforcement of the arbitration provision by the actor and his talent agency] where, as here, a signatory non-defendant [the actor and his talent agency] is charged with interdependent and concerted misconduct with a non-signatory defendant [the movie studio]. In such instances, that signatory, in essence, becomes a party, with resulting loss, *inter alia*, of time and money because of its required participation in the proceeding." *Id.* at 528.

As explained below, the allegations against Swift, IEL, and the individual defendants

LITTLER MENDELSON
A Professional Corporation
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

8

are all inextricably intertwined. Any refusal by this Court to apply the equitable estoppel doctrine set forth in *Grigson*, which would send this matter to arbitration, would permit the signatory Plaintiffs "to have it both ways" by permitting them to: (i) litigate on the theory that Defendants operated a common scheme of misclassifying Plaintiffs as independent contractors and forcing them to sign unconscionable agreements, all the while depriving them of due compensation under various federal and state laws; and (ii) avoid the applicability of the arbitration provision to the instant litigation that is contained in the ICOAs which govern their commercial relationship with Swift. *Id.* at 528. Such an outcome would be inherently unfair, and the Court must not permit it to occur.

### a. Plaintiffs' Claims Against IEL Are Intertwined With Their Claims Against Swift.

From the beginning of their Second Amended Complaint, Plaintiffs make clear that their entire case against IEL is premised on interdependent allegations, namely that IEL and Swift are one in the same, and are therefore jointly responsible for the illegalities alleged. *See*, e.g., Second Amended Complaint at ¶ 1 ("Defendants [Swift and IEL] jointly operate a scheme to treat SWIFT's employee workforce as independent contractors and to shift SWIFT's business expenses to its drivers."); *see also*, e.g., *Id* at ¶¶ 2-14, 68, 70-73, 135-174.

In *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 944 (11th Cir. 1999), plaintiff Franklin executed a "Buyers Order," which contained a broad arbitration provision, to purchase a vehicle from Jim Burke. That Order incorporated by reference a Retail Installment Contract, in which Franklin was charged $990 for a service contract at MS Dealer. *Id.* Shortly after taking possession of the vehicle, Franklin noticed that it had several defects. As is relevant to her suit against MS Dealer, Franklin alleged that MS Dealer conspired with Jim Burke and Chrysler Credit Corp. to "engage in a scheme to defraud by charging her excessive amounts for the service contract and inducing her to incur needless debt and corresponding interest expenses in connection with her purchase of the car." *Id.* at 948. MS Dealer responded by moving to compel Franklin to arbitrate her claims against it pursuant to the FAA and based on the arbitration clause in the Buyers Order. The

LITTLER MENDELSON
A Professional Corporation
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

9

Fifth Circuit reversed the district court's ruling and remanded with instructions to grant MS Dealer's petition to compel arbitration. In support of its decision, the court noted that the body of caselaw on equitable estoppel is clear that a non-signatory may compel arbitration in two different circumstances, including "when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* at 947 (internal citation omitted).

Assuming the numerous factual and legal allegations Plaintiffs make here in their 174 paragraph complaint are true, IEL should be permitted, as MS Dealer was, to enforce the contractual arbitration provisions on the same footing as Swift, the signatory to the agreement, because the complaint is replete with allegations of substantially interdependent misconduct by the two. Should the Court ignore the substantial interdependence of Plaintiffs' claims against Swift and IEL and fail to apply this arbitration provision to the benefit of IEL, "the arbitration proceedings between [Swift and Plaintiffs] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Id.* (internal citation omitted).

### b. Plaintiffs' Claims Against The Individual Defendants Are Intertwined With Their Claims Against The Corporate Defendants.

