**SUSAN MARTIN (AZ#014226)**
**DANIEL BONNETT (AZ#014127)**
**JENNIFER KROLL (AZ#019859)**
**MARTIN & BONNETT, P.L.L.C.**
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
smartin@martinbonnett.com
dbonnett@martinbonnett.com
jkroll@martinbonnett.com

**DAN GETMAN (*Pro Hac Vice*)**
**GETMAN & SWEENEY PLLC**
9 Paradies Lane
New Paltz, NY 12561
(845) 255-9370
dgetman@getmansweeney.com

**EDWARD TUDDENHAM (*Pro Hac Vice*)**
1339 Kalmia Rd., NW
Washington, DC 20012
Telephone:   202-249-9499
Etudden@io.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VIRGINIA VAN DUSEN, JOHN DOE 1 and JOSEPH SHEER, individually and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>SWIFT TRANSPORTATION CO., INC., INTERSTATE EQUIPMENT LEASING, INC., CHAD KILLIBREW and JERRY MOYES,<br><br>Defendants. | **Case No. 10-cv-00899 - PHX - JWS**<br><br>**PLAINTIFFS' REPLY TO MOTION TO CONDITIONALLY CERTIFY A FAIR LABOR STANDARDS ACT COLLECTIVE ACTION AND AUTHORIZE NOTICE TO BE ISSUED TO THE CLASS** |

# TABLE OF CONTENTS

I.   NOTICE SHOULD ISSUE TO THE "SIMILARLY SITUATED" CLASS. ...................................................... 3

II.  THERE IS NO INHERENT CONFLICT BETWEEN FLSA OPT-IN AND RULE 23 CLASS ACTIONS ................................. 8

III. PLAINTIFFS NEED NOT DEMONSTRATE INTEREST PRIOR TO NOTICE, BUT HAVE DONE SO ANYWAY ..................... 9

IV.  DEFENDANTS' ARGUMENT THAT NOTICE SHOULD BE SENT BY A THIRD PARTY ADMINISTRATOR SHOULD BE REJECTED ........................................................ 10

V.   DEFENDANTS' REQUEST TO DELAY NOTICE TO "CONFER" ABOUT THE NOTICE BEFORE MAILING IS UNNECESSARY ............................................................ 10

VI.  AN ORDER PROHIBITING RETALIATION IS NECESSARY ....... 11

CONCLUSION ................................................................................ 11

Defendants oppose the Collective Action application, but they fail to dispute the central facts that demonstrate the class members are similarly situated.   Defendants do not dispute that all class members perform the same job, are subject to the same basic Lease/ICOA contract that specifically states that, "While operating the Equipment under COMPANY'S authority, COMPANY shall have exclusive possession, control and use of the equipment during the term of this Agreement." Exs. F-1, G-1, H-1, I-1, ICOA ¶5A. Defendants do not dispute that every class member must comply with the same the 200+ pages of uniform rules and procedures in the Drivers Manual. Nor do Defendants dispute the requirement that all Owner Operators must purchase and install QaulComm devices in compliance with Swift's uniform method of issuing dispatch and other instructions to drivers. Nor do Defendants dispute that they install a speed governor which physically restricts the speed Plaintiff drivers can travel in their trucks to levels below posted speed limits. The level of control Defendants exercise over the putative class members through these uniform policies and procedures is the primary determinant of contractor or employee status. *Santiago v. Phoenix Newspapers, Inc*., 164 Ariz. 505, 508-9, 794 P.2d 138 (Ariz. 1990); *Brock v. Superior Care, Inc*. 840 F.2d 1054, 1058 (2d Cir. 1988).

Moreover, Defendants do not contest the interrelationship of IEL and Swift, the interrelationship of management of the companies, the fact that both have the same business purpose, or the fact that the same person –Defendant Killibrew - signs both the Lease for IEL and Swift. Defendants also do not dispute that they have no system to guarantee compliance with the minimum wage requirement of the FLSA and that they fail to pay minimum wage in all weeks to Plaintiffs. Defendants provide no corporate policies or other documents which would support their contention that the class is dissimilarly situated.

