UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| VIRGINIA VAN DUSEN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | 2:10-cv-00899 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| SWIFT TRANSPORTATION CO., INC., | ) | |
| *et al.*, | ) | [Re: Motion at Docket 127 and |
| | ) | all other pending motions] |
| Defendants. | ) | |
| | ) | |

## I.  MOTION PRESENTED

At docket 127, defendants Swift Transportation Co., Inc., Interstate Equipment Leasing Inc., Chad Killebrew, and Jerry Moyes (collectively "defendants") move to compel arbitration and dismiss this action or, in the alternative, to stay this action pending completion of arbitration.  At docket 188, plaintiffs Virginia Van Dusen and Joseph Sheer, *et al.* (collectively "plaintiffs") oppose the motion to compel.  Defendants reply at docket 199.  Oral argument was requested, but it would not assist the court.

## II.  BACKGROUND

Virginia Van Dusen and Joseph Sheer are truck drivers.  On August 7, 2006, Joseph Sheer entered into a "Contractor Agreement" with Swift Transportation Co., Inc.

("Swift") in California.  On March 3, 2009, Van Dusen entered into a "Contractor

Agreement" with Swift in New York.  The Contractor Agreement provides in pertinent

part:[1]

> 18.  <u>Independent Contractor</u>.  CONTRACTOR shall be considered an Independent Contractor and not an employee of COMPANY. CONTRACTOR shall direct the operation of the Equipment and the manner and performance of its compliance with this Agreement and shall be solely responsible for the direction and control of its employees. CONTRACTOR'S performance of services pursuant to this Agreement shall be subject to compliance with the rules and regulations of the FHWA, DOT, all applicable state agencies, and the COMPANY'S safety policies and procedures.  The CONTRACTOR shall determine the method, means and manner of performing services under this Agreement.
>
> ....
>
> 23.  <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of Arizona.
>
> 24.  <u>Arbitration</u>.  All disputes and claims arising under, arising out of or relating to this Agreement, including an allegation of breach thereof, and any disputes arising out of or relating to the relationship created by the Agreement, including any claims or disputes arising under or relating to any state or federal laws, statutes or regulations, and any disputes as to the rights and obligations of the parties, including the arbitrability of disputes between the parties, shall be fully resolved by arbitration in accordance with Arizona's Arbitration Act and/or the Federal Arbitration Act.  Any arbitration between the parties will be governed by the Commercial Arbitration Rules of the American Arbitration Association (the "Rules").  The parties specifically agree that no dispute may be joined with the dispute of another and agree that class actions under this arbitration provision are prohibited.  In the event of conflict between the Rules and the provisions of this Agreement, the provisions of this Agreement shall control.  Exceptions/clarifications of the Rules include: (i) the proceedings shall be conducted by a single, neutral arbitrator to be selected by the parties, or, failing that, appointed in accordance with the Rules, (ii) the substantive law of the State of Arizona shall apply, and (iii) the award shall be conclusive and binding.  The place of the arbitration herein shall be

---

[1]The language in the two Contractor Agreements varies slightly.  For purposes of this order, the court refers to the language in Sheer's Contractor Agreement at doc. 128-1 pp. 5-16.

Maricopa County, Arizona.  Both parties agree to be fully and finally bound by the arbitration award, and judgment may be entered on the award in any court having jurisdiction thereof.  The parties agree that the arbitration fees shall be split between the parties, unless CONTRACTOR shows that the arbitration fees will impose a substantial financial hardship on CONTRACTOR as determined by the Arbitrator, in which event Swift will pay the arbitration fees.

....

29.   Limitation of Actions.  CONTRACTOR and COMPANY agree that any and all disputes or claims relating to or arising from the relationship created by this Agreement that are based upon federal law or federal regulation must be brought or filed no later than one (1) year after the claim accrues.

