SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
RONALD J. HOLLAND, Cal. Bar No. 148687 *(Pro Hac Vice)*
rholland@sheppardmullin.com
ELLEN M. BRONCHETTI, Cal. Bar No. 226975 *(Pro Hac Vice)*
ebronchetti@sheppardmullin.com
PAUL S. COWIE, Cal. Bar No. 250131 *(Pro Hac Vice)*
pcowie@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:  415-434-9100
Facsimile:  415-434-3947

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ROBERT MUSSIG, Cal. Bar No. 240369 *(Pro Hac Vice)*
rmussig@sheppardmullin.com
ANNA M. STANCU, Cal. Bar No. 288283 *(Pro Hac Vice)*
astancu@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071
Telephone:  213-620-1780
Facsimile:  213-620-1398

Attorneys for Defendants
SWIFT TRANSPORTATION CO. OF
ARIZONA, LLC, INTERSTATE EQUIPMENT
LEASING, LLC, CHAD KILLEBREW and
JERRY MOYES

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VIRGINIA VAN DUSEN; JOHN DOE 1; and JOSEPH SHEER, individually and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>SWIFT TRANSPORTATION CO., INC.; INTERSTATE EQUIPMENT LEASING, INC.; CHAD KILLIBREW; and JERRY MOYES,<br><br>Defendants. | Case No. CV 10-899-PHX-JWS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF VIRGINIA VAN DUSEN'S STATUS AS AN INDEPENDENT CONTRACTOR**<br><br>[Filed concurrently with Notice of Motion, Separate Statement, Request for Judicial Notice, and Declaration of Robert Mussig] |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 1

II. RELEVANT FACTUAL BACKGROUND ............................................................. 2

    A. Van Dusen's History With Swift And Her ICOAs ....................................... 2

    B. Van Dusen Determined The Way She Performed Her Work As An Owner Operator ............................................................................................ 3

    C. Van Dusen Made Significant Investments In Equipment And Materials And Could Hire Labor As An Owner-Operator ...................................................... 5

    D. As An Owner-Operator, Van Dusen Had Opportunity To Make Significant Profit Or Experience Loss Depending On Her Managerial Skill .................. 5

    E. The Parties' Intention Was To Form An Independent Contractor Relationship ................................................................................................... 6

    F. As An Owner-Operator, Van Dusen Was Paid By The Job, Received A 1099 Form, And Was Not Entitled To Benefits ...................................................... 6

III. LEGAL STANDARD ................................................................................................ 6

IV. VAN DUSEN WAS PROPERLY CLASSIFIED AS AN INDEPENDENT CONTRACTOR ........................................................................................................... 7

    A. Van Dusen Exhibited Complete Control Over The Manner and Means Of Performing Her Work .................................................................................. 10

    B. Van Dusen Made Significant Investments In Her Equipment, Material, And Tools .............................................................................................................. 11

    C. Van Dusen Could Have Her Own Business, And Her Opportunity For Profit Or Loss Was Based On Her Specialized Managerial Skill ......................... 11

    D. Van Dusen Was Paid Via Weekly Settlements, Did Not Receive Employee Benefits, And Was Treated As An Independent Contractor For Tax Purposes ....................................................................................................... 12

    E. Courts In Analogous Cases Have Found That Drivers Were Properly Classified As Independent Contractors ....................................................... 13

V. CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Addisu v. Fred Meyer, Inc.*
    198 F.3d 1130 (9th Cir. 2000) .................................................................................. 7

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ................................................................................................ 7

*Arpin v. Santa Clara Valley Transp. Agency*
    261 F.3d 912 (9th Cir. 2001) .................................................................................. 7

*Aviles v. Quik Pick Express, LLC*
    No. CV-15-5214-MWF (AGR), 2015 U.S. Dist. LEXIS 174960 (C.D.
    Cal. Dec. 3, 2015) ............................................................................................ 8, 13

*Bell v. Atl. Trucking Co.*
    No. 3:09-cv-406-J-32MCR, 2009 U.S. Dist. LEXIS 114342 (M.D. Fla.
    Dec. 7, 2009) .......................................................................................................... 8

*Carney v. JNJ Express, Inc.*
    10 F. Supp. 3d 848, 853-854 (W.D. Tenn. 2014) ............................................... 13

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ............................................................................................ 6, 7

*Chao v. Mid-Atlantic Installation Servs.*
    16 Fed. Appx. 104 (4th Cir. 2001) ...................................................................... 11

*Cmty. for Creative Non-Violence v. Reid*
    490 U.S. 730 (1989) ............................................................................................ 7, 8

