SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
RONALD J. HOLLAND, Cal. Bar No. 148687 *(Pro Hac Vice)*
rholland@sheppardmullin.com
ELLEN M. BRONCHETTI, Cal. Bar No. 226975 *(Pro Hac Vice)*
ebronchetti@sheppardmullin.com
PAUL S. COWIE, Cal. Bar No. 250131 *(Pro Hac Vice)*
pcowie@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415-434-9100
Facsimile:    415-434-3947

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ROBERT MUSSIG, Cal. Bar No. 240369 *(Pro Hac Vice)*
rmussig@sheppardmullin.com
ANNA M. STANCU, Cal. Bar No. 288283 *(Pro Hac Vice)*
astancu@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071
Telephone:    213-620-1780
Facsimile:    213-620-1398

Attorneys for Defendants
SWIFT TRANSPORTATION CO. OF
ARIZONA, LLC, INTERSTATE EQUIPMENT
LEASING, LLC, CHAD KILLEBREW and
JERRY MOYES

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VIRGINIA VAN DUSEN; JOHN DOE 1; and JOSEPH SHEER, individually and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>SWIFT TRANSPORTATION CO., INC.; INTERSTATE EQUIPMENT LEASING, INC.; CHAD KILLIBREW; and JERRY MOYES,<br><br>Defendants. | Case No. CV 10-899-PHX-JWS<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF VICKII SCHWALM'S STATUS AS AN INDEPENDENT CONTRACTOR**<br><br>[Filed concurrently with Reply to Plaintiff's Controverting and Additional Statements of Fact, Supplemental Declaration of Robert Mussig and Supplemental Declaration of Anna M. Stancu] |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ................................................................................................ 1

II. LEGAL ARGUMENT ......................................................................................... 3

    A. Schwalm Cannot Dispute That She Exercised Control Over The Manner and Means By Which She Performed Her Work .................................................. 3

    B. Schwalm Cannot Dispute That She Was Responsible For Investing In All Equipment, Material, Labor, And Tools She Needed To Run Her Business 9

    C. Schwalm Admits Her Business Acumen Created The Opportunity For Profit ........................................................................................................... 10

    D. Schwalm's Cited Cases Are Inapposite ......................................................... 11

III. CONCLUSION .................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aviles v. Quik Pick Express, LLC*
    2015 U.S. Dist. LEXIS 174960 (C.D. Cal. Dec. 3, 2015) .......................................... 7, 9

*Carney v. JNJ Express, Inc.*
    10 F. Supp. 3d 848, 853-854 (W.D. Tenn. 2014) ....................................................... 7, 9

*Chao v. Mid-Atlantic Installation Servs.*
    16 Fed. Appx. 104 (4th Cir. 2001) ................................................................................ 10

*Davis v. Larson Moving & Storage Co.*
    2008 U.S. Dist. LEXIS 87251 (D. Minn. Oct. 27, 2008) ........................................... 7, 9

*Dole v. Amerilink Corp.*
    729 F. Supp. 73 (E.D. Mi. 1990) .................................................................................. 10

*Max Trucking LLC*
    802 F. 3d 793 (6th Cir. 2014) ....................................................................................... 11

*Van Dusen v. Swift*
    544 Fed. App'x 724 (9th Cir. 2013) (*Van Dusen II*) ...................................................... 1

*Van Dusen v. Swift*
    No. 15-70592, 2016 U.S. App. LEXIS 13575 (9th Cir. 2016) (*Van Dusen III*) ........................................................................................................ 1, 8

*Wolcott v. Nationwide Mut. Ins. Co.*
    884 F.2d 245 (6th Cir. 1989) ........................................................................................ 10

Statutes

Federal Arbitration Act, 9 U.S.C. § 1 .................................................................................. 1

## I.     INTRODUCTION

Plaintiffs' opposition fails to raise any triable issue of material fact indicating that Defendants misclassified Plaintiff Vicki Schwalm as an independent contractor.[1]  The opposition was filed on behalf of all five Plaintiffs, and consists entirely of sweeping generalizations about *all* Owner-Operators and *all* Plaintiffs.  However, Plaintiffs fail to cite evidence supporting these broad, sweeping conclusions.  With respect to virtually every purported "fact" they assert, the opposition cites the deposition testimony of Plaintiffs ***other than Schwalm***.  None of the other Plaintiffs testified about Schwalm's experiences.  Plaintiffs cherry-pick the testimony they like best for each fact and simply ignore contravening testimony by Schwalm.  The net effect is that Plaintiffs utterly fail to set forth a full and coherent opposition on behalf of Schwalm.

