1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2     Including Professional Corporations
   RONALD J. HOLLAND, Cal. Bar No. 148687 *(Pro Hac Vice)*
3  rholland@sheppardmullin.com
   ELLEN M. BRONCHETTI, Cal. Bar No. 226975 *(Pro Hac Vice)*
4  ebronchetti@sheppardmullin.com
   PAUL S. COWIE, Cal. Bar No. 250131 *(Pro Hac Vice)*
5  pcowie@sheppardmullin.com
   Four Embarcadero Center, 17th Floor
6  San Francisco, California 94111-4109
   Telephone:    415-434-9100
7  Facsimile:    415-434-3947

8  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
9     Including Professional Corporations
   ROBERT MUSSIG, Cal. Bar No. 240369 *(Pro Hac Vice)*
10 rmussig@sheppardmullin.com
   ANNA M. STANCU, Cal. Bar No. 288283 *(Pro Hac Vice)*
11 astancu@sheppardmullin.com
   333 South Hope Street, 43rd Floor
12 Los Angeles, California 90071
   Telephone:    213-620-1780
13 Facsimile:    213-620-1398

14 Attorneys for Defendants
   SWIFT TRANSPORTATION CO. OF
15 ARIZONA, LLC, INTERSTATE EQUIPMENT
   LEASING, LLC, CHAD KILLEBREW and
16 JERRY MOYES

17                UNITED STATES DISTRICT COURT

18                FOR THE DISTRICT OF ARIZONA

19 VIRGINIA VAN DUSEN; JOHN DOE 1;          Case No. CV 10-899-PHX-JWS
   and JOSEPH SHEER, individually and on
20 behalf of all other similarly situated       **DEFENDANTS' REPLY TO**
   persons,                                     **PLAINTIFFS' CONTROVERTING**
21                                              **AND ADDITIONAL STATEMENTS**
                  Plaintiffs,                   **OF FACT RE DEFENDANTS'**
22                                              **MOTION FOR PARTIAL SUMMARY**
                                                **JUDGMENT AS TO PLAINTIFF**
23 v.                                           **VICKII SCHWALM'S STATUS AS AN**
                                                **INDEPENDENT CONTRACTOR**
24
   SWIFT TRANSPORTATION CO., INC.;          [Filed concurrently with Reply to
25 INTERSTATE EQUIPMENT LEASING,            Plaintiff's Opposition, Supplemental
   INC.; CHAD KILLIBREW; and JERRY          Declaration of Anna M. Stancu, and
26 MOYES,                                    Supplemental Declaration of Robert
                                             Mussig]
27                Defendants.

28
                                       -1-

Defendants Swift Transportation Co. of Arizona, LLC and Interstate Equipment Leasing Co. hereby reply to Plaintiff Vickii Schwalm's purported "Controverting and Additional Statements of Fact" filed in response to Defendants' Separate Statement of Undisputed Material Facts.

## DEFENDANTS' UNDISPUTED MATERIAL FACTS, PLAINTIFF'S PURPORTED CONTROVERTING AND ADDITIONAL STATEMENTS OF FACT, AND DEFENDANTS' REPLY

1.       During her five-year employment as a Swift company driver, Schwalm studied the trucking industry, met with trucking industry planners, and conducted "a lot of research," with the intention of starting her own trucking business.  (Declaration of Anna M. Stancu ("Stancu Decl."), ¶ 2, Ex. A, Deposition of Vickii Schwalm ("Schwalm Depo."), pgs. 40:14-42:3, 99:5-100:23.)

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  Plaintiff Schwalm qualifies that "a lot of research" meant using Swift's Keep It Straight book (in which drivers could record information about their trips, including weight, number of stops, total miles, etc.), logging her company truck, the miles she ran, the fuel mileage and how much fuel she used.  She also states that she did this for two years before becoming a lease operator.  Deposition of Vickii Schwalm, Doc. 772-5, Ex. 41 (hereinafter "VS") 99:12-15.  Ms. Schwalm's "research" did not include studying the trucking industry generally, or even lease operators generally, but rather simply tracking her own experiences working as a company driver for Swift.  Further, Ms. Schwalm's intentions of starting her own trucking business are irrelevant to the relationship that the parties actually had.

DEFENDANTS' REPLY:

At deposition, Plaintiff admitted that her "intention when [she] started truck driving was to become an owner and have a small business, i.e., five or six trucks." (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 40:14-41:3.) Plaintiff also admitted that it "[t]ook [her] five years to learn the [trucking] industry." (*Id.*) Plaintiff admitted that she "did a lot of research before [she] went into [business]" (*Id.* at Schwalm Depo., pg. 99:5-15), including conversations with industry planners "to get a better understanding of the business." (Supp. Stancu Decl., ¶ 2, Ex. L, Schwalm Depo., pgs. 178:20-179:5, 186:15-18.) Contrary to Plaintiff's assertions above, at deposition Plaintiff did not indicate that her "research" was limited to the items listed. She was merely listing a few examples of the research she performed. (*Id.* at Schwalm Depo., pg. 99:5-15.) Plaintiff cannot create a dispute of fact by contradicting her own sworn deposition testimony.

The fact that Plaintiff's knew and understood that she was forming an independent contractor/business relationship with Swift when she signed the ICOA, and not an employer-employee relationship, is a key factor weighing in favor of a determination that she was in an independent contractor relationship with Swift.

2.      On May 21, 2010, Schwalm started a trucking business, Already There Trucking.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 40:14-42:3, 142:17-145:10; Stancu Decl., ¶ 3, Ex. B, Schwalm's Independent Contractor Operating Agreement with Swift dated May 21, 2010 ("ICOA"); Stancu Decl., ¶ 4, Ex. C, Schwalm's W-9 dated May 21, 2010.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  The deposition testimony cited merely says that Plaintiff

-3-

1    Schwalm had intended to start a trucking business, not that she actually

2    started one.  Plaintiff Schwalm explicitly testifies that she never founded

3    Already There Trucking.  VS:  142:9-14.

4    DEFENDANTS' REPLY:

5         Plaintiff admits that she submitted a W-9 to Swift under the name

6    "Already There Trucking," and never indicated to Swift that "Already There

7    Trucking" was not an existing business.  (Stancu Decl., ¶ 2, Ex. A, Schwalm

8    Depo., pgs. 144:5-8, 145:7-10; Stancu Decl., ¶ 4, Ex. C, Schwalm's W-9

9    dated May 21, 2010.)

10

11   3.     On May 21, 2010, Schwalm became an Owner-Operator for Swift.  [Stancu

12   Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 66:16-67:11; Stancu Decl., ¶ 3, Ex. B, Schwalm's

13   ICOA.]

14   PLAINTIFF'S RESPONSE:

15   DENIED.  Plaintiff Schwalm signed an ICOA and Lease on May 21, 2010,

16   by which she leased a tractor from IEL and simultaneously leased it back to

17   Swift.  At no time did she own anything.  *See* PSOF ¶ 49.  Nor did lease

18   payments result in Plaintiff Schwalm receiving any equity interest in the

19   leased truck.  *Id.*  Accordingly, the term "owner-operator" is incorrectly

20   applied to her and Plaintiff objects to and disputes its use throughout

21   Defendants' Statement of Facts.  Plaintiff admits that the Company used the

22   term "Owner-Operator" as a colloquial label for lease operators and that

23   usage induced drivers to use the same terminology.  The deposition

24   testimony cited merely confirms that Plaintiff Schwalm signed an ICOA.

25   Plaintiff Schwalm testified that she did not understand that she was an

26   "owner-operator."  VS 111:10-12.

27

28

-4-

DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL
STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO SCHWALM

DEFENDANTS' REPLY:

Plaintiff admits that she entered into an ICOA with Swift on May 21, 2010, thereby becoming an Owner-Operator for Swift.  As such, Plaintiff does not actually dispute this Undisputed Material Fact.

Further, Plaintiff's reliance on the terms of her lease with IEL is misplaced. The lease has no bearing on whether Plaintiff was in an independent contractor relationship with Swift while she was an Owner-Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  Plaintiff cannot dispute that she was able to lease her truck from companies other than IEL.  (*See* Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 4.)

Plaintiff's claim that she did not have any equity interest in the truck she leased from IEL is disingenuous.  Similar to a car lease, Plaintiff had the option to purchase the truck for an agreed-upon residual value upon the expiration of the lease.  (Supp. Mussig Decl., ¶ 3, Ex. P, Spence Depo., pgs. 80:19-82:4.)  The lease contained a provision that governed Plaintiff's possible purchase of the truck from IEL following the expiration of the lease term.  (Stancu Decl., ¶ 6, Ex. E, Schwalm's Lease Agreement with IEL dated May 21, 2010 ("Schwalm's Lease Agreement"), ¶ 18.)

4.	Schwalm entered into the ICOA with Swift on that same date.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 66:16-67:11; Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA.]

PLAINTIFF'S RESPONSE:

ADMITTED subject to Plaintiff Schwalm's response to ¶ 3 above.  Plaintiff admits that she signed an ICOA on May 21, 2010.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 3.

SMRH:479341744.1

5.      The ICOA between Schwalm and Swift states that "[Schwalm] shall be considered an Independent Contractor and not an employee of [Swift]."  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 66:16-67:11; Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 17.]

PLAINTIFF'S RESPONSE:

DENIED.  Plaintiff admits that the quoted sentence appears in the contract she signed, and that Swift intended to treat lease operators as independent contractors and drafted the contract to so state, but denies that her relationship with Swift was that of an independent contractor.  The contract, which was presented to drivers on a "take it or leave it" basis (PSOF ¶¶ 73-77), read as a whole in light of the circumstances of the whole activity establishes that she was an employee not an independent contractor.  The deposition testimony cited merely confirms that Plaintiff Schwalm signed an ICOA.

DEFENDANTS' REPLY:

Plaintiff admits that her ICOA with Swift states that she was independent contractor, not an employee, of Swift.  As such, Plaintiff does not actually dispute this Undisputed Material Fact.  As explained in Defendants' moving papers, Plaintiff understood that she was an independent contractor.

Contrary to Plaintiff's assertion, the ICOA is not presented to drivers on a "take it or leave it basis."  Swift negotiates the terms of ICOAs with individual Owner-Operators like Plaintiff.  (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pgs. 231:7-233:11.)

6.      The ICOA between Schwalm and Swift states that Schwalm was solely responsible for determining the "method, means and manner" of performing work and

1   providing services under the ICOA.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo.,

2   pgs. 66:16-67:11; Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 17.]

3       PLAINTIFF'S RESPONSE:

4       DENIED.  Plaintiff admits that the quoted sentence appears in the contract

5   but denies the truth of the statement.  The contract/lease read as a whole and

6   in light of the circumstances of the whole activity establishes that Swift

7   controlled all necessary aspects of the method, means and manner of

8   performing her work.  The quoted section of the ICOA is contradicted by

9   numerous other sections of the ICOA and the Lease and by the rules and

10  regulations of Swift.  *See* e.g. Defendants' "exclusive possession, control,

11  and use of the equipment during the term of this [Contract]."  Swift:  21;

12  Contract ¶ 5A; PSOF ¶ 65.  *See also* PSOF ¶¶ 27, 38, 41, 42, 49, 51-57, 101,

13  134, 140, 141, 162.  The deposition testimony cited merely confirms that

14  Plaintiff Schwalm signed an ICOA.

15      DEFENDANTS' REPLY:

16          Plaintiff admits that her ICOA with Swift states that she was solely

17  responsible for the method, means and manner of performing work and

18  services under the ICOA.  As such, Plaintiff does not actually dispute this

19  Undisputed Material Fact.  Moreover, Plaintiff admits that her experience

20  was consistent with this contract language.  As one example, Plaintiff admits

21  that she was free to accept or decline loads offered by Swift as an Owner-

22  Operator.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 28:17-29:3.)  As

23  another example, Plaintiff admits that she was free to choose whatever

24  fueling stops, repair shops, and maintenance shops she wanted.  (*Id.* at

25  Schwalm Depo., pgs. 43:17-44:8, 82:13-86:6, 119:3-120:20.)

26          There is absolutely no evidence in this case that Swift ever took

27  "possession, control [or] use" of Plaintiff's truck.  Plaintiff's reference to any

28  such unexercised "right" is simply a red herring.

-7-

7.     The ICOA between Schwalm and Swift states that Schwalm was "not required to purchase or rent any products, equipment, or services from [Swift]."  [Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 4.]

PLAINTIFF'S RESPONSE:

DENIED.  Plaintiff admits that the quoted sentence appears in the contract but denies the truth of the statement.  The contract/lease read as a whole and in light of the circumstances of the whole activity establishes that Plaintiff was, as a practical matter, required to purchase or rent a variety of products, equipment and services from Swift including insurance and the Qualcomm device in her truck to participate in the Swift lease operator program.  VS: 106:22-109:3 (was told that she would be billed by Swift for rental of Qualcomm already installed in her leased truck, did not understand that renting or purchasing from another entity was an option); 124:18-22 (rental of PrePass from Swift was part of the package of becoming a lease operator); 44:10-20, 147:22-148:6, 151:17-152:11 (believed she was required to obtain insurance through Swift as part of the package of becoming a lease operator, did not understand that obtaining insurance through another provider was an option).  Swift insisted that all drivers have insurance acceptable to it.  PSOF ¶¶ 84, 87-89, 205-206.  Swift made available to all lease operators insurance policies which met its minimum criteria.  PSOF ¶¶ 84-85.  The insurance that Swift required lease operators to purchase was provided through its wholly-owned captive insurance subsidiary, Mohave Transportation Insurance Company, which it earns premium revenue from.  Plaintiffs' Additional Statements of Fact ¶¶ 21-25.  All Plaintiffs signed for Swift's insurance. Pl. Ex. 6, DEF001371 (Van Dusen); Pl. Ex. 7, DEF001324 (Sheer); Pl. Ex. 8, DEF002018-19 (Motolinia); Pl. Ex. 9, DEF002103-4 (Schwalm); Pl. Ex. 10a, DEF002361 (Wood).  Once lease drivers signed their approval for Swift's insurance, Swift paid the insurance (Deposition of Joseph Mark

-8-

1   Sheer, Doc. 772-3, Ex. 2 (hereinafter "JS") 156:17-18; Deposition of

2   Virginia Van Dusen, Doc. 772-2, Ex. 1 (hereinafter "VVD") 29:9-12), and

3   deducted the cost of insurance premiums (including its margin) directly from

4   the drivers weekly settlement pay.  VVD 53:23.  *See also* JM 138, 143-144

5   (Swift provided insurance).  Swift sat Plaintiff Schwalm's mileage rate at a

6   level that would allow her to pay for normal expenses of that type if she

7   drove as many miles as were expected of employee drivers.  PSOF ¶¶ 113-

8   117.  Swift made available all equipment (e.g. truck, Qualcomm unit) it

9   required drivers to have, PSOF ¶¶ 84-91, along with all services (insurance,

10   accounting).  Swift extended its credit to drivers to obtain this equipment

11   which was then recovered by Swift as a weekly deduction to settlement

12   payments.  *Id.  And see* PSOF ¶ 199 (requiring Qualcomm units onboard for

13   satellite communication between Swift managers and drivers).  Furthermore,

14   if truck maintenance was not performed to IEL's satisfaction, the company

15   could perform the service and bill the driver.  PSOF ¶ 189; Lease 6(c).

16   DEFENDANTS' REPLY:

17   　　　Plaintiff admits that her ICOA with Swift states that she was not

18   required to purchase or rent any products, equipment, or services from Swift.

19   As such, Plaintiff does not actually dispute this Undisputed Material Fact.

20   Moreover, Plaintiff admits that her experience was consistent with this

21   contract language.  As one example, Plaintiff admits that she was free to

22   choose whatever fueling stops, repair shops, and maintenance shops she

23   wanted.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 43:17-44:8, 82:13-

24   86:6, 119:3-120:20.)  As another example, Plaintiff admits that Swift did not

25   finance her fuel, tolls, or other expenses.  Swift may have deducted money

26   from Plaintiff's account and made payments on behalf of Plaintiff, but this

27   was simply a pass-through done as a convenience to Plaintiff.  Indeed,

28   Plaintiff admits she paid for these expenses herself out of her earnings as an

-9-

Owner-Operator.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 42:4-43:15, 106:13-25, 121:2-123:23, 127:22-129:14, 145:21-147:12, 150:12-154:2.)

Further, Plaintiff's reliance on the terms of her lease with IEL is misplaced.  The lease has no bearing on whether Plaintiff was in an independent contractor relationship with Swift while she was an Owner-Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  Even if the lease was relevant, Murray Spence repeatedly testified that Paragraph 6(c) in the lease was not enforced.  (Supp. Mussig Decl., ¶ 3, Ex. P, Spence Depo., pgs. 66:17-67:15, 71:2-7.)  Spence also testified that IEL "would not terminate the lease based on a violation of 6(c)."  (*Id.* at Spence Depo., pg. 70:1-17.)

The fact that Owner-Operators are required to maintain minimal levels of insurance in compliance with federal law and had the *option* to purchase insurance from Mohave Transportation Insurance Company, an entity that is distinct and separate from Swift, has no bearing on whether Swift exerted control over Plaintiff.  Indeed, Plaintiff admits that nobody from Swift or IEL told her that she had to obtain her insurance from Mohave Transportation Insurance Company or any other allegedly Swift affiliated companies.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 149:25-150:2.)

Swift does not have mileage expectations for Owner-Operators, including Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators are free to drive as many or as few miles as they considered optimal for their business. (Berry Decl., ¶ 13.)  How Swift determined Plaintiff's mileage rate has no bearing on whether Swift exerted "control" over Plaintiff.  If Plaintiff was unhappy with the mileage rate, she could have driven for another carrier.

Notably, Plaintiff did not identify the purported individual(s) who allegedly violated Swift company policy and told Plaintiff that she was

-10-

1   required to rent a Qualcomm unit through Swift, so it is impossible for Swift

2   to submit testimony from any specific person refuting Plaintiff's self-serving

3   allegations.

4          Finally, Plaintiff improperly relies on the testimony of the other

5   Plaintiffs as evidence of her own personal experiences.  Such testimony

6   cannot create a genuine issue of disputed fact as a matter of both law and

7   common sense.

8

9          8.     The ICOA between Schwalm and Swift states that Schwalm had no

10   obligation to accept any loads tendered by Swift.  [Stancu Decl., ¶ 3, Ex. B, Schwalm's

11   ICOA, ¶ 1.]

12   PLAINTIFF'S RESPONSE:

13   DENIED.  Plaintiff admits that paragraph 1 of the contract states that she

14   was not required to accept every load tendered by Swift but denies the truth

15   of the statement.  The contract/lease read as a whole and in light of the

16   circumstances of the whole activity establishes that Plaintiff was not free to

17   turn down loads because doing so risked the possibility of sitting for long

18   periods of time before another load was offered.  *See* VS 28:17-29:22 (never

19   turned down a load because she knew from speaking to planners that the

20   consequences would be that she would be put on the bottom of the list for

21   loads).  As a practical matter, lease operators were required to accept

22   virtually all loads assigned by the company.  *See* PSOF ¶¶ 133-142 (no

23   knowledge of other options, no choice offered, Swift's admission drivers

24   can/will sit if refuse loads, other *de facto* punishment(s).)  The contract also

25   explicitly grants Defendants "exclusive possession, control, and use of the

26   equipment during the term of this [Contract]."  Swift:  21; Contract ¶ 5A;

27   PSOF ¶ 65.  (This exclusive control was further implemented by Swift's

28   ability to terminate the driver without cause, repossess the truck and force

-11-

1    the driver into debt and collections).  PSOF ¶¶ 27, 38, 41, 42, 49, 51-57.

2    Defendants' authority to place drivers in "default" of the contract at will

3    gave Swift the authority to demand compliance with its directions.  *Id*.

4    Furthermore, employee drivers had the same right to turn down loads.

5    VS 61:4-15 (could turn down loads as an employee driver, but suffered same

6    consequence of being put on the bottom of the list for loads).

7    <u>DEFENDANTS' REPLY:</u>

8         Plaintiff admits that her ICOA with Swift states that she had no

9    obligation to accept any loads tendered by Swift.  As such, Plaintiff does not

10   actually dispute this Undisputed Material Fact.  Moreover, Plaintiff admits

11   that her experience was consistent with this contract language.  As one

12   example, Plaintiff admits that she was free to accept or decline loads offered

13   by Swift as an Owner-Operator.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo.,

14   pgs. 28:22-29:3.)  As another example, Plaintiff also admits that she was free

15   to choose whatever route she wanted to take to deliver loads for Swift.  (*Id.*

16   at Schwalm Depo., pgs. 82:13-86:6.)

17        There is absolutely no evidence that Swift ever took "possession,

18   control [or] use" of Plaintiff's truck.  Plaintiff's reference to any such

19   unexercised "right" is simply a red herring.

20        Plaintiff's claim that delays in being offered loads were "consequences" for

21   declining loads is entirely speculative and erroneous.  Plaintiff's ICOA makes it

22   explicitly clear that the ICOA "shall not . . . be construed as an agreement by

23   [Swift] to furnish any specific tonnage of freight for transportation by [Plaintiff] at

24   any particular time, or at any particular place."  (Stancu Decl., ¶ 3, Ex. B,

25   Schwalm's ICOA, ¶ 1.)  There are various reasons why an individual might not be

26   offered a new load right when he or she asks for one, including the fact that one

27   simply is not available in his or her area.  (*See* Supp. Mussig Decl., ¶ 2, Ex. O,

28   Berry Depo., pgs. 35:25-39:10.)  Plaintiff also relies on hearsay to support her

-12-

allegation.  Hearsay, speculation and conjecture are insufficient to create a genuine issue of disputed fact.

Furthermore, Swift's ability to terminate the ICOA without cause is irrelevant.  Plaintiff had the same right (Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 16(a)), and if she chose to exercise that right, she could have simply driven for another carrier.  (*Id.* at Schwalm's ICOA ¶ 5(b); Supp. Mussig Decl., ¶ 3, Ex. P, Spence Depo., pgs. 59:5-60:17.)

Finally, Plaintiff's reliance on the terms of her lease with IEL is misplaced.  The IEL lease has no bearing on whether Plaintiff was in an independent contractor relationship with Swift while she was an Owner-Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)

9.    The ICOA between Schwalm and Swift states that Schwalm had no obligation to purchase fuel from Swift.  [Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 15.]

PLAINTIFF'S RESPONSE:

DENIED.  Plaintiff admits that the contract stated that she was not required to purchase fuel from Swift but denies the truth of the statement.  The contract/lease read as a whole and in light of the circumstances of the whole activity establishes that Swift could demand that lease operators fuel at approved locations and as a practical matter Plaintiff had to purchase fuel at Swift approved locations.  VS 85:5-18 (she deviated from Swift suggested fuel stops only one or two times in two years), 130:19-131:2 (she would get a discount on fuel using Swift's Comdata card at Swift approved fuel locations); PSOF ¶ 218 (lease operators could lose fuel surcharge if they fueled at non-approved location).

1    DEFENDANTS' REPLY:

2         Plaintiff admits that her ICOA with Swift states that she had no

3    obligation to purchase fuel from Swift.  As such, Plaintiff does not actually

4    dispute this Undisputed Material Fact.  Moreover, Plaintiff admits that her

5    experience was consistent with this contract language.  At deposition,

6    Plaintiff admitted that Swift did not require her purchase fuel from Swift

7    facilities and that she, in fact, fueled at non-Swift facilities when it was

8    cheaper to do so.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 85:9-23.)

