SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
RONALD J. HOLLAND, Cal. Bar No. 148687 *(Pro Hac Vice)*
rholland@sheppardmullin.com
ELLEN M. BRONCHETTI, Cal. Bar No. 226975 *(Pro Hac Vice)*
ebronchetti@sheppardmullin.com
PAUL S. COWIE, Cal. Bar No. 250131 *(Pro Hac Vice)*
pcowie@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415-434-9100
Facsimile:    415-434-3947

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ROBERT MUSSIG, Cal. Bar No. 240369 *(Pro Hac Vice)*
rmussig@sheppardmullin.com
ANNA M. STANCU, Cal. Bar No. 288283 *(Pro Hac Vice)*
astancu@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071
Telephone:    213-620-1780
Facsimile:    213-620-1398

Attorneys for Defendants
SWIFT TRANSPORTATION CO. OF
ARIZONA, LLC, INTERSTATE EQUIPMENT
LEASING, LLC, CHAD KILLEBREW and
JERRY MOYES

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VIRGINIA VAN DUSEN; JOHN DOE 1; and JOSEPH SHEER, individually and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>SWIFT TRANSPORTATION CO., INC.; INTERSTATE EQUIPMENT LEASING, INC.; CHAD KILLIBREW; and JERRY MOYES,<br><br>Defendants. | Case No. CV 10-899-PHX-JWS<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF JOSE MOTOLINIA'S STATUS AS AN INDEPENDENT CONTRACTOR**<br><br>[Filed concurrently with Reply to Plaintiff's Controverting and Additional Statements of Fact, Supplemental Declaration of Robert Mussig and Supplemental Declaration of Anna M. Stancu] |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................ 1

II.    LEGAL ARGUMENT ................................................................................................ 3

    A.    Motolinia Cannot Dispute That He Exercised Control Over The Manner and Means By Which He Performed His Work ................................ 3

    B.    Motolinia Cannot Dispute That He Was Responsible For Investing In All Equipment, Material, Labor, And Tools He Needed To Run His Business ...................................................................................................... 8

    C.    Motolinia Admits He Opportunity He Had For Profit Or Loss Based On His Managerial Skill ............................................................................... 9

    D.    Motolinia's Cited Cases Are Inapposite ....................................................... 10

III.    CONCLUSION ......................................................................................................... 11

-i-

SMRH:479192071.1     DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO PLAINTIFF JOSE MOTOLINIA'S STATUS AS AN INDEPENDENT CONTRACTOR

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aviles v. Quik Pick Express, LLC*
    2015 U.S. Dist. LEXIS 174960 (C.D. Cal. Dec. 3, 2015) ........................................... 6, 8

*Carney v. JNJ Express, Inc.*
    10 F. Supp. 3d 848, 853-854 (W.D. Tenn. 2014) ......................................................... 6, 8

*Chao v. Mid-Atlantic Installation Servs.*
    16 Fed. Appx. 104 (4th Cir. 2001) ..................................................................................... 9

*Davis v. Larson Moving & Storage Co.*
    2008 U.S. Dist. LEXIS 87251 (D. Minn. Oct. 27, 2008) ............................................. 7, 8

*Dole v. Amerilink Corp.*
    729 F. Supp. 73 (E.D. Mi. 1990) ........................................................................................ 9

*GreenFleet Systems v. Int'l Bro. of Teamsters*
    2015 WL 1619964 (NLRB Div. of Judges Apr. 9, 2015) ............................................... 11

*Max Trucking LLC v. Liberty Mut. Ins. Corp.*
    802 F. 3d 793 (6th Cir. 2014) ............................................................................................. 11

*Time Auto Transport v. NLRB*
    377 F.3d 496 (6th Cir. 2004) .............................................................................................. 10

*Van Dusen v. Swif*t
    544 Fed. App'x 724 (9th Cir. 2013) (*Van Dusen II*) ......................................................... 1

*Van Dusen v. Swift*
    No. 15-70592, 2016 U.S. App. LEXIS 13575 (9th Cir. 2016) (*Van Dusen III*) ........................................................................................................................ 1, 8

