SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
RONALD J. HOLLAND, Cal. Bar No. 148687 *(Pro Hac Vice)*
rholland@sheppardmullin.com
ELLEN M. BRONCHETTI, Cal. Bar No. 226975 *(Pro Hac Vice)*
ebronchetti@sheppardmullin.com
PAUL S. COWIE, Cal. Bar No. 250131 *(Pro Hac Vice)*
pcowie@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415-434-9100
Facsimile:    415-434-3947

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ROBERT MUSSIG, Cal. Bar No. 240369 *(Pro Hac Vice)*
rmussig@sheppardmullin.com
ANNA M. STANCU, Cal. Bar No. 288283 *(Pro Hac Vice)*
astancu@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071
Telephone:    213-620-1780
Facsimile:    213-620-1398

Attorneys for Defendants
SWIFT TRANSPORTATION CO. OF
ARIZONA, LLC, INTERSTATE EQUIPMENT
LEASING, LLC, CHAD KILLEBREW and
JERRY MOYES

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VIRGINIA VAN DUSEN; JOHN DOE 1; and JOSEPH SHEER, individually and on behalf of all other similarly situated persons,<br><br>                    Plaintiffs,<br><br>v.<br><br>SWIFT TRANSPORTATION CO., INC.; INTERSTATE EQUIPMENT LEASING, INC.; CHAD KILLIBREW; and JERRY MOYES,<br><br>                    Defendants. | Case No. CV 10-899-PHX-JWS<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL STATEMENTS OF FACT RE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF PETER WOOD'S STATUS AS AN INDEPENDENT CONTRACTOR**<br><br>[Filed concurrently with Reply to Plaintiff's Opposition, Supplemental Declaration of Anna M. Stancu, and Supplemental Declaration of Robert Mussig] |

1    Defendants Swift Transportation Co. of Arizona, LLC and Interstate Equipment
2  Leasing Co. hereby reply to Plaintiff Peter Wood's purported "Controverting and
3  Additional Statements of Fact" filed in response to Defendants' Separate Statement of
4  Undisputed Material Facts.

5

6      **DEFENDANTS' UNDISPUTED MATERIAL FACTS, PLAINTIFF'S**
7    **PURPORTED "CONTROVERTING AND ADDITIONAL STATEMENTS OF**
8            **FACT," AND DEFENDANTS' REPLY**

9    1.    Wood became an Owner-Operator to be independent and profitable, and start
10  a business partnership with Swift.  [Declaration of Anna M. Stancu ("Stancu Decl."), ¶ 2,
11  Ex. A, Deposition of Peter Wood ("Wood Depo."), pg. 133:3-7.]

12    PLAINTIFF'S RESPONSE:

13    DENIED.  The statement mischaracterizes and is not supported by the

14    testimony cited.  Plaintiff Wood signed an ICOA and Lease, by which he

15    leased a tractor from IEL and simultaneously leased it back to Swift.  At no

16    time did he own anything.  *See* Plaintiffs' Statement of Undisputed Fact in

17    Support of Summary Judgment, Docket 772 (hereafter "PSOF") ¶49.  Nor did

18    lease payments result in Plaintiff Wood receiving any equity interest in the

19    leased truck.  *Id.*  Accordingly, the term "owner-operator" is incorrectly

20    applied to him and Plaintiff objects to and disputes its use throughout

21    Defendants' Statement of Facts.  Plaintiff admits that the Company used the

22    term "owner operator" as a colloquial label for lease operators and that usage

23    induced drivers to use the same terminology.

24

25    Further, Plaintiff Wood's intentions of being independent and starting a

26    business partnership with Swift are irrelevant to the relationship that the

27    parties actually had.  Plaintiff Wood testifies that he was not independent as a

28    lease operator.  *See* Deposition of Peter Wood, Doc. 772-6, Ex. 5

-1-

1   (hereinafter "PW") 59:2-63:7 (characterizing Swift's advertising about

2   lease operator program as "propaganda," that it turned out to be "absolutely

3   incorrect" and he felt like he was "frauded," that he was "treated no

4   different" than when he was an employee driver), 175:21-176:10 (used a

5   DBA when he signed second contract because he thought Swift would treat

6   him as a business person, as opposed to first time he signed contract, but it

7   "just didn't turn out to be that way.  They just didn't care.")).  In the

8   deposition testimony cited, which is taken out of context and should start at

9   PW 132:20, Plaintiff Wood states he became a lease operator for the

10   second time because he wanted to buy medical insurance for himself and

11   his wife, and to improve the quality of his life.  The testimony says nothing

12   about being "independent" or "profitable," or "start[ing] a business

13   partnership with Swift."

14   <u>DEFENDANTS' REPLY:</u>

15        At deposition, Plaintiff specifically testified that he made the decision to

16   enter into an Owner-Operator agreement with Swift because he "wanted… to

17   improve the quality of [his] life," and wanted to "see [his] name on the side of [his]

18   truck."  When asked, "So you wanted to have a business, you wanted to be

19   successful financially?" he responded "Yes."  (Supp. Stancu Decl., ¶2, Ex. M,

20   Wood Depo., pgs. 132:20-133:5.)  Plaintiff cannot dispute his own deposition

21   testimony.  Plaintiff's response is insufficient to create a genuine issue of disputed

22   fact.

23        Further, Plaintiff's reliance on the terms of his lease with IEL is misplaced.

24   The lease has no bearing on whether Plaintiff was in an independent contractor

25   relationship with Swift while he was an Owner-Operator, as IEL and Swift are

26   distinct and separate entities.  (Berry Decl., ¶ 21.)  Plaintiff cannot dispute that he

27   was able to lease his truck from companies other than IEL.  (*See* Stancu Decl., ¶3,

28   Ex. B, Wood's ICOA dated March 31, 2009, ¶ 4; Stancu Decl., ¶4, Ex. C, Wood's

-2-

ICOA dated April 2, 2009, ¶ 4; Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25, 2009, ¶ 4; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 4.)

Plaintiff's claim that he did not have any equity interest in the truck he leased from IEL is disingenuous.  Similar to a car lease, Plaintiff had the option to purchase the truck for an agreed-upon residual value upon the expiration of the lease.  (Supp. Mussig Decl., ¶3, Ex. Q, Spence Depo. pgs. 80:19-82:4.)  The lease contained a provision that governed Plaintiff's possible purchase of the truck from IEL following the expiration of the lease term.  (Stancu Decl., ¶ 8, Ex. G, Wood's Lease Assignment Documents dated March 31, 2009, ¶18; Stancu Decl., ¶ 9, Ex. H, Wood's Lease Assignment Documents dated April 25, 2014, ¶ 18.)

Finally, Plaintiff's intent to form a business relationship with Swift and understanding that he did so is a key factor in determining whether Plaintiff was an independent contractor.

2.    Wood had two stints as an Owner-Operator for Swift. [Stancu Decl., ¶2, Ex. A, Wood Depo., pg. 34:11-20.]

PLAINTIFF'S RESPONSE:

ADMITTED subject to Plaintiff Wood's response to ¶ 1.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 1.

3.    Wood's first stint as an Owner-Operator for Swift began in late March or early April of 2009, and he entered into an Independent Contractor Operating Agreement ("ICOA") with Swift at that time.  [Stancu Decl., ¶ 3, Ex. B, Wood's ICOA dated March 31, 2009; Stancu Decl., ¶ 4, Ex. C, Wood's ICOA dated April 2, 2009.]

PLAINTIFF'S RESPONSE:

DENIED.  While Plaintiff Wood admits that he signed an ICOA in late March or early April of 2009, and that the ICOA characterized him as an independent contractor, he denies that the nature of the relationship was an independent contractor relationship.  Swift cites no evidence to support its assertion that Plaintiff Wood owned the equipment he was leasing or that his relationship with Swift was that of an independent contractor business owner.

DEFENDANTS' REPLY:

Plaintiff admits that he entered into an ICOA with Swift in April of 2009, and that his ICOA with Swift states that he was an independent contractor, not an employee, of Swift.  As such, Plaintiff does not actually dispute this Undisputed Material Fact.

Further, Plaintiff's reliance on the terms of his lease with IEL is misplaced. The IEL lease has no bearing on whether Plaintiff was in an independent contractor relationship with Swift while he was an Owner-Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  Plaintiff cannot dispute that he was able to lease his truck from companies other than IEL.  (*See* Stancu Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 4; Stancu Decl., ¶4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 4; Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25, 2009, ¶ 4; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 4.)

Plaintiff's claim that he did not have any equity interest in the truck he leased from IEL is disingenuous.  Similar to a car lease, Plaintiff had the option to purchase the truck for an agreed-upon residual value upon the expiration of the lease.  (Supp. Mussig Decl., ¶3, Ex. Q, Spence Depo. pgs. 80:19-82:4.)  The lease contained a provision that governed Plaintiff's possible purchase of the truck from IEL following the expiration of the lease term.  (Stancu Decl., ¶ 8, Ex. G, Wood's

Lease Assignment Documents dated March 31, 2009, Stancu Decl., ¶ 9, Ex. H, Wood's Lease Assignment Documents dated April 25, 2014.)

4.      Wood's first stint as an Owner-Operator ended in July of 2009.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 110:9-15.]

PLAINTIFF'S RESPONSE:

ADMITTED.  Plaintiff Wood admits that he was terminated by Swift in July of 2009.  *See* Doc. 772-6, x. 5 (PW 75:9-76:2).

DEFENDANTS' REPLY:

Contrary to Plaintiff's assertion, Swift did not terminate Plaintiff.  Rather, Swift and Plaintiff each had a contractual right to terminate the ICOA, thereby ending their contractual duties to one another, and this right was exercised.  (Stancu Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009; Stancu Decl., ¶4, Ex. C, Wood's ICOA dated April 2, 2009; Wood's ICOA dated April 25, 2014; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014.)

5.      Wood's second stint as an Owner-Operator for Swift began when he signed an ICOA dated April 25, 2014.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 102:10-20; Stancu Decl., ¶ 5, Ex. D, Wood's ICOA with Swift dated April 25, 2014.]

PLAINTIFF'S RESPONSE:

DENIED.  While Plaintiff Wood admits that he signed another ICOA in April of 2014, and that the ICOA characterized him as an independent contractor, he denies that the nature of the relationship was an independent contractor relationship.  Swift cites no evidence to support its assertion that Plaintiff Wood owned the equipment he was leasing or that his relationship with Swift was that of an independent contractor business owner.

-5-

1

DEFENDANTS' REPLY:

Plaintiff admits that he entered into an ICOA with Swift in April of 2014, thereby becoming an Owner-Operator for Swift.  As such, Plaintiff does not actually dispute this Undisputed Material Fact.

Further, Plaintiff's reliance on the terms of his lease with IEL is misplaced. The IEL lease has no bearing on whether Plaintiff was in an independent contractor relationship with Swift while he was an Owner-Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  Plaintiff cannot dispute that he was able to lease his truck from companies other than IEL.  (*See* Stancu Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 4; Stancu Decl., ¶4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 4; Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25, 2009, ¶ 4; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 4.)

Plaintiff's claim that he did not have any equity interest in the truck he leased from IEL is disingenuous.  Similar to a car lease, Plaintiff had the option to purchase the truck for an agreed-upon residual value upon the expiration of the lease.  (Supp. Mussig Decl., ¶3, Ex. Q, Spence Depo., pgs. 80:19-82:4.)  The lease contained a provision that governed Plaintiff's possible purchase of the truck from IEL following the expiration of the lease term.  (Stancu Decl., ¶ 8, Ex. G, Wood's Lease Assignment Documents dated March 31, 2009, Stancu Decl., ¶ 9, Ex. H, Wood's Lease Assignment Documents dated April 25, 2014.)

6.     In connection with his second stint as an Owner-Operator for Swift, Wood formed a business entity called Starlight Trucking.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 174:7-13, 175:5-20; Stancu Decl., ¶ 6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014; Stancu Decl., ¶ 7, Ex. F, Letter from the Internal Revenue Service ("IRS") to Wood enclosing the Employer Identification Number ("EIN") of Starlight Trucking dated May 2, 2014 ("IRS Letter enclosing Starlight Trucking EIN").]

-6-

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the testimony cited.  Plaintiff Wood registered a DBA, Starlight Trucking, to use on his second contract with Swift because he wanted to "feel more independent," to see that name on the side of his truck "just mostly to make [him] feel good."  *See* PW 100:5-12. He believed it would change his relationship with Swift.  *Id.* at 101:12-102:9. However, he did not actually start a trucking business, *Id.* at PW 100:13-17 (never actually started the business, it was "still in the works" at the time of the deposition), and it did not change his relationship with Swift, *Id.* at PW 175:21-176:10 ("I thought that if I did it this way, they would treat me as such, a business person, which just didn't turn out to be that way.  They just didn't care.").

In the cited testimony, PW 174:7-13, Plaintiff Wood merely identifies the EIN to go with his DBA, Starlight Trucking.  The citation to PW 175:5-20 is incomplete and should continue to 176:10.  The full passage goes on to explain that the reason he used the DBA with Swift was "I thought that if I did it this way, they would treat me as such, a business person, which just didn't turn out to be that way.  They just didn't care."

DEFENDANTS' REPLY:

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  Plaintiff testified that he obtained his Internal Revenue Service Employer Identification Number "to go with my DBA to present to Swift so I can sign the second contract under Starlight Trucking." (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 174:1-13.)  Plaintiff also testified that he provided a letter from the Internal Revenue Service listing Starlight Trucking's Employer Identification Number, and an Assumed Name Certificate regarding Starlight Trucking from the State of Texas to Swift to enter into a contract with Swift as Peter Wood DBA Starlight Trucking.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 173:15-175:12.)  As

-7-

1   such, Wood clearly formed the business entity Starlight Trucking in connection

2   with his second stint as an Owner-Operator for Swift, and his response is

3   insufficient to create a genuine issue of disputed fact.

4

5   7.      In connection with his second stint as an Owner-Operator for Swift, Wood

6   entered into an ICOA with Swift not on his own behalf but rather as "Peter Wood dba

7   Starlight Trucking."  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 174:7-13, 175:5-20;

8   Stancu Decl., ¶ 6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014;

9   Stancu Decl., ¶ 7, Ex. F, IRS Letter enclosing Starlight Trucking EIN.]

10   PLAINTIFF'S RESPONSE:

11   DENIED.  *See* Plaintiff Wood's response to ¶ 5 above.

12   DEFENDANTS' REPLY:

13   Defendants incorporate their reply in support of Undisputed Material Fact No. 5.

14

15   8.      The ICOAs between Wood and/or Starlight Trucking and Swift states that

16   "[Wood] shall be considered an Independent Contractor and not an employee of [Swift]."

17   [Stancu Decl., ¶ 3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 18; Stancu Decl.,

18   ¶ 4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 17; Stancu Decl., ¶ 5, Ex. D,

19   Wood's ICOA dated April 25, 2014, ¶ 17; Stancu Decl., ¶ 6, Ex. E, Wood DBA

20   Starlight Trucking's ICOA dated May 9, 2014, ¶ 17.]

21   PLAINTIFF'S RESPONSE:

22   DENIED.  Plaintiff admits that the quoted sentence appears in the contracts he

23   signed, and that Swift intended to treat lease operators as independent contractors

24   and drafted the contract to so state, but denies that his relationship with Swift was

25   that of an independent contractor.  The contract, which was presented to drivers on

26   a "take it or leave it" basis (PSOF ¶¶ 73-77), read as a whole in light of the

27   circumstances of the whole activity establishes that he was an employee not an

28   independent contractor.

-8-

DEFENDANTS' REPLY:

Plaintiff admits that his ICOAs with Swift state that he was an independent contractor, not an employee, of Swift.  As such, Plaintiff does not actually dispute this Undisputed Material Fact.  As explained in Defendants' moving papers, Plaintiff understood that he was an independent contractor.

Contrary to Plaintiff's assertion, the ICOA is not presented to drivers on a "take it or leave it basis."  Swift negotiates the terms of ICOAs with individual Owner-Operators like Plaintiff.  (Supp. Mussig Decl., ¶2, Ex. P, Berry Depo., pgs. 231:7-233:11.)

9.     The ICOAs between Wood and/or Starlight Trucking and Swift state that Wood was solely responsible for determining the "method, means and manner" of performing work and providing services under the ICOA.  [Stancu Decl., ¶ 3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 18; Stancu Decl., ¶ 4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 17; Stancu Decl., ¶ 5, Ex. D, Wood's ICOA dated April 25, 2014, ¶ 17; Stancu Decl., ¶ 6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 17.]

PLAINTIFF'S RESPONSE:

DENIED.  Plaintiff admits that the quoted sentence appears in the contract but denies the truth of the statement.  The contract/lease read as a whole and in light of the circumstances of the whole activity establishes that Swift controlled all necessary aspects of the method, means and manner of performing his work.  The quoted section of the ICOA is contradicted by numerous other sections of the ICOA and the Lease and by the rules and regulations of Swift.  *See, e.g.,* Defendants' "exclusive possession, control, and use of the equipment during the term of this [Contract]." Swift: 21; Contract ¶ 5A; PSOF ¶ 65.  *See also* PSOF ¶¶ 27, 38, 41, 42, 49, 51-57, 101, 134, 140, 141, 162.

DEFENDANTS' REPLY:

Plaintiff admits that his ICOAs with Swift state that he was solely responsible for the method, means and manner of performing work and services under the ICOA.  As such, Plaintiff does not actually dispute this Undisputed Material Fact.

Indeed, Plaintiff admits that his experience was consistent with this contract language.  For example, Plaintiff admits that he had the ability and authority to decline loads that were offered to him by Swift as an Owner-Operator.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 160:14-162:25.)  Plaintiff also admits that Swift did not control his working hours and Swift did not require him to take any particular route when delivering freight.  (*Id.* at Wood Depo., pgs. 77:5-17, 103:8-13, 107:16-20.)

There is absolutely no evidence in this case that Swift ever took "possession, control [or] use of" Plaintiff's truck.  Plaintiff's reference to any such unexercised "right" is simply a red herring.

10.     The ICOAs between Wood and/or Starlight Trucking and Swift state that Wood was "not required to purchase or rent any products, equipment, or services from [Swift]." [Stancu Decl., ¶ 3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 4; Stancu Decl., ¶ 4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 4; Stancu Decl., ¶ 5, Ex. D, Wood's ICOA dated April 25, 2014, ¶ 4; Stancu Decl., ¶ 6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 4.]

PLAINTIFF'S RESPONSE:

DENIED.  Plaintiff admits that the quoted sentence appears in the contract but denies the truth of the statement.  The contract/lease read as a whole and in light of the circumstances of the whole activity establishes that Plaintiff was, as a practical matter, required to purchase or rent a variety of products, equipment and services from Swift including insurance and the Qualcomm device in his truck to participate

-10-

in the Swift lease operator program.  PW 81:24-82:24 (Wood was told that he had

to purchase equipment from Swift).  *See also* 83:21-84:8 (same).  Swift insisted that

all drivers have insurance acceptable to it.  PSOF ¶¶ 84, 87-89, 205-206.  Swift

made available to all lease operators insurance policies which met its minimum

criteria.  PSOF ¶¶ 84-85.  The insurance that Swift required lease operators to

purchase was provided through its wholly-owned captive insurance subsidiary,

Mohave Transportation Insurance Company, which it earns premium revenue from.

Plaintiffs' Additional Statements of Fact ¶¶ 21-25.  All Plaintiffs signed for Swift's

insurance.  Ex. 6, DEF001371 (Van Dusen); Ex. 7, DEF001324 (Sheer); Ex. 8,

DEF002018- 19 (Motolinia); Ex. 9, DEF002103-4 (Schwalm); Ex. 10a,

DEF002361 (Wood).  Once lease drivers signed their approval for Swift's

insurance, Swift paid the insurance and deducted the cost of insurance directly from

the drivers weekly settlement pay.  PW 142:15-143:15; Deposition of Joseph Mark

Sheer, Doc. 772-3, Ex. 2 (hereinafter "JS") 156:17-18; Deposition of Virginia Van

Dusen, Doc. 772-2, Ex. 1 (hereinafter "VVD"): 29:9-12, 53:23.  *See also*

Deposition of Jose Motolinia, Doc. 772-4, Ex. 3 (hereinafter "JM") 138, 143-144

(Swift provided insurance).  Swift set Plaintiff Wood's mileage rate at a level that

would allow him to pay for normal expenses of that type if he drove as many miles

as were expected of employee drivers.  PSOF ¶¶ 113-117.  Swift made available all

equipment (e.g. truck, Qualcomm unit) it required drivers to have, PSOF ¶¶ 84-91,

along with all services (insurance, accounting).  Swift extended its credit to drivers

to obtain this equipment which was then recovered by Swift as a weekly deduction

to settlement payments.  *Id. And see* PSOF ¶ 199 (requiring Qualcomm units

onboard for satellite communication between Swift managers and drivers).

Furthermore, if truck maintenance was not performed to IEL's satisfaction, the

company could perform the service and bill the driver.  PSOF ¶ 189; Lease 6(c).

1  DEFENDANTS' REPLY:

2  Plaintiff admits his ICOAs with Swift state that he was not required to

3  purchase or rent any products, equipment, or services from Swift.  As such, Plaintiff

4  does not actually dispute this Undisputed Material Fact.

