SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
RONALD J. HOLLAND, Cal. Bar No. 148687 *(Pro Hac Vice)*
rholland@sheppardmullin.com
ELLEN M. BRONCHETTI, Cal. Bar No. 226975 *(Pro Hac Vice)*
ebronchetti@sheppardmullin.com
PAUL S. COWIE, Cal. Bar No. 250131 *(Pro Hac Vice)*
pcowie@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415-434-9100
Facsimile:    415-434-3947

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
ROBERT MUSSIG, Cal. Bar No. 240369 *(Pro Hac Vice)*
rmussig@sheppardmullin.com
ANNA M. STANCU, Cal. Bar No. 288283 *(Pro Hac Vice)*
astancu@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071
Telephone:    213-620-1780
Facsimile:    213-620-1398

Attorneys for Defendants
SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, INTERSTATE EQUIPMENT LEASING, LLC, CHAD KILLEBREW and JERRY MOYES

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VIRGINIA VAN DUSEN; JOHN DOE 1; and JOSEPH SHEER, individually and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>SWIFT TRANSPORTATION CO., INC.; INTERSTATE EQUIPMENT LEASING, INC.; CHAD KILLIBREW; and JERRY MOYES,<br><br>Defendants. | Case No. CV 10-899-PHX-JWS<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF VIRGINIA VAN DUSEN'S STATUS AS AN INDEPENDENT CONTRACTOR**<br><br>[Filed concurrently with Reply to Plaintiff's Controverting and Additional Statements of Fact, Supplemental Declaration of Robert Mussig, and Declaration of Anna M. Stancu] |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................ 1

II.  LEGAL ARGUMENT ........................................................................................ 3

   A.   Van Dusen Cannot Dispute That She Exercised Control Over The Manner and Means By Which She Performed Her Work ............................... 3

   B.   Van Dusen Cannot Dispute That She Was Responsible For Investing In All Equipment, Material, Labor, And Tools She Needed To Run Her Business .................................................................................................. 8

   C.   Van Dusen Admits That There Was No Limit To The Amount Of Money She Could Earn As An Owner-Operator, Thus, Her Lack Of Success Highlights Rather Than Obviates The Opportunity She Had For Profit Or Loss Based On Her Managerial Skill ...................................... 9

   D.   Van Dusen's Cited Cases Are Inapposite ....................................................... 10

III. CONCLUSION .................................................................................................. 11

-i-

SMRH:479346244.1   DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO PLAINTIFF VIRGINIA VAN DUSEN'S STATUS AS AN INDEPENDENT CONTRACTOR

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aviles v. Quik Pick Express, LLC*
  2015 U.S. Dist. LEXIS 174960 (C.D. Cal. Dec. 3, 2015) .......................................... 6, 8

*Carney v. JNJ Express, Inc.*
  10 F. Supp. 3d 848, 853-854 (W.D. Tenn. 2014) ....................................................... 6, 8

*Chao v. Mid-Atlantic Installation Servs.*
  16 Fed. Appx. 104 (4th Cir. 2001) ................................................................................. 9

*Davis v. Larson Moving & Storage Co.*
  2008 U.S. Dist. LEXIS 87251 (D. Minn. Oct. 27, 2008) ........................................... 6, 8

*Dole v. Amerilink Corp.*
  729 F. Supp. 73 (E.D. Mi. 1990) .................................................................................... 9

*GreenFleet Systems v. Int'l Bro. of Teamsters*
  2015 WL 1619964 (NLRB Div. of Judges Apr. 9, 2015) ............................................. 11

*Max Trucking LLC v. Liberty Mut. Ins. Corp.*
  802 F. 3d 793 (6th Cir. 2014) ....................................................................................... 11

*Time Auto Transport v. NLRB*
  377 F.3d 496 (6th Cir. 2004) ........................................................................................ 10

*Van Dusen v. Swift*
  544 Fed. App'x 724 (9th Cir. 2013) (*Van Dusen II*) ...................................................... 1

*Van Dusen v. Swift*
  No. 15-70592, 2016 U.S. App. LEXIS 13575 (9th Cir. 2016) (*Van Dusen III*) ........................................................................................................... 1, 7

*Wolcott v. Nationwide Mut. Ins. Co.*
  884 F.2d 245 (6th Cir. 1989) ........................................................................................ 10

Statutes

Federal Arbitration Act, 9 U.S.C. § 1 ................................................................................. 1