Plaintiffs do not state any specific basis for individual liability for the individual defendants. Instead, they group them together with the corporate defendants. Corporations do not have the ability to act on their own. Rather, their decisions are carried out by natural persons. Presumably, Messrs Moyes and Killebrew were named as defendants because of their positions within the corporate hierarchies at Swift and IEL or their presumed roles in formulating the contracts and systems challenged in the instant lawsuit. Individuals who are non-signatories to an arbitration agreement can also successfully compel arbitration if they can satisfy the ordinary agency standard. *See*, e.g., *Letizia v. Prudential Bache Secur., Inc.*, 802 F.2d 1185 (holding that employees of a brokerage firm may be bound by an arbitration

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

10

agreement that their employer is party to).

The individual defendants must also prevail on this motion to compel arbitration on the same equitable estoppel basis as the corporate defendants. Throughout the Second Amended Complaint, Plaintiffs repeatedly refer to the wrongdoings committed by "Defendants," a plural term which includes the individual defendants, in virtually every paragraph, including the Count sections. Messrs Moyes and Killebrew, on the other hand, are only referred to by name in three paragraphs over the 32-page document (¶¶ 57, 58, and 63), and none of those paragraphs includes a substantive allegation. Therefore, by Plaintiffs' own pleading, their claims against the individual defendants are substantially interdependent with those propounded against the corporate defendants. As such, under the well established body of caselaw on equitable estoppel, Plaintiffs should be required to arbitrate their claims against the individual defendants.

### c. Plaintiffs Should Not Be Permitted To Avoid Their Duty To Arbitrate Against All Defendants.

Because Plaintiffs' claims against Swift and IEL and the individual defendants are intentionally, and inherently, intertwined, they should not be permitted to avoid their duty to arbitrate simply by naming non-signatories as defendants. Any other result would send Plaintiffs' claims against Swift to arbitration, but the exact same claims – including the overarching one that Swift and IEL are a joint employer, and that Messrs. Moyes and Killebrew committed the same wrongdoings on behalf of both corporate defendants – to court. Such a ruling creates a threat of inconsistent rulings, and would waste judicial, as well as litigants, resources. It would also allow plaintiffs, to the prejudice of defendants, to avoid arbitration through manipulative pleading, and would contravene the well accepted premise that disputes regarding the proper scope of an arbitration clause should be resolved in favor of arbitration. *See*, e.g., *Simula, Inc.*, 175 F.3d at 719.

### 6. Defendants' Actions Are Not Inconsistent With A Desire To Arbitrate.

In their March 24, 2010 submission to the Southern District of New York in

LITTLER MENDELSON
A Professional Corporation
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

11

opposition to Defendants' pre-motion request to file a motion to compel arbitration, Plaintiffs' suggested that Defendants' request to transfer venue is somehow inconsistent with its desire to compel arbitration. That is false. Defendants' actions are not the type of voluntary submission to litigation that constitutes a waiver of an election for arbitration, and they should not be construed as such. Established case law supports this position. *See*, e.g., *Walker v. Countrywide Credit Indus.*, 2004 U.S. Dist. LEXIS 30477 (N.D. Tex. January 15, 2004) (FLSA collective action where defendants first move to transfer venue, then to compel arbitration. "The mere fact that Countrywide chose a venue through the transfer process does not mean that it chose a 'judicial forum' for the resolution of this dispute.") *See also Johnson v. Couturier*, 2007 U.S. Dist. LEXIS 81848, *16-18 (E.D. Ca. October 25, 2007) (collecting cases where parties engaged in discovery, filed pleadings, and other motion practice, yet right to claim arbitration not waived).

### 7. Plaintiffs Repudiated Their Respective ICOAs.

Despite their signed acknowledgment of the ICOAs, Plaintiffs filed their Second Amended Complaint (which covers claims within the scope of the agreement) in federal court. By litigating claims in court that are subject to an arbitration obligation, a plaintiff impliedly repudiates the arbitration agreement. *See Bolo Corp. v. Homes & Son Constr. Co.*, 105 Ariz. 343, 345, 464 P.2d 788, 790 (Ariz. 1970). Where, as here, a plaintiff's entire case is arbitrable, a stay is not necessary, and the court should dismiss the action. *Martin Marietta Aluminum, Inc. v. General Elec. Co.*, 586 F.2d 143, 145-48 (9th Cir. 1978).