Instead, Defendants supply 19 "happy camper" declarations from people who state they were glad to be considered "independent contractors." Of this group, eight of the

declarants appear not to be class members at all – i.e. either they clearly did not lease a truck from IEL and drive for Swift during the three year limitation period, or the declarations do not state sufficient facts to establish whether they are or are not class members.[1] But what is most remarkable about Defendants' affidavits is that none of them dispute the core factual issues relevant to the motion for certification. None of them dispute that Defendants manage and control the work of the class members through uniform contracts, policies, and procedures. Instead, the affidavits take issue with how much freedom some of those uniform policies give to class members. For example, some of Defendants' declarations claim that drivers in the "owner operator division" are free to choose their own routes or to reject loads on occasions. Whether, in fact, drivers are free to make those choices may be relevant to the merits – i.e. to the determination of whether Plaintiffs are common law employees -- but such merits issues are irrelevant to the conditional certification decision. *See, e.g., McElmurry v. U.S. Bank Nat'l Ass'n,* No. CV-04-642, 2004 WL 1675925, at 16 (D.Or. July 27, 2004) ("at the initial stage of the conditional collective action certification process under the FLSA ... plaintiffs do not need to make a showing of success on the merits of their claims"). What matters for the present motion is whether the class members are similarly situated in that they are subject to uniform policies regarding the choosing of routes and refusal of loads. Defendants affidavits say nothing to contradict Plaintiffs' evidence that all such policies are common to all class members. Whether those uniform policies and procedures make the class members employees or independent contractors is a matter to be determined at trial. If Defendants' declarants are content with their circumstances, they need not opt-in to the case when notice issues. However, the fact that they are happy and may have been lucky enough to make a living says nothing about the relevant question of whether the putative class members are similarly situated.[2]

---

[1] *See, e.g.,* Exs. A, C, F, H, L, R, S.

[2] Defendant's declarations are also inherently untrustworthy. Although Defendants do not tell the Court how the affidavits were obtained, Plaintiffs have learned that the highest

2

I.    **NOTICE SHOULD ISSUE TO THE "SIMILARLY SITUATED" CLASS.**

This Court has already certified an FLSA collective action for drivers who were treated as independent contractors, in *Bogor v. American Pony Exp., Inc.* 2010 WL 1962465, 3-4 (D.Ariz. 2010):

> Plaintiff has alleged that APE misclassified all Airport Drivers as independent contractors exempt from the FLSA pursuant to APE's policies and procedures. Defendants admit that APE classified all the Airport Drivers as exempt from the provisions of the FLSA. Plaintiff further alleges that all Airport Drivers had to adhere to strict rules and regulations to service the airport.
> . . .
> While this evidence is minimal ... it is sufficient at the first, lenient stage of the "similarly situated" analysis. The Court therefore will conditionally certify a collective action under the FLSA. After full discovery reveals the actual facts of the case and before the dispositive motion deadline, Defendants may move to "decertify" the case. If Defendants choose to file a "decertification" motion, the Court will engage in a much more rigorous analysis of the "similarly situated" issue.

Id. (fns. omitted). Plaintiffs here have submitted far more information than mere allegations. Plaintiffs have supplied key documents of defendants' corporate policies and rules applicable to the entire class, showing that all Plaintiffs are similarly situated with respect to the claims at issue.

Defendants argue that misclassification cases cannot be brought as collective actions under the FLSA. However, the primary violation of law that flows from employee misclassification is the failure to pay minimum wage or overtime due under the FLSA. Any rule that misclassification cases could not be remedied by an FLSA collective action would reward violations and encourage unlawful misclassification, subverting the remedial purposes of the statute. There is no reason that drivers who are misclassified as independent contractors cannot bring their claims collectively under the FLSA.