Schedule A, which is attached to Sheer's Contractor Agreement, further provides that Truck # 930356 is owned by Sheer, financed by Interstate Equipment Leasing ("IEL"), and is being operated by Swift under the Contractor Agreement dated August 7, 2006.[2] Schedule A attached to Van Dusen's Contractor Agreement similarly provides that Truck # 920127 is owned by Van Dusen, financed by IEL, and being operated by Swift under the Contractor Agreement dated March 3, 2009.[3]

On the same day they executed the Contractor Agreements with Swift, Sheer, and Van Dusen, each executed an "Equipment Leasing Agreement" with IEL (hereinafter "the Lease").[4]  The Lease provides in pertinent part that Sheer and Van Dusen, as lessees, "shall execute an Authorization for Deduction in favor of Lessor permitting [Swift] to deduct weekly lease payments owed to Lessor hereunder from any

[2]Doc. 128-1 at p. 14.

[3]*Id.* at p. 28.

[4]The language in the two Leases varies, but carries the same import.  For purposes of this order, the court refers to the language in Sheer's Lease at docket 128-2 at pp. 4-15.

compensation due to Lessee by Swift" and that "Swift shall not make any lease payment on behalf of Lessee if there is no compensation due to Lessee by Swift."[5]  The Lease states that the Lessee shall be in default under the Lease in the event the "Lessee's Contractor Agreement as an owner/operator with Swift is terminated by Swift or Lessee."[6]  The Lease further states that in the event of default, Lessor may "declare the entire amount of unpaid rent then accrued and thereafter payable for all Equipment then leased hereunder to be immediately due and payable."[7]  The Lease also provides that the Lease shall "be governed and construed in accordance with the laws of the State of Arizona" and that the "Parties agree that any lawsuit arising under or pursuant to this Lease shall be subject to the jurisdiction of the Superior Court of Maricopa County, Arizona and any objections to venue are hereby waived."[8]

Jerry Moyes is the Chief Executive Officer and Director of both Swift and IEL.[9] Chad Killebrew is Executive Vice President, Business Transformation with Swift, and has also served as President of IEL.[10]  Van Dusen's Lease indicates that IEL's principal

---

[5] Doc. 128-2 at p. 4.

[6] *Id.* at p. 8.

[7] *Id.*

[8] *Id.* at p. 11.

[9] Doc. 74 at pp. 6-12.

[10] Doc. 74 at pp. 12, 16.  It is unclear from the record whether Killebrew is currently the President of IEL.

place of business is 2200 South 75th Avenue, Phoenix AZ 85403,[11] which is the same address listed by the Arizona Corporate Commission as Swift's domestic address.[12]

Swift terminated its Contractor Agreement with Sheer as of April 7, 2009.[13] Van Dusen terminated her Contractor Agreement with Swift as of February 12, 2010.[14] On December 22, 2009, Sheer filed a complaint in United States District Court for the Southern District of New York, alleging claims under the Fair Labor Standards Act ("FLSA"), New York labor law, and California Labor Code. Sheer subsequently filed a first amended complaint, adding Van Dusen as a plaintiff and additional causes of action for declaratory judgment, unjust enrichment, and violations of New York and California contract law.

On March 24, 2010, plaintiffs filed a second amended complaint adding Jerry Moyes and Chad Killebrew as defendants. Plaintiffs' "Second Amended Collective & Class Action Complaint" sets forth eight claims: 1) defendants failed to pay plaintiffs minimum wages in violation of the FLSA; 2) defendants have been unjustly enriched by the unconscionable terms of the Lease and Contractor Agreement they imposed on plaintiffs; 3) plaintiffs are entitled to a declaratory judgment that defendants' Lease and Contract Agreement are unconscionable; 4) defendants failed to pay minimum wages and made unlawful deductions from pay due plaintiff Van Dusen and the New York class in violation of New York labor law; 5) defendants' Lease and Contractor

---

[11]Doc. 128-2 at p. 4.

[12]Doc. 74 at p. 6.

[13]Doc. 128-1 at p. 18.

[14]*Id.* at p. 36.

Agreement are unconscionable under New York contract law; 6) defendants failed to pay minimum wages to plaintiff Sheer and the California class and engaged in unfair competition in violation of California labor law; 7) defendants' Lease and Contractor Agreement are unconscionable under California contract law; and, 8) defendants caused plaintiffs to engage in forced labor in violation of 18 U.S.C. §§ 1589 and 1595.

By order dated April 8, 2010, the district court in New York transferred this action to U.S. District Court for the District of Arizona on the basis that the District of Arizona is the proper venue.[15]  Defendants now move to compel arbitration and dismiss this action, or in the alternative to stay this action pending completion of arbitration.