*Davis v. Larson Moving & Storage Co.*
    No. 08-1408, 2008 U.S. Dist. LEXIS 87251 (D. Minn. Oct. 27, 2008) .............. 8, 13, 14

*Dole v. Amerilink Corp.*
    729 F. Supp. 73 (E.D. Mi. 1990) .......................................................................... 11

*Donovan v. Sureway Cleaners*
    656 F.2d 1368 (9th Cir. 1981) .............................................................................. 9

*Nationwide Mut. Ins. Co. v. Darden*
    503 U.S. 318 (1992) ............................................................................................... 8

-ii-

SMRH:478021448.1   MEMORANDUM OF P'S AND A'S ISO MOTION FOR PARTIAL SUMMARY JUDGMENT AS
TO PLAINTIFF VIRGINIA VAN DUSEN'S STATUS AS AN INDEPENDENT CONTRACTOR

*Real v. Driscoll Strawberry Associates, Inc.*
 603 F.2d 748 (9th Cir. 1979) ............................................................................................. 9

*Salamon v. Our Lady of Victory Hosp.*
 514 F.3d 217 (2nd Cir. 2008) ............................................................................................ 8

*Tarin v. County of Los Angeles*
 123 F.3d 1259 (9th Cir. 1997) ........................................................................................... 6

*Wolcott v. Nationwide Mut. Ins. Co.*
 884 F.2d 245 (6th Cir. 1989) ........................................................................................... 12

*Young v. Swift Transportation Co. of Arizona* LLC,
 Case No. 08-46182 RR .................................................................................................... 14

Statutes

29 U.S.C. 201 ............................................................................................................................ 9

29 U.S.C. § 203(d), (e)(1), (g) .................................................................................................. 9

Copyright Act ........................................................................................................................... 8

Employee Retirement Income Security Act ............................................................................. 8

Fair Labor Standard Act of 1938 .............................................................................................. 9

Federal Arbitration Act .................................................................................................. 1, 7, 8, 9

Federal Arbitration Act § 1 ....................................................................................................... 1

Other Authorities

Federal Rule of Civil Procedure 56(c) ...................................................................................... 6

-iii-

SMRH:478021448.1  MEMORANDUM OF P'S AND A'S ISO MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF VIRGINIA VAN DUSEN'S STATUS AS AN INDEPENDENT CONTRACTOR

# I. INTRODUCTION

Plaintiff Virginia Van Dusen performed truck driving services for Defendant Swift Transportation Co., Inc. as an independent contractor/Owner-Operator. Although Van Dusen signed multiple Independent Contractor Operating Agreements ("ICOA") with Swift which clearly and unmistakably specified her status as an independent contractor, she now claims that she was misclassified and was actually an employee. Van Dusen's claim fails as a matter of law. The undisputed evidence shows that Van Dusen was unequivocally an independent contractor under the applicable legal standard.[1]

Swift did not exert employer-like control over Van Dusen during the time she was an Owner-Operator – the most crucial factor in determining whether an employment relationship existed. Van Dusen maintained control over virtually every aspect of her work, including how she managed her routes and the manner and means by which she delivered freight. For instance, Van Dusen selected her own delivery routes and had the ability to turn down loads without repercussion. Van Dusen could determine on her own which loads to take or decline in order to "make money." Further, Swift did not provide Van Dusen with, nor require her to follow, any of its company policies while she was an Owner-Operator. Van Dusen also established a business partnership with her husband for the purpose of performing work under the ICOAs. Finally, Van Dusen supplied all of her own equipment (including her truck), paid her own expenses, paid her own taxes, and had the ability to hire employees and work for other carriers if she chose.

As is clear from Van Dusen's deposition testimony, as well as the language in her ICOAs and the Equipment Leasing Agreement she signed with Defendant Interstate Equipment Leasing, Inc., there is no aspect of Van Dusen's work as an Owner-Operator

---

[1] Because Van Dusen was properly classified as an independent contractor, her ICOAs, which contain arbitration provisions, are not "contracts of employment." Thus, her claims are not exempt from arbitration under Section 1 of the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. §1 (exempting "contracts of employment . . . of workers engaged in foreign or interstate commerce" from the FAA). She should therefore be required to arbitrate her claims.