Schwalm fails to dispute that, during the time she was an Owner-Operator:

- Schwalm started her own business, Already There Trucking, through which she conducted her work as an Owner-Operator, and this business obviously was not an employee of Defendants;

- She considered herself to be a successful Owner-Operator, and attributed her success to the fact that she "ran [her] truck like a business," her reputation as an "aggressive

---

[1]  Defendants maintain the Court should not entertain Plaintiffs' or Defendants' pending summary judgment motions.  Consistent with the views expressed by two of the three judges on the Ninth Circuit panel in *Van Dusen v. Swift*, No. 15-70592, 2016 U.S. App. LEXIS 13575 (9th Cir. 2016) (*Van Dusen III*), the Court should vacate the pending summary judgment motions and determine whether Plaintiffs' ICOAs are exempt from arbitration based solely on the four corners of the agreements themselves.  In *Van Dusen v. Swift*, 544 Fed. App'x 724 (9th Cir. 2013) (*Van Dusen II*), the Ninth Circuit held that the Court "must determine whether the [ICOAs] are exempt [from arbitration] under § 1 of the FAA before it may consider Swift's motion to compel."  The Court interpreted this to mean it should examine the entire relationship between the parties and determine whether Plaintiffs were properly classified as independent contractors or whether they were actually employees, which is the ultimate question in the case.  In *Van Dusen III*, Judge Andrew D. Hurwitz and Judge Sandra S. Ikuta (who was on the panel in *Van Dusen II*) agreed that this approach is incorrect and that the Court should determine whether the section 1 exemption applies based solely on the language in the ICOAs.  Based on *Van Dusen III*, Defendants have filed a filed a motion for reconsideration of the Court's prior orders requiring discovery and trial on this issue.  (Doc. 820.)

business woman," and her taking on roles and tasks that she believed would benefit her business;

- Schwalm unilaterally set and conveyed to Swift her expectation that she would be a "high miles driver," and that if her expectations in this regard were not met, she would end her contractual relationship with Swift;
- She had the autonomy to develop a fleet of trucks, hire as many employees and laborers as she wanted, and direct those employees and laborers to drive for her and deliver loads (and she independently decided the ideal business model for her involved herself and her own truck, as opposed to a fleet and other employees);
- She was free to drive for other carriers and use her truck for any reason she saw fit, as long as she removed placards displaying Swift's name from her truck;
- Swift did not train her on, provide her with, or hold her to any company policies, and the only requirements she had to comply with were federal regulations (in this regard, she was no different from Swift or any other motor carrier);
- Schwalm <u>never</u> received instructions from Swift on how to execute her work;
- Nobody reviewed, evaluated, or questioned Schwalm's performance or the manner in which she carried out her work;
- She was free to accept or decline any loads offered by Swift and, in fact, could choose not to accept any loads at all if that was her decision;
- She decided which loads to accept based on her belief of what would maximize her profits;
- She would consistently go <u>several days</u> without any interaction with Swift while working, and <u>all</u> communications she had with Swift were initiated by her;
- She was free to purchase or rent the products and/or equipment she needed to perform her work – including her truck – from any company she desired;
- She had full decision-making authority with respect to delivery of loads, including the ability to choose the route taken, where to purchase fuel, and where to obtain any necessary repairs;

- She controlled her own hours, and she could return home and take time off as she pleased; and
- She was responsible for obtaining and paying for all of the tools and equipment she needed as an Owner-Operator, and she made a substantial investment of thousands of dollars in her truck and other equipment necessary to run her business.