9

10        10.    The ICOA between Schwalm and Swift states that Schwalm was solely

11   responsible for providing the equipment and the labor necessary to perform all work under

12   the ICOA.  [Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 1.]

13        PLAINTIFF'S RESPONSE:

14        DENIED.  See Plaintiff Schwalm's response to ¶ 7 above.  Plaintiff admits

15   that the contract stated this but denies the truth of the statement.  The

16   contract/lease read as a whole and in light of the circumstances of the whole

17   activity establishes that Swift provided the equipment (e.g., truck,

18   Qualcomm) it required of all lease operators by leasing it with no money

19   down and 100% financing which Swift paid itself for by deducting the

20   weekly cost of leasing and other credit extended by Swift from the higher

21   mileage rate paid to lease operators, which rate was sat at a level that would

22   cover Swift's extension of credit if a lease operator drove the same number

23   of miles per week as was expected of employee drivers PSOF ¶¶ 3-4, 84-91.

24        DEFENDANTS' REPLY:

25        Defendants incorporate their reply in support of Undisputed Material

26   Fact No. 7.

27        Plaintiff admits that her ICOA with Swift states that she was solely

28   responsible for providing the equipment and the labor necessary to perform

-14-

all work under the ICOAs.  As such, Plaintiff does not actually dispute this Undisputed Material Fact.  Moreover, Plaintiff admits that her experience was consistent with this contract language.  As one example, Plaintiff admits she was responsible for repairs, maintenance, and upkeep of her equipment as an Owner-Operator.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 146:4-147:12.)  Plaintiff also admits that she paid for her own maintenance, repairs, tolls, and insurance.  (*Id.* at Schwalm Depo., pgs. 122:11-19, 127:22-129:14, 152:22-25.)  Indeed, Plaintiff admits that Swift did not pay for anything she needed as an Owner-Operator and that, instead, she "paid for everything."  (*Id.* at Schwalm Depo., pgs. 42:20-43:15.)

While Owner-Operators had the option to rent or purchase equipment or services from third parties *through* Swift, Swift did not pay for any Owner-Operator's equipment or services and therefore did not "provide" any equipment or services.  (Berry Decl., ¶ 9.)

Contrary to Plaintiff's assertions, Plaintiff leased her truck from IEL, a separate and distinct entity from Swift.  The fact that Plaintiff was able to finance her truck through IEL has no bearing on whether Swift exerted control over Plaintiff.

Finally, Swift does not have mileage expectations for Owner-Operators, including Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators are free to drive as many or as few miles as they considered optimal for their business.  (Berry Decl., ¶ 13.)  How Swift determined Plaintiff's mileage rate has no bearing on whether Swift exerted control over Plaintiff.  If Plaintiff was unhappy with the mileage rate, she could have driven for another carrier.

11.    The ICOA between Schwalm and Swift states that Schwalm was solely responsible for paying her own operating and maintenance expenses.  [Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶¶ 10-11, 13.]

1  <u>PLAINTIFF'S RESPONSE:</u>

2  DENIED.  Plaintiff admits that the contract stated this but denies the truth of

3  the statement.  The contract/lease read as a whole and in light of the

4  circumstances of the whole activity establishes that Swift extended its credit

5  for the truck fuel, tolls, maintenance work and other expenses through use of

6  Swift's Comdata card and Comcheks, and set the higher mileage rate paid to

7  lease operators, at a level that would cover normal operating expenses

8  including maintenance if a lease operator drove the same number of miles

9  per week as was expected of employee drivers.  PSOF ¶¶ 113-117, 218-224.

10  These expenses were later deducted from drivers' per-mile pay on their

11  settlements PSOF ¶ 223.

12  <u>DEFENDANTS' REPLY:</u>

13  Plaintiff admits her ICOA with Swift states that she was solely

14  responsible for paying her own operating and maintenance expenses.  As

15  such, Plaintiff does not actually dispute this Undisputed Material Fact.

16  Moreover, Plaintiff admits that her experience was consistent with this

17  contract language.  As one example, Plaintiff admits she was responsible for

18  repairs, maintenance, and upkeep of her equipment as an Owner-Operator.

19  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 146:4-147:12.)  Plaintiff also

20  admits that she paid for her own maintenance, repairs, tolls, and insurance.

21  (*Id.* at Schwalm Depo., pgs. 122:11-19, 127:22-129:14, 152:22-25.)  Indeed,

22  Plaintiff admits that Swift did not pay for anything she needed as an Owner-

23  Operator and that, instead, she "paid for everything."  (*Id.* at Schwalm Depo.,

24  pgs. 42:20-43:15.)

25  Additionally, Plaintiff admits that Swift did not finance her fuel, tolls,

26  or other expenses.  Swift may have deducted money from Plaintiff's account

27  and made payments on behalf of Plaintiff, but this was simply a pass-through

28  done as a convenience to Plaintiff.  Plaintiff admits she paid for these

1   expenses herself out of her earnings as an Owner-Operator.  (*See e.g.*, Stancu
2   Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 127:22-129:14 (Plaintiff paid for her
3   own maintenance and repairs), 122:11-19 (Plaintiff paid for her own tolls),
4   152:22-25 (Plaintiff paid for her own insurance).)

5        Finally, Swift does not have mileage expectations for Owner-
6   Operators, including Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators are
7   free to drive as many or as few miles as they considered optimal for their
8   business.  (Berry Decl., ¶ 13.)  How Swift determined Plaintiff's mileage rate
9   has no bearing on whether Swift exerted control over Plaintiff.  If Plaintiff
10  was unhappy with the mileage rate, she could have driven for another carrier.

11

12       12.    Schwalm did not undergo any training or orientation with Swift as an
13  Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 44:22-45:25]

14  <u>PLAINTIFF'S RESPONSE:</u>

15  DENIED.  The statement mischaracterizes and is not supported by the
16  testimony cited.  Plaintiff Schwalm testified that when she became a
17  company driver, she attended an orientation, received six weeks of training
18  during which she was taught "Swift rules," and that she received an
19  employee handbook with written policies and procedures, and that she
20  believed that the training, rules and handbook applied equally to her time as
21  a lease operator.  VS:  14:20-20:22; 138:24-139:19, 141:21-142:7.  The Swift
22  Driver Manual explicitly covers both employee and lease drivers.  Plaintiffs'
23  Additional Statements of Fact ¶¶ 10-14.  Moreover, the questions asked in
24  the deposition testimony cited supported this understanding.  *See*, e.g., VS:
25  44:22-24 (Q You didn't have to go through *another* six-week-long training
26  session, did you, as an owner-operator?) (emph. added); 45:12-13 (Q Did
27  you get any *additional* rules, regulations, manuals as an owner-operator?)
28  (emph. added); 45:15 (Q No *additional* handbooks at all?) (emph. added).

-17-

Further, Swift provided training and orientation to *all* its drivers about how to drive, along with its rules and regulations PSOF ¶¶ 100, 101, 200-204 (contract requires lease operators to attend orientation within 14 days of signing contract).  Swift also continued to insist that drivers undergo additional training as lease operators PSOF ¶¶ 200-204.  *See also* PSOF ¶¶ 99-100 (all policies apply to both employee drivers and lease operators).

DEFENDANTS' REPLY:

At deposition, Plaintiff admitted that she did not undergo any training or orientation with Swift as an Owner-Operator.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 44:22-45:10.)  Plaintiff also admitted that she did not receive any rules, regulations, or manuals as an Owner-Operator.  (*Id.* at Schwalm Depo., pg. 45:11-16.)  Plaintiff cannot dispute her own deposition testimony.  Whatever training Plaintiff received as an *employee* driver has no bearing on whether Swift exerted control over her while she was an Owner-Operator.  Unlike employee drivers, Swift does not require that individuals undergo any specific training when they become Owner-Operators.  (Berry Decl. ¶ 4.)


13.     Schwalm did not receive a Swift employee handbook, nor any other rules, regulations, or manuals, as an Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 45:12-16.]

PLAINTIFF'S RESPONSE:

DENIED.  See Plaintiff Schwalm's response to ¶ 12 above.  Plaintiff Schwalm received the Swift Driver Manual as an employee, which by its terms covered her work as a lease operators.  Plaintiffs' Additional Statements of Fact ¶¶ 10-14.  Additionally, the Contracted Driver Manual, Handshake to Horsepower, and Pre-CABS Training applied to Plaintiff Schwalm as a lease operator.  *Id.* at ¶¶ 2-12.

-18-

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 12.

At deposition, Plaintiff specifically testified that she did not receive a Swift employee handbook, nor any other rules, regulations, or manuals, as an Owner-Operator.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 45:12-16.) Plaintiff cannot dispute her own deposition testimony.

There is no evidence that Plaintiff ever received a Contracted Driver Manual, Handshake-to-Horsepower manual, or any Pre-CABS Training manuals.  Plaintiff cannot argue that she was bound by documents she never received.

14.     Schwalm did not receive any instructions from Swift on how to execute her work as an Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 44:22-45:25, 49:21-24.]

PLAINTIFF'S RESPONSE:

DENIED.  *See* Plaintiff Schwalm's response to ¶¶ 12 and 13 above.  Further, Swift monitored and controlled the speed that lease operators drove through its use of speed governors affixed to lease operators' trucks.  Plaintiffs' Additional Statements of Fact ¶ 26.  Lease operators' trucks were governed at 68 mph, unless they were trainers, in which case their trucks were governed at 65 mph.  *Id.  See also* VS 46:21-48:7 (was supervised by Rapid Response, who contacted lease operators if they were having trouble making payments), 48:3-19 (her Driver Manager was in charge of evaluating her performance as a lease operator and did same things as when she was a company driver), 49:12-19 (when asked if she got any instructions from Driver Manager on how to perform work as an lease operator, answering that "nothing was different" from when she was a company driver), 86:9-87:9

-19-

(she believed that load assignments were mandatory instructions), 158:14-159:10 (received same safety messages about taking breaks as a company driver and lease operator).

DEFENDANTS' REPLY:

Defendants incorporate their replies in support of Undisputed Material Fact Nos. 12 and 13.

At deposition, Plaintiff admitted that she never received any instructions from her Driver Manager as to how to perform work for Swift. (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 49:21-24.) Plaintiff also admitted that she did not undergo any training or orientation with Swift as an Owner-Operator. (*Id.* at Schwalm Depo., pgs. 44:22-45:10.) Plaintiff admits she did not receive any rules, regulations, or manuals as an Owner-Operator. (*Id.* at Schwalm Depo., pg. 45:11-16.) Plaintiff admits that nobody from Swift told her when she was required to work. (*Id.* at Schwalm Depo., pg. 45:17-25.) Plaintiff admits that she was free to accept or decline loads offered by Swift as an Owner-Operator. (*Id.* at Schwalm Depo., pgs. 28:22-29:3.) As such, Plaintiff did not receive any instructions from Swift on how to execute her work. Plaintiff cannot dispute her own deposition testimony.

Further, David Berry testified that no one from Swift monitors Owner-Operators' location or tracks their progress towards their destination. (Berry Decl., ¶ 7.) He stated that, instead, it is the responsibility of the Owner-Operators to inform Swift if they are unable to transport a load within a certain timeframe or if there are any significant updates regarding the transportation. (*Id.*)

Additionally, Owner-Operators were not supervised by Fleet Managers, the Rapid Response Team or anyone else at Swift. (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pgs. 76:25-82:13.) Indeed, Plaintiff admitted that her Driver Manager never evaluated her work as an Owner-Operator or

-20-

1   gave her feedback.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 48:3-

2   49:10.)

3       Furthermore, the fact that Swift reminded its employee drivers and

4   Owner-Operators to comply with Department of Transportation regulations –

5   i.e., federal law – does not have any bearing on whether Swift exerted

6   control over Plaintiff.  (*See* Supp. Stancu Decl., ¶ 2, Ex. L, Schwalm Depo.,

7   pgs. 157:23-159:19.)

8

9       15.   Swift did not provide Schwalm with, nor require her to be familiar with, any

10  Swift policies or procedures while she was an Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A,

11  Schwalm Depo., pgs. 44:22-45:25.]

12  PLAINTIFF'S RESPONSE:

13  DENIED.  See Plaintiff Schwalm's response to ¶¶ 12-14 above.  Moreover,

14  the contract/lease ¶ 17 stated that Plaintiff's contract could be terminated

15  immediately for violation of "any Company policy."  By virtue of that

16  provision of the contract Swift required Plaintiff to be familiar with all Swift

17  policies and procedures on pain of termination.  Further, Swift provided new

18  drivers with a copy of its Swift Driver Manual (Pl. Exs. 14A and 14B), a

19  statement of policies and procedures applicable to all employee and lease

20  drivers and those policies are by their own terms expressly applicable to both

21  employee and lease drivers Plaintiffs' Additional Statements of Fact ¶¶ 10-

22  20.  Swift also made its policies and instructions clear in its Contracted

23  Driver Manual, Handshake to Horsepower, and Pre-CABS Training.  *Id.  See*

24  *also* PSOF ¶¶ 98-101(a-u) (all policies apply to both employee and lease

25  drivers).

26  DEFENDANTS' REPLIES:

27      Defendants incorporate their replies in support of Undisputed Material

28  Fact Nos. 12-14.

1    David Berry's deposition testimony establishes that Swift did not enforce

2    Paragraph 17 of the ICOA, and Plaintiff has offered no evidence to the contrary,

3    either as to Plaintiff specifically or as to any other Owner-Operator.  (Supp. Mussig

4    Decl., ¶ 2, Ex. O, Berry Depo., pgs. 114:21-115:6, 216:1-220:13, 241:21-242:5,

5    270:4-17; Berry Decl., ¶ 14.)  The fact that Swift provides policy documents to its

6    employee drivers has no bearing on whether it exerts control over independent

7    contractor Owner-Operators.  Despite Plaintiff's claim to the contrary, there is

8    nothing in the Driver Manual indicating that it applies to independent contractor

9    Owner-Operators.  Moreover, there is no evidence that Plaintiff ever received a

10   Driver Manual, Contracted Driver Manual, Handshake-to-Horsepower manual, or

11   any Pre-CABS Training manuals.  Plaintiff cannot argue that she was bound by

12   documents she never received.

13

14   16.    Swift did not evaluate Schwalm based on any set of rules or policies as an

15   Owner-Operator, nor did it hold her to any rules or policies. [Stancu Decl., ¶ 2, Ex. A,

16   Schwalm Depo., pgs. 47:23-49:24.]

17   PLAINTIFF'S RESPONSE:

18   DENIED.  See Plaintiff Schwalm's response to ¶¶ 12-15 above.  Further, the

19   statement mischaracterizes and is not supported by the cited testimony.  The

20   cited testimony only says that Plaintiff Schwalm did not remember getting an

21   evaluation.  There is no evidence to support the statement that Swift did

22   evaluate Plaintiff Schwalm.  The lack of a formal performance evaluation

23   process did not mean that Swift did not regularly evaluate lease operator

24   performance through its Driver Managers and other managers.  *See* PSOF

25   ¶¶ 101(j), 104, 119, 127, 146, 149, 152, 155, 159.

26

27

28

DEFENDANTS' REPLY:

Defendants incorporate their replies in support of Undisputed Material Fact Nos. 12-15, which establish that Plaintiff was not required to follow any company rules or policies as an Owner-Operator.

The remainder of this Undisputed Material Fact is based on Plaintiff's own deposition testimony. Plaintiff admits that her Driver Manager, her primary contact with Swift and the person Plaintiff erroneously alleges was her supervisor, never provided her with any feedback about her performance. (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 47:23-49:24.) As such, Plaintiff admits that she was not evaluated by any metrics, policies, or rules. Plaintiff fails to offer any evidence that Swift evaluated her based on any set of rules or policies while she was an Owner-Operator, or held her to any rules or policies.


17.     Swift did not conduct performance reviews for Schwalm when she was an Owner-Operator. [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 47:23-49:24.]

PLAINTIFF'S RESPONSE:

DENIED. The statement mischaracterizes and is not supported by the cited testimony. The cited testimony only says that Plaintiff Schwalm did not remember getting an evaluation. Defendant has proffered no evidence that Plaintiff Schwalm had no performance reviews. There is no evidence to support the statement that Swift did not evaluate Plaintiff Schwalm. The lack of a formal performance evaluation process did not mean that Swift did not regularly evaluate lease operator performance through its Driver Managers and other managers. *See* PSOF ¶¶ 101(j), 104, 119, 127, 146, 149, 152, 155, 159. *See also* VS 48:3-19 (believed her Driver Manager, who was the same person when she was a company driver and a lease operator and did the same things for her when she was a company driver and lease operator, was in charge of evaluating her performance), 159:21-160:22 (Swift policed

1   and monitored her compliance with breaks), VS 161:6-16 (from time to time

2   Plaintiff Schwalm would be informed of a violation on her logs).

3   <u>DEFENDANTS' REPLY:</u>

4         At deposition, Plaintiff admitted that her Driver Manager, her primary

5   contact with Swift and the person Plaintiff erroneously alleges was her supervisor,

6   never provided her with any feedback about her performance.  (Stancu Decl., ¶ 2,

7   Ex. A, Schwalm Depo., pgs. 47:23-49:24.)  As such, she necessarily did not receive

8   any formal performance reviews.

9         Contrary to Plaintiff's conjecture, David Berry testified that no one

10   from Swift monitors Owner-Operators' location or tracks their progress

11   towards their destination.  (Berry Decl., ¶ 7.)  He stated that, instead, it is the

12   responsibility of the Owner-Operators to inform Swift if they are unable to

13   transport a load within a certain timeframe or if there are any significant

14   updates regarding the transportation.  (*Id*.)  This testimony is uncontroverted.

15   Plaintiff's speculation that Swift may have been monitoring her is

16   insufficient to create a genuine issue of disputed fact.

17         Finally, the fact that Swift reminded its employee drivers and Owner-

18   Operators to comply with Department of Transportation regulations – i.e.,

19   federal law – does not have any bearing on whether Swift exerted control

20   over Plaintiff.  (*See* Supp. Stancu Decl., ¶ 2, Ex. L, Schwalm Depo., pgs.

21   157:23-159:19.)

22

23   18.    Swift did not control Schwalm's working hours when she was an Owner-

24   Operator.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 45:17-25.]

25   <u>PLAINTIFF'S RESPONSE:</u>

26   DENIED.  *See* PSOF ¶ 101(i).  *See also* VS 22:18-23:17, 82:13-24 (no time

27   frame in truck driving, days and hours of work were controlled by the load

28   assignment from Swift, which included pick-up and delivery times).

Furthermore, by contract Swift had exclusive "control" over the leased truck and could exercise (or not) that control as it saw fit.  Swift:  21; Contract ¶ 5A; PSOF ¶ 65.  And Swift could issue instructions to drivers under threat of Swift placing the driver in default at will.  PSOF ¶¶ 27, 38, 41, 42, 49, 51-57.  In addition, the need to earn money to cover her weekly lease payment and expenses and earn a living required Plaintiff Schwalm to drive a minimum of approximately 2,400 miles per week.  PSOF ¶¶ 114-116.  As she was not permitted to drive for any other carrier, Plaintiff Schwalm had to drive those miles for Swift to meet her lease and other expenses PSOF ¶¶ 169-173.

<u>DEFENDANTS' REPLY:</u>

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  Specifically, when asked, "Did anybody tell you which days of the week you had to work as an owner-operator?," Plaintiff testified, "No."  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 45:17-20.)  When asked, did anybody tell you "which hours of the day you had to work as an owner-operator?," Plaintiff testified, "No."  (*Id.* at Schwalm Depo., pg. 45:21-25.)  Indeed, Plaintiff admits she never received instructions from her Driver Manager as to how to perform work for Swift.  (*Id.* at Schwalm Depo., pg. 49:21-24.)  Plaintiff also admits that she was free to accept or decline loads offered by Swift as an Owner-Operator.  (*Id.* at Schwalm Depo., pgs. 28:22-29:3.)  Plaintiff cannot create an issue of disputed fact by contradicting her own sworn deposition testimony.

Additionally, there is other evidence demonstrating that Swift did not control Plaintiff's hours.  For example, pickup and delivery times were determined by the customers, not by Swift.  (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pgs. 83:12-85:8 ("It tells you then where you're going to deliver it and has all that same type of address, information for the pickup.  If the ***customer*** has any special requirements, like be sure to sweep the trailer out, or we only -- you know, you can only be in

here from this hour to that hour or just go through the Gate No. 2. Don't use Gate No. 3 or 4. All those types of instructions are in there.")).

Furthermore, Plaintiff's claim that Defendants had exclusive "control" over her truck is simply false.  Owner-Operators have always been free to accept and decline freight loads offered to them by Swift.  (Mussig Decl., ¶ 3, Ex. K, Berry Depo., pgs. 157:21-158:4.)  Owner-Operators are also entitled to haul for other carriers as long as they removed any Swift indicia from their truck.  (*Id.* at Berry Depo., pg. 216:1-25; Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 5(b).)  David Berry unequivocally testified that, when Owner-Operators haul for other carriers, Swift has never required them to return their "base plates."  (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pgs. 218:5-219:9.)  This testimony is uncontroverted.

Plaintiff's reliance on her lease with IEL is misplaced.  The lease has no bearing on whether Plaintiff was in an independent contractor relationship with Swift while she was an Owner-Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  In any event, the evidence also establishes that IEL never enforced any purported contract language limiting the ability of Owner-Operators to drive for carriers other than Swift, as it leased to individuals with no affiliation with Swift whatsoever.  (Supp. Mussig Decl., ¶ 3, Ex. P, Spence Depo., pgs. 59:5-60:17.)  Plaintiff offers no evidence that these contract provisions were ever enforced against her.

Finally, contrary to Plaintiff's assertion, Swift did not have mileage expectations for Owner-Operators.  (Berry Decl., ¶ 13.)  Owner-Operators, including Plaintiff, have always been free to drive as many or as few miles as they considered optimal for their business.  (Berry Decl., ¶ 13.)

19.    Swift did not determine or even suggest when Schwalm should start work for the day, end work for the day, or how long she was required to work on any given day. [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 45:17-25.]

PLAINTIFF'S RESPONSE:

DENIED.  See Plaintiff Schwalm's response to ¶ 18 above.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 18.

20.     Schwalm unilaterally set the expectation that she would be a "high miles driver," (i.e., work long hours) and conveyed to Swift that if her expectations in this regard were not met, she would end her contractual relationship with Swift.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 58:4-60:6.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  The testimony cited says that Plaintiff Schwalm merely asked Swift if they could give her the miles she desired.  VS 58:16-24.  Further, the ICOA dearly states that Swift was not obligated to provide lease operators with any minimum number of miles.  Contract ¶ 1.  *See also* PSOF ¶ 117 (Swift controls how much money lease operators earn by controlling the number of miles offered to lease operators).  Plaintiff Schwalm also testified that when she complained to Swift after they drastically decreased her miles and she fell behind on her lease payments, she was terminated by Swift.  PSOF:  ¶ 97.

DEFENDANTS' REPLY:

At deposition, Plaintiff admitted that she unilaterally set the expectation that she would be a high miles driver for Swift.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 58:4-59:7.)  Plaintiff also admitted that she planned to and had thought about ending her contractual relationship with Swift because she was not being offered high miles loads.  (Supp. Stancu

1   Decl., ¶ 2, Ex. L, Schwalm Depo, pgs. 55:20-60:6.)  Plaintiff cannot dispute

2   her own deposition testimony.