*Wolcott v. Nationwide Mut. Ins. Co.*
    884 F.2d 245 (6th Cir. 1989) .............................................................................................. 10

Statutes

Federal Arbitration Act, 9 U.S.C. § 1 ................................................................................... 1

## I.  INTRODUCTION

Plaintiffs' opposition fails to raise any triable issue of material fact indicating that Defendants misclassified Plaintiff Jose Motolinia as an independent contractor.[1]  The opposition was filed on behalf of all five Plaintiffs, and consists entirely of sweeping generalizations about *all* Owner-Operators and *all* Plaintiffs.  However, Plaintiffs fail to cite evidence supporting these broad, sweeping conclusions.  With respect to virtually every purported "fact" they assert, the opposition cites the deposition testimony of Plaintiffs ***other than Motolinia***.  None of the other Plaintiffs testified about Motolinia's experiences.  Plaintiffs cherry-pick the testimony they like best for each fact and simply ignore contravening testimony by Motolinia.  The net effect is that Plaintiffs utterly fail to set forth a full and coherent opposition on behalf of Motolinia.

Motolinia fails to dispute that, during the time he was an Owner-Operator:

- Swift did not train him on, provide him with, or hold him to any company policies, and the only requirements he had to comply with were federal regulations (in this regard, he was no different from Swift or any other motor carrier);

---

[1] Defendants maintain the Court should not entertain Plaintiffs' or Defendants' pending summary judgment motions.  Consistent with the views expressed by two of the three judges on the Ninth Circuit panel in *Van Dusen v. Swift*, No. 15-70592, 2016 U.S. App. LEXIS 13575 (9th Cir. 2016) (*Van Dusen III*), the Court should vacate the pending summary judgment motions and determine whether Plaintiffs' ICOAs are exempt from arbitration based solely on the four corners of the agreements themselves.  In *Van Dusen v. Swift*, 544 Fed. App'x 724 (9th Cir. 2013) (*Van Dusen II*), the Ninth Circuit held that the Court "must determine whether the [ICOAs] are exempt [from arbitration] under § 1 of the FAA before it may consider Swift's motion to compel."  The Court interpreted this to mean it should examine the entire relationship between the parties and determine whether Plaintiffs were properly classified as independent contractors or whether they were actually employees, which is the ultimate question in the case.  In *Van Dusen III*, Judge Andrew D. Hurwitz and Judge Sandra S. Ikuta (who was on the panel in *Van Dusen II*) agreed that this approach is incorrect and that the Court should determine whether the section 1 exemption applies based solely on the language in the ICOAs.  Based on *Van Dusen III*, Defendants have filed a filed a motion for reconsideration of the Court's prior orders requiring discovery and trial on this issue.  (Doc. 820.)

- Nobody reviewed, evaluated, or questioned Motolinia's performance or the manner in which he carried out his work;
- Whether or not he actually did so, he had the ability and the autonomy to develop a fleet of trucks, hire as many employees and laborers as he wanted, and direct those employees and laborers to drive for him and deliver loads;
- He was free to drive for other carriers and use his truck for any reason he saw fit, as long as he removed any placards displaying Swift's name from his truck;
- He was free to accept or decline any loads offered by Swift and, in fact, could choose not to accept any loads at all if that was his decision;
- He was free to purchase or rent the products and/or equipment he needed to perform his work – including his truck – from any company he desired;
- He had full decision-making authority with respect to delivery of loads, including the ability to choose the route taken, where to purchase fuel, and where to obtain any necessary repairs;
- He controlled his own hours, and he could return home and take time off as he pleased;
- He was responsible for obtaining and paying for all of the tools and equipment he needed as an Owner-Operator, and he made a substantial investment of thousands of dollars in his truck and equipment necessary to run his business.

These admissions conclusively demonstrate that no employment relationship existed between Motolinia and Swift – let alone between Motolinia and IEL (which merely leased him a truck and never had any contact with him outside that transaction).