5  Further, Plaintiff admits that his experience was consistent with this contract

6  language.  As one example, Plaintiff admits that he "had the option to go wherever

7  [he] wanted" for maintenance.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 149:19-

8  150:4.)  As another example, Plaintiff admits that he could have gotten his truck

9  from an entity other than IEL.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 81:6-

10  15, 140:2-7.)  As another example, Plaintiff admits that Swift did not finance his

11  fuel, tolls, or other expenses.  Swift may have deducted money from Plaintiff's

12  account and made payments on behalf of Plaintiff, but this was simply a pass-

13  through done as a convenience to Plaintiff.  Plaintiff admits he paid for these

14  expenses himself out of his earnings as an Owner-Operator.  (*See e.g.* Stancu Decl.,

15  ¶ 2, Ex. A, Wood Depo., pgs. 158:19-159:19.)

16  Plaintiff's reliance on the terms of his lease with IEL is misplaced.  The lease

17  has no bearing on whether Plaintiff was in an independent contractor relationship

18  with Swift while he was an Owner-Operator, as IEL and Swift are distinct and

19  separate entities.  (Berry Decl., ¶ 21.)  Even if the lease were relevant, Murray

20  Spence repeatedly testified that Paragraph 6(c) in the Lease was not enforced.

21  (Supp. Mussig Decl., ¶3, Ex. Q, Spence Depo., pgs. 66:17-67:15, 71:2-7.)  Spence

22  also testified that IEL "would not terminate the lease based on a violation of 6(c)."

23  (Supp. Mussig Decl., ¶3, Ex. Q, Spence Depo., pg. 70:14-17.)

24  The fact that Owner-Operators are required to maintain minimal levels of

25  insurance in compliance with federal law and had the **option** to purchase insurance

26  from Mohave Transportation Insurance Company, an entity that is distinct and

27  separate from Swift, has no bearing on whether Swift everted control over Plaintiff.

28

1    Swift does not have mileage expectations for Owner-Operators, including

2    Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators are free to drive as many or as few

3    miles as they considered optimal for their business.  (Berry Decl., ¶ 13.)  How Swift

4    determined Plaintiff's mileage rate has no bearing on whether Swift exerted

5    "control" over Plaintiff.  If Plaintiff was unhappy with the mileage rate, he could

6    have driven for another carrier.

7    Finally, Plaintiff improperly relies on testimony of the other Plaintiffs as

8    evidence of his own personal experiences.  Such testimony cannot create a genuine

9    issue of disputed fact as a matter of both law and common sense.

10

11    11.    The ICOAs between Wood and/or Starlight Trucking and Swift state that

12    Wood had no obligation to accept any loads tendered by Swift.  [Stancu Decl., ¶ 3, Ex. B,

13    Wood's ICOA dated March 31, 2009, ¶ 1; Stancu Decl., ¶ 4, Ex. C, Wood's ICOA dated

14    April 2, 2009, ¶ 1; Stancu Decl., ¶ 5, Ex. D, Wood's ICOA dated April 25, 2014, ¶ 1;

15    Stancu Decl., ¶ 6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 1.]

16    <u>PLAINTIFF'S RESPONSE:</u>

17    DENIED.  Plaintiff admits that paragraph 1 of the contract states that he was not

18    required to accept every load tendered by Swift but denies the truth of the

19    statement.  The contract/lease read as a whole and in light of the circumstances of

20    the whole activity establishes that Plaintiff was not free to turn down loads because

21    doing so risked the possibility of sitting for long periods of time before another load

22    was offered or other forms of punishment.  PW 163:19-164:8, 165:19-166:11 (as

23    soon as he turned down loads penalization began), 161:19-163:18 (it was rarely

24    beneficial to turn down loads; to make money he needed to keep rolling so

25    "seldom" turned down loads).  As a practical matter, lease operators were required

26    to accept virtually all loads assigned by the company.  *See* PSOF ¶ 133-142 (no

27    knowledge of other options, no choice offered, Swift's admission drivers can/will

28    sit if refuse loads, other de facto punishment(s).) The contract also explicitly grants

-13-

Defendants "exclusive possession, control, and use of the equipment during the term of this [Contract]." Swift: 21; Contract ¶ 5A; PSOF ¶ 65. (This exclusive control was further implemented by Swift's ability to terminate the driver without cause, repossess the truck and force the driver into debt and collections). PSOF ¶ 27, 38, 41, 42, 49, 51-57. Defendants' authority to place drivers in "default" of the contract at will gave Swift the authority to demand compliance with its directions. *Id. And see* PSOF ¶¶ 133-142 (no knowledge of other options, no choice offered, Swift's admission drivers can/will sit if refuse loads, other *de facto* punishment(s)).

DEFENDANTS' REPLY:

Plaintiff admits that his ICOAs with Swift state that he had no obligation to accept any loads tendered by Swift. As such, Plaintiff does not actually dispute this Undisputed Material Fact. Indeed, Plaintiff admits that his experience was consistent with this contract language. Plaintiff admits that he had the ability and authority to decline loads that were offered to him by Swift as an Owner-Operator; and in fact **he did decline loads whenever "I did not think that it was going to be beneficial for the next load, or if I didn't think there was going to be an opportunity to get a next load in a timely manner," or if he was in a "dead" area, or if "I had personal matter to attend to."** (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 160:14-162:25.)

Moreover, Plaintiff's claim that delays in being offered loads constituted "discipline" is entirely speculative and erroneous. Plaintiff's ICOAs make it explicitly clear, and *Plaintiff admits he understood*, that the ICOA "shall not . . . be construed as an agreement by [Swift] to furnish any specific tonnage of freight for transportation by [Plaintiff] at any particular time, or at any particular place." (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 77:5-17; Stancu Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 1; Stancu Decl., ¶4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 1; Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25,

-14-

2009, ¶ 1; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 1.)  There are various reasons why an individual might not be offered a new load right when he or she asks for one, including the fact that one simply is not available in his or her area.  (*See* Supp. Mussig Decl., ¶2, Ex. P, Berry Depo., pgs. 35:25-39:10.)  Mere speculation and conjecture are insufficient to create a genuine issue of disputed fact.

There is absolutely no evidence in this case that Swift ever took "possession, control [or] use of" Plaintiff's truck.  Plaintiff's reference to any such unexercised "right" is simply a red herring.

Furthermore, Swift's ability to terminate the ICOA without cause is irrelevant.  Plaintiff had the same right, and if he chose to exercise that right, he could have simply driven for another carrier.  (Stancu Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009, ¶¶ 5(b), 17(a); Stancu Decl., ¶4, Ex. C, Wood's ICOA dated April 2, 2009, ¶¶ 5(b), 17(a); Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25, 2009, ¶¶ 5(b), 17(a); Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶¶ 5(b), 17(a); Supp. Mussig Decl., ¶3, Ex. Q, Spence Depo., pgs. 59:5-60:17.)

Plaintiff's reliance on the terms of his lease with IEL is misplaced.  The IEL lease has no bearing on whether Plaintiff was in an independent contractor relationship with Swift while he was an Owner Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)

Finally, Plaintiff improperly relies on the testimony of the other Plaintiffs as evidence of his own personal experiences.  Such testimony cannot create a genuine issue of disputed fact as a matter of both law and common sense.

12.     The ICOAs between Wood and/or Starlight Trucking and Swift state that Wood had no obligation to purchase fuel from Swift.  [Stancu Decl., ¶ 3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 15*;* Stancu Decl., ¶ 4, Ex. C, Wood's ICOA dated April 2,

-15-

1  2009, ¶ 15; Stancu Decl., ¶ 5, Ex. D, Wood's ICOA dated April 25, 2014, ¶ 15; Stancu

2  Decl., ¶ 6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 15.]

3  <u>PLAINTIFF'S RESPONSE:</u>

4  DENIED Plaintiff admits that the contract stated that he was not required to

5  purchase fuel from Swift but denies the truth of the statement.  The contract/lease

6  read as a whole and in light of the circumstances of the whole activity establishes

7  that Swift could demand that lease operators fuel at approved locations and as a

8  practical matter Plaintiff had to purchase fuel at Swift approved locations.  PW

9  104:13-112:25 (in 2009-2014 told to use Swift terminals for fuel; if he didn't was

10  punished by not getting offered loads, being put on safety hold); PSOF ¶ 218 (lease

11  operators could lose fuel surcharge if they fueled at non-approved location).

12  <u>DEFENDANTS' REPLY:</u>

13      Plaintiff admits that his ICOAs with Swift state that he had no obligation to

14  purchase fuel from Swift.  Indeed, Plaintiff admits that he used fuel stops that were

15  not recommended by Swift approximately "[t]hree-quarters of the time."  (Stancu

16  Decl., ¶ 2, Ex. A, Wood Depo., pgs. 110:16-111:13.) As such, Plaintiff's response is

17  insufficient to create a genuine issue of disputed fact.

18      Moreover, Plaintiff's claim that delays in being offered loads constituted

19  "punishment" is entirely speculative and erroneous.  Plaintiff's ICOAs make it

20  explicitly clear, and *Plaintiff admits he understood*, that the ICOA "shall not . . . be

21  construed as an agreement by [Swift] to furnish any specific tonnage of freight for

22  transportation by [Plaintiff] at any particular time, or at any particular place."

23  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 77:5-17; Stancu Decl., ¶3, Ex. B,

24  Wood's ICOA dated March 31, 2009, ¶ 1; Stancu Decl., ¶4, Ex. C, Wood's ICOA

25  dated April 2, 2009, ¶ 1; Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25,

26  2009, ¶ 1; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated

27  May 9, 2014, ¶ 1.)  There are various reasons why an individual might not be

28  offered a new load right when he or she asks for one, including the fact that one

-16-

1   simply is not available in his or her area.  (*See* Supp. Mussig Decl., ¶2, Ex. P, Berry

2   Depo., pgs. 35:25-39:10.)  Mere speculation and conjecture are insufficient to create

3   a genuine issue of disputed fact.

4

5   13.   The ICOAs between Wood and/or Starlight Trucking and Swift state that

6   Wood was solely responsible for providing the equipment and the labor necessary to

7   perform all work under the ICOA.  [Stancu Decl., ¶ 3, Ex. B, Wood's ICOA dated

8   March 31, 2009, ¶ 1; Stancu Decl., ¶ 4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 1;

9   Stancu 24 Decl., ¶ 5, Ex. D, Wood's ICOA dated April 25, 2014, ¶ 1; Stancu Decl., ¶ 6,

10  Ex. E, Wood 25 DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 1.]

11  PLAINTIFF'S RESPONSE:

12  DENIED.  *See* Plaintiff Wood's response to ¶ 10 above.  Plaintiff admits that the

13  contract stated this but denies the truth of the statement.  The contract/lease read as

14  a whole and in light of the circumstances of the whole activity establishes that Swift

15  provided the equipment (e.g., truck, Qualcomm) it required of all lease operators by

16  leasing it with no money down and 100% financing which Swift paid itself for by

17  deducting the weekly cost of leasing and other credit extended by Swift from the

18  higher mileage rate paid to lease operators, which rate was set at a level that would

19  cover Swift's extension of credit if a lease operator drove the same number of miles

20  per week as was expected of employee drivers.  PSOF ¶¶ 3-4, 84-91.

21  DEFENDANTS' REPLY:

22  Defendants incorporate their reply in support of Undisputed Material Fact

23  No. 10.

24  Plaintiff admits that his ICOAs with Swift state that he was solely

25  responsible for paying his own operating and maintenance expenses.  As such,

26  Plaintiff does not actually dispute this Undisputed Material Fact.  Indeed, Plaintiff

27  admits that his experience was consistent with this contract language.  As one

28  example, Plaintiff admits that he was responsible for the fuel he purchased and

-17-

1    used.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 144:16-21.)  As another example,

2    Plaintiff admits that he paid for his truck, insurance, fuel, maintenance, repairs, and

3    the Qualcomm unit.  (*Id.* at Wood Depo., pgs. 158:19-159:19.)  Furthermore,

4    Plaintiff admits that if he had hired employees to help him perform work under the

5    ICOA, he would have been required to pay his employees.  (*Id.* at Wood Depo.,

6    pgs. 93:2-94:24.)  Moreover, Plaintiff does not deny that his ICOAs with Swift state

7    that he was responsible for liability insurance and other insurance related to driving

8    the truck.  (*Id.* at Wood Depo., pg. 144:2-13.)

9          The fact is that Owner-Operators had the option to obtain equipment and

10   services through Swift or from some other third party.  (Stancu Decl., ¶3, Ex. B,

11   Wood's ICOA dated March 31, 2009, ¶ 4; Wood's ICOA dated April 2, 2009, ¶ 4;

12   Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25, 2009, ¶ 4; Stancu Decl., ¶6,

13   Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 4.)

14         Plaintiff admits that Swift did not finance his fuel, tolls, or other expenses.

15   Swift may have deducted money from Plaintiff's account and made payments on

16   behalf of Plaintiff, but this was simply a pass-through done as a convenience to

17   Plaintiff.  Plaintiff admits he paid for these expenses himself out of his earnings as

18   an Owner-Operator.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 144:2-15 (paid for

19   his insurance), 144:16-21 (paid for his fuel), 158:19-160:13 (paid for all expenses to

20   run his business).)

21         Swift does not have mileage expectations for Owner-Operators, including

22   Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators are free to drive as many or as few

23   miles as they considered optimal for their business.  (Berry Decl., ¶ 13.)  How Swift

24   determined Plaintiff's mileage rate has no bearing on whether Swift exerted

25   "control" over Plaintiff.  If Plaintiff was unhappy with the mileage rate, he could

26   have driven for another carrier.

27

28

1    Finally, Plaintiff improperly relies on the testimony of the other Plaintiffs as

2    evidence of his own personal experiences.  Such testimony cannot create a genuine

3    issue of disputed fact as a matter of both law and common sense.

4

5    14.    The ICOAs between Wood and/or Starlight Trucking and Swift state that

6    Wood was solely responsible for paying his own operating and maintenance expenses.

7    [Stancu Decl., ¶ 3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 10-11, 13; Stancu Decl.,

8    ¶ 4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 10-11, 13; Stancu Decl., ¶ 5, Ex. D,

9    Wood's ICOA dated April 25, 2014, ¶ 10-11, 13; Stancu Decl., ¶ 6, Ex. E, Wood DBA

10   Starlight Trucking's ICOA dated May 9, 2014, ¶ 10-11, 13.]

11   PLAINTIFF'S RESPONSE:

12   DENIED.  Plaintiff admits that the contract stated this but denies the truth of the

13   statement.  The contract/lease read as a whole and in light of the circumstances of

14   the whole activity establishes that Swift extended its credit for fuel, tolls,

15   maintenance work and other expenses through use of Swift's Comdata card and

16   Comcheks, and set the higher mileage rate paid to lease operators, at a level that

17   would cover normal operating expenses including maintenance if a lease operator

18   drove the same number of miles per week as was expected of employee drivers.

19   PSOF ¶¶ 113-117, 218-224.  These expenses were later deducted from drivers' per-

20   mile pay on their settlements.  PSOF ¶ 223.

21   DEFENDANTS' REPLY:

22   Plaintiff admits his ICOAs with Swift state that he was solely responsible for

23   paying his own operating and maintenance expenses.  As such, Plaintiff's response

24   is insufficient to create a genuine issue of disputed fact.  Indeed, Plaintiff admits

25   that his experience was consistent with this contract language.  As one example,

26   Plaintiff admits he was responsible for liability insurance and other insurance

27   related to driving the truck.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 144:2-13.)

28   As another example, Plaintiff admits that he was responsible for the fuel he

-19-

1   purchased and used.  (*Id.* at Wood Depo., pg. 144:16-21.)  As yet another example,

2   Plaintiff admits that he paid for his truck, insurance, fuel, maintenance, repairs, the

3   Qualcomm unit, and taxes.  (*Id.* at Wood Depo., pgs. 158:19-159:19.)  As another

4   example, Plaintiff admits that if he had hired employees to help him perform work

5   under the ICOA, he would have been required to pay his employees.  (*Id.* at Wood

6   Depo., pgs. 93:2-94:24.)

7          The fact is that Owner-Operators had the option to obtain equipment and

8   services through Swift or from some other third party.  (Stancu Decl., ¶3, Ex. B,

9   Wood's ICOA dated March 31, 2009, ¶ 4; Wood's ICOA dated April 2, 2009, ¶ 4;

10   Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25, 2009, ¶ 4; Stancu Decl., ¶6,

11   Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 4.)

12          In addition, Swift did not finance Plaintiff's fuel, tolls, or other expenses.

13   Swift may have deducted money from Plaintiff's account and made payments on

14   behalf of Plaintiff, but this was simply a pass-through done as a convenience to

15   Plaintiff.  Plaintiff admits he paid for these expenses himself out of his earnings as

16   an Owner-Operator.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 144:2-15 (paid

17   for his insurance), 144:16-21 (paid for his fuel), 158:19-160:13 (paid for all

18   expenses to run his business).)

19          Lastly, Swift does not have mileage expectations for Owner-Operators,

20   including Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators are free to drive as many

21   or as few miles as they considered optimal for their business.  (Berry Decl., ¶ 13.)

22   How Swift determined Plaintiff's mileage rate has no bearing on whether Swift

23   exerted "control" over Plaintiff.  If Plaintiff was unhappy with the mileage rate, he

24   could have driven for another carrier.

15.     Wood did not undergo any training or orientation with Swift as an Owner Operator.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 21:12-20.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the testimony cited.  While the cited testimony says that Plaintiff Wood did not receive any training at the time he signed on to become a lease operator, he testifies elsewhere that he was required to complete numerous trainings as a lease operator.  *See, e.g.*, PW 112:23-115:7 (had to watch several safety videos).  Further, Swift provided training and orientation to *all* its drivers about how to drive, along with its rules and regulations.  PSOF ¶¶ 100, 101, 200-204 (contract requires lease operators to attend orientation within 14 days of signing contract).  Swift also continued to insist that drivers undergo additional training as lease operators.  PSOF ¶¶ 200-204.  *See also* PSOF ¶¶ 99-100 (all policies apply to both employee drivers and lease operators); Plaintiffs' Additional Statements of Fact ¶¶ 10-20.

DEFENDANTS' REPLY:

At deposition, Plaintiff specifically testified that he did not undergo <u>any</u> training or orientation as an Owner-Operator.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 21:12-20.)  Plaintiff cannot dispute his own deposition testimony.  Whatever training Plaintiff received as an ***employee*** driver has no bearing on whether Swift exerted control over him while he was an Owner-Operator.  Unlike employee drivers, Owner-Operators are not required to undergo any training or orientation.  (Berry Decl. ¶ 4.)  The testimony cited in Plaintiff's response does not indicate in any way that Plaintiff completed orientation as an Owner-Operator or was trained on Swift policies while he was an Owner-Operator – he states that he watched a brief video or saw a "little cartoon" on winter driving.  (*See* Supp. Stancu Decl., ¶2, Ex. M, Wood Depo., pgs. 112:23-115:17.)

16.    Swift did not provide Wood with, nor require him to be familiar with, any Swift policies or procedures while he was an Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 21:12-20.]

PLAINTIFF'S RESPONSE:

DENIED.  *See* Plaintiff Wood's response to ¶ 15 above.  Moreover, the contract/lease ¶ 17 stated that Plaintiff's contract could be terminated immediately for violation of "any Company policy." By virtue of that provision of the contract Swift required Plaintiff to be familiar with all Swift policies and procedures on pain of termination.  Further, Swift provided new drivers with a copy of its Swift Driver Manual (Pl. Exs. 14A and 14B), a statement of policies and procedures applicable to all employee and lease drivers and those policies are by their own terms expressly applicable to both employee and lease drivers.  Plaintiffs' Additional Statements of Fact ¶¶ 10-20.  Swift also made its policies and instructions clear in its Contracted Driver Manual, Handshake to Horsepower, and Pre-CABS Training.  *Id. See also* PSOF ¶¶ 98-101(a-u) (all policies apply to both employee and lease drivers); PW 14:7-13 (received Swift policy manual at orientation), 15:11-16:3 (received Swift policies at orientation), 33:14-20 (as a company driver had a policy manual and had to abide by it), 128:13-129:5 (Swift managers told him that rule that applied to him company driver still applied to him as lease operator); 146:18-147:3 (Swift policy for lease operators to attend orientation); 153:12-154:10 (company policy that he had to maintain maintenance account as a LO regardless of what contract said).

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 15.

At deposition, Plaintiff specifically testified that he did not undergo any training or orientation when he signed on to become an Owner-Operator.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., 21:12-20.)  Plaintiff cannot dispute his own

1   deposition testimony.  Further, the testimony cited in Plaintiff's response refers

2   Plaintiff's time as an employee driver, not an Owner-Operator.  Unlike employee

3   drivers, Owner-Operators are not required to undergo any training or orientation.

4   (Berry Decl. ¶ 4.)  Whatever training Plaintiff received as an employee driver has

5   no bearing on this Undisputed Material Fact or the issues in this case.

6        Additionally, David Berry's deposition testimony establishes that Swift did

7   not enforce Paragraph 17 of the ICOA, and Plaintiff has offered no evidence to the

8   contrary, either as to Plaintiff specifically or as to any other Owner Operator.