## I. INTRODUCTION

Plaintiffs' opposition fails to raise any triable issue of material fact indicating that Defendants misclassified Plaintiff Virginia Van Dusen as an independent contractor.[1] The opposition was filed on behalf of all five Plaintiffs, and consists entirely of sweeping generalizations about *all* Owner-Operators and *all* Plaintiffs. However, Plaintiffs fail to cite evidence supporting these broad, sweeping conclusions. With respect to virtually every purported "fact" they assert, the opposition cites the deposition testimony of Plaintiffs ***other than Van Dusen***. None of the other Plaintiffs testified about Van Dusen's experiences. Plaintiffs cherry-pick the testimony they like best for each fact and simply ignore contravening testimony by Van Dusen. The net effect is that Plaintiffs utterly fail to set forth a full and coherent opposition on behalf of Van Dusen.

Van Dusen fails to dispute that, during the time she was an Owner-Operator:

- She did not receive any handbooks or other documents from Swift outlining any policies, rules, or regulations that she had to follow – the only document she received was a handout suggesting that she regularly clean out her trailer;

---

[1] Defendants maintain the Court should not entertain Plaintiffs' or Defendants' pending summary judgment motions. Consistent with the views expressed by two of the three judges on the Ninth Circuit panel in *Van Dusen v. Swift*, No. 15-70592, 2016 U.S. App. LEXIS 13575 (9th Cir. 2016) (*Van Dusen III*), the Court should vacate the pending summary judgment motions and determine whether Plaintiffs' ICOAs are exempt from arbitration based solely on the four corners of the agreements themselves. In *Van Dusen v. Swift*, 544 Fed. App'x 724 (9th Cir. 2013) (*Van Dusen II*), the Ninth Circuit held that the Court "must determine whether the [ICOAs] are exempt [from arbitration] under § 1 of the FAA before it may consider Swift's motion to compel." The Court interpreted this to mean it should examine the entire relationship between the parties and determine whether Plaintiffs were properly classified as independent contractors or whether they were actually employees, which is the ultimate question in the case. In *Van Dusen III*, Judge Andrew D. Hurwitz and Judge Sandra S. Ikuta (who was on the panel in *Van Dusen II*) agreed that this approach is incorrect and that the Court should determine whether the section 1 exemption applies based solely on the language in the ICOAs. Based on *Van Dusen III*, Defendants have filed a filed a motion for reconsideration of the Court's prior orders requiring discovery and trial on this issue. (Doc. 820.)

- She had the autonomy to develop a fleet of trucks, hire as many employees as she wanted, and direct those employees as to how to drive her truck and deliver loads (the fact that she chose not to exercise this autonomy, whether due to perceived financial constraints or some other reason, is irrelevant),
- She had the ability to, and in fact did, drive as a part of a "driver team" with her husband;
- Her ICOA did not preclude her from driving for other carriers and using her truck for any reason she saw fit, as long as she removed all placards displaying Swift's name from her truck;
- She was free to accept or decline any loads offered by Swift, and in fact could choose not to accept any loads at all if that was her decision;
- She was free to purchase or rent the products and/or equipment she needed to perform her work – including her truck – from any company she desired;
- She had full decision-making authority with respect to delivery of loads, including the ability to choose the route taken, where to purchase fuel, and where to obtain any necessary repairs;
- No one from Swift was ever present when Van Dusen performed her work as an Owner-Operator, no one from Swift met with her at freight pick-up sites, and no one directed Van Dusen regarding how to carry out her work;
- She controlled her own schedule and hours, and she could return home and take time off as she pleased; and
- She was responsible for obtaining and paying for all of the tools and equipment she needed as an Owner-Operator, and she made a substantial investment of thousands of dollars in her truck and equipment necessary to run her business.

These admissions conclusively demonstrate that no employment relationship existed between Van Dusen and Swift – let alone between Van Dusen and IEL (which merely leased her a truck and never had any contact with her outside that transaction).

Rather than genuinely disputing the facts presented by Defendants in their moving papers, Van Dusen relies almost entirely on speculation, the cherry-picked testimony of **other** plaintiffs regarding their **own** alleged experience and **not hers**, mischaracterizations of the record, conflation of procedures which applied to employees with those for Owner-Operators, and citations to inapposite cases, in order to create the appearance of a disputed material fact.  These efforts fail.  Van Dusen has presented no competent evidence that Defendants controlled the manner and means in which she performed her work, has not disputed that she made substantial investments in the tools and equipment required to conduct her business as an Owner-Operator, has not disputed that her success or failure as an Owner-Operator depended on her entrepreneurialism and managerial skill, and has not disputed that she was paid as an independent contractor.  Accordingly, Defendants have carried their burden to establish that no employment relationship existed between Defendants and Van Dusen during the time she was an Owner Operator.  Defendants are therefore entitled to summary judgment.