Because Plaintiffs have litigated – and continue to litigate – claims subject to a valid arbitration agreement, they have impliedly repudiated the arbitration provision contained in their ICOAs, and by filing this action instead of proceeding directly to arbitration, Plaintiffs have deprived Defendants of the benefits of arbitration. As a result, Plaintiffs have forced Defendants to incur attorneys' fees and costs for the enforcement of that agreement. Accordingly, and in light of *Martin Marietta Aluminum*, this Court should grant Defendants' motion to compel Plaintiffs to arbitrate their claims and dismiss this action.

LITTLER MENDELSON
A Professional Corporation
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

12

### B. In The Alternative, Defendants Seek An Order Staying This Matter During The Pendency Of The Arbitration.

Under the FAA, the "court shall . . . order" parties to submit their disputes to arbitration if the court determines that an agreement to arbitrate the controversy exists. 9 U.S.C. §3. The FAA also provides, in pertinent part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.*

*Id*. (emphasis added). Because Plaintiffs' claims against Swift are arbitrable, this Court should, in the alternative, enter an order compelling them to submit their claims to binding arbitration, and staying this action pending completion of the arbitration.

In addition, as the Supreme Court noted in *Arthur Andersen LLP v. Carlisle*, 556 U.S. __, 129 S. Ct. 1896 (2009), the mandate set forth in Section 3 of the FAA to stay litigation is not confined to disputes between parties to a written arbitration agreement; that provision also requires courts to stay other claims "referable to arbitration under an agreement in writing." Where, as here, a written arbitration provision is made enforceable for the benefit of a third party under state contract law, the statute's terms are fulfilled. *Arthur Andersen v. Carlisle* 129 S. Ct. at 1902. Therefore, Plaintiffs' claims against all Defendants should be stayed pending the outcome of the arbitration of this matter.

### C. Plaintiffs Must Arbitrate Their Claims Individually.

Recently, the U.S. Supreme Court held in *Stolt-Nielsen S.A., et al. v. Animalfeeds Int'l Corp.*, No. 08-1198 (2010), that the imposition of class arbitration on parties who have not agreed to it is inconsistent with the FAA. Moreover, the parties to the instant dispute expressly agreed that "no dispute may be joined with the dispute of another and agree[d] that class actions under this arbitration provision are prohibited." *See* Dowell Decl., Ex. A and C at ¶¶ 24. Thus, Plaintiffs must be required to arbitrate their claims on an individual basis.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

13

Further, because opt-ins are not plaintiffs and because the class is not certified, they are not yet technically party to this action. As such, their claims should not be referred directly to arbitration. They should instead be required to file separately for arbitration.

### III. CONCLUSION

For the foregoing reasons, Defendants request that the Court enter an order dismissing the Second Amended Complaint and directing this case to binding arbitration pursuant to the terms of the written arbitration agreements between the parties. In the alternative, Defendants request that the Court stay this action during the pendency of the arbitration.

DATED this 21st day of May, 2010.

                                                s/ *Laurent R.G. Badoux*
                                                Laurent R.G. Badoux
                                                LITTLER MENDELSON., P.C.
                                                Attorneys for Defendants

I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and mailed a copy of same to the following, if non-registrants, this 21st day of May, 2010:

Susan Joan Martin
Daniel Lee Bonnett
Jennifer Lynn Kroll
Martin & Bonnett PLLC
1850 N. Central Ave.; Ste. 2010
Phoenix, AZ  85004

Dan Getman
Edward John Tuddenham
Carol P. Richman
Tara Margo Bernstein
Getman & Sweeney, PLLC
9 Paradies La.
New Paltz, NY  12561

Attorneys for Plaintiffs

*s/ Ruth Mare*
Firmwide:95556575.2 024599.1075

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600