---

paid drivers were routed with their loads to Swift central terminals for the convenience of Defendants' attorneys, even though such routing for ulterior purpose of obtaining an affidavit by its very nature demonstrates defendants' power and control over the truckers.

3

Numerous other courts have certified FLSA collective actions alleging workers were misclassified as independent contractors. *See, e.g., Clincy v. Galardi South Enterprises, Inc.*, 2010 WL 966639 (N.D.Ga. 2010); *Houston v. URS Corp.*, 591 F.Supp.2d 827, 834 (E.D.Va. 2008); *Prater v. Commerce Equities Management Co., Inc.*, 2007 WL 4146714, 7 (S.D.Tex. 2007); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 198 (S.D.N.Y. 2006) Thus, misclassification itself is the common policy that makes the class similar. *See also Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001)(collective and class action for workers treated as independent contractors).

Courts routinely hold that the potential applicability of an FLSA exemption is not an issue at the notice stage of analysis but rather an issue for the second, decertification, stage. *See Thiessen v. Gen. Electric Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001); *Ingram v. Coach USA, Inc.*, 2008 WL 281224 at 7 (D.N.J. 2008)(declining to consider at the notice stage defendants' assertion that certain class members were FLSA exempt); *White v. MPW Industrial Services, Inc.*, 236 FRD 363, 372-373 (E.D. Tenn. 2006)(citing cases); *Austin v. CUNA Mutual Ins. Society*, 232 FRD 601, 606 (W.D. Wis. 2006) (defendant's assertion of "white-collar exemption," even if "the central issue of the litigation", should be raised after discovery at the decertification stage); *Goldman v. Radioshack Corp.*, 2003 WL 21250571 (E.D.Pa. 2003)(refusing to consider assertion of exemptions at conditional certification stage); *Herring v. Hewitt Associates, Inc.*, 2007 WL 2121693 (D.N.J. 2007) (certifying a nationwide class of benefits analysts who were allegedly misclassified as exempt); *Woodard v. Fedex Freight East Inc.*, 2008 WL 471552 (MD Pa. 2008) (citing cases); *Neary v. Metro. Property and Casualty Ins.*, 517 F.Supp.2d 606, 620-622 (D. Conn. 2007) (conditionally certifying class appraisers and adjusters despite defendant's assertion that application of the administrative exemption would raise highly inidividual issues); *Moss v. Crawford & Company,* 201 FRD 398,

410-411 (W.D.Pa. 2000).³ Misclassifying employees as exempt from the FLSA is a routine occurrence and is routinely resolved through collective actions. *Id.*

As noted above, all Plaintiffs perform the same job function and the analysis necessary to determine whether FLSA exemptions apply to those job functions can readily be conducted for the class as a whole. Defendants have not shown any categories of proof which will require individualized inquiry. Defendants have argued a couple of factors which, when it comes time to consider the merits, might bear on whether Plaintiffs, as a group, are employees.  However, they have not demonstrated any significant variability within the class and certainly nothing that would require the Court to make individualized inquiry. Defendants run the largest truckload carrier in the world, with thousands of truckers all treated the same way. No business could run with separate rules for thousands of truckers. Defendants have adduced no shred of documentary or other evidence showing that the truckers' circumstances are individualized.

Defendants rely upon two cases in which misclassification issues were not found by the Courts to permit collective actions. *Pfaahler v. Consultants for Architects, Inc.*, 2000 WL 198888, 2 (N.D.Ill. 2000), and *In re FedEx Ground Package System*, 662 F. Supp. 2d 1069 (N.D. IN 2009). In *Phaahler*, a discrimination case, the Court merely found that the evidentiary showing by the Plaintiffs there was too sketchy and unsupported to make out a class wide case of discrimination:

> Pfahler makes no showing that other potential claimants performed the same type of duties as himself, or that they could be classified as "independent contractors." Pfahler provides no grounds indicating his knowledge of the work other workers performed, the circumstances under which work was performed, or the circumstances of potential claimants affecting their desire to work as independent

---

³Defendants' reliance on *Morisky v. Public Service Elec & Gas Co.*, 111 F.Supp.2d 493, 497-498 (D.N.J. 2000), is misplaced. *Morisky* was a stage two case where the Court decertified a class because the plaintiffs did not show that the plaintiffs shared similar job duties – "[i]n fact, plaintiffs do not even discuss the job responsibilities of the opt-in plaintiffs. Instead, plaintiffs reference an extremely broad "general connection" all plaintiffs have to the production of electricity."