### III.  DISCUSSION

"The [Federal Arbitration Act] reflects the fundamental principle that arbitration is a matter of contract."[16]  The FAA "places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms."[17] Section 2 of the FAA provides in pertinent part,

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.[18]

---

[15]Doc. 85.

[16]*Rent-A-Center, West, Inc. v. Jackson*, — U.S. —, 130 S. Ct. 2772, 2776, — L.Ed.2d — (2010).

[17]*Id.*

[18]9 U.S.C. § 2.

Like other contracts, arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'"[19]

Pursuant to § 3 of the FAA, "a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'"[20]  "Under § 4, a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'"[21]  "The court 'shall' order arbitration 'upon being satisfied that the making of the agreement for the arbitration or the failure to comply therewith is not in issue.'"[22]

"The Supreme Court has held that the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."[23]  "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."[24]

---

[19] *Rent-A-Center*, 130 S. Ct. at 2776 (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

[20] *Id.* (quoting 9 U.S.C. § 3).

[21] *Id.* (quoting 9 U.S.C. § 4).

[22] *Id.* (quoting 9 U.S.C. § 4).

[23] *Simula, Inc. v. Autoliv Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).

[24] *Chiron Corporation v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

It is uncontroverted that the Contractor Agreement is a "contract evidencing a transaction involving commerce" and that it contains a "written provision" to "settle by arbitration a controversy."[25]  Section 28 of the Contractor Agreement provides in relevant part,

> All disputes and claims arising under, arising out of or relating to this Agreement, including an allegation of breach thereof, and any disputes arising out of or relating to the relationship created by the Agreement, including any claims or disputes arising under or relating to any state or federal laws, statutes or regulations, and any disputes as to the rights and obligations of the parties, including the arbitrability of disputes between the parties, shall be fully resolved by arbitration in accordance with Arizona's Arbitration Act and/or the Federal Arbitration Act.[26]

Defendants request the court for an order compelling arbitration pursuant to the terms of the arbitration agreement.  Plaintiffs oppose the motion to compel on several grounds: 1) defendants waived their right to compel arbitration; 2) the delegation provision of the arbitration agreement is unconscionable; 3) this action is exempt from arbitration under both federal and state arbitration law; and 4) counts two and three are not within the scope of the arbitration agreement because they arise out of the Lease. The court considers each argument in turn.

---

[25]9 U.S.C. § 2.

[26]Doc. 128-1 at p. 12.

### A.  Waiver

Plaintiffs argue that defendants waived their right to rely on the arbitration provision in the Contractor Agreement "through their delay and substantial litigation before moving to compel arbitration."[27]  Because the right to arbitrate is a contractual right, waiver of the right to arbitrate is disfavored, and plaintiffs bear a heavy burden of proof in establishing such a waiver.[28]  To prevail on this issue, plaintiffs "must show that the defendants knew of their right to arbitrate, acted inconsistently with that right, and, in doing so, prejudiced [plaintiffs] by their actions."[29]

Plaintiffs have failed to meet their burden of establishing that defendants acted inconsistently with their intent to rely on the right to arbitrate.  The record demonstrates that in accordance with practices in the District of New York, defendants requested a pre-motion conference for permission to file a motion to stay the proceedings and compel arbitration.[30]  Prior to filing the above request, defendants also filed a motion to dismiss the matter for improper venue or, in the alternative, for transfer to the District of Arizona.  In their motion to dismiss, defendants argued that the district court in Arizona was the proper court to resolve a motion to compel arbitration.[31]  Based on the above,

---

[27]Doc. 188 at p. 33.

[28]*Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 758 (9th Cir. 1988); *Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 724 (9th Cir. 2000).

[29]*Chappel*, 232 F.3d at 724.

[30]Doc. 57.

[31]Doc. 57 n.1.

plaintiffs cannot show that defendants acted inconsistently with their right to arbitrate or that defendants' actions prejudiced plaintiffs.