-1-

that is indicative of an employment relationship, and she was properly classified as an independent contractor. No reasonable trier of fact could weigh the evidence and reach a contrary conclusion. Accordingly, the Court should find that Van Dusen was properly classified as an independent contractor during her time as an Owner-Operator.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Van Dusen's History With Swift And Her ICOAs

Van Dusen was originally hired by Swift as an employee driver in June 2008. (Deposition of Virginia Van Dusen ("Van Dusen Depo.") at 7:20-22.)  During her employment with Swift, Van Dusen decided she wanted to form a business relationship with Swift, and thus approached Swift about becoming an Owner-Operator. (Undisputed Material Facts ("UMF") 1.)  On March 3, 2009, Van Dusen became an Owner-Operator for Swift. (UMF 2.)  During her time as an Owner-Operator for Swift, she entered into three ICOAs with Swift which set forth the terms and conditions of the parties' independent contractor relationship. (UMF 3.)  The terms and provisions of all three ICOAs are substantially similar, and demonstrate that Van Dusen was properly classified as an independent contractor. Van Dusen's ICOAs unequivocally state that "[Van Dusen] shall be considered an Independent Contractor and not an employee of [Swift]." (UMF 4.) They also state that Van Dusen: (1) was solely responsible for determining the "method, means and manner" of performing work and providing services under the ICOAs, (2) was not required to purchase or rent any products, equipment, or services from Swift, (3) had no obligation to accept any loads tendered by Swift, (4) had no obligation to purchase fuel from Swift, (5) was solely responsible for proving the equipment and the labor necessary to perform all work under the ICOAs, (6) was solely responsible for paying her own operating and maintenance expenses, and (7) was entitled to haul for other carriers as long as she removed any Swift indicia from her truck. (UMFs 5-11.)

In February 2010, Van Dusen decided to terminate her independent contractor relationship with Swift because she was unhappy with the relationship. (UMF 12.)  In total, she was an Owner-Operator for less than one year. (UMF 13.)

SMRH:478021448.1   MEMORANDUM OF P'S AND A'S ISO MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF VIRGINIA VAN DUSEN'S STATUS AS AN INDEPENDENT CONTRACTOR

### B. <u>Van Dusen Determined The Way She Performed Her Work As An Owner Operator</u>

As an Owner-Operator, Van Dusen exercised control over nearly every aspect of the way she performed her work.

When Van Dusen started work as an Owner-Operator, she did not receive a handbook or any other documents or instruction from Swift outlining any policies, rules, or regulations, aside from a handout suggesting that she regularly clean out her trailer. (UMF 14.) Aside from that cleaning handout, Swift did not provide her with, nor require her to be familiar with, any Swift policies or procedures as an Owner-Operator. (UMF 15.) Swift did not conduct any performance evaluation for her, nor subject her to any disciplinary action while she was an Owner-Operator. (UMFs 16-17.)

By stark contrast, when Van Dusen was an *employee* driver for Swift, she was required to undergo extensive new hire training regarding how she should carry out her duties. (Van Dusen Depo. at 12:16-14:20, 18:20-19:8.) Indeed, before she was able to start working as a Swift employee, Van Dusen attended and graduated from "Swift school." (Van Dusen Depo. at 12:16-14:20.) At "Swift school," Swift instructed Van Dusen regarding the fine details of how she was expected to drive her truck as a Swift employee. (Van Dusen Depo. at 13:17-14:1.) After graduating from "Swift school," Van Dusen was required to undergo a mentorship program. (Van Dusen Depo. at 18:20-19:10.) During that time, Van Dusen rode in a truck with a Swift mentor for six weeks, and was instructed on how to deliver loads properly. (*See id.*)

When Van Dusen was an Owner-Operator, Swift did not require her to take any particular route when delivering her freight. (UMF 18.) Van Dusen was not required to inform Swift that she was taking a different route than the optional route provided to her. (Deposition of Dave Berry ("Berry Depo.") at 96:10-15.)

Additionally, Van Dusen was free to accept and decline freight loads offered to her as an Owner-Operator. (UMF 19.) While she rarely turned down loads, this was entirely her choice, as she felt it was a smart business decision to maximize the loads she delivered.

-3-

1  (UMF 20.)  Just as Van Dusen was not required to accept the loads offered to her, Swift
2  was not required to give her a specific number of loads.  (UMF 21.)  Importantly, Van
3  Dusen was informed that she was not limited to delivering Swift loads – rather she had the
4  option to "operate under her own authority" by, among other things, "pull[ing] off the
5  [Swift] load boards." (Van Dusen Depo. at 45:3-12; 45:20-46:1.)  In other words, Van
6  Dusen could deliver a load under her own authority (not Swift's).  (*See* Van Dusen Depo.
7  at 45:20-46:1.)  Van Dusen chose not to apply for such authority.   (Van Dusen Depo. at
8  45:20-46:3.)