These admissions conclusively demonstrate that no employment relationship existed between Schwalm and Swift – let alone between Schwalm and IEL (which merely leased her a truck and never had any contact with her outside that transaction).

Rather than disputing the facts presented by Defendants in their Motion, Schwalm relies almost entirely on speculation, the cherry-picked testimony of **other** Plaintiffs regarding their **own** alleged experience and **not hers**, mischaracterizations of the record, conflation of procedures which applied to employees with those for Owner-Operators, and citations to inapposite cases, in order to create the appearance of a disputed material fact. These efforts fail. Schwalm has presented no competent evidence that Defendants controlled the manner and means in which she performed her work, has not disputed that she made substantial investments in the tools and equipment required to conduct her business as an Owner-Operator, has not disputed that her success or failure as an Owner-Operator depended on her entrepreneurialism and managerial skill, and has not disputed that she was paid as an independent contractor. Accordingly, Defendants have carried their burden to establish that no employment relationship existed between them and Schwalm during the time she was an Owner Operator. Thus, Defendants are entitled to summary judgment.

## II.   LEGAL ARGUMENT

### A.   Schwalm Cannot Dispute That She Exercised Control Over The Manner and Means By Which She Performed Her Work

As set forth in Defendants' moving papers, Schwalm had full control over the manner and means of performing her work through what she herself described as her "business partnership" with Swift. (UMF 75.) She established her own business to

perform this work, and admits she was a successful Owner-Operator because she had done years of research on the trucking industry, "ran [her] truck like a business," and took on roles and tasks that she believed would benefit her business.  (UMFS 64-75.)  In operating her business, Schwalm was free to hire employees and laborers and assign someone to drive in her place, determine her own routes and stops, and work to achieve success by developing her own fleet of trucks.  (UMFs 21-37, 48, 49, 60-63).  Schwalm had full autonomy to determine her own working conditions.

Schwalm does not present any competent evidence to create a triable issue in response to these facts, but instead relies on rank conjecture, misstatements of the record, and *other* plaintiffs' self-serving testimony about their personal beliefs and experience which have no application to him.  Schwalm's attempts to obfuscate and mislead the Court should be rejected.

First, Plaintiffs claim in the opposition that Swift controlled Schwalm because it had "extensive policies" that she had to follow.  (Oppo., 3:5-4:3.)  This claim is utterly contradicted by Schwalm's own deposition testimony.  Schwalm testified under oath she did not receive any policies as an Owner-Operator, was not trained on any policies as an Owner-Operator, and **understood that Swift's policies did not apply to her as an Owner-Operator**.  (*See* UMFs 12, 15, 16.)  Rather, the policies discussed in the opposition brief are those contained in the **employee** handbook, which by its own terms expressly applied only to employee drivers.  The opposition cites 2 pages in the 208-page employee handbook which mention Owner-Operators.  Critically, those 2 pages state that both employee drivers and Owner-Operators must comply with Department of Transportation ("DOT") regulations regarding hours of service, and describe the manner in which a truck is to be operated in compliance with DOT safety regulations.  (*See* Schwalm's Additional Statement of Facts [Doc. 801], Facts 11-13 (citing Plaintiffs' "Ex. 14b, p.3, Bates 5408" and "Ex. 14b, Sec. 6, p.1, DEF5064" [Doc. 775-6]))  These cited pages do not purport to bind Owner-Operators to any Swift *company* policies.  The opposition also references two documents (the "Pre-CABS Manual" and "Contracted

-4-

1  Driver Manual") **which Schwalm admits she never received, was never trained on, did**
2  **not even know existed, and which did not apply to her** (*see* UMFs 12 ,15, 16) to and
3  speculates that Swift *could have* applied these policies to Schwalm.  (Oppo., 4:4-11, fns. 5,
4  6.)  This type of rank speculation is not evidence, and cannot create a triable issue as a
5  matter of law.  The opposition also notes that Van Dusen claims she received training as an
6  Owner-Operator, and speculates that Swift *could have* trained Schwalm *if it wanted*.
7  (Oppo., 4:4-11 (citing Plaintiffs' Statement of Facts [Doc. 772], Facts 202-203.)  However,
8  Van Dusen's claim that *she* underwent training as an Owner-Operator is irrelevant to the
9  determination of Schwalm's relationship with Swift.  **Schwalm admits she never**
10 **underwent any training**, did not receive any policies, and was not held to any policies as
11 an Owner-Operator.  (*see* UMFs 12 ,15, 16).