3        Plaintiff's claim that delays in being offered loads were "consequences" for

4   declining loads is entirely speculative and erroneous.  Plaintiff's ICOA makes it

5   explicitly clear that the ICOA "shall not . . . be construed as an agreement by

6   [Swift] to furnish any specific tonnage of freight for transportation by [Plaintiff] at

7   any particular time, or at any particular place."  (Stancu Decl., ¶ 3, Ex. B,

8   Schwalm's ICOA, ¶ 1.)  There are various reasons why an individual might not be

9   offered a new load right when he or she asks for one, including the fact that one

10  simply is not available in his or her area.  (*See* Supp. Mussig Decl., ¶ 2, Ex. O,

11  Berry Depo., pgs. 35:25-39:10.)  Mere speculation and conjecture are insufficient to

12  create a genuine issue of disputed fact.

13

14      21.    Swift did not require Schwalm to take any particular route when delivering

15  her freight, nor to visit any particular fueling station, repair shop, or maintenance shop.

16  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 43:17-44:8, 82:13-86:6; Stancu Decl., ¶ 3,

17  Ex. B, Schwalm's ICOA, ¶ 15; Stancu Decl., ¶ 5, Ex. D, Schwalm's Fuel Route

18  Recommendation Acknowledgement dated May 21, 2010.]

19  PLAINTIFF'S RESPONSE:

20  DENIED.  Swift had the exclusive control over the truck, Swift:  21,

21  Contract ¶ 5A, PSOF ¶ 65, and the ability to terminate a driver for any

22  reason or no reason, PSOF ¶¶ 27, 38, 41, 42, 49, 51-57, and thereby had the

23  authority and power to direct routes or terminate a driver for failing to

24  comply with its instructions, whether it did so or not.  Lease drivers,

25  including Plaintiff Schwalm, would follow Swift's routing instructions in

26  order to obtain reimbursement for tolls and to be able to use Swift's credit

27  for fuel purchases so they would receive their fuel surcharge.  Contract ¶ 11;

28  PSOF ¶¶ 158-159, 218; VS 62:17-19, 84:25-85:18, 120:16-20 (Plaintiff

-28-

Schwalm almost always followed Swift's routing as both a company driver and lease operator).  *See also* PSOF ¶ 101(o) (Swift set separate policies for high value loads that included mandatory routing).  Finally, pursuant to the lease, all expenses for maintenance and compliance with its Minimum Guidelines must be approved by IEL in advance and be performed at facilities designated or approved by IEL, PSOF ¶ 189, and any repairs performed at a non-Swift facility that is estimated to cost more than $1,000 had to be approved in advance by Swift, PSOF ¶ 191.  *See also* VS 43:17-22 (Department of Transportation inspections had to be done by Swift); PSOF ¶ 195 (three Swift terminals had inspection lines that trucks had to go through whenever they went through the fuel line).

<u>DEFENDANTS' REPLY:</u>

Plaintiff's response contradicts her own deposition testimony.  Specifically, when asked if she "receive[d] a ***suggested*** fuel route and driving route," Plaintiff testified, "Correct."  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 83:1-7 (emphasis added).)  Plaintiff admits it was ***her preference*** to use the fuel route and driving route suggested by Swift.  (*Id.* at Schwalm Depo., pg. 83:4-12.)  Plaintiff also admits that she sometimes used routes other than those recommended by Swift.  (*Id.* at Schwalm Depo., pgs. 84:24-85:12.)  Plaintiff admits that she sometimes used fueling stations other than those recommended by Swift, particularly when she found cheaper fuel elsewhere.  (*Id.* at Schwalm Depo., pgs. 85:5-86:6.)  When asked, "what would happen if you went to a different fueling location as an owner-operator?," Plaintiff testified, "Nothing."  (*Id.* at Schwalm Depo., pg. 85:9-12.)  When asked, "Were you able to take your truck to a repair shop of your choosing when you were an owner-operator?," Plaintiff testified, "basically, yes."  (*Id.* at Schwalm Depo., pg. 43:17-22.)  Therefore, Plaintiff's response is insufficient to create a genuine issue of disputed fact.

1    Additionally, Plaintiff's claim that Defendants had exclusive "control" over

2    her truck is simply false.  Owner-Operators have always been free to accept and

3    decline freight loads offered to them by Swift – including high value loads.

4    (Mussig Decl., ¶ 3, Ex. K, Berry Depo., pgs. 157:21-158:4.)  Further, Owner-

5    Operators are entitled to haul for other carriers as long as they removed any Swift

6    indicia from their truck.  (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pg. 216:1-

7    25; Schwalm's ICOA, ¶ 5(b).)  David Berry unequivocally testified that, when

8    Owner-Operators haul for other carriers, Swift has never required them to return

9    their "base plates."  (*Id.* at Berry Depo., pgs. 218:5-219:9.)  This testimony is

10   uncontroverted.

11   Furthermore, Plaintiff's reliance on the terms of her lease with IEL is

12   misplaced.  The lease has no bearing on whether Plaintiff was in an independent

13   contractor relationship with Swift while she was an Owner-Operator, as IEL and

14   Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  Even if the lease was

15   relevant, Murray Spence repeatedly testified that Paragraph 6(c) in the Lease was

16   not enforced.  (Supp. Mussig Decl., ¶ 3, Ex. P, Spence Depo., pgs. 66:17-67:15,

17   71:2-7.)  Spence also testified that IEL "would not terminate the lease based on a

18   violation of 6(c)."  (*Id.* at Spence Depo., pg. 70:1-17.)  The evidence also

19   establishes that IEL never enforced any purported contract language limiting the

20   ability of Owner-Operators to drive for carriers other than Swift, as it leased to

21   individuals with no affiliation with Swift whatsoever.  (*Id.* at Spence Depo., pgs.

22   59:5-60:17.)  Plaintiff offers no evidence that any of these contract provisions were

23   ever enforced against her.

24   Lastly, Plaintiff's reliance on page 62 of Plaintiff's deposition testimony is

25   also misplaced.  Plaintiff testifies that she drove the routes suggested by Swift when

26   she was an employee driver.  (Supp. Stancu Decl., ¶ 2, Ex. L, Schwalm Depo., pg.

27   62:1-19.)  The fact that Plaintiff drove the routes suggested by Swift when she was

28

-30-

DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL
                                          STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO SCHWALM

1    an *employee driver* has no bearing on whether Swift exerted control over her when

2    she was an Owner-Operator.

3

4    22.    While Swift suggested routes, it was Schwalm's personal preference to use

5    the route that Swift suggested because it was often the most direct route.  [Stancu Decl.,

6    ¶ 2, Ex. A, Schwalm Depo., pgs.  82:13-86:6.]

7    <u>PLAINTIFF'S RESPONSE:</u>

8    DENIED.  *See* Plaintiff Schwalm's response to ¶ 21 above.  Further, Swift

9    suggested routes to company drivers, who could also deviate from those

10   routes.  VS 62:1-15, 84:20-23.

11   <u>DEFENDANTS' REPLY:</u>

12   Defendants incorporate their reply in support of Undisputed Material

13   Fact No. 21.  Plaintiff's reliance on page 62 of Plaintiff's deposition

14   testimony is also misplaced.  Plaintiff testifies that she drove the routes

15   suggested by Swift when she was an employee driver.  (Supp. Stancu Decl.,

16   ¶ 2, Ex. L, Schwalm Depo., pg. 62:1-19.)  Whether Plaintiff sometimes

17   deviated from the routes suggested by Swift when she was an *employee*

18   *driver*, and not an Owner-Operator, has no bearing on whether Swift exerted

19   control over her when she was an Owner-Operator.

20

21   23.    Schwalm felt that Swift's recommended routes were optimal for maximizing

22   efficiency in delivering freight.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 119:3-

23   120:8.]

24   <u>PLAINTIFF'S RESPONSE:</u>

25   DENIED.  The statement mischaracterizes and is not supported by the cited

26   testimony.  The testimony cited states that Plaintiff Schwalm assumed that

27   the purpose of the routes she received as both a company driver and a lease

28

-31-

DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL
STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO SCHWALM

operator were to help give her the optimal route and that Swift's routes were "pretty good."

DEFENDANTS' REPLY:

At deposition, when asked, is "the purpose of [Swift's recommended routes] to help give you the optimal route for maximizing efficiency in delivering the freight?," Plaintiff testified, "I'm assuming so." (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 119:3-7.) Indeed, Plaintiff explained, "there was no reason for me to question [their recommended route] unless I saw, you know, there was [something] really screwy." (*Id.* at Schwalm Depo., pg. 120:5-8.) As such, Plaintiff clearly felt that Swift's recommended routes maximized efficiency in delivering freight, and chose to follow those recommended routes. Plaintiff cannot dispute her own deposition testimony.

24.    Schwalm understood that Swift's recommended routes were provided to assist her with trip planning but were not *required* routes. [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 82:13-86:6, 119:3-120:20; Stancu Decl., ¶ 5, pg. 1:25-27, Ex. D, Schwalm's Fuel Route Recommendation Acknowledgement dated May 21, 2010.]

PLAINTIFF'S RESPONSE:

DENIED. *See* Plaintiff Schwalm's responses to ¶¶ 21 and 22 above.

DEFENDANTS' REPLY:

Defendants incorporate their replies in support of Undisputed Material Fact Nos. 21 and 22.

25.    Schwalm understood she could travel any route she chose and fuel at any location she desired. [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 82:13-86:6, 117:12-118:17, 119:3-120:20; Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶¶ 4, 15; Stancu Decl., ¶ 5, Ex. D, Schwalm's Fuel Route Recommendation Acknowledgement dated May 21, 2010.]

DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL
STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO SCHWALM

1    PLAINTIFF'S RESPONSE:

2    DENIED.  *See* Plaintiff Schwalm's responses to ¶¶ 21 and 22 above.

3    DEFENDANTS' REPLY:

4           Defendants incorporate their replies in support of Undisputed Material

5    Fact Nos. 21 and 22.

6

7    26.    If Schwalm could find a shorter route than Swift's recommended route, she

8    would use the route she found.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 82:13-

9    86:6.]

10   PLAINTIFF'S RESPONSE:

11   DENIED.  *See* Plaintiff Schwalm's responses to ¶¶ 21 and 22 above.

12   DEFENDANTS' REPLY:

13          Defendants incorporate their replies in support of Undisputed Material

14   Fact Nos. 21 and 22.

15

16   27.    Nobody from Swift ever contacted Schwalm to criticize or question a route

17   she decided to take.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 120:11-20.]

18   PLAINTIFF'S RESPONSE:

19   ADMITTED subject to Plaintiff Schwalm's responses to ¶¶ 21 and 22 above.

20   She was not criticized or questioned about a route she took as either a

21   company driver or a lease operator.  VS 62:1-15, 84:20-23.  However,

22   Plaintiff Schwalm almost always followed Swift's routing as both a company

23   driver and lease operator.  VS 62:17-19, 84:25-85:2, 120:16-20

24   DEFENDANTS' REPLY:

25          Defendants incorporate their replies in support of Undisputed Material

26   Fact Nos. 21 and 22.  At deposition, Plaintiff admitted that she sometimes

27   used routes other than those recommended by Swift when she was an

28   Owner-Operator (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 84:24-

-33-

85:12), and she admits that she was never criticized or questioned for doing

so.  Plaintiff's reliance on page 62 of Plaintiff's deposition testimony is also

misplaced.  Plaintiff testifies that she drove the routes suggested by Swift

when she was an employee driver.  (Supp. Stancu Decl., ¶ 2, Ex. L, Schwalm

Depo., pg. 62:1-19.)  Whether Plaintiff deviated from her routes as an

*employee driver* has no bearing on whether Swift exerted control over her as

an Owner-Operator.

28.     Schwalm could also choose whatever fueling stops, repair shops, and
maintenance shops she wanted.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 43:17-
44:8, 82:13-86:6, 119:3-120:20; Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 15;
Declaration of Robert Mussig ("Mussig Decl."), ¶ 2, Ex. J, Deposition of Murray Spence
("Spence Depo."), pgs. 65:20-66:16.]

PLAINTIFF'S RESPONSE:

DENIED.  *See* Plaintiff Schwalm's response to ¶ 21 above.  Further, the

citation to the deposition of Murray Spence is incomplete.  Mr. Spence

continues at 66:17-67:25, where he acknowledges that the lease requires

approval of all expenses related to maintenance and repairs (*see* Lease ¶ 6(c))

and, although he states that IEL doesn't enforce that provision, he states that

failure to get approval would be a violation of the contract "in the event of a

crash."  He also states at 68:1-69:9 that IEL relies on facilities approved by

Swift.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material

Fact No. 21.

Additionally, the requirements under the lease, including any

purported maintenance schedule in Paragraph 6(c), have no bearing on

whether Plaintiff was in an independent contractor relationship with Swift

1    while she was an Owner-Operator, as IEL and Swift are distinct and separate

2    entities.  (Berry Decl., ¶ 21.)  Even if they were relevant, Spence repeatedly

3    testified that IEL never enforced Paragraph 6(c) of the lease.  (Supp. Mussig

4    Decl., ¶ 3, Ex. P, Spence Depo., pgs. 66:17-67:15, 71:2-7.)  Spence

5    specifically testified that IEL "would not terminate the lease based on a

6    violation of 6(c)."  (*Id.* at Spence Depo., pg. 70:1-17.)

7

8    29.    Schwalm did not suffer any negative consequence for using fueling stops,

9    repair shops, or maintenance shops that Swift did not recommend.  [Stancu Decl., ¶ 2,

10   Ex. A, Schwalm Depo., pg. 85:9-12.]

11   PLAINTIFF'S RESPONSE:

12   DENIED.  *See* Plaintiff Schwalm's response to ¶ 21 above.

13   DEFENDANTS' REPLY:

14   Defendants incorporate their reply in support of Undisputed Material

15   Fact No. 21.

16

17   30.    Schwalm was free to accept and decline freight loads offered to her by Swift.

18   [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 28:22-29:3; Stancu Decl., ¶ 3, Ex. B,

19   Schwalm's ICOA, ¶ 1; see also Mussig Decl., ¶ 3, Ex. K, Deposition of David Berry

20   ("Berry Depo."), pgs. 157:21-158:4.]

21   PLAINTIFF'S RESPONSE:

22   DENIED.  Plaintiff admits that paragraph 1 of the contract stated that she

23   was not required to accept every load tendered by Swift but denies the truth

24   of the statement.  As stated above, *see e.g.* Plaintiff Schwalm's response to

25   ¶ 8 above, by contract, Swift had exclusive control over the truck and

26   thereby had the power and authority to direct drivers to take loads, whether it

27   did so in all cases or not.  The contract/lease read as a whole and in light of

28   the circumstances of the whole activity establishes that Plaintiff was not free

-35-

to turn down loads because doing so risked the possibility of being moved to the bottom of the list for loads.  VS 28:5-13 (understood that the consequence of declining a load was that she would be put on the bottom of the list for getting loads), 86:19-87:16 (understood that load assignments were mandatory).  Consequently, Plaintiff Schwalm never turned down a load.  VS 28:17-23.  *See also* PSOF ¶¶ 133-142.

The testimony of Swift through its Rule 30(b)(6) designee Berry at 157:21-158:4 to the effect that Swift doesn't assign loads, drivers "choose" loads is contradicted by Mr. Berry himself who repeatedly refers to Swift assigning loads to lease operators, *see e.g.* Berry 47:12-48:14; 65:24-66:7; 67:12-19.  Mr. Berry also acknowledged that in the normal course only one load is communicated to a driver at a time and the driver has a period of time to accept it or not.  Berry 74:15-75:2.  *See also* PSOF ¶¶ 135-136.  Mr. Berry also acknowledged that drivers could wait for 48 hours for another load assignment if they declined a load, depending on conditions.  Berry 82:14-83:5.  He also acknowledged that if drivers turn down loads it may require planners to rejigger their entire load plan.  Berry:  69:25-71:11.

Additionally, both employee and lease drivers were able to turn down loads, though Swift encouraged and directed all drivers to take all assigned loads, including punishing drivers who refused loads VS 61:4-15; PSOF ¶¶ 133-142.  Few drivers turned down loads as lease operators PSOF ¶ 142.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 8.

Plaintiff admits that her ICOA with Swift states that she had no obligation to accept any loads tendered by Swift.  As such, Plaintiff does not

-36-

1   actually dispute this Undisputed Material Fact.  Moreover, Plaintiff admits

2   that her experience was consistent with this contract language.  At

3   deposition, Plaintiff specifically admitted that she was free to accept or

4   decline loads offered by Swift as an Owner-Operator.  (Stancu Decl., ¶ 2,

5   Ex. A, Schwalm Depo., pgs. 28:22-29:3.)  Plaintiff also admits that she was

6   free to choose whatever route she wanted to take to deliver loads for Swift.

7   (*Id.* at Schwalm Depo., pgs. 82:13-86:6.)

8          There is absolutely no evidence that Swift ever took "possession,

9   control [or] use" of Plaintiff's truck.  Plaintiff's reference to any such

10  unexercised "right" is simply a red herring.

11         Plaintiff's claim that delays in being offered loads were "consequences" for

12  declining loads is entirely speculative and erroneous.  Plaintiff's ICOA makes it

13  explicitly clear that the ICOA "shall not . . . be construed as an agreement by

14  [Swift] to furnish any specific tonnage of freight for transportation by [Plaintiff] at

15  any particular time, or at any particular place."  (Stancu Decl., ¶ 3, Ex. B,

16  Schwalm's ICOA, ¶ 1.)  There are various reasons why an individual might not be

17  offered a new load right when he or she asks for one, including the fact that one

18  simply is not available in his or her area.  (*See* Supp. Mussig Decl., ¶ 2, Ex. O,

19  Berry Depo., pgs. 35:25-39:10.)  Mere speculation and conjecture are insufficient to

20  create a genuine issue of disputed fact.

21         Furthermore, Swift's ability to terminate the ICOA without cause is

22  irrelevant.  Plaintiff had the same right (Stancu Decl., ¶ 3, Ex. B, Schwalm's

23  ICOA, ¶ 16(a)), and if she chose to exercise that right, she could have simply

24  driven for another carrier.  (*Id.* at Schwalm's ICOA ¶ 5(b); Spence Depo.,

25  pgs. 59:5-60:17.)

26         Additionally, Plaintiff was entitled to haul for other carriers and,

27  therefore, was not in any way forced to accept loads from Swift.  (Supp.

28  Mussig Decl., ¶ 2, Ex. O, Berry Depo., pg. 216:1-25; Stancu Decl., ¶ 3,

-37-

1    Ex. B, Schwalm's ICOA, ¶ 5(b).)  David Berry unequivocally testified that,

2    when Owner-Operators haul for other carriers, Swift does not enforce any

3    contract provision requiring Owner-Operators to return their "base plates."

4    (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pgs. 218:5-219:9.)  This

5    testimony is uncontroverted.

6         Plaintiff's reliance on the terms of her lease with IEL is misplaced.

7    The IEL lease has no bearing on whether Plaintiff was in an independent

8    contractor relationship with Swift while she was an Owner-Operator, as IEL

9    and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  In any

10   event, the evidence establishes that IEL never enforced any purported

11   contract language limiting the ability of Owner-Operators to drive for

12   carriers other than Swift, as it leased to individuals with no affiliation with

13   Swift whatsoever.  (Supp. Mussig Decl., ¶ 3, Ex. P, Spence Depo., pgs. 59:5-

14   60:17.)  Plaintiff offers no evidence that any of these contract provisions

15   were ever enforced against her.

16

17   31.    It was entirely Schwalm's choice whether or not to turn down load offerings

18   by Swift.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 28:22-29:3; Stancu Decl., ¶ 3

19   Ex. B, Schwalm's ICOA, ¶ 1; <u>see also</u> Mussig Decl., ¶ 3, Ex. K, Berry Depo., 157:21-

20   158:4.]

21   <u>PLAINTIFF'S RESPONSE:</u>

22   DENIED.  *See* Plaintiff Schwalm's response to ¶ 30 above.

23   <u>DEFENDANTS' REPLY:</u>

24        Defendants incorporate their reply in support of Undisputed Material

25   Fact No. 30.

26

27   32.    Schwalm took the opportunity to deliver every load offered by Swift she

28   could to maximize profit.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 28:22-29:3.]

-38-

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  The cited testimony says nothing about maximizing profit.  *See also* Plaintiff Schwalm's response to ¶ 30 above.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 30.

At deposition, when asked, "Was it your goal to take as many loads as you could to earn as much revenue as you could as an owner-operator?," Plaintiff testified, "Correct."  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 28:11-20.)  Plaintiff also admitted that **it was *entirely her choice, based on her own personal "goal,"* not to turn down loads**.  (*Id.* at Schwalm Depo., pgs. 28:17-29:3.)  Plaintiff cannot dispute her own deposition testimony.

33.     Schwalm was never ever instructed or required to haul freight for any particular customer as an Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 76:3-6.]

PLAINTIFF'S RESPONSE:

DENIED.  *See* Plaintiff Schwalm's response to ¶ 30 above.  Every assigned load was an instruction to haul freight for a particular customer.  *See* PSOF ¶¶ 105-132.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 30.

At deposition, when asked, "As an owner-operator, were you instructed that you had to haul freight for any particular customer?," Plaintiff testified, "No."  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 76:3-6.)  Plaintiff cannot dispute her own deposition testimony.

-39-

34.     Swift provided Schwalm with the option of working on a "dedicated route" (i.e., delivering for one particular customer).  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 77:17-79:2.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the testimony cited.  In the deposition testimony cited, Plaintiff Schwalm says that lease operators could apply for a dedicated route by requesting it through their Driver Manager and that she never requested a dedicated route.

DEFENDANTS' REPLY:

Plaintiff specifically testified that Owner-Operators had the option of working a dedicated route.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 77:17-78:7.)  In fact, Plaintiff knew "[q]uite a few" Owner-Operators who drove dedicated routes. (*Id.* at Schwalm Depo., pg. 79:9-14.)  Plaintiff admitted that she never opted to drive a dedicated route.  (*Id.* at Schwalm Depo., pg. 78:8-9.)  Plaintiff also admitted that her decision not to drive a dedicated route was her choice.  (*Id.* at Schwalm Depo., pgs. 78:10-79:2.)  Plaintiff explained, "I'm an OTR driver [over-the-road driver, meaning she preferred to drive long distances].  I'm not a dedicated driver. … [D]edicated people usually go home once a week, once every two weeks, what have you.  OTRs, once a month, once every six weeks or what have you.  I'm not a home-bound person.  I just like traveling the roads.  And yes, the revenue's better going east to west, west to east [as] opposed to a dedicated place.  The more you go home, the less you make." (*Id.* at Schwalm Depo., pgs. 78:10-79:2.)  Plaintiff cannot dispute her own deposition testimony.


35.     Schwalm chose to decline the option of working on a dedicated route. [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 78:8-13.]

-40-

PLAINTIFF'S RESPONSE:

DENIED.  *See* Plaintiff Schwalm's response to ¶ 34 above.  There is no evidence that Plaintiff Schwalm would have been approved for a dedicated route by Swift had she requested one.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 34.  Whether Plaintiff would have been "approved for a dedicated route" is irrelevant.  Her deposition testimony makes crystal clear that it was her decision not to drive a dedicated route.