Rather than disputing the facts presented by Defendants in their moving papers, Motolinia relies almost entirely on speculation, the cherry-picked testimony of **other** plaintiffs regarding their **own** alleged experience and **not his**, mischaracterizations of the record, conflation of procedures which applied to employees with those for Owner-Operators, and citations to inapposite cases, in order to create the appearance of a disputed material fact. These efforts fail. Motolinia has not presented any competent evidence that Defendants controlled the manner and means in which he performed his work, has not

1 disputed that he made substantial investments in the tools and equipment required to
2 conduct his business as an Owner-Operator, has not disputed that his success or failure as
3 an Owner-Operator depended on his entrepreneurialism and managerial skill, and has not
4 disputed that he was paid as an independent contractor.  Accordingly, Defendants have
5 carried their burden to establish that no employment relationship existed between
6 Defendants and Motolinia during the time he was an Owner Operator.  Defendants are
7 therefore entitled to summary judgment.

## II.    LEGAL ARGUMENT

### A.    Motolinia Cannot Dispute That He Exercised Control Over The Manner and Means By Which He Performed His Work

11     As set forth in Defendants' moving papers, Motolinia had full control over the
12 manner and means of performing his work.  Motolinia determined his own routes and
13 stops, set his own schedule, and was free to work in partnership with other companies, hire
14 employees and laborers and assign someone to drive in his place, and work to achieve
15 success by developing his own fleet of trucks.  (UMFs 5, 9, 16-17, 20, 24-25, 33, 40, 44.)
16 Swift could not and did not discipline, review, or question Motolinia's performance as an
17 Owner-Operator.  (UMFs 13-15; Berry Depo. at 268:5-7.)   Motolinia had full autonomy to
18 determine his own working conditions.

19     Motolinia does not present any competent evidence to create a triable issue in
20 response to these facts, but instead relies on rank conjecture, misstatements of the record,
21 and *other* Plaintiffs' self-serving testimony about their personal beliefs and experience
22 which have no application to him.  Motolinia's attempts to obfuscate and mislead the
23 Court should be rejected.

24     First, Plaintiffs claim in the opposition that Swift controlled Motolinia because it
25 had "extensive policies" that he had to follow.  (Oppo., 3:5-4:3.)  This claim is
26 contradicted by Motolinia's own deposition testimony.  Motolinia testified under oath he
27 did not receive any policies as an Owner-Operator, was not trained on any policies as an
28 Owner-Operator, and **understood that Swift's policies did not apply to him as an**

-3-

1 **Owner-Operator**.  (*See* UMFs 15, 16.)  Rather, the policies discussed in the opposition
2 brief are those contained in the **employee** handbook, which by its own terms expressly
3 applied only to employee drivers.  The opposition cites 2 pages in the 208-page employee
4 handbook which mention Owner-Operators.  Critically, those 2 pages state that both
5 employee drivers and Owner-Operators must comply with Department of Transportation
6 ("DOT") regulations regarding hours of service, and describe the manner in which a truck
7 is to be operated in compliance with DOT safety regulations.  (*See* Motolinia's Additional
8 Statement of Facts [Doc. 802], Facts 11-13 (citing Plaintiffs' "Ex. 14b, p.3, Bates 5408"
9 and "Ex. 14b, Sec. 6, p.1, DEF5064" [Doc. 775-6]))  These cited pages do not purport to
10 bind Owner-Operators to any Swift company policies.  The opposition also references two
11 documents (the "Pre-CABS Manual" and "Contracted Driver Manual") **which Motolinia**
12 **admits he never received, was never trained on, did not even know existed, and which**
13 **did not apply to him** (*see* UMFs 10-13) and speculates that Swift *could have* applied
14 these policies to him (Oppo., 4:4-11, fns. 5, 6).  This type of speculation is not evidence,
15 and cannot create a triable issue as a matter of law.  The opposition also notes that one
16 Plaintiff claims she received training as an Owner-Operator, and speculates that Swift
17 *could have* trained Motolinia *if it wanted*.  (Oppo., 4:4-11 (citing Plaintiffs' Statement of
18 Facts [Doc. 772], Facts 202-203.)  This person's claim that *she* underwent training as an
19 Owner-Operator is irrelevant to the determination of Motolinia's relationship with Swift.
20 **Motolinia admits he never underwent such training**; rather, he merely watched a brief
21 safety video which contained no information on Swift policies.  (UMFs 10, 11.)  Motolinia
22 does not dispute that he did not receive any training as an Owner-Operator, and did not
23 receive any policies as an Owner-Operator.  (*Id*.)
24       Second, Motolinia does not dispute that he did not have any supervisors, never
25 received any type of performance review or evaluation as an Owner-Operator, and was not
26 subject to any discipline as an Owner-Operator.  Instead, he attempts to dismisses these
27 key facts by claiming that "the weekly financial obligations the lease imposed on Plaintiffs
28 rendered formal evaluations unnecessary."  (*Compare* UMFs 13-15 *with* Oppo., 4:21-24.)