9   (Supp. Mussig Decl., ¶2, Ex. P, Berry Depo., pgs. 114:21-115:6, 216:1-220:13,

10  241:21-242:5, 270:4-17; Berry Decl., ¶ 14.)

11       Whether Swift provides policy documents to its employee drivers has no

12  bearing on whether it exerts control over Owner-Operators.  Despite Plaintiff's

13  claim to the contrary, there is nothing in the Driver Manual indicating that it applies

14  to Owner-Operators.  Moreover, Plaintiff admitted he never received any policy

15  documents from Swift while he was an Owner-Operator (such as a Driver Manual,

16  Contracted Driver Manual, Handshake-to-Horsepower manual, or any Pre-CABS

17  Training manuals).  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 21:12-20.)  Plaintiff

18  cannot argue that he was bound by documents he never received.

19       In addition, David Berry's testimony establishes that Swift does not regularly

20  enforce the provision in Plaintiff's Independent Contractor Check List requesting

21  that Owner-Operators attend an orientation within 14 days of their contract date.

22  (Supp. Mussig Decl., ¶2, Ex. P, Berry Depo., pgs. 241:21-242:5; *See* Stancu Decl.,

23  Exhibit I.)  Indeed, Plaintiff testified that, despite this language, he was "not aware"

24  of an orientation and that nobody required him "to attend one of the these classes."

25  (Supp. Stancu Decl., ¶2, Ex. M, Wood Depo., pgs. 146:18-147:3.)

26       Moreover, contrary to Plaintiff's assertion, Plaintiff was not required to

27  maintain a maintenance account with Swift.  Indeed, the ICOAs between Wood

28  and/or Starlight Trucking and Swift explicitly state that Wood was "not required to

-23-

purchase or rent any products, equipment, or services from [Swift]." (Stancu Decl.,
¶3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 4; Wood's ICOA dated April 2,
2009, ¶ 4; Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25, 2009, ¶ 4; Stancu
Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 4.)

Notably, Plaintiff conveniently does not identify the purported individual
who allegedly violated Swift company policy and told him there were restrictions as
to who could ride with him in his truck while he was an Owner-Operator, so it is
impossible for Swift to submit testimony from any specific person refuting
Plaintiff's self-serving allegations. (*See* Supp. Stancu Decl., ¶2, Ex. M, Wood
Depo., 128:13-129:5.)

17.    Swift did not control Wood's working hours when he was an Owner-
Operator.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 77:5-17; Stancu Decl., ¶ 3, Ex. B,
Wood's ICOA dated March 31, 2009, ¶ 1; Stancu Decl., ¶ 4, Ex. C, Wood's ICOA dated
April 2, 2009, ¶ 1; Stancu Decl., ¶ 5, Ex. D, Wood's ICOA dated April 25, 2014,
¶ 1; Stancu Decl., ¶ 6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9,
2014, ¶ 1; Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 157:21-158:4.]

PLAINTIFF'S RESPONSE:

DENIED.  *See* PSOF ¶ 101 (i).  The statement also mischaracterizes and is not
supported by the testimony cited.  The citation to PW 77:5-7 is simply a quote from
the contract that Swift didn't have to provide any specific number of loads; in other
words, Swift controlled working hours not driver.  *See also* PW 35:12-17 (no set
schedule as a company driver), 37:13-38:8 (as a truck driver generally, one can't
just go home), 118:9-120:8, 49:5-51:21 (wanted to work more, was not given loads
by Swift).  Furthermore, by contract Swift had exclusive "control" over the leased
truck and could exercise (or not) that control as it saw fit.  Swift: 21; Contract ¶ 5A;
PSOF ¶ 65.  And Swift could issue instructions to drivers under threat of Swift
placing the driver in default at will.  PSOF ¶¶ 27, 38, 41, 42, 49, 51-57.  In addition,

-24-

1   the need to earn money to cover her weekly lease payment and expenses and earn a

2   living required Plaintiff Wood to drive a minimum of approximately 2,400 miles

3   per week.  PSOF ¶¶ 114-116.  As he was not permitted to drive for any other

4   carrier, Plaintiff Wood had to drive those miles for Swift.  PSOF ¶¶ 169-173.

5

6   The testimony of Swift through its Rule 30(b)(6) designee Berry at 157:21-158:4 to

7   the effect that Swift doesn't assign loads, drivers "choose" loads is contradicted by

8   Mr. Berry himself who repeatedly refers to Swift assigning loads to lease operators,

9   *see e.g.* Berry 47:12-48:14; 65:24-66:7; 67:12-19.  Mr. Berry also acknowledged

10  that in the normal course only one load is communicated to a driver at a time and

11  has a period of time to accept it or not.  Berry 74:15-75:2.  *See also* PSOF ¶¶ 135-

12  136.  Mr. Berry also acknowledged that drivers could wait for 48 hours for another

13  load assignment if they declined a load, depending on conditions.  Berry 82:14-

14  83:5.  He also acknowledged that if drivers turn down loads it may require planners

15  to rejigger their entire load plan.  Berry: 69:25-71:11.

16  DEFENDANTS' REPLY:

17       Plaintiff admits that his ICOAs with Swift state that he had no obligation to

18  accept any loads tendered by Swift.  Plaintiff also admits that his experience was

19  consistent with this contract language.  Specifically, Plaintiff admits that he had the

20  ability and authority to decline loads that were offered to him by Swift as an

21  Owner-Operator; and in fact **he did decline loads whenever "I did not think that**

22  **it was going to be beneficial for the next load, or if I didn't think there was**

23  **going to be an opportunity to get a next load in a timely manner," or if he was**

24  **in a "dead" area, or if "I had personal matter to attend to."**  (Stancu Decl., ¶ 2,

25  Ex. A, Wood Depo., pgs. 160:14-162:25.)  Plaintiff admits that Swift did not

26  require him to take any particular route when delivering freight.  (*Id*. at Wood

27  Depo., pgs. 103:8-13, 107:16-20.)  Plaintiff admits that he was not required to

28  communicate, check-in, or interact with anyone from Swift while he was carrying

1   out his work.  (*Id.* at Wood Depo., pgs. 180:8-24, 182:11-17.)  Plaintiff admits that

2   nobody from Swift met him at pick-up or drop-off sites to check-in or supervise

3   him.  (*Id.* at Wood Depo., pgs. 180:25-181:22.)  As such, Swift did not control

4   Wood's working hours.  Plaintiff's response is insufficient to create a genuine issue

5   of disputed fact.

6       Additionally, Plaintiff was entitled to haul for other carriers and, therefore,

7   was not in any way forced to accept loads from Swift.  (Mussig Decl., ¶ 3, Ex. L,

8   Berry Depo., pg. 216:1-25; Stancu Decl., ¶3, Ex. B, Wood's ICOA dated March 31,

9   2009, ¶ 5(b); Stancu Decl., ¶4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 5(b);

10  Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25, 2009, ¶ 5(b); Stancu Decl.,

11  ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 5(b).)

12  David Berry unequivocally testified that, when Owner-Operators haul for other

13  carriers, Swift does not enforce any contract provision requiring Owner-Operators

14  to return their "base plates."  (Supp. Mussig Decl., ¶2, Ex. P, Berry Depo.,

15  pgs. 218:5-219:9.)  This testimony is uncontroverted.  The evidence also establishes

16  that IEL never enforced any purported contract language limiting the ability of

17  Owner-Operators to drive for carriers other than Swift, as it leased to individuals

18  with no affiliation with Swift whatsoever.  (Supp. Mussig Decl., ¶3, Ex. Q, Spence

19  Depo., pgs. 59:5-60:17.)  Plaintiff offers no evidence this contract provision was

20  ever enforced against him.

21      Furthermore, Swift's ability to terminate the ICOA without cause is

22  irrelevant.  Plaintiff had the same right, and if he chose to exercise that right, he

23  could have simply driven for another carrier.  (Stancu Decl., ¶3, Ex. B, Wood's

24  ICOA dated March 31, 2009, ¶¶ 5(b), 17(a); Stancu Decl., ¶4, Ex. C, Wood's ICOA

25  dated April 2, 2009, ¶¶ 5(b), 17(a); Stancu Decl., ¶5, Ex. D, Wood's ICOA dated

26  April 25, 2009, ¶¶ 5(b), 17(a); Stancu Decl., ¶6, Ex. E, Wood DBA Starlight

27  Trucking's ICOA dated May 9, 2014, ¶¶ 5(b), 17(a); Supp. Mussig Decl., ¶3, Ex. Q,

28  Spence Depo., pgs. 59:5-60:17.)

1    Plaintiff's reliance on the terms of the lease with IEL is misplaced.  The

2    lease has no bearing on whether Plaintiff was in an independent contractor

3    relationship with Swift while he was an Owner-Operator, as IEL and Swift are

4    distinct and separate entities.  (Berry Decl., ¶ 21.) The evidence also establishes that

5    IEL never enforced any purported contract language limiting the ability of Owner-

6    Operators to drive for carriers other than Swift, as it leased to individuals with no

7    affiliation with Swift whatsoever.  (Supp. Mussig Decl., ¶3, Ex. Q, Spence Depo.,

8    pgs. 59:5-60:17.)  Plaintiff offers no evidence this contract provision was ever

9    enforced against him.

10   Additionally, the testimony cited by Plaintiff does not dispute this

11   Undisputed Material Fact.  On page 35 of Plaintiff's deposition transcript, Plaintiff

12   merely discusses the identities of Swift executives and states that he became an

13   Owner-Operator for the second time because his performance ratings as an

14   employee driver was 100%.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 32:12-17.)

15   This has no bearing on this Undisputed Material Fact.  Similarly, Plaintiff's

16   testimony on pages 37 and 38 that a truck driver "cannot drop [his/her] trailer" in

17   the middle of a delivery has no bearing on the Undisputed Material Fact because

18   Plaintiff admits that he had the ability and authority to decline loads that were

19   offered to him by Swift as an Owner-Operator; and in fact **he did decline loads**

20   **whenever "I did not think that it was going to be beneficial for the next load, or**

21   **if I didn't think there was going to be an opportunity to get a next load in a**

22   **timely manner," or if he was in a "dead" area, or if "I had personal matter to**

23   **attend to."**  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 160:14-162:25; *see* Supp.

24   Stancu Decl., ¶2, Ex. M, Wood Depo., pgs. 37:13-38:7.)  Also, Plaintiff erroneously

25   cites testimony asserting that delays in being offered loads constitutes penalization.

26   Plaintiff's ICOAs make it explicitly clear, and *Plaintiff admits he understood*, that

27   the ICOA "shall not . . . be construed as an agreement by [Swift] to furnish any

28   specific tonnage of freight for transportation by [Plaintiff] at any particular time, or

-27-

at any particular place." (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 77:5-17; Stancu Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 1; Stancu Decl., ¶4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 1; Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25, 2009, ¶ 1; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 1.)  There are various reasons why an individual might not be offered a new load right when he or she asks for one, including the fact that one simply is not available in his or her area.  Furthermore, it is irrelevant whether Dave Berry used the terminology "choose" load or "assigns" loads during his deposition.

Lastly, contrary to Plaintiff's assertion, Swift did not have mileage expectations for Owner-Operators, including Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators, including Plaintiff, have always been free to drive as many or as few miles as they considered optimal for their business.  *Id.*

18.    Swift did not require Wood to take any particular route when delivering his freight, nor to visit any particular fueling station, repair shop, or maintenance shop. [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 103:8-13, 107:16-20; Stancu Decl., ¶ 3, Ex. B, Wood's ICOA dated March 31, 2009, ¶¶ 4, 15; Stancu Decl., ¶ 4, Ex. C, Wood's ICOA dated April 2, 2009, ¶¶ 4, 15; Stancu Decl., ¶ 5, Ex. D, Wood's ICOA dated April 25, 2014, ¶¶ 4, 15; Stancu Decl., ¶ 6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶¶ 4, 15.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the testimony cited, which is incomplete.  Shortly after the cited testimony, Plaintiff Wood testifies that he took his own routes for about a month until he was told by his Driver Manager that he could not and that he had to use Swift's navigation system.  He was told he needed to follow the route given.  When didn't do so, things "started spiraling down, downward." PW 104:13-112:25 Plaintiff Wood also testified that he

-28-

understood that Swift allowed drivers to do what they wanted until they said something or disagreed with their Driver Managers and then they punished you; in other words that Swift always retained the power to require compliance with its routes or its fueling.  PW 121:13-123:2.  Swift didn't always enforce this, but when a Driver Manager saw reason to, enforcement came.  *Id.*

Moreover, Swift had the exclusive control over the truck, Swift: 21, Contract ¶ 5A, PSOF ¶ 65, and the ability to terminate a driver for any reason or no reason, PSOF ¶¶ 27, 38, 41, 42, 49, 51-57, and thereby had the authority and power to direct routes or terminate a driver for failing to comply with its instructions, whether it did so or not.  Lease drivers, including Plaintiff Wood, would follow Swift's routing instructions in order to obtain reimbursement for tolls and to be able to use Swift's credit for fuel purchases so they would receive their fuel surcharge.  Contract ¶ 11; PSOF ¶¶ 158-159, 218.  *See also* PSOF ¶ 101(o) (Swift set separate policies for high value loads that included mandatory routing).  Finally, pursuant to the lease, all expenses for maintenance and compliance with its Minimum Guidelines must be approved by IEL in advance and be performed at facilities designated or approved by IEL, PSOF ¶ 189, and any repairs performed at a non-Swift facility that is estimated to cost more than $1,000 had to be approved in advance by Swift, PSFO ¶ 191.  *See also* PW 150:17-151:21 (if his truck broke down, Swift told him where to get repairs); PSOF ¶ 195 (three Swift terminals had inspection lines that trucks had to go through whenever they went through the fuel line).

<u>DEFENDANTS' REPLY:</u>

Plaintiff's response contradicts his own deposition testimony.  Specifically, when asked, "When you were an owner-operator, did you understand that you could take any route that you chose to when delivering a load?"  Plaintiff testified, "I was under the impression that I could."  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 103:8-13.)  When asked, "you knew it was your right to take whatever route you

-29-

wanted as an owner-operator?," Plaintiff testified, "Correct." (*Id.* at Wood Depo.,

pg. 107:16-20.)  Additionally, Plaintiff admits that he purchased fuel at locations

that were not recommended by Swift and had his truck repaired at non-Swift

facilities. (*Id.* at Wood Depo., pgs. 110:16-111:13, 149:9-152:5.)  Plaintiff cannot

create a genuine issue of disputed fact by contradicting his own deposition

testimony.

Additionally, Plaintiff's claim that delays in being offered loads constituted

"discipline" is entirely speculative and erroneous.  Plaintiff's ICOAs make it

explicitly clear, and *Plaintiff admits he understood*, that the ICOA "shall not . . . be

construed as an agreement by [Swift] to furnish any specific tonnage of freight for

transportation by [Plaintiff] at any particular time, or at any particular place."

(Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 77:5-17; Stancu Decl., ¶3, Ex. B,

Wood's ICOA dated March 31, 2009, ¶ 1; Stancu Decl., ¶4, Ex. C, Wood's ICOA

dated April 2, 2009, ¶ 1; Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25,

2009, ¶ 1; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated

May 9, 2014, ¶ 1.)  There are various reasons why an individual might not be

offered a new load right when he or she asks for one, including the fact that one

simply is not available in his or her area. (*See* Supp. Mussig Decl., ¶2, Ex. P, Berry

Depo., pgs. 35:25-39:10.)  Mere speculation and conjecture are insufficient to create

a genuine issue of disputed fact.

Furthermore, Plaintiff's claim that Defendants had exclusive "control" over

his truck is simply false.  Owner-Operators have always been free to accept and

decline freight loads offered to them by Swift – including high value loads.

(Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 157:21-158:4.)  Further, Owner-

Operators are entitled to haul for other carriers as long as they removed any Swift

indicia from their truck. (Id. at Berry Depo., pg. 216:1-25.)  David Berry

unequivocally testified that, when Owner-Operators haul for other carriers, Swift

1    has never required them to return their "base plates."  (Supp. Mussig Decl., ¶2, Ex.

2    P, Berry Depo., pgs. 218:5-219:9.)  This testimony is uncontroverted.

3           Moreover, Swift's ability to terminate the ICOA without cause is irrelevant.

4    Plaintiff had the same right, and if he chose to exercise that right, he could have

5    simply driven for another carrier.  (Stancu Decl., ¶3, Ex. B, Wood's ICOA dated

6    March 31, 2009, ¶¶ 5(b), 17(a); Stancu Decl., ¶4, Ex. C, Wood's ICOA dated April

7    2, 2009, ¶¶ 5(b), 17(a); Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25,

8    2009, ¶¶ 5(b), 17(a); Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's

9    ICOA dated May 9, 2014, ¶¶ 5(b), 17(a); Supp. Mussig Decl., ¶3, Ex. Q, Spence

10   Depo., 59:5-60:17.)

11          In addition, Plaintiff's reliance on the terms of the lease with IEL is

12   misplaced.  The IEL lease has no bearing on whether Plaintiff was in an

13   independent contractor relationship with Swift while he was an Owner-Operator, as

14   IEL and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  Even if the

15   lease were relevant, Murray Spence repeatedly testified that Paragraph 6(c) in the

16   Lease was not enforced.  (Supp. Mussig Decl., ¶3, Ex. Q, Spence Depo., pgs. 66:17-

17   67:9, 71:2-7.)  Spence also testified that IEL "would not terminate the lease based

18   on a violation of 6(c)."  (*Id.* at Spence Depo., pg. 70:14-17.)  The evidence also

19   establishes that IEL never enforced any purported contract language limiting the

20   ability of Owner-Operators to drive for carriers other than Swift, as it leased to

21   individuals with no affiliation with Swift whatsoever.  (*Id.* at Spence Depo.,

22   pgs. 59:5-60:17.)  Plaintiff sets forth no evidence that the Minimum Guidelines for

23   Condition of Equipment go beyond minimum federal Department of Transportation

24   requirements.  Also, Plaintiff offers no evidence that any of these contract

25   provisions were ever enforced against him.

26          Indeed, Plaintiff was able to lease from companies other than IEL.  (Stancu

27   Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 4; Stancu Decl., ¶4, Ex. C,

28   Wood's ICOA dated April 2, 2009, ¶ 4; Stancu Decl., ¶5, Ex. D, Wood's ICOA

-31-

1   dated April 25, 2009, ¶ 4; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's
2   ICOA dated May 9, 2014, ¶ 4.)

3        Lastly, the testimony cited by Plaintiff is incomplete.  Plaintiff testified that
4   he would call Swift's Rapid Response team to do repair work on his truck when he
5   broke down on the side of the road.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo.,
6   pgs. 150:17-152:5.)  However, Plaintiff also testified that he had his truck repaired
7   at non-Swift facilities.  (*Id.*)

8

9        19.   While Swift would provide a recommended route to Wood, he took a route
10  that was different from Swift's recommended route "as much as possible" because he did
11  not agree that Swift's recommended route was the quickest or most efficient available.
12  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 105:5-24, 107:9-20,121:13-20.]
13       PLAINTIFF'S RESPONSE:
14       DENIED.  *See* Plaintiff Wood's response to ¶ 18 above.
15       DEFENDANTS' REPLY:
16       Defendants incorporate their reply in support of Undisputed Material Fact No. 18.
17

18       20.   Wood would create and take routes that he felt allowed him to be as efficient
19  as possible in delivering his loads, regardless of what route Swift suggested.  [Stancu
20  Decl., ¶ 2, Ex. A, Wood Depo., pgs. 105:5-24, 107:9-20, 121:13-20.]
21       PLAINTIFF'S RESPONSE:
22       DENIED.  *See* Plaintiff Wood's response to ¶ 18 above.
23       DEFENDANTS' REPLY:
24       Defendants incorporate their reply in support of Undisputed Material Fact No. 18.
25

26       21.   Wood could choose whatever fueling stops, repair shops, and maintenance
27  shops he wanted.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 110:16-111:13, 149:9-
28  152:5; Stancu Decl., ¶ 3, Ex.  B, Wood's ICOA dated March 31, 2009, ¶¶ 4, 15; Stancu

-32-

Decl., ¶ 4, Ex.  C, Wood's ICOA dated April 2, 2009, ¶¶ 4, 15; Stancu Decl.¶ 5, Ex. D, Wood's ICOA dated April 25, 2014, ¶¶ 4, 15; Stancu Decl., ¶ 6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶¶ 4, 15; Mussig Decl., ¶ 2, Ex. K, Spence Depo., pgs. 65:20-66:16.]

PLAINTIFF'S RESPONSE:

DENIED.  *See* Plaintiff Wood's response to ¶ 18 above.  Further, the citation to the deposition of Murray Spence is incomplete.  Mr. Spence continues at 66:17-67:25, where he acknowledges that the lease requires approval of all expenses related to maintenance and repairs *(see* Lease ¶ 6(c)) and, although he states that IEL doesn't enforce that provision, he states that failure to get approval would be a violation of the contract "in the event of a crash." He also states at 68:1-69:9 that IEL relies on facilities approved by Swift.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 18.

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  Specifically, Plaintiff testified that he purchased fuel at locations that were not recommended by Swift, and had maintenance performed and had his truck repaired at non-Swift facilities.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 110:16-111:13, 149:9-152:5.)  As such, Plaintiff's response is insufficient to create a genuine issue of disputed fact.