## II.    LEGAL ARGUMENT

### A.    Van Dusen Cannot Dispute That She Exercised Control Over The Manner and Means By Which She Performed Her Work

As set forth in Defendants' moving papers, Van Dusen had full control over the manner and means of performing her work.  As an Owner-Operator, Van Dusen was free to hire employees and laborers and assign someone to drive in her place, determine her own routes and stops, and work to achieve success by developing her own fleet of trucks.  (UMFs 27, 28, 39, 41.)  Van Dusen had full autonomy to determine her own working conditions.

Van Dusen does not present any competent evidence to create a triable issue in response to these facts, but instead relies on rank conjecture, misstatements of the record, and *other* plaintiffs' self-serving testimony about their personal beliefs and experience which have no application to her.  Van Dusen's attempts to obfuscate and mislead the Court should be rejected.

First, Plaintiffs argue that Swift controlled Van Dusen because it had "extensive policies" that she had to follow.  (Oppo., 3:5-4:3.)  This claim is contradicted by Van Dusen's own deposition testimony.  Van Dusen testified under oath she did not receive any policies as an Owner-Operator (aside from a handout suggesting that she regularly clean out her trailer), and **understood that Swift's policies did not apply to her as an Owner-Operator**.  (*See* UMFs 14, 15.)  Rather, the policies discussed in the opposition brief are those contained in the **employee** handbook, which by its own terms expressly applied only to employee drivers.  The opposition cites 2 pages in the 208-page employee handbook which mention Owner-Operators.  Critically, those 2 pages state that both employee drivers and Owner-Operators must comply with Department of Transportation ("DOT") regulations regarding hours of service, and describe the manner in which a truck is to be operated in compliance with DOT safety regulations.  (*See* Van Dusen's Additional Statement of Facts [Doc. 799], Facts 11-13 (citing Plaintiffs' "Ex. 14b,  p.3, Bates 5408" and "Ex. 14b, Sec. 6, p.1, DEF5064" [Doc. 775-6]).)  These cited pages do not purport to bind Owner-Operators to any Swift company policies.  The opposition also references two documents (the "Pre-CABS Manual" and "Contracted Driver Manual") **which Van Dusen admits she never received, did not even know existed, and which did not apply to her** (*see* UMFs 14, 15) and speculates that Swift *could have* applied these policies to her (Oppo., 4:4-11, fns. 5, 6).  This type of speculation is not evidence, and cannot create a triable issue as a matter of law.

Second, Van Dusen does not dispute that she never received any type of performance review or evaluation as an Owner-Operator, but attempts to dismisses this key fact by claiming that "the weekly financial obligations the lease imposed on Plaintiffs rendered formal evaluations unnecessary."  (UMF 16; Oppo., 4:21-24.)  The fact that Van Dusen may have had personal financial obligations does not create an employment relationship.  By this logic, a wealthy Owner-Operator contracting with Swift under the same facts and circumstances would be an independent contractor, while Van Dusen

-4-

SMRH:479346244.1   DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO PLAINTIFF VIRGINIA VAN DUSEN'S STATUS AS AN INDEPENDENT CONTRACTOR

would be deemed an employee simply because she had bills to pay.  There is no legal support for this position.

Third, the opposition claims that, because Van Dusen was required to stay within the legal speed limit and otherwise follow traffic regulations and DOT safety regulations, Swift exerted control over her.  (Oppo., 5:2-5, 6:5-12.)  This argument is simply absurd. *All* drivers on the road are subject to applicable traffic laws and safety regulations.  These are not requirements set by Swift but by the government, and therefore do not evince any "control" by Swift.  Van Dusen also argues that the existence of an Omni-tracs/Sensor-tracs device in her truck, which listed her speed, location, estimated time of arrival, and other statistics, is evidence of Swift's control.  (Oppo., 5:10-20.)  However, Van Dusen does not dispute that Swift did not monitor these statistics, and she does not claim that they had any ramifications for her.  (*See* Berry Depo., 97:11-98:11; Berry Decl., ¶ 7.)  The opposition cites Plaintiff Motolinia's testimony that **Motolinia** once received a message on his Qualcomm when she stopped with a high-value load, yet this claim – even if true – has no bearing on Van Dusen's relationship with Swift.  This misguided attempt to avoid Van Dusen's deposition testimony fails.