5

> contractors or employees. Moreover, Pfahler testified that aside from Ricondo, "I don't know anything about [CFA's] relationships with any other companies." Pfahler Dep. p. 108. Pfahler attests that most, if not all, of those others with whom he worked while at CFA held ministerial, non-supervisory positions, with little or no exercise of discretion or judgment. Pfahler Decl. ¶ 20. However, Pfahler's belief as to the nature of the employment relationship between other workers and CFA is insufficient to meet the similarly situated requirement. Pfahler must point to something concrete aside from his belief.
>
> Moreover, Pfahler is able to identify only three other people placed by CFA that he purportedly met while working at Ricondo. As to the rest of the potential claimants, Pfahler merely attaches a list of all persons referred by CFA who worked over 40 hours per week. He provides no basis for concluding these workers were "employees" and not "independent contractors."

Thus the Court found that class discrimination issues would be too difficult where the Plaintiffs had not even demonstrated any reliable basis for concluding that the Plaintiffs were employees across the class. Here there is an evidentiary showing sufficient to meet the minimal requirements for certifying a collective action before discovery. Plaintiffs have supplied the common documents -- the ICOA, the Lease, the Handbook of rules, all the uniform policies and practices which cover all Plaintiffs similarly. Defendant has supplied the number of class members – 4,695 (Def. Brf. p.1). These documents paint a portrait of potent control over the Plaintiff truckers. There is no evidence that any material allegations are conclusively incorrect.

The *FedEx* decision also supplies no basis for denying collective action notice here. In *In re FedEx Ground Package System*, 662 F. Supp. 2d 1069 (N.D. IN 2009), the Court declined to certify a collective action though the Court did certify Rule 23 Class Actions on parallel state claims, even though the Rule 23 standard is more stringent than the collective action standard. The first two bases for denying the collective action were that the putative class representatives simply did not meet the collective action class definition[3] and that the FLSA class was defined to only include drivers who were not

---

[3]In denying a collective action notice the Court wrote: "First, the original named plaintiffs, Troy Givens and Clarence Dalcour, lack standing to pursue FLSA overtime

6

1 covered by state wage laws as the representative Plaintiffs were, thus creating an
2 irreconcilable conflict between the named representatives and the very FLSA class to
3 which they did not belong. 662 F. Supp. 2d at 1082. It is true, that after describing these
4 two fatal errors in detail, that the Court also, in dicta, wrote that individualized inquiries
5 would predominate over the class concerns. However, there was no explanation of what
6 that individualized inquiry would need to be and the factual basis for that conclusion was
7 not explicated. The facts concerning whether FedEx's work arrangements with its drivers
8 were uniform for FLSA purposes is not evident in the record. And while the Court did
9 find that Rule 23 classes could go forward, notwithstanding, the reasoning of *FedEx* does
10 not offer any persuasive ground for finding that Plaintiffs' claims here are too
11 individualized to treat collectively. *Compare, Estrada v. FedEx Ground Package System,*
12 *Inc.,* 64 Cal. Rptr.3d 327, 337-339 (2d Dist. 2007) (affirming class certification in case
13 alleging that FedEx drivers were wrongfully misclassified as employees).
14 
15         Defendants' claim that this case will require thousands of mini trials is nothing
16 more than unsupported scare tactic. The Defendants use form contracts in every respect.
17 These forms govern the relationship between the owner operators and Swift and IEL.
18 There is nothing individual about Defendants' authority to control the Plaintiffs' work,
19 which is the *sine qua non* of misclassification.