### B.  Unconscionability of Delegation Provision

Plaintiffs next challenge the validity of the arbitration agreement on the grounds of unconscionability.  "There are two types of validity challenges under § 2: 'One type challenges specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement . . . or on the ground that the illegality of one of the contract provisions renders the whole contract invalid.'"[32]  If a party challenges the validity of the precise agreement to arbitrate at issue under § 2, the district court must consider the challenge before ordering compliance with the agreement under § 4.  On the other hand, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent the court from enforcing a specific agreement to arbitrate."[33]

The Supreme Court has recognized that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,'" such as the validity of the arbitration agreement.[34]  An agreement to arbitrate threshold issues concerning arbitrability is sometimes referred to as a delegation provision.  Here, the arbitration agreement contains a delegation provision which states that "any disputes as to the rights and obligations of the parties, including the arbitrability of disputes between the parties, shall be fully resolved by

---

[32] *Rent-A-Center*, 130 S.Ct. at 2778 (quoting Buckeye, 546 U.S. at 444).

[33] *Id.*

[34] *Id.*

arbitration."[35]  In *Rent-A-Center*, the Supreme Court held that where an agreement to arbitrate includes a delegation provision, if a party challenges the enforceability of the delegation provision, the district court considers the challenge, but if a party challenges the enforceability of the agreement as a whole, the arbitrator decides the issue.[36] Plaintiffs contend that the delegation provision of the arbitration agreement is unconscionable.  Because plaintiffs challenge the validity of the delegation provision specifically, the court considers the challenge.[37]

"[U]nconscionability is governed by state law," and in this case Arizona law applies.[38]  Arizona law recognizes both procedural and substantive unconscionability as grounds for finding a contract unenforceable.[39]  "Procedural or process unconscionability is concerned with unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should."[40]  "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed."[41]  "Indications of substantive

---

[35]Doc. 128-1 at p. 12.

[36]*Rent-A-Center*, 130 S. Ct. at 2778-2779.

[37]*Id.*

[38]*Jones v. General Motors Corp.*, 640 F. Supp. 2d 1124, 1129 (D. Ariz., 2009) (quoting *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009)).

[39]*Maxwell v. Fidelity Fin. Servs.*, 907 P.2d 51, 58 (Ariz. 1995).

[40]*Jones,* 640 F. Supp. 2d at 1130 (quoting *Maxwell*, 907 P.2d at 57-58).

[41]*Id.* (quoting *Maxwell*, 907 P.2d at 58).

unconscionability include gross disparity in the values exchanged, unduly oppressive terms, and overall imbalance in the rights and protections of the parties."[42]

Plaintiffs argue that the delegation clause is substantively unconscionable because it is: 1) subject to the prohibition on class actions and joinder of claims contained in the arbitration agreement, 2) governed by the AAA Commercial Arbitration Rules which impose unconscionable costs on plaintiffs and limit discovery, and 3) subject to the one-year limitation on bringing certain federal claims and the provision providing for fees to the prevailing party.  After careful review, the court concludes that the delegation provision is not substantively unconscionable under any of these theories.

Plaintiffs first argue that the prohibition on class actions and joinder of claims  in the arbitration agreement renders the delegation provision unconscionable because it requires each plaintiff to file an arbitration action to present his or her challenges to arbitrability.  Plaintiffs contend that the prohibition on class actions will preclude plaintiffs from proceeding with their claims and from obtaining legal representation.  Plaintiffs' speculative arguments are not persuasive, particularly in light of the fact that the arbitration agreement provides a mechanism for waiving plaintiffs' arbitration fees and the Contractor Agreement provides for attorneys' fees and costs to the prevailing party.

Moreover, plaintiffs do not cite any controlling authority for the proposition that it is unconscionable under Arizona law for a delegation provision to prohibit class actions

---

[42]*Banner Health v. Medical Sav. Ins. Co.*, 163 P.3d 1096, 1109 (Ariz. App. 2007) (Kessler, Presiding Judge, concurring in part and dissenting in part) (citing Restatement (Second of Contracts § 208 (1981).

and the joinder of claims.[43]  Plaintiffs cite cases relying on California law, but California law does not apply here.  The Supreme Court recently recognized that parties cannot be compelled to submit their claims to class arbitration unless there is a contractual basis for concluding that the parties agreed to do so.  In support, the court reasoned that because class action arbitration changes the nature of arbitration to such a large degree and the relative benefits of class action arbitration are much less assured than the benefits of bilateral arbitration, the parties must expressly agree to submit their disputes to an arbitrator.[44]  Here, the parties agreed "that no dispute may be joined with the dispute of another and agree[d] that class actions under this arbitration provision are prohibited."[45]  The central purpose of the FAA "is to ensure that 'private agreements to arbitrate are enforced according to their terms.'"[46]