9  Further, no one from Swift was ever present while she performed her work as an
10 Owner-Operator to direct her on how to carry out her work.  (UMF 22.)  No one from
11 Swift met with her at pick-up sites.  (UMF 23.)  Moreover, as an Owner-Operator, Van
12 Dusen was not required to visit any particular repair shops, maintenance shops, or fuel
13 stops. (UMF 24. )  Instead, Van Dusen could chose whatever fueling stops, repair shops,
14 and maintenance shops she wanted.  (UMF 24.)

15 Swift did not control who drove with or for Van Dusen.  As an Owner-Operator,
16 Van Dusen could drive in a "team" if she preferred – and indeed, she did so.  (UMF 25.)
17 She knew of several other Owner-Operator team drivers as well.  ( Van Dusen Depo. at
18 107:11-18.)  Her choice to be a team driver was driven by her desire to maximize her
19 income.  (UMF 26.)  In addition, she could also assign someone of her choosing to deliver
20 freight or perform other work in her place.  (UMF 27.)  Van Dusen could also hire her own
21 employees or laborers to work for her as an Owner-Operator.  (UMF 28.)  Also, Van
22 Dusen could even have her dog ride with her in her truck as an Owner-Operator.  (UMF
23 29.)  She did not need permission to do so.  (UMF 29.)  Van Dusen was free to, and indeed
24 did, take her truck on her personal errands.  (UMF 30.)   She was not required to inform
25 Swift when she used her truck for personal reasons.  (Van Dusen Depo. at 112:3-25.)

26 In contrast, as an employee driver, Van Dusen was required to take her truck to a
27 Swift facility for any repairs or maintenance and fuel at Swift facilities.  (Van Dusen Depo.
28 at 29:14-16, 43:10-44:5.)

-4-

Swift also had no control over Van Dusen's appearance as an Owner-Operator. She was not required to wear a uniform, nor adhere to any rules regarding her attire. (UMF 31.)

Finally, Van Dusen was not prohibited from simultaneously performing work for other motor carriers as long as she removed any Swift indicia from her truck. (UMF 11.)

## C.  Van Dusen Made Significant Investments In Equipment And Materials As An Owner-Operator

When Van Dusen was an employee driver, Swift provided her with all the equipment and tools she needed to perform her work. (*See* Van Dusen Depo. at 28:19-29:7; 29:9-12; 148:7-9; 29:14-16; 125:3-5; 130:1-9.)

As an Owner-Operator, by contrast, Swift did not provide her with ***anything*** she needed to perform her work. (UMF 32.)  As an Owner-Operator, Van Dusen was required to invest in her own equipment and make all purchases herself.  She invested thousands of dollars into her truck. (UMF 33.)  Van Dusen was responsible for the repair, maintenance, and upkeep of her truck as an Owner-Operator, as well as her fuel. (UMF 34.)  She paid for her own damage insurance, health insurance, and workers' compensation insurance as an Owner-Operator. (UMF 35.)  She also paid for her own Bluetooth. (UMF 36.)  She rented her own Qualcomm system and transponder. (UMF 37.)

## D.  As An Owner-Operator, Van Dusen Had Opportunity To Make Significant Profit Or Experience Loss Depending On Her Managerial Skill

When Van Dusen was an Owner-Operator, she was aware she could take business risks in order to earn more money, such as leasing or owning multiple trucks, and hiring employees to drive and perform other work for her. (UMF 38.)  Indeed, she knew of other Owner-Operators with Swift who operated entire fleets of trucks. (UMF 39.)  She understood that managing multiple trucks could enable her to make more money. (UMF 40.)  She also understood that she could make more money if she was a "team" driver, and based on this she made the decision to form a driving "team" with her husband. (UMF 41.)  Van Dusen understood that she was not an employee, and that she was entitled to get

-5-

SMRH:4780021448.1   MEMORANDUM OF P'S AND A'S ISO MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF VIRGINIA VAN DUSEN'S STATUS AS AN INDEPENDENT CONTRACTOR

her own authority to deliver freight without being reliant on Swift for work.  (Van Dusen Depo. at 119:6-17.)  She understood there was no limit to the amount of money she could make as an Owner-Operator.  (UMF 42.)  She made decisions regarding which loads to accept or decline based on her desire to "make money."  (UMF 43.)