12         Second, Schwalm does not dispute that she never received any type of performance
13 review or evaluation as an Owner-Operator.  Instead, the opposition attempts to dismiss
14 this key fact by claiming that "the weekly financial obligations the lease imposed on
15 Plaintiffs rendered formal evaluations unnecessary." (*Compare* UMFs 16, 17 *with* Oppo.,
16 4:21-24.)  This claim is unsupported by Schwalm's testimony.  Even if Schwalm had any
17 evidence in support of this claim, her personal financial obligations cannot create an
18 employment relationship.  By this logic, a wealthy Owner-Operator contracting with Swift
19 under the same facts and circumstances would be an independent contractor, while
20 Schwalm would be deemed an employee simply because she had bills to pay.  There is no
21 legal support for this position.

22         Third, the opposition claims that, because Schwalm was required to stay within the
23 legal speed limit and otherwise follow traffic regulations and DOT safety regulations,
24 Swift exerted control over her.  (Oppo., 5:2-5, 6:5-12.)  This argument is simply absurd, as
25 *all* drivers on the road are subject to applicable traffic laws and safety regulations.  These
26 are not requirements set by Swift but rather the government, and therefore do not evince
27 any "control" by Swift.
28

Schwalm also argues that the existence of an Omni-tracs/Sensor-tracs device in her truck, which listed her speed, location, estimated time of arrival, and other statistics, is evidence of Swift's control. (Oppo., 5:10-20.) However, Schwalm does not dispute that Swift did not monitor these statistics, and does not claim that they had any ramifications for her. (*See* Berry Depo., 97:11-98:11; Berry Decl., ¶ 7.) Indeed, Schwalm admits that nobody from Swift ever contacted her to criticize or question a route she decided to take. (UMF 27.) The opposition cites Plaintiff Motolinia's testimony that **Motolinia** once received a message on his Qualcomm when he stopped with a high-value load, yet this claim – even if true – has no bearing on Schwalm's relationship with Swift. Similarly, Schwalm unavailingly relies on other Plaintiffs' testimony regarding their contact with driver managers, in an attempt to dispute her own testimony that, as an Owner-Operator, (1) she did not have any supervisors, (2) she did not receive any instructions on how to perform her work, and (3) she was not required to communicate, check in, or interact with anyone from Swift while she was carrying out her work – indeed, she admits that she consistently went several days without any interaction with Swift, and that all communications with Swift were initiated by her. (*Compare* UMFs 40-45 (Schwalm's admissions) with Oppo., 5:13-16 (citing Sheer and Van Dusen's testimony – but not Schwalm's – regarding their own experiences).) This misguided attempt to avoid her own deposition testimony fails.

Fourth, the opposition attempts to dispute Schwalm's sworn testimony that she was free to drive any route she wanted when delivering her cargo, and could stop wherever she chose for fuel, repairs, or other purposes. (UMFs 21-37.) The opposition claims that because Swift provided a recommended route and recommended stops to Plaintiffs, Swift somehow *mandated* routes and stops, and thus exerted control over them. (Oppo., 7:1-8:17.) This position is completely contradictory to Schwalm's testimony. (UMFs 21-37.) Schwalm understood there was no mandate that she or any other Plaintiff follow the recommended routes, which she admits were provided solely to assist with trip planning and were not required routes. (UMFs 23-24.) Schwalm also does not dispute that she did