36.    Schwalm's preference was driving cross-country as opposed to dedicated routes, because she felt the former provided the opportunity to make more revenue. [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 78:8-79:2.]

PLAINTIFF'S RESPONSE:

ADMITTED subject to Plaintiff Schwalm's response to ¶¶ 34 and 35 above.  However, an over-the-road driver who does not get loads will not make more revenue.  *See* PSOF ¶ 116.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact Nos. 34 and 35.  At deposition, Schwalm specifically testified that "dedicated people usually go home once a week, once every two weeks, what have you.  OTRs, once a month, once every six weeks or what have you.  I'm not a home-bound person.  I just like traveling the roads.  And yes, the revenue's better going east to west, west to east [as] opposed to a dedicated place.  The more you go home, the less you make."  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 78:10-79:2.)  Plaintiff cannot dispute her own deposition testimony.

37.     It was entirely Schwalm's choice to drive cross-country routes as opposed to dedicated routes.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 77:17-79:2; Mussig Decl., ¶ 3, Ex. K, Berry Depo., 15:17-16:6; 19:11-20:14.]

PLAINTIFF'S RESPONSE:

DENIED.  *See* Plaintiff Schwalm's response to ¶¶ 34 and 35 above.  Further, the deposition testimony of Mr. Berry is incomplete.  At 16:7-11, he admits that lease operators have a choice of division only if there is space for them in the area they select.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact Nos. 34 and 35.  At deposition, Plaintiff admitted that her decision not to drive a dedicated route was her choice.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 78:10-79:2.)  Plaintiff explained, "I'm an OTR driver [over-the-road driver, meaning she preferred to drive long distances].  I'm not a dedicated driver. … [D]edicated people usually go home once a week, once every two weeks, what have you.  OTRs, once a month, once every six weeks or what have you.  I'm not a home-bound person.  I just like traveling the roads.  And yes, the revenue's better going east to west, west to east [as] opposed to a dedicated place.  The more you go home, the less you make." (*Id.* at Schwalm Depo., pgs. 78:10-79:2.)  Plaintiff cannot dispute her own deposition testimony.


38.     Schwalm was not required to wear a uniform, nor adhere to any rules regarding her attire.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 154:16-19.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  The testimony cited relates only to uniforms, not "any rules regarding her attire."  The Driver Manual, Ex. 14 at 5060, and the Contracted

-42-

1    Driver Manual, Ex. 12 at 1685 both require drivers, including lease

2    operators, to "[a]lways wear clean and appropriate clothing. Jeans and T-

3    shirts are acceptable but button down shirts are preferred" and "no clothing

4    should be torn or have any offending language on it." PSOF ¶ 101(d). As

5    stated above, by contract, Swift had exclusive control over the truck and

6    thereby had the power and authority to direct drivers to wear uniforms.

7    DEFENDANTS' REPLY:

8         Plaintiff's response contradicts her deposition testimony. Specifically, when

9    asked "You didn't have to wear a uniform, did you, as an owner-operator?,"

10   Plaintiff admitted, "No." (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 154:16-

11   19.) Plaintiff cannot escape her own deposition admissions.

12        Further, Plaintiff's claim that Defendants had exclusive "control" over her

13   truck is simply false. Owner-Operators have always been free to accept and decline

14   freight loads offered to them by Swift – including high value loads. (Mussig Decl.,

15   ¶ 3, Ex. K, Berry Depo., pgs. 157:21-158:4.) Further, Owner-Operators are entitled

16   to haul for other carriers as long as they removed any Swift indicia from their truck.

17   (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pg. 216:1-25; Stancu Decl., ¶ 3,

18   Ex. B, Schwalm's ICOA, ¶ 5(b).) David Berry unequivocally testified that, when

19   Owner-Operators haul for other carriers, Swift does not enforce any contract

20   provision requiring Owner-Operators to return their "base plates." (Supp. Mussig

21   Decl., ¶ 2, Ex. O, Berry Depo., pgs. 218:5-219:9.) This testimony is

22   uncontroverted.

23        Plaintiff's reliance on the terms of her lease with IEL is misplaced. The

24   lease has no bearing on whether Plaintiff was in an independent contractor

25   relationship with Swift while she was an Owner-Operator, as IEL and Swift are

26   distinct and separate entities. (Berry Decl., ¶ 21.) The evidence also establishes

27   that IEL never enforced any purported contract language limiting the ability of

28   Owner-Operators to drive for carriers other than Swift, as it leased to individuals

-43-

1   with no affiliation with Swift whatsoever.  (*Id*. at Spence Depo., pgs. 59:5-60:17.)

2   Plaintiff offers no evidence that any of these contract provisions were ever enforced

3   against her.

4         Finally, Plaintiff cites the "Driver Manual" and "Contracted Driver Manual"

5   but there is absolutely no evidence Plaintiff ever received either manual.  She

6   therefore cannot argue that she was somehow bound by them.

7

8   39.     Schwalm was not required to communicate, check in, or interact with anyone

9   from Swift while she was carrying out her work.  [Stancu Decl., ¶ 2, Ex. A, Schwalm

10  Depo., pgs. 50:1-4, 82:11-12, 102:21-104:4.]

11  PLAINTIFF'S RESPONSE:

12  DENIED.  The statement mischaracterizes and is not supported by the cited

13  testimony.  The cited testimony at 50:1-4 merely says that no one sat in

14  Plaintiff Schwalm's truck with her while she drove.  VS 82:11-12 is taken

15  out of context.  In the cited testimony, Plaintiff Schwalm was merely stating

16  that Swift did not call her on the telephone, as opposed to Qualcomm, but

17  she would occasionally call them.  VS 102:21-104:4 says that no one from

18  Swift was physically present when she picked up and dropped off loads, and

19  that she communicated with Swift about her miles.  The surrounding

20  testimony indicates that Plaintiff Schwalm had extensive communications

21  with Swift via Qualcomm.  *See also* Plaintiff Schwalm's response to ¶ 14

22  above; VS 86:9-18 (Swift sent her instructions regarding loads over

23  Qualcomm), VS 111:10-117:8 (received multiple Qualcomm messages from

24  Swift ordering her to switch over to Qualcomm system that recorded her

25  driver logs electronically) 159:21-161:1 (received Qualcomm

26  communications from her Safety Manager regarding safety issues and log

27  violations); PSOF ¶ 101 (j) (report to Driver Manager every morning along

28

1    with Qualcomm communications), ¶ 146 (daily check-in calls and

2    Qualcomm communications).

3    DEFENDANTS' REPLY:

4         Defendants incorporate their reply in support of Undisputed Material

5    Fact No. 14.

6         Plaintiff admits that all communications with Swift while she was an

7    Owner-Operator were initiated by her.  (Stancu Decl., ¶ 2, Ex. A, Schwalm

8    Depo., pgs. 103:24-104:1.)  Plaintiff testified that nobody from Swift sat

9    with her in her truck while she was carrying out her work, called in to check

10   up on her while she was carrying out her work, or met her when she picked

11   up or dropped off loads.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs.

12   50:1-4, 82:11-12, 102:21-103:3.)  As such, Plaintiff was clearly not required

13   to communicate, check in, or interact with anyone from Swift while she was

14   carrying out her work.  Plaintiff cannot dispute her own deposition

15   testimony.

16        Additionally, David Berry's uncontroverted testimony establishes that no

17   one from Swift monitors Owner-Operators' location or tracks their progress towards

18   their destination, even if it had the ability to do so.  (Berry Decl., ¶ 7.)  Instead, it is

19   the responsibility of the Owner-Operators to let Swift know if they are unable to

20   transport a load within a certain timeframe or if there are any significant updates

21   regarding the transportation.  (*Id.*)

22        Furthermore, the fact that Swift communicated to Plaintiff via Qualcomm

23   about loads that were available for her to haul does not establish that Swift exerted

24   control over Plaintiff.  The fact that Swift reminded employee drivers and Owner-

25   Operators to comply with Department of Transportation regulations also does not

26   establish that Swift exerted control over Plaintiff.  (*See* Supp. Stancu Decl., ¶ 2,

27   Ex. L, Schwalm Depo., pgs. 157:23-159:19.)  Plaintiff's response is insufficient to

28   create a genuine issue of disputed fact.

40.    Schwalm did not have a supervisor.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 48:12-49:24.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  The cited testimony says that Plaintiff Schwalm had the same Driver Manager as a lease operator that she did as a company driver and that nothing was different regarding what her Driver Manager did.  *See also* Plaintiff Schwalm's response to ¶¶ 14, 16, 17, 39 above.  Further, Swift assigned all its employee and lease drivers a Driver Manager and they were under the supervision of other managers.  *See* PSOF ¶¶ 101(j), 119, 146, 149, 152, 155, 159.

DEFENDANTS' REPLY:

While Owner-Operators did have a "Driver Manager" (or mere point of contact at their home terminals), the evidence establishes that their Driver Managers were not their "supervisors."  Swift does not require that Owner-Operators, including Plaintiff, do any sort of regular check-ins with Swift while they are hauling loads.  (Berry Decl., ¶ 6.)  Indeed, Plaintiff admits that her Driver Manager did not evaluate her work performance or give her any feedback or instructions as to how to perform her work.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 48:12-49:24.)  Plaintiff admits that nobody from Swift sat with her in her truck while she was carrying out her work, called in to check up on her while she was carrying out her work, or met her when she picked up or dropped off loads.  (*Id.* at Schwalm Depo., pgs. 50:1-4, 82:11-12, 102:21-103:3.)  Indeed, Plaintiff admits that all communication with Swift was initiated by her.  (*Id.* at Schwalm Depo, 103:24-104:1.)  Plaintiff's response is insufficient to create a genuine issue of disputed fact.

41.    Schwalm did not receive any instructions on how to perform her work as an Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 49:21-24.]

1    PLAINTIFF'S RESPONSE:

2    DENIED.  *See* Plaintiff Schwalm's response to ¶¶ 14, 39 above.  *See also*

3    PSOF ¶¶ 98-104 (Swift policies), ¶ 101(a)-(u) (instructions).

4    DEFENDANTS' REPLY:

5         Defendants incorporate their replies in support of Undisputed Material

6    Fact Nos. 14 and 39.

7

8    42.    Nobody from Swift met with Schwalm at pick-up or drop-off sites.  [Stancu

9    Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 102:21-104:4.]

10   PLAINTIFF'S RESPONSE:

11   ADMITTED that Swift employees were not physically present at shippers'

12   and receivers' locations, but lease drivers and company drivers were required

13   to send macro messages through Qualcomm devices when they arrived at

14   shippers, when they left shippers, when they arrived at receivers, and when

15   they left receivers.  PSOF ¶¶ 146, 148, 149, 150 (monitoring via Omni-

16   tracs/Sensor-tracs).  *See also* Plaintiff Schwalm's response to ¶¶ 14, 39

17   above.

18   DEFENDANTS' REPLY:

19        Defendants incorporate their replies in support of Undisputed Material

20   Fact Nos. 14 and 39.

21        Plaintiff admits that no one from Swift met with her at pick-up or drop-off

22   sites to check in or supervise her when she was an Owner-Operator.  As such,

23   Plaintiff does not actually dispute this Undisputed Material Fact.  The fact that she

24   was expected to notify Swift when certain events occurred does not establish

25   "control" by Swift.  It is customary and normal for business partners to notify one

26   another when significant events occur.

27

28

-47-

43.     All of Schwalm's communications with Swift when she was an Owner-Operator were initiated by her.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 103:24-104:1.]

PLAINTIFF'S RESPONSE:

DENIED.  The quoted testimony, VS 103:4-23, makes clear that Plaintiff Schwalm is talking about communications that she initiated regarding her attempts to get loads and miles. 103:24-104:1 merely confirms that she was the one who initiated those particular communications.  That Swift initiated communications with her is testified throughout the deposition --- *see e.g.* Plaintiff Schwalm's response to ¶ 39 above.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 39.

Plaintiff's response contradicts her own deposition testimony. Specifically, when asked was "all communication [with Swift] initiated by you?,"  Plaintiff testified, "Pretty much."  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 103:24-104:1.)  Contrary to Plaintiff's assertions above, Plaintiff's admission was made in the context of a discussion about all of her interactions with Swift as an Owner-Operator – not in the context of a discussion merely about requesting loads from Swift.  (*See Id.* at Schwalm Depo., pgs. 103:4-104:4 ("How often would you say you had any kind of interaction with a Swift employee or representative when you were an owner-operator?," "What was the range from the least amount of interaction, most amount of interaction?")  Therefore, Plaintiff's response is insufficient to create a genuine issue of disputed fact.

1    44.    Schwalm would consistently go several days without any interaction with

2  Swift while she was working as an Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A, Schwalm

3  Depo., pgs. 102:21-103:23.]

4        PLAINTIFF'S RESPONSE:

5        DENIED.  Again, this is taken out of context.  In the context of the cited

6        testimony Plaintiff Schwalm states that "if I ran a load for four days, I

7        wouldn't talk to anybody for four days . . .  If I found I was going to sit or

8        usually the day before I – I'd drop a load . . .  I'll message the day before I

9        get there, say you got something for me, so they know I'm rough and ready

10       to go."  In other words she would go days before the times that *she initiated*

11       *contact* if she was running under a load, but would initiate communication as

12       she got close to the delivery.

13       DEFENDANTS' REPLY:

14            Plaintiff's response contradicts her own deposition testimony.

15       Specifically, Plaintiff admitted, "I wouldn't talk to anybody [from Swift] for

16       four days."  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 103:17-18.)

17       Plaintiff admits that all of her communications with Swift when she was an

18       Owner-Operator were initiated by her.  (*Id.* at Schwalm Depo., pgs. 103:24-

19       104:1.)  Therefore, Plaintiff's response is insufficient to create a genuine

20       issue of disputed fact.

21

22    45.    Schwalm never communicated with IEL as an Owner-Operator.  [Stancu

23  Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 120:16-25.]

24       PLAINTIFF'S RESPONSE:

25       ADMITTED.

26       DEFENDANTS' REPLY:

27       None.

28

46.     As an Owner-Operator, Schwalm could drive as part of a "team" if she preferred.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 105:23-106:6.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  Drivers could request permission from Swift to drive as a team. No driver could be part of a "driver team" unless Swift approved both members of the team to drive for Swift and approve both members to drive as a team.  PSOF ¶¶ 174-178.  The testimony simply says that team driving was a "permissible" arrangement for lease operators.

DEFENDANTS' REPLY:

Plaintiff's suggestion that Swift somehow prevented her from driving as part of a "team" contradicts her sworn deposition testimony.  At deposition, Plaintiff admitted that she knew that she could drive as a team. (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 105:23-106:12.)  Further, Plaintiff admitted the reason she did not drive as part of a team was that "[she] chose not to."  (*Id.* at Schwalm Depo., pg. 106:8-12.)  Plaintiff cannot create a disputed issue of fact by contradicting her own clear deposition testimony.


47.     Schwalm unilaterally made the decision not to drive as part of a team, as she preferred driving alone.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 106:8-12.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  Drivers could request permission from Swift to drive as a team. No driver could be part of a "driver team" unless Swift approved both members of the team to drive for Swift and approve both members to drive as a team.  PSOF ¶¶ 174-178.  The testimony cited says that Plaintiff Schwalm chose not to drive as a team, however, there is no evidence that

Plaintiff Schwalm would have been approved to drive as a team by Swift had she requested to.

<u>DEFENDANTS' REPLY:</u>

Plaintiff's suggestion that Swift somehow prevented her from driving as part of a "team" contradicts her sworn deposition testimony.  At deposition, Plaintiff admitted that she knew that she could drive as a team.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 105:23-106:12.)  Further, Plaintiff admitted the reason she did not drive as part of a team was that "[she] chose not to."  (*Id.* at Schwalm Depo., pgs. 106:8-12.)  Plaintiff cannot create a disputed issue of fact by contradicting her own clear deposition testimony.

48.    Schwalm could also assign someone of her choosing to deliver freight or perform other work in her place.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 50:5-9; Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 7.]

<u>PLAINTIFF'S RESPONSE:</u>

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  The cited testimony merely acknowledges that as a lease operator, she was permitted to hire employees to work for her.  However, her subsequent testimony reveals that she was unaware that she could hire driver "helpers."  VS 104:22-105:2.  Further, anyone hired by lease operators had to meet the "rules, policies and protocols" of Swift.  Contract (Doc. 747-3) at ¶ 7A.  Swift also had authority to bar any of a lease operators' employees which it deemed unqualified.  Contract (Doc. 747-3) at ¶ 7D.  The Lease also prohibited anyone but the lease operator from driving the truck unless the lease operator became "ill, disabled, or otherwise unable to drive," in which case, he or she could request permission from IEL to use a substitute driver, which IEL could deny.  PSOF ¶¶ 174-178.

1    <u>DEFENDANTS' REPLY:</u>

2          This Undisputed Material Fact is taken directly from Plaintiff's deposition

3    testimony.  Specifically, at deposition, Plaintiff admitted that, "[she] had the

4    understanding that [she] could hire a driver if [she] wanted to."  (Stancu Decl., ¶ 2,

5    Ex. A, Schwalm Depo., pg. 104:13-23.)  Further, Plaintiff's ICOA specifically

6    states in Paragraph 7 that she could hire employees or laborers.  Plaintiff cannot

7    create a disputed fact by contradicting her own deposition testimony and/or the

8    ICOA she admits she signed.

9          The evidence clearly establishes that Plaintiff had the ability to hire

10   drivers and driver helpers to work for her while she was an Owner-Operator,

11   as long as such individuals met DOT regulations and other state and federal

12   legal requirements (in this regard, Plaintiff was subject to the same hiring

13   limitations as Swift).  (Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 7.)  In

14   practice, Swift exerted little to no oversight regarding the employees that

15   Owner-Operators chose to hire, and rarely took any action regarding an

16   Owner-Operator's decision to hire a particular employee.  (Berry Decl., ¶

17   10.)

18

19        49.    Although Schwalm considered various ideas on how to run her Owner-

20   Operator business, she ultimately decided the ideal business model for her involved herself

21   and her own truck, as opposed to a fleet and other employees.  [Stancu Decl., ¶ 2, Ex. A,

22   Schwalm Depo., pgs. 40:14-42:3.]

23   <u>PLAINTIFF'S RESPONSE:</u>

24   DENIED.  This is pure hypothetical discussion about Plaintiff Schwalm's

25   plans and intentions that led her to become a lease operator.  It has no

26   relevance to the reality of working under the lease and contract.  *See also*

27   Plaintiff Schwalm's responses to ¶¶ 1 and 2 above.

28

1    DEFENDANTS' REPLY:

2         Defendants incorporate their replies in support of Undisputed Material

3    Fact Nos. 1 and 2.

4         This Undisputed Material Fact is taken directly from Plaintiff's

5    deposition testimony.  Plaintiff testified that her "intention when I started

6    truck driving was to become an owner and have a small business, i.e., five or

7    six trucks.  I was going to do that within the year.  Took me five years to

8    learn the industry… so I didn't need anybody's assistance… I wanted to

9    retire with a truck and work independently six months a year."  (Stancu

10   Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 40:20-41:2.)  When asked, "[did you

11   believe] that the ideal business for you would involve you and your own

12   truck as opposed to a fleet of trucks and other employees," Plaintiff testified,

13   "Correct."  (*Id.* at Schwalm Depo., pgs. 41:25-42:3.)  When asked, "[w]hy

14   did you make the decision to stick to one truck?," Plaintiff testified that,

15   based on her years of trucking experience, "Liability, people being

16   dependable, and [she] was tired."  (*Id.* at Schwalm Depo., pg. 41:10-23.)

17   Plaintiff cannot create a disputed issue of fact by contradicting her own

18   deposition testimony.

19        The fact that Plaintiff's knew and understood that she was forming an

20   independent contractor/business relationship with Swift when she signed the

21   ICOA, and not an employer-employee relationship, is a key factor weighing

22   in favor of a determination that she was in an independent contractor

23   relationship with Swift.

24

25        50.   Swift did not take part in Schwalm's decision that the ideal business model

26   for her involved herself and her own truck; rather it was Schwalm's choice to make.

27   [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 40:14-42:3.]

28

1   PLAINTIFF'S RESPONSE:

2   DENIED.  *See* Plaintiff Schwalm's responses to ¶¶ 1, 2 and 49 above.

3   DEFENDANTS' REPLY:

4   Defendants incorporate their replies in support of Undisputed Material

5   Fact Nos. 1, 2, and 49.

6

7   51.   Schwalm could have a passenger ride with her while she performed her work

8   as an Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 105:13-20.]

9   PLAINTIFF'S RESPONSE:

10   DENIED.  The cited testimony says that the policy regarding passengers was

11   the same for both company drivers and lease operators.  Drivers had to get

12   written authorization from Swift or IEL to have passengers.  Swift and IEL

13   also imposed other restrictions on having passengers.  *See* PSOF ¶ 101(c).

14   Swift PRE-CABS Training (Pl. Ex. 11, p. 15) explains that Swift requires

15   authorization for pets and passengers, p.15 (Bates DEF003002).

16   DEFENDANTS' REPLY:

17   Plaintiff's response contradicts her own deposition testimony.  At deposition,

18   Plaintiff specifically admitted that Owner-Operators "had a right to have a

19   passenger."  (Schwalm Depo., pg. 105:13-20.)  Plaintiff cannot create a disputed

20   issue of fact by contradicting her own deposition testimony.

21   Additionally, Plaintiff's cannot rely on the purported "Pre-CABS

22   Training document" as a matter of law.  Plaintiff fails to establish that Swift

23   ever provided a Pre-CABS Training document to her, such that she could be

24   familiar with, let along bound by, its contents.  The Pre-CABS Training

25   document lacks foundation and proper authentication.

26

27

28

52.     Schwalm could use her truck for personal reasons and did not have to seek approval to do so.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 154:21-155:9, 155:17-20.]

PLAINTIFF'S RESPONSE:

DENIED.  The cited testimony says that both company driver and lease operators could use their trucks for personal reasons, however, both the lease and contract restricted use of lease operators' trucks to business purposes only.  *See* PSOF ¶ 168.

DEFENDANTS' REPLY:

Plaintiff admits the cited deposition testimony acknowledges that Plaintiff was able to use her truck for personal reasons.  For example, Plaintiff testified that she could use her truck to "run downtown or what have you."  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 154:21-155:9.)  When asked, "when you were using the truck for personal reasons, did you have to get approval to do so?," Plaintiff testified, "No."  (*Id.* at Schwalm Depo., pg. 155:17-20.)  As such, Plaintiff does not actually dispute this Undisputed Material Fact.

Additionally, it is irrelevant whether employee drivers are allowed to use their trucks for personal use.  Swift's policies applicable to employee drivers have no bearing on whether Plaintiff was properly classified as an independent contractor while she was an Owner-Operator.  In any event, the evidence shows that employee drivers are **not** allowed to use their trucks for personal use like Owner-Operators.  (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pg. 119:15-22 ("Q: …is an employee driver allowed to use that truck for personal errands, to run to Walmart or to drive home from a terminal if he lives near the terminal? A: The short answer is no.").)