-4-

The fact that Motolinia may have had personal financial obligations does not create an employment relationship.  By this logic, a wealthy Owner-Operator contracting with Swift under the same facts and circumstances would be an independent contractor, while Motolinia would be deemed an employee simply because he had bills to pay.  There is no legal support for this position.

Third, the opposition claims that, because Motolinia was required to stay within the legal speed limit and otherwise follow traffic regulations and DOT safety regulations, Swift exerted control over him.  (Oppo., 5:2-5, 6:5-12.)  This argument is simply absurd, as *all* drivers on the road are subject to applicable traffic laws and safety regulations.  These are not requirements set by Swift but by the government, and therefore do not evince any "control" by Swift.  Motolinia also argues that the existence of an Omni-tracs/Sensor-tracs device in his truck, which listed his speed, location, estimated time of arrival, and other statistics, is evidence of Swift's control.  (Oppo., 5:10-20.)  However, Motolinia does not dispute that Swift did not monitor these statistics, and he does not claim that they had any ramifications for him.  (*See* Berry Depo., 97:11-98:11; Berry Decl., ¶ 7.)  Similarly, Motolinia unavailingly relies on other Plaintiffs' testimony regarding their contact with driver managers, in an attempt to dispute his own admission that he did not have any supervisors.  (*Compare* UMF 14 (Motolinia's admissions) with Oppo., 5:13-16 (citing Sheer and Van Dusen's testimony – but not Motolinia's – regarding their own experiences).)  This misguided attempt to avoid his own deposition testimony fails.

Fourth, the opposition attempts to dispute Motolinia's sworn testimony that he was free to drive any route he wanted when delivering his cargo, and could stop wherever he chose for fuel, repairs, or other purposes.  (UMF 18-23.)  The opposition claims that because Swift provided a recommended route and recommended stops to Plaintiffs, Swift somehow *mandated* routes and stops, and thus exerted control over them.  (Oppo., 7:1-8:17.)  Yet Motolinia admitted that he made his own decisions regarding what routes and loads to take to maximize his revenue, and was limited only by Department of Transportation regulations; that no one from Swift ever contacted Motolinia to criticize or

question the route he took; that he could select which terminals, fueling stops, repair shops, and maintenance shops he used; and that he did not suffer any negative consequence for using routes, fueling stops, or maintenance/repair locations that Swift did not recommend. (UMF 20-23.) Thus, there was plainly no *requirement* that Motolinia or any other Plaintiff follow the recommended routes. Motolinia also does not dispute that he did not have to inform Swift that he was taking a different route than the optional route suggested. (Berry Depo. at 96:10-14.)

Fifth, the opposition attempts to downplay key indicators of Motolinia's autonomy as an Owner-Operator, such as the ability to

(1) use his truck to drive for other carriers or for whatever reasons he chose without the need for Swift's approval (UMF 9, 34);

(2) set his own working hours (UMF 16); and

(3) drive dedicated routes for a particular customer if he desired, yet another way for him to determining his own schedule, routes, cargo, customers, and the regularity with which she was available to take on other work (Berry Depo. 15:14-16:6; 19:11-20:14).

(Oppo., 8:18-9:12.)