Additionally, the requirements under the lease have no bearing on whether Plaintiff was in an independent contractor relationship with Swift while he was an Owner Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  Plaintiff was able to lease from companies other than IEL.  (*See* Stancu Decl., ¶ 8, Ex. G, Wood's Lease Assignment Documents dated March 31, 2009; Stancu Decl., ¶ 9, Ex. H, Wood's Lease Assignment Documents dated April 25, 2014; Stancu Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 4; Stancu Decl., ¶4,

-33-

1   Ex. C, Wood's ICOA dated April 2, 2009, ¶ 4; Stancu Decl., ¶5, Ex. D, Wood's

2   ICOA dated April 25, 2009, ¶ 4; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight

3   Trucking's ICOA dated May 9, 2014, ¶ 4.)  Even if the lease were relevant, Murray

4   Spence repeatedly testified that Paragraph 6(c) in the Lease was not enforced.

5   (Supp. Mussig Decl., ¶3, Ex. Q, Spence Depo., pgs. 66:17-67:15, 71:2-7.)  Spence

6   also testified that IEL "would not terminate the lease based on a violation of 6(c)."

7   (*Id.* at Spence Depo., pg. 70:14-17.)

8

9       22.    Wood visited fueling stops that were not recommended by Swift "three

10  quarters of the time" that he needed fuel.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs.

11  110:16-111:13.]

12    <u>PLAINTIFF'S RESPONSE:</u>

13    DENIED.  *See* Plaintiff Wood's response to ¶ 18 above.  The statement

14    mischaracterizes and is not supported by the testimony cited, which is incomplete.

15    Shortly after the cited testimony, Plaintiff Wood testifies as follows (at 111:14-

16    112:21):

17        Q. And did anybody from Swift criticize your decision to do so?

18        A. There was a time -- I can't remember if it was 2009 or '14.  There was a

19        time when I was told -- well, let me rephrase that.  There was a time when I

20        was told that I should utilize the Swift terminals --

21        Q. Who said that?

22        A. -- for fuel.  I -- it was one of my driver managers at the time.  It -- it could

23        very well have been Chris Drone -- I think was his name — Drown

24        (phonetic) when I was in the Swift terminal and we were sitting at his desk.

25        Q. Did he tell you that there would be consequences if you didn't use

26        the Swift recommended fuel stops?

27        A. Those types of conversations didn't exist at that time.  It was just an

28        unspoke of action that came from out of nowhere.  When you got

-34-

1    punished, you got punished.  No one said anything.  They just came

2    out of nowhere.

3    Q. Okay.  And by that you mean that you would not get offered enough work

4    for what you wanted to work?

5    MS. KROLL: Object to form.

6    THE WITNESS: Part of what you're asking is correct, but it didn't just

7    come in that form.  It came in the form of bogus safety holds and being

8    locked into terminals, not being allowed out of the gate, you know,

9    even though you're supposedly leasing the truck, there's no reason for

10   them to lock you down if that's not company equipment.  There's no

11   reason for them to say you can't take your truck somewhere and go get

12   something to eat.  So the consequences came in different forms.

13   DEFENDANTS' REPLY:

14   Defendants incorporate their reply in support of Undisputed Material Fact

15   No. 18.

16   This Undisputed Material Fact is taken directly from Plaintiff's deposition

17   testimony.  When asked how often he visited fueling stops that were not

18   recommended by Swift, Plaintiff unequivocally testified, "Three-quarters of the

19   time."  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 111:8-13.)  The testimony cited

20   in Plaintiff's response does not dispute this in any way.  Indeed, the testimony

21   acknowledges that Plaintiff never had a conversation with anyone at Swift in which

22   he was told anything to the contrary.  Plaintiff also does not deny his ICOAs with

23   Swift state that he was "not required to purchase . . . any products" from Swift.

24   (Stancu Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 4; Stancu Decl.,

25   ¶4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 4; Stancu Decl., ¶5, Ex. D, Wood's

26   ICOA dated April 25, 2009, ¶ 4; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight

27   Trucking's ICOA dated May 9, 2014, ¶ 4.)  Plaintiff's response is insufficient to

28   create a genuine issue of disputed fact.

1       Furthermore, Plaintiff's claim that delays in being offered loads constituted

2   "discipline" is entirely speculative and erroneous.  Plaintiff's ICOAs make it

3   explicitly clear, and *Plaintiff admits he understood*, that the ICOA "shall not . . . be

4   construed as an agreement by [Swift] to furnish any specific tonnage of freight for

5   transportation by [Plaintiff] at any particular time, or at any particular place."

6   (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 77:5-17; Stancu Decl., ¶3, Ex. B,

7   Wood's ICOA dated March 31, 2009, ¶ 1; Stancu Decl., ¶4, Ex. C, Wood's ICOA

8   dated April 2, 2009, ¶ 1; Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25,

9   2009, ¶ 1; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated

10  May 9, 2014, ¶ 1.)  There are various reasons why an individual might not be

11  offered a new load right when he or she asks for one, including the fact that one

12  simply is not available in his or her area.  (*See* Supp. Mussig Decl., ¶2, Ex. P, Berry

13  Depo., pgs. 35:25-39:10.)  Mere speculation and conjecture are insufficient to create

14  a genuine issue of disputed fact.

15

16      23.     Wood avoided Swift repair shops because he did not like them and thought

17  they did not do good work.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 149:9-152:5.]

18      PLAINTIFF'S RESPONSE:

19      DENIED.  *See* Plaintiff Wood's responses to ¶¶ 18, 21 and 22 above.

20      DEFENDANTS' REPLY:

21      Defendants incorporate their replies in support of Undisputed Material Fact Nos.

22      18, 21, and 22.

23

24      24.     Swift did not require Wood to accept any particular cargo loads offered to

25  him as an Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 77:5-17; Stancu

26  Decl., ¶ 3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 1; Stancu Decl., ¶ 4, Ex. C,

27  Wood's ICOA dated April 2, 2009, ¶ 1; Stancu Decl., ¶ 5, Ex. D, Wood's ICOA dated

28

-36-

1    April 25, 2014, ¶ 1; Stancu Decl., ¶ 6, Ex. E, Wood DBA Starlight Trucking's ICOA dated

2    May 9, 2014, ¶ 1; Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 157:21-158:4.]

3    <u>PLAINTIFF'S RESPONSE:</u>

4    DENIED.  *See* Plaintiff Wood's responses to ¶¶ 11 and 17 above.

5    <u>DEFENDANTS' REPLY:</u>

6    Defendants incorporate their replies in support of Undisputed Material Fact Nos. 11

7    and 17.

8

9        25.    Wood was instructed by a Fleet Manager at Swift that as an Owner-

10   Operator, he would need to acquire his own loads and that it was up to him to develop

11   business for himself.  [Stancu Decl.,¶ 2, Ex. A, Wood Depo., pg. 49:5-22.]

12   <u>PLAINTIFF'S RESPONSE:</u>

13   DENIED.  The statement mischaracterizes and is not supported by the testimony

14   cited, which is incomplete.  In the cited testimony, Plaintiff Wood states that he got

15   in trouble by his Driver Manager for trying to acquire his own loads from Swift's

16   own planners and Customer Service Representatives (not other carriers), that he was

17   forbidden by his Driver Manager to speak with them, and that he was told by his

18   Driver Manager that he had to wait for his Driver Manager to give him loads.  He

19   then goes on to testify, at PW 50:24-51:22, that the Fleet Manager then forbid him

20   from speaking with anyone to get a load.  Finally, the cited testimony says nothing

21   about Plaintiff Wood being instructed to "develop business for himself."

22   <u>DEFENDANTS' REPLY:</u>

23        This Undisputed Material Fact is taken directly from Plaintiff's deposition

24   testimony.  Plaintiff unequivocally testified, "I was verbally told by [Fleet Manager]

25   Ed Freeman in Gary, Indiana, that okay, you're a big man now.  You're an owner-

26   operator.  Go get your own lids – loads."  (Stancu Decl., ¶ 2, Ex. A, Wood Depo.,

27   pg. 49:9-12.)  The testimony Plaintiff cites in his response does not contradict this.

28   The cited testimony simply indicates that there was a procedure to follow for

obtaining loads from Swift, it does not indicate that Plaintiff was precluded from following this procedure in order to obtain more loads from Swift, nor does it indicate that Plaintiff was precluded from obtaining loads from other carriers. Plaintiff's response is insufficient to create a genuine issue of disputed fact.

Additionally, Plaintiff does not deny his ICOAs with Swift state that he was entitled to haul for other carriers as long as he removed any Swift indicia from his truck. (Stancu Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 5(b); Stancu Decl., ¶4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 5(b); Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25, 2009, ¶ 5(b); Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 5(b); *see* Mussig Decl., ¶ 3, Ex. L, Berry Depo., pg. 216:1-25.)  As such, Plaintiff was fully capable of acquiring his own loads from other carriers.

26.   Wood knew he had the ability and authority to decline loads that were offered to him as an Owner-Operator for Swift.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 160:14-162:25; Stancu Decl., ¶ 3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 1; Stancu Decl., ¶ 4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 1; Stancu Decl., ¶ 5, Ex. D, Wood's ICOA dated April 25, 2014, ¶ 1; Stancu Decl., ¶ 6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 1; Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 71:19-72:14.]

PLAINTIFF'S RESPONSE:

DENIED.  *See* Plaintiff Wood's responses to ¶¶ 11 and 17 above.

DEFENDANTS' REPLY:

Defendants incorporate their replies in support of Undisputed Material Fact Nos. 11 and 17.

27.   It was Wood's own personal discretionary decision not to decline loads very often, because he sought to maximize his revenue.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 160:14-161:4,161:24-162:19.]

-38-

PLAINTIFF'S RESPONSE:

DENIED.  *See* Plaintiff Wood's responses to ¶¶ 11 and 17 above.  Further, while Plaintiff Wood admits that he seldom turned down loads because he wanted to get as many miles as he could, he objects to Respondents' characterization of his actions as "discretionary," given the lease payments he was under and the dire consequences if he was placed in default, *see* PW 161:24-162:6, 73:21-74:18, and the punishments meted out by Swift for declining loads, *see* PW 163:19-164:8, 165:19-166:11 (as soon as he turned down loads penalization began).

DEFENDANTS' REPLY:

Defendants incorporate their replies in support of Undisputed Material Fact Nos. 11 and 17.

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  Plaintiff unequivocally testified that as "[a] professional driver, it doesn't really matter where you go, as long as you're rolling because if you're not rolling, you're not making money…. I didn't turn down loads because I've got to keep rolling."  (Stancu Decl., ¶ 2, Ex. A, Woods Depo., pg. 162:11-17.)  As such, Plaintiff's response is insufficient to create a genuine issue of disputed fact.

Additionally, Plaintiff was fully capable of acquiring his own loads from other carriers.   Plaintiff does not deny his ICOAs with Swift state that he was entitled to haul for other carriers as long as he removed any Swift indicia from his truck.  (Stancu Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 5(b); Stancu Decl., ¶4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 5(b); Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25, 2009, ¶ 5(b); Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 5(b); *see* Mussig Decl., ¶ 3, Ex. L, Berry Depo., pg. 216:1-25.)

Furthermore, the requirements under the lease have no bearing on the fact, as Swift and IEL are distinct and separate entities.  (Berry Decl., ¶ 21.)  Plaintiff was able to lease from companies other than IEL.  (*See* Stancu Decl., ¶ 8, Ex. G, Wood's

-39-

1  Lease Assignment Documents dated March 31, 2009; Stancu Decl., ¶ 9, Ex. H,

2  Wood's Lease Assignment Documents dated April 25, 2014; Stancu Decl., ¶3, Ex.

3  B, Wood's ICOA dated March 31, 2009, ¶ 4; Stancu Decl., ¶4, Ex. C, Wood's

4  ICOA dated April 2, 2009, ¶ 4; Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April

5  25, 2009, ¶ 4; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated

6  May 9, 2014, ¶ 4.)  Also, Plaintiff admits that after he defaulted on his lease with

7  IEL, IEL forgave his debt.  (Stancu Decl., ¶2, Ex. M, Wood Depo., pg. 76:4-10.)

8  Finally, Plaintiff's claim that delays in being offered loads constituted

9  "discipline" is entirely speculative and erroneous.  Plaintiff's ICOAs make it

10  explicitly clear, and *Plaintiff admits he understood*, that the ICOA "shall not . . . be

11  construed as an agreement by [Swift] to furnish any specific tonnage of freight for

12  transportation by [Plaintiff] at any particular time, or at any particular place."

13  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 77:5-17; Stancu Decl., ¶3, Ex. B,

14  Wood's ICOA dated March 31, 2009, ¶ 1; Stancu Decl., ¶4, Ex. C, Wood's ICOA

15  dated April 2, 2009, ¶ 1; Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25,

16  2009, ¶ 1; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated

17  May 9, 2014, ¶ 1.)  There are various reasons why an individual might not be

18  offered a new load right when he or she asks for one, including the fact that one

19  simply is not available in his or her area.  (*See* Supp. Mussig Decl., ¶2, Ex. P, Berry

20  Depo., pgs. 35:25-39:10.)  Mere speculation and conjecture are insufficient to create

21  a genuine issue of disputed fact.

22

23  28.    Wood was neither required to wear a uniform, nor to adhere to any rules

24  regarding his attire while he was an Owner-Operator with Swift. [Stancu Decl., ¶ 2, Ex. A,

25  Wood Depo., pg. 183:1-5.]

26  PLAINTIFF'S RESPONSE:

27  DENIED.  The statement mischaracterizes and is not supported by the testimony

28  cited.  The question asked related only to uniforms, not "any rules regarding his

-40-

1   attire."  Further, while Plaintiff Wood admits that he was not required to wear a

2   uniform, he testifies that he was required to look neat and appropriate.  The Driver

3   Manual, Ex. 14 at 5060, and the Contracted Driver Manual, Ex. 12 at 1685 both

4   require drivers, including lease operators, to [a]lways wear clean and appropriate

5   clothing.  Jeans and T-shirts are acceptable but button down shirts are preferred"

6   and "no clothing should be torn or have any offending language on it." PSOF ¶ 101

7   (d).  Additionally, as stated above, by contract, Swift had exclusive control over the

8   truck and thereby had the power and authority to direct drivers to wear uniforms.

9   DEFENDANTS' REPLY:

10          This Undisputed Material Fact is taken directly from Plaintiff's deposition

11   testimony.  When asked, "Were you required to wear a uniform as an owner-

12   operator?," Plaintiff unequivocally testified, "With Swift, no."  (Stancu Decl., ¶ 2,

13   Ex. A, Wood Depo., pg. 183:1-5.)  Plaintiff cannot manufacture an issue of disputed

14   fact by contradicting his own deposition testimony.

15          Additionally, Plaintiff admits that he was not required to go through any

16   training when he became an Owner-Operator and, as such, was not required to be

17   familiar with any Swift rules concerning attire.  (*Id.* at Wood Depo., pg. 21:12-20.)

18          Furthermore, Plaintiff admits he never received any policy documents from

19   Swift as an Owner Operator (such as a Driver Manual, Contracted Driver Manual,

20   Handshake-to-Horsepower manual, or any Pre-CABS Training manuals).  (*Id.*)

21   Plaintiff cannot argue that he was bound by documents he never received.

22

23   29.     Wood was not required to communicate, check in, or interact with anyone

24   from Swift while he was carrying out his work. [Stancu Decl., ¶ 2, Ex. A, Wood Depo.,

25   pgs. 180:8-24, 182:11-17.]

26   PLAINTIFF'S RESPONSE:

27   DENIED.  The statement mischaracterizes and is not supported by the testimony

28   cited.  The cited testimony at 180:8-24 merely says that he was not required to

-41-

1   check in with his Driver Manager during the delivery process with any particular

2   degree of frequency.  The testimony at 182:11-17 merely says that he wasn't

3   required to check in with his Driver Manager multiple times a day.  Further,

4   Plaintiff Wood testified that, when he deviated from the route Swift gave him, his

5   Driver Manager would tell him that he needed "to follow the route on the

6   navigation system because that's the route that they assigned [him] to take.  PW

7   106: 23-107:2.  He also testified that his Driver Manager would call him on the

8   phone when he turned down loads.  PW 163:19-164:21.  He also testified that he

9   communicated with his Driver Manager "several times a day."  PW 181:23-182:8.

10  *See also* PSOF ¶ 101(j) (report to Driver Manager every morning along with

11  Qualcomm communications), ¶ 146 (daily check-in calls and Qualcomm

12  communications), ¶ 149 (drivers expected to contact Driver Manager using

13  Qualcomm if they experience delivery delays), ¶ 152 (Swift monitored drivers'

14  trucks' location and expected arrival time), ¶ 155 (drivers required to notify Driver

15  Manager upon arrival at delivery location and upon drop off or unloading of load).

16  DEFENDANTS' REPLY:

17      This Undisputed Material Fact is taken directly from Plaintiff's deposition

18  testimony.  At deposition, Plaintiff unequivocally stated, "It wasn't required that I

19  check in."  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 182:14-15; *see* 180:8-24.)

20  Plaintiff admits that nobody from Swift met Plaintiff at pick-up or drop-off sites to

21  check-in or supervise him.  (*Id.* at Wood Depo., pgs. 180:25-181:22.)  Plaintiff also

22  admits that any communications between Plaintiff and Swift were typically initiated

23  by Plaintiff.  (*Id.* at Wood Depo., pgs. 182:9-10, 182:11-17.)  Plaintiff's response is

24  insufficient to create a genuine issue of disputed fact.

25      Additionally, Plaintiff's response cites testimony regarding conversations

26  Plaintiff allegedly had with Swift personnel.  However, the testimony does not

27  indicate in any way that Plaintiff was ***required*** to communicate, check in, or interact

28  with anyone from Swift while he was carrying out his work.  The testimony simply

-42-

1   indicates that he did communicate with Swift.  As noted above, Plaintiff admits that

2   any communications between him and Swift were typically initiated by Plaintiff.

3   (*Id.* at Wood Depo., pgs. 182:9-10, 182:11-17.)

4       Finally, no one from Swift monitors Owner-Operators' location or tracks

5   their progress towards their destination.  (Berry Decl., ¶ 7.)  Instead, it is the

6   responsibility of the Owner-Operators (not the company) to let Swift know if they

7   are unable to transport a load within a certain timeframe or if there are any

8   significant updates regarding the transportation.  (*Id.*)  Any claim to the contrary

9   fails.

10

11   30.   Nobody from Swift met with Wood at pick-up or drop-off sites to check in or

12   supervise him.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 180:25-181:22.]

13   PLAINTIFF'S RESPONSE:

14   ADMITTED that Swift employees were not physically present at shippers' and

15   receivers' locations, but lease drivers and company drivers were required to send

16   macro messages through Qualcomm devices when they arrived at shippers, when

17   they left shippers, when they arrived at receivers, and when they left receivers.

18   PSOF ¶¶ 146, 148, 149, 150 (monitoring via Omni-tracs/Sensor-tracs), ¶ 156.  *See*

19   *also* Plaintiff Wood's response to ¶ 29 above.

20   DEFENDANTS' REPLY:

21   Defendants incorporate their reply in support of Undisputed Material Fact

22   No. 29.

23

24   31.   Any communications between Wood and Swift were typically initiated by

25   Wood.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 182:9-10, 182:11-17.]

26   PLAINTIFF'S RESPONSE:

27   ADMITTED that Plaintiff Wood testified that most of the time, communications

28   with his Driver Manager were initiated by him.  However, that Swift initiated

-43-

1   communications with him is testified throughout the deposition --- *see e.g.*  Plaintiff

2   Wood's response to ¶ 29 above.  Further, Plaintiff Wood testified that Swift did not

3   comment on the way he did his work if he did it the way they wanted him to, but as

4   soon as he disagreed with something or deviated from their way, he would be

5   penalized and reprimanded.  *See* PW 121:21-122:2, Plaintiff Wood's response to

6   ¶ 18 above.

7   DEFENDANTS' REPLY:

8          Defendants incorporate their replies in support of Undisputed Material Fact

9   Nos. 18 and 29.  Plaintiff admits that he would typically initiate any

10  communications with Swift.  Thus, Plaintiff does not actually dispute Undisputed

11  Material Fact No. 30.

12         Furthermore, Plaintiff was never "penalized or reprimanded" by Swift while

13  he was an Owner-Operator.  Plaintiff's claim that delays in being offered loads

14  constituted "discipline" or "punishment" is entirely speculative and erroneous.

15  Plaintiff's ICOAs make it explicitly clear, and *Plaintiff admits he understood*, that

16  the ICOA "shall not . . . be construed as an agreement by [Swift] to furnish any

17  specific tonnage of freight for transportation by [Plaintiff] at any particular time, or

18  at any particular place." (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 77:5-17;

19  Stancu Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 1; Stancu Decl., ¶4,

20  Ex. C, Wood's ICOA dated April 2, 2009, ¶ 1; Stancu Decl., ¶5, Ex. D, Wood's

21  ICOA dated April 25, 2009, ¶ 1; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight

22  Trucking's ICOA dated May 9, 2014, ¶ 1.)  There are various reasons why an

23  individual might not be offered a new load right when he or she asks for one,

24  including the fact that one simply is not available in his or her area.  (*See* Supp.