Fourth, the opposition attempts to dispute Van Dusen's sworn testimony that she was free to drive any route she wanted when delivering her cargo, and could stop wherever she chose for fuel, repairs, or other purposes.  (UMFs 8, 18, 24, 34.) The opposition claims that because Swift suggested a recommended route and recommended stops to Plaintiffs, Swift somehow *mandated* routes and stops, and thus exerted control over them.  (Oppo., 7:1-8:17.)  Yet, there is no evidence that Van Dusen was required to take certain routes, and in fact, she admits that Swift never precluded her from taking an alternative route. (UMF 18.)  Thus, plainly, there was no *mandate* that Van Dusen or any other Plaintiff follow the recommended routes.  (*Id*.)

Fifth, the opposition desperately tries to downplay key indicators of Van Dusen's autonomy as an Owner-Operator, such as the ability to:

-5-

SMRH:479346244.1      DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO PLAINTIFF VIRGINIA VAN DUSEN'S STATUS AS AN INDEPENDENT CONTRACTOR

(1) use her truck to perform work in partnership with other companies or for whatever personal reasons she chose (UMFs 11, 30.)

(2) drive dedicated routes for a particular customer if she desired, thereby determining her own schedule, the route she drove, the cargo she carried, the business for whom she conducted deliveries, and the regularity with which she was available to take on other work (*see* Berry Depo. 15:14-16:6; 19:11-20:14), and

(3) choose what terminal she was based out of, and the routes she wanted to drive (line-haul, dedicated, or intermodal) (*see* Berry Depo. 15:14-16:6; 19:11-20:14).

(Oppo., 8:18-9:12.)

The opposition claims, without any support, that these are insignificant to the determination of whether Swift exerted control over the manner and means in which Van Dusen performed her work.  This is plainly not so, as courts commonly look to these precise factors to determine whether an independent contractor relationship existed.  *See*, *e.g.*, *Aviles v. Quik Pick Express, LLC*, 2015 U.S. Dist. LEXIS 174960, *11-13 (C.D. Cal. Dec. 3, 2015) (finding a putative class of truck drivers to be independent contractors because, for example, (1) drivers set their own schedule; (2) the company did not instruct the drivers on what routes to take or when and where to stop for fuel; (3) drivers could balance their loads as they saw fit in order to increase efficiency; (4) drivers could work for other companies); *Carney v. JNJ Express, Inc.*, 10 F. Supp. 3d 848, 853-854 (W.D. Tenn. 2014) (drivers were considered independent contractors because they were "responsible for determining the means of their performance under the Leases, including equipment, routes, and scheduling."); *Davis v. Larson Moving & Storage Co.*, 2008 U.S. Dist. LEXIS 87251, 17-18 (D. Minn. Oct. 27, 2008) (truck driver was properly classified as an independent contractor because, for instance, plaintiff assumed control over selection of routes and fuel stops, decisions about maintenance of her truck, arrangements for loading and unloading her truck, and scheduling work hours and rest periods, subject to legal requirements and the needs of Defendant's customers).

Sixth, while Van Dusen admitted at deposition that she could drive as part of a team *and in fact did so*, could assign someone of her choosing to drive in her place, and could hire employees and laborers to work for her (UMFs 27, 28, 41), the opposition now claims this is not so because Van Dusen's truck lease with IEL purportedly said that she could only assign a driver to drive her leased truck if she was "ill, disabled, or otherwise unable to drive the Equipment." (Oppo., 9:13-25.) This argument is unavailing. For one thing, it contradicts Van Dusen's sworn deposition testimony. Van Dusen cannot avoid her own deposition admissions. Moreover, Plaintiffs concede at another point in their brief that under the terms of the lease, lessees had the ability to hire drivers to work for them at any time, not just if they were "ill" or "disabled" – indeed the contract states that someone could drive in their place <u>anytime</u> the lessee was "otherwise unable to drive the Equipment." (Oppo., 9:20-22.) The only limit on this right was that such individuals had to meet DOT regulations and other state and federal legal requirements (which also apply to Swift and every other trucking company in the United States). (*See* UMF 46; Defendants' Response to Plaintiffs' Purportedly Undisputed Material Facts, Fact No. 176 [Doc. 797]). **<u>Plaintiffs do not dispute that, in practice, neither Swift nor IEL exerted oversight over the employees that Owner-Operators chose to hire, and rarely, if ever, took any action regarding any Owner-Operator's decision to hire any particular employee</u>**. (Berry Decl. ¶ 10; Spence Depo., 62:22-63:19 (IEL does not approve or reject substitute drivers).) Finally, a term in Van Dusen's contract with *IEL* is not evidence of an employment relationship between Van Dusen and *Swift*. Van Dusen does not claim that she performed work for IEL, nor that Swift exercised veto power over who drove her truck. Any control exerted by IEL as a company leasing high value equipment to Van Dusen is analogous to the control a bank exerts over an individual leasing a car and, in any event, is irrelevant to the determination of the type of relationship Van Dusen had with Swift.