---

claims on a representative basis because they don't meet the proposed class definition. Neither Mr. Givens nor Mr. Dalcour drove vehicles weighing less than 10,001 pounds after August 10, 2005. They both drove P-1000 trucks, which have a gross vehicle weight of more than 10,001 pounds. Because Mr. Givens and Mr. Dalcour don't meet the class definition and are exempt from overtime under the FLSA, they aren't similarly situated to the putative class members they seek to represent. 29 U.S.C. § 213(b)(1). Therefore, the named plaintiffs don't have standing to pursue FLSA claims on behalf of the putative class." At 1082.

## II. THERE IS NO INHERENT CONFLICT BETWEEN FLSA OPT-IN AND RULE 23 CLASS ACTIONS.

This Court's practice of certifying Rule 23 opt-out classes along with opt-in FLSA collective actions is generally followed throughout the United States. *Bamonte v. City of Mesa*, 2007 WL 2022011, 3 (D.Ariz. Jul 10, 2007). There are scores of such decisions, but as an example, *see Lindsay v. Government Employees Ins. Co.*, 448 F.3d 416 (D.C.Cir. 2006)(difference between FLSA and state law class action did not prohibit supplemental jurisdiction over state claims); *Silverman v. Smithkline Beecham Corp.*, 2007 WL 3072274, 2 (C.D.Cal. Oct 16, 2007); *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81 (S.D.N.Y. 2001).

The FLSA's underlying stated purpose is to protect all covered employees. The motivating concern for the creation of the opt-in procedure in the 1940s– concern that unnamed and unknown representatives were bringing FLSA actions on behalf of unknowing employees – no longer matters, since current class action rules do not allow anonymous class actions anyway. Furthermore, no Court that has certified a class action along with a collective action has ever reported a problem after having done so. Federal Courts regularly hear class and collective claims together. Should any problems occur with the class action, Rule 23 and 216(b) both give the Court sufficient tools for addressing such problems, including decertification. However, the lack of parallelism of two procedures in a single action does not create insurmountable problems in reality. Plaintiffs have found no cases where a Court that granted class certification with a collective found the proceedings to be unduly problematic in fact.

Finally, while Defendant's arguments might have some relevance to Rule 23 certification, a class certification motion is not pending before this court. There is simply no basis in statute or caselaw for declining to send FLSA notice to a collective action opt-in class, just because the complaint makes class claims under Rule 23.

### III. PLAINTIFFS NEED NOT DEMONSTRATE INTEREST PRIOR TO NOTICE, BUT HAVE DONE SO ANYWAY.

Defendant's claim that Plaintiffs are required to show that putative class members want to opt into this action is not the law and makes no sense. First, more than 100 individuals have opted in, despite the fact that no notice has yet been sent. Thus, clear interest in joining has been shown. Second, the argument that Plaintiffs must show some vague level of interest does not comport with the law in this jurisdiction. No Arizona case has required a showing of interest BEFORE a notice is sent to determine such interest. Finally, such a requirement puts the cart before the horse and only outlier decisions have required showing interest before a Notice to gauge interest has been mailed.

The few outlier courts that have imposed this purported requirement generally derive it from one sentence of dicta at the conclusion of *Dybach v. Fla. Dept of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991) which has been roundly rejected. For example, in *Heckler v. DK Funding, LLC*, 502 F.Supp.2d 777, 780 (N.D. Ill. 2007), the court noted that logic of requiring a Plaintiff "to show that other want to join in order to send them notice asking them if they want to join – escapes the court. Requiring a plaintiff to make an advance showing that others want to join would undermine the broad remedial goal of the FLSA." *Accord, Delgado v.Ortho-McNeil, Inc.*, 2007 WL 2847238, 2 (C.D. Ca. 2007) (same); *Reab v. Electronics Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002)(same). The only requirement at the conditional certification stage is that plaintiff adduce pleadings or "minimal evidence" to show "a factual nexus between [his] situation and the situation of other current and former employees to show that they are similarly situated." *Aquilino*, 2006 WL 258563 at 2. Plaintiffs have met that standard. Even if the demonstrated interest standard existed in this jurisdiction (and it does not), the case cited by Defendants, *West v Border Foods*, does not apply here. There only five opt-ins were claimed to be similarly situated, not the more than one hundred opt-ins who have filed consents in this case. *West v. Border Foods, Inc.*, 2006 WL 1892527, 1 (D.Minn. 2006).