Plaintiffs next argue that the delegation provision is unconscionable because it is subject to the AAA Commercial Arbitration Rules which split arbitration fees between the parties and limit discovery.  Plaintiffs contend that costs imposed by the Commercial Rules are so onerous that they will prevent plaintiffs from pursuing their arbitrability claims.  Arbitration under the FAA is a matter of consent and "parties are generally free

---

[43]Plaintiffs cite one District of Arizona case finding such a prohibition unconscionable, but the case is distinguishable because it involves consumer contracts of adhesion involving small amounts of damages.  *See Cooper v. QC Financial Services, Inc.*, 503 F. Supp. 2d 1266, 1289-1290 (D.Ariz. 2007).

[44]*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, — U.S. —, 130 S. Ct. 1758, 1775-1776 (2010)

[45]Doc. 128-1 at p. 12.

[46]*Stolt-Nielsen*, 130 S. Ct. at 1773 (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

to structure their arbitration agreements as they see fit," including specifying by contract the rules under which the arbitration will be conducted.[47]  Where the parties have agreed to abide by particular rules of arbitration, "enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA."[48]

Moreover, a party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of providing "individualized evidence to establish that the costs of arbitration are prohibitive."[49] Plaintiffs have not met that burden.  Plaintiffs contend that under the Commercial Rules they would have to pay half of a filing fee to commence an action and raise their claim concerning the unconscionability of the delegation clause, but do not provide individualized evidence supporting their argument that such fees would be prohibitively expensive based on their particular financial situations.[50]  As *Rent-A-Center* points out, challenging a delegation clause based on a theory of prohibitive costs "may be more difficult to establish" because the issue of enforceability is far more narrow than the overall merits of the dispute.[51]  In addition, the arbitration provision at issue here contains a hardship provision to defer or waive all or part of the arbitration fees if a

---

[47]*Volt*, 489 U.S. at 479 ("Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA . . .").

[48]*Volt*, 489 U.S. at 479.

[49]*Harrington v. Pulte Home Corp.*, 119 P.3d 1044, 1055 (Ariz. App. Div. 1 2005).

[50]*Id.* at 1056.

[51]*Rent-A-Center*, 130 S. Ct. at 2780.

contractor shows that the arbitration will impose a substantial financial hardship.[52]

Plaintiffs also contend that the discovery limitations contained in the Commercial Rules as applied to the delegation clause render the delegation provision unconscionable.  However, Commercial Rule R-21 provides that at the request of any party or at the arbitrator's discretion, the arbitrator "consistent with the expedited nature of arbitration" may direct "the production of documents and other information" and " the identification of any witnesses to be called."[53]  Rule R-21 also authorizes the arbitrator to resolve disputes concerning the exchange of information.  Based on the above, plaintiffs have failed to demonstrate that any alleged discovery limitations in the Commercial Rules are unduly oppressive or result in an imbalance in the rights and protections of the parties.

Plaintiffs next argue that paragraphs 29 and 31 of the Contractor Agreement as applied to the delegation provision renders the delegation provision unconscionable. Paragraph 29 provides that "all disputes or claims relating to or arising from the relationship created by this Agreement that are based upon federal law or federal regulation must be brought or filed no later than one (1) year after the claim accrues."[54] Paragraph 31 provides that if either party brings an action to enforce any provision of the Contractor Agreement, secure specific performance, or collect damages for breach of the Agreement, the prevailing party is entitled to costs and reasonable attorneys'

---

[52]Doc. 128-1 at p. 12.

[53]*See* http://www.adr.org/sp.asp?id=2240 #R21 (reachable via Google search).