**E.     The Parties' Intention Was To Form An Independent Contractor Relationship**

Both Van Dusen and Swift intended to form an independent contractor relationship when they entered into the ICOAs.  When Van Dusen became an Owner-Operator, she understood that her relationship with Swift was changing.  (UMF 44.)  She understood that in becoming an Owner-Operator, she was beginning a business relationship with Swift.  (UMF 44.)  From the time she became an Owner-Operator, Van Dusen knew that she was an independent contractor and *not* an employee of Swift.  (UMF 45.)

**F.     As An Owner-Operator, Van Dusen Was Paid By The Job, Received A 1099 Form, And Was Not Entitled To Benefits**

As an Owner-Operator, Van Dusen was paid per the completion of each trip – not by the hour.  (UMF 46.)  She was also paid via weekly settlements, while employees are paid through payroll checks.  (UMF 47.)  Swift did not deduct taxes from her settlement payments, and Van Dusen was responsible for her own taxes.  (UMF 48.)  She received an Internal Revenue Service ("IRS") Form 1099, not a W-2.  (UMF 49.)  In addition, Van Dusen did not receive any employee benefits from Swift while she was an Owner-Operator.  (UMF 50.)

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) requires the court to grant summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Once this is

-6-

SMRH:478021448.1     MEMORANDUM OF P'S AND A'S ISO MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF VIRGINIA VAN DUSEN'S STATUS AS AN INDEPENDENT CONTRACTOR

1  done, the burden shifts to the nonmoving party to go beyond the pleadings and identify
2  "specific facts showing that there is a genuine issue for trial." *Id*; *Anderson v. Liberty*
3  *Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A scintilla of evidence or evidence that is merely
4  colorable or not significantly probative does not present a genuine issue of material fact."
5  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

6       Only genuine disputes over facts that might affect the outcome of the suit will
7  properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. If the
8  nonmoving party is unable to meet its burden of producing specific evidence from which a
9  reasonable trier of fact could return a verdict in its favor, summary judgment must be
10 granted. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

11      Here, the evidence – including the language in Van Dusen's independent contractor
12 and lease agreements and Van Dusen's deposition admissions – clearly demonstrates that
13 Van Dusen was properly classified as an independent contractor by Swift. No reasonable
14 trier of fact could weigh the evidence and reach a contrary conclusion. Summary
15 judgment on this issue is therefore appropriate.

16 **IV.**    **VAN DUSEN WAS PROPERLY CLASSIFIED AS AN INDEPENDENT**
17                        **CONTRACTOR**

18      The U.S. Supreme Court has not established a single rule or test for determining
19 whether an individual is an independent contractor or an employee. Under the
20 circumstances in this case, the appropriate standard is the common law "agency" test. The
21 issue in this case is whether Van Dusen's independent contractor agreement with Swift
22 was a "contract of employment" under the FAA. However, the FAA does not define the
23 phrase "contract of employment" or what it means to be an employee versus an
24 independent contractor. When a statute does not define "terms that have accumulated
25 settled meaning under … the common law, a court must infer … that Congress mean[t] to
26 incorporate the established [common law] meaning of these terms." *Cmty. for Creative*
27 *Non-Violence v. Reid*, 490 U.S. 730, 739 (1989). Accordingly, courts apply the general
28 common law of agency in determining whether an individual is an independent contractor

-7-

or employee for FAA purposes. *Aviles v. Quik Pick Express, LLC*, No. CV-15-5214-MWF (AGR), 2015 U.S. Dist. LEXIS 174960, at *9-13 (C.D. Cal. Dec. 3, 2015) (applying common law agency test to determine whether putative class members were independent contractors or employees under the FAA); *Bell v. Atl. Trucking Co.*, No. 3:09-cv-406-J-32MCR , 2009 U.S. Dist. LEXIS 114342, at *12-20 (M.D. Fla. Dec. 7, 2009) (same); *Davis v. Larson Moving & Storage Co.*, No. 08-1408 (JNE/JJG), 2008 U.S. Dist. LEXIS 87251, 17-18 (D. Minn. Oct. 27, 2008) (same); *accord Reid*, 490 U.S. at 740 (applying general common law of agency to define "employee" under the Copyright Act); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992) (applying general common law of agency to define "employee" under the Employee Retirement Income Security Act).

Under the common law analysis of agency, "all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Nationwide Mut. Ins. Co.*, 503 U.S. at 323. The Court must considers a number and variety of factors, including:

> (1) The hiring party's right to control the manner and means by which the product is accomplished;
> (2) The skill required;
> (3) The source of the instrumentalities and tools;
> (4) The location of the work;
> (5) The duration of the relationship between the parties;
> (6) Whether the hiring party has the right to assign additional projects to the hired party;
> (7) The extent of the hired party's discretion over when and how long to work;
> (8) The method of payment;
> (9) The hired party's role in hiring and paying assistants;
> (10) Whether the work is part of the regular business of the hiring party;
> (11) Whether the hiring party is in business;
> (12) The provision of employee benefits; and
> (13) The tax treatment of the hired party.