-6-

1  not have to inform Swift that she was taking a different route than the optional route
2  suggested to her.  (Berry Depo. at 96:10-14.)
3         Fifth, the opposition desperately tries to downplay key indicators of Schwalm's
4  autonomy as an Owner-Operator, such as the ability to:
5     (1) use her truck to perform work in partnership with other companies or for whatever
6         personal reasons she chose without the need for Swift's approval (UMFs 52, 58),
7     (2) set her own working hours, and set the expectation with Swift that she was a "high
8         miles driver" and would end her contract if her expectations were not met, (UMFs
9         18, 20, 30-32);
10    (3) drive dedicated routes for a particular customer if she desired, yet another way for
11        her to determining her own schedule, routes, cargo, customers, and the regularity
12        with which she was available to take on other work (UMFs 34-37; Berry Depo.
13        15:14-16:6; 19:11-20:14).
14 (Oppo., 8:18-9:12.)
15        The opposition claims, without any support, that these are insignificant to the
16 determination of whether Swift exerted control over the manner and means in which
17 Schwalm performed her work.  This is plainly not so, as courts commonly look to these
18 precise factors to determine whether an independent contractor relationship existed.  *See*,
19 *e.g.*, *Aviles v. Quik Pick Express, LLC*, 2015 U.S. Dist. LEXIS 174960, *11-13 (C.D. Cal.
20 Dec. 3, 2015) (putative class of truck drivers were independent contractors because, e.g.,
21 they (1) set their own schedule; (2) were not required to use any particular routes or fuel
22 stops; (3) could balance their loads as they saw fit in order to increase efficiency; (4) could
23 work for other companies); *Carney v. JNJ Express, Inc.*, 10 F. Supp. 3d 848, 853-854
24 (W.D. Tenn. 2014) (drivers were independent contractors because they were "responsible
25 for determining the means of their performance under the Leases, including equipment,
26 routes, and scheduling."); *Davis v. Larson Moving & Storage Co.*, 2008 U.S. Dist. LEXIS
27 87251, 17-18 (D. Minn. Oct. 27, 2008) (truck driver was independent contractor because,
28 e.g., he assumed control over selection of routes and fuel stops, decisions about

-7-

maintenance of his truck, arrangements for loading and unloading his truck, and scheduling work hours and rest periods, subject to legal requirements and the needs of Defendant's customers).

Sixth, while Schwalm admitted at deposition that she could drive as part of a team if she chose, could assign someone of her choosing to drive in her place, and could hire employees and laborers to work for her (UMFs 46, 48, 60, 61), the opposition now claims this is not so because Schwalm's truck lease with IEL purportedly said that she could only assign a driver to drive her leased truck if she was "ill, disabled, or otherwise unable to drive the Equipment." (Oppo., 9:13-25.) This argument fails. For one thing, it contradicts Schwalm's sworn deposition testimony. Schwalm cannot avoid her own deposition admissions. Moreover, Plaintiffs concede at another point in their brief that under the terms of the lease, lessees had the ability to hire drivers to work for them at any time, not just if they were "ill" or "disabled" – indeed the contract states that someone could drive in their place <u>anytime</u> the lessee was "otherwise unable to drive the Equipment." (Oppo., 9:20-22.) The only limit on this right was that such individuals had to meet DOT regulations and other state and federal legal requirements (which also apply to Swift and every other trucking company in the United States). (*See* UMF 60; Defendants' Response to Plaintiffs' Purportedly Undisputed Material Facts, Fact No. 176 [Doc. 797]). **<u>Plaintiffs do not dispute that, in practice, neither Swift nor IEL exerted oversight over the employees that Owner-Operators chose to hire, and rarely, if ever, took any action regarding any Owner-Operator's decision to hire any particular employee</u>**. (Berry Decl. ¶ 10; Spence Depo., 62:22-63:19 (IEL does not approve or reject substitute drivers).) Finally, a term in Schwalm's contract with *IEL* is not evidence of an employment relationship between Schwalm and *Swift*. Schwalm does not claim that she performed work for IEL (or ever even communicated with IEL (UMF 45)), nor that Swift exercised veto power over who drove her truck. Any control exerted by IEL as a company leasing high value equipment to Schwalm is analogous to the control a bank exerts over an