53.     Neither Swift nor IEL provided anything free of charge to Schwalm that she needed to run her business or perform her work as an Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 42:4-43:15, 106:13-25, 109:14-17, 121:2-123:23, 127:22-

1   129:14, 145:21-147:12, 148:11-150:2, 150:12-154:2; Stancu Decl., ¶ 3, Ex. B, Schwalm's

2   ICOA, ¶¶ 1, 7, 10-11, 13; Stancu Decl., ¶ 6, Ex. E, Schwalm's Lease Agreement dated

3   May 21, 2010; Stancu Decl., ¶ 7, Ex. F, Schwalm's Business Partner Independent

4   Contractor Checklist dated May 21, 2010, ¶¶ 2-5; Stancu Decl., ¶ 8, Ex. G, Schwalm's

5   Insurance Enrollment Forms dated May 21, 2010; Stancu Decl., ¶ 9, Ex. H, Schwalm's

6   Qualcomm Rental Agreement dated May 21, 2010; Mussig Decl., ¶ 3, Ex. K, Berry Depo.,

7   57:15-58:10.]

8       PLAINTIFF'S RESPONSE:

9       DENIED.  Swift provided lease operators with exactly the same equipment

10      and tools it provided to employee drivers, it just did so on credit, rather than

11      outright.  *See* PSOF ¶ 83 (three of the five Plaintiffs paid no down payment

12      for their trucks); ¶¶ 82-91 (everything a lease operator needed, insurance,

13      taxes, bond, lease payments, was financed on Swift's credit with no financial

14      outlay by the Plaintiffs at all); ¶¶ 207-237 (by virtue of fuel cards, weekly

15      advances and other credit offered by Swift, lease operators could continue to

16      drive week after week without any financial outlay at all as long as Swift

17      offered, and they drove, sufficient miles each week).  The difference between

18      the two was simply an accounting scheme.  Swift structured this

19      credit/deduction scheme so that it did not require any more investment on the

20      part of the lease operator than Swift's employee drivers made.  *See also*

21      Plaintiff Schwalm's responses to ¶¶ 7, 9-11 above.

22      The quote from Mr. Berry is incomplete and should continue through 62:4.

23      Mr. Berry is talking about calculating costs to Swift and through 58:10, he

24      says they don't know what lease operators pay for operating expenses, but

25      then he continues that they know what they pay in mileage and that lease

26      operator trucks cost Swift less than company trucks.

27

28

1    DEFENDANTS' REPLY:

2         Defendants incorporate their replies in support of Undisputed Material Fact

3    Nos. 7 and 9-11.

4         This Undisputed Material Fact is taken directly from Plaintiff's

5    deposition testimony.  Specifically, Plaintiff admits that Swift did not pay for

6    anything she needed as an Owner-Operator and that, instead, she "paid for

7    everything."  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 42:20-43:15.)

8    Plaintiff admits she paid for her own business expenses out of her earnings

9    as an Owner-Operator.  (*See e.g.*, *id.* at Schwalm Depo., pgs. 127:22-129:14

10   (Plaintiff paid for her own maintenance and repairs), pgs. 122:11-19

11   (Plaintiff paid for her own tolls), 152:22-25 (Plaintiff paid for her own

12   insurance).)  Plaintiff also does not deny her ICOA with Swift states that she

13   was responsible for providing the equipment and labor necessary to perform

14   all work under the ICOA.  (*See* Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶

15   1.)  Plaintiff cannot create a disputed fact by contradicting her own

16   deposition testimony and/or the ICOA she admits she signed.

17        Further, Swift did not finance Plaintiff's maintenance, tolls, or other

18   expenses.  Rather, Swift simply advanced these costs to Plaintiff as a convenience

19   and deducted the costs from weekly settlements.  Plaintiff bore ultimate financial

20   responsibility for her own expenses.

21        Finally, the tools and equipment provided to employee drivers are irrelevant.

22   Swift's policies applicable to employee drivers have no bearing on whether Plaintiff

23   was properly classified as an independent contractor while she was an Owner-

24   Operator.

25

26   54.    Schwalm invested thousands of dollars into her truck.  [Stancu Decl., ¶ 6,

27   Ex. E, Schwalm's Lease Agreement dated May 21, 2010.]

28

PLAINTIFF'S RESPONSE:

DENIED.  The lease shows that Plaintiff Schwalm put $0 down for her truck.  Lease (Doc. 747-6) at p. 8.  Further, all lease payments made by Plaintiff Schwalm were a pass through from Swift – Swift paid a higher mileage rate and then deducted the lease cost from that higher mileage rate.  The higher mileage rate was designed to ensure that if a lease operator drove the same expected miles as a company driver, she would cover her lease and expenses.  PSOF ¶¶ 16, 91, 115-116, 231.  Payment of expenses is not an "investment" in a truck.  Plaintiff Schwalm acquired no equity in her truck thereby.  PSOF ¶ 49 (no equity in truck by virtue of lease payments).  *See also* ¶¶ 82-91 (financing of entire leasing process), ¶¶ 207, 210-227, 231 (Swift financing, loans, and advances for operating costs).

DEFENDANTS' REPLY:

Plaintiff does not dispute that that she entered into a lease agreement with IEL.  (Stancu Decl., ¶ 6, Ex. E, Schwalm's Lease Agreement.)  Pursuant to Schedule A of the lease, Plaintiff paid $649 per week for the first 27 weeks and then $549 per week for the remaining 79 weeks.  (*Id.*)  Since Plaintiff was an Owner-Operator from May 21, 2010 to June of 2012, Plaintiff clearly invested thousands of dollars into her truck.  (($649 x 27 weeks) + ($549 x 79 weeks) = $60,894.)  While argumentative, Plaintiff's response is insufficient to dispute this fact.

Furthermore, the fact that Swift deducted lease payments from Plaintiff's settlements has no bearing on any relevant issue.  Plaintiff still made her lease payments with her own earnings as an Owner-Operator.  Indeed, Plaintiff admits that Swift did not pay for anything she needed as an Owner-Operator and that, instead, she "paid for everything."  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 42:20-43:15.)  Also, Plaintiff's claim that she did not have any equity interest in the truck she leased from IEL is

-58-

disingenuous.  Similar to a car lease, Plaintiff had the option to purchase the truck for an agreed-upon residual value upon the expiration of the lease. (Supp. Mussig Decl., ¶ 3, Ex. P, Spence Depo., pgs. 80:19-82:4.)  The lease contained a provision that governed Plaintiff's possible purchase of the truck from IEL following the expiration of the lease term.  (Stancu Decl., ¶ 6, Ex. E, Schwalm's Lease Agreement,¶ 18.)

55.     Schwalm was free to obtain the truck from anywhere she wanted.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 97:3-98:5; Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 4.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  The cited testimony clearly shows that Plaintiff Schwalm was told and understood that her only option was to lease a truck from IEL if she wanted to be a lease operator for Swift.  VS 96:8-98:9.  *See also* PSOF ¶¶ 17, 44 (lease operators not given option to lease truck from anyone other than IEL).

DEFENDANTS' REPLY:

Plaintiff's ICOA expressly states that she was able to lease from companies other than IEL.  (Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 4.)  Further, at deposition, Plaintiff stated that "I wasn't [told], well, you have to lease.  I was entering a partnership with Swift … [a]nd, I mean, they didn't say, lease a truck from us and become a partner, or lease a truck over there and become a partner." (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 97:3-12.)  Plaintiff also admitted that Swift never suggested that she could not lease a truck from a company other than IEL.  (*Id*. at Schwalm Depo., pg. 98:1-5.)  Plaintiff cannot create a disputed fact by contradicting her own deposition testimony and/or the ICOA she admits she signed.

56.     Schwalm was responsible for the repair, maintenance, and upkeep of her truck as an Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 42:4-43:15, 127:22-129:14, 146:4-147:12; Stancu Decl., ¶ 7, Ex. F, Schwalm's Business Partner Independent Contractor Checklist dated May 21, 2010, ¶ 3.]

PLAINTIFF'S RESPONSE:

DENIED.  *See* Plaintiff Schwalm's responses to ¶¶ 21, 28, 29 and 53 above.

DEFENDANTS' REPLY:

Defendants incorporate their replies in support of Undisputed Material Fact Nos. 21, 28, 29, and 53

57.     Schwalm paid for her own damage insurance, health insurance, and workers' compensation insurance as an Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 42:16-17, 106:13-21, 145:21-146:3, 148:11-150:2, 150:12-154:2; Stancu Decl., ¶ 7, Ex. F, Schwalm's Business Partner Independent Contractor Checklist dated May 21, 2010, ¶¶ 2, 4; Stancu Decl., ¶ 8, Ex. G, Schwalm's Insurance Enrollment Forms dated May 21, 2010.]

PLAINTIFF'S RESPONSE:

DENIED.  *See* Plaintiff Schwalm's responses to ¶¶ 7 and 53 above.

DEFENDANTS' REPLY:

Defendants incorporate their replies in support of Undisputed Material Fact Nos. 7, and 53

58.     Schwalm rented her own Qualcomm system, a common means of communication in the trucking industry which could be used with other trucking companies.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 106:22-25, 109:14-17; Stancu Decl., ¶ 9, Ex. H, Schwalm's Qualcomm Rental Agreement dated May 21, 2010.]

PLAINTIFF'S RESPONSE:

DENIED.  *See* Plaintiff Schwalm's responses to ¶¶ 7, 10 and 53 above.

DEFENDANTS' REPLY:

Defendants incorporate their replies in support of Undisputed Material Fact Nos. 7, 10, and 53.


59.     Schwalm also voluntarily chose to purchase her own transponder, which she could use on toll roads and weigh stations, because she believed it optimized her use of time.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 121:2-123:23]

PLAINTIFF'S RESPONSE:

DENIED.  *See* Plaintiff Schwalm's responses to ¶¶ 7, 10 and 53 above. Swift required Schwalm to have a Qualcomm unit on the leased truck.  *See* Contract (Doc. 747-3) at ¶ 5.D.

DEFENDANTS' REPLY:

Defendants incorporate their replies in support of Undisputed Material Fact Nos. 7, 10, and 53.

Plaintiff admitted that she chose to purchase a transponder because it "help[ed] maximize [her] time."  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 123:19-23.)  Plaintiff explained that "the PrePass just got you through without stopping at the toll booth.  You could drive by, and you would be billed.  If you went through the toll road – road without, then you'd have to stop and pay cash out of your pocket. … Time is money. … If you had the transponder, you can bypass the weigh station." (*Id.* at Schwalm Depo., pgs. 122:2-9, 123:3-18.)  Plaintiff admitted that she chose to use her transponder and paid for her tolls from income earned from her settlements.  (*Id.* at Schwalm Depo., pg. 122:10-19.)

The fact it was necessary for Plaintiff to have a Qualcomm unit, a common means of communication in the trucking industry that could be used with other trucking companies, has no bearing on any relevant issue.

60.     Schwalm could hire drivers, driver helpers, and laborers to work for her as an Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 50:5-9, 104:13-23; Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA with Swift dated May 21, 2010, ¶ 1.]

PLAINTIFF'S RESPONSE:

DENIED.  *See* Plaintiff Schwalm's response to ¶ 48 above.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 48.

61.     Schwalm knew other Owner-Operators working with Swift who hired drivers to work for them.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 101:10-16.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  The cited testimony merely states that, prior to becoming a lease operator, there were lease operators who wanted her to drive for them.  This does not mean those lease operators actually hired anyone.

DEFENDANTS' REPLY:

Plaintiff's response contradicts her own deposition testimony.  At deposition, Plaintiff specifically admitted that she knew that other Owner-Operators had employees.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 101:10-22.)  In fact, she stated that she understood that such employees were not paid by Swift but rather by the Owner-Operator, and she did not want to work in such a capacity because there was a risk the Owner-Operator might not be able to pay her.  (*Id.* at Schwalm Depo., pg. 101:5-22.)  Plaintiff cannot create a disputed issue of fact by contradicting her own deposition testimony.

62.     After careful consideration, Schwalm decided that hiring other drivers was not a smart move for her own business, but was aware that the decision was entirely hers to make.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 41:4-42:3.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  In VS 41:4-42:3, Plaintiff Schwalm is speaking hypothetically about her ideal plans for the future.  She was not speaking about what was possible as a Swift Lease operator.  Later, at VS 81:7-14, when asked if she was aware that she could have had someone drive her truck in her place, she answers "I don't think that's a true statement."  Further, Swift prohibited the hiring of other drivers without its approval.  *See* Plaintiff Schwalm's response to ¶ 48 above.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 48.

At deposition, Plaintiff specifically admitted she "had the understanding that [she] could hire a driver if [she] wanted to."  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 104:13-23.)  Plaintiff testified that her "intention when I started truck driving was to become an owner and have a small business, i.e., five or six trucks.  I was going to do that within the year.  Took me five years to learn the industry…  so I didn't need anybody's assistance… I wanted to retire with a truck and work independently six months a year."  (*Id.* at Schwalm Depo., pgs. 40:20-41:2.)  When asked, "[did you think] that the ideal business for you would involve you and your own truck as opposed to a fleet of trucks and other employees," Plaintiff testified, "Correct."  (*Id.* at Schwalm Depo., pgs. 41:25-42:3.)  When asked, "[w]hy did you make the decision to stick to one truck?," based on her years of trucking experience, Plaintiff testified, "Liability, people being dependable, and [she] was tired."  (*Id.* at Schwalm Depo., pg. 41:10-23.)  As such, Plaintiff clearly carefully considered

-63-

different business strategies and models before determining she did not want to hire other drivers for her business.  Plaintiff's response is insufficient to create a genuine issue of disputed fact.

Plaintiff's testimony is consistent with all the other evidence in this case. Under the terms of her ICOA, Plaintiff had the ability to hire drivers and driver helpers to work for her while she was an Owner-Operator, as long as such individuals met DOT regulations and other state and federal legal requirements (in this regard, Plaintiff was subject to the same hiring limitations as Swift).  (Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 7.)  In practice, Swift exerted little to no oversight regarding the employees that Owner-Operators chose to hire, and rarely took any action regarding an Owner-Operator's decision to hire a particular employee.  (Berry Decl., ¶ 10.)

63.     As an Owner-Operator, Schwalm was able to operate multiple trucks if she chose.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 50:11-14.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  The testimony cited states that she was aware it was permitted nothing more.

DEFENDANTS' REPLY:

Plaintiff's response contradicts her own deposition testimony.  Specifically, when asked if she "knew that [she] was permitted to have multiple trucks as an owner-operator?," Plaintiff testified, "Yes."  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 50:11-14.)  Plaintiff cannot create an issue of disputed fact by contradicting her own deposition testimony.

64.     Schwalm entered into an Owner-Operator relationship with Swift because she wanted to run a successful business of her own.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 40:14-42:3, 142:17-143:14.]

PLAINTIFF'S RESPONSE:

ADMITTED, but immaterial.  At most this is true as an aspiration, with Defendant conceding that this is what Plaintiff Schwalm "wanted," not what actually was.  VS 40:14-42:3 are aspirational statements about Schwalm's intent before she became a lease operators, not what she was able to do as an lease operator.  VS 142:17-143:14 is a completely irrelevant identification of her W-9 form.  *See also* Plaintiff Schwalm's responses to ¶¶ 1 and 49.

DEFENDANTS' REPLY:

Defendants incorporate their replies in support of Undisputed Material Fact Nos. 1 and 49.  The fact that Plaintiff's knew and understood that she was forming an independent contractor/business relationship with Swift when she signed the ICOA, and not an employer-employee relationship, is a key factor weighing in favor of a determination that she was in an independent contractor relationship with Swift.

65.     Schwalm believes she was successful as an Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 79:16-80:4.]

PLAINTIFF'S RESPONSE:

ADMITTED, but immaterial.  In the cited testimony, Plaintiff Schwalm is asked, until the last month of her time as a lease operator, if she considered herself successful, and she answers in the affirmative because her truck produced revenue.  However, she clarifies by saying that her truck produced revenue "By running it.  Wheels turn, wheels generate dollars.  Wheels don't turn, there is no dollar."  VS 80:2-7.  This is precisely Plaintiff's point that her success had nothing to do with business acumen or investment or

managerial skill; her success was because she was a good, hard-working driver who was given many miles by Swift and ran them (kept her wheels turning).  That is exactly what would make an employee driver successful as well.  In fact at VS 52:14-22, Plaintiff Schwalm says "Swift always knew I had a- an average mile I expected, whether I be a company driver or an owner-op.  And I believe I put excessive amount of miles on that truck that I was leasing in a short period of time, and they cut my miles in half."  Which is why she quit.  VS 50:21-52:13.

DEFENDANTS' REPLY:

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  At deposition, Plaintiff testified that she was a successful Owner-Operator "[b]ecause [she] ran her truck like a business." (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 79:21-25.)  Plaintiff admitted that it "[t]ook [her] five years to learn the [trucking] industry."  (*Id.* at Schwalm Depo., pg. 40:23-24.)  She also admitted that she did not "go into business to lose money.  … [She] did a lot of research before [she] went into that."  (*Id.* at Schwalm Depo., pg. 99:10-12.)  Plaintiff described herself as an "aggressive" business person.  (*Id.* at Schwalm Depo., pg. 99:5-16.)  The fact Plaintiff utilized her business acumen and managerial skills gained from years of studying the industry to become a successful Owner-Operator is material to whether or not Plaintiff was an independent contractor.

Similarly, David Berry testified that there are a variety of factors that go into whether or not Owner-Operators are successful in their business; "[e]ach person has their own business model of how they're going to succeed."  (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pg. 155:1-20.)  As just one example, Owner-Operators could choose to drive for other carriers and increase their earnings that way.  (Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 5(b); Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pgs. 216:1-25,

-66-

218:5-219:9; Supp. Mussig Decl., ¶ 3, Ex. P, Spence Depo., pgs. 59:5-60:17

(IEL leased to individuals with no affiliation with Swift whatsoever).)

Indeed, Owner-Operators could be successful without driving any miles at

all for Swift by hauling exempt materials such as crops.  (Berry Decl., ¶ 13.)

Finally, Plaintiff's claim that she was being offered fewer loads

because she was putting too many miles on her truck is entirely speculative

and erroneous.  Plaintiff's ICOA makes it explicitly clear that the ICOA

"shall not . . . be construed as an agreement by [Swift] to furnish any specific

tonnage of freight for transportation by [Plaintiff] at any particular time, or at

any particular place."  (Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 1.)

There are various reasons why an individual might not be offered a new load

right when he or she asks for one, including the fact that one simply is not

available in his or her area.  (*See* Supp. Mussig Decl., ¶ 2, Ex. O, Berry

Depo., pgs. 35:25-39:10.)  Mere speculation and conjecture are insufficient

to create a genuine issue of disputed fact.


66.     Schwalm attributes her success to the fact that she "ran [her] truck like a

business."  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 79:16-80:4.]

PLAINTIFF'S RESPONSE:

DENIED.  *See* Plaintiff Schwalm's response to ¶ 65 above.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material

Fact No. 65.


67.     Schwalm also attributes her success as an Owner-Operator to her reputation

as an "aggressive business woman."  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo.,

pgs. 80:21-81:5, 98:24-100:23.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  This cited testimony is also taken out of context.  VS 80:21-81:5, in which Plaintiff Schwalm discusses her willingness to work and her ability to deliver loads on time without complaining, should include 79:16-81:5 where she simply makes clear that she was successful because Swift gave her many miles and she ran them (kept her wheels turning).  *See* Plaintiff Schwalm's response to ¶ 66 above.  In VS 98:24-100:23, Plaintiff Schwalm never uses the term "aggressive business woman."  What she says is that she is an "aggressive person as far as making money" and that she knew exactly how many miles she had to run and what kind of pace she had to go in order to make a profit.  Again her success, money, and profit all came from being offered a sufficient number of miles from Swift and running those miles – i.e., driving – not from business acumen.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 66.

At deposition, Plaintiff testified that "[she was] an aggressive person as far as making money."  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 99:5-15.)  As such, Plaintiff explained that she "did a lot of research before" becoming an Owner-Operator.  Plaintiff admits that it "[t]ook [her] five years to learn the [trucking] industry."  (*Id.* at Schwalm Depo., pg. 40:23-24.)  The fact Plaintiff utilized her business acumen and managerial skills gained from years of studying the industry to become a successful Owner-Operator is material to whether or not Plaintiff was an independent contractor.

Similarly, David Berry testified that there are a variety of factors that go into whether or not Owner-Operators are successful in their business, as "[e]ach person has their own business model of how they're going to

1   succeed."  (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pg. 155:1-20.)  As

2   just one example, Owner-Operators could choose to drive for other carriers

3   and increase their earnings that way.  (Stancu Decl., ¶ 3, Ex. B, Schwalm's

4   ICOA, ¶ 5(b); Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pgs. 216:1-25,

5   218:5-219:9; Supp. Mussig Decl., ¶ 3, Ex. P, Spence Depo., pgs. 59:5-60:17

6   (IEL leased to individuals with no affiliation with Swift whatsoever).)

7   Indeed, Owner-Operators could be successful without driving any miles at

8   all for Swift by hauling exempt materials such as crops.  (Berry Decl., ¶ 13.)

9

10      68.      Schwalm believes she was more successful than other Owner-Operators

11   because she took on roles and tasks that she believed would benefit her business.  [Stancu

12   Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 35:9-16.]

13   <u>PLAINTIFF'S RESPONSE:</u>

14   DENIED.  The statement mischaracterizes and is not supported by the cited

15   testimony.  This cited testimony is also taken out of context.  The full context

16   begins at 34:24 where Plaintiff Schwalm is asked if she thinks her

17   relationship with planners helped her get offered more loads by Swift.

18   VS 34:24-35:1.  She says, "What got me load offerings is because I did my

19   job."  VS 35:3-4.  And by that she means she took whatever was offered.  "If

20   Swift needed something done I did it, whether it be take empty trailers

21   somewhere or whatever they needed.  I was very Swift friendly."  She

22   understood that her success at her job depended on Swift's inclination to give

23   her work, so she made it known that she was willing to do that work.  She

24   says nothing about "benefiting her business."

25   <u>DEFENDANTS' REPLY:</u>

26      Plaintiff specifically testified that she was more successful than other

27   Owner-Operators because she "ran [her] truck like a business," which to her

28   meant to "get[] loads on time" and keep her "[w]heels turning."  (Stancu

1    Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 79:21-80:7.)  Plaintiff developed this

2    strategy after studying the trucking industry for five years.  (*Id.* at Schwalm

3    Depo., pg. 40:23-24.)  Moreover, the evidence demonstrates there are other

4    strategies and other factors that go into whether or not Owner-Operators are

5    successful in their business – as David Berry testified, "[e]ach person has

6    their own business model of how they're going to succeed."  (Supp. Mussig

7    Decl., ¶ 2, Ex. O, Berry Depo., pg. 155:1-20.)  As just one example, Owner-

8    Operators could choose to drive for other carriers and increase their earnings

9    that way.  (Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 5(b); Supp. Mussig

10   Decl., ¶ 2, Ex. O, Berry Depo., pgs. 216:1-25, 218:5-219:9; Supp. Mussig

11   Decl., ¶ 3, Ex. P, Spence Depo., pgs. 59:5-60:17 (IEL leased to individuals

12   with no affiliation with Swift whatsoever).)  Owner-Operators could also be

13   successful without driving any miles per month for Swift by hauling exempt

14   materials such as crops.  (Berry Decl., ¶ 13.)

15       Also, Plaintiff's claim that she would be offered fewer loads if she declined

16   loads is entirely speculative and erroneous.  Plaintiff's ICOA makes it explicitly

17   clear that the ICOA "shall not . . . be construed as an agreement by [Swift] to

18   furnish any specific tonnage of freight for transportation by [Plaintiff] at any

19   particular time, or at any particular place."  (Stancu Decl., ¶ 3, Ex. B, Schwalm's

20   ICOA, ¶ 1.)  There are various reasons why an individual might not be offered a

21   new load right when he or she asks for one, including the fact that one simply is not

22   available in his or her area.  (*See* Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo.,

23   35:25-39:10.)  Mere speculation and conjecture are insufficient to create a genuine

24   issue of disputed fact.