The opposition claims, without any support, that these are insignificant to the determination of whether Swift exerted control over the manner and means in which Motolinia performed his work. This is plainly not so, as courts commonly look to these precise factors to determine whether an independent contractor relationship existed. *See*, *e.g.*, *Aviles v. Quik Pick Express, LLC*, 2015 U.S. Dist. LEXIS 174960, *11-13 (C.D. Cal. Dec. 3, 2015) (finding a putative class of truck drivers to be independent contractors because, for example, (1) drivers set their own schedule; (2) the company did not instruct the drivers on what routes to take or when and where to stop for fuel; (3) drivers could balance their loads as they saw fit in order to increase efficiency; (4) drivers could work for other companies); *Carney v. JNJ Express, Inc.*, 10 F. Supp. 3d 848, 853-854 (W.D. Tenn. 2014) (drivers were considered independent contractors because they were

1  "responsible for determining the means of their performance under the Leases, including
2  equipment, routes, and scheduling."); *Davis v. Larson Moving & Storage Co.*, 2008 U.S.
3  Dist. LEXIS 87251, 17-18 (D. Minn. Oct. 27, 2008) (truck driver was properly classified
4  as an independent contractor because, for instance, plaintiff assumed control over selection
5  of routes and fuel stops, decisions about maintenance of his truck, arrangements for
6  loading and unloading his truck, and scheduling work hours and rest periods, subject to
7  legal requirements and the needs of Defendant's customers).
8        Sixth, while Motolinia admitted at deposition that he could drive as part of a team if
9  he chose, could assign someone of his choosing to drive in his place, and could hire
10 employees and laborers to work for him (UMFs 32, 33, 40), the opposition now claims this
11 is not so because Motolinia's truck lease with IEL purportedly said that he could only
12 assign a driver to drive his leased truck if he was "ill, disabled, or otherwise unable to
13 drive the Equipment."  (Oppo., 9:13-25.)  This argument is unavailing.  For one thing, it
14 contradicts Motolinia's sworn deposition testimony.  Motolinia cannot avoid his own
15 deposition admissions.  Moreover, Plaintiffs concede at another point in their brief that
16 under the terms of the lease, lessees had the ability to hire drivers to work for them at any
17 time, not just if they were "ill" or "disabled" – indeed the contract states that someone
18 could drive in their place <u>anytime</u> the lessee was "otherwise unable to drive the
19 Equipment," for instance if he was driving another truck or otherwise not present.  (Oppo.,
20 9:20-22.)  The only limit on this right was that such individuals had to meet DOT
21 regulations and other state and federal legal requirements (which apply equally to Swift
22 and every other trucking company in the United States).  (*See* UMF 46; Defendants'
23 Response to Plaintiffs' Purportedly Undisputed Material Facts, Fact No. 176 [Doc. 797]).
24 **<u>Plaintiffs do not dispute that, in practice, neither Swift nor IEL exerted oversight</u>**
25 **<u>over the employees that Owner-Operators chose to hire, and rarely, if ever, took any</u>**
26 **<u>action regarding any Owner-Operator's decision to hire any particular employee</u>**.
27 (Berry Decl. ¶ 10; Spence Depo., 62:22-63:19 (IEL does not approve or reject substitute
28 drivers).)  Finally, a term in Motolinia's contract with *IEL* is not evidence of an

employment relationship between Motolinia and *Swift*.  Motolinia does not claim that he performed work for IEL, nor that Swift exercised veto power over who drove his truck.  Any control exerted by IEL as a company leasing high value equipment to Motolinia is analogous to the control a bank exerts over an individual leasing a car and, in any event, is irrelevant to the determination of the type of relationship Motolinia had with Swift.