25  Mussig Decl., ¶2, Ex. P, Berry Depo., pgs. 35:25-39:10.)  Mere speculation and

26  conjecture are insufficient to create a genuine issue of disputed fact.

27

28

1      32.     While Wood did have a "Driver Manager" (or point of contact at his home
2  terminal), he had the authority to fire his Driver Manager and indeed did fire his Driver
3  Manager because they did not see eye to eye.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg.
4  65:15-22.]

5      PLAINTIFF'S RESPONSE:

6      DENIED.  The statement mischaracterizes and is not supported by the cited
7      testimony, which is incomplete.  The complete testimony at PW 65:17-67:1 says
8      that Plaintiff Wood was told at orientation that both company drivers and lease
9      operators could fire their Driver Managers.  He further testifies that as soon as he
10     fired his Driver Manager, Swift told him they were taking his truck back and he was
11     eventually forced to leave.

12     DEFENDANTS' REPLY:

13          This Undisputed Material Fact is taken directly from Plaintiff's deposition
14     testimony.  Plaintiff unequivocally testified, "I exercised that route – that – that
15     right.  And I said, Ray, you're fired."  (Stancu Decl., ¶ 2, Ex. A, Wood Depo.,
16     pg. 65:21-22.)  As such, Plaintiff's response is insufficient to create a genuine issue
17     of disputed fact.

18          Whether IEL canceled its Lease Agreement with Plaintiff has no bearing on
19     this Undisputed Material Fact, as it is undisputed that Swift and IEL are distinct and
20     separate entities.  (Berry Decl., ¶ 21.)  Plaintiff was able to lease from companies
21     other than IEL.  (*See* Stancu Decl., ¶ 8, Ex. G, Wood's Lease Assignment
22     Documents dated March 31, 2009; Stancu Decl., ¶ 9, Ex. H, Wood's Lease
23     Assignment Documents dated April 25, 2014; Stancu Decl., ¶3, Ex. B, Wood's
24     ICOA dated March 31, 2009, ¶ 4; Stancu Decl., ¶4, Ex. C, Wood's ICOA dated
25     April 2, 2009, ¶ 4; Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25, 2009, ¶
26     4; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9,
27     2014, ¶ 4.)  Additionally, Plaintiff testified that when IEL canceled the lease in
28     2009, he was in debt to IEL.  (Supp. Stancu Decl., ¶2, Ex. M, Wood Depo.,

pg. 74:14-18; Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 75:2-10.)  There is absolutely no evidence that the cancellation of the lease had anything to do with the fact that Plaintiff fired his driver manager.

33.    Wood was aware he could work with other drivers to form a driving "team" if he wanted while he was an Owner-Operator for Swift.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 97:2-5.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  Drivers could request permission from Swift to drive as a team.  No driver could be part of a "driver team" unless Swift approved both members of the team to drive for Swift and approve both members to drive as a team.  PSOF ¶¶ 174-178.  The cited testimony simply says that he understood that team driving was "permitted."

DEFENDANTS' REPLY:

Plaintiff's response contradicts his sworn deposition testimony.  At deposition, Plaintiff expressly admitted that he knew that he could drive as a team.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 97:2-5.)  Plaintiff cannot create a disputed issue of fact by contradicting his own clear deposition testimony under oath.

34.    Wood chose not to drive in a team, based purely on his own personal preference.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 97:2-8.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  Drivers could request permission to drive as a team.  No driver could be part of a "driver team" unless Swift approved both members of the team to drive for Swift and approve both members to drive as a team.  PSOF ¶¶ 174-178.  The

testimony cited says that Plaintiff Wood chose not to drive as a team, however, there is no evidence that Plaintiff Wood would have been approved to drive as a team by Swift had he requested to.

DEFENDANTS' REPLY:

Plaintiff admits that he chose not to drive as a team.  As such, Plaintiff does not actually dispute this Undisputed Material Fact.

35.     Wood knew he could also assign someone of his choosing to drive in his place while he was an Owner-Operator with Swift.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 125:14-18.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  The cited testimony says that Plaintiff Wood was aware he could have somebody drive his truck in his place "[i]f they were Swift-approved."  Plaintiff Wood's understanding is consistent with Swift's contract and lease.  Anyone hired by lease operators had to meet the "rules, policies and protocols" of Swift.  Contract (Doc. 747-3) at ¶ 7A.  Swift also had authority to bar any of a lease operators' employees which it deemed unqualified. Contract (Doc. 747-3) at ¶ 7D.  The Lease also prohibited anyone but the lease operator from driving the truck unless the lease operator became "ill, disabled, or otherwise unable to drive," in which case, he or she could request permission from IEL to use a substitute driver, which IEL could deny. PSOF ¶¶ 174-178.

DEFENDANTS' REPLY:

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  Plaintiff admitted that he could assign somebody of his choosing to drive in his place.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 125:14-18.)  As such, Plaintiff's response is insufficient to create a genuine issue of disputed fact.

1        Additionally, the evidence clearly establishes that Plaintiff had the ability to

2  hire drivers to work for him while he was an Owner-Operator, as long as such

3  individuals met DOT regulations and other state and federal legal requirements (in

4  this regard, Plaintiff was subject to the same hiring limitations as Swift).  (Stancu

5  Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 7; Stancu Decl., ¶4, Ex. C,

6  Wood's ICOA dated April 2, 2009, ¶ 7; Stancu Decl., ¶5, Ex. D, Wood's ICOA

7  dated April 25, 2009, ¶ 7; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's

8  ICOA dated May 9, 2014, ¶ 7.)  In practice, Swift exerted little to no oversight

9  regarding the employees that Owner-Operators chose to hire, and rarely took any

10  action regarding an Owner-Operator's decision to hire a particular employee.

11  (Berry Decl., ¶ 10.)  Swift does not set any "standards" that such employees have to

12  meet.  (*Id.*)

13        Plaintiff attempts to distract the Court by arguing that his lease with IEL

14  precluded him from assigning someone to drive in his place.  This argument fails.

15  Plaintiff's reliance on the lease is misplaced.  The lease has no bearing on whether

16  Plaintiff was in an independent contractor relationship with Swift while he was an

17  Owner-Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶

18  21.)  Moreover, the lease did not preclude him from assigning someone to drive in

19  his place.  Paragraph 6(a) of the lease specifically states that he may "substitute a

20  competent, licensed driver who will be under his/her control and direction."

21

22  36.    Wood could have a passenger ride with him while he performed his work as

23  an Owner-Operator with Swift. [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 125:19-

24  126:5.]

25  PLAINTIFF'S RESPONSE:

26  DENIED.  The cited testimony, as well as PW 129:7-17, says that the policy

27  regarding passengers was the same for both company drivers and lease operators.

28  Plaintiff Wood also testifies that passengers were subject to Swift's approval.  *See*

-48-

PW 126:18-127:22.  Drivers had to get written authorization from Swift or IEL to have passengers.  Swift and IEL also imposed other restrictions on having passengers.  *See* PSOF ¶ 101(c).  Swift PRE-CABS Training (Pl. Ex. 11, p. 15) explains that Swift requires authorization for pets and passengers, p. 15 (Bates DEF003002).

DEFENDANTS' REPLY:

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  Specifically, Plaintiff testified that he knew it was his right as an Owner-Operator to have a passenger and that he sometimes rode with a passenger while he hauled freight as an Owner-Operator.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 125:19-126:5.)  Plaintiff cannot create an issue of disputed fact by contradicting his own deposition testimony.

It is irrelevant whether employee drivers are allowed to have passengers.  Swift's policies applicable to employee drivers have no bearing on whether Plaintiff was properly classified as an independent contractor while he was an Owner-Operator.

Finally, Plaintiff admits he never received any policy documents from Swift as an Owner-Operator (including any Pre-CABS Training manuals).  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 21:12-20.)  Plaintiff cannot argue that he was bound by documents he never received.

37.    Wood could use his truck to perform work for other carriers, so long as he removed any Swift indicia from his truck.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 85:22-86:9; Stancu Decl., ¶ 3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 5(b); Stancu Decl., ¶ 4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 5(b); Stancu Decl., ¶ 5, Ex. D, Wood's ICOA dated April 25, 2014, ¶ 5(b); Stancu Decl., ¶ 6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 5(b); Mussig Decl., ¶ 3, Ex. L, Berry Depo., pg. 216:1-25.]

<u>PLAINTIFF'S RESPONSE:</u>

DENIED.  While the contract makes this statement, the lease says exactly the opposite.  *See* PSOF ¶¶ 169-171 (ICOA says one thing, but Lease restricts use of truck to Swift only).  Further, while Plaintiff Wood agrees that that is what the contract says, he then says "it wasn't a fact."  He continues, "They wouldn't allow it to happen.  If you even talked about something like that, boom, your truck's gone.  They take it.  They repo it.  Somebody comes out in the middle of the night and just — it's disappeared."  PW 85:22-86:15.

<u>DEFENDANTS' REPLY:</u>

Plaintiff admits his ICOA with Swift states that he was entitled to haul for other carriers as long as he removed any Swift indicia from his truck.  Plaintiff also admits that he received a letter stating that he could use his truck and "go run somewhere else."  (Supp. Stancu Decl., ¶2, Ex. M, Wood Depo., pg. 87:5-10.)  Plaintiff's claim that someone would "come out in the middle of the night" and take his truck if he "even talked about" driving for another company is entirely speculative and erroneous.  Speculation and conjecture are insufficient to create a genuine dispute of material fact.  Plaintiff had a clear contractual right to haul for other carriers.  (MussigDecl., ¶ 3, Ex. L, Berry Depo., pg. 216:1-25; Stancu Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 5(b); Stancu Decl., ¶4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 5(b); Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25, 2009, ¶ 5(b); Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 5(b).)

Also, Plaintiff's reliance on the lease is misplaced.  The lease has no bearing on whether Plaintiff was in an independent contractor relationship with Swift while he was an Owner-Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  In any event, the evidence establishes that IEL never enforced any purported contract language limiting the ability of Owner-Operators to drive for carriers other than Swift, as it leased to individuals with no affiliation with Swift

-50-

1  whatsoever.  (Supp. Mussig Decl., ¶3, Ex. Q, Spence Depo., pgs. 59:5-60:17.)

2  Plaintiff offers no evidence the contract provision was ever enforced against him.

3          Notably, Plaintiff fails to identify the purported individual(s) who allegedly

4  violated Swift company policy and told Plaintiff that he was not permitted to drive

5  for other carriers, so it is impossible for Swift to submit testimony from any specific

6  person refuting Plaintiff's self-serving allegations.

7

8          38.     Wood was free to use his truck for personal reasons as he saw fit while he

9  was an Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 182:19-24.]

10  PLAINTIFF'S RESPONSE:

11  DENIED.  Later in the deposition, Plaintiff Wood clarifies the cited testimony by

12  stating that both company drivers and lease operators could use their trucks for

13  personal reasons, however, both the lease and contract restricted use of lease

14  operators' trucks to business purposes only.  *See* PSOF ¶ 168.

15  DEFENDANTS' REPLY:

16          Plaintiff admits the cited deposition testimony states that Plaintiff was able to

17  use his truck for personal reasons.  As such, Plaintiff's response is insufficient to

18  create a genuine issue of disputed fact.

19          Additionally, it is irrelevant whether employee drivers are allowed to use

20  their trucks for personal use.  Swift's policies applicable to employee drivers have

21  no bearing on whether Plaintiff was properly classified as an independent contractor

22  while he was an Owner-Operator.  In any event, employee drivers are **not** allowed

23  to use their trucks for personal use like Owner-Operators.  (Supp. Mussig Decl., ¶2,

24  Ex. P, Berry Depo., pg. 119:15-22 ("Q: …is an employee driver allowed to use that

25  truck for personal errands, to run to Walmart or to drive home from a terminal if he

26  lives near the terminal? A: The short answer is no.").)

27

28

39.     Wood invested thousands of dollars into his truck while he was an Owner-Operator.  [Stancu Decl., ¶ 8, Ex. G, Wood's Lease Assignment Documents dated March 31, 2009; Stancu Decl., ¶ 9, Ex. H, Wood's Lease Assignment Documents dated April 25, 2014.]

PLAINTIFF'S RESPONSE:

DENIED.  The lease shows that Plaintiff Wood put $0 down for his trucks.  Lease Assignments (Does. 754-8 and 754-9) at p. 3.  *See also* PW 139:8-18 (took over lease so he would not have to put money down).  Further, all lease payments made by Plaintiff Wood were a pass through from Swift -- Swift paid a higher mileage rate and then deducted the lease cost from that higher mileage rate.  The higher mileage rate was designed to ensure that if a lease operator drove the same expected miles as a company driver, he would cover his lease and expenses.  PSOF ¶¶ 16, 91, 115-116, 231.  Payment of expenses is not an "investment" in a truck.  Plaintiff Wood acquired no equity in his truck thereby.  PSOF ¶ 49 (no equity in truck by virtue of lease payments).  *See also* ¶¶ 82-91 (financing of entire leasing process), ¶¶ 207, 210-227, 231 (Swift financing, loans, and advances for operating costs).

DEFENDANTS' REPLY:

Plaintiff does not dispute that that he entered into a lease agreement with IEL.  (Stancu Decl., ¶ 8, Ex. G, Wood's Lease Assignment Documents dated March 31, 2009; Stancu Decl., ¶ 9, Ex. H, Wood's Lease Assignment Documents dated April 25, 2014.)  Pursuant to Schedule A of the lease, Plaintiff paid $616 per week for the first 27 weeks and then $516 per week for the remaining 42 weeks during his time as an Owner-Operator from March or early April of 2009 to July of 2009 and then again from April 25, 2014 to August  27, 2014 – which totaled thousands of dollars.  Indeed Plaintiff admits that he never failed to make a payment to IEL.  (Supp. Stancu Decl., ¶2, Ex. M, Wood Depo., pg. 67:6-25.)  As such, Plaintiff admits he invested thousands of dollars into his truck, and his response is insufficient to create a genuine issue of disputed fact.

-52-

1    Furthermore, the fact that Swift deducted lease payments from Plaintiff's

2    settlements has no bearing on this Undisputed Material Fact.  Plaintiff made his

3    lease payments with his own earnings as an Owner-Operator.  Also, Plaintiff's

4    claim that he did not have any equity interest in the truck he leased from IEL is

5    disingenuous.  Similar to a car lease, Plaintiff had the option to purchase the truck

6    for an agreed-upon residual value upon the expiration of the lease.  (Supp. Mussig

7    Decl., ¶3, Ex. Q, Spence Depo. pgs. 80:19-82:4.)  The lease contained a provision

8    that governed Plaintiff's possible purchase of the truck from IEL following the

9    expiration of the lease term.  (Stancu Decl., ¶ 8, Ex. G, Wood's Lease Assignment

10   Documents dated March 31, 2009; Stancu Decl., ¶ 9, Ex. H, Wood's Lease

11   Assignment Documents dated April 25, 2014.)

12   Finally, Plaintiff's reliance on the terms of his lease with IEL is misplaced.

13   The lease has no bearing on whether Plaintiff was in an independent contractor

14   relationship with Swift while he was an Owner Operator, as IEL and Swift are

15   distinct and separate entities.  (Berry Decl., ¶ 21.)  Plaintiff cannot dispute that he

16   was able to lease his truck from companies other than IEL.  (*See* Stancu Decl., ¶ 3,

17   Ex. B, Wood's ICOA dated March 31, 2009, ¶ 4; Stancu Decl., ¶ 4, Ex. C, Wood's

18   ICOA dated April 2, 2009, ¶ 4; Stancu Decl., ¶ 5, Ex. D, Wood's ICOA dated April

19   25, 2014, ¶ 4; Stancu Decl., ¶ 6, Ex. E, Wood DBA Starlight Trucking's ICOA

20   dated May 9, 2014, ¶ 4.)

21   Lastly, Swift does not have mileage expectations for Owner-Operators,

22   including Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators are free to drive as many

23   or as few miles as they considered optimal for their business.  (Berry Decl., ¶ 13.)

24   How Swift determined Plaintiff's mileage rate has no bearing on whether Swift

25   exerted "control" over Plaintiff.  If Plaintiff was unhappy with the mileage rate, he

26   could have driven for another carrier.

27

28

40.     Wood was able to obtain his truck from any source.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 81:6-22, 140:2-7; Stancu Decl., ¶ 3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 4; Stancu Decl., ¶ 4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 4; Stancu Decl., ¶ 5, Ex. D, Wood's ICOA dated April 25, 2014, ¶ 4; Stancu Decl., ¶ 6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 4.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the testimony cited, which is incomplete.  At PW 79:6-80:16, Plaintiff Wood states that had to lease his truck from IEL.  He explains at PW 80:17-81:15 that he did not have the money or credit to lease from another entity.  He further testifies that if he had had money, he could lease a truck from IEL, but not another entity.  PW 139:21-25.  *See also* PSOF ¶ 17, 44 (lease operators not given option to lease truck from anyone other than IEL).

DEFENDANTS' REPLY:

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  Specifically, when asked, "could you have gotten a truck from an entity that was not IEL?," Plaintiff testified, "Yes, I could have."  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 81:6-15.)  When asked again, "Could you also purchase a truck from another entity and use it driving with Swift?," Plaintiff testified, "I suppose I could have, but I had no desire to."  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., 140:2-7.)  Even the testimony cited by Plaintiff above supports this Undisputed Material Fact – in the cited testimony, he states "you could buy a truck – you know, go to an outside agency."  (Supp. Stancu Decl., ¶2, Ex. M, Wood Depo., 80:17-21.)  As such, Plaintiff's response is insufficient to create a genuine issue of disputed fact.

At no time did Plaintiff testify that Swift required him to lease a truck from IEL to work as an Owner-Operator for Swift.  Rather, in the testimony cited by

1   Plaintiff above, Plaintiff discusses the cash flow and credit issues he had prior to

2   being an Owner-Operator, which has no bearing on this Undisputed Material Fact.

3

4   41.     Wood chose to lease the truck from IEL because he had "no desire to" lease

5   from any other company.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 81:6-22, 140:2-7.]

6   PLAINTIFF'S RESPONSE:

7   DENIED.  *See* Plaintiff Wood's response to ¶ 40 above.  Further, Plaintiff Wood

8   testified that he opted to take over another Swift driver's lease the second time

9   because he was told it was the only way he could get a truck because he wouldn't

10   have to put money down.  PW 138:17-139:18.

11   DEFENDANTS' REPLY:

12   Defendants incorporate their reply in support of Undisputed Material Fact

13   No. 40.

14   This Undisputed Material Fact is taken directly from Plaintiff's deposition

15   testimony.  When asked, "Could you also purchase a truck from another entity and

16   use it driving with Swift?," Plaintiff unequivocally testified, "I suppose I could

17   have, but I had no desire to."  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 140:2-7.)

18   Indeed, in Plaintiff's response, Plaintiff admits that he voluntarily chose to take over

19   another Swift driver's lease.  Plaintiff's response is insufficient to create a genuine

20   issue of disputed fact.

21

22   42.     Wood opted to take over another trucker's lease because he knew the

23   equipment and its prior driver.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 21:22-22:19.]

24   PLAINTIFF'S RESPONSE:

25   DENIED.  *See* Plaintiff Wood's responses to ¶¶ 40 and 41 above.

26   DEFENDANTS' REPLY:

27   Defendants incorporate their replies in support of Undisputed Material Fact Nos. 40

28   and 41.

-55-

1

2      43.    Wood was responsible for the repair, maintenance, and upkeep of his truck

3  as an Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 142:6-13, 149:9-

4  152:5; Stancu Decl., ¶ 10, Ex. I, Wood's New Business Partner Independence Contractor

5  Checklist dated March 31, 2009, ¶ 3; Stancu Decl., ¶ 11, Ex. J, Wood's New Business

6  Partner Independence Contractor Checklist dated April 25, 2014, ¶ 3.]

7           PLAINTIFF'S RESPONSE:

8           DENIED.  *See* Plaintiff Wood's responses to ¶ 18 and 21 above, and ¶ 45 below.

9           DEFENDANTS' REPLY:

10          Defendants incorporate their replies in support of Undisputed Material Fact Nos.

11          18, 21, and 45.

12

13     44.    Wood paid for his own insurance as an Owner-Operator.  [Stancu Decl., ¶ 2,

14  Ex. A, Wood Depo., pg. 144:2-15; Stancu Decl., ¶ 10, Ex. I, Wood's New Business

15  Partner Independence Contractor Checklist dated March 31, 2009, ¶¶ 2, 4; Stancu Decl.,

16  ¶ 11, Ex. J, Wood's New Business Partner Independence Contractor Checklist dated April

17  25, 2014, ¶¶ 2, 4.]

18          PLAINTIFF'S RESPONSE:

19          DENIED.  *See* Plaintiff Wood's responses to ¶ 10 above, and ¶ 45 below.

20          DEFENDANTS' REPLY:

21          Defendants incorporate their replies in support of Undisputed Material Fact Nos. 10

22          and 45.