Seventh, the opposition claims that Swift exerted control over Van Dusen simply by virtue of the fact that it offered her loads (which she could freely decline) and had a

particular customer base for which it could offer loads.  (Oppo., 11:18-23.)  As a matter of law, this is insufficient to establish that Swift exerted sufficient control over Van Dusen to make her an employee.  If it were, a trucking company could never contract with independent contractor drivers, which clearly is not the case.  *See, e.g.*, *Aviles*, 2015 U.S. Dist. LEXIS 174960, *11-13; *Carney*, 10 F. Supp. 3d at 853-54; *Davis*, 2008 U.S. Dist. LEXIS at 17-18; *Young*, Case No. 08-46182 RR (filed with Defendant's Request for Judicial Notice [Doc. 756]).  What is important is the undisputed fact that, regardless of what loads Swift had available and offered to him, Van Dusen could select what loads she wanted to pick up, could decline loads and independently determine when to work, where, and how long to work.  (UMFs 7, 11, 22, 23, 27, 43.)  Van Dusen admitted that she knew she had the ability and authority to decline loads that were offered to her as an Owner-Operator, and she admits that she made decisions regarding which loads to accept or decline based on what she in her discretion thought would "make money."  (UMFs 19, 20, 43.)  In fact, Van Dusen testified that while she rarely turned down loads, it was entirely her choice, as she felt it was a smart business decision to maximize the loads she delivered.  (UMF 20.)  No one at Swift could force Van Dusen to take a load, and Van Dusen would not be disciplined if she turned down a load.  (Berry Depo. at 81:25-82:13; 268:5-7.)  Thus, it was Van Dusen – not Swift – who exercised control over what loads Van Dusen delivered.

**B.      Van Dusen Cannot Dispute That She Was Responsible For Investing In All Equipment, Material, Labor, And Tools She Needed To Run Her Business**

Van Dusen invested thousands of dollars into the lease of her truck as an Owner-Operator; paid for the repair, maintenance, and upkeep of her truck; and paid for her own insurance, fuel, Bluetooth, and all other costs involved in performing her work as an Owner-Operator.  (UMFs 32, 34-37.)  Van Dusen does not dispute any of this.  Instead, the opposition focuses on the relatively low start-up cost to become an Owner-Operator as a red herring to distract the Court from the substantial investment Van Dusen ultimately made in her trucking business.  (Oppo., 16:7-12.)  The fact that Owner-Operators are

generally only required to make a $500 down payment to lease a truck from IEL is irrelevant, because Van Dusen did not merely pay $500, but in fact paid *thousands of dollars* for her equipment while she was an Owner-Operator.  (UMF 33.)  The key fact is not the amount of money an Owner-Operator put down, but that **neither IEL nor Swift paid for anything Van Dusen needed to perform her work as an Owner-Operator**.  (UMF 32.)  By contrast, when Van Dusen worked as an employee driver, Swift provided her with all the equipment and tools she needed to perform her work, including her truck, gas, maintenance, repair, insurance, and any other instrumentalities that she may need.  (*See* Van Dusen Depo. at 28:19-29:7; 29:9-12; 148:7-9; 29:14-16; 125:3-5; 130:1-9.)  Furthermore, Van Dusen sets forth no evidence indicating that Swift would have paid any employees she chose to hire.  Under these facts, Van Dusen's status as an independent contractor cannot be disputed.  *See Chao v. Mid-Atlantic Installation Servs.*, 16 Fed. Appx. 104, 107 (4th Cir. 2001) (explaining that expenditures on instrumentalities to perform work are usually expected of independent contractors but not of employees, who are given the tools to perform their job by their employer); *see also Dole v. Amerilink Corp.*, 729 F. Supp. 73, 76 (E.D. Mi. 1990) (same).