9

## IV. DEFENDANTS' ARGUMENT THAT NOTICE SHOULD BE SENT BY A THIRD PARTY ADMINISTRATOR SHOULD BE REJECTED.

Collectively, Plaintiffs' counsel in this case have scores of years of collective experience handling FLSA actions and have never used an administrator for the initial notice.[4] Present counsel have sent collective action notices in scores of cases without complaint or problem. There is no reason a claims administrator should be used to mail notice other than to burden Plaintiffs with unnecessary costs. This extra cost burden might match Defendants' interests, but not the FLSA's. Indeed, initial FLSA notices almost never involve administrators. Courts regularly reject use of an administrator to mail FLSA notices. In *Bados Madrid v. Peak Construction, Inc*., 2009 WL 2983193, 2 (D.Ariz. 2009), Your Honor denied a similar request for imposition of a claims administrator in another Arizona case. As officers of the Court, counsel can send out notice properly and efficiently.

## V. DEFENDANTS' REQUEST TO DELAY NOTICE TO "CONFER" ABOUT THE NOTICE BEFORE MAILING IS UNNECESSARY.

Plaintiffs' proposed statement of the case in complaint is neutral, while advising the class-members of all relevant issues. Defendants have had ample opportunity to object to the Plaintiffs' proposed notice form and have stated no valid objection. The form of notice is standard and has been used in substantially the same form in hundreds of cases around the country. The only purpose to a further "conference" between parties would be to delay – a virtual certainty since Defendants' interest is precisely such.

---

[4] Dan Getman has been handling collective action FLSA cases for 21 years, Edward Tuddenham has been handling collective action cases for 30 years and Susan Martin has been handling collective actions for 11 years.

### VI.   AN ORDER PROHIBITING RETALIATION IS NECESSARY.

Defendants object to entry of an Order prohibiting retaliation. Such Orders are standard, and indeed necessary to deter unlawful retaliation. Defendants complain that "Defendants uphold a strict policy against retaliation for engagement in protected activity like joining a lawsuit." No source, citation, or documentation for this "policy" exists however. The contention is surprising because Swift has already been found to have retaliated against complaining truckers in a highly detailed and thorough opinion of the NLRB. *Swift Transportation Co., Inc. and IBT,* 2009 WL 4885436 (N.L.R.B. Div. of Judges). Defendants' lawyers may claim that Swift has a strict policy, but the record demonstrates otherwise. Given the fact that the Lease/ICOA contract allows Defendants to terminate a driver for any reason or no reason, treat that termination as the drivers' default, repossess the truck, and demand all remaining lease payments, without so much as having to give a reason, putative class members are in extreme jeopardy without such an order. Further, even if Defendants protest that they would not do that (and they have not) drivers have a reasonable fear of such retaliatory conduct and its drastic consequences to their careers.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Collective Action Notice should be granted.

11

Respectfully submitted this 22nd day of July, 2010.

                        s/      Dan Getman

Dan Getman
Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone:   (845) 255-9370

Susan Martin
Daniel Bonnett
Jennifer Kroll
Martin & Bonnett, P.L.L.C.
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone:   (602) 240-6900

Edward Tuddenham
1339 Kalmia Rd. NW
Washington, DC 20012
Telephone:   202-249-9499

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.

*s/ Carol Richman*