[54]Doc. 128-1 at p. 13.

fees.  Paragraphs 29 and 31 are not contained in the arbitration agreement itself, which is located in paragraph 28 of the Contractor Agreement.  Rather, paragraphs 29 and 30 are separate provisions of the Contractor Agreement which apply to the contract as a whole.  Because this challenge is not specific to the delegation provision, but is a challenge to other provisions of the Contractor Agreement which affect the entire contract, it must go to the arbitrator.[55]

In any event, plaintiffs' arguments concerning attorneys' fees are unavailing because under Arizona law, plaintiffs could also be held liable for fees and costs if they pursued their claims in court and failed to prevail on those claims.[56]  Similarly, plaintiffs' arguments that the one-year limitation on bringing certain federal claims as applied to the delegation provision renders the delegation provision unconscionable is unpersuasive because none of the plaintiffs are prejudiced by the potential application of this provision.[57]  Defendants concede that plaintiffs have all timely filed their complaints, which are deemed sufficient notice to trigger the arbitration provision.[58] For the above reasons, the court concludes that the delegation provision is not substantively unconscionable under any of plaintiffs' theories.

---

[55]*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006); *Rent-A-Center*, 130 S. Ct. at 2778-2779.

[56]*See, e.g.*, A.R.S. § 12-341 (governing the award of costs to the prevailing party in a civil litigation) and A.R.S. § 12-341.01(governing the award of attorneys' fees for actions arising out of contract.)

[57]Doc. 199 at p. 17.

[58]*Id.*

-16-

### C.  Exemption for Arbitration

Plaintiffs contend that the arbitration agreement in the Contractor Agreement is exempt from arbitration under the FAA and the Arizona Arbitration Act ("AAA") "because it is part of a contract of employment of workers engaged in interstate commerce."[59] Section 1 of the FAA provides that the FAA does not apply to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."[60]  "Section 1 exempts from the FAA only contracts of employment of transportation workers."[61]  The AAA "exempts all employer and employee employment agreements from the provisions of [the Act]."[62]

Plaintiffs contend that their claims arise from the provisions of both the Contractor Agreement and the Lease, and that under the terms of the agreements when read together, plaintiffs were employees of defendants.  Plaintiffs further argue that "[t]he issue of whether an employer/employee relationship exists between the plaintiffs and defendants is not only central to the question of exemption from arbitration, it is also a central element of all of Plaintiffs' substantive claims other than unconscionability."[63] Plaintiffs' remaining claims involve entitlements to benefits under the FLSA, California Labor Code, and New York Labor Code.  Whether plaintiffs are entitled to those benefits

---

[59]Doc. 188 at p. 15 n.5.

[60]9 U.S.C. § 1.

[61]*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

[62]*North Valley Emergency Specialists, LLC v. Santana*, 93 P.3d 501, 506 (Ariz. 2004) (citing A.R.S. § 12-1517).

[63]Doc. 188 at p. 15 n.5.

depends in large part on whether they are employees of defendants or independent contractors.

The court having determined that a valid agreement to arbitrate exists must next consider whether the dispute at issue "falls within the scope of the parties' agreement to arbitrate."[64]  The scope of an arbitration provision is governed by federal law.[65]  "The FAA embodies a clear federal policy in favor of arbitration," and establishes as a matter of law that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[66]

The arbitration agreement provides that "any disputes arising out of or relating to the relationship created by the Agreement, including any claims or disputes arising under or relating to any state or federal laws, statutes or regulations . . . shall be fully resolved by arbitration."[67] The Ninth Circuit has held that the language "arising in connection with" reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract."[68]  "To require arbitration, [plaintiffs'] factual allegations need only "touch

---

[64]*Chiron*, 207 F.3d 1126.

[65]*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).

[66]*Simula*, 175 F.3d at 719. (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983))

[67]Doc. 128-1 at p. 12.

[68]*Simula*, 175 F.3d at 721.

matters" covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability."[69]

This aspect of the dispute centers on whether plaintiffs were defendants' employees, rather than independent contractors, and thus are entitled to benefits which are afforded to employees.  Deciding whether an employer-employee relationship exists between the parties falls within the scope of the arbitration agreement, because the arbitration agreement explicitly includes "any disputes arising out of or relating to the relationship created by the [Contractor Agreement]," as well as "any disputes as to the rights and obligations of the parties, including the arbitrability of disputes between the parties" under the terms of the arbitration agreement.[70]

In addition, resolving whether an employer-employee relationship exists would require an analysis of the Contractor Agreement as a whole, as well as the Lease and evidence of the amount of control exerted over plaintiffs by defendants, to determine whether an employer/employee relationship existed between the parties.  When the threshold question of arbitrability is before the district court, the district court considers only the validity and scope of the arbitration clause itself and not the contract as a whole.[71]

---

[69] *Id.*

[70] Doc. 128-1 at p. 12.