*Reid*, 490 U.S. at 751-52. "Other relevant factors may also be considered so long as they are drawn from the common law of agency." *Salamon v. Our Lady of Victory Hosp.*, 514

-8-

F.3d 217, 227 (2nd Cir. 2008).  Applying these factors to the facts of this case, it is clear that Van Dusen was properly classified as an independent contractor.[2]

Here, Van Dusen's own admissions demonstrate that she was properly classified as an independent contractor during the time she was an Owner-Operator for Swift.  As explained above, Van Dusen's deposition testimony shows that she was able to control the manner and means of completing her work, determine what routes and loads she chose, provide her own tools, hire her own employees, and establish her own business, the success or failure of which was dependent upon her own business acumen.  Further, Van Dusen's ICOAs and leasing agreement stated in no uncertain terms that she was an independent contractor, and the terms and conditions of these agreements establish that

---

[2]  There have been previous references in this case to the "economic realities" test for determining whether an individual is an independent contractor or employee.  However, the economic realities test only applies when making such a determination under the Fair Labor Standards Act of 1938, 29 U.S.C. 201 *et seq.* ("FLSA").  The common law agency test is not used because, unlike the FAA, the FLSA expressly defines the terms "employer", "employee," and "employ."  *See* 29 U.S.C. § 203(d), (e)(1), (g).  The economic realities test focuses on "whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service." *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981) (citations and quotations omitted).  The test analyzes the following a non-exhaustive list of six-factors to make this determination:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
> (4) whether the service rendered requires a special skill;
> (5) the degree of permanence of the working relationship; and
> (6) whether the service rendered is an integral part of the alleged employer's business.

*Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir. 1979) (holding that whether someone is an employee or independent contractor is determined "upon the circumstances of the whole activity").  The factors under the economic realities test are essentially a subset of the factors under the common law agency test. Regardless of which test the Court applies, Van Dusen was an independent contractor, not an employee, as set forth below.

-9-

1  Swift had little to no control over Van Dusen. The entirety of these factors show that Van
2  Dusen was properly classified as an independent contractor as a matter of law.

### A.   Van Dusen Exhibited Complete Control Over The Manner and Means Of Performing Her Work

The undisputed evidence demonstrates that Van Dusen had full control over the manner and means of performing her work. As described above, it is undisputed that:

- As an Owner-Operator, Van Dusen did not receive a handbook or any other documents or instruction from Swift outlining any policies, rules, or regulations – the only document she received was a handout suggesting that she regularly clean out her trailer. (UMF 14.)
- Swift did not conduct any performance evaluation for Van Dusen, nor subject her to any disciplinary action while she was an Owner-Operator. (UMFs 16-17.)
- As an Owner-Operator, Swift did not require Van Dusen to take any particular route when delivering her freight, and she could choose to take Swift's recommended route or not. (UMF 18.)
- Van Dusen could visit any fueling station, repair shop, or maintenance shop of her choosing as an Owner-Operator. (UMF 24.)
- No one from Swift was ever present while she performed her work as an Owner-Operator to direct her on how to carry out her work. (UMF 22.) No one from Swift met with her at pick-up sites. (UMF 23.)
- Swift did not control Van Dusen's appearance in any way while she was an Owner-Operator and did not require her to wear a uniform. (UMF 31.)
- Swift did not control who drove with or for Van Dusen. Van Dusen could assign someone of her choosing to deliver freight or perform other work in her place. (UMF 27.) In fact, she drove on a "team" with her husband. (UMFs 25, 41.) Van Dusen could have her dog ride with her in her truck as an Owner-Operator and did not need permission to do so. (UMF 29.)
- Van Dusen had the ability to hire drivers, driver helpers, and laborers to work for her as an Owner-Operator. (UMF 28.)
- Swift did not require Van Dusen to accept any particular freight loads offered to her as an Owner-Operator. (UMFs 7, 19.) While she rarely turned down loads, this was entirely her choice, as she felt it was a smart business decision to maximize the loads she delivered. (UMF 20.) Just as Van Dusen was not required to accept the loads offered to her, Swift was not required to give her a specific number of loads. (UMF 21.)
- Van Dusen was free to, and indeed did, take her truck on her personal errands. (UMF 31.) She was not required to inform Swift when she used her truck for personal reasons. (Van Dusen Depo. at 112:3-25.)
- Van Dusen had the ability to haul freight for other motor carriers as long as she removed any Swift indicia from her truck. (UMF 11.)