-8-

SMRH:479183723.1   DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO PLAINTIFF VICKII SCHWALM'S STATUS AS AN INDEPENDENT CONTRACTOR

1  individual leasing a car and, in any event, is irrelevant to the determination of the type of
2  relationship Schwalm had with Swift.
3  　　　　Seventh, the opposition claims that Swift exerted control over Schwalm simply by
4  virtue of the fact that it offered her loads (which she could freely decline) and had a
5  particular customer base for which it could offer loads.  (Oppo., 11:18-23.)  As a matter of
6  law, this is insufficient to establish that Swift exerted sufficient control over Schwalm to
7  make her an employee.  If it were, a trucking company could never contract with
8  independent contractor drivers, which clearly is not the case.  *See, e.g.*, *Aviles*, 2015 U.S.
9  Dist. LEXIS 174960, *11-13; *Carney*, 10 F. Supp. 3d at 853-54; *Davis*, 2008 U.S. Dist.
10  LEXIS at 17-18; *Young*, Case No. 08-46182 RR (filed with Defendant's Request for
11  Judicial Notice [Doc. 756]).  What is important is the undisputed fact that, regardless of
12  what loads Swift had available and offered to her, Schwalm could select what loads she
13  wanted to pick up, could decline loads and independently determine when to work, where,
14  and how long to work.  (UMFs 8, 18-20, 30-32.)  Schwalm admitted that she knew she had
15  the ability and authority to decline loads that were offered to her as an Owner-Operator.
16  (UMF 30.)  No one at Swift could force Schwalm to take a load, and Schwalm would not
17  be disciplined if she turned down a load.  (Berry Depo. at 81:25-82:13; 268:5-7.)  She
18  admitted it was her personal, discretionary decision not to decline loads often, because she
19  sought to maximize her revenue.  (UMF 31-32.)  Thus, it was Schwalm – not Swift – who
20  exercised control over what loads she delivered.
21  **B.**　　**Schwalm Cannot Dispute That She Was Responsible For Investing In All**
22  　　　　**Equipment, Material, Labor, And Tools She Needed To Run Her Business**
23  　　　　Schwalm invested thousands of dollars into the lease of her truck as an Owner-
24  Operator; paid for the repair, maintenance, and upkeep of her truck; and paid for her own
25  insurance, fuel, tolls, and all other costs involved in performing her work as an Owner-
26  Operator.  (UMFs 11, 53, 54, 56-58.)  Schwalm does not dispute any of this.  Instead, the
27  opposition focuses on the relatively low start-up cost to become an Owner-Operator as a
28  red herring to distract the Court from the substantial investment Schwalm ultimately made

-9-

1 in her trucking business.  (Oppo., 16:7-12.)  The fact that Owner-Operators are generally
2 only required to make a $500 down payment to lease a truck from IEL is irrelevant,
3 because Schwalm did not merely pay $500, but in fact paid *thousands of dollars* for her
4 equipment while she was an Owner-Operator.  (UMF 54.)  The key fact is not the amount
5 of money an Owner-Operator put down, but that **neither IEL nor Swift paid for**
6 **anything Schwalm needed to perform her work as an Owner-Operator**.  (UMF 53.)
7 By contrast, when Schwalm worked as an employee driver, Swift provided her with all the
8 equipment and tools she needed to perform her work, including her truck, gas, repair, tolls,
9 maintenance, insurance, and any other instrumentalities that she may need.  (Schwalm
10 Depo. at 36:5-37:2.).)  Under these facts, Schwalm's status as an independent contractor
11 cannot be disputed.  *See Chao v. Mid-Atlantic Installation Servs.*, 16 Fed. Appx. 104, 107
12 (4th Cir. 2001) (expenditures on instrumentalities to perform work are expected of
13 independent contractors but not of employees, who are given the tools to perform their job
14 by their employer); *see also Dole v. Amerilink Corp.*, 729 F. Supp. 73, 76 (E.D. Mi. 1990).