25

26   69.     Schwalm knew how many miles she had to drive her truck and at what pace

27   she needed to operate to make a profit.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo.,

28   pgs. 98:24-100:23.]

1   PLAINTIFF'S RESPONSE:

2   ADMITTED, but immaterial.  Again as in ¶¶ 65-68 above, Plaintiff Schwalm

3   is talking about being offered miles by Swift and driving those miles as the

4   way to make money – precisely what a company driver does; she is not

5   talking about business initiative or managerial skill.  Knowing how many

6   miles she had to drive her truck to make a profit did not mean that Swift

7   would provide those miles.  *See* Contract ¶ 1.

8   DEFENDANTS' REPLY:

9       Defendants incorporate their replies in support of Undisputed Material

10   Fact Nos. 65-68.

11       Plaintiff admits that she "did a lot of research" into the trucking

12   industry before she became an Owner-Operator.  (Stancu Decl., ¶ 2, Ex. A,

13   Schwalm Depo., pg. 99:10-12.)  Indeed, Plaintiff admits that it "[t]ook [her]

14   five years to learn the [trucking] industry."  (*Id.* at Schwalm Depo., pg.

15   40:23-24.)  Plaintiff also admits that, through her research, she learned how

16   many miles she had to drive and at what pace she needed to operate to make

17   a profit.  (*Id.* at Schwalm Depo., pgs. 98:24-100:23.)  The fact Plaintiff

18   educated herself as to how many miles she had to drive and at what pace she

19   needed to operate to make a profit is material to whether or not Plaintiff was

20   an independent contractor because it shows that Plaintiff exercised business

21   judgment and acumen.  Indeed, Plaintiff admits that she was a successful

22   Owner-Operator "[b]ecause [she] ran her truck like a business."  (*Id.* at

23   Schwalm Depo., pg. 79:21-25.)

24       Plaintiff's claim that knowing how many miles she needed to drive to

25   make a profit did not mean that Swift provided those miles is certainly true,

26   but irrelevant.  Owner-Operators, including Plaintiff, are entitled to haul for

27   other carriers as long as they removed any Swift indicia from their truck.

28   (Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 5(b); Supp. Mussig Decl., ¶ 2,

-71-

1    Ex. O, Berry Depo., pgs. 216:1-25, 218:5-219:9; Supp. Mussig Decl., ¶ 3,

2    Ex. P, Spence Depo., pgs. 59:5-60:17 (IEL leased to individuals with no

3    affiliation with Swift whatsoever).)  If Swift was not offering her the desired

4    mileage, Plaintiff was free to work with other carriers.

5

6    70.    Schwalm determined how many miles she had to drive her truck and at what

7    pace she needed to operate to make a profit based on her years of experience in the

8    trucking industry.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 40:14-42:3, 98:24-

9    100:23.]

10         PLAINTIFF'S RESPONSE:

11         DENIED.  *See* Plaintiff Schwalm's responses to ¶¶ 1, 65-69 above.  Further,

12         Swift assigned loads.  PSOF ¶¶ 122-132.

13         DEFENDANTS' REPLY:

14             Defendants incorporate their replies in support of Undisputed Material

15         Fact Nos. 1 and 65-69.

16             Contrary to Plaintiff's assertions, Swift did not assign loads to

17         Plaintiff.  Rather, Swift offered loads to Plaintiff.  Plaintiff admits that she

18         was free to accept or decline loads offered by Swift as an Owner-Operator

19         and it was **entirely her own personal choice**, based on her own personal

20         "goal," to take as many loads as were offered.  (Stancu Decl., ¶ 2, Ex. A,

21         Schwalm Depo., pgs. 28:22-29:3.)

22

23    71.    Schwalm structured her business in a way that she felt would be most

24    profitable.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 40:14-42:3, 98:24-100:23.]

25         PLAINTIFF'S RESPONSE:

26         DENIED.  The statement mischaracterizes and is not supported by the cited

27         testimony.  Again, VS 40:14-42:3 is a purely *hypothetical* discussion of her

28         *aspirations* before becoming an lease operator.  VS 98:24-100:23 are

-72-

discussed above at Plaintiff Schwalm's responses to ¶¶ 67, 69 and 70, and have nothing to do with "structuring a business" and everything to do with keeping her wheels rolling – *i.e.* driving maximum miles offered by Swift – what any employee paid on a mileage basis would do to make money.

DEFENDANTS' REPLY:

Defendants incorporate their replies in support of Undisputed Material Fact Nos. 67, 69, and 70.

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony. At deposition, Plaintiff admitted that she considered different structures for her business, i.e., having a small fleet or having a single truck, prior to being an Owner-Operator. (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 40:14-42:3.) After spending five years learning the trucking industry, Plaintiff chose to have a single-truck, in part, to decrease potential liability. (*Id.* at Schwalm Depo., pgs. 40:14-42:3, 98:24-100:23.) Plaintiff also chose to be an over-the-road driver, rather than a dedicated driver, in part because over-the-road drivers can potentially earn more than dedicated drivers. (*Id.* at Schwalm Depo., pgs. 78:8-79:2.) Plaintiff cannot create an issue of disputed fact by contradicting her own deposition testimony.

72.     Schwalm believes her potential profitability as an Owner-Operator was essentially "limitless." [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 174:23-175:1.]

PLAINTIFF'S RESPONSE:

ADMITTED, but immaterial. Both the statement here and the questions asked at the deposition are vague. Further, while Schwalm may have *believed* that her potential profitability was limitless, the reality is that her profitability was undisputedly limited by numerous factors, including how many miles Swift was willing to offer her to drive (as became clear in her

-73-

final month with Swift (*see* VS 50:21-51:6, 52:5-7, 56:14-58:3)), the rate per mile paid by Swift (which was unilaterally decided by Swift (see PSOF ¶ 58)), and Department of Transportation rules and regulations limiting the number of hours she could drive.

DEFENDANTS' REPLY:

The testimony cited by Defendants could not be more specific.  When asked, "Was there a limit on the amount of money that you could make as an owner-operator?," Plaintiff responded, "Limitless."  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 174:23-175:1.)

The evidence establishes that there are a variety of factors that go into whether or not Owner-Operators are successful in their business – as David Berry testified, "[e]ach person has their own business model of how they're going to succeed."  (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pg. 155:1-20.)  As just one example, Owner-Operators could chose to drive for other carriers and increase their earnings that way.  (Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 5(b); Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pgs. 216:1-25, 218:5-219:9; Supp. Mussig Decl., ¶ 3, Ex. P, Spence Depo., pgs. 59:5-60:17 (IEL leased to individuals with no affiliation with Swift whatsoever).)  Owner-Operators could also be successful without driving any miles per month for Swift by hauling exempt materials such as crops.  (Berry Decl., ¶ 13.)  Owner-Operators could choose to own and operate a fleet of trucks.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., 50:11-14.)  Owner-Operators could also choose to work over-the-road routes, which are generally more profitable than dedicated routes.  (*Id.* at Schwalm Depo., 77:17-78:7.)

Plaintiff cannot dispute that she understood that her potential profitability was limitless.  Further, her understanding is material to whether or not she was an independent contractor because it shows the profitability of

1    her business was dependent on her business acumen, including how she

2    decided to structure her business, and also that Plaintiff understood she was

3    in an independent contractor/business relationship with Swift.  Employees do

4    not have "limitless" earning potential.

5

6        73.    Schwalm became an Owner-Operator because she wanted to incorporate and

7  develop her own business.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 26:23-28:15,

8  40:14-42:3, 101:23-102:4.]

9    PLAINTIFF'S RESPONSE:

10    ADMITTED, but immaterial.  At most this is true as an aspiration, with

11    Defendant conceding that this is what Plaintiff Schwalm "wanted," not what

12    actually was.  Indeed, despite her intentions, Plaintiff Schwalm never

13    incorporated.  VS 27:14-17.  The cited testimony does not at all speak to the

14    reality of her relationship with Swift once she became a lease operator.

15    Further, VS 101:23-102:4 does not support the statement above.  In the cited

16    testimony, Plaintiff Schwalm states that she believed she was leasing her

17    truck from Swift and was not aware of IEL.

18    DEFENDANTS' REPLY:

19        The fact that Plaintiff's knew and understood that she was forming an

20    independent contractor/business relationship with Swift when she signed the

21    ICOA, and not an employer-employee relationship, is a key factor weighing

22    in favor of a determination that she was in an independent contractor

23    relationship with Swift.

24

25        74.    As an Owner-Operator, Schwalm had a goal of running her business with

26  five to six trucks, in partnership with Swift.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo.,

27  pgs. 26:23-28:15, 40:14-42:3, 75:6-20.]

28

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  VS 26:23-28:15 is purely aspirational and does not reflect the reality of what actually happened.  Further, in VS 40:14-42:3 Plaintiff Schwalm states that when she started truck driving as a company driver, not a lease operator, her goal was to have a business with five or six trucks.  Again this is purely aspirational and does not reflect what actually happened.  Indeed, Plaintiff Schwalm testifies that by the time she became a lease operator after five years as a company driver, she'd "whittled that down to just [her] and one truck," which is what she did.  VS 41:17-19.  She never leased more than one truck from IEL.  *See also* Plaintiffs' responses to ¶¶ 1, 2, 7, 9, 64 and 73 above.

DEFENDANTS' REPLY:

Defendants incorporate their replies in support of Undisputed Material Fact Nos. 1, 2, 7, 9, 64, and 73.

Plaintiff admits that when she first started driving a truck, her goal "was to become an owner and have a small business – i.e., five or six trucks."  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 40:20-22.)  Plaintiff also admits that she stopped being an employee driver for Swift because she wanted to be an Owner-Operator and incorporate her own business.  (*Id.* at Schwalm Depo., pgs. 26:23-28:15.)  Plaintiff admits that she understood that when she signed her ICOA that she and Swift became business partners.  (*Id.* at Schwalm Depo., pg. 75:6-20.)  Plaintiff cannot dispute this deposition testimony.  As such, Plaintiff's response is insufficient to create a genuine issue of disputed fact.

75.    Schwalm understood that by entering into the ICOA, she was becoming a "business partner" of Swift and would no longer be an employee. [Stancu Decl., ¶ 2,

1   Ex. A, Schwalm Depo., pgs. 74:22-75:20, 101:23-102:4; Stancu Decl., ¶ 3, pg. 1:16-19,

2   Ex. B, Schwalm's ICOA, ¶ 17.]

3       PLAINTIFF'S RESPONSE:

4       ADMITTED, but immaterial.  What Plaintiff Schwalm understood cannot

5   override the economic realities of the parties' actual relationship, and the

6   cited testimony does not say anything about the reality of the agreement after

7   she signed it.  Moreover, the full context of the testimony is the discussion of

8   Plaintiff Schwalm signing the lease and contract that begins at VS 66:19 in

9   which Plaintiff Schwalm says that she was being herded through the signing

10  process like a cow (VS 71:7-20) and that she was promised various things

11  including that she would be given a choice between three loads each time

12  which never happened. (VS 73:1-23).  Further, Swift continued to control the

13  miles offered to her, as it did when she was a company driver.  VS 56:14-19,

14  58:9-14.  The contract, which was presented to drivers on a "take it or leave

15  it" basis (PSOF ¶¶ 73-77), read as a whole in light of the circumstances of

16  the whole activity establishes that she was an employee not an independent

17  contractor.

18

19      VS 101:23-102:4 does not support the statement above.  In the cited

20  testimony, Plaintiff Schwalm states that she believed she was leasing her

21  truck from Swift and was not aware of IEL.

22      DEFENDANTS' REPLY:

23          The fact that Plaintiff knew and understood that she was forming an

24  independent contractor/business relationship with Swift when she signed the

25  ICOA, and not an employer-employee relationship, is a key factor weighing

26  in favor of a determination that she was in an independent contractor

27  relationship with Swift.  Plaintiff's claim that she was "herded through the

28  signing process" is inflammatory and irrelevant.  There is no claim that

-77-

1     Plaintiff was forced to enter into the ICOA, or that she was under duress

2     when she entered into the ICOA.

3

4     76.     Schwalm understood that pursuant to the ICOA, she would have free will

5 with respect to her use of her truck and that she could take on any work of her choosing.

6 [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 72:3-11; Stancu Decl., ¶ 3, Ex. B,

7 Schwalm's ICOA, ¶ 1.]

8     <u>PLAINTIFF'S RESPONSE:</u>

9     DENIED.  What Plaintiff Schwalm thought she understood before starting as

10     a lease operator cannot override the economic realities of the parties' actual

11     relationship, and the cited testimony does not say anything about the reality

12     of the agreement after she signed it.  In reality, Plaintiff Schwalm did not

13     have free will with respect to her use of her truck and she could not take on

14     any work of her choosing.  *See e.g.*, VS 28:17-29:22 (never turned down a

15     load because she knew from speaking to planners that the consequences

16     would be that she would be put on the bottom of the list for loads).  As a

17     practical matter, lease operators were required to accept virtually all loads

18     assigned by the company.  *See* PSOF ¶¶ 133-142 (no knowledge of other

19     options, no choice offered, Swift's admission drivers can/will sit if refuse

20     loads, other de facto punishment(s).) The contract also explicitly grants

21     Defendants "exclusive possession, control, and use of the equipment during

22     the term of this [Contract]."  Swift:  21; Contract ¶ 5A; PSOF ¶ 65.  This

23     exclusive control was further implemented by Swift's ability to terminate the

24     driver without cause, repossess the truck and force the driver into debt and

25     collections.  PSOF ¶¶ 27, 38, 41, 42, 49, 51-57.  Defendants' authority to

26     place drivers in "default" of the contract at will gave Swift the authority to

27     demand compliance with its directions.  *Id.*  *And see* PSOF ¶¶ 133-142 (no

28     knowledge of other options, no choice offered, Swift's admission drivers

can/will sit if refuse loads, other *de facto* punishment(s)).  Further, Swift told Plaintiff Schwalm, and Plaintiff Schwalm understood, that she could not haul freight for any other carriers.  VS 87:19-89:8.  *See also* Plaintiff Schwalm's responses to ¶¶ 14, 15, 18, 21, 28, 30, 39, 48, 51 and 51 for the myriad ways Swift controlled Plaintiff Schwalm's use of her truck.

DEFENDANTS' REPLY:

Defendants incorporate their replies in support of Undisputed Material Fact Nos. 14, 15, 18, 21, 28, 30, 39, 48, and 51.

At deposition, Plaintiff explicitly testified that, when she became an Owner-Operator, "I was agreeing to purchasing a new truck, paying payments on it … I had **free will** with my truck … Free will, meaning I can take loads of my choice so the truck would make a – a – a profit."  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 72:3-11 (emphasis added).)  Plaintiff cannot dispute her own deposition testimony.  As such, Plaintiff's response is insufficient to create a genuine issue of disputed fact.

 Further, Plaintiff's claim that delays in being offered loads were "consequences" for declining loads is entirely speculative and erroneous.  Plaintiff's ICOA makes it explicitly clear that the ICOA "shall not . . . be construed as an agreement by [Swift] to furnish any specific tonnage of freight for transportation by [Plaintiff] at any particular time, or at any particular place."  (Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 1.)  There are various reasons why an individual might not be offered a new load right when he or she asks for one, including the fact that one simply is not available in his or her area.  (*See* Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pgs. 35:25-39:10.)  Mere speculation and conjecture are insufficient to create a genuine issue of disputed fact.

Additionally, Plaintiff was entitled to haul for other carriers and, therefore, was not in any way forced to accept loads from Swift.  (Supp.

1    Mussig Decl., ¶ 2, Ex. O, Berry Depo., pg. 216:1-25; Stancu Decl., ¶ 3,

2    Ex. B, Schwalm's ICOA, ¶ 5(b).)  David Berry unequivocally testified that,

3    when Owner-Operators haul for other carriers, Swift does not enforce any

4    contract provision requiring Owner-Operators to return their "base plates."

5    (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pgs. 218:5-219:9.)  This

6    testimony is uncontroverted.

7         There is absolutely no evidence that Swift ever took "possession,

8    control [or] use" of Plaintiff's truck.  Plaintiff's reference to any such

9    unexercised "right" is simply a red herring.

10        Furthermore, Swift's ability to terminate the ICOA without cause is

11   irrelevant.  Plaintiff had the same right (Stancu Decl., ¶ 3, Ex. B, Schwalm's

12   ICOA, ¶ 16(a)), and if she chose to exercise that right, she could have simply

13   driven for another carrier.  (*Id.* at Schwalm's ICOA ¶ 5(b); Supp. Mussig

14   Decl., ¶ 3, Ex. P, Spence Depo., pgs. 59:5-60:17.)

15        Lastly, Plaintiff's reliance on the terms of her lease with IEL is

16   misplaced.  The IEL lease has no bearing on whether Plaintiff was in an

17   independent contractor relationship with Swift while she was an Owner-

18   Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶

19   21.)  In any event, the evidence establishes that IEL never enforced any

20   purported contract language limiting the ability of Owner-Operators to drive

21   for carriers other than Swift, as it leased to individuals with no affiliation

22   with Swift whatsoever.  (Supp. Mussig Decl., ¶ 3, Ex. P, Spence Depo., pgs.

23   59:5-60:17.)  Plaintiff offers no evidence that any of these contract

24   provisions were ever enforced against her.

25

26   77.    As an Owner-Operator, Schwalm was paid per the completion of each trip –

27   not by the hour.  [Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA.]

28

PLAINTIFF'S RESPONSE:

DENIED.  Plaintiff Schwalm was paid by the mile, not per trip.  The ICOA (Doc. 747-3) at ¶ 2B states that the driver is paid by the mile and the lease indicates that the driver will be paid weekly.  Lease (Doc. 747-6) at ¶ 2(e) (carrier shall make weekly deductions from the settlements).  *See also* VS 66:12-15 (Plaintiff Schwalm was compensated by the mile as a lease operator).  A driver was required to turn in a trip packet to receive credit for the miles associated with the trip and also required to turn in other things such as logs to be entitled to his weekly mileage pay.  ICOA (Doc. 747-3) at ¶ 3.

DEFENDANTS' REPLY:

Plaintiff admits she was not paid by the hour.  She also does not deny that she was paid on a mileage basis, *upon the completion of the trip*.  As such, Plaintiff's response is insufficient to create a genuine issue of disputed fact.

78.    Schwalm was also paid via weekly settlements, while employees are paid through payroll checks.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 163:12-15; Mussig Decl., ¶ 3, Ex. K, Berry Depo., 180:4-11; 268:8-10.]

PLAINTIFF'S RESPONSE:

DENIED.  VS 163:12-15 has nothing to do with checks versus settlements and simply says that Swift did not deduct taxes from Plaintiff Schwalm's weekly settlements as a lease operator.  Mr. Berry's testimony states that both employee drivers and lease operators get weekly settlements, though those settlements are calculated differently in that employee drivers don't have operating expenses deducted from their settlements the way that lease operators do unless they forget to turn in receipts, and employee drivers have

-81-

1  deductions for health insurance, locks, and company store purchases.  *See*

2  Swift 30(b)(6) "Berry Depo." at 179:13-181:10.

3  DEFENDANTS' REPLY:

4        Plaintiff admits she was paid via weekly settlements.  Additionally,

5  Plaintiff admits that the weekly settlements she received as an Owner-

6  Operator did not contain tax deductions like the payroll checks she received

7  as an employee driver.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs.

8  163:12-15.)  Plaintiff also admits that she was issued a Form 1099 when was

9  an Owner-Operator.  (*Id.* at Schwalm Depo., pgs. 163:25-164:19.)  David

10  Berry unequivocally testified that employee drivers are paid through a

11  "payroll check."  (Mussig Decl., ¶ 3, Ex. K, Berry Depo., pg. 268:14-17.)

12  This testimony is uncontroverted.  Plaintiff's response is insufficient to

13  create a genuine issue of disputed fact.

14

15  79.    Swift did not deduct taxes from Schwalm's settlement payments.  [Stancu

16  Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 163:12-15.]

17  PLAINTIFF'S RESPONSE:

18  ADMITTED ONLY THAT Swift intended to treat Plaintiff Schwalm as an

19  independent contractor for tax withholding purposes.  Plaintiff does not

20  admit that that unilateral decision was lawful.

21  DEFENDANTS' REPLY:

22        Plaintiff admits Swift did not deduct taxes from Plaintiff's settlement

23  payments when she was an Owner-Operator and she was responsible for her

24  own taxes.  Therefore, while argumentative, Plaintiff's purported response

25  does not actually dispute this Undisputed Material Fact.

26        As explained in Defendants' moving papers, Plaintiff was properly

27  classified as an independent contractor.

28

80.     As an Owner-Operator, Schwalm received an Internal Revenue Service Form 1099, not a W-2.  [Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 163:25-164:19; Stancu Decl., ¶ 7, Ex. F, Schwalm's Business Partner Independent Contractor Checklist dated May 21, 2010, ¶ 6; Stancu Decl., ¶ 10, Ex. I, Schwalm's Internal Revenue Service Form 1099s for 2010 and 2011.]

PLAINTIFF'S RESPONSE:

ADMITTED ONLY THAT Swift intended to treat Plaintiff Schwalm as an independent contractor and unilaterally made the decision to provide Plaintiff Schwalm with the IRS FORM 1099.  Plaintiff does not admit that that unilateral decision was lawful.

DEFENDANTS' REPLY:

Plaintiff admits that she received an Internal Revenue Service Form 1099, not a W-2.  Therefore, while argumentative, Plaintiff's purported response does not actually dispute this Undisputed Material Fact.

As explained in Defendants' moving papers, Plaintiff was properly classified as an independent contractor.


81.     The ICOA between Schwalm and Swift states that Schwalm was entitled to haul for other carriers as long as she removed any Swift indicia from her truck.  [Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA, ¶ 5(b).]

PLAINTIFF'S RESPONSE:

DENIED.  While the contract makes this statement, the lease says exactly the opposite.  *See* PSOF ¶¶169-171 (ICOA says one thing, but Lease restricts use of truck to Swift only).  Further, Swift told Plaintiff Schwalm, and Plaintiff Schwalm understood, that she could not haul freight for any other carriers.  VS 87:19-89:8.

1  DEFENDANTS' REPLY:

2       Plaintiff admits that her ICOA with Swift states that she was entitled

3  to haul for other carriers as long as she removed any Swift indicia from her

4  truck.  As such, Plaintiff does not actually dispute this Undisputed Material

5  Fact.

6       Plaintiff's reliance on her lease with IEL is misplaced.  The lease has

7  no bearing on whether Plaintiff was in an independent contractor relationship

8  with Swift while she was an Owner-Operator, as IEL and Swift are distinct

9  and separate entities.  (Berry Decl., ¶ 21.)  In any event, the evidence

10 establishes that IEL never enforced any purported contract language limiting

11 the ability of Owner-Operators to drive for carriers other than Swift, as it

12 leased to individuals with no affiliation with Swift whatsoever.  (Supp.

13 Mussig Decl., ¶ 3, Ex. P, Spence Depo., pgs. 59:5-60:17.)  Plaintiff offers no

14 evidence that these contract provisions were ever enforced against her.