Seventh, the opposition claims that Swift exerted control over Motolinia simply by virtue of the fact that it offered him loads (which he could freely decline (UMF 25)) and had a particular customer base for which it could offer loads.  (Oppo., 11:18-23.)  As a matter of law, this is insufficient to establish that Swift exerted sufficient control over Motolinia to make him an employee.  If it were, a trucking company could never contract with independent contractor drivers, which clearly is not the case.  *See, e.g.*, *Aviles*, 2015 U.S. Dist. LEXIS 174960, *11-13; *Carney*, 10 F. Supp. 3d at 853-54; *Davis*, 2008 U.S. Dist. LEXIS at 17-18; *Young*, Case No. 08-46182 RR (filed with Defendant's Request for Judicial Notice [Doc. 756]).  What is important is the undisputed fact that, regardless of what loads Swift had available and offered to him, Motolinia could select what loads he wanted to pick up, could decline loads and independently determine when to work, where, and how long to work.  (UMFs 14-34.)  Motolinia admitted that he knew he had the ability and authority to decline loads that were offered to him as an Owner-Operator, and that **he did in fact turn down loads that were inconvenient for him**.  (UMF 25, 26.)  No one at Swift could force Motolinia to take a load, and Motolinia would not be disciplined if he turned down a load.  (*Id.*; Berry Depo. at 81:25-82:13; 268:5-7.)  Thus, it was Motolinia – not Swift – who exercised control over what loads he delivered.

### B. Motolinia Cannot Dispute That He Was Responsible For Investing In All Equipment, Material, Labor, And Tools He Needed To Run His Business

Motolinia invested thousands of dollars into the lease of his truck as an Owner-Operator; paid for the repair, maintenance, and upkeep of his truck; and paid for his own insurance, fuel, tolls, and all other costs involved in performing his work as an Owner-Operator.  (UMFs 35, 37-39.)  Motolinia does not dispute any of this.  Instead, the

1  opposition focuses on the relatively low start-up cost to become an Owner-Operator as a
2  red herring to distract the Court from the substantial investment Motolinia ultimately made
3  in his trucking business.  (Oppo., 16:7-12.)  The fact that Owner-Operators are generally
4  only required to make a $500 down payment to lease a truck from IEL is irrelevant,
5  because Motolinia did not merely pay $500, but in fact paid *thousands of dollars* for his
6  equipment while he was an Owner-Operator.  (UMF 35.)  The key fact is not the amount
7  of money an Owner-Operator put down, but that **neither IEL nor Swift paid for**
8  **anything Motolinia needed to perform his work as an Owner-Operator**.  (UMFs 35,
9  37-39.)  By contrast, when Motolinia worked as an employee driver, Swift provided him
10 with all the equipment and tools he needed to perform his work, including his truck, gas,
11 maintenance, repair, tolls, insurance, and any other instrumentalities that he may need.
12 (Motolinia Depo. at 23:8-10, 24:3-14, 72:19-22, 118:18-22.)  Furthermore, Motolinia was
13 responsible for paying any drivers, driver helpers, and laborers he hired.  (UMFs 41.)
14 Under these facts, Motolinia's status as an independent contractor cannot be disputed.  *See*
15 *Chao v. Mid-Atlantic Installation Servs.*, 16 Fed. Appx. 104, 107 (4th Cir. 2001)
16 (explaining that expenditures on instrumentalities to perform work are usually expected of
17 independent contractors but not of employees, who are given the tools to perform their job
18 by their employer); *see also Dole v. Amerilink Corp.*, 729 F. Supp. 73, 76 (E.D. Mi. 1990)
19 (same).

20 **C.     Motolinia Admits He Opportunity He Had For Profit Or Loss Based On His**
21          **Managerial Skill**

22          As set forth in Defendants' moving papers, Motolinia testified at length that there
23 was no limit on the amount of money that he could make as an Owner-Operator, that there
24 were "many" Owner-Operators who were successful, and that he was able to develop his
25 own business model and had full opportunity to make business decisions that would allow
26 him to be more profitable.  (UMFs 5, 16-17, 20, 24-25, 42, 44; Motolinia Depo. 144:5-8.)
27 Motolinia now attempts to disavow his own deposition testimony, claiming that the only
28 way he could make more money was to drive more miles.  (Oppo., 19:19-20:5.)  Motolinia