23

24     45.    Indeed, Swift did not provide Wood with anything he needed to perform his

25  work as an Owner-Operator free of charge, including fuel.  [Stancu Decl., ¶ 2, Ex. A,

26  Wood Depo., pgs. 142:6-13, 144:2-21, 149:9-152:5, 158:19-160:13; Stancu Decl., ¶ 8,

27  Ex. G, Wood's Lease Assignment Documents dated March 31, 2009; Stancu Decl., ¶ 9,

28  Ex. H, Wood's Lease Assignment Documents dated April 25, 2014; Stancu Decl., ¶ 10,

-56-

Ex. I, Wood's New Business Partner Independence Contractor Checklist dated March 31, 2009, ¶ 2; Stancu Decl., ¶ 11, Ex. J, Wood's New Business Partner Independence Contractor Checklist dated April 25, 2014, ¶¶ 2-5; Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 57:15- 58:10.]

PLAINTIFF'S RESPONSE:

DENIED.  Swift provided lease operators with exactly the same equipment and tools it provided to employee drivers, it just did so on credit, rather than outright. *See* PSOF ¶ 83 (three of the five Plaintiffs paid no down payment for their trucks); ¶¶ 82-91 (everything a lease operator needed, insurance, taxes, bond, lease payments, was financed on Swift's credit with no financial outlay by the Plaintiffs at all); ¶¶ 207-237 (by virtue of fuel cards, weekly advances and other credit offered by Swift, lease operators could continue to drive week after week without any financial outlay at all as long as Swift offered, and they drove, sufficient miles each week).  The difference between the two was simply an accounting scheme.  Swift structured this credit/deduction scheme so that it did not require any more investment on the part of the lease operator than Swift's employee drivers made. *See also* Plaintiff Wood's responses to ¶¶ 10, 12-14 above.

The quote from Mr. Berry is incomplete and should continue through 62:4.  Mr. Berry is talking about calculating costs to Swift and through 58:10, he says they don't know what lease operators pay for operating expenses, but then he continues that they know what they pay in mileage and that lease operator trucks cost Swift less than company trucks.

DEFENDANTS' REPLY:

Defendants incorporate their replies in support of Undisputed Material Fact Nos. 10 and 12-14.

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  When asked, "Was there anything that Swift provided to you free of charge when you were an owner-operator?," Plaintiff testified, "Never."  (Stancu

-57-

Decl., ¶ 2, Ex. A, Wood Depo., pg. 158:7-10.)  Plaintiff admitted that he paid for all his operating expenses.  (*Id.* at Wood Depo., pg. 144:2-15 (paid for his insurance), 144:16-21 (Plaintiff paid for his fuel), 149:9-152:5 (paid for his maintenance), 158:19-160:13 (paid for all expenses to run his business).)  When asked if he understood that "as an independent contractor, [he was] responsible for the repairs, maintenance, and upkeep of [his] equipment?," Plaintiff responded, "Yes." (*Id.* at Wood Depo., pg. 142:6-13.)  Additionally, Plaintiff admits that Swift did not finance his fuel, tolls, or other expenses.  Swift may have deducted money from Plaintiff's account and made payments on behalf of Plaintiff, but this was simply a pass-through done as a convenience to Plaintiff.  Plaintiff admits he paid for these expenses himself out of his earnings as an Owner-Operator.  Finally, Plaintiff does not deny his ICOAs with Swift state that he was solely responsible for providing the equipment and the labor necessary to perform all work under the ICOAs.  (Stancu Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 1; Stancu Decl., ¶4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 1; Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25, 2009, ¶ 1; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 1.)  For all these reasons, Plaintiff's response is insufficient to create a genuine issue of disputed fact.

Lastly, whether Swift provided equipment and tools to its employee drivers has no bearing on whether Plaintiff was properly classified as an independent contractor when he was an Owner-Operator.

46.    Wood could hire drivers, driver helpers, and laborers to work for him as an Owner-Operator, as long as they met state and federal legal requirements, such as Department of Transportation regulations.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 93:2-94:24; Stancu Decl., ¶ 3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 7; Stancu Decl., ¶ 4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 7; Stancu Decl., ¶ 5, Ex. D,

Wood's ICOA dated April 25, 2014, ¶ 7; Stancu Decl., ¶ 6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 7.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  The cited testimony says that Plaintiff Wood understood that anyone he hired "had to be Swift approved."  Plaintiff Wood's understanding is consistent with Swift's contract and lease.  Anyone hired by lease operators had to meet the "rules, policies and protocols" of Swift.  Contract (Doc. 747-3) at ¶ 7A.  Swift also had authority to bar any of a lease operators' employees which it deemed unqualified. Contract (Doc. 747-3) at ¶ 7D.  The Lease also prohibited anyone but the lease operator from driving the truck unless the lease operator became "ill, disabled, or otherwise unable to drive," in which case, he or she could request permission from IEL to use a substitute driver, which IEL could deny.  PSOF ¶¶ 174-178.

DEFENDANTS' REPLY:

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  Specifically, Plaintiff admitted that he could hire drivers, driver helpers, and laborers to work for him.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 93:2-94:24.)  Plaintiff also admits his ICOAs state in Paragraph 7 that he could hire employees or laborers.  Plaintiff cannot create a disputed fact by contradicting his own deposition testimony and/or the ICOA he admittedly signed.

The evidence clearly establishes that Plaintiff had the ability to hire drivers and driver helpers to work for him while he was an Owner-Operator, as long as such individuals met DOT regulations and other state and federal legal requirements (in this regard, Plaintiff was subject to the same hiring limitations as Swift). (Stancu Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 7; Stancu Decl., ¶4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 7; Wood's ICOA dated April 25, 2014, ¶ 7; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 7.)  In practice, Swift exerted little to no oversight regarding the

-59-

1   employees that Owner-Operators chose to hire, and rarely took any action regarding

2   an Owner-Operator's decision to hire a particular employee.  (Berry Decl., ¶ 10.)

3   Swift does not set any "standards" that such employees have to meet.  (*Id.*)

4        Also, Plaintiff's reliance on his lease with IEL is misplaced.  The

5   requirements under the lease have no bearing on whether Plaintiff was an

6   independent contractor relationship with Swift while he was an Owner-Operator, as

7   Swift and IEL are distinct and separate entities.  (Berry Decl., ¶ 21.)  Plaintiff was

8   able to lease from companies other than IEL.  *(See* Stancu Decl., ¶3, Ex. B, Wood's

9   ICOA dated March 31, 2009, ¶ 4; Stancu Decl., ¶4, Ex. C, Wood's ICOA dated

10  April 2, 2009, ¶ 4; Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25, 2009, ¶

11  4; Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9,

12  2014, ¶ 4.)

13

14  47.      If Wood hired employees, he would have had to pay his own employees as

15  an Owner-Operator — Swift would not have done so. [Stancu Decl., ¶ 2, Ex. A, Wood

16  Depo., pgs. 93:2-94:24; Stancu Decl., ¶ 3, Ex. B, Wood's ICOA dated March 31, 2009,

17  ¶ 7; Stancu Decl., ¶ 4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 7; Stancu Decl., ¶ 5,

18  Ex. D, Wood's ICOA dated April 25, 2014, ¶ 7; Stancu Decl., ¶ 6, Ex. E, Wood DBA

19  Starlight Trucking's ICOA dated May 9, 2014, ¶ 7.]

20       PLAINTIFF'S RESPONSE:

21  DENIED.  Swift would pay for non-driving workers under the provisions of

22  Schedule D of the contract.  *See* PSOF ¶ 184.  Further, Wood never hired any

23  employees.

24  DEFENDANTS' REPLY:

25       This Undisputed Material Fact is taken directly from Plaintiff's deposition

26  testimony.  When asked, "Did you understand that you hired somebody to work for

27  you as a driver or laborer or driver helper when you were an owner-operator you

28  would have to pay those people and Swift would not pay those people for you?,"

Plaintiff unequivocally testified, "Yes." (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 94:7-13.) Additionally, Plaintiff cannot deny that his ICOAs with Swift state that if he hired employees of his own, he was required to pay them on his own. (Stancu Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 7(E); Stancu Decl., ¶4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 7(E); Stancu Decl., ¶5, Ex. D, Wood's ICOA dated April 25, 2009, ¶ 7(E); Stancu Decl., ¶6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 7(E).) Plaintiff cannot create a disputed fact by contradicting his own deposition testimony and/or the ICOA he admittedly signed.

48. Wood studied business management in college and wanted to develop his business, Starlight Trucking, in partnership with Swift. [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 10:15-11:22, 174:7-13, 175:5-20; Stancu Decl., ¶ 7, Ex. F, IRS Letter enclosing Starlight Trucking EIN.]

PLAINTIFF'S RESPONSE:

DENIED. Plaintiff Wood admits that he studied computer business management in college. The rest of the statement mischaracterizes and is not supported by the testimony cited. The cited testimony merely says that he established the DBA of Starlight Trucking to use on his second contract with Swift. Further, Plaintiff Wood's desire to start his own trucking business is irrelevant to the relationship that the parties actually had. The cited testimony does not speak to the reality of his relationship with Swift once he became a lease operator. Further, Plaintiff Wood testified throughout his deposition that he never actually started a trucking business, that Swift did not treat him like a business, and that he was treated no differently as a lease operator than he was as a company driver. *See* PW 59:2-63:7 (characterizing Swift's advertising about lease operator program as "propaganda," that it turned out to be "absolutely incorrect" and he felt like he was "frauded," that he was "treated no different" than when he was an employee driver), 100:13-17

-61-

1   (never actually started the business, it was "still in the works" at the time of the

2   deposition) 175:21-176:10 (used a DBA when he signed second contract because he

3   thought Swift would treat him as a business person, as opposed to first time he

4   signed contract, but it "just didn't turn out to be that way.  They just didn't care.").

5   DEFENDANTS' REPLY:

6        Plaintiff's response does not deny that studied business management in

7   college.  Plaintiff's response also does not deny that he established Starlight

8   Trucking to do business with Swift during his second stint as an Owner-Operator

9   with Swift.  Also in his response, Plaintiff admits that he signed an ICOA with

10  Swift as "Peter Wood DBA Starlight Trucking."  As such, Plaintiff's response is

11  insufficient to create a genuine issue of disputed fact.

12       Contrary to Plaintiff's assertion, the fact that Plaintiff was trained in business

13  management and established a corporate entity to partner with Swift is relevant to

14  whether or not Plaintiff was an independent contractor.

15

16  49.    Wood was aware of other Swift Owner-Operators who had fleets of trucks.

17  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 30:2-22.]

18  PLAINTIFF'S RESPONSE:

19  ADMITTED, but immaterial.  Objection as hearsay and to competency.

20  DEFENDANTS' REPLY:

21       This Undisputed Material Fact is not offered as evidence of the truth of the

22  matter asserted, but rather as evidence of Plaintiff's knowledge.  Thus, it is not

23  hearsay.  Plaintiff is fully competent to testify as to his own knowledge.

24       Additionally, the various business options at Plaintiff's disposal as an

25  Owner-Operator, namely his option of operating a fleet of trucks rather than a single

26  truck, and Plaintiff's awareness of such options are material as to whether Plaintiff

27  was an independent contractor.

28

1     50.    Wood wanted to develop a fleet of trucks himself.  [Stancu Decl., ¶ 2, Ex. A,

2 Wood Depo., pg. 30:2-22.]

3     <u>PLAINTIFF'S RESPONSE:</u>

4     DENIED.  The statement mischaracterizes and is not supported by the cited

5 testimony.  The cited testimony shows that when asked if it was his intention to

6 develop a fleet, Plaintiff Wood responds that "that would have been nice."  Further,

7 Plaintiff Wood's alleged desire to start a fleet is irrelevant.  The cited testimony is

8 purely aspirational and does not reflect the reality of what actually happened.

9 Plaintiff Wood never leased more than one truck at a time from Swift.  *See* Lease

10 Assignments (Does. 754-8 and 754-9).  And there is no evidence that Swift would

11 have leased and additional truck to Plaintiff Wood or allowed other drivers to drive

12 another truck leased to him.  *See* Plaintiff Wood's responses to ¶¶ 34 and 35 above.

13     <u>DEFENDANTS' REPLY:</u>

14     Defendants incorporate their replies in support of Undisputed Material Fact

15 Nos. 34 and 35.

16     This Undisputed Material Fact is taken directly from Plaintiff's deposition

17 testimony.  When asked, "Was it your intention to develop a fleet?," Plaintiff

18 testified, "That would have been nice, yes."  (Stancu Decl., ¶ 2, Ex. A, Wood

19 Depo., pg. 30:18-22.)  Plaintiff cannot create an issue of disputed fact by

20 contradicting his own deposition testimony.

21     Additionally, the various business options at Plaintiff's disposal as an

22 Owner-Operator, namely his option of operating a fleet of trucks rather than a single

23 truck, and Plaintiff's awareness of such options are relevant to the determination of

24 whether or not Plaintiff was an independent contractor.

25

26     51.    Wood had the ability to work in a team, hire as many employees as he chose,

27 purchase or lease as many trucks as he could afford, and build his own trucking business as

28 an Owner-Operator.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 93:2-94:24, 97:2-8;

1   Stancu Decl., ¶ 3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 7; Stancu Decl., ¶ 4,

2   Ex. C, Wood's ICOA dated April 2, 2009, ¶ 7; Stancu Decl., ¶ 5, Ex. D, Wood's ICOA

3   dated April 25, 2014, ¶ 7; Stancu Decl., ¶ 6, Ex. E, Wood DBA Starlight Trucking's ICOA

4   dated May 9, 2014, ¶ 7; Mussig Decl., ¶ 3, Ex. L, Berry Depo., pg. 182:1-9.]

5   <u>PLAINTIFF'S RESPONSE:</u>

6   DENIED.  *See* Plaintiff Wood's responses to ¶¶ 33, 34, 45 and 50.  The cited

7   testimony says nothing about purchasing or leasing as many trucks as he could

8   afford or building his own trucking business as a lease operator.  Further, Plaintiff

9   Wood testifies at PW 80:7-81:4 that he didn't have the money to lease even one

10   truck without 100% financing from Swift, let alone multiple trucks with employees.

11   <u>DEFENDANTS' REPLY:</u>

12       Defendants incorporate their replies in support of Undisputed Material Fact

13   Nos. 33, 34, 45, and 50.

14       This Undisputed Material Fact is taken directly from Plaintiff's deposition

15   testimony.  Plaintiff admitted that he could hire employees and drive as part of

16   team.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 93:2-94:24.)  Plaintiff also

17   admitted that he could and aspired to purchase or lease multiple trucks.  (*Id.* at

18   Wood Depo., pg. 30:2-22.)  As such, Plaintiff admitted that he was aware of the

19   various options he had for building his own trucking business as an Owner-

20   Operator.  Plaintiff's response is insufficient to create a genuine issue of disputed

21   fact.

22       Additionally, Plaintiff cites no testimony or even asserts that Swift or IEL

23   prevented him from working in a team, hiring employees, or purchasing or leasing

24   additional trucks.  The fact that Plaintiff now claims he could not afford to purchase

25   or lease additional trucks is irrelevant, as it is undisputed that Swift did not and

26   could not prevent him from doing so.

27

28

52.     As an Owner-Operator, Wood was paid per the completion of each trip—not by the hour.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 77:19-78:8; Stancu Decl., ¶ 3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 2; Stancu Decl., ¶ 4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 2; Stancu Decl., ¶ 5, Ex. D, Wood's ICOA dated April 25, 2014, ¶ 2; Stancu Decl., ¶ 6, Ex. E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 2.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  Plaintiff Wood was paid by the mile, not per trip.  The ICOA (Doc. 747-3) at ¶ 2B states that the driver is paid by the mile and the lease indicates that the driver will be paid weekly.  Lease (Doc 747-6) at ¶ 2(e) (carrier shall make weekly deductions from the settlements).  *See also* PW 152:11-18 (Plaintiff Wood was paid by the mile as a lease operator, the same as company drivers).  A driver was required to turn in a trip packet to receive credit for the miles associated with the trip and also required to turn in other things such as logs to be entitled to his weekly mileage pay.  ICOA (Doc. 747-3) at ¶ 3.  The cited testimony at PW 77:19-77:8 merely recites the contract provision that at the end of each trip, lease operators have to turn in a trip packet.  It says nothing about being paid by the trip.

DEFENDANTS' REPLY:

Plaintiff admits he was not paid by the hour.  He also does not deny that he was paid on a mileage basis, ***upon the completion of the trip***.  As such, Plaintiff's response is insufficient to create a genuine issue of disputed fact.


53.     Wood was paid via weekly settlements, while Swift employees are paid through payroll checks.  [Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 94:7-24; Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 180:4-11, 268:8-10.]

PLAINTIFF'S RESPONSE:

DENIED.  The statement mischaracterizes and is not supported by the cited testimony.  The testimony at PW 94:7-24 is completely irrelevant and discusses

whether Plaintiff Wood would have to pay any employees he hired.  Mr. Berry's

testimony states that both employee drivers and lease operators get weekly

settlements, though those settlements are calculated differently in that employee

drivers don't have operating expenses deducted from their settlements the way that

lease operators do unless they forget to turn in receipts, and employee drivers have

deductions for health insurance, locks, and company store purchases.  *See* Swift

30(b)(6) "Berry Depo." 179:13-181:10.

DEFENDANTS' REPLY:

Plaintiff testified that he was paid via settlements.  (*See e.g.*, Supp. Stancu

Decl., ¶2, Ex. M, Wood Depo., pg. 143:4-6 ("[W]hen you get your settlement sheet,

there's a whole line of . . . insurance deductions that are there."); 145:21-22 ("I was

told that I could show them my settlements."); 152:16-18 ("They would take 3, 5,

$.10, $.20 a mile out of your settlement for every mile that you did and put it into a

maintenance account.")  David Berry unequivocally testified that employee drivers

are paid through a "payroll check."  (Mussig Decl., ¶ 3, Ex. L, Berry Depo.,

pg. 268:14-17.)  This testimony is uncontroverted.  Plaintiff's response is

insufficient to create a genuine issue of disputed fact.


54.     The ICOAs between Wood and/or Starlight Trucking and Swift state that

Wood was entitled to haul for other carriers as long as she [sic] removed any Swift indicia

from her [sic] truck.  [Stancu Decl., ¶ 3, Ex. B, Wood's ICOA dated March 31, 2009,

¶ 5(b); Stancu Decl., ¶ 4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 5(b); Stancu Decl.,

¶ 5, Ex. D, Wood's ICOA dated April 25, 2014, ¶ 5(b); Stancu Decl., ¶ 6, Ex. E, Wood

DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 5(b).]

PLAINTIFF'S RESPONSE:

DENIED.  *See* Plaintiff Wood's response to ¶ 37 above.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 37.

-66-

1

2   ///

3   ///

4   ///

5   ///

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND
ADDITIONAL STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO WOOD

1

2 **PLAINTIFF'S ADDITIONAL STATEMENT OF FACTS**

3    1.    Both company drivers and lease operators have no need to communicate

4 with Swift managers until the driver near the point of delivery.  For example, if a load took

5 3-4 days to deliver, drivers would have no need to communicate with Swift until near the

6 point of delivery, unless they were running late.  Sheer Dec. ¶2; Wood Dec. ¶2; Van Dusen

7 Dec. ¶2.

8    DEFENDANTS' RESPONSE:

9        Partially Disputed.  While this is true for Owner-Operators, it is false

10       for employee drivers.  Employee drivers are required to communicate with

11       their managers at times other than when they are near the point of delivery.

12       For example, Plaintiff Sheer testified that, as an employee driver, he was

13       required to check in with Swift every morning via Qualcomm.  (Supp.

14       Mussig Decl., ¶4, Ex. R, Sheer Depo., pgs. 43:22-45:20.)  Sheer also testified

15       that he generally checked in with his manager one or two times a day even if

16       he was hauling a load that took multiple days to deliver.  (*Id.* at Sheer Depo.,

17       pgs. 46:14-47:13.)

18       Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).  Swift's policies

19       applicable to employee drivers have no bearing on whether Swift properly classified

20       Owner-Operators, including Plaintiff, as independent contractors.

21

22    2.    Company Drivers were permitted by Swift to state a preference about what

23 division (e.g. Over the Road, Dedicated, Flatbed, Dry Van, Intermodal, etc.) they would

24 work in, and which terminal they preferred to work from.  Swift afforded the same

25 opportunity to Lease Operators.  Sheer Dec. ¶3; Wood Dec. ¶3; Van Dusen Dec. ¶3.  Swift

26 did not always honor the driver's preference.  Wood Dec. ¶3.

27    DEFENDANTS' RESPONSE:

28

1    <u>Disputed.</u>  The evidence shows that Owner-Operators, including

2    Plaintiff, are able to choose what terminal they are based out of, as well as

3    what division they wanted to drive for (line-haul, dedicated, or intermodal),

4    whereas employee drivers are assigned a home terminal and division.

5    (Mussig Decl., ¶3, Ex. L, Berry Depo., pgs. 15:14-16:6; 19:11-20:14.)

6    <u>Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).</u>  Swift's policies

7    applicable to employee drivers have no bearing on whether Swift properly classified

8    Owner-Operators, including Plaintiff, as independent contractors.

9

10   3.    Both Company Drivers and Lease Operators were allowed by Swift to use

11   their truck to make personal trips to go food shopping or attend to other necessities while

12   on the road.  Sheer Dec. ¶4; Van Dusen Dec. ¶4; Wood Dec. ¶4.