C.     **Van Dusen Admits That There Was No Limit To The Amount Of Money She Could Earn As An Owner-Operator, Thus, Her Lack Of Success Highlights Rather Than Obviates The Opportunity She Had For Profit Or Loss Based On Her Managerial Skill**

As set forth in Defendants' moving papers, Van Dusen testified at length that when she was an Owner-Operator, she was aware that she could take business risks in order to earn more money, such as leasing or owning multiple trucks, and hiring employees to drive and perform other work for her.  (UMF 38.)  She admits that her decision to drive as part of a team with her husband was motivated by her desire to maximize her income, which would increase if she drove as part of a team.  (UMFs 25, 26, 41.)  She further admits that she understood that managing multiple trucks *would enable her to make more money*.

(UMF 40.)  Indeed, Van Dusen testified that there was *no limit* on the amount of money she could have earned as an Owner-Operator.  (UMF 42.)

Van Dusen voluntarily chose not to lease or own multiple trucks, or to hire any employees (aside from her husband), even though she admits that other Owner-Operators did so and were successful because of it.  (UMFs 38-40.)  Now, she attempts to characterize her refusal to take on this type of business risk as proof that she had no opportunity for profit or loss based on her managerial skill.  (Oppo., 16:20-17:6.)  This characterization fails.  Contrary to Van Dusen's characterization, her decision <u>not</u> to develop her own business and the fleet she knew she could own shows that Owner-Operators' managerial skill directly affected their profit or loss – which is a critical factor in determining whether Van Dusen was properly classified as an independent contractor. *Wolcott v. Nationwide Mut. Ins. Co.*, 884 F.2d 245, 251 (6th Cir. 1989) (applying the common law agency test to determine if an independent contractor relationship existed and finding that the fact that the plaintiff "exercised managerial skill in the operation of her business" weighed in favor of an independent contractor relationship).

### D.     <u>Van Dusen's Cited Cases Are Inapposite</u>

Finally, Van Dusen attempts to analogize her relationship with Swift to those of drivers in several inapposite and easily distinguishable cases.  As one example, in *Time Auto Transport v. NLRB*, 377 F.3d 496 (6th Cir. 2004), the Court determined that the drivers' relationship with Time Auto was akin to an employment relationship because (1) Time Auto evaluated their performance, terminated drivers for inadequate performance, and used the threat of termination for performance deficiencies as a means to control the drivers; (2) the drivers could not determine what types of routes they took (e.g., long-haul, intermodal, dedicated); (3) the drivers were required to follow detailed instructions from Time Auto's dispatchers for each and every delivery they made and were ordered to wait whenever they did not receive a load, such that they were expressly forbidden from driving for other companies; (4) Time Auto ordered and expected drivers to violate federal restrictions.  None of these factors exist here, as set forth in Defendants' Motion and

-10-

section II.A. above.  Thus, Van Dusen cannot rely on *Time Auto*'s holding to establish that her relationship with Swift was an employment relationship.  Similarly, *Max Trucking LLC v. Liberty Mut. Ins. Corp.*, 802 F. 3d 793 (6th Cir. 2014) is distinguishable because the drivers in that case did not and could not maintain their own businesses or employees, contrary to Van Dusen and other Swift Owner-Operators.  *See also GreenFleet Systems v. Int'l Bro. of Teamsters*, 2015 WL 1619964 (NLRB Div. of Judges Apr. 9, 2015) (same).

### III.  CONCLUSION

For the foregoing reasons, and as set forth more fully in Defendants' moving papers, Defendants respectfully request that the Court issue an order granting summary judgment in favor of Swift on the issue of Van Dusen's independent contractor status.

Dated:  September 30, 2016          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    /s/ Robert Mussig
RONALD HOLLAND
ELLEN M. BRONCHETTI
PAUL S. COWIE
ROBERT MUSSIG

Attorneys for Defendants
SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, INTERSTATE EQUIPMENT LEASING, LLC, CHAD KILLEBREW and JERRY MOYES

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic filing to the following CM/ECF registrants:

Susan Joan Martin
Jennifer Lynn Kroll
Martin & Bonnett PLLC
1850 N. Central Ave.; Ste. 2010
Phoenix, AZ  85004

Dan Getman
Edward John Tuddenham
Lesley Tse
Getman & Sweeney, PLLC
9 Paradies La.
New Paltz, NY  12561

Attorneys for Defendants

*/s/ Robert Mussig*