[71] *Republic of Nicaragua* v. Standard Fruit Co., 937 F.3d 469, 477 (9th Cir. 1991).

### D.  Counts Two and Three

Finally, plaintiffs contend that counts two and three of the Second Amended Complaint are not within the scope of the arbitration agreement because they arise in connection with the Lease, which requires disputes arising out of the Lease to be brought in state or federal court.  However, by the plain language of the complaint, counts 2 and 3 arise out of both the Lease and the Contractor Agreement.  Count 2 alleges that defendants' Lease and Contractor Agreement are unconscionable and that defendants "have been unjustly enriched by the unconscionable terms of the contracts they imposed on the Plaintiffs."[72]  Count 3 alleges that plaintiffs are entitled to a declaratory judgment that "the Corporate Defendants' lease and [Contractor Agreement] are unconscionable."[73]

The arbitration agreement provides that "[a]ll disputes and claims arising under, arising out of or relating to [the Contractor Agreement]" are subject to arbitration.  Counts two and three are within the broad scope of the arbitration agreement because they arise out of both the Lease and the Contractor Agreement.  All remaining claims are subject to arbitration because plaintiffs concede that these claims arise from the provisions of both the Contractor Agreement and the Lease.

Although the parties do not discuss the point, the court further notes that based on the facts alleged in plaintiffs' complaint and the terms of the Lease and Contractor Agreement, IEL may be held to an arbitration of the claims against it even though it is a

---

[72]Doc. 62 at p. 24.

[73]*Id.* at p. 25.

nonsignatory to the Contractor Agreement containing the arbitration agreement.  The Ninth Circuit has recognized that as a matter of equitable estoppel "a nonsignatory may be held to an arbitration clause 'where the nonsignatory knowingly exploits the agreement containing the arbitration clause despite never having signed the agreement.'"[74]  The terms of IEL's Lease and Swift's Contractor Agreement are entwined and mutually beneficial.  The authorization for deduction of weekly lease payments to IEL is incorporated by reference into the Contractor Agreement, and the Lease also provides that lessees are in default if their Contractor Agreements with Swift are terminated by Swift or the lessees.

**E.  Remedy**

Because a valid arbitration agreement exists and plaintiffs' claims are within the scope of the arbitration agreement, the court must refer the action to arbitration and determine whether to dismiss the action or stay the action pending the results of arbitration.  In *Bushley v. Credit Suisse First Boston*,[75] the Ninth Circuit endorsed the advice of the Second Circuit that district courts "should be aware that a dismissal renders an order appealable under [9 U.S.C.] § 16(a)(3), while the granting of a stay is an unappealable interlocutory order under 16(b) . . . .  Unnecessary delay of the arbitral process through appellate review is disfavored."[76]  "The [FAA] represents Congress's intent 'to move the parties to an arbitrable dispute out of court and into arbitration as

---

[74]*Mundi v. Union Security Life Insurance Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009)

[75]360 F.3d 1149 (9th Cir. 2004).

[76]*Bushley*, 360 F.3d at 1153 n.1.

quickly and easily as possible.'"[77] In keeping with the Congressional intent to move arbitrable disputes into arbitration as expeditiously as possible, the court will stay this action pending completion of arbitration.

### IV.  CONCLUSION

For the reasons set out above, defendants' motion at docket 127 to compel arbitration is **GRANTED**, and all of plaintiffs' claims are referred to arbitration pursuant to 9 U.S.C. § 4.  It is further **ORDERED** that this action is **STAYED** pending the outcome of arbitration pursuant to 9 U.S.C. § 3 and further order of this court.  Finally, it is **ORDERED** that all other pending motions in this action are **DENIED WITHOUT PREJUDICE**.

DATED this 30th day of September 2010.


/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[77] *Id.* at 1153 (quoting *Moses H. Cone*, 460 U.S. at 22)).