-10-

SMRH:478021448.1   MEMORANDUM OF P'S AND A'S ISO MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF VIRGINIA VAN DUSEN'S STATUS AS AN INDEPENDENT CONTRACTOR

1  Van Dusen's experience is consistent with the terms and conditions of her ICOAs
2  with Swift. Based on the above, it is clear that Swift had little or no control over any facet
3  of how Van Dusen performed her work. Moreover, her experience as an Owner-Operator
4  vastly differed from her experience as an employee at Swift, during which time Swift
5  exerted considerable control over her work. (*See* Section II B.)

6  Because Van Dusen admits she had full control over the manner and means of
7  performing her work, this factor weighs in favor of an independent contractor relationship.

## B. Van Dusen Made Significant Investments In Her Equipment, Material, And Tools

As explained above, Van Dusen made a significant investment into the instrumentalities of her work. She invested of thousands of dollars into her truck. (UMF 33.) Van Dusen was responsible for the repair, maintenance, and upkeep of her truck as an Owner-Operator. (UMF 34.) She paid for her own damage insurance, health insurance, and workers' compensation insurance as an Owner-Operator. (UMF 35.) She rented her own Qualcomm system and transponder. (UMF 37.) Indeed, Swift did not provide her with ***anything*** she needed to perform her work, including fuel. (UMF 32.) Courts have held that these circumstances weigh "strongly in favor" of concluding that an individual is an independent contractor. *See Chao v. Mid-Atlantic Installation Servs.*, 16 Fed. Appx. 104, 107 (4th Cir. 2001) (explaining that expenditures on instrumentalities to perform work are usually expected of independent contractors but not of employees, who are given the tools to perform their job by their employer); *see also Dole v. Amerilink Corp.*, 729 F. Supp. 73, 76 (E.D. Mi. 1990) (same).

## C. Van Dusen Could Have Her Own Business, And Her Opportunity For Profit Or Loss Was Based On Her Specialized Managerial Skill

As Van Dusen testified, she and her husband, who was her driving partner, intended to establish a business together. (Van Dusen Depo. at 93:8-10, 103:5-14.) She was aware she could have multiple trucks, and have employees or laborers drive and perform other work for her—which would enable her to make more money. (UMFs 38, 39.) Indeed,

-11-

1  Van Dusen was able to hire additional help if she determined that doing so would benefit
2  her business demands and entrepreneurial design.  (UMF 28.)  Also, Van Dusen was not
3  prohibited from simultaneously performing work for other carriers if she believed that
4  doing so was in the best interest of her business and bottom line, as long as she removed
5  any Swift indicia from her truck.  (UMF 11.)

6  Van Dusen could also fully control her costs (such as fuel costs, repairs, etc.)
7  through efficient management.  For instance, she could decide whether or not to turn down
8  loads because certain loads would not be fuel efficient or economical, and in fact admits
9  that she accepted or turned down loads based on her desire to "make money."  (UMF 43.)
10 Whether or not Van Dusen efficiently managed her costs also affected her bottom line.

11 Given these circumstances, it is evident that Van Dusen's managerial skill directly
12 affected her profit or loss – which is a critical factor in determining whether she was
13 properly classified as an independent contractor.  *Wolcott v. Nationwide Mut. Ins. Co.*, 884
14 F.2d 245, 251 (6th Cir. 1989) (applying the common law agency test to determine if an
15 independent contractor relationship existed and finding that the fact that the plaintiff
16 "exercised managerial skill in the operation of his business" weighed in favor of an
17 independent contractor relationship)

18 **D.    Van Dusen Was Paid Via Weekly Settlements, Did Not Receive Employee Benefits, And Was Treated As An Independent Contractor For Tax Purposes**
19

20 Swift's method of payment to Van Dusen is wholly indicative of an independent
21 contractor relationship.  As an Owner-Operator, Van Dusen was paid per completed trip –
22 not by the hour.  (UMF 46.)  She was also paid via weekly settlements, while Swift's
23 employees are paid through payroll checks.  (UMF 47.)  Van Dusen received an IRS Form
24 1099 and was paid as an independent contractor for tax purposes, while employee drivers
25 receive a W-2 form.  (UMF 49.)  Van Dusen was responsible for her own taxes.  (UMF
26 48.)  Thus, Swift's payment method to Van Dusen drastically differed from its payment
27 method to its employees.  In addition, Van Dusen did not receive any employee benefits
28 from Swift while she was an Owner-Operator.  (UMF 50.)