**C.**     **Schwalm Admits Her Business Acumen Created The Opportunity For Profit**

As set forth in Defendants' moving papers, Schwalm testified at length that when she became an Owner-Operator, **she was entering into a "business partnership" with Swift, and that as an Owner-Operator, she believes she operated a successful business of her own**.  (UMFs 64, 65.)  She attributes her success to the fact that she "ran [her] truck like a business," took on roles and tasks that she believed would benefit her business, conducted extensive research over the course of five years, and knew exactly how to operate to make a profit.  (UMFs 1, 66-68, 70.)  *She* – not Swift – structured her business in the way she felt would be most profitable.  (UMF 71.)  Schwalm admits her potential profitability as an Owner-Operator was essentially "limitless."  (UMF 72.)  Schwalm's admitted ability to make a substantial profit or incur a loss based on her managerial skill, or lack thereof, is a critical factor weighing in favor of a determination that Schwalm was properly classified as an independent contractor.  *Wolcott v. Nationwide Mut. Ins. Co.*, 884 F.2d 245, 251 (6th Cir. 1989) (applying the common law agency test to determine if an

-10-
SMRH:479183723.1  DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO PLAINTIFF VICKII SCHWALM'S STATUS AS AN INDEPENDENT CONTRACTOR

independent contractor relationship existed and finding that the fact that the plaintiff "exercised managerial skill in the operation of his business" weighed in favor of an independent contractor relationship).   The Court should reject Plaintiffs' attempt to repudiate Schwalm's own testimony and argue <u>without any evidentiary support</u> that she had no opportunity for profit or loss based on her managerial skill.  (Oppo., 16:20-17:6.)

### D. **Schwalm's Cited Cases Are Inapposite**

Finally, Schwalm attempts to analogize her relationship with Swift to those of drivers in several inapposite and easily distinguishable cases.  As one example, in *Time Auto Transport*, 377 F.3d 496 (6th Cir. 2004), the Court determined that the drivers' relationship with Time Auto was akin to an employment relationship because (1) Time Auto evaluated their performance, terminated drivers for inadequate performance, and used the threat of termination for performance deficiencies as a means to control the drivers; (2) the drivers could not determine what types of routes they took (e.g., long-haul, intermodal, dedicated); (3) the drivers were required to follow detailed instructions from Time Auto's dispatchers for each and every delivery they made and were ordered to wait whenever they did not receive a load, such that they were expressly forbidden from driving for other companies; (4) Time Auto ordered and expected drivers to violate federal restrictions.  None of these factors exist here, as set forth in Defendants' Motion and section II.A. above.  Thus, Schwalm cannot rely on *Time Auto*'s holding to establish that her relationship with Swift was an employment relationship.  Similarly, *Max Trucking LLC*, 802 F. 3d 793 (6th Cir. 2014) is distinguishable because the drivers in that case did not and could not maintain their own businesses or employees, contrary to Schwalm and other Swift Owner-Operators.  *See also GreenFleet Systems*, 2015 WL 1619964 (NLRB Div. of Judges Apr. 9, 2015) (same).

### III.   CONCLUSION

For the foregoing reasons, and as set forth more fully in Defendants' moving papers, Defendants respectfully request that the Court issue an order granting summary judgment in favor of Swift on the issue of Schwalm's independent contractor status.

-11-

Dated: September 30, 2016        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _/s/ Robert Mussig_
RONALD HOLLAND
ELLEN M. BRONCHETTI
PAUL S. COWIE
ROBERT MUSSIG

Attorneys for Defendants
SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, INTERSTATE EQUIPMENT LEASING, LLC, CHAD KILLEBREW and JERRY MOYES

# CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic filing to the following CM/ECF registrants:

Susan Joan Martin
Jennifer Lynn Kroll
Martin & Bonnett PLLC
1850 N. Central Ave.; Ste. 2010
Phoenix, AZ  85004

Dan Getman
Edward John Tuddenham
Lesley Tse
Getman & Sweeney, PLLC
9 Paradies La.
New Paltz, NY  12561

Attorneys for Defendants

*/s/ Robert Mussig*