15

16            **PLAINTIFF'S ADDITIONAL STATEMENT OF FACTS**

17 1.    Both company drivers and lease operators have no need to communicate

18 with Swift managers until the driver near the point of delivery.  For example, if a load took

19 3-4 days to deliver, drivers would have no need to communicate with Swift until near the

20 point of delivery, unless they were running late.  Sheer Dec. ¶2; Wood Dec. ¶2; Van Dusen

21 Dec. ¶2.

22 DEFENDANTS' RESPONSE:

23       Partially Disputed.  While this is true for Owner-Operators, it is false

24 for employee drivers.  Employee drivers are required to communicate with

25 their managers at times other than when they are near the point of delivery.

26 For example, Plaintiff Sheer testified that, as an employee driver, he was

27 required to check in with Swift every morning via Qualcomm.  (Supp.

28 Mussig Decl., ¶ 4, Ex. Q, Sheer Depo., pgs. 43:22-45:20.)  Sheer testified

-84-

1   that he generally checked in with is manager one to two times a day even if

2   he was hauling a load that took multiple days to deliver.  (*Id.* at Sheer Depo.,

3   pgs. 46:14-47:13.)

4   <u>Lacks Personal Knowledge / Speculation (FRE 602).</u>  Van Dusen,

5   Sheer, and Wood lack personal knowledge to testify as to experiences of

6   other employee drivers and/or Owner-Operators, including Plaintiff's

7   experience.  (*See* Van Dusen Decl.; Sheer Decl.; Wood Decl.)

8   <u>Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).</u>  Swift's

9   policies applicable to employee drivers have no bearing on whether Swift

10   properly classified Owner-Operators, including Plaintiff, as independent

11   contractors.

12

13   2.      Company Drivers were permitted by Swift to state a preference about what

14   division (e.g. Over the Road, Dedicated, Flatbed, Dry Van, Intermodal, etc.) they would

15   work in, and which terminal they preferred to work from.  Swift afforded the same

16   opportunity to Lease Operators.  Sheer Dec. ¶3; Wood Dec. ¶3; Van Dusen Dec. ¶3.  Swift

17   did not always honor the driver's preference.  Wood Dec. ¶3.

18   <u>DEFENDANTS' RESPONSE:</u>

19   <u>Disputed.</u>  The evidence shows that Owner-Operators, like Plaintiff,

20   are able to choose what terminal they are based out of, as well as what

21   division they wanted to drive for (line-haul, dedicated, or intermodal),

22   whereas employee drivers are assigned a home terminal and division.

23   (Mussig Decl., ¶ 3, Ex. K, Berry Depo., pgs. 15:14-16:6; 19:11-20:14; *see*

24   *also* Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 77:17-79:14.)

25   <u>Lacks Personal Knowledge / Speculation (FRE 602).</u>  Van Dusen,

26   Sheer, and Wood lack personal knowledge to testify as to experiences of

27   other employee drivers and/or Owner-Operators, including Plaintiff's

28   experience.  (*See* Van Dusen Decl.; Sheer Decl.; Wood Decl.)

-85-

1    <u>Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403)</u>.  Swift's

2    policies applicable to employee drivers have no bearing on whether Swift

3    properly classified Owner-Operators, including Plaintiff, as independent

4    contractors.

5

6    3.    Both Company Drivers and Lease Operators were allowed by Swift to use

7    their truck to make personal trips to go food shopping or attend to other necessities while

8    on the road.  Sheer Dec. ¶4; Van Dusen Dec. ¶4; Wood Dec. ¶4.

9    <u>DEFENDANTS' RESPONSE:</u>

10    <u>Partially Disputed.</u>  While the fact is true for Owner-Operators, it is false for

11    employee drivers.  Swift policy does not permit employee drivers to use their truck

12    to make personal trips to go food shopping or attend to other necessities while on

13    the road.  (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pgs. 119:15-120:6.)

14    <u>Lacks Personal Knowledge / Speculation (FRE 602).</u>  Van Dusen, Sheer, and

15    Wood lack personal knowledge to testify as to experiences of other employee

16    drivers and/or Owner-Operators, including Plaintiff's experience.  (*See* Van Dusen

17    Decl.; Sheer Decl.; Wood Decl.)

18    <u>Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403)</u>.  Swift's policies

19    applicable to employee drivers have no bearing on whether Swift properly classified

20    Owner-Operators, including Plaintiff, as independent contractors.

21

22    4.    The hours Company Drivers and Lease Operators work—were determined

23    primarily by the requirements and deadlines established by Swift in its load assignments

24    (such as pick up and drop off times), shipment mileage, and factors determined by shippers

25    and receivers (wait times, whether the trailer was pre-loaded, load times).  Hours of

26    driving were also affected by the drive hours available to them through the FMCSA Hours-

27    of-Service Rules.  Sheer Dec. ¶5; Van Dusen Dec. ¶5; Wood Dec. ¶5.

28

-86-

DEFENDANTS' RESPONSE:

Partially Disputed.  Defendants admit that the hours that employee drivers and Owner-Operators drive are affected by federal regulations.  Defendants admit that the hours that employee drivers drive are primarily affected by Swift.  However, Defendants dispute that the hours that Owner-Operators drive are primarily affected by Swift.  Owner-Operators are free to accept and decline freight loads offered to them by Swift.  (Mussig Decl., ¶ 3, Ex. K, Berry Depo., pgs. 157:21-158:4.)  Indeed, Owner-Operators are entitled to haul for other carriers as long as they removed any Swift indicia from their truck.  (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pg. 216:1-25; Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA ¶ 5(b).)  Therefore, the hours Owner-Operators drive are primarily determined by their own preferences.

Lacks Personal Knowledge / Speculation (FRE 602).  Van Dusen, Sheer, and Wood lack personal knowledge to testify as to experiences of other employee drivers and/or Owner-Operators, including Plaintiff's experience.  (*See* Van Dusen Decl.; Sheer Decl.; Wood Decl.)

Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).  Swift's policies applicable to employee drivers have no bearing on whether Swift properly classified Owner-Operators, including Plaintiff, as independent contractors.


5.     As both a Company Driver and a Lease Operator, Plaintiffs were only permitted to haul freight at the direction of/on behalf of Swift Transportation.  Sheer Dec. ¶6; Van Dusen Dec. ¶6; Wood Dec. ¶6.

DEFENDANTS' RESPONSE:

Disputed.  Owner-Operators are also entitled to haul for other carriers as long as they removed any Swift indicia from their truck.  (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pg. 216:1-25; Stancu Decl., ¶ 3, Ex. B, Schwalm's ICOA ¶ 5(b).)  Owner-Operators are also free to accept and decline freight loads offered to

-87-

1  them by Swift.  (Mussig Decl., ¶ 3, Ex. K, Berry Depo., pgs. 157:21-158:4; Stancu

2  Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 28:22-29:3.)

3       Lacks Personal Knowledge / Speculation (FRE 602).  Van Dusen, Sheer, and

4  Wood lack personal knowledge to testify as to experiences of other employee

5  drivers and/or Owner-Operators, including Plaintiff's experience.  (*See* Van Dusen

6  Decl.; Sheer Decl.; Wood Decl.)

7       Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).  Swift's policies

8  applicable to employee drivers have no bearing on whether Swift properly classified

9  Owner-Operators, including Plaintiff, as independent contractors.

10

11  6.      Lease Operators are supervised by their Driver Managers.  Sheer Dec. ¶6;

12  Van Dusen Dec. ¶ 6; Wood Dec. ¶ 5.

13  DEFENDANTS' RESPONSE:

14       Disputed.  While Owner-Operators did have a "Driver Manager" (or mere

15  point of contact at their home terminals), their Driver Managers were not their

16  "supervisors."  As Plaintiff Wood testified, Owner-Operators had the authority to

17  fire their Driver Managers and in fact Wood did fire his Driver Manager because

18  they did not see eye to eye. (Supp. Stancu Decl., ¶ 4, Ex. N, Wood Depo., pg.

19  65:15-22.)  Plaintiff Schwalm testified that nobody met her at pick-up or drop-off

20  sites to check in or supervise her. (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs.

21  102:21-104:4; *see also* Supp. Stancu Decl., ¶ 4, Ex. N, Wood Depo., pgs. 180:25-

22  181:22; Supp. Stancu Decl., ¶ 3, Ex. M, Motolinia Depo., pgs. 95:1-5, 106:22-25,

23  149:8-14; Supp. Mussig Decl., ¶ 5, Ex. R, Van Dusen Depo., pgs. 94:17-21, 94:23-

24  95:3; Berry Decl., ¶ 6.)

25       Lacks Personal Knowledge / Speculation (FRE 602).  Van Dusen, Sheer, and

26  Wood lack personal knowledge to testify as to experiences of other employee

27  drivers and/or Owner-Operators, including Plaintiff's experience.  (*See* Van Dusen

28  Decl., ¶6; Sheer Decl. ¶6; Wood Decl. ¶5.)

1      7.     Lease Operators are also supervised by their Fleet Manager and the Rapid

2 Response Team.  Wood Dec. ¶5; Van Dusen Dec. ¶6.

3     <u>DEFENDANTS' RESPONSE:</u>

4       <u>Disputed.</u>  Owner-Operators were not supervised by Fleet Managers, the

5 Rapid Response Team or anyone else at Swift.  (Supp. Mussig Decl., ¶ 2, Ex. O,

6 Berry Depo., pgs. 76:25-82:13.)  Indeed, Plaintiff testified that nobody met her at

7 pick-up or drop-off sites to check in or supervise her.  (Stancu Decl., ¶ 2, Ex. A,

8 Schwalm Depo., pgs. 102:21-104:4; *see also* Supp. Stancu Decl., ¶ 4, Ex. N, Wood

9 Depo., pgs. 180:25-181:22; Supp. Stancu Decl., ¶ 3, Ex. M, Motolinia Depo., pgs.

10 95:1-5, 106:22-25, 149:8-14; Supp. Mussig Decl., ¶ 5, Ex. R, Van Dusen Depo.,

11 pgs. 94:17-21, 94:23-95:3; Berry Decl., ¶ 6.)  No purported supervisor conducted

12 performance evaluations for Schwalm when she was an Owner-Operator.  (Stancu

13 Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 48:3-49:10.)

14       <u>Lacks Personal Knowledge / Speculation (FRE 602).</u>  Plaintiff relies entirely

15 on declarations from Van Dusen and Wood to establish this purported "fact," but

16 Van Dusen and Wood lack personal knowledge to testify as to experiences of other

17 employee drivers and/or Owner-Operators, including Plaintiff's experience.  (*See*

18 Wood Decl., ¶5; Van Dusen Decl.; ¶6.)

19

20      8.     Plaintiffs never had a supervisor ride-along in their truck while they were

21 company drivers.  Sheer Dec. ¶7; Van Dusen Dec. ¶7; Wood Dec. ¶6.

22     <u>DEFENDANTS' RESPONSE:</u>

23       <u>Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).</u>  Swift's policies

24 applicable to employee drivers have no bearing on whether Swift properly classified

25 Owner-Operators, including Plaintiff, as independent contractors.

26       <u>Lacks Personal Knowledge / Speculation (FRE 602).</u>  Van Dusen, Sheer, and

27 Wood lack personal knowledge to testify as to experiences of other individuals,

28

                 DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL
STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO SCHWALM

1   including Plaintiff's experience.  (*See* Van Dusen Decl., ¶7; Sheer Decl., ¶7, Wood
2   Decl., ¶6)

3

4   9.      The weight of a given load, and whether it had to be driven over mountains
5   or level ground, had much more of an effect on driver fuel efficiency than anything they
6   could control by the way they drove.  Sheer Dec. ¶8; Van Dusen Dec. ¶8; Wood Dec. ¶7.
7   <u>DEFENDANTS' RESPONSE:</u>

8          <u>Disputed.</u>  The weight of a given load, whether it had to be driven over
9   mountains or level ground affect, and numerous other factors may affect fuel
10  efficiency, but no single factor controls.  It is undisputed that the route Plaintiff
11  chose to take impacted her fuel efficiency.

12         <u>Vague and Ambiguous.</u>  It is vague and ambiguous as to who "they" are.

13         <u>Lacks Personal Knowledge / Speculation (FRE 602).</u>  Van Dusen, Sheer, and
14  Wood lack personal knowledge to testify as to experiences of whoever "they" are.
15  (*See* Van Dusen Decl., ¶8; Sheer Decl.,¶8; Wood Decl., ¶7.)  Van Dusen, Sheer, and
16  Wood only have the personal knowledge to testify as to their own experiences.  (*See*
17  *Id.*)

18         <u>Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).</u>  What affects the
19  fuel efficiency of a load has no bearing on any of the issues before this Court.  This
20  is particularly true given that Plaintiff was able to accept or decline any load offered
21  by Swift and chose her own routes.

22

23  10.     Defendant sets forth rules, policies and practices f or Lease Operators in a
24  series of documents which it gives to drivers:  1) the Swift Driver Manual (by its terms
25  applicable to both employee drivers and Lease drivers), 2) the Contracted Driver Manual
26  (applicable just to Lease drivers), 3) the Handshake to Horsepower, and 4) the Swift CABS
27  Training handout.  *See* PSOF ¶¶ 98-101.  Swift provided each of the documents in
28  discovery to Plaintiffs.  These policies and instructions are described below.

1    DEFENDANTS' RESPONSE:

2        Disputed.  Several Plaintiffs, including Schwalm, admit that Swift did not

3    provide them with, nor require them to be familiar with, any policies or handbooks

4    as Owner-Operators, including the Pre-CABS Training manual, the "Handshake to

5    Horsepower", and the Contracted Driver Manual, and that they could not be

6    disciplined for failing to follow company policies and procedures while they were

7    Owner-Operators.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 45:12-16; *see*

8    *also* Supp. Mussig Decl., ¶ 5, Ex. R, Van Dusen Depo., pgs. 187:22-188:3; Supp.

9    Mussig Decl., ¶ 4, Ex. Q, Sheer Depo., pg. 121:17-21; Supp. Stancu Decl., ¶ 4, Ex.

10   N, Wood Depo., pg. 21:12-20; Supp. Stancu Decl., ¶ 3, Ex. M, Motolinia Depo.,

11   pgs. 36:11-37:3, 124:5-18, 128:1-4; Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo.,

12   pg. 258:16-24.)

13       Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).

14   Plaintiff fails to establish that Swift provided her with a Driver Manual, Contracted

15   Driver Manual, Handshake-to-Horsepower document, and/or Pre-CABS Training

16   document, such that she could be familiar with, let along bound by, its contents.

17   These purported "policies" lack foundation and proper authentication.

18

19       11.    Defendant Swift maintains a "Swift Driver Manual" which is set forth as

20   Exhibit 14 (14A and 14B) to Plaintiffs' Summary Judgment Motion.  Swift supplied

21   Plaintiffs (and all employee drivers) with the Swift Driver Manual when the driver first

22   starts working for Swift.  See PSOF ¶¶ 98-101.

23   DEFENDANTS' RESPONSE:

24       Disputed.  Several Plaintiffs, including Schwalm, admit that Swift did not

25   provide them with, nor require them to be familiar with, any policies or handbooks

26   as Owner-Operators, including the Swift Driver Manual, and that they could not be

27   disciplined for failing to follow company policies and procedures while they were

28   Owner-Operators.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 45:12-16; *see*

-91-

1 *also* Supp. Mussig Decl., ¶ 5, Ex. R, Van Dusen Depo., pgs. 187:22-188:3; Supp.

2 Mussig Decl., ¶ 4, Ex. Q, Sheer Depo., pg. 121:17-21; Supp. Stancu Decl., ¶ 4, Ex.

3 N, Wood Depo., pg. 21:12-20; Supp. Stancu Decl., ¶ 3, Ex. M, Motolinia Depo.,

4 pgs. 36:11-37:3, 124:5-18, 128:1-4; Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo.,

5 pg. 258:16-24.)

6     The ICOA rather than Plaintiffs' Exhibit 14 governs the relationship between

7 Owner-Operators and Swift. (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pgs.,

8 160:25-161:6.)  Indeed, Plaintiffs' Exhibit 14 at DEF004946 is the Employee

9 Acknowledgment of the Driver Manual.  It does not mention Owner-Operators at

10 all.

11     <u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>

12 Plaintiff fails to establish that Swift provided her with a Driver Manual, such that

13 she could be familiar with, let along bound by, its contents.  The Driver Manual

14 lacks foundation and proper authentication.

15

16     12.     The Swift Driver Manual, by its own terms refers both to company drivers

17 (employees) and to Lease Operators.  For example, the following provisions make clear

18 that Swift Driver Manual applies to Lease Drivers as well as employee drivers:

19     **OWNER-OPERATORS**

20 •     All previous procedures apply to Owner-Operators.

21 •     Owner-Operators, can if they choose, fuel at our bulk fueling facilities with

22       charges for the fuel appearing on their weekly settlements.

23 •     All amounts due on Owner-Operator maintenance performed are due upon

24       completion, unless other arrangements have been made with your Driver

25       Manager.

26 Ex. 14b, p. 3, Bates 5408.  And the Swift Driver Manual goes on to state:  "There is no

27 distinction with regard to whether you are a Company Driver, Contract Driver, or Owner-

28 Operator."  Ex. 14b, Sec. 6, p. 1, DEF 5064.

10.    PERSONAL USAGE OF COMMERCIAL VEHICLE

. . . When a driver, including Contract Drivers and Owner-Operators, is relieved from all responsibility for performing work, time spent traveling from the Driver's home to his/her terminal (normal work reporting location), or from the Driver's terminal to his/her home, may be considered off-duty time.

Ex. 14b, Sec. 6, p. 5, Def. 5064.  Further, Swift states that "All usage of a CMV [Commercial Motor Vehicle] for personal conveyance must be flagged and identified as such on the Drivers log, including Owner-Operators' and Contract Drivers' logs." Ex. 14b, Sec. 6, p. 6, Def. 5069.  And see Def. 5070 (charts of employee and lease driver discipline).

<u>DEFENDANTS' RESPONSE:</u>

<u>Disputed</u>.  Several Plaintiffs, including Schwalm, admit that Swift did not provide them with, nor require them to be familiar with, any policies or handbooks as Owner-Operators, including the Swift Driver Manual, and that they could not be disciplined for failing to follow company policies and procedures while they were Owner-Operators.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 45:12-16; *see also* Supp. Mussig Decl., ¶ 5, Ex. R, Van Dusen Depo., pgs. 187:22-188:3; Supp. Mussig Decl., ¶ 4, Ex. Q, Sheer Depo., pg. 121:17-21; Supp. Stancu Decl., ¶ 4, Ex. N, Wood Depo., pg. 21:12-20; Supp. Stancu Decl., ¶ 3, Ex. M, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pg. 258:16-24.)

The ICOA rather than Plaintiffs' Exhibit 14 governs the relationship between Owner-Operators and Swift. (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pgs. 160:25-161:6.)  Indeed, Plaintiffs' Exhibit 14 at DEF004946 is the Employee Acknowledgment of the Driver Manual.  It does not mention Owner-Operators at all.

1       Misstates the Evidence.  Plaintiff misstates the Swift Driver Manual.  For

2   example, Plaintiff misstates the statement on DEF005064 regarding a "lack of

3   distinction."  This statement merely states that all drivers, whether employee drivers

4   or Owner-Operators, are required by law to comply with the hours of service limits

5   *set by the federal government*.  It does not purport to say that employee drivers and

6   Owner-Operators are the same in any other way.  Additionally, DEF005408,

7   DEF0064, and DEF0069 do not contain any of the text that Plaintiff claims they do.

8       Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).

9   Plaintiff fails to establish that Swift provided her with a Driver Manual, such that

10  she could be familiar with, let along bound by, its contents.  The Driver Manual

11  lacks foundation and proper authentication.

12

13  13.     The rules and policies set forth in the Swift Driver Manual include:

14          a.      Speed for lease drivers (68 mph) and company drivers (65 mph).

15                  Ex. 14A, Sec. 2, p. 12.

16          b.      "Swift Transportation Co., Inc. retains full ownership of all equipment

17                  and the right to assign equipment for use by its Drivers as it sees fit."

18                  Ex. 14A, Sec. 2, p. 43.

19  DEFENDANTS' RESPONSE:

20          Disputed.  Several Plaintiffs, including Schwalm, admit that Swift did not

21  provide them with, nor require them to be familiar with, any policies or handbooks

22  as Owner-Operators, including the Swift Driver Manual, and that they could not be

23  disciplined for failing to follow company policies and procedures while they were

24  Owner-Operators.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 45:12-16; *see*

25  *also* Supp. Mussig Decl., ¶ 5, Ex. R, Van Dusen Depo., pgs. 187:22-188:3; Supp.

26  Mussig Decl., ¶ 4, Ex. Q, Sheer Depo., pg. 121:17-21; Supp. Stancu Decl., ¶ 4, Ex.

27  N, Wood Depo., pg. 21:12-20; Supp. Stancu Decl., ¶ 3, Ex. M, Motolinia Depo.,

28

1    pgs. 36:11-37:3, 124:5-18, 128:1-4; Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo.,

2    pg. 258:16-24.)

3         The ICOA rather than Plaintiffs' Exhibit 14 governs the relationship between

4    Owner-Operators and Swift. (Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pgs.

5    160:25-161:6.)  Indeed, Plaintiffs' Exhibit 14 at DEF004946 is the Employee

6    Acknowledgment of the Driver Manual.  It does not mention Owner-Operators at

7    all.

8         Misstated Evidence.  Plaintiff misstates the Swift Driver Manual.  For

9    example, Plaintiff's citation to the statement on page DEF004799 (page 43)

10   regarding Swift's ownership rights applies to employee drivers only.  By its own

11   terms, it does not apply to Owner-Operators.

12        Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).

13   Plaintiff fails to establish that Swift provided her with a Driver Manual, such that

14   she could be familiar with, let along bound by, its contents.  The Driver Manual

15   lacks foundation and proper authentication.

16

17   14.    The Contracted Driver Manual (by its terms applicable just to Lease drivers),

18   states a series of Swift policies, including, but not limited to:

19        a.    Setting a 68 mph speed limit Lease Operators may drive, Sec. 2, p. 1

20              (e.g. "The Company has no tolerance for flagrant overspeed").

21        b.    No alcohol within 12 hours of duty, Sec. 2, p. 2.  *Compare*.  49 C.F.R.

22              §392.5 (federal limit of 4 hours).

23        c.    Swift authorization for any passengers (and paperwork pertaining

24              thereto), Sec. 2, p. 3.

25        d.    Drug and alcohol testing program, Sec. 2, pp. 4-12.

26        e.    Equipment security locking policies, Sec. 2, pp. 12-13.

27        f.    Prohibiting dropping loaded trailers in locations other than terminals

28              and yards, Sec. 2, p. 13.

g.      Parking with loaded trailers, Sec. 2, p. 13.

h.      Padlocks, king-pin, and enforcer locks, Sec. 2, p. 14.

i.      Special procedures for "High value loads" mandating compliance
        with company directions and procedures (e.g. trailer must be kept in
        sight at all times, may not deviate from route, no stopping along road),
        Sec. 2, p. 14-15.

j.      Swift's accident and cargo claims procedures, Sec. 2, p. 16.

k.      Swift's facilities policies, Sec. 2, p. 18.

l.      Swift's Qualcomm, Internet, email policies (e.g. "no messages with
        derogatory or inflammatory remarks . . .".), Sec. 2, p. 19.

m.      Termination and disciplinary policies, Sec. 2, p. 20.

n.      Swift's pre-tri p and post-trip inspections more expansive than federal
        requirements, Sec. 3, p. 2.  Compare 49 C.F.R. Part 396.

o.      Chain requirements for winter driving, Sec. 3, p. 6.