1 cannot escape his own admissions.  At deposition, Motolinia **admitted** he was able to hire
2 additional help if he determined that doing so would benefit his business, and that he knew
3 other Owner Operators were hiring drivers to work for them.  (UMF 40.)  He **admitted** he
4 could work for other entities if he believed that doing so was in the best interest of his
5 business and bottom line.  (UMF 9.)  He **admitted** he could also fully control his costs
6 (such as fuel costs, repairs, etc.) and could decide whether or not to turn down loads
7 because certain loads would not be fuel efficient or economical, and indeed did turn down
8 loads which were inconvenient to him.  (UMFs 5, 20, 24-26, 44.)  These is *precisely* the
9 type of discretion and independent managerial skill directly affecting profit and loss, which
10 make clear that Motolinia was properly classified as an independent contractor.  *Wolcott v.*
11 *Nationwide Mut. Ins. Co.*, 884 F.2d 245, 251 (6th Cir. 1989) (applying the common law
12 agency test to determine if an independent contractor relationship existed and finding that
13 the fact that the plaintiff "exercised managerial skill in the operation of his business"
14 weighed in favor of an independent contractor relationship).

15 **D.     Motolinia's Cited Cases Are Inapposite**

16        Finally, Motolinia attempts to analogize his relationship with Swift to those of
17 drivers in several inapposite and easily distinguishable cases.  As one example, in *Time*
18 *Auto Transport v. NLRB*, 377 F.3d 496 (6th Cir. 2004), the Court determined that the
19 drivers' relationship with Time Auto was akin to an employment relationship because (1)
20 Time Auto evaluated their performance, terminated drivers for inadequate performance,
21 and used the threat of termination for performance deficiencies as a means to control the
22 drivers; (2) the drivers could not determine what types of routes they took (e.g., long-haul,
23 intermodal, dedicated); (3) the drivers were required to follow detailed instructions from
24 Time Auto's dispatchers for each and every delivery they made and were ordered to wait
25 whenever they did not receive a load, such that they were expressly forbidden from driving
26 for other companies; (4) Time Auto ordered and expected drivers to violate federal
27 restrictions.  None of these factors exist here, as set forth in Defendants' Motion and
28 section II.A. above.  Thus, Motolinia cannot rely on *Time Auto*'s holding to establish that

1  his relationship with Swift was an employment relationship.  Similarly, *Max Trucking LLC*
2  *v. Liberty Mut. Ins. Corp.*, 802 F. 3d 793 (6th Cir. 2014) is distinguishable because the
3  drivers in that case did not and could not maintain their own businesses or employees,
4  contrary to Motolinia and other Swift Owner-Operators.  *See also GreenFleet Systems v.*
5  *Int'l Bro. of Teamsters*, 2015 WL 1619964 (NLRB Div. of Judges Apr. 9, 2015) (same).

### III.   CONCLUSION

For the foregoing reasons, and as set forth more fully in Defendants' moving papers, Defendants respectfully request that the Court issue an order granting summary judgment in favor of Swift on the issue of Motolinia's independent contractor status.

Dated:  September 30, 2016            SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                                By             /s/ Robert Mussig
                                      RONALD HOLLAND
                                      ELLEN M. BRONCHETTI
                                      PAUL S. COWIE
                                      ROBERT MUSSIG

                                      Attorneys for Defendants
                                SWIFT TRANSPORTATION CO. OF ARIZONA,
                                LLC, INTERSTATE EQUIPMENT LEASING, LLC,
                                      CHAD KILLEBREW and JERRY MOYES

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic filing to the following CM/ECF registrants:

Susan Joan Martin
Jennifer Lynn Kroll
Martin & Bonnett PLLC
1850 N. Central Ave.; Ste. 2010
Phoenix, AZ  85004

Dan Getman
Edward John Tuddenham
Lesley Tse
Getman & Sweeney, PLLC
9 Paradies La.
New Paltz, NY  12561

Attorneys for Defendants

*/s/ Robert Mussig*

SMRH:479192071.1  DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO PLAINTIFF JOSE MOTOLINIA'S STATUS AS AN INDEPENDENT CONTRACTOR