13   <u>DEFENDANTS' RESPONSE:</u>

14   <u>Partially Disputed.</u>  While the fact is true for Owner-Operators, it is false for

15   employee drivers.  Swift policy does not permit employee drivers to use their truck

16   to make personal trips to go food shopping or attend to other necessities while on

17   the road.  (Supp. Mussig Decl., ¶2, Ex. P, Berry Depo., pgs. 119:15-120:6.)

18   <u>Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).</u>  Swift's policies

19   applicable to employee drivers have no bearing on whether Swift properly classified

20   Owner-Operators, including Plaintiff, as independent contractors.

21

22   4.    The hours Company Drivers and Lease Operators work—were determined

23   primarily by the requirements and deadlines established by Swift in its load assignments

24   (such as pick up and drop off times), shipment mileage, and factors determined by shippers

25   and receivers (wait times, whether the trailer was pre-loaded, load times).  Hours of

26   driving were also affected by the drive hours available to them through the FMCSA Hours-

27   of-Service Rules.  Sheer Dec. ¶5; Van Dusen Dec. ¶5; Wood Dec. ¶5.

28   <u>DEFENDANTS' RESPONSE:</u>

1    <u>Partially Disputed.</u>  Defendants admit that the hours that employee drivers

2    and Owner-Operators drive are affected by federal regulations.  Defendants also

3    admit that the hours that employee drivers drive are primarily affected by Swift.

4    However, Defendants dispute that the hours that Owner-Operators drive are

5    primarily affected by Swift.  Owner-Operators are free to accept and decline freight

6    loads offered to them by Swift.  (Mussig Decl., ¶3, Ex. L, Berry Depo., pgs. 157:21-

7    158:4.)  Indeed, Owner-Operators are entitled to haul for other carriers as long as

8    they removed any Swift indicia from their truck.  (*Id.* at Berry Depo., pg. 216:1-25;

9    Stancu Decl., ¶ 3, Ex. B, Wood's ICOA dated March 31, 2009, ¶ 5(b); Stancu Decl.,

10    ¶ 4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 5(b); Stancu Decl., ¶ 5, Ex. D,

11    Wood's ICOA dated April 25, 2014, ¶ 5(b); Stancu Decl., ¶ 6, Ex. E, Wood DBA

12    Starlight Trucking's ICOA dated May 9, 2014, ¶ 5(b))  Therefore, the hours Owner-

13    Operators drive are primarily determined by their own preferences.

14    <u>Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403)</u>.  Swift's policies

15    applicable to employee drivers have no bearing on whether Swift properly classified

16    Owner-Operators, including Plaintiff, as independent contractors.

17

18    5.    As both a Company Driver and a Lease Operator, Plaintiffs were only

19    permitted to haul freight at the direction of/on behalf of Swift Transportation.  Sheer Dec.

20    ¶6; Van Dusen Dec. ¶6; Wood Dec. ¶6.

21    <u>DEFENDANTS' RESPONSE:</u>

22    <u>Disputed.</u>  Owner-Operators are entitled to haul for other carriers as long as

23    they removed any Swift indicia from their truck.  (Mussig Decl., ¶ 3, Ex. L, Berry

24    Depo., pg. 216:1-25; Stancu Decl., ¶3, Ex. B, Wood's ICOA dated March 31, 2009,

25    ¶ 5(b); Stancu Decl., ¶4, Ex. C, Wood's ICOA dated April 2, 2009, ¶ 5(b); Stancu

26    Decl., ¶5, Ex. D, Wood's ICOA dated April 25, 2009, ¶ 5(b); Stancu Decl., ¶6, Ex.

27    E, Wood DBA Starlight Trucking's ICOA dated May 9, 2014, ¶ 5(b).)  Owner-

28    Operators are also free to accept and decline freight loads offered to them by Swift.

1   (Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 157:21-158:4; Stancu Decl., ¶ 2, Ex. A,

2   Wood Depo. pgs. 160:14-162:25.)

3         <u>Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403)</u>.  Swift's policies

4   applicable to employee drivers have no bearing on whether Swift properly classified

5   Owner-Operators, including Plaintiff, as independent contractors.

6

7         6.    Lease Operators are supervised by their Driver Managers.  Sheer Dec. ¶6;

8   Van Dusen Dec. ¶ 6; Wood Dec. ¶ 5.

9   <u>DEFENDANTS' RESPONSE:</u>

10        <u>Disputed.</u>  While Owner-Operators did have a "Driver Manager" (or mere

11  point of contact at their home terminals), their Driver Managers were not their

12  "supervisors."  As Plaintiff testified, Owner-Operators had the authority to fire their

13  Driver Managers and in fact Wood did fire his Driver Manager because they did not

14  see eye to eye. (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 65:15-22.)  Wood also

15  testified that nobody met him at pick-up or drop-off sites to check in or supervise

16  him. (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pgs. 180:25-181:22; *see also* Supp.

17  Stancu Decl., ¶3, Ex. N, Motolinia Depo., pgs. 95:1-5, 106:22-25, 149:8-14; Supp.

18  Mussig Decl., ¶5, Ex. S, Van Dusen Depo., pgs. 94:17-21, 94:23-95:3; Supp.

19  Stancu Decl., ¶4, Ex. O, Schwalm Depo., pgs. 102:21-104:4; Berry Decl., ¶ 6.)

20

21        7.    Lease Operators are also supervised by their Fleet Manager and the Rapid

22  Response Team.  Wood Dec. ¶5; Van Dusen Dec. ¶6.

23  <u>DEFENDANTS' RESPONSE:</u>

24        <u>Disputed.</u>  Owner Operators were not supervised by Fleet Managers, the

25  Rapid Response Team or anyone else at Swift.  (Supp. Mussig Decl., ¶2, Ex. P,

26  Berry Depo., pgs. 76:25-82:13.)  Indeed, Plaintiff testified that nobody met him at

27  pick-up or drop-off sites to check in or supervise him.  (Stancu Decl., ¶ 2, Ex. A,

28  Wood Depo., pgs. 180:25-181:22; *see also* Supp. Stancu Decl., ¶3, Ex. N, Motolinia

-71-

Depo., pgs. 95:1-5, 106:22-25, 149:8-14; Supp. Mussig Decl., ¶5, Ex. S, Van Dusen Depo., pgs. 94:17-21, 94:23-95:3; Supp. Stancu Decl., ¶4, Ex. O, Schwalm Depo., pgs. 102:21-104:4; Berry Decl., ¶ 6.)

8.     Plaintiffs never had a supervisor ride-along in their truck while they were company drivers.  Sheer Dec. ¶7; Van Dusen Dec. ¶7; Wood Dec. ¶6.

DEFENDANTS' RESPONSE:

Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).  Swift's policies applicable to employee drivers have no bearing on whether Swift properly classified Owner-Operators, including Plaintiff, as independent contractors.

9.     The weight of a given load, and whether it had to be driven over mountains or level ground, had much more of an effect on driver fuel efficiency than anything they could control by the way they drove.  Sheer Dec. ¶8; Van Dusen Dec. ¶8; Wood Dec. ¶7.

DEFENDANTS' RESPONSE:

Disputed.  The weight of a given load, whether it had to be driven over mountains or level ground affect, and numerous other factors may affect fuel efficiency, but no single factor controls.  It is undisputed that the route Plaintiff chose to take impacted his fuel efficiency.

Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).  What affects the fuel efficiency of a load has no bearing on any of the issues before this Court.  This is particularly true given that Plaintiff was able to accept or decline any load offered by Swift and chose his own routes.

10.     Defendant sets forth rules, policies and practices f or Lease Operators in a series of documents which it gives to drivers:  1) the Swift Driver Manual (by its terms applicable to both employee drivers and Lease drivers), 2) the Contracted Driver Manual (applicable just to Lease drivers), 3) the Handshake to Horsepower, and 4) the Swift CABS

-72-

1  Training handout.  *See* PSOF ¶¶ 98-101.  Swift provided each of the documents in

2  discovery to Plaintiffs.  These policies and instructions are described below.

3      DEFENDANTS' RESPONSE:

4         Disputed.  Several Plaintiffs, including Wood, admit that Swift did not

5  provide them with, nor require them to be familiar with, any policies or handbooks

6  while they were Owner-Operators, including the Pre-CABS Training manual, the

7  "Handshake to Horsepower", and the Contracted Driver Manual, and that they

8  could not be disciplined for failing to follow company policies and procedures

9  while they were Owner-Operators.  (Stancu Decl., ¶2, Ex. A, Wood Depo., pg.

10  21:12-20; *see also* Supp. Stancu Decl., ¶3, Ex. N, Motolinia Depo., pgs. 36:11-37:3,

11  124:5-18, 128:1-4; Supp. Mussig Decl., ¶5, Ex. S, Van Dusen Depo., pgs. 187:22-

12  188:3; Supp. Mussig Decl., ¶4, Ex. R, Sheer Depo., pg. 121:17-21; Supp. Stancu

13  Decl., ¶4, Ex. O, Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶2, Ex. P,

14  Berry Depo., pgs.  258:16-24, 268:5-7.)

15         Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).

16  Plaintiff fails to offer any evidence that Swift provided him with a Driver Manual,

17  Contracted Driver Manual, Handshake-to-Horsepower document, and/or Pre-CABS

18  Training document, such that he could be familiar with, let along bound by, their

19  contents.  These purported policies lack foundation and proper authentication.

20

21      11.    Defendant Swift maintains a "Swift Driver Manual" which is set forth as

22  Exhibit 14 (14A and 14B) to Plaintiffs' Summary Judgment Motion.  Swift supplied

23  Plaintiffs (and all employee drivers) with the Swift Driver Manual when the driver first

24  starts working for Swift.  See PSOF ¶¶ 98-101.

25      DEFENDANTS' RESPONSE:

26         Disputed.  Several Plaintiffs, including Wood, admit that Swift did not

27  provide them with, nor require them to be familiar with, any policies or handbooks

28  as Owner-Operators, including the Swift Driver Manual, and that they could not be

disciplined for failing to follow company policies and procedures while they were Owner-Operators.  (Stancu Decl., ¶2, Ex. A, Wood Depo., pg. 21:12-20; *see also* Supp. Mussig Decl., ¶5, Ex. S, Van Dusen Depo., pgs. 187:22-188:3; Supp. Mussig Decl., ¶4, Ex. R, Sheer Depo., pg. 121:17-21; Supp. Stancu Decl., ¶4, Ex. O, Schwalm Depo., pg. 45:12-16; Supp. Stancu Decl., ¶3, Ex. N, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Supp. Mussig Decl., ¶2, Ex. P, Berry Depo. at pgs. 258:16-24, 268:5-7.)

The ICOA rather than Plaintiffs' Exhibit 14 governs the relationship between Owner-Operators and Swift. (Supp. Mussig Decl., ¶2, Ex. P, Berry Depo., pgs. 160:25-161:6.)  Indeed, Plaintiffs' Exhibit 14 at DEF004946 is the Employee Acknowledgment of the Driver Manual.  It does not mention Owner-Operators at all.

Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)). Plaintiff fails to offer any evidence that Swift provided him with a Driver Manual, such that he could be familiar with, let along bound by, its contents.  The Driver Manual lacks foundation and proper authentication.


12.    The Swift Driver Manual, by its own terms refers both to company drivers (employees) and to Lease Operators.  For example, the following provisions make clear that Swift Driver Manual applies to Lease Drivers as well as employee drivers:

**OWNER OPERATORS**

- All previous procedures apply to Owner Operators.

- Owner Operators, can if they choose, fuel at our bulk fueling facilities with charges for the fuel appearing on their weekly settlements.

- All amounts due on Owner Operator maintenance performed are due upon completion, unless other arrangements have been made with your Driver Manager.

1   Ex. 14b, p. 3, Bates 5408.  And the Swift Driver Manual goes on to state:  "There is no

2   distinction with regard to whether you are a Company Driver, Contract Driver, or Owner

3   Operator."  Ex. 14b, Sec. 6, p. 1, DEF 5064.

4   **10.   PERSONAL USAGE OF COMMERCIAL VEHICLE**

5   . . . When a driver, including Contract Drivers and Owner Operators, is relieved

6   from all responsibility for performing work, time spent traveling from the Driver's

7   home to his/her terminal (normal work reporting location), or from the Driver's

8   terminal to his/her home, may be considered off-duty time.

9   Ex. 14b, Sec. 6, p. 5, Def. 5064.  Further, Swift states that "All usage of a CMV

10   [Commercial Motor Vehicle] for personal conveyance must be flagged and identified as

11   such on the Drivers log, including Owner Operators' and Contract Drivers' logs."  Ex. 14b,

12   Sec. 6, p. 6, Def. 5069.  And see Def. 5070 (charts of employee and lease driver

13   discipline).

14   <u>DEFENDANTS' RESPONSE:</u>

15   <u>Disputed</u>.  Several Plaintiffs, including Wood, admit that Swift did not

16   provide them with, nor require them to be familiar with, any policies or handbooks

17   as Owner-Operators, including the Swift Driver Manual, and that they could not be

18   disciplined for failing to follow company policies and procedures while they were

19   Owner-Operators.  (Stancu Decl., ¶2, Ex. A, Wood Depo., pg. 21:12-20; *see also*

20   Supp. Stancu Decl., ¶3, Ex. N, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-

21   4; Supp. Mussig Decl., ¶5, Ex. S, Van Dusen Depo., pgs. 187:22-188:3; Supp.

22   Mussig Decl., ¶4, Ex. R, Sheer Depo., pg. 121:17-21; Supp. Stancu Decl., ¶4, Ex.

23   O, Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶2, Ex. P, Berry Depo.,

24   pgs. 258:16-24, 268:5-7.)

25   The ICOA rather than Plaintiffs' Exhibit 14 governs the relationship between

26   Owner-Operators and Swift. (Supp. Mussig Decl., ¶2, Ex. P, Berry Depo., 160:25-

27   161:6.)  Indeed, Plaintiffs' Exhibit 14 at DEF004946 is the Employee

28

-75-

1    Acknowledgment of the Driver Manual.  It does not mention Owner-Operators at

2    all.

3          Misstates the Evidence.  Plaintiff misstates the Swift Driver Manual.  For

4    example, Plaintiff misstates the statement on DEF005064 regarding a "lack of

5    distinction."  This statement merely states that all drivers, whether employee drivers

6    or Owner-Operators, are required by law to comply with the hours of service limits

7    *set by the federal government*.  It does not purport to say that employee drivers and

8    Owner-Operators are the same in any other way.  Additionally, DEF005408,

9    DEF0064, and DEF0069 do not contain any of the text that Plaintiff claims they do.

10         Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).

11   Plaintiff fails to offer any evidence that Swift provided him with a Driver Manual,

12   such that he could be familiar with, let along bound by, its contents.  The Driver

13   Manual lacks foundation and proper authentication.

14

15   13.    The rules and policies set forth in the Swift Driver Manual include:

16         a.    Speed for lease drivers (68 mph) and company drivers (65 mph).

17               Ex. 14A, Sec. 2, p. 12.

18         b.    "Swift Transportation Co., Inc. retains full ownership of all equipment

19               and the right to assign equipment for use by its Drivers as it sees fit."

20               Ex. 14A, Sec. 2, p. 43.

21   DEFENDANTS' RESPONSE:

22         Disputed.  Several Plaintiffs, including Wood, admit that Swift did not

23   provide them with, nor require them to be familiar with, any policies or handbooks

24   as Owner-Operators, including the Swift Driver Manual, and that they could not be

25   disciplined for failing to follow company policies and procedures while they were

26   Owner-Operators.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 21:12-20; *see also*

27   Supp. Stancu Decl., ¶3, Ex. N, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-

28   4; Supp. Mussig Decl., ¶5, Ex. S, Van Dusen Depo., pgs. 187:22-188:3; Supp.

1   Mussig Decl., ¶4, Ex. R,  Sheer Depo., pg. 121:17-21; Supp. Stancu Decl., ¶4, Ex.

2   O, Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶2, Ex. P, Berry Depo. at

3   258:16-24, 268:5-7.)

4           The ICOA rather than Plaintiffs' Exhibit 14 governs the relationship between

5   Owner-Operators and Swift. (Supp. Mussig Decl., ¶2, Ex. P, Berry Depo., 160:25-

6   161:6.)  Indeed, Plaintiffs' Exhibit 14 at DEF004946 is the Employee

7   Acknowledgment of the Driver Manual.  It does not mention Owner-Operators at

8   all.

9           <u>Misstated Evidence.</u>  Plaintiff misstates the Swift Driver Manual.  For

10  example, Plaintiff's citation to the statement on page DEF004799 (page 43)

11  regarding Swift's ownership rights applies to employee drivers only.  By its own

12  terms, it does not apply to Owner-Operators.

13          <u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>

14  Plaintiff fails to offer any evidence that Swift provided him with a Driver Manual,

15  such that he could be familiar with, let along bound by, its contents.  The Driver

16  Manual lacks foundation and proper authentication.

17

18          14.     The Contracted Driver Manual (by its terms applicable just to Lease drivers),

19  states a series of Swift policies, including, but not limited to:

20                  a.      Setting a 68 mph speed limit Lease Operators may drive, Sec. 2, p. 1

21                          (e.g. "The Company has no tolerance for flagrant overspeed").

22                  b.      No alcohol within 12 hours of duty, Sec. 2, p. 2.  *Compare.*  49 C.F.R.

23                          §392.5 (federal limit of 4 hours).

24                  c.      Swift authorization for any passengers (and paperwork pertaining

25                          thereto), Sec. 2, p. 3.

26                  d.      Drug and alcohol testing program, Sec. 2, pp. 4-12.

27                  e.      Equipment security locking policies, Sec. 2, pp. 12-13.

28

1  f.  Prohibiting dropping loaded trailers in locations other than terminals

2    and yards, Sec. 2, p. 13.

3  g.  Parking with loaded trailers, Sec. 2, p. 13.

4  h.  Padlocks, king-pin, and enforcer locks, Sec. 2, p. 14.

5  i.  Special procedures for "High value loads" mandating compliance

6    with company directions and procedures (e.g. trailer must be kept in

7    sight at all times, may not deviate from route, no stopping along road),

8    Sec. 2, p. 14-15.

9  j.  Swift's accident and cargo claims procedures, Sec. 2, p. 16.

10  k.  Swift's facilities policies, Sec. 2, p. 18.

11  l.  Swift's Qualcomm, Internet, email policies (e.g. "no messages with

12    derogatory or inflammatory remarks . . .".), Sec. 2, p. 19.

13  m.  Termination and disciplinary policies, Sec. 2, p. 20.

14  n.  Swift's pre-tri p and post-trip inspections more expansive than federal

15    requirements, Sec. 3, p. 2.  Compare 49 C.F.R. Part 396.

16  o.  Chain requirements for winter driving, Sec. 3, p. 6.

17 <u>DEFENDANTS' RESPONSE:</u>

18  <u>Disputed.</u>  Several Plaintiffs, including Wood, admit that Swift did not

19 provide them with, nor require them to be familiar with, any policies or handbooks

20 as Owner-Operators, including the Contracted Driver Manual, and that they could

21 not be disciplined for failing to follow company policies and procedures while they

22 were Owner-Operators.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 21:12-20; *see*

23 *also* Supp. Stancu Decl., ¶3, Ex. N, Motolinia Depo., pgs. 36:11-37:3, 124:5-18,

24 128:1-4; Supp. Mussig Decl., ¶5, Ex. S, Van Dusen Depo., pgs. 187:22-188:3;

25 Supp. Mussig Decl., ¶4, Ex. R, Sheer Depo., pg. 121:17-21; Supp. Stancu Decl., ¶4,

26 Ex. O, Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶2, Ex. P, Berry Depo.,

27 pgs. 258:16-24, 268:5-7.)

28

<u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>

Plaintiff fails to offer any evidence that Swift provided him with a Contracted Driver Manual, such that he could be familiar with, let along bound by, its contents. The Contracted Driver Manual lacks foundation and proper authentication.

15. The Handshake to Horsepower, (Ex. 13, Bates DEF1455-DEF1475) provides new Lease Operators with a variety of instructions:

     a.   equipment that must be onboard (Comdata card, original copy of contracts, permit book, temporary registration, Qualcomm), p. 3.

     b.   instructions on logging into Qualcomm, p. 4.

     c.   fueling instructions ("Do not fill up your tanks unless your trip miles require it" p. 6.

     d.   Speed limit of 68 mph., p. 12.

     e.   Penalties for overspeed occurrences (written notice to termination), p. 12.

     f.   Penalty for "coasting out of gear or tampering with the speed control equipment may result in termination" p. 12.

     g.   Instructions that "If you have any repairs completed on your truck outside of the Swift network, you are required to file a Monthly Maintenance Report ... p. 13.

     h.   Swift's "Required Decal Placement", p. 17.