-12-

1    These factors further weigh in favor of finding that Van Dusen was properly
2 classified as an independent contractor.

### E. Courts In Analogous Cases Have Found That Drivers Were Properly Classified As Independent Contractors

In the trucking industry, it is extraordinarily common for companies to enter into contractual service agreements with independent contractor drivers.  These independent contractor relationships are an integral facet of the trucking industry.  Numerous courts that have examined these relationships have found that drivers in similar situations as Van Dusen were properly classified as independent contractors.  For instance, in *Aviles*, 2015 U.S. Dist. LEXIS 174960, *11-13, the court found that a putative class of truck drivers were independent contractors because: (1) drivers set their own schedule; (2) the company did not instruct the drivers on what routes to take or when and where to stop for fuel; (3) drivers had the ability to turn down as many loads as they wished; (4) drivers were able to lease truck from the company or any other dealer; (5) drivers could hire their own employees; (6) drivers could balance their loads as they saw fit in order to increase efficiency; (7) drivers could work for other companies; and (8) drivers received no employment benefits and were not subject to income or payroll tax withholdings.  Like in *Aviles*, all of these factors are satisfied here.

Similarly, truck drivers in *Carney v. JNJ Express, Inc.*, 10 F. Supp. 3d 848, 853-854 (W.D. Tenn. 2014) were considered independent contractors because they were "responsible for determining the means of their performance under the Leases, including equipment, routes, and scheduling."  The court also noted the fact that they were "responsible for costs such as fuel, oil, maintenance and repairs, primary insurance, and worker's compensation insurance," showed that they were not employees. *Id.*  Again, this situation is directly analogous to Van Dusen's relationship with Swift.

In yet another nearly identical situation, in *Davis v. Larson Moving & Storage Co.*, 2008 U.S. Dist. LEXIS 87251, 17-18 (D. Minn. Oct. 27, 2008), the Court found that a truck driver was properly classified as an independent contractor because:

-13-

> Plaintiff was required to provide his own truck. Plaintiff assumed control over selection of routes and fuel stops, decisions about maintenance of his truck, arrangements for loading and unloading his truck, and scheduling work hours and rest periods, subject to legal requirements and the needs of Defendant's customers. Plaintiff was permitted to hire additional personnel to perform services under the lease, with Plaintiff assuming responsibility for hiring, supervision, and compensation of the additional personnel. Plaintiff could elect to reject specific shipments and could choose to be unavailable to Defendant for reasonable periods of time.

As in *Davis*, all of these factors are present in this case and weigh in favor of finding that Van Dusen was an independent contractor.

Finally, in *Young v. Swift Transportation Co. of Arizona*, LLC, Case No. 08-46182 RR, the California Labor Commissioner examined whether Swift's Owner-Operators are misclassified as independent contractors and determined they are not. (Request for Judicial Notice, ¶ 1, Exh. 1.) The Labor Commissioner found that a plaintiff Owner-Operator "maintained control of his own work load" because he was able to choose which loads he accepted and rejected without consequence. The Labor Commissioner also determined that the plaintiff could perform work for other parties, as long as Swift indicia was removed from his truck. **Based on these facts, the Labor Commissioner held that the Owner-Operator was properly classified as an independent contractor**. The issues in this case have already been adjudicated in Swift's favor. There is no reason for this Court to deviate from the Labor Commissioner's findings.

///
///
///
///
///
///
///
///
///

-14-

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the instant Motion for Partial Summary Judgment and enter an order finding that Van Dusen was properly classified as an independent contractor.

Dated:  June 10, 2016                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By    /s/ Robert Mussig
RONALD HOLLAND
ELLEN M. BRONCHETTI
PAUL S. COWIE
ROBERT MUSSIG

Attorneys for Defendants
SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, INTERSTATE EQUIPMENT LEASING, LLC, CHAD KILLEBREW and JERRY MOYES

-15-
SMRH:478021448.1   MEMORANDUM OF P'S AND A'S ISO MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF VIRGINIA VAN DUSEN'S STATUS AS AN INDEPENDENT CONTRACTOR

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic filing to the following CM/ECF registrants:

Susan Joan Martin
Jennifer Lynn Kroll
Martin & Bonnett PLLC
1850 N. Central Ave.; Ste. 2010
Phoenix, AZ  85004

Dan Getman
Edward John Tuddenham
Lesley Tse
Getman & Sweeney, PLLC
9 Paradies La.
New Paltz, NY  12561

Attorneys for Defendants

*/s/ Robert Mussig*