DEFENDANTS' RESPONSE:

Disputed.  Several Plaintiffs, including Schwalm, admit that Swift did not
provide them with, nor require them to be familiar with, any policies or handbooks
as Owner-Operators, including the Contracted Driver Manual, and that they could
not be disciplined for failing to follow company policies and procedures while they
were Owner-Operators.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 45:12-16;
*see also* Supp. Mussig Decl., ¶ 5, Ex. R, Van Dusen Depo., pgs. 187:22-188:3;
Supp. Mussig Decl., ¶ 4, Ex. Q, Sheer Depo., pg. 121:17-21; Supp. Stancu Decl., ¶
4, Ex. N, Wood Depo., pg. 21:12-20; Supp. Stancu Decl., ¶ 3, Ex. M, Motolinia
Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Supp. Mussig Decl., ¶ 2, Ex. O, Berry
Depo., pg. 258:16-24.)

Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).
Plaintiff fails to establish that Swift provided her with a Contracted Driver Manual,

1   such that she could be familiar with, let along bound by, its contents.  The

2   Contracted Driver Manual lacks foundation and proper authentication.

3

4   15.   The Handshake to Horsepower, (Ex. 13, Bates DEF1455-DEF1475) provides

5   new Lease Operators with a variety of instructions:

    a.    equipment that must be onboard (Comdata card, original copy of

        contracts, permit book, temporary registration, Qualcomm), p. 3.

    b.    instructions on logging into Qualcomm, p. 4.

    c.    fueling instructions ("Do not fill up your tanks unless your trip miles

        require it" p. 6.

    d.    Speed limit of 68 mph., p. 12.

    e.    Penalties for overspeed occurrences (written notice to termination),

        p. 12.

    f.    Penalty for "coasting out of gear or tampering with the speed control

        equipment may result in termination" p. 12.

    g.    Instructions that "If you have any repairs completed on your truck

        outside of the Swift network, you are required to file a Monthly

        Maintenance Report ... p. 13.

    h.    Swift's "Required Decal Placement", p. 17.

DEFENDANTS' RESPONSE:

    Disputed.  Several Plaintiffs, including Schwalm, admit that Swift did not

provide them with, nor require them to be familiar with, any policies or handbooks

as Owner-Operators, including the Handshake to Horsepower document, and that

they could not be disciplined for failing to follow company policies and procedures

while they were Owner-Operators.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg.

45:12-16; *see also* Supp. Mussig Decl., ¶ 5, Ex. R, Van Dusen Depo., pgs. 187:22-

188:3; Supp. Mussig Decl., ¶ 4, Ex. Q, Sheer Depo., pg. 121:17-21; Supp. Stancu

Decl., ¶ 4, Ex. N, Wood Depo., pg. 21:12-20; Supp. Stancu Decl., ¶ 3, Ex. M,

Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pg. 258:16-24.)

Misstated Evidence.  Plaintiff misstates the Handshake to Horsepower document.  For example, Plaintiff lists equipment that allegedly must be onboard.  However, DEF001457 merely recommends that Owner-Operators have crucial items, such as the original copy of their contracts and temporary truck registration, before they leave the terminal for the first time as Owner-Operators – a reasonable recommendation.  DEF001458 simply notes that former employee drivers who are now Owner-Operators will follow different Qualcomm log-on procedures, which demonstrate one of many differences between employee drivers and Owner-Operators.  Also, Swift does not provide fueling instructions; rather, DEF001460 lists "a few tips that will help you put less money in your tanks and more money in your wallet" by increasing fuel efficiency.  Additionally, DEF001471 describes federal requirements for the placement of decals, not Swift policy as Plaintiff suggests.

Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).  Plaintiff fails to establish that Swift provided her with the Handshake to Horsepower document, such that she could be familiar with, let along bound by, its contents.  The Handshake to Horsepower document lacks foundation and proper authentication.


16.     The Swift Pre- CABS Training (Ex. 11 (Bates DEF002988-DEF3085)) is a four-part driver training program created by Swift. P. 6.

DEFENDANTS' RESPONSE:

Disputed.  Several Plaintiffs, including Schwalm, admit that Swift did not provide them with, nor require them to be familiar with, any policies or handbooks as Owner-Operators, including the Pre-CABS Training document, and that they could not be disciplined for failing to follow company policies and procedures

while they were Owner-Operators.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 45:12-16; *see also* Supp. Mussig Decl., ¶ 5, Ex. R, Van Dusen Depo., pgs. 187:22-188:3; Supp. Mussig Decl., ¶ 4, Ex. Q, Sheer Depo., pg. 121:17-21; Supp. Stancu Decl., ¶ 4, Ex. N, Wood Depo., pg. 21:12-20; Supp. Stancu Decl., ¶ 3, Ex. M, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pg. 258:16-24.)

Misstates Evidence.  ATBS, a completely separate and distinct company from Swift, conducted the Pre-CABS Training.  (Berry Decl., ¶ 4.)  It was provided as a convenience to Owner-Operators and was completely voluntary.  (*Id.*)  There were no consequences if Owner-Operators chose not to participate in the training. (*Id.*)

Vague and Ambiguous.  Plaintiff's page citations to the Pre-CAB Training document are vague and ambiguous and, as such, Plaintiffs fail to "refer to a specific admissible portion of the record" as required by LRCiv 56.1(a). Specifically, this document has multiple pages labeled as "Page 6," making it impossible to determine what evidence Plaintiffs purport to cite.

Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)). Plaintiff fails to establish that Swift provided her with the Pre-CABS Training document, such that she could be familiar with, let along bound by, its contents. The Pre-CABS Training document lacks foundation and proper authentication.

17.     The Pre-CABS training includes Swift policies such as:

    a.     Qualcomm Rental policies, p. 12.

    b.     Mandatory insurance, p. 13.

    c.     Insurance claim policies, p. 14.

    d.     Authorization required for pets and passengers, p. 15 ("All drivers who would like to have passengers ride with him/her must comply with the Rider or Pet Rider program"), p. 15.

e.     "Lease Term—You are responsible for the full length—all payments of the lease, regardless of whether you quit, turn in the truck early or leave Swift.  Walking away from the lease will be considered a default of the lease and you will be subject to collections, including any costs for repair of the truck that is needed."  P. 22.

f.     No modifications to truck ("Since your leased truck does not belong to you, you cannot make any modifications to the equipment without prior written consent from IEL.").  P. 22.

g.     Required trip paperwork, p. 26.

h.     $30 fee to use authorized, but non-Swift repair shop, p. 53.

DEFENDANTS' RESPONSE:

Disputed.  Several Plaintiffs, including Schwalm, admit that Swift did not provide them with, nor require them to be familiar with, any policies or handbooks as Owner-Operators, including the Pre-CABS Training document, and that they could not be disciplined for failing to follow company policies and procedures while they were Owner-Operators.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 45:12-16; *see also* Supp. Mussig Decl., ¶ 5, Ex. R, Van Dusen Depo., pgs. 187:22-188:3; Supp. Mussig Decl., ¶ 4, Ex. Q, Sheer Depo., pg. 121:17-21; Supp. Stancu Decl., ¶ 4, Ex. N, Wood Depo., pg. 21:12-20; Supp. Stancu Decl., ¶ 3, Ex. M, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo., pg. 258:16-24.)

Misstates Evidence.  Plaintiff misstates the Pre-CABS Training document. For example, DEF002999 merely states that Owner-Operators "*may* rent [their] QualComm communications equipment" through Swift.  (emphasis added). DEF003001 explains how to file an insurance claim if an Owner-Operator chooses to obtain insurance through Swift.  (*See* DEF003000 ("If you do purchase through Swift . . . ,"  "if you choose to purchase [insurance] available through Swift," etc.).)

-100-

1    <u>Vague and Ambiguous.</u> Plaintiff's page citations to the Pre-CAB Training

2    document are vague and ambiguous and, as such, Plaintiffs fail to "refer to a

3    specific admissible portion of the record" as required by LRCiv 56.1(a). For

4    example, this document has multiple pages labeled as "Page 12," making it

5    impossible to determine what evidence Plaintiffs purport to cite.

6    <u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>

7    Plaintiff fails to establish that Swift provided her with the Pre-CABS Training

8    document, such that she could be familiar with, let along bound by, its contents.

9    The Pre-CABS Training document lacks foundation and proper authentication.

10

11    18.    Swift provided each of these policy documents in discovery and indicated

12    the specific document demand topic to which each document was responsive.  Ex. 30

13    attached to Declaration of Lesley Tse in Support of Plaintiffs' Opposition to Defendants'

14    Motions for Summary Judgment, dated July 22, 2016 ("Tse Dec.").

15    <u>DEFENDANTS' RESPONSE:</u>

16    <u>Partially Disputed.</u>  Defendants admit that it produced the Driver Manual,

17    Contracted Driver Manual, Handshake to Horsepower documents, and Pre-CABS

18    Training documents.  However, Defendants dispute that these policies were

19    distributed and applied to Plaintiff.  Several Plaintiffs, including Schwalm, admit

20    that Swift did not provide them with, nor require them to be familiar with, any

21    policies or handbooks as Owner-Operators, including the Pre-CABS Training

22    manual, the "Handshake to Horsepower", and the Contracted Driver Manual, and

23    that they could not be disciplined for failing to follow company policies and

24    procedures while they were Owner-Operators.  (Schwalm Depo., pgs. 45:12-16; *see*

25    *also* Supp. Mussig Decl., ¶ 5, Ex. R, Van Dusen Depo., pgs. 187:22-188:3; Supp.

26    Mussig Decl., ¶ 4, Ex. Q, Sheer Depo., pg. 121:17-21; Supp. Stancu Decl., ¶ 4, Ex.

27    N, Wood Depo., pg. 21:12-20; Supp. Stancu Decl., ¶ 3, Ex. M, Motolinia Depo.,

28    pgs. 36:11-37:3, 124:5-18, 128:1-4; Supp. Mussig Decl., ¶ 2, Ex. O, Berry Depo.,

pg. 258:16-24.)  Furthermore, as explicitly stated in Plaintiffs' Exhibit 30, "[n]o incidental or implied admissions [were] intended by [the] log."  (Pl.'s Ex. 30, 1:12-13.)  Simply because a policy document was in the possession, control, or custody of the Defendants does not mean it was distributed and enforced, and certainly does not mean it was provided to this particular Plaintiff.

Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)). Plaintiff fails to establish that Swift provided her with a Driver Manual, Contracted Driver Manual, Handshake-to-Horsepower document, and/or Pre-CABS Training document, such that she could be familiar with, let along bound by, their contents. These documents lack foundation and proper authentication.

19.    Swift identified the Contracted Driver Manual, Handshake to Horsepower, and Pre-Cabs Training" as "Defendants' instructions to named-plaintiffs as to when, where, and how to work."  *Id.*

DEFENDANTS' RESPONSE:

Partially Disputed.  Defendants admit they produced the Contracted Driver Manual, Handshake to Horsepower documents, and Pre-CABS Training documents in discovery.  However, Defendants dispute that these documents were distributed and applied to Plaintiff.  Several Plaintiffs, including Schwalm, admit that Swift did not provide them with, nor require them to be familiar with, any policies or handbooks as Owner-Operators, including the Pre-CABS Training manual, the "Handshake to Horsepower", and the Contracted Driver Manual, and that they could not be disciplined for failing to follow company policies and procedures while they were Owner-Operators.  (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pg. 45:12-16; *see also* Supp. Mussig Decl., ¶ 5, Ex. R, Van Dusen Depo., pgs. 187:22-188:3; Supp. Mussig Decl., ¶ 4, Ex. Q, Sheer Depo., pg. 121:17-21; Supp. Stancu Decl., ¶ 4, Ex. N, Wood Depo., pg. 21:12-20; Supp. Stancu Decl., ¶ 3, Ex. M, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Supp. Mussig Decl., ¶ 2,

-102-

Ex. O, Berry Depo., pg. 258:16-24.)  Furthermore, as explicitly stated in Plaintiffs' Exhibit 30, "[n]o incidental or implied admissions [were] intended by [the] log." (Pl.'s Ex. 30, 1:12-13.)  Simply because a policy document was in the possession, control, or custody of the Defendants does not mean it was distributed and enforced, and certainly does not mean it was provided to this particular Plaintiff.

Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)). Plaintiff fails to establish that Swift provided her with a Driver Manual, Contracted Driver Manual, Handshake-to-Horsepower document, and/or Pre-CABS Training document, such that she could be familiar with, let along bound by, their contents. These documents lack foundation and proper authentication.

20.     Swift identified the Swift Driver Manual as "Handbooks or other statements of policies, regulations, or practices with respect to employee drivers." *Id.*

DEFENDANTS' RESPONSE:

Partially Disputed.  Defendants admit that it produced the Driver Manual, and that it contains policies applicable to employee drivers.  However, Defendants dispute that any of the policies in the Driver Manual applied to Plaintiff while she was an Owner-Operator.

Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)). Plaintiff fails to establish that Swift provided her with a Driver Manual, such that she could be familiar with, let along bound by, its contents.  This manual lacks foundation and proper authentication.

21.     Swift provides various types of mandatory insurance to lease operators through Mohave Transportation Insurance Company ("Mohave"), including Occupational Accident Insurance, Non-Trucking Liability (Bobtail) Insurance, and Physical Damage (Collision) Insurance.  See Ex. 11 to PSOF (Doc. 775-2) at pp. 13-15, Ex. 6 to PSOF Doc. 772-7) at pp. 21, 82; Ex. 10a to PSOF (Doc. 775) at p. 80; Ex. 10b to PSOF (Doc. 775-1)

at p. 62; Ex. 32.  Swift also provides various types of non-mandatory insurance to lease operators through Mohave, including GI ass Coverage and Loaner Truck Program.  *See id.*; *see also* Ex. 18 to PSOF (Doc. 775-10) at pp. 9-11.

DEFENDANTS' RESPONSE:

Disputed.  Plaintiff admits she was required to finance her own insurance. (Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 148:11-150:2, 150:12-154:2; *see also* Supp. Mussig Decl., ¶ 5, Ex. R, Van Dusen Depo., pgs. 53:14-25, 75:25-76:7; Supp. Mussig Decl., ¶ 4, Ex. Q, Sheer Depo., pgs. 155:25-156:21; Supp. Stancu Decl., ¶ 4, Ex. N, Wood Depo., pg. 144:2-15; Supp. Stancu Decl., ¶ 3, Ex. M, Motolinia Depo., pg. 139:8-23; Mussig Decl., ¶ 3, Ex. K, Berry Depo., pgs. 57:15-58:10.)  While Owner-Operators had the option to purchase insurance from a third party insurer through Swift, Swift did not pay for any Owner-Operator's insurance and did not insure any Owner-Operator and therefore did not "provide" any insurance.  (Berry Decl., ¶ 9; Stancu Decl., ¶ 2, Ex. A, Schwalm Depo., pgs. 148:11-150:2, 150:12-154:2; *see* Supp. Mussig Decl., ¶ 5, Ex. R, Van Dusen Depo., 53:14-25, 75:25-76:7; Supp. Mussig Decl., ¶ 4, Ex. Q, Sheer Depo., pgs. 155:25-156:21; Supp. Stancu Decl., ¶ 4, Ex. N, Wood Depo., pg. 144:2-15; Supp. Stancu Decl., ¶ 3, Ex. M, Motolinia Depo., pg. 139:8-23; Mussig Decl., ¶ 3, Ex. K, Berry Depo., pgs. 57:15-58:10.)

Misstates Evidence.  Plaintiff's Exhibit 6, 10a, and 10b only show that Van Dusen and Wood purchased insurance from a third party insurer through Swift, not that Swift provided insurance to Van Dusen or Wood, and certainly do not show that Swift provided insurance to Schwalm.

Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).  Plaintiff's Exhibits 11 and 18 lack foundation and proper authentication.  Plaintiff does not establish that Swift provided Exhibits 11 and 18 to Plaintiff, such that she could be familiar with, let alone bound by, their contents.

22.     Mohave is a wholly-owned captive insurance subsidiary of Swift.  *See* Ex. 31 at p. 3, Tse Dec. ¶ 5; Ex. 32, Tse Dec. ¶ 6.

DEFENDANTS' RESPONSE:

Disputed.  The cited evidence does not show that Mohave is owned by Defendant Swift Transportation Co. of Arizona, LLC.  Rather, it shows that Mohave and Swift Transportation Co. of Arizona, LLC have the same corporate parent, Swift Transportation Company.

Immaterial and irrelevant (LRCiv 56.1(a); FRE 402, 403)  Swift, IEL, and Mohave are distinct and separate corporate entities.  There is no evidence in this case that the entities were improperly comingled.

23.     Swift insures a "significant portion" of its risks through Mohave.  *See* Ex. 31 at p. 22.  Mohave provides reinsurance associated with a share of Swift's automobile liability risk.  *Id.* at p. 3.  In addition to insuring a proportionate share of Swift's corporate casualty risk, Mohave provides reinsurance coverage to third-party insurance companies associated with Swift's affiliated companies' lease operators.  *Id.*  While under dispatch and Swift's operating authority, Swift's lease operators are covered by its liability coverage and self-insurance retention limits.  *Id.*

DEFENDANTS' RESPONSE:

Disputed.  Page 3 of Plaintiff's Exhibit 13 does not contain this information.  Additionally, Page 26 states, "[E]ach [Owner-Operator] is responsible for physical damage to his or her own equipment, occupational accident coverage and liability exposure while the truck is used for non-company purposes. Additionally, fleet operators are responsible for any applicable workers' compensation requirements for their employees."  (Pl.'s Ex. 31, at p. 26.)

Immaterial and Irrelevant (LRCiv 56.1(a); FRE 402, 403).  Swift, IEL, and Mohave are distinct and separate corporate entities.  There is no evidence in this case that the entities were improperly comingled.

1

2      24.     Swift earns premium revenue from its captive insurance companies.  *Id.* at

3 p. 31.

4      DEFENDANTS' RESPONSE:

5          Disputed.  The cited evidence does not show that Mohave is owned by

6 Defendant Swift Transportation Co. of Arizona, LLC.  Rather, it shows that

7 Mohave and Swift Transportation Co. of Arizona, LLC have the same corporate

8 parent, Swift Transportation Company.  There is no evidence that Defendant Swift

9 Transportation Co. of Arizona, LLC earns revenue from Mohave.

10         Immaterial and irrelevant (LRCiv 56.1(a); FRE 402, 403)  Swift, IEL, and

11 Mohave are distinct and separate corporate entities.  There is no evidence in this

12 case that the entities were improperly comingled.

13

14     25.     Swift uses Aon Hewitt, its insurance broker, to manage Mohave.  *See* Ex. 32

15 ("Swift approached Aon, the firm's existing broker, to manage the captive."); Ex. 6 to

16 PSOF (Doc. 772-7 at p. 80) ("Aon Trucking Practice works as a Risk Management &

17 Insurance Brokerage Firm providing insurance programs for the trucking industry.  The

18 program within this flyer is available solely to independent contractors of Swift

19 Transportation.  Premiums are paid via weekly settlement deductions."); Ex. 10a to PSOF

20 (Doc. 775) at p. 78 (same); Ex. 18 to PSOF (Doc. 775-10) at pp. 17, 30, 39, 45, 54, 68, 77

21 ("AON Trucking Practice works as a Risk Management & Insurance Brokerage Firm

22 providing insurance programs for the trucking industry.  They offer truck insurance as well

23 as occupational accident coverage."); Ex. 10b (Doc. 775-1) at pp. 94-97; Ex. 13 to PSOF

24 (Doc. 775-4) at p. 20.

25     DEFENDANTS' RESPONSE:

26         Disputed.  Defendant Swift Transportation Co. of Arizona, LLC does not

27 manage Mohave, as it is not the corporate parent of Mohave.

28

1        <u>Immaterial and irrelevant (LRCiv 56.1(a); FRE 402, 403).</u>  Swift, IEL, and

2    Mohave are distinct and separate corporate entities.  There is no evidence in this

3    case that the entities were improperly comingled.

4

5        26.    Swift monitors and controls the speed that lease operators drive through its

6    use of speed governors affixed to lease operators' trucks.  See 30(b)(6) depo of IEL, Ex. 26

7    to PSOF (Doc. 776-7) at 121:20-122:8 (IEL monitors lease operators' job performance,

8    specifically speed, through truck governor); Ex. 18 to PSOF (Doc. 775-10) at pp. 15, 26,

9    37, 43, 52, 64, 75 (trucks leased through IEL governed at 68 mph, mentor trainers

10   governed at 65 mph); Ex. 7 to PSOF (Doc. 772-8) at p. 14 (trainers' trucks required to be

11   governed at 65 mph); Ex. 9 to PSOF (Doc. 772-10) at p. 35 (same); Ex. 10a to PSOF (Doc.

12   775) at p. 63 (same).

13       <u>DEFENDANTS' RESPONSE:</u>

14       <u>Disputed.</u>  No one from Swift monitors or controls Owner-Operators'

15   location or tracks their progress towards their destination.  (Berry Decl. ¶ 7.)

16       Additionally, Plaintiff's reliance on the lease is misplaced.  The lease has no

17   bearing on whether Plaintiff was in an independent contractor relationship with

18   Swift while she was an Owner-Operator, as IEL and Swift are distinct and separate

19   entities.  (Berry Decl., ¶ 21.)

20       <u>Misstates Testimony.</u>  Murray Spence's testimony immediately following the

21   testimony cited by Plaintiff establishes that IEL does not monitor the speed  of

22   Swift drivers.  (Supp. Mussig Decl., ¶ 3, Ex. P, Spence Depo., pg. 122:13-15 ("Q:

23   And do you monitor any of this information with respect to Swift drivers, Swift

24   Company drivers?  A: No.").)

25

26

27

28

DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL
                                                   STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO SCHWALM

1    <u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>

2    Plaintiff's Exhibit 18 lacks foundation and proper authentication.  Plaintiff does not

3    establish that Swift provided her with Exhibit 18, such that she could be familiar

4    with, let alone bound by, its contents.

5

6    Dated:  September 30, 2016            SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

7                                          By _____ /s/ Robert Mussig _____

8                                               RONALD HOLLAND
                                                 ELLEN M. BRONCHETTI
9                                               PAUL S. COWIE
                                                 ROBERT MUSSIG
10
                                                 Attorneys for Defendants
11                                          SWIFT TRANSPORTATION CO. OF ARIZONA,
                                            LLC, INTERSTATE EQUIPMENT LEASING, LLC,
12                                          CHAD KILLEBREW and JERRY MOYES

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-108-

1

**CERTIFICATE OF SERVICE**

2   I hereby certify that on September 30, 2016, I electronically transmitted the attached

3   document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4   Notice of Electronic filing to the following CM/ECF registrants:

5

6   Susan Joan Martin
Jennifer Lynn Kroll
Martin & Bonnett PLLC

7   1850 N. Central Ave.; Ste. 2010
Phoenix, AZ  85004

8   Dan Getman

9   Edward John Tuddenham
Lesley Tse

10   Getman & Sweeney, PLLC
9 Paradies La.

11   New Paltz, NY  12561

12   Attorneys for Defendants

13   */s/ Robert Mussig* _____

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:479341744.1   DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL
STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO SCHWALM