<u>DEFENDANTS' RESPONSE:</u>

<u>Disputed.</u> Several Plaintiffs, including Wood, admit that Swift did not provide them with, nor require them to be familiar with, any policies or handbooks as Owner-Operators, including the Handshake to Horsepower document, and that they could not be disciplined for failing to follow company policies and procedures while they were Owner-Operators. (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 21:12-20; *see also* Supp. Stancu Decl., ¶3, Ex. N, Motolinia Depo., pgs. 36:11-37:3,

1    124:5-18, 128:1-4; Supp. Mussig Decl., ¶5, Ex. S, Van Dusen Depo., pgs. 187:22-

2    188:3; Supp. Mussig Decl., ¶4, Ex. R, Sheer Depo., pg. 121:17-21; Supp. Stancu

3    Decl., ¶4, Ex. O, Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶2, Ex. P,

4    Berry Depo., pgs. 258:16-24, 268:5-7.)

5         <u>Misstated Evidence.</u>  Plaintiff misstates the Handshake to Horsepower

6    document.  For example, Plaintiff lists equipment that allegedly must be onboard.

7    However, DEF001457 merely recommends that Owner-Operators have crucial

8    items, such as the original copy of their contracts and temporary truck registration,

9    before they leave the terminal for the first time as Owner-Operators – a reasonable

10   recommendation.  DEF001458 simply notes that former employee drivers who are

11   now Owner-Operators will follow different Qualcomm log-on procedures, which

12   demonstrate one of many differences between employee drivers and Owner-

13   Operators.  Also, Swift does not provide fueling instructions; rather, DEF001460

14   lists "a few tips that will help you put less money in your tanks and more money in

15   your wallet" by increasing fuel efficiency.  Additionally, DEF001471 describes

16   federal requirements for the placement of decals, not Swift policy as Plaintiff

17   suggests.

18        <u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>

19   Plaintiff fails to offer any evidence that Swift provided him with the Handshake to

20   Horsepower document, such that he could be familiar with, let along bound by, its

21   contents.  The Handshake to Horsepower document lacks foundation and proper

22   authentication.

23

24        16.    The Swift Pre- CABS Training (Ex. 11 (Bates DEF002988-DEF3085)) is a

25   four-part driver training program created by Swift. P. 6.

26        <u>DEFENDANTS' RESPONSE:</u>

27        <u>Disputed.</u>  Several Plaintiffs, including Wood, admit that Swift did not

28   provide them with, nor require them to be familiar with, any policies or handbooks

as Owner-Operators, including the Pre-CABS Training document, and that they could not be disciplined for failing to follow company policies and procedures while they were Owner-Operators.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 21:12-20; *see also* Supp. Stancu Decl., ¶3, Ex. N, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Supp. Mussig Decl., ¶5, Ex. S, Van Dusen Depo., pgs. 187:22-188:3; Supp. Mussig Decl., ¶4, Ex. R, Sheer Depo., pg. 121:17-21; Supp. Stancu Decl., ¶4, Ex. O, Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶2, Ex. P, Berry Depo., pgs 258:16-24, 268:5-7.)

<u>Misstates Evidence.</u>  ATBS, a completely separate and distinct company from Swift, conducted the Pre-CABS Training.  (Berry Decl., ¶ 4.)  It was provided as a convenience to Owner-Operators and was completely voluntary.  (*Id*.)  There were no consequences if Owner-Operators chose not to participate in the training.  (*Id*.)

<u>Vague and Ambiguous.</u>  Plaintiff's page citations to the Pre-CAB Training document are vague and ambiguous and, as such, Plaintiffs fail to "refer to a specific admissible portion of the record" as required by LRCiv 56.1(a).  Specifically, this document has multiple pages labeled as "Page 6," making it impossible to determine what evidence Plaintiffs purport to cite.

<u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>  Plaintiff fails to offer any evidence that Swift provided him with the Pre-CABS Training document, such that he could be familiar with, let along bound by, its contents.  The Pre-CABS Training document lacks foundation and proper authentication.

17.     The Pre-CABS training includes Swift policies such as:

    a.      Qualcomm Rental policies, p. 12.

    b.      Mandatory insurance, p. 13.

    c.      Insurance claim policies, p. 14.

d.    Authorization required for pets and passengers, p. 15 ("All drivers who would like to have passengers ride with him/her must comply with the Rider or Pet Rider program"), p. 15.

e.    "Lease Term—You are responsible for the full length—all payments of the lease, regardless of whether you quit, turn in the truck early or leave Swift.  Walking away from the lease will be considered a default of the lease and you will be subject to collections, including any costs for repair of the truck that is needed."  P. 22.

f.    No modifications to truck ("Since your leased truck does not belong to you, you cannot make any modifications to the equipment without prior written consent from IEL.").  P. 22.

g.    Required trip paperwork, p. 26.

h.    $30 fee to use authorized, but non-Swift repair shop, p. 53.

<u>DEFENDANTS' RESPONSE:</u>

<u>Disputed.</u>  Several Plaintiffs, including Wood, admit that Swift did not provide them with, nor require them to be familiar with, any policies or handbooks as Owner-Operators, including the Pre-CABS Training document, and that they could not be disciplined for failing to follow company policies and procedures while they were Owner-Operators.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 21:12-20; *see also* Supp. Stancu Decl., ¶3, Ex. N, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Supp. Mussig Decl., ¶5, Ex. S, Van Dusen Depo., pgs. 187:22-188:3; Supp. Mussig Decl., ¶4, Ex. R, Sheer Depo., pg. 121:17-21; Supp. Stancu Decl., ¶4, Ex. O, Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶2, Ex. P, Berry Depo., pgs. 258:16-24, 268:5-7.)

<u>Misstates Evidence.</u>  Plaintiff misstates the Pre-CABS Training document.  For example, DEF002999 merely states that Owner-Operators "*may* rent [their] QualComm communications equipment" through Swift.  (emphasis added).  DEF003001 explains how to file an insurance claim if an Owner-Operator chooses

1    to obtain insurance through Swift.  (*See* DEF003000 ("If you do purchase through

2    Swift . . . ,"  "if you choose to purchase [insurance] available through Swift," etc.).)

3           <u>Vague and Ambiguous.</u> Plaintiff's page citations to the Pre-CAB Training

4    document are vague and ambiguous and, as such, Plaintiffs fail to "refer to a

5    specific admissible portion of the record" as required by LRCiv 56.1(a). For

6    example, this document has multiple pages labeled as "Page 12," making it

7    impossible to determine what evidence Plaintiffs purport to cite.

8           <u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>

9    Plaintiff fails to offer any evidence that Swift provided him with the Pre-CABS

10   Training document, such that he could be familiar with, let along bound by, its

11   contents.  The Pre-CABS Training document lacks foundation and proper

12   authentication.

13

14   18.    Swift provided each of these policy documents in discovery and indicated

15   the specific document demand topic to which each document was responsive.  Ex. 30

16   attached to Declaration of Lesley Tse in Support of Plaintiffs' Opposition to Defendants'

17   Motions for Summary Judgment, dated July 22, 2016 ("Tse Dec.").

18   <u>DEFENDANTS' RESPONSE:</u>

19          <u>Partially Disputed.</u>  Swift admits that it produced the Driver Manual,

20   Contracted Driver Manual, Handshake to Horsepower documents, and Pre-CABS

21   Training documents.  However, Defendants dispute that these policies were

22   distributed and applied to Plaintiff.  Several Plaintiffs, including Wood, admit that

23   Swift did not provide them with, nor require them to be familiar with, any policies

24   or handbooks as Owner-Operators, including the Pre-CABS Training manual, the

25   "Handshake to Horsepower", and the Contracted Driver Manual, and that they

26   could not be disciplined for failing to follow company policies and procedures

27   while they were Owner-Operators.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg.

28   21:12-20; *see also* Supp. Stancu Decl., ¶3, Ex. N, Motolinia Depo., pgs. 36:11-37:3,

1   124:5-18, 128:1-4; Supp. Mussig Decl., ¶5, Ex. S, Van Dusen Depo., pgs. 187:22-

2   188:3; Supp. Mussig Decl., ¶4, Ex. R, Sheer Depo., pg. 121:17-21; Supp. Stancu

3   Decl., ¶4, Ex. O, Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶2, Ex. P,

4   Berry Depo., pgs. 258:16-24, 268:5-7.)  Furthermore, as explicitly stated in

5   Plaintiffs' Exhibit 30, "[n]o incidental or implied admissions [were] intended by

6   [the] log."  (Pl.'s Ex. 30, 1:12-13.)  Simply because a policy document was in the

7   possession, control, or custody of the Defendants does not mean it was distributed

8   and enforced, and certainly does not mean it was provided to this particular

9   Plaintiff.

10          Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).

11   Plaintiff fails to offer any evidence that Swift provided him with a Driver Manual,

12   Contracted Driver Manual, Handshake-to-Horsepower document, and/or Pre-CABS

13   Training document, such that he could be familiar with, let along bound by, their

14   contents.  These documents lack foundation and proper authentication.

15

16          19.     Swift identified the Contracted Driver Manual, Handshake to Horsepower,

17   and Pre-Cabs Training" as "Defendants' instructions to named-plaintiffs as to when,

18   where, and how to work."  *Id.*

19          DEFENDANTS' RESPONSE:

20          Partially Disputed.  Swift admits it produced the Contracted Driver Manual,

21   Handshake to Horsepower documents, and Pre-CABS Training documents in

22   discovery.  However, Defendants dispute that these documents were distributed and

23   applied to Plaintiff.  Several Plaintiffs, including Wood, admit that Swift did not

24   provide them with, nor require them to be familiar with, any policies or handbooks

25   as Owner-Operators, including the Pre-CABS Training manual, the "Handshake to

26   Horsepower", and the Contracted Driver Manual, and that they could not be

27   disciplined for failing to follow company policies and procedures while they were

28   Owner-Operators.  (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 21:12-20; *see also*

1    Supp. Stancu Decl., ¶3, Ex. N, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-

2    4; Supp. Mussig Decl., ¶5, Ex. S, Van Dusen Depo., pgs. 187:22-188:3; Supp.

3    Mussig Decl., ¶4, Ex. R, Sheer Depo., pg. 121:17-21; Supp. Stancu Decl., ¶4, Ex.

4    O, Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶2, Ex. P, Berry Depo.,

5    pgs. 258:16-24, 268:5-7.)  Furthermore, as explicitly stated in Plaintiffs' Exhibit 30,

6    "[n]o incidental or implied admissions [were] intended by [the] log."  (Pl.'s Ex. 30,

7    1:12-13.)  Simply because a policy document was in the possession, control, or

8    custody of the Defendants does not mean it was distributed and enforced, and

9    certainly does not mean it was provided to this particular Plaintiff.

10           Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).

11   Plaintiff fails to offer any evidence that Swift provided him with a Driver Manual,

12   Contracted Driver Manual, Handshake-to-Horsepower document, and/or Pre-CABS

13   Training document, such that he could be familiar with, let along bound by, their

14   contents.  These documents lack foundation and proper authentication.

15

16           20.    Swift identified the Swift Driver Manual as "Handbooks or other statements

17   of policies, regulations, or practices with respect to employee drivers."  *Id.*

18           DEFENDANTS' RESPONSE:

19           Partially Disputed.  Defendants admit that it produced the Driver Manual,

20   and that it contains policies applicable to employee drivers.  However, Defendants

21   dispute that any of the policies in the Driver Manual applied to Plaintiff while he

22   was an Owner-Operator.

23           Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).

24   Plaintiff fails to offer any evidence that Swift provided him with a Driver Manual,

25   such that he could be familiar with, let along bound by, its contents.  This manual

26   lacks foundation and proper authentication.

27

28

1

2    21.  Swift provides various types of mandatory insurance to lease operators

3 through Mohave Transportation Insurance Company ("Mohave"), including Occupational

4 Accident Insurance, Non-Trucking Liability (Bobtail) Insurance, and Physical Damage

5 (Collision) Insurance.  See Ex. 11 to PSOF (Doc. 775-2) at pp. 13-15, Ex. 6 to PSOF Doc.

6 772-7) at pp. 21, 82; Ex. 10a to PSOF (Doc. 775) at p. 80; Ex. 10b to PSOF (Doc. 775-1)

7 at p. 62; Ex. 32, Tse Dec. ¶ 6.  Swift also provides various types of non-mandatory

8 insurance to lease operators through Mohave, including GI ass Coverage and Loaner Truck

9 Program.  *See id.*; *see also* Ex. 18 to PSOF (Doc. 775-10) at pp. 9-11.

10    <u>DEFENDANTS' RESPONSE:</u>

11     <u>Disputed.</u>  Plaintiff admits he was required to finance his own insurance.

12    (Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 144:2-15; *see also* Supp. Stancu Decl.,

13    ¶3, Ex. N, Motolinia Depo., pg. 139:8-23; Supp. Mussig Decl., ¶5, Ex. S, Van

14    Dusen Depo., 53:14-25, 75:25-76:7; Supp. Stancu Decl., ¶4, Ex. O, Schwalm

15    Depo., pgs. 148:11-150:2, 150:12-154:2; Supp. Mussig Decl., ¶4, Ex. R, Sheer

16    Depo., pgs. 155:25-156:21; Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 57:15-

17    58:10.)  While Owner-Operators had the option to purchase insurance from a third

18    party insurer through Swift, Swift did not pay for any Owner-Operator's insurance

19    and did not insure any Owner-Operator and therefore did not "provide" any

20    insurance.  (Berry Decl., ¶ 9; Stancu Decl., ¶ 2, Ex. A, Wood Depo., pg. 144:2-15;

21    *see also* Supp. Stancu Decl., ¶3, Ex. N, Motolinia Depo., pg. 139:8-23; Supp.

22    Mussig Decl., ¶5, Ex. S, Van Dusen Depo., 53:14-25, 75:25-76:7; Supp. Stancu

23    Decl., ¶4, Ex. O, Schwalm Depo., pgs. 148:11-150:2, 150:12-154:2; Supp. Mussig

24    Decl., ¶4, Ex. R, Sheer Depo., pgs. 155:25-156:21; Mussig Decl., ¶ 3, Ex. L, Berry

25    Depo., 57:15-58:10.)

26     <u>Misstates Evidence</u>.  Plaintiff's Exhibit 6, 10a, and 10b only show that Van

27    Dusen and Wood purchased insurance from a third party insurer through Swift, not

28

1   that Swift provided insurance to Van Dusen or Wood, and certainly do not show

2   that Swift provided insurance to Wood.

3

4   22.   Mohave is a wholly-owned captive insurance subsidiary of Swift.  *See* Ex. 31

5   at p. 3, Tse Dec. ¶ 5; Ex. 32, Tse Dec. ¶ 6.

6   DEFENDANTS' RESPONSE:

7        Disputed.  The cited evidence does not show that Mohave is owned by

8   Defendant Swift Transportation Co. of Arizona, LLC.  Rather, it shows that

9   Mohave and Swift Transportation Co. of Arizona, LLC have the same corporate

10  parent, Swift Transportation Company.

11

12  23.   Swift insures a "significant portion" of its risks through Mohave.  *See* Ex. 31

13  at p. 22.  Mohave provides reinsurance associated with a share of Swift's automobile

14  liability risk.  *Id.* at p. 3.  In addition to insuring a proportionate share of Swift's corporate

15  casualty risk, Mohave provides reinsurance coverage to third-party insurance companies

16  associated with Swift's affiliated companies' lease operators.  *Id.*  While under dispatch

17  and Swift's operating authority, Swift's lease operators are covered by its liability

18  coverage and self-insurance retention limits.  *Id.*

19  DEFENDANTS' RESPONSE:

20       Disputed.  Page 3 of Plaintiff's Exhibit 13 does not contain this information.

21  Additionally, Page 26 states, "[E]ach [Owner-Operator] is responsible for physical

22  damage to his or her own equipment, occupational accident coverage and liability

23  exposure while the truck is used for non-company purposes. Additionally, fleet

24  operators are responsible for any applicable workers' compensation requirements

25  for their employees."  (Pl.'s Ex. 31, at p. 26.)

26       Immaterial and Irrelevant (LRCiv 56.1(a); FRE 402, 403).  Swift, IEL, and

27  Mohave are distinct and separate corporate entities.  There is no evidence in this

28  case that the entities were improperly commingled.

-87-

1

2    24.    Swift earns premium revenue from its captive insurance companies. *Id.* at

3    p. 31.

4    DEFENDANTS' RESPONSE:

5        Disputed.

6        The cited evidence does not show that Mohave is owned by Defendant Swift

7    Transportation Co. of Arizona, LLC.  Rather, it shows that Mohave and Swift

8    Transportation Co. of Arizona, LLC have the same corporate parent, Swift

9    Transportation Company.  There is no evidence that Defendant Swift

10   Transportation Co. of Arizona, LLC earns revenue from Mohave.

11       Immaterial and irrelevant (LRCiv 56.1(a); FRE 402, 403)  Swift, IEL, and

12   Mohave are distinct and separate corporate entities.  There is no evidence in this

13   case that the entities were improperly comingled.

14

15   25.    Swift uses Aon Hewitt, its insurance broker, to manage Mohave.  *See* Ex. 32

16   ("Swift approached Aon, the firm's existing broker, to manage the captive."); Ex. 6 to

17   PSOF (Doc. 772-7 at p. 80) ("Aon Trucking Practice works as a Risk Management &

18   Insurance Brokerage Firm providing insurance programs for the trucking industry.  The

19   program within this flyer is available solely to independent contractors of Swift

20   Transportation.  Premiums are paid via weekly settlement deductions."); Ex. 10a to PSOF

21   (Doc. 775) at p. 78 (same); Ex. 18 to PSOF (Doc. 775-10) at pp. 17, 30, 39, 45, 54, 68, 77

22   ("AON Trucking Practice works as a Risk Management & Insurance Brokerage Firm

23   providing insurance programs for the trucking industry.  They offer truck insurance as well

24   as occupational accident coverage."); Ex. 10b (Doc. 775-1) at pp. 94-97; Ex. 13 to PSOF

25   (Doc. 775-4) at p. 20.

26   DEFENDANTS' RESPONSE:

27       Disputed.  Defendant Swift Transportation Co. of Arizona, LLC does not

28   manage Mohave, as it is not the corporate parent of Mohave.

-88-

1    Immaterial and irrelevant (LRCiv 56.1(a); FRE 402, 403).  Swift, IEL, and

2    Mohave are distinct and separate corporate entities.  There is no evidence in this

3    case that the entities were improperly comingled.

4

5    26.    Swift monitors and controls the speed that lease operators drive through its

6    use of speed governors affixed to lease operators' trucks.  See 30(b)(6) depo of IEL, Ex. 26

7    to PSOF (Doc. 776-7) at 121:20-122:8 (IEL monitors lease operators' job performance,

8    specifically speed, through truck governor); Ex. 18 to PSOF (Doc. 775-10) at pp. 15, 26,

9    37, 43, 52, 64, 75 (trucks leased through IEL governed at 68 mph, mentor trainers

10   governed at 65 mph); Ex. 7 to PSOF (Doc. 772-8) at p. 14 (trainers' trucks required to be

11   governed at 65 mph); Ex. 9 to PSOF (Doc. 772-10) at p. 35 (same); Ex. 10a to PSOF (Doc.

12   775) at p. 63 (same).

13   DEFENDANTS' RESPONSE:

14   Disputed.  No one from Swift monitors or controls Owner-Operators'

15   location or tracks their progress towards their destination.  (Berry Decl. ¶ 7.)

16   Additionally, Plaintiff's reliance on the lease is misplaced.  The lease has no

17   bearing on whether Plaintiff was in an independent contractor relationship with

18   Swift while he was an Owner-Operator, as IEL and Swift are distinct and separate

19   entities.  (Berry Decl., ¶ 21.)

20   Misstates Testimony.  Murray Spence's testimony immediately following the

21   testimony cited by Plaintiff establishes that IEL does not monitor the speed  of

22   Swift drivers.  (Supp. Mussig Decl., ¶3, Ex. Q, Spence Depo., 122:13-15 ("Q: And

23   do you monitor any of this information with respect to Swift drivers, Swift

24   Company drivers?  A: No.").)

25   Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).

26   Plaintiff's Exhibit 18 lacks foundation and proper authentication.  Plaintiff does not

27   establish that Swift provided him with Exhibit 18, such that he could be familiar

28   with, let alone bound by, its contents.

-89-

1

2   Dated:  September 30, 2016        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3

                        By _____/s/ Robert Mussig_____

4                             RONALD HOLLAND
                           ELLEN M. BRONCHETTI

5                           PAUL S. COWIE
                           ROBERT MUSSIG

6

7                         Attorneys for Defendants
                 SWIFT TRANSPORTATION CO. OF ARIZONA,
               LLC, INTERSTATE EQUIPMENT LEASING, LLC,

8                CHAD KILLEBREW and JERRY MOYES

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:478727456.2                      DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND
                          ADDITIONAL STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO WOOD

1                        **CERTIFICATE OF SERVICE**

2  I hereby certify that on September 30, 2016, I electronically transmitted the attached

3  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4  Notice of Electronic filing to the following CM/ECF registrants:

5

6  Susan Joan Martin
    Jennifer Lynn Kroll
    Martin & Bonnett PLLC

7  1850 N. Central Ave.; Ste. 2010
    Phoenix, AZ  85004

8
    Dan Getman

9  Edward John Tuddenham
    Lesley Tse

10  Getman & Sweeney, PLLC
    9 Paradies La.

11  New Paltz, NY  12561

12  Attorneys for Defendants

13  */s/ Robert Mussig*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-91-