SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
RONALD J. HOLLAND, Cal. Bar No. 148687 *(Pro Hac Vice)*
rholland@sheppardmullin.com
ELLEN M. BRONCHETTI, Cal. Bar No. 226975 *(Pro Hac Vice)*
ebronchetti@sheppardmullin.com
PAUL S. COWIE, Cal. Bar No. 250131 *(Pro Hac Vice)*
pcowie@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415-434-9100
Facsimile:    415-434-3947

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
ROBERT MUSSIG, Cal. Bar No. 240369 *(Pro Hac Vice)*
rmussig@sheppardmullin.com
ANNA M. STANCU, Cal. Bar No. 288283 *(Pro Hac Vice)*
astancu@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071
Telephone:    213-620-1780
Facsimile:    213-620-1398

Attorneys for Defendants
SWIFT TRANSPORTATION CO. OF
ARIZONA, LLC, INTERSTATE EQUIPMENT
LEASING, LLC, CHAD KILLEBREW and
JERRY MOYES

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VIRGINIA VAN DUSEN; JOHN DOE 1; and JOSEPH SHEER, individually and on behalf of all other similarly situated persons,<br><br>                    Plaintiffs,<br><br>v.<br><br>SWIFT TRANSPORTATION CO., INC.; INTERSTATE EQUIPMENT LEASING, INC.; CHAD KILLIBREW; and JERRY MOYES,<br><br>                    Defendants. | Case No. CV 10-899-PHX-JWS<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL STATEMENTS OF FACT RE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF JOSEPH SHEER'S STATUS AS AN INDEPENDENT CONTRACTOR**<br><br>[Filed concurrently with Reply to Plaintiff's Opposition, Declaration of Anna M. Stancu, and Supplemental Declaration of Robert Mussig] |

1    Defendants Swift Transportation Co. of Arizona, LLC and Interstate Equipment

2  Leasing Co. hereby reply to Plaintiff Joseph Sheer's purported "Controverting and

3  Additional Statements of Fact" filed in response to Defendants' Separate Statement of

4  Undisputed Material Facts.

5

6  **DEFENDANTS' UNDISPUTED MATERIAL FACTS, PLAINTIFF'S PURPORTED**

7  **"CONTROVERTING AND ADDITIONAL STATEMENTS OF FACT," AND**

8  **DEFENDANTS' REPLY**

9    1.    Sheer was an Owner-Operator for Swift from August 7, 2006 to April 2009.

10  [Declaration of Robert Mussig ("Mussig Decl."), ¶ 2, Ex. A, Deposition of Joseph Sheer

11  ("Sheer Depo."), pg. 23:18-25.]

12    PLAINTIFF'S RESPONSE:

13    DENIED.  Mr. Sheer signed a lease/contract document on August 7, 2006 by which

14    he leased a tractor from IEL and simultaneously leased it back to Swift.  At no time

15    did he own the truck he leased or any other equipment provided by Central.  Doc.

16    772-3, Ex. 2 at MS 93:10-22 ("an owner-operator is a person who owns his own

17    truck.  We didn't own those trucks.  We were trying to own those trucks, but we

18    didn't own those trucks").  Accordingly, the term "owner-operator" is incorrectly

19    applied and Plaintiff objects to and disputes its use throughout Defendants'

20    Statement of Facts.  Plaintiffs admit that the Company used the term "owner

21    operator" as a colloquial label for Lease Operators and that usage induced drivers to

22    use the terminology on occasion.

23    DEFENDANTS' REPLY:

24      Plaintiff admits that he entered into an ICOA with Swift on April of 2009,

25    thereby becoming an Owner-Operator, and not an employee, of Swift.  As such,

26    Plaintiff does not actually dispute this Undisputed Material Fact.

27      Plaintiff's claim that he did not have any equity interest in the truck he leased

28    from IEL is disingenuous.  Similar to a car lease, Plaintiff had the option to

-1-

1  purchase the truck for an agreed-upon residual value upon the expiration of the

2  lease.  (Supp. Mussig Decl., ¶ 3, Ex. H, Spence Depo. pgs. 80:19-82:4.)  The lease

3  contained a provision that governed Plaintiff's possible purchase of the truck from

4  IEL following the expiration of the lease term.  (Mussig Decl., ¶ 4, Ex. C, Sheer

5  Lease Agreement, ¶ 18.).

6

7  2.      When Sheer first became an Owner-Operator, he entered into an Independent

8  Contactor Agreement with Swift.  [Mussig Decl., ¶ 3, Ex. B, Sheer's Independent

9  Contractor Agreement dated August 7, 2006 ("Sheer's ICOA").]

10  PLAINTIFF'S RESPONSE:

11  DENIED.  Mr. Sheer entered into contracts with Swift and IEL on the date

12  indicated.  Plaintiff denies that he owned any of the equipment he used and was not,

13  therefore, an owner-operator.  Plaintiff admits that the contracts set forth, in part,

14  the terms and conditions of his relationship with Swift but denies that the nature of

15  the relationship was an independent contractor relationship.  Swift cites no evidence

16  to support its assertion that Mr. Sheer owned the equipment he was leasing or that

17  his relationship with Swift was that of an independent contractor.

18  DEFENDANTS' REPLY

19  Plaintiff admits that he entered into an ICOA with Swift, thereby becoming

20  an Owner-Operator, and not an employee, of Swift.  As such, Plaintiff does not

21  actually dispute this Undisputed Material Fact.

22  Plaintiff's claim that he did not have any equity interest in the truck he leased

23  from IEL is disingenuous.  Similar to a car lease, Plaintiff had the option to

24  purchase the truck for an agreed-upon residual value upon the expiration of the

25  lease.  (Supp. Mussig Decl., ¶ 3, Ex. H, Spence Depo. pgs. 80:19-82:4.)  The lease

26  contained a provision that governed Plaintiff's possible purchase of the truck from

27  IEL following the expiration of the lease term.  (Mussig Decl., ¶ 4, Ex. C, Sheer

28  Lease Agreement, ¶ 18.)

3.     Before signing his ICOA, Sheer read portions of it and understood that the term "Contractor" as used in the ICOA referred to him.  [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 132:14-20.]

PLAINTIFF'S RESPONSE:

ADMITTED.  Admit the Contract drafted by Swift identified Mr. Sheer as the "Contractor."

DEFENDANTS' REPLY:

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  At deposition, when asked, "when you reviewed th[e] [ICOA] before signing it, you understood that the term contractor referred to you, right?," Plaintiff unequivocally testified, "Yes."  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 132:14-20.)

4.     The ICOA between Sheer and Swift states that "[Sheer] shall be considered an Independent Contractor and not an employee of [Swift]."  [Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 18.]

PLAINTIFF'S RESPONSE:

DENIED.  Plaintiff admits that the quoted sentence appears in the contract he signed but denies that his relationship with Swift was that of an independent contractor.  The contract read as a whole in light of the circumstances of the whole activity establishes that he was an employee not an independent contractor.  *See Deposition* of Joseph Mark Sheer, Doc. 772-3, Ex. 2 (hereinafter "JS") 88:25-92:6 (did not understand he was going to be an independent contractor; thought that was legalese that he was still going to working for Swift and not independent).

DEFENDANTS' REPLY:

Plaintiff admits that his ICOA with Swift state that he was independent contractor, not an employee, of Swift.  As such, Plaintiff does not actually dispute this Undisputed Material Fact.

1    Additionally, Plaintiff admits that no one at Swift prevented him from

2    reading the ICOA or speaking with the an attorney about the ICOA if he was

3    confused about any alleged "legalese."  (Supp. Mussig Decl., ¶ 2, Ex. G,

4    Sheer Depo., pgs. 87:18-21, 88:1-3.)  Plaintiff admits that he did, in fact,

5    read through the ICOA before signing it, including Paragraph 18.  (Supp.

6    Mussig Decl., ¶ 2, Ex. G, Sheer Depo., pg. 89:15-19.)

7

8    5.    The ICOA between Sheer and Swift states that Sheer was solely responsible

9    for determining the "method, means and manner" of performing work and providing

10   services under the ICOA.  [Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 18.]

11   <u>PLAINTIFF'S RESPONSE:</u>

12   DENIED.  Plaintiff admits that the quoted sentence appears in the contract but

13   denies the truth of the statement.  The contract/lease read as a whole and in light of

14   the circumstances of the whole activity establishes that Swift controlled all

15   necessary aspects of the method, means and manner of performing his work.  The

16   quoted section of the ICOA is contradicted by numerous other sections of the ICOA

17   and the Lease and by the rules and regulations of Swift.  *See e.g.* Defendants'

18   "exclusive possession, control, and use of the equipment during the term of this

19   [Contract]."  Contract ¶ 5A; Swift 30(b)(6) by Berry at 21; PSOF ¶ 65.  *See also*

20   PSOF ¶¶ 27, 38, 41, 42, 49, 51-57, 101, 134, 140, 141, 162.  *See also* PSOF ¶ 65

21   and PSOF ¶ 27 (Swift termination of Sheer and subjecting to collections), ¶ 38

22   (termination of Schwalm), ¶ 41 (termination of Wood), ¶ 42 (Swift termination of

23   Wood a second time), ¶ 49 (no equity in truck for terminated driver), ¶¶ 51-57

24   (lease drivers can be terminated for violating Swift policies and placed in default,

25   losing possession of truck and acceleration of all remaining lease payments;

26   termination of contract is the most common reason for termination of lease), ¶ 101

27   (listing wide variety of policies applicable to lease drivers as well company drivers),

28   ¶ 134 (lease and employee drivers encouraged to take all loads offered), ¶ 140

-4-

1  (punishment of drivers who refuse loads), ¶ 141 (Swift's admission that drivers who

2  refuse loads can sit for 48 hours), ¶ 162 (Swift assignment of loads), ¶ 199

3  (mandating electronic logs).

4  <u>DEFENDANTS' REPLY:</u>

5        Plaintiff admits that his ICOA with Swift states that he was solely

6  responsible for the method, means and manner of performing work and services

7  under the ICOA.  As such, Plaintiff does not actually dispute this Undisputed

8  Material Fact.

9        Moreover, Plaintiff admits that his experience was consistent with this

10  contract language.  For example, Plaintiff admits that he was free to accept

11  or decline loads offered by Swift as an Owner-Operator.  (Mussig Decl., ¶ 2,

12  Ex. A, Sheer Depo., pgs. 121:22-122:7.)  Plaintiff also admits that he was

13  free to choose whatever route he wanted to take to deliver loads.  (*Id*. at

14  Sheer Depo., pg. 124:22-25.)

15        Furthermore, Plaintiff's claim that Defendants had exclusive "control" over

16  his truck is simply false.  Owner-Operators have always been free to accept and

17  decline freight loads offered to them by Swift – including high value loads.

18  (Mussig Decl., ¶ 7, Ex. F, Berry Depo., pgs. 157:21-158:4.)  Further, Owner-

19  Operators are entitled to haul for other carriers as long as they removed any Swift

20  indicia from their truck.  (*Id.* at Berry Depo., pg. 216:1-25; Mussig Decl., ¶ 3,

21  Ex. B, Sheer's ICOA, ¶ 5(b).)

22        There is absolutely no evidence in this case that Swift ever took

23  "possession, control [or] use" of Plaintiff's truck.  Plaintiff's reference to any

24  such unexercised "right" is simply a red herring.

25        Moreover, Swift's ability to terminate the ICOA without cause is

26  irrelevant.  Plaintiff had the same right, and if he chose to exercise that right,

27  he could have simply driven for another carrier.  (Mussig Decl., ¶ 3, Ex. B,

28

-5-

DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL
STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO SHEER

1  Sheer's ICOA, ¶¶ 5(b), 17(a); Supp. Mussig Decl., ¶ 3, Ex. H, Spence Depo.,

2  pgs. 59:5-60:17.)

3  Plaintiff's reliance on the terms of his lease with IEL is misplaced.

4  The IEL lease has no bearing on whether Plaintiff was in an independent

5  contractor relationship with Swift while he was an Owner-Operator, as IEL

6  and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  In any

7  event, the evidence establishes that IEL never enforced any purported

8  contract language limiting the ability of Owner-Operators to drive for

9  carriers other than Swift, as it leased to individuals with no affiliation with

10 Swift whatsoever.  (Supp. Mussig Decl., ¶ 3, Ex. H, Spence Depo.,

11 pgs. 59:5-60:17.)  Plaintiff offers no evidence that these contract provisions

12 were ever enforced against him.

13 Finally, Plaintiff improperly relies on testimony of the other Plaintiffs

14 as evidence of his own personal experiences.  Such testimony cannot create a

15 genuine issue of disputed fact as a matter of both law and common sense.

16

17 6.     The ICOA between Sheer and Swift states that Sheer was "not required to

18 purchase or rent any products, equipment, or services from [Swift]."  [Mussig Decl., ¶ 3,

19 Ex. B, Sheer's ICOA, ¶ 4.]

20 PLAINTIFF'S RESPONSE:

21 [*Plaintiff did not respond to this Undisputed Material Fact.  Therefore it should be*

22 *deemed admitted.*]

23

24 7.     The ICOA between Sheer and Swift states that Sheer had no obligation to

25 accept any loads tendered by Swift.  [Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 1.]

26 PLAINTIFF'S RESPONSE:

27 DENIED.  Plaintiff admits that paragraph 1 of the contract stated that he was not

28 required to accept every load tendered by Swift but denies the truth of the

-6-

statement.  The contract/lease read as a whole and in light of the circumstances of the whole activity establishes that Plaintiff was not free to turn down loads because doing so risked the possibility of sitting for long periods of time before another load was offered.  *See* PSOF ¶¶ 133-142 (no knowledge of other options, no choice offered, Swift's admission drivers can/will sit if refuse loads, other de facto punishment(s).)  MS 40:2-21 (did not down loads because Swift would sit drivers who refused loads for a day or two); MS 40:22-41:13 (fear of retaliation made Sheer take virtually all loads).  *And see* Deposition of Virginia Van Dusen, Doc. 772-2, Ex. 1 (hereinafter "VVD"): 97:16-100:3 (had discretion to turn down loads but if did Swift "would either continue sending the load until you got so sick of the Qualcomm going off that you took the load ... or they'd let you sit for about 23 and half hours before they sent you another load.  So you didn't turn down Swift loads." VVD turned down only two loads as a lease operator).  Employee drivers had the same right to turn down loads.  VVD 29:23-30:4 (as an employee "[y]ou could turn down an assignment, but if you turned down an assignment you'd be sitting for 24 to 48 hours until they decided to give you another); VVD 192:13-193:14 (didn't turn down loads because "You turn down loads and sit, you don't make—unless the wheels are turning you're not making money.").  The contract also explicitly grants Defendants "exclusive possession, control, and use of the equipment during the term of this [Contract]."  Swift: 21; Contract ¶ 5A; PSOF ¶ 65.  (This exclusive control was further implemented by Swift's ability to terminate the driver without cause, repossess the truck and force the driver into debt and collections).  PSOF ¶¶ 27, 38, 41, 42, 49, 51-57.  Defendants' authority to place drivers in "default" of the contract at will gave Swift the authority to demand compliance with its directions. *Id.  And see* PSOF ¶¶ 133-142 (no knowledge of other options, no choice offered, Swift's admission drivers can/will sit if refuse loads, other de facto punishment(s)). **DEFENDANTS' REPLY:**

1    Plaintiff admits that his ICOA with Swift states that he had no

2    obligation to accept any loads tendered by Swift.  As such, Plaintiff does not

3    actually dispute this Undisputed Material Fact.  Further, Plaintiff admits that

4    his experience was consistent with this contract language.  At deposition,

5    Plaintiff specifically testified that he had the discretion to turn down loads

6    offered by Swift as an Owner-Operator.  (Mussig Decl., ¶ 2, Ex. A, Sheer

7    Depo., pgs. 121:22-122:7.)

8    Moreover, Plaintiff's claim that delays in being offered loads

9    constituted "discipline" is entirely speculative and erroneous.  Plaintiff's

10    ICOA make it explicitly clear that the ICOA "shall not . . . be construed as

11    an agreement by [Swift] to furnish any specific tonnage of freight for

12    transportation by [Plaintiff] at any particular time, or at any particular place."

13    (Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 1.)  There are various reasons

14    why an individual might not be offered a new load right when he or she asks

15    for one, including the fact that one simply is not available in his or her area.

16    (*See* Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo., pgs. 35:25-39:10.)  Mere

17    speculation and conjecture are insufficient to create a genuine issue of

18    disputed fact.

19    There is absolutely no evidence in this case that Swift ever took

20    "possession, control [or] use of Plaintiff's truck.  Plaintiff's reference to any

21    such unexercised "right" is simply a red herring.

22    Swift's ability to terminate the ICOA without cause is irrelevant.

23    Plaintiff had the same right, and if he chose to exercise that right, he could

24    have simply driven for another carrier.  (Mussig Decl., ¶ 3, Ex. B, Sheer's

25    ICOA, ¶¶ 5(b), 17(a); Supp. Mussig Decl., ¶ 3, Ex. H, Spence Depo.,

26    pgs. 59:5-60:17.)

27    Plaintiff's reliance on the terms of his lease with IEL is misplaced.  The IEL

28    lease has no bearing on whether Plaintiff was in an independent contractor

-8-

1   relationship with Swift while he was an Owner-Operator, as IEL and Swift are

2   distinct and separate entities.  (Berry Decl., ¶ 21.)

3            Finally, Plaintiff improperly relies on the testimony of the other

4   Plaintiffs as evidence of his own personal experiences.  Such testimony

5   cannot create a genuine issue of disputed fact as a matter of both law and

6   common sense.

7

8       8.     The ICOA between Sheer and Swift states that Sheer had no obligation to

9   purchase fuel from Swift.  [Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 4.]

10      <u>PLAINTIFF'S RESPONSE:</u>

11      DENIED.  Plaintiff admits that the contract stated that he was not required to

12  purchase fuel from Swift but denies the truth of the statement.  The contract/lease

13  read as a whole and in light of the circumstances of the whole activity establishes

14  that as a practical matter he had to purchase fuel at Swift approved locations.

15  MS 162: 9-20 (had same fuel card when lease operator as when he was employee);

16  MS 163:1-10 (Swift advanced cost of fuel and deducted from settlement); MS

17  125:2-9 (followed Swift's routing).  *See also* VVD 175:5-176:8 (Swift approved

18  fuel locations were the only locations where she could get the fuel surcharge rebate

19  set forth in her contract); PSOF ¶ 218 (could lose fuel surcharge if non-approved

20  location).  And the ICOA granted Swift "exclusive possession, control, and use of

21  the equipment during the term of this [Contract]."  Swift: 21; Contract ¶ 5A.

22      <u>DEFENDANTS' REPLY:</u>

23      Plaintiff admits that his ICOA with Swift state that he had no obligation to

24  purchase fuel from Swift.  As such, Plaintiff does not actually dispute this

25  Undisputed Material Fact.  Moreover, Plaintiff admits that his experience was

26  consistent with this contract language.  At deposition, Plaintiff was asked, "as a[n]

27  [Owner-Operator], you would use a fuel card, but you would pay for the gas,

28  right?"  He answered, "I would use a fuel card, and they would take the – whatever

-9-

DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL
STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO SHEER

1    I used out of the weekly paycheck." Plaintiff was then asked, "So you paid for it?"

2    He answered, "Yes." (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 163:2-10.)

3          There is absolutely no evidence in this case that Swift ever took "possession,

4    control [or] use" of Plaintiff's truck. Plaintiff's reference to any such unexercised

5    "right" is simply a red herring.

6          Finally, Plaintiff improperly relies on testimony of the other Plaintiffs as

7    evidence of his own personal experiences. Such testimony cannot create a genuine

8    issue of disputed fact as a matter of both law and common sense.

9

10   9.    The ICOA between Sheer and Swift states that Sheer was solely responsible

11   for providing the equipment and the labor necessary to perform all work under the ICOA.

12   [Mussig Decl., ¶ 2, Ex. B, Sheer's ICOA, ¶ 1.]

13         PLAINTIFF'S RESPONSE:

14         DENIED. Plaintiff admits that the contract stated this but denies the truth of the

15         statement. The contract/lease read as a whole and in light of the circumstances of

16         the whole activity establishes that Swift provided the equipment (e.g., truck,

17         Qualcomm) it required of all lease operators by leasing it with no money down and

18         100% financing which Swift paid itself for by deducting the weekly cost of leasing

19         and other credit extended by Swift from the higher mileage rate paid to lease

20         operators, which rate was sat at a level that would cover Swift's extension of credit

21         if a lease operator drove the same number of miles per week as was expected of

22         employee drivers. PSOF ¶¶ 82-3, 86-88, 113-117, 207-237. Swift made available

23         all equipment it required drivers to have (e.g. truck, Qualcomm, insurance). PSOF

24         ¶¶ 3-4, 84-91.

25         DEFENDANTS' REPLY:

26         Plaintiff admits that his ICOA with Swift states that he was solely

27         responsible for providing the equipment and the labor necessary to perform

28         all work under the ICOA. As such, Plaintiff does not actually dispute this

-10-

Undisputed Material Fact.  Moreover, Plaintiff admits that his experience was consistent with this contract language.  As one example, Plaintiff admits he was responsible for and paid for the maintenance and repairs for his truck. (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 153:18-154:13.)  Plaintiff's response is insufficient to create a genuine issue of disputed fact.

While Owner-Operators had the option to rent or purchase equipment or services from third parties through Swift, Swift did not pay for any Owner-Operator's equipment or services and therefore did not "provide" any equipment or services.  (Berry Decl., ¶ 9.)

Swift does not have mileage expectations for Owner-Operators, including Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators are free to drive as many or as few miles as they considered optimal for their business.  (Berry Decl., ¶ 13.)  How Swift determined Plaintiff's mileage rate has no bearing on whether Swift exerted "control" over Plaintiff.  If Plaintiff was unhappy with the mileage rate, he could have driven for another carrier.

Finally, Plaintiff improperly relies on the testimony of the other Plaintiffs as evidence of his own personal experiences.  Such testimony cannot create a genuine issue of disputed fact as a matter of both law and common sense.


10.     The ICOA between Sheer and Swift states that Sheer was solely responsible for paying his own operating and maintenance expenses.  [Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶¶ 10, 11, 13.]

PLAINTIFF'S RESPONSE:

DENIED.  Plaintiff admits that the contract stated this but denies the truth of the statement.  The contract/lease read as a whole and in light of the circumstances of the whole activity establishes that Swift extended credit for operating and maintenance expenses and set the higher mileage rate paid to lease operators, at a

-11-

1  level that would cover normal operating expenses including maintenance if a lease

2  operator drove the same number of miles per week as was expected of employee

3  drivers.  PSOF ¶¶113-117.  Swift extended its credit to drivers for fuel, tolls, and

4  other expenses, through use of Swift's Comdata card and Comchecks.  These

5  expenses were later deducted from drivers' per-mile pay on their settlements.

6  PSOF ¶¶ 207-237.

7  DEFENDANTS' REPLY:

8       Plaintiff admits that his ICOA with Swift states that he was solely

9  responsible for paying his own operating and maintenance expenses.  As

10  such, Plaintiff does not actually dispute this Undisputed Material Fact.

11  Moreover, Plaintiff admits that his experience was consistent with this

12  contract language.  As one example, Plaintiff admits he was responsible for

13  and paid for the maintenance and repairs for his truck.  (Mussig Decl., ¶ 2,

14  Ex. A, Sheer Depo., pgs. 153:18-154:13.)  Swift may have deducted money

15  from Plaintiff's account and made payments on behalf of Plaintiff, but this

16  was simply a pass-through done as a convenience to Plaintiff.  Plaintiff

17  admits he paid for these expenses himself out of his earnings as an Owner-

18  Operator.  (*Id.*)

19       Swift does not have mileage expectations for Owner-Operators, including

20  Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators are free to drive as many or as few

21  miles as they considered optimal for their business.  (Berry Decl., ¶ 13.)  How Swift

22  determined Plaintiff's mileage rate has no bearing on whether Swift exerted

23  "control" over Plaintiff.  If Plaintiff was unhappy with the mileage rate, he could

24  have driven for another carrier.

25       Finally, Plaintiff improperly relies on the testimony of the other

26  Plaintiffs as evidence of his own personal experiences.  Such testimony

27  cannot create a genuine issue of disputed fact as a matter of both law and

28  common sense.

1

2      11.     The ICOA between Sheer and Swift allowed Sheer to contract with other

3   carriers if he chose, so long as he did not use Swift's resources, name or authorities.

4   [Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 5(A); Mussig Decl., ¶ 7, Ex. F, Deposition of

5   David Berry ("Berry Depo."), pg. 216:1-25.]

6      <u>PLAINTIFF'S RESPONSE:</u>

7      DENIED.  (1) Paragraph 5B of his contract stated "Contractor may provide services

8         to another carrier during the term of this Agreement, provided, that at such times,

9         Contractor agrees that it will remove from the Equipment any and all identification

10        devices, licenses and base plates pertaining to Company and <u>will return them to</u>

11        <u>Company. Contractor agrees to indemnify, defend and hold Company harmless</u>

12        <u>from any liability arising from contracting or providing services to another carrier</u>

13        <u>or company.  Contractor agrees that hauling for any other party will not be</u>

14        <u>performed while using Company's resources, equipment, name or authorities.</u>"

15        (emphasis added).  (2) Plaintiff admits that the contract contained the language in ¶

16        5B but denies the truth of the statement.  The contract/lease read as a whole and in

17        light of the circumstances of the entire activity prohibited driving for any carrier

18        other than Swift.  Paragraph 6 of the lease forbid driving for anyone other than

19        Swift and Swift informed Plaintiff repeatedly that he could only drive for Swift.  JS:

20        92:1-93:9 (told by Swift he could not drive for other companies); JS 98:1-20 (told

21        couldn't drive for others under their or his own authority), JS 144-145 (at time

22        signed lease, and again when lease was terminated asked whether he could drive for

23        someone other than Swift and "the answer was a definitive no, you cannot").  *See*

24        *also* PSOF ¶¶ 169-173 (ICOA says one thing, Lease restricts use of truck to Swift

25        only).  *See also* VVD: 46:5-48:8 (Told by Swift "Rapid Response Unit" lease

26        operators not permitted to get own authority); *See also* JM 96:25-98:9 (Swift told

27        lease operators could not drive for other carriers.  That is what Swift told him both

28        as an employee driver and as a lease operator).  JM: 100:9-15 (same).  Also the

-13-

Berry cite is incomplete.  Full discussion is Swift 30(b)(6) 216:1-223:6  (Explains how base plates and equipment have to be returned and not aware of any lease operator who ever exercised the right purportedly granted by ¶ 5A).

DEFENDANTS' REPLY:

Plaintiff admits that his ICOA with Swift states that he was entitled to haul for other carriers as long as he removed any Swift indicia from his truck.  Thus, Plaintiff had a clear contractual right to haul for other carriers.  (*See* Mussig Decl., ¶ 7, Ex. F, Berry Depo., pg. 216:1-25.)  As such, Plaintiff's response is insufficient to create a genuine issue of disputed fact.

Furthermore, Plaintiff's reliance on the terms of his lease with IEL is misplaced.  The lease has no bearing on whether Plaintiff was in an independent contractor relationship with Swift while he was an Owner-Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  In any event, the evidence establishes that IEL never enforced any purported contract language limiting the ability of Owner-Operators to drive for carriers other than Swift, as it leased to individuals with no affiliation with Swift whatsoever.  (Supp. Mussig Decl., ¶ 3, Ex. H, Spence Depo., pgs. 59:5-60:17.)  Plaintiff offers no evidence the contract provision was ever enforced against him.

Notably, Plaintiff did not identify the purported individual(s) who allegedly violated Swift company policy and told Plaintiff that he was not permitted to drive for other carriers, so it is impossible for Swift to submit testimony from any specific person refuting Plaintiff's self-serving allegations.

Finally, Plaintiff improperly relies on testimony of the other Plaintiffs as evidence of his own personal experiences.  Such testimony cannot create a genuine issue of disputed fact as a matter of both law and common sense.

12.    Sheer received only one day of training when he became an Owner-Operator, which was designed to educate him on "tax issues" and "how to run [his truck]

-14-

1   efficiently." [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 116:15-23, 121:14-21, 164:14-
2   18.]

3       PLAINTIFF'S RESPONSE:

4       DENIED.  *See* JS 28:14-24 (Sheer also had eight weeks of training prior).  As an
5       employee, Sheer also received the Swift driver handbook.  JS 35:9- 36:2 (got 50-60
6       page manual.  He referred to it often; he always kept it handy).

7       DEFENDANTS' REPLY:

8           This Undisputed Material Fact is taken directly from Plaintiff's deposition
9       testimony.  At deposition, Plaintiff was asked, "After that one-day training … on
10      tax issues and fuel issues, there was never any subsequent training as [an Owner-
11      Operator], correct?"  Plaintiff answered, "No."  (Mussig Decl., ¶ 2, Ex. A, Sheer
12      Depo., pg. 164:14-18.)  Plaintiff cannot dispute his own deposition testimony.
13      Also, the testimony cited by Plaintiff in his "response" above is insufficient to
14      create an issue of disputed fact, as it pertains to Plaintiff's time as an employee
15      driver, not an Owner-Operator.  The extensive training Plaintiff received as an
16      employee driver  (*Id*. at Sheer Depo., pgs. 28:14-24, 35:9-36:2) contrasted with the
17      lack of training as an Owner-Operator (*Id.* at Sheer Depo., pgs. 116:15-23, 121:14-
18      21, 164:14-18) supports rather than disputes this Undisputed Material Fact.

19

20      13.     Swift did not provide Sheer with, nor require him to be familiar with, any
21  Swift policies or procedures as an Owner-Operator.  [Mussig Decl., ¶ 2, Ex. A, Sheer
22  Depo., pg. 121:17-21.]

23      PLAINTIFF'S REPLY:

24      DENIED.  The contract/lease ¶ 17 stated that Plaintiff's contract could be
25      terminated immediately for violation of "any Company policy."  By virtue of that
26      provision of the contract Swift required Plaintiff to be familiar with all Swift
27      policies and procedures on pain of termination.  Swift provided new drivers with a
28      copy of its Swift Driver Manual, a statement of policies and procedures applicable

-15-

to all employee and lease drivers and those policies are by their own terms expressly applicable to both employee and lease drivers.  Plaintiffs' Additional Statements of Fact ¶¶ 10-20.  Swift also made its policies and instructions dear in its Contracted Driver Manual, Handshake to Horsepower, and Pre-CABS Training.  *Id.*  *See also* PSOF ¶¶ 98-101(a-u) (all policies apply to both employee and lease drivers).

DEFENDANTS' REPLY:

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  At deposition, Plaintiff specifically testified that he did not receive any handbooks or written policy documents from Swift as an Owner-Operator.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 121:17-21.)  Plaintiff cannot dispute his own deposition testimony.

Moreover, Plaintiff admitted he never received any policy documents from Swift as an Owner-Operator (such as a Driver Manual, Contracted Driver Manual, Handshake-to-Horsepower manual, or any Pre-CABS Training manuals).  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 121:17-21.)  Plaintiff cannot argue that he was bound by documents he never received.

Whether Swift provides policy documents to its employee drivers has no bearing on whether it exerts control over independent contractor Owner-Operators.  Despite Plaintiff's claim to the contrary, there is nothing in the Driver Manual indicating that it applies to independent contractor Owner-Operators.

Finally, David Berry's deposition testimony establishes that Swift did not enforce Paragraph 17 of the ICOA, and Plaintiff has offered no evidence to the contrary, either as to himself specifically or as to any other Owner-Operator.  (Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo., pgs. 114:21-115:6, 216:1-220:13, 241:21-242:5, 270:4-17; Berry Decl., ¶ 14.)

14.    Sheer did not receive any handbooks as an Owner-Operator.  [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 121:17-21.]

PLAINTIFF'S RESPONSE:

DENIED.  See Response to ¶12; PSOF ¶¶ 99-101 (all policies apply to both employee and lease drivers).  *And see* JS 35:9-24 (received Driver Handbook when hired, 50 or 60 pages long).

DEFENDANTS' REPLY:

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  At deposition, Plaintiff testified that he did not receive any handbooks or written policy documents from Swift as an Owner-Operator (such as a Driver Manual, Contracted Driver Manual, Handshake-to-Horsepower manual, or any Pre-CABS Training manuals).  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 121:17-21.) Plaintiff cannot dispute his own deposition testimony.  Moreover, Plaintiff cannot argue that he was bound by documents he never received.

Whether Swift provides policy documents to its employee drivers has no bearing on whether it exerts control over independent contractor Owner-Operators. Despite Plaintiff's claim to the contrary, there is nothing in the Driver Manual indicating that it applies to independent contractor Owner-Operators.

Finally, David Berry's deposition testimony establishes that Swift did not enforce Paragraph 17 of the ICOA, and Plaintiff has offered no evidence to the contrary, either as to himself specifically or as to any other Owner Operator.  (Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo., pgs. 114:21-115:6, 216:1-220:13, 241:21-242:5, 270:4-17; Berry Decl., ¶ 14.)

15.    None of the training or instruction that Sheer received when he was an employee occurred when he became an Owner-Operator. [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 116:15-23, 121:14-21, 164:14-18.]

PLAINTIFF'S RESPONSE:

-17-

1   DENIED.  Sheer was an employee driver before becoming a lease driver, and thus,

2   by definition, the training he received as an employee did not occur when he

3   became a Lease Operator.  However, Sheer testified that he received training as a

4   Lease Operator.  JS 116:15 to 116:23 (one day training in Phoenix).

5   DEFENDANTS' REPLY:

6         This Undisputed Material Fact is taken directly from Plaintiff's deposition

7   testimony.  As an Owner-Operator, Plaintiff received only one day of training when

8   he became an Owner-Operator, which was designed to educate him on "tax issues"

9   and "how to run [his truck] efficiently."  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo.,

10  pgs. 116:15-23, 164:14-18.)  Plaintiff did not receive any handouts or written

11  policy.  (*Id.* at Sheer Depo., pgs.  121:14-21.)  The tax training (which has nothing

12  to do with how Sheer was to perform his work), and efficiency training he received

13  as an Owner-Operator starkly contrast with the intensive training he received as an

14  employee driver.  For example, as an employee driver, Plaintiff completed three

15  days of orientation, four weeks of behind-the-wheel training with a trainer, and four

16  weeks of behind-the-wheel training with another student.  (Mussig Decl., ¶ 2,

17  Ex. A, Sheer Depo., pgs.  27:18-31:22, 32:20-34:3.)  Plaintiff received a 50-60 page

18  driver handbook that he was asked to review and did review as an employee driver.

19  (*Id.* at Sheer Depo., pgs. 35:9-36:6.).

20

21      16.    Swift did not require Sheer to take any particular route when delivering his

22  freight when he was an Owner-Operator.  [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg.

23  124:22-25.]

24  PLAINTIFF'S RESPONSE

25  DENIED.  The deposition testimony continues at JS 125:1-16 (Sheer always relied

26  on Swift's route and never took another).  *See also* contract ¶ 11 (lease operator

27  required to take Swift route to obtain reimbursement for tolls); PSOF ¶¶ 158, 159,

28

-18-

218.  *And see* PSOF 101(o) (Swift set separate policies for high value loads that included mandatory routing).

Moreover, Swift had the exclusive control over the truck, Swift: 21, Contract ¶ 5A, PSOF ¶ 65, and the ability to terminate a driver for any reason or no reason, PSOF ¶¶ 27, 38, 41, 42, 49, 51-57, and thereby had the authority and power to direct routes or terminate a driver for failing to comply with its instructions, whether it did so or not.  Lease drivers would follow Swift's routing instructions in order to obtain reimbursement for tolls and to be able to use Swift's credit for fuel purchases so they would receive their fuel surcharge.  Contract ¶ 11; PSOF ¶¶ 158-159, 218.

<u>DEFENDANTS' REPLY:</u>

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  Specifically, when asked, "as a lease operator, did you have the discretion to choose the route you took," Plaintiff admitted, "we did."  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 124:22-25.)  Additionally, even in the testimony cited by Plaintiff above, Plaintiff repeatedly admits that he was not required to take the route suggested by Swift.  (*Id.* at Sheer Depo., pg. 125:1-16 ("Q: But you weren't required to follow their route? A: No.").  As such, Plaintiff's response is insufficient to create a genuine issue of disputed fact.

Furthermore, Plaintiff's claim that Defendants had exclusive "control" over his truck is simply false.  The evidence establishes that Owner-Operators have always been free to accept and decline freight loads offered to them by Swift – including high value loads.  (Mussig Decl., ¶ 7, Ex. F, Berry Depo., pgs. 157:21-158:4.)  Further, Owner-Operators are entitled to haul for other carriers as long as they removed any Swift indicia from their truck.  (*Id.* at Berry Depo., pg. 216:1-25; Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 5(b).)

Additionally, Plaintiff's reliance on the terms of his lease with IEL is misplaced.  The lease has no bearing on whether Plaintiff was in an independent

-19-

contractor relationship with Swift while he was an Owner-Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  The evidence also establishes that IEL never enforced any purported contract language limiting the ability of Owner-Operators to drive for carriers other than Swift, as it leased to individuals with no affiliation with Swift whatsoever.  (Supp. Mussig Decl., ¶ 3, Ex. H, Spence Depo., pgs. 59:5-60:17.)  Plaintiff offers no evidence that these contract provisions were ever enforced against him.

Finally, Swift's ability to terminate the ICOA without cause is irrelevant. Plaintiff had the same right, and if he chose to exercise that right, he could have simply driven for another carrier.  (Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶¶ 5(b), 17(a); Supp. Mussig Decl., ¶ 3, Ex. H, Spence Depo., pgs. 59:5-60:17.)


17.     While Swift suggested routes to Sheer when he was an Owner-Operator, it was entirely his personal choice to use the suggested routes or not, and when he chose to use them it was because they maximized efficiency.  [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 124:22-25; 125:2-19.]

PLAINTIFF'S RESPONSE:

DENIED.  *See* Response to ¶ 15 above.  Sheer's actual testimony is that GPS wasn't in wide use at the time and so he relied on Swift to give him the shortest, most efficient route.  He did not second-guess their routes.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 16.

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  Specifically, when asked, "as a lease operator, did you have the discretion to choose the route you took," Plaintiff admitted, "we did."  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 124:22-25.)  When asked again if it was his choice to utilized Swift's suggested route or not, Plaintiff admitted, "That was my

1   choice." (*Id.* at Sheer Depo., pg. 125:7-19.)  Plaintiff cannot create a disputed issue

2   of fact by contradicting his own deposition testimony.

3

4   18.     Sheer could select which fueling stops, repair shops, and maintenance shops

5   he used when he was an Owner-Operator.  [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg.

6   155:4-19; Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶¶ 4, 15; Mussig Decl., ¶ 6, Ex. E,

7   Deposition of Murray Spence ("Spence Depo."), pg. 65:20-66:16.]

8   PLAINTIFF'S RESPONSE:

9   DENIED.  The cited testimony, JS 155:4-19, says nothing about choice.  The

10   question is merely whether he paid for repairs and maintenance.  Sheer testified that

11   he always used Swift facilities, JS 154: 15-17, and if he ever deviated it was

12   because of some breakdown on the road that needed immediate attention.  JS

13   154:18-155:3.  He says there was no requirement that he use Swift, JS 154:4-11, but

14   that is consistent with Lease that requires use of Swift or approved facilities.  Also,

15   the Murray Spence cite is incomplete.  He continues at 66:17-67:25 (acknowledges

16   Lease requires approval and, although he states that IEL doesn't enforce that

17   provision, failure to get approval would be a violation of the contract "in the event

18   of a crash"); 68:1-69:9 (IEL relies on facilities approved by Swift).  *And see* PSOF

19   ¶¶ 189, 190 (repair shops/maint.); PSOF ¶ 159 (consequences for not following

20   recommended route); PSOF ¶ 195 (three Swift terminals had inspection lines that

21   trucks had to go through whenever they went through the fuel line); PSOF ¶ 218

22   (could lose fuel surcharge if non-approved location).  *See also* JS: 162: 9-163:7

23   (used same fuel card as Lease Operator that he did when he was an employee).

24   DEFENDANTS' REPLY:

25   Plaintiff admits his ICOA with Swift explicitly states that he "is not required

26   to purchase or rent any products, equipment, or services from [Swift]."  (Mussig

27   Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 4.)  Moreover, Plaintiff testified that his

28   experience was consistent with the terms of the ICOA.  As one example, he testified

-21-

1    there was no requirement that he have maintenance and repairs done at Swift

2    facilities.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 155:4-8.)  As another

3    example, Plaintiff testified that he did not have to fuel at specific facilities in order

4    to obtain fuel surcharges.  (Supp. Mussig Decl., ¶ 2, Ex. G, Sheer Depo.,

5    pgs. 117:23-118:16.)  Plaintiff cannot contradict his own deposition testimony.

6    Plaintiff's response is insufficient to create a genuine issue of disputed fact.

7            Further, Plaintiff's reliance on the terms of the lease with IEL is misplaced.

8    The lease has no bearing on whether Plaintiff was in an independent contractor

9    relationship with Swift while he was an Owner-Operator, as IEL and Swift are

10   distinct and separate entities.  (Berry Decl., ¶ 21.)  Plaintiff admits that leasing

11   equipment from IEL was not a requirement of being an Owner-Operator.  (Mussig

12   Decl., ¶ 2, Ex. A, Sheer Depo., pg. 101:1-13.)  In any event, Murray Spence

13   repeatedly testified that Paragraph 6(c) in the Lease was not enforced.  (Supp.

14   Mussig Decl., ¶ 3, Ex. H, Spence Depo., pgs. 66:17-67:9, 71:2-7.)  Spence also

15   testified that IEL "would not terminate the lease based on a violation of 6(c)."  (*Id.*

16   at Spence Depo., pg. 70:14-17.)

17

18   19.    Sheer's ICOA specifically provided that he was "not required to purchase

19   fuel from [Swift]."  [Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 15.]

20   PLAINTIFF'S RESPONSE:

21   DENIED.  Plaintiff admits that the contract stated that he was not required to

22   purchase fuel from Swift but denies the truth of the statement.  The contract/lease

23   read as a whole and in light of the circumstances of the whole activity establishes

24   that as a practical matter she had to purchase fuel at Swift approved locations.  *See*

25   *also* VVD 175:5-176:8 (Swift approved fuel locations were the only locations

26   where she could get the fuel surcharge rebate set forth in her contract).  PSOF ¶ 218

27   (could lose fuel surcharge if non-approved location).

28   DEFENDANTS' REPLY:

1    Plaintiff admits that he entered into an ICOA stating that he was not required

2    to purchase fuel or any other products from Swift.  (Mussig Decl., ¶ 3, Ex. B,

3    Sheer's ICOA, ¶ 4.).  Indeed, despite his assertions to the contrary, Plaintiff

4    specifically testified that he did not have to fuel at specific facilities in order to

5    obtain fuel surcharges.  (Supp. Mussig Decl., ¶ 2, Ex. G, Sheer Depo., pgs. 117:23-

6    118:16.)

7    Plaintiff's response improperly relies on testimony of the other Plaintiffs as

8    evidence of his own personal experiences.  Such testimony cannot create a genuine

9    issue of disputed fact as a matter of both law and common sense.

10

11   20.    As an Owner-Operator, Sheer made his own decisions as to which repair and

12   maintenance shops to use based on convenience and price.  [Mussig Decl., ¶ 2, Ex. A,

13   Sheer Depo., pg. 155:4-19.]

14   PLAINTIFF'S RESPONSE:

15   DENIED.  *See* Plaintiff Sheer's response to ¶ 17 above.  With respect to repair and

16   maintenance locations the Lease ¶ 6(c) states that 101 Equipment repairs and

17   maintenance shall be performed at facilities designated or approved by the Lessor."

18   In addition, repairs performed outside of a Swift facility that cost more than $1000

19   must be approved in advance by Swift's Rapid Response Team.  Ex. 11 (Pre-CABS

20   Training manual at 3039).  *See* PSOF ¶¶ 189-191.  The cited testimony from

21   Spence, IEL's 30(b)(6) witness from 65:20 through 75:5 and indicates that approval

22   was required for repairs and, that while the witness did not know about the extent of

23   enforcement, IEL expected contractors to execute the contract in good faith.  *See*

24   *also* Wood Depo 150:21-24 (no choice if breakdown, Swift told where to go).

25   DEFENDANTS' REPLY:

26   Defendants incorporate their reply in support of Undisputed Material Fact

27   No. 17.

28

-23-

1    This Undisputed Material Fact is taken directly from Plaintiff's deposition

2    testimony.  Specifically, when asked whether he "chose" where to have repairs and

3    maintenance completed, Plaintiff unequivocally testified, "I did."  (Mussig Decl., ¶

4    2, Ex. A, Sheer Depo., pg. 155:4-13.)  Plaintiff cannot dispute his own deposition

5    testimony.  Also, Plaintiff does not dispute his ICOA with Swift explicitly states

6    that he "is not required to purchase or rent any products, equipment, or services

7    from [Swift]."  (Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 4.)  Plaintiff's response

8    does not raise a genuine issue of material fact.

9    Plaintiff's reliance on the terms of his lease with IEL is misplaced.  The lease

10   has no bearing on whether Plaintiff was in an independent contractor relationship

11   with Swift while he was an Owner-Operator, as IEL and Swift are distinct and

12   separate entities.  (Berry Decl., ¶ 21.)  Furthermore, Plaintiff admits that leasing

13   equipment from IEL was not a requirement of being an Owner-Operator.  (Mussig

14   Decl., ¶ 2, Ex. A, Sheer Depo., pg. 101:1-13.)  Even if the lease was relevant,

15   Murray Spence repeatedly testified that Paragraph 6(c) in the Lease was not

16   enforced.  (Supp. Mussig Decl., ¶ 3, Ex. H, Spence Depo., pgs. 66:17-67:9, 71:2-7.)

17   Spence also testified that IEL "would not terminate the lease based on a violation of

18   6(c)."  (*Id.* at Spence Depo., pg. 70:14-17.)

19   Also, Plaintiff admits he never received any policy documents from Swift as

20   an Owner-Operator (such as a Driver Manual, Contracted Driver Manual,

21   Handshake-to-Horsepower manual, or any Pre-CABS Training manuals).  (Mussig

22   Decl., ¶ 2, Ex. A, Sheer Depo., pg. 121:17-21.)  Plaintiff cannot argue that he was

23   bound by documents he never received.

24   Finally, Plaintiff improperly relies on testimony of the other Plaintiffs as

25   evidence of his own personal experiences.  Such testimony cannot create a genuine

26   issue of disputed fact as a matter of both law and common sense.

27

28

-24-

21.     Swift did not require Sheer to accept any particular freight loads offered to him as an Owner-Operator.  [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 121:22-122:7; Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 1 ; Mussig Decl., ¶ 7, Ex. F, Berry Depo., pgs. 81:25-82:13; 157:21-158:4; 268:5-7.]

PLAINTIFF'S RESPONSE:

DENIED.  Plaintiff admits that paragraph 1 of the contract stated that he was not required to accept every load tendered by Swift but denies the truth of the statement.  The contract/lease read as a whole and in light of the circumstances of the whole activity establishes that Plaintiff was not free to turn down loads because doing so risked the possibility of sitting for long periods of time before another load was offered. JS 40:19 to 40:21 ("You don't take the load, then, you know, they may just let you sit because you refused a load.  So I didn't refuse loads")

Furthermore, the IEL 30(b)(6) testimony by designee Berry is mis-cited here.  IEL 82:14-83:5 indicated that employee and Lease drivers could sit for 48 hours depending on conditions.  IEL 268:4-7 has nothing to do with accepting loads instead addressing how drivers are paid by settlements.  IEL 69:25-71:11 (Berry acknowledges that if drivers turn down loads it may require them to rejigger the entire plan).  IEL 75:18-23 (Berry acknowledges that planners negotiate with drivers to get them to take loads — sometimes by stacking loads).

*See also* VVD 97:16-100:3 (had discretion to turn down loads but if did Swift "would either continue sending the load until you got so sick of the Qualcomm going off that you took the load ... or they'd let you sit for about 23 and half hours before they sent you another load.  So you didn't turn down Swift loads."  VVD turned down only two loads as a lease operator).  Employee drivers had the same right to turn down loads.  VVD 29:23-30:4 (as an employee "[y]ou could turn down an assignment, but if you turned down an assignment you'd be sitting for 24 to 48

1    hours until they decided to give you another); VVD 192:13-193:14 (didn't turn

2    down loads because "You turn down loads and sit, you don't make—unless the

3    wheels are turning you're not making money.").  *See also* PSOF ¶¶ 133-142 (no

4    knowledge of other options no choice offered, Swift's admission drivers can/will sit

5    if refuse loads, other de facto punishment(s)).

6    DEFENDANTS' REPLY:

7           Plaintiff admits his ICOA with Swift states that he was not required to accept

8    any particular cargo loads offered to him as an Owner-Operator.  Thus, Plaintiff

9    does not actually dispute this Undisputed Material Fact.  Moreover, Plaintiff admits

10   that his experience was consistent with this contract language.  Plaintiff admits that

11   he had the discretion to turn down loads offered by Swift as an Owner-Operator.

12   (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 121:22-122:7.)  Plaintiff's admission is

13   further supported by David Berry's testimony which states that Owner-Operators

14   are free to accept and decline freight loads offered to them by Swift.  (Mussig Decl.,

15   ¶ 7, Ex. F, Berry Depo., pgs. 157:21-158:4.)

16          Moreover, Plaintiff's claim that delays in being offered loads constituted

17   "discipline" is entirely speculative and erroneous.  Plaintiff's ICOA makes it

18   explicitly clear that the ICOA "shall not . . . be construed as an agreement by

19   [Swift] to furnish any specific tonnage of freight for transportation by [Plaintiff] at

20   any particular time, or at any particular place."  (Mussig Decl., ¶ 3, Ex. B, Sheer's

21   ICOA, ¶ 1.)  There are various reasons why an individual might not be offered a

22   new load right when he or she asks for one, including the fact that one simply is not

23   available in his or her area.  (*See* Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo.,

24   pgs.  35:25-39:10.)  Mere speculation and conjecture are insufficient to create a

25   genuine issue of disputed fact.

26          Also, the fact that Swift negotiates with Owner-Operators as to what loads

27   they will haul supports Defendants' position that Swift did not exert "control" over

28

-26-

1   Plaintiff and that Plaintiff and other Owner-Operators ran their own trucking

2   businesses with Swift as a business partner.

3        Finally, Plaintiff improperly relies on testimony of the other Plaintiffs as

4   evidence of his own personal experiences.  Such testimony cannot create a genuine

5   issue of disputed fact as a matter of both law and common sense.

6

7        22.    Sheer knew he had the ability and authority to decline loads that were

8   offered to him as an Owner-Operator for Swift.  [Mussig Decl., ¶ 2, Ex. A, Sheer Depo.,

9   pg. 121:22-122:7; Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 1; Mussig Decl., ¶ 7, Ex. F,

10  Berry Depo. pgs. 71:19-72:14; 157:21-158:4.]

11  PLAINTIFF'S RESPONSE:

12  DENIED.  See Plaintiff Sheer's response to ¶ 20 above.  *See* PSOF ¶¶ 133-142.

13  *And see* JS: 122:8-21 (Sheer rarely turned down loads and when he did it was to get

14  home or some reason like that.  He never turned down bad loads); JS: 40:1-21 (its

15  not good practice to turn down loads.  Even if "it's a load you don't want to take,

16  you know, it's probably better you take it anyway because if . . . don't take it and

17  they have other trucks in the area and they get it, then you could end up sitting there

18  for a day or two days or whatever. . . . [I]t's well known, particularly with Swift

19  drivers, that depending on the dispatcher they you get who's dispatching the load . .

20  . [y]ou don't take the load, then . . . they may just let you sit because you refused a

21  load.  So I didn't refuse loads)  JS: 40:22-41:13 (both lease operators and employee

22  drivers could turn down load; JS 121:22-122:4 (same).

23

24  The Swift 30(b)(6) deposition (Berry) is not supportive of the factual contention.

25  Swift (Berry) 71:19-72:14 talks about a negotiation with lease operators to take

26  loads Berry states that he would order an employee driver to take a load.  Swift

27  (Berry) 157:21-158:4 (just says that someone who only gets 1000 mi les a week

28  chose not to work very much).

-27-

1      DEFENDANTS' REPLY:

2            Defendants incorporate their reply in support of Undisputed Material Fact

3      No. 21.

4            This Undisputed Material Fact is taken directly from Plaintiff's deposition

5      testimony.  Plaintiff specifically admitted at deposition that he "had the discretion to

6      turn down loads" offered by Swift.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo.,

7      pgs. 121:22-122:7.)  The fact that Plaintiff rarely exercised his discretion to decline

8      loads is insufficient to create a genuine issue of disputed fact.

9            Moreover, Plaintiff's claim that delays in being offered loads constituted

10     "discipline" is entirely speculative and erroneous.  Plaintiff's ICOA makes it

11     explicitly clear that the ICOA "shall not . . . be construed as an agreement by

12     [Swift] to furnish any specific tonnage of freight for transportation by [Plaintiff] at

13     any particular time, or at any particular place."  (Mussig Decl., ¶ 3, Ex. B, Sheer's

14     ICOA, ¶ 1.)  There are various reasons why an individual might not be offered a

15     new load right when he or she asks for one, including the fact that one simply is not

16     available in his or her area.  (*See* Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo.,

17     pgs. 35:25-39:10.)  Mere speculation and conjecture are insufficient to create a

18     genuine issue of disputed fact.

19           Contrary to Plaintiff's assertion, the fact that Swift negotiates with Owner-

20     Operators about which loads they will haul demonstrates that Owner-Operators, like

21     Sheer, were able to accept or decline loads offered by Swift.  (*See* Mussig Decl., ¶

22     7, Ex. F, Berry Depo., pgs. 71:19-72:14.)  Additionally, David Berry explicitly

23     testified that "we don't assign loads to our owners.  They choose the loads they

24     want."  (*Id.* at Berry Depo., pgs. 157:25-158:1.)

25

26     23.     As an Owner-Operator, Sheer never faced any negative repercussions when

27     turning down loads.  [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 124:16-20.]

28     PLAINTIFF'S RESPONSE:

-28-

1   ADMITTED.  Admit because he seldom turned down loads.  JS 124:19-20.

2   DEFENDANTS' REPLY:

3   Plaintiff admits this fact is undisputed.

4

5   24.   Aside from conversations over Qualcomm in which Sheer was dispatched

6   optional loads, he did not have any interaction with Swift when he was an

7   Owner- Operator.  [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 127:12-16; 164:10-13.]

8   PLAINTIFF'S RESPONSE:

9   DENIED.  *See* JS 44:3-45:20 ("If you were on a rush load and they were, you

10   know, behind schedule, they might call you to see where you're at and making sure

11   you're running on time.... [E]very morning you check in via Qualcomm to give you

12   location and stuff.  It was a macro... you would check in and they would know

13   where you were at.  [T]hey could determine whether or not you were where you

14   should be or if you were running on time and so forth.... You could have incidental

15   contact ... I mean, they might contact you to ask what time you're going to be

16   somewhere.  They might have appointments set up.  There's a variety of reasons

17   that you could actually be in contact, but it wasn't standard procedure.... basically in

18   the morning you let them know where you were at.").  *See also* PSOF ¶ 101(j)

19   (lease operators must report to Driver Manager every morning along with

20   Qualcomm communications, ¶ 146 (daily check-in calls and Qualcomm

21   communications); ¶ 148 (lease operators required to notify driver manager when

22   they arrive at shipper to pick up load and again upon leaving shipper); ¶ 149

23   expected to contact driver manager if they experience delay); ¶ 155 (must notify

24   driver manager upon arrival at destination and again once load is dropped or

25   unloaded).

26   DEFENDANTS' REPLY:

27         This Undisputed Material Fact is taken directly from Plaintiff's deposition

28   testimony.  At deposition, Plaintiff was asked, "Other than … Qualcomm [and]

-29-

telephone conversations, was there – while you were a lease operator, was there any interaction with Swift?"  He answered, "No." (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 164:10-13) Plaintiff cannot dispute his own deposition testimony. Plaintiff attempts to mislead the Court by citing testimony about his communication with Swift when he was an employee driver.  (*See* Supp. Mussig Decl., ¶ 2, Ex. G, Sheer Depo., pgs. 39:3-45:24 ("All my questions right now are focusing on this time period that we talked about, this November 2002 to August 2006, [when you were an employee driver].")  The stringent requirements applicable to employee drivers, cited by Plaintiff in his response, contrasted with his rare interactions with Swift as an Owner-Operator (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 127:12-16; 164:4-13) supports rather than disputes this fact.

25.     Sheer was not required to report to a Swift facility on a daily basis.
[Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 164:4-8.]

PLAINTIFF'S RESPONSE:

ADMITTED IN PART, DENIED IN PART.  Admit he did not physically report to a facility, but reported to Driver Manager who worked at a Swift facility.  *See* Response to Statement ¶ 23 above.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 24.

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  Specifically, when asked "as a lease operator, you weren't required to report to a Swift facility on a daily basis, were you?," Plaintiff responded, "No." (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 164:4-8.)  Plaintiff cannot dispute his own deposition testimony.

-30-

26.     As an Owner-Operator, Sheer was aware he could work in a "driver team" if he wanted.  [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 144:4-7.]

PLAINTIFF'S RESPONSE:

DENIED.  Both employee drivers and lease operators could request permission to drive as a team.  No driver could be part of a "driver team" unless Swift approved both members of the team to drive for Swift and approved both members to drive as a team.  Drivers could request permission from Swift to drive as a team.  No driver could be part of a "driver team" unless Swift approved both members of the team to drive for Swift and approve both members to drive as a team.  PSOF ¶¶ 174-178.

DEFENDANTS' REPLY:

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  Specifically, when asked "[a]s a lease operator, you were – you would have been permitted to drive as part of a team; correct?," Plaintiff responded, "Yes."  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 144:4-7.)  Plaintiff cannot create a disputed issue of fact by contradicting his own clear deposition testimony.

Additionally, the evidence clearly establishes that Plaintiff had the ability to hire drivers and driver helpers to work for him while he was an Owner-Operator, as long as such individuals met DOT regulations and other state and federal legal requirements (in this regard, Plaintiff was subject to the same hiring limitations as Swift).  (Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 7.)  In practice, Swift exerts little to no oversight regarding the employees that Owner-Operators choose to hire, and rarely take any action regarding an Owner-Operator's decision to hire a particular employee. (Berry Decl., ¶ 10.)

Additionally, it is irrelevant whether or not employee drivers could request permission to drive as a team.  Swift's policies applicable to employee drivers have no bearing on whether Plaintiff was properly classified as an independent contractor while he was an Owner-Operator.

1    Employee drivers were subject to far more stringent guidelines than Owner-

2    Operators, and were required to comply with a multitude of policies and

3    practices that did not apply to Owner-Operators.  (Berry Decl., ¶ 19**.**)  The

4    ICOA governs the relationship between Owner-Operators and Swift.  (Supp.

5    Mussig Decl., ¶ 4, Ex. I, Berry Depo., pgs. 160:25-161:6.)

6

7    27.    Sheer chose not to drive on a "team," based purely on his own personal

8    preference.  [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 144:4-11.]

9    PLAINTIFF'S RESPONSE:

10   ADMITTED IN PART, DENIED IN PART.  Admit that Sheer did not request

11   permission to drive as a team based on personal consideration.  There is no

12   evidence that Plaintiff Sheer would have been approved to drive as a team by Swift

13   had he requested or Swift requested him to.

14   DEFENDANTS' REPLY

15   Defendants incorporate their reply in support of Undisputed Material Fact

16   No. 26.

17   This Undisputed Material Fact is taken directly from Plaintiff's deposition

18   testimony.  Specifically, when asked "you chose not to [drive as part of a team]?,"

19   Plaintiff responded, "That's correct."  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo.,

20   pg. 144:8-11.)  Plaintiff cannot dispute his own sworn testimony with speculation.

21

22   28.    Sheer's ICOA gave him the right to assign someone of his choosing to drive

23   in his place.  [Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 27.]

24   PLAINTIFF'S RESPONSE:

25   DENIED.  Although ¶ 7 of the Contract purported to give that right the ¶ 6(a) of the

26   Lease required the lessee to be the driver of the truck unless the lessee was "ill,

27   disabled, or otherwise unable to drive the Equipment" in which case she could

28   submit a written request to substitute another driver.  Any such request not

-32-

approved by IEL in 10 days was deemed denied.  Even if approved, any such substitute driver was required to meet the criteria set forth in ¶ 6(a) of the lease and ¶ 7 of the Contract and be approved by IEL and Swift.  *See* PSOF 55 174-178 (lease forbids use of other drivers or helpers; if ill, driver can request permission to use a substitute driver under IEL's conditions); Lease ¶ 6; and PSOF ¶¶ 181-183.  *And see* JS Depo. at 133:7-134:5 (what he actually says here is that he never considered it, didn't know under what circumstances he could hire employees other than lumpers, and he's never seen other lease operators do it)  And see JS 126:23-127:11 (expressing confusion again and asking for clarification of the question; it is not dear that Sheer had an understanding that he could hire drivers even with Swift's permission).

DEFENDANTS' REPLY:

Plaintiff admits that his ICOA with Swift stated he could assign someone of his choosing to deliver freight or perform other work in his place.  As such, Plaintiff does not actually dispute this Undisputed Material Fact.

Additionally, the evidence clearly establishes that Plaintiff had the ability to hire drivers to work for him while he was an Owner-Operator, as long as such individuals met DOT regulations and other state and federal legal requirements (in this regard, Plaintiff was subject to the same hiring limitations as Swift).  (Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 7.)  In practice, Swift exerted little to no oversight regarding the employees that Owner-Operators chose to hire, and rarely took any action regarding an Owner-Operator's decision to hire a particular employee.  (Berry Decl., ¶ 10.)

Plaintiff attempts to distract the Court by arguing that his lease with IEL precluded him from assigning someone to drive in his place.  This argument fails.  Plaintiff's reliance on the lease is misplaced.  The lease has no bearing on whether Plaintiff was in an independent contractor relationship with Swift while he was an Owner-Operator, as IEL and Swift are distinct

-33-

1   and separate entities.  (Berry Decl., ¶ 21.)  Moreover, the lease did not

2   preclude him from assigning someone to drive in his place.  Paragraph 6(a)

3   of the lease specifically states that he may "substitute a competent, licensed

4   driver who will be under his/her control and direction."

5

6   29.   As an Owner-Operator, Sheer could also have a passenger ride with him

7   while he performed his work. [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 134:6-19.]

8   PLAINTIFF'S REPLY:

9   DENIED.  *See* JS 135:2-136:10; Swift has to approve first.  Swift PRE-CABS

10  Training (Pl. Ex. 11, p. 15) explains that Swift requires authorization for pets and

11  passengers, p. 15 (Bates DEF003002).

12  DEFENDANTS' RESPONSE:

13      This Undisputed Material Fact is taken directly from Plaintiff's deposition

14  testimony.  Specifically, Plaintiff testified that his wife rode along with him when

15  he was an Owner-Operator.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 134:6-19.)

16  As such, Plaintiff's response is insufficient to create a genuine issue of disputed

17  fact.   Additionally, Plaintiff admits that federal law, not simply Swift policy,

18  required him to fill out a form before his wife was able to ride with him.  (Supp.

19  Mussig Decl., ¶ 2, Ex. G, Sheer Depo., pgs. 135:1-136:10.)  Plaintiff clarified that

20  he was unsure if Swift even had the right to prohibit passengers from riding with

21  him.  (*Id.*)

22      It is irrelevant whether employee drivers are allowed to have passengers.

23  Swift's policies applicable to employee drivers have no bearing on whether Plaintiff

24  was properly classified as an independent contractor while he was an Owner-

25  Operator.

26

27

28

1    30.    Sheer invested thousands of dollars into his truck while he was an

2   Owner-Operator. [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. at 80:9-81:5; Mussig Decl.,

3   ¶ 4, Ex. C, Sheer's Lease Agreement dated August 7, 2006.]

4    PLAINTIFF'S RESPONSE:

5    DENIED.  The cited deposition testimony merely says that he put down twice what

6    Swift required as a down payment. Pl. Ex. 19, ¶ 22 shows that Sheer gave a security

7    deposit of $2,500 "as security for the faithful performance" not as an "investment."

8    All other payments related to his truck were financed by Swift and deducted weekly

9    from Plaintiff s settlement.  Those payments did not earn Plaintiff any equity in his

10   truck.  PSOF ¶ 49.  Swift's deduction of the lease expense conferred no ownership

11   or transferrable right to a driver.  See Lease generally and lease "rent."  "Swift

12   Transportation Co., Inc. retains full ownership of all equipment and the right to

13   assign equipment for use by its Drivers as it sees fit."  Swift Driver Manual, Pl.

14   Ex. 14A, Sec. 2, p. 43.

15   DEFENDANTS' REPLY:

16    Plaintiff does not dispute that that he entered into a lease agreement

17   with IEL.  (Mussig Decl., ¶ 4, Ex. C, Sheer's Lease Agreement.)  Plaintiff

18   further admits that his initial payment to IEL was $2,500.  Pursuant to

19   Schedule A of the Lease, Plaintiff paid $520 per week.  (*Id*.)  Since Plaintiff

20   was an Owner-Operator from August 7, 2006 to April, 2009, Plaintiff clearly

21   invested thousands of dollars into his truck.  (($2,500 + ($520 x 138 weeks)

22   = $74,260.)  As such, Plaintiff's response is insufficient to create a genuine

23   issue of disputed fact.

24    Plaintiff's claim that he did not have any equity interest in the truck he

25   leased from IEL is disingenuous.  Similar to a car lease, Plaintiff had the

26   option to purchase the truck for an agreed-upon residual value upon the

27   expiration of the lease.  (Supp. Mussig Decl., ¶ 3, Ex. H, Spence Depo.,

28   pgs. 80:19-82:4.)  The lease contained a provision that governed Plaintiff's

-35-

1    possible purchase of the truck from IEL following the expiration of the lease

2    term.  (Mussig Decl., ¶ 4, Ex. C, Sheer's Lease Agreement, ¶ 18.)

3          Furthermore, the fact that Swift deducted lease payments from

4    Plaintiff's settlements has no bearing on this fact.  Plaintiff made his lease

5    payments with his own earnings as an Owner-Operator.  (Mussig Decl., ¶ 2,

6    Ex. A, Sheer Depo., pgs. 80:9-81:17, 163:13-16; Supp. Mussig Decl., ¶ 2,

7    Ex. G, pg. 185:12-17.)

8          Finally, Plaintiff admitted he never received any policy documents

9    (including a Driver Manual) as an Owner-Operator.  (Mussig Decl., ¶ 2, Ex. A,

10   Sheer Depo., pg. 121:17-21.)  Plaintiff cannot argue that he was bound by

11   documents he never received.

12

13   31.    Sheer could have leased or purchased a truck from any company of his

14   choosing.  [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. at 101:8-10; Mussig Decl., ¶ 3,

15   Ex. B, Sheer's ICOA, ¶ 4.]

16   PLAINTIFF'S RESPONSE:

17   DENIED.  The Plaintiffs' testimony refers to hypothetical others rather than

18   himself.  *See* JS Aff.: ¶16 (not sure if would have passed a credit check).  *See also*

19   PSOF ¶¶ 17, 44 (lease operators not given option to lease truck from anyone other

20   than IEL).

21   DEFENDANTS' REPLY:

22         This Undisputed Material Fact is taken directly from Plaintiff's deposition

23   testimony.  Specifically, when asked, "so you weren't required to lease equipment

24   from IEL to become an owner-operator" from Swift, correct?", Plaintiff responded,

25   "You were not."  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 101:8-11.)  Plaintiff

26   cannot create a disputed fact by contradicting his own deposition testimony.  As

27   such, Plaintiff's response is insufficient to create a genuine issue of disputed fact.

28   Additionally, Plaintiff's ICOA expressly states that he was able to lease from

-36-

1    companies other than IEL.  (*See* Mussig Decl., ¶ 4, Ex. C, Sheer Lease Agreement;

2    ICOA, ¶ 4.)

3

4        32.    Sheer was also aware of Owner-Operators who invested in multiple trucks.

5    [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. at 126:7-10.]

6        PLAINTIFF'S RESPONSE:

7        DENIED.  The testimony refers to individuals who "had" more than one truck

8        (whether by lease or purchase is not stated), thus the term "invested" is

9        unsupported.

10       DEFENDANTS' REPLY:

11            This Undisputed Material Fact is taken directly from Plaintiff's deposition

12       testimony.  Specifically, when asked, "you know . . .  owner-operators that had

13       more than one truck; right?," Plaintiff responded, "Right."  (Mussig Decl., ¶ 2,

14       Ex. A, Sheer Depo., pg. 126:7-10.) Plaintiff's attempt to quibble with the word

15       "invested" fails.  The other Owner-Operators obviously spent money regardless of

16       whether they purchased or leased the additional trucks.  Plaintiff's response is

17       insufficient to create a genuine issue of disputed fact.

18

19       33.    Sheer was responsible for the repair, maintenance, and upkeep of his truck as

20    an Owner-Operator. [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 153:18- 154:13.]

21       PLAINTIFF'S RESPONSE:

22       DENIED. Swift, not Sheer, determined the maintenance schedule and standards for

23       her truck. Swift required drivers to perform mandatory maintenance. PSOF ¶¶ 187-

24       188. And if Swift was unhappy with any repairs, it would perform the work itself

25       and charge the driver. PSOF ¶¶ 189-190. Plaintiff was not solely responsible for

26       where maintenance and repairs were performed as the Lease required all

27       maintenance and repairs to be performed by Swift or IEL approved vendors Lease ¶

28       6(c). Plaintiff admits that Defendants deducted the cost of repairs either from

-37-

1   Plaintiffs' settlement or maintenance account for the cost of repairs, maintenance

2   and upkeep of his truck while the lease/contract was in effect and that Swift set his

3   mileage rate at a level that would pay for normal expenses of that type if he drove

4   as many miles as were expected of employee drivers PSOF ¶¶ 113-117.

5   <u>DEFENDANTS' REPLY:</u>

6          This Undisputed Material Fact is taken directly from Plaintiff's

7   deposition testimony.  At deposition, when Plaintiff was asked, "as a lease

8   operator, you were responsible for paying for your own maintenance; is that

9   right?," he answered, "That's correct."  (Mussig Decl., ¶ 2, Ex. A, Sheer

10  Depo., pg. 153:18-22.)  When he was asked, "Were you also responsible for

11  repairs?," he answered, "Yes."  (*Id*. at Sheer Depo., pgs. 153:24-154:1.)

12  Plaintiff cannot create an issue of disputed fact by contradicting his own

13  sworn deposition testimony.

14         Moreover, Plaintiff admits that he could select which repair shops,

15  maintenance shops, and fueling stops he used when he was an Owner-

16  Operator  (*Id*. at Sheer Depo., 155:4-23.).

17         Furthermore, the fact that Swift deducted the cost of repairs,

18  maintenance, and upkeep from Plaintiff's settlements if Plaintiff utilized a

19  Swift facility for such services is irrelevant.  Plaintiff was responsible for

20  paying for maintenance and repairs from his earnings as an Owner-Operator.

21  (*Id*. at Sheer Depo., 153:18-22, 153:24-154:1.)

22         Plaintiff's reliance on the terms of his lease with IEL is misplaced.  The lease

23  has no bearing on whether Plaintiff was in an independent contractor relationship

24  with Swift while he was an Owner-Operator, as IEL and Swift are distinct and

25  separate entities.  (Berry Decl., ¶ 21.)  Even if the lease were relevant, Murray

26  Spence repeatedly testified that Paragraph 6(c) in the Lease was not enforced.

27  (Supp. Mussig Decl., ¶ 3, Ex. H, Spence Depo., pgs. 66:17-67:9, 71:2-7.)  Spence

28  also testified that IEL "would not terminate the lease based on a violation of 6(c)."

-38-

1    (*Id.* at Spence Depo., pg. 70:14-17.)  Furthermore, Plaintiff sets forth no evidence

2    that the Minimum Guidelines for Condition of Equipment go beyond minimum

3    DOT requirements.

4        Lastly, Swift does not have mileage expectations for Owner-

5    Operators, including Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators are

6    free to drive as many or as few miles as they considered optimal for their

7    business.  (Berry Decl., ¶ 13.)  How Swift determined Plaintiff's mileage rate

8    has no bearing on whether Swift exerted "control" over Plaintiff.  If Plaintiff

9    was unhappy with the mileage rate, he could have driven for another carrier.

10

11   34.    Sheer paid for his own insurance as an Owner-Operator. [Mussig Decl., ¶ 2,

12   Ex. A, Sheer Depo., pgs. 155:25-156:21.]

13   PLAINTIFF'S RESPONSE:

14   DENIED. Swift insisted that all drivers have insurance acceptable to it. Pl. Ex. 11,

15   p.13 (Bates DEF003000); PSOF ¶¶ 84, 87-89, 205-206. Swift made available to all

16   Lease drivers insurance policies which met its minimum criteria. PSOF ¶¶ 84-85.

17   The insurance that Swift required lease operators to purchase was provided through

18   its wholly-owned captive insurance subsidiary, Mohave Transportation Insurance

19   Company, which it earns premium revenue from. Plaintiffs' Additional Statements

20   of Fact ¶¶ 21-25. All Plaintiffs signed for Swift's insurance. Ex. 6, DEF001371

21   (Van Dusen); Ex. 7, DEF001324 (Sheer); Ex. 8, DEF002018-19 (Motolinia); Ex. 9,

22   DEF002103-4 (Schwalm); Ex. 10a, DEF002361 (Wood). Once lease drivers signed

23   their approval for Swift's insurance, Swift paid the insurance (JS 156:17-18; VVD

24   29:9-12), and deducted the cost of insurance directly from the drivers weekly

25   settlement pay. VVD 53:23. *See also* JM 138, 143-144 (Swift provided insurance).

26   Swift set Sheer's mileage rate at a level that would allow him to pay for normal

27   expenses of that type if he drove as many miles as were expected of employee

28   drivers PSOF ¶¶ 113-117.

1    DEFENDANTS' REPLY:

2         This Undisputed Material Fact is taken directly from Plaintiff's deposition

3    testimony.  At deposition, Plaintiff specifically admitted that he paid for insurance

4    that covered his truck, that covered the loads, bobtail insurance, and glass insurance.

5    (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., 156:5-21.)  Plaintiff cannot dispute his own

6    sworn deposition testimony.

7         Additionally, the fact that Owner-Operators are required to maintain

8    minimal levels of insurance in compliance with federal law and had the

9    *option* to purchase insurance from Mohave Transportation Insurance

10   Company, an entity that is distinct and separate from Swift, has no bearing

11   on whether Swift exerted "control" over Plaintiff.  It is similarly irrelevant

12   that other Plaintiffs in this case opted to contract with third party insurers

13   through Swift.

14        The fact that Swift may have deducted money from Plaintiff's account

15   and made payments on behalf of Plaintiff is irrelevant, as this was simply a

16   pass-through done as a convenience to Plaintiff.  Plaintiff still paid for his

17   truck insurance from his earnings as an Owner-Operator.

18        Swift does not have mileage expectations for Owner-Operators,

19   including Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators are free to drive

20   as many or as few miles as they considered optimal for their business.

21   (Berry Decl., ¶ 13.)  How Swift determined Plaintiff's mileage rate has no

22   bearing on whether Swift exerted "control" over Plaintiff.  If Plaintiff was

23   unhappy with the mileage rate, he could have driven for another carrier.

24        Additionally, Plaintiff admitted he never received any policy

25   documents (including the Pre-CABS Training) as an Owner-Operator.

26   (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., 121:17-21.)  Plaintiff cannot argue

27   that he was bound by documents he never received.

28

1          Finally, Plaintiff improperly relies on testimony of the other Plaintiffs

2    as evidence of his own personal experiences.  Such testimony cannot create a

3    genuine issue of disputed fact as a matter of both law and common sense.

4

5    35.    Swift did not provide Sheer with anything he needed to perform his work as

6   an Owner-Operator free of charge, including fuel. [Mussig Decl., ¶ 2, Ex. A, Sheer Depo.,

7   pgs. 121:5-9, 164:9-12, 163:2-10; Mussig Decl., ¶ 5, Ex. D, Qualcomm Purchase

8   Agreement; Mussig Decl., ¶ 7, Ex. F, Berry Depo. pgs. 57:15-58:15; Mussig Decl., ¶ 4,

9   Ex. C, Sheer's Lease Agreement dated August 7, 2006; Mussig Decl., ¶ 3, Ex. B, Sheer's

10  ICOA, ¶¶ 4-5.]

11    <u>PLAINTIFF'S RESPONSE:</u>

12    DENIED.  Swift provided trip records, trailers, binders, straps, chains and similar

13    items free of charge.  Contract ¶ 2A, 13, 17B, Swift also offered to provide

14    everything else necessary to perform the job on credit and paid lease operators a

15    high enough mileage rate that that credit could be paid back each week if the lease

16    operator drove the same number of miles as were expected of employee drivers.

17    PSOF ¶¶ 82-92, 113-117, 207-208, 216- 227, 231, 236-237.  As to the truck lease,

18    Swift only required a down payment of $500 and waived that frequently.  PSOF ¶

19    83 (three of the five Plaintiffs did not even put up a down payment for their trucks).

20    Everything a lease operator needed: insurance, taxes, bond, lease payments, was

21    financed on Swift's credit with no financial outlay by the Plaintiffs at all. PSOF ¶¶

22    82- 91.  And, by virtue of the fuel cards, weekly advances and other credit offered

23    by Swift, lease operators could continue to drive week after week without any

24    financial outlay at all as long as Swift offered, and they drove, sufficient miles each

25    week.  PSOF ¶¶ 207-237.  *See* JS 121:5-9 (fuel deducted from settlement, i.e.

26    advanced by Swift.); JS 163:2-10 (paid for fueling on the fuel card and then

27    deducted from settlement).  Berry 57:15-58:15 is incomplete and should be 57:15-

28    62:6.  Berry is testifying to fact that Swift calculates its per mile cost for operating

-41-

leased and company owned trucks.  After discussion of what is included (higher mileage for lease operator; costs of operation for employees) Berry testifies that Lease Operators cost Swift less than Employee drivers

DEFENDANTS' REPLY:

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  Plaintiff was specifically asked, "was there anything that Swift provided to you that you didn't have to pay for?," and he unequivocally responded, "No." (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 163:13-16.)   Plaintiff cannot dispute his own sworn deposition testimony.

Additionally, Plaintiff admits his ICOA with Swift states that he was solely responsible for providing the equipment and the labor necessary to perform all work under the ICOA.  (Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 1.)  Plaintiff admits his experience was consistent with the terms of the ICOA.  As an example, he admits that he was responsible for the repairs, maintenance, and upkeep of his equipment.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 153:18-154:13.)  As another example, Plaintiff admits that he paid for his own fuel.  (*Id.* at Sheer Depo., pgs. 121:5-9, 163:1-10.)  Plaintiff also admits that he paid for his own insurance coverage.  (*Id.* at Sheer Depo., pgs. 155:25-156:21.)

Swift may have deducted money from Plaintiff's account and made payments on behalf of Plaintiff, but this was simply a pass-through done as a convenience to Plaintiff.  Plaintiff admits he paid for these expenses himself out of his earnings as an Owner-Operator.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 121:5-9,153:18-154:13, 155:25-156:21, 163:1-10.)

Finally, Swift does not have mileage expectations for Owner-Operators, including Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators are free to drive as many or as few miles as they considered optimal for their business.  (Berry Decl., ¶ 13.)  How Swift determined Plaintiff's mileage rate

-42-

1   has no bearing on whether Swift exerted "control" over Plaintiff.  If Plaintiff

2   was unhappy with the mileage rate, he could have driven for another carrier.

3

4        36.     Sheer purchased his own Qualcomm unit and paid his own usage fees each

5   week. [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 148:2-22, 149:1-8; Mussig Decl., ¶ 5,

6   Ex. D, Qualcomm Purchase Agreement.]

7        PLAINTIFF'S RESPONSE:

8        DENIED.  JS 148:2-22 (Sheer had to have a Qualcomm; there was no choice about

9   it).  *See also* Plaintiff Sheer's responses to ¶¶ 8 and 34 above.

10       DEFENDANTS' REPLY:

11           Defendants incorporate their replies in support of Undisputed Material Fact

12       Nos. 8 and 34.

13           At deposition, Plaintiff admitted that he purchased a Qualcomm unit, and

14       paid his own monthly usage charges.  (Supp. Mussig Decl., ¶ 2, Ex. G, Sheer Depo.,

15       pgs. 149:10-151:17.)  Plaintiff cannot dispute his own deposition testimony.

16           The fact that it was necessary for Plaintiff to have a Qualcomm unit, a

17       common means of communication in the trucking industry that could be used

18       with other trucking companies, has no bearing on any relevant issue.  In the

19       testimony cited by Plaintiff above, Plaintiff admits that he could have

20       purchased a Qualcomm unit from another company.  (Mussig Decl., ¶ 2,

21       Ex. A, Sheer Depo., pg. 148:16-22.)

22

23       37.     Sheer understood that he could purchase a Qualcomm unit from another

24   company, and was in no way required to obtain the equipment from Swift.  [Mussig Decl.,

25   ¶ 2, Ex. A, Sheer Depo., pgs. 148:2-22, 149:1-8.]

26       PLAINTIFF'S REPLY:

27       DENIED.  JS 147:5-148:22 says "I suppose you could.  Never thought about it."  JS

28       149:1-8 merely says that the companies he worked for after Swift didn't buy

-43-

Qualcomms from Swift.  *See* JS 147:5-11 ("And did you understand that you weren't required to buy the Qualcomm unit from Swift? ...  I never understood that.  You thought you had to buy the Qualcomm unit?  Sure.  It's how we communicate.").  S*ee also* Plaintiff Sheer's responses to ¶¶ 8 and 34 above.

<u>DEFENDANTS' RESPONSE:</u>

Defendants incorporate their replies in support of Undisputed Material Fact Nos. 8, 9, and 34-36.

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  Plaintiff specifically admitted that he could have purchased a Qualcomm unit from another company.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 148:16-22.)  Plaintiff cannot dispute his own deposition testimony.

Additionally, Plaintiff does not dispute his ICOA explicitly states that he "is not required to purchase or rent any products, equipment, or services from [Swift]." (Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 4.)

38.   Sheer could hire drivers, driver helpers, and laborers to work for him as an Owner-Operator, as long as they met state and federal legal requirements, such as Department of Transportation regulations.  [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 126:7-19, 133:7-134:5; Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 7.]

<u>PLAINTIFF'S REPLY:</u>

DENIED.  Although ¶ 7 of the Contract purported to give the right to hire drivers, ¶ 6(a) of the Lease required the lessee to be the driver of the truck unless the lessee was "ill, disabled, or otherwise unable to drive the Equipment" in which case he could submit a written request to substitute another driver.  Any such request not approved by IEL in 10 days was deemed denied.  Even if approved, any such substitute driver was required to meet the criteria set forth in ¶ 6(a) of the lease and ¶ 7 of the Contract and be approved by IEL and Swift.  *See* PSOF ¶¶ 174-178 (lease

forbids use of other drivers or helpers; if ill, driver can request permission to use a substitute driver under IEL's conditions); Lease ¶ 6; and PSOF ¶¶ 181-183.

As for other kinds of employees and laborers, the statement is incomplete. Paragraph 7 of the Contract requires that, prior to hiring any such employees or laborers, the lease operator obtain worker compensation coverage, provide proof of such coverage to Swift and meet a number of other requirements set forth in Paragraph 7. Swift reserves the right to ensure that a lease operator's employees meet all applicable state and federal requirements and reserves the right to bar employees from operating the Equipment. There was no reason for lease operators to hire non-driving employees or laborers as Swift would pay for such workers under the provisions of Schedule D of the contract. *See* PSOF ¶ 184.

The testimony of the Plaintiff does not support Defendant's contention. JS 133:7-134:5 (what he actually says here is that he never considered it, didn't know under what circumstances he could hire employees other than lumpers and he's never seen other lease operators do it). *And see* JS 126:23- 127:11 (expressing confusion again and asking for clarification of the question; it is not dear that Sheer had the understanding that he could hire drivers.

DEFENDANTS' RESPONSE:

Plaintiff admits that his ICOA with Swift states in Paragraph 7 that he could hire employees or laborers, as long as such individuals met DOT regulations and other state and federal legal requirements (in this regard, Plaintiff was subject to the same hiring limitations as Swift). (Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 7.) At deposition, Plaintiff admitted that he had the ability to hire laborers. (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 133:7-21.) Furthermore, Plaintiff did not dispute that he had the ability to hire drivers; rather, he testified that it simply was not something he ever "thought about." (*Id.* at Sheer Depo., pgs. 133:7-134:5.)

-45-

1       Additionally, the evidence establishes that, in practice, Swift exerts little to no

2   oversight regarding the employees that Owner-Operators choose to hire, and rarely

3   take any action regarding an Owner-Operator's decision to hire a particular

4   employee.  (Berry Decl., ¶ 10.)  Swift does not set any "standards" that such

5   employees have to meet.  (*Id*.)  For all these reasons, Plaintiff's response is

6   insufficient to create a genuine issue of disputed fact.

7

8       39.    If Sheer hired employees, he would have had to pay his own employees as an

9   Owner-Operator — Swift would not have done so.  [Mussig Decl., ¶ 3, Ex. B, Sheer's

10  ICOA, ¶ 7.]

11      PLAINTIFF'S RESPONSE:

12      DENIED.  See Response to Statement ¶37.

13      DEFENDANTS' REPLY:

14      Defendants incorporate their replies in support of Undisputed Material Fact Nos. 37

15      and 38.

16

17      40.    Sheer talked to "probably 50" other Owner-Operators before deciding to

18  become an Owner-Operator himself.  [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 69:8-

19  15.]

20      PLAINTIFF'S RESPONSE:

21      ADMITTED.  ("casually" JS 69:20).

22      DEFENDANTS' REPLY:

23      Plaintiff admits this fact is undisputed.

24

25      41.    Based on Sheer's conversations with other Owner-Operators, he understood

26  that his success as an Owner-Operator would depend on his "effort" and "dedication."

27  [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 72:4-73:3.]

28      PLAINTIFF'S RESPONSE:

-46-

DENIED.  The testimony does not say what Defendants claim it says JS 72:4-73:3 (nobody achieved what they wanted, but it varied depending on whether Swift terminated, and people failed for lack of effort or dedication).  *And see* JS 70:2-15 (Sheer notes that he didn't believe a lot of the bad things he heard about Swift—he then admits that he was "nave" at the time).

DEFENDANTS' REPLY:

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  At deposition, Plaintiff unequivocally testified that, "you have to be willing to – to – to put forth that effort and that dedication.  And if you're not, then you're going to fail."  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 72:24-73:1.)  Plaintiff cannot dispute his own sworn deposition testimony.  As such, Plaintiff's response is insufficient to create a genuine issue of disputed fact.


42.     Sheer believes he ultimately became a successful Owner-Operator because of, among other things, his financial or business sense.  [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 112:8-113:6, 169:16-170:7.]

PLAINTIFF'S RESPONSE:

DENIED.  The testimony does not say what Defendants claim it says JS 112:9-113:6 actually says "And just like where I'm at now, I'm one of the be drivers they have.  I was also a very good driver for Swift. . … its my attitude.  And I don't think that all drivers do that. … Hard work dedication that type of thing?  That's right."  This is not attributing success to financial or business sense.  JS 169:2 reiterates that "I did my job well."  Sheer was successful because of his work ethic.  JS 169:16-170:7 (Q:  Are there any other factors that would make a lease operator or owner operator more successful or less successful in a business sense?  A:  Well I would assume it would be –that would parallel the way you run your own home, I suppose, the way –way you run your finances, the way you conduct yourself.  I mean there a lot of, you know, variances that would go into that.  Finances being particularly

1    important.  So but that you know that transcends all lines you know.  If you have to

2    make a payment to Swift and you know you're laxing and not doing your work and

3    not getting the miles you need to get then obviously you can't make that payment,

4    correct?").  That quote has nothing to do with financial or business sense.  It is

5    about Swift assigning miles and the driver working hard, running miles, and being

6    dedicated to be successful – as any employee would need to do to be successful.

7    DEFENDANTS' REPLY:

8         This Undisputed Material Fact is taken directly from Plaintiff's deposition

9    testimony.  Specifically, Plaintiff admitted that several factors, including business

10   acumen, make an Owner-Operator more or less successful, noting that, "the … way

11   you run your finances [is] particularly important."  (Mussig Decl., ¶ 2, Ex. A, Sheer

12   Depo., pgs. 169:16-170:7.)  Plaintiff cannot dispute his own sworn deposition

13   testimony.  As such, Plaintiff's response is insufficient to create a genuine issue of

14   disputed fact.

15

16   43.    Sheer's ICOA provided him the opportunity to make significantly more

17   money than an employee driver by, among other things, working as a member of a driver

18   team, hiring employees, and purchasing or leasing multiple trucks.  [Mussig Decl., ¶ 2,

19   Ex. A, Sheer Depo., pg. 144:4-7; Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 7; Mussig

20   Decl., ¶ 7, Ex. F, Berry Depo. pg. 182:1-9.]

21   PLAINTIFF'S RESPONSE:

22   DENIED.  JS 144:4-7 merely says that he could have been permitted to drive as a

23   team (see Plaintiff Sheer's response to ¶ 25 above).  That says nothing about having

24   an opportunity to make significantly more money.  The cite to the ICOA ¶ 7 merely

25   discusses the right to hire employees.  It says nothing about making more money.

26   The Berry quote merely says that drivers can lease a second truck.  He says nothing

27   about making significantly more money by doing that.

28   DEFENDANTS' REPLY:

1   Defendants incorporate their replies in support of Undisputed Material Fact
2   Nos. 25 and 26.  Plaintiff does not dispute that he had the freedom to work as a
3   member of a driver team, hire employees, and purchase or lease multiple trucks –
4   all of which potentially would allow him to make more money.  Moreover, he does
5   not dispute that none of these options were available to employee drivers.  As such,
6   Plaintiff's response is insufficient to create a genuine issue of disputed fact.

7

8   44.   As an Owner-Operator, Sheer was paid per the completion of each trip – not
9   by the hour.  [Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 2.]

10  PLAINTIFF'S RESPONSE:

11  DENIED.  Plaintiff admits he was not paid by the hour but denies the remainder of
12  the statement.  While operating under his contract/lease Plaintiff was paid a fixed
13  rate per HHG (Rand-McNally "household good") mile.  Ex. 7, ICOA ¶ 2(a).  The
14  Lease if 2(e) indicates that the driver is to be paid weekly.  While ¶ 3 of the contract
15  required Plaintiff to turn in certain documentation to get credit for the miles driven
16  during a trip, he was not paid per trip.  He was paid by the number of miles he
17  drove for which the required documentation was submitted during the week.

18  DEFENDANTS' REPLY:

19  Plaintiff admits he was not paid by the hour.  He also does not deny that he
20  was paid on a mileage basis, *upon the completion of the trip*.  As such, Plaintiff's
21  response is insufficient to create a genuine issue of disputed fact.

22

23  45.   Sheer was paid via weekly settlements, while Swift employees are paid
24  through payroll checks. [Mussig Decl., ¶ 7, Ex. F, Berry Depo. pg. 268:4-17.]

25  PLAINTIFF'S RESPONSE:

26  DENIED.  *See* IEL 30(b)(6) 179:13-20 (Do employee drivers get weekly
27  settlements like lease operators get weekly settlements?  I understand they are
28  calculated differently . .  A:  Yeah. The employee drivers are paid weekly and the

-49-

1  settlements are calculated with independent contractors and are paid independent
2  contractors weekly.).  And see IEL (Berry) 180:4-181:10 (Berry explains the
3  difference between employee and lease settlements is that employees don't have
4  operating expenses deducted unless they forget to turn in receipts.  Employees also
5  have deductions for health insurance, locks, deductions for company store
6  purchases.  "So [employees] have deductions also.").
7  DEFENDANTS' REPLY:
8      This Undisputed Material Fact is taken directly from Plaintiff's
9  deposition testimony.  Plaintiff testified that he was paid via settlements and
10 that the weekly settlements he received as an Owner-Operator had no tax
11 deductions, unlike the payroll checks he received as an employee driver.
12 (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 172:16-23.)  Relatedly, Plaintiff
13 admits that he was issued a Form 1099, not a W-2, when he was an Owner-
14 Operator.  (*Id.* at Sheer Depo., pgs. 172:25-173:5.)
15     Further, contrary to Plaintiff's assertion, David Berry was the Rule
16 30(b)(6) deponent of Swift, not IEL.  In any event, Mr. Berry unequivocally
17 testified that they are paid through a "payroll check."  (Mussig Decl., ¶ 7,
18 Ex. F, Berry Depo., pg. 268:14-17.)  This testimony is uncontroverted.
19     Plaintiff's response is insufficient to create a genuine issue of disputed
20 fact.
21
22 46.   Sheer paid his own taxes when he worked as an Owner-Operator.  [Mussig
23 Decl., ¶ 2, Ex. A, Sheer Depo., pg. 172:16-23.]
24 PLAINTIFF'S RESPONSE:
25 ADMITTED IN PART, DENIED IN PART.  Plaintiff admits that, as a result of
26 Swift's decision to characterize him as an independent contractor, Swift did not
27 deduct taxes from Plaintiffs settlement payments making him responsible for his
28 own taxes.  Plaintiff denies that that practice is evidence that an independent

1  contractor relationship actually existed, or that Swift's unilateral decision to not

2  deduct taxes was lawful.

3      DEFENDANTS' REPLY:

4          This Undisputed Material Fact is taken directly from Plaintiff's

5  deposition testimony.  Plaintiff admits Swift did not deduct taxes from

6  Plaintiff's settlement payments when he was an Owner-Operator, and that he

7  was responsible for his own taxes.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo.,

8  pg. 172:16-23.)  Plaintiff cannot create an issue of disputed fact by

9  contradicting his own sworn deposition testimony.

10

11      47.     As an Owner-Operator, Sheer received an Internal Revenue Service 1099

12  form, not a W-2 form. [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 172:25- 173:5.]

13      PLAINTIFF'S RESPONSE:

14      ADMITTED IN PART, DENIED IN PART.  Plaintiff admits that, as a result of

15      Swift's decision to characterize him as an independent contractor, Swift (not the

16      IRS) sent him a FORM 1099.  Plaintiff denies that that practice is evidence that an

17      independent contractor relationship actually existed, or that Swift's unilateral

18      decision to issue him a 1099 was lawful.

19      DEFENDANTS' REPLY:

20          This Undisputed Material Fact is taken directly from Plaintiff's

21  deposition testimony.  Plaintiff admits that he received an Internal Revenue

22  Service Form 1099, not a W-2.  Plaintiff cannot create an issue of disputed

23  fact by contradicting his own sworn deposition testimony.

24

25      48.     Swift did not provide Sheer with medical insurance, dental insurance, 401(k)

26  benefits, or any other benefits as an Owner-Operator.  [Mussig Decl., ¶ 2, Ex. A, Sheer

27  Depo., pgs. 146:5-14, 147:1-3.; Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 7.]

28      PLAINTIFF'S RESPONSE:

1   ADMITTED IN PART, DENIED IN PART.  Plaintiff admits that, as a result of
2   Swift's decision to characterize him as an independent contractor, he did not receive
3   employee benefits Plaintiff denies that that practice is evidence that an independent
4   contractor relationship actually existed, or that Swift's unilateral decision not to
5   provide benefits was lawful.

6   <u>DEFENDANTS' REPLY:</u>

7   This Undisputed Material Fact is taken directly from Plaintiff's
8   deposition testimony.  Plaintiff admits that he did not receive medical
9   insurance, dental insurance, 401(k) benefits, or any other benefits from Swift
10  while he was an Owner-Operator.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo.,
11  pgs. 146:5-14, 147:1-3.)  Plaintiff cannot create an issue of disputed fact by
12  contradicting his own sworn deposition testimony.

13

14  49.   Sheer purchased his own tax services with ATBS, which he understood was
15  not owned by Swift.  [Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 158:19-21, 159:20-23.]

16  <u>PLAINTIFF'S RESPONSE:</u>

17  ADMITTED IN PART, DENIED IN PART.  Plaintiff admits that he obtained
18  tax/accountancy services which Swift made available for drivers at its terminals
19  through ATBS.  Plaintiff is not competent to speak to the relationship between
20  Swift and ATBS.  Hiring an accountant is not evidence of contractor status as
21  employee also hire tax advisors and accountants.

22  <u>DEFENDANTS' REPLY:</u>

23  This Undisputed Material Fact is taken directly from Plaintiff's
24  deposition testimony.  Plaintiff admits that he purchased his own tax services
25  with ATBS while he was an Owner-Operator.  Further, at deposition,
26  Plaintiff testified that, to his knowledge, ATBS is not owned by Swift.
27  Specifically, when asked, "To your knowledge, is ATBS owned by Swift?,"
28  Plaintiff admitted, "I do not believe it is."  (Mussig Decl., ¶ 2, Ex. A, Sheer

-52-

Depo., pgs. 158:19-21, 159:20-23).  Plaintiff's response is insufficient to create a genuine issue of disputed fact.

## PLAINTIFF'S ADDITIONAL STATEMENT OF FACTS

1.      Both company drivers and lease operators have no need to communicate with Swift managers until the driver near the point of delivery.  For example, if a load took 3-4 days to deliver, drivers would have no need to communicate with Swift until near the point of delivery, unless they were running late.  Sheer Dec. ¶2; Wood Dec. ¶2; Van Dusen Dec. ¶2.

DEFENDANTS' RESPONSE:

Partially Disputed.  While this is true for Owner-Operators, it is false for employee drivers.  Employee drivers are required to communicate with their managers at times other than when they are near the point of delivery. For example, Sheer testified that, as an employee driver, he was required to check in with Swift every morning via Qualcomm.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 44:5-45:20.)  Sheer testified that he generally checked in with is manager one to two times a day even if he was hauling a load that took multiple days to deliver.  (Supp. Mussig Decl., ¶ 2, Ex. G, Sheer Depo., pgs. 46:14-47:13.)

Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).  Swift's policies applicable to employee drivers have no bearing on whether Swift properly classified Owner-Operators, including Plaintiff, as independent contractors.

2.      Company Drivers were permitted by Swift to state a preference about what division (e.g. Over the Road, Dedicated, Flatbed, Dry Van, Intermodal, etc.) they would work in, and which terminal they preferred to work from.  Swift afforded the same

-53-

opportunity to Lease Operators.  Sheer Dec. ¶3; Wood Dec. ¶3; Van Dusen Dec. ¶3.  Swift did not always honor the driver's preference.  Wood Dec. ¶3.

DEFENDANTS' RESPONSE:

Disputed.  Owner-Operators, like Plaintiff, are able to choose what terminal they are based out of, as well as what division they wanted to drive for (line-haul, dedicated, or intermodal), whereas employee drivers are assigned their home terminal and division.  (Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo., pgs. 15:14-16:6; 19:11-20:14.)

Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).  Swift's policies applicable to employee drivers have no bearing on whether Swift properly classified Owner-Operators, including Plaintiff, as independent contractors.

3.      Both Company Drivers and Lease Operators were allowed by Swift to use their truck to make personal trips to go food shopping or attend to other necessities while on the road.  Sheer Dec. ¶4; Van Dusen Dec. ¶4; Wood Dec. ¶4.

DEFENDANTS' RESPONSE:

Partially Disputed.  While the fact is true for Owner-Operators, it is false for employee drivers.  Swift policy does not permit employee drivers to use their truck to make personal trips to go food shopping or attend to other necessities while on the road.  (Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo., pgs. 119:15-120:6.)

Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).  Swift's policies applicable to employee drivers have no bearing on whether Swift properly classified Owner-Operators, including Plaintiff, as independent contractors.

4.      The hours Company Drivers and Lease Operators work—were determined primarily by the requirements and deadlines established by Swift in its load assignments (such as pick up and drop off times), shipment mileage, and factors determined by shippers and receivers (wait times, whether the trailer was pre-loaded, load times).  Hours of

driving were also affected by the drive hours available to them through the FMCSA Hours-of-Service Rules.  Sheer Dec. ¶5; Van Dusen Dec. ¶5; Wood Dec. ¶5.

DEFENDANTS' RESPONSE:

Partially Disputed.  Defendants admit that the hours that employee drivers and Owner-Operators drive are affected by federal regulations.  Defendants admit that the hours that employee drivers drive are primarily affected by Swift.  However, Defendants dispute that the hours that Owner-Operators drive are primarily affected by Swift.  Owner-Operators are free to accept and decline freight loads offered to them by Swift.  (Mussig Decl., ¶ 7, Ex. F, Berry Depo., pgs. 157:21-158:4.)  Indeed, Owner-Operators are entitled to haul for other carriers as long as they remove any Swift indicia from their truck.  (*Id.* at Berry Depo., pg. 216:1-25.)  Therefore, the hours that Owner-Operators driver are primarily determined by their own preferences.

Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).  Swift's policies applicable to employee drivers have no bearing on whether Swift properly classified Owner-Operators, including Plaintiff, as independent contractors.

5.      As both a Company Driver and a Lease Operator, Plaintiffs were only permitted to haul freight at the direction of/on behalf of Swift Transportation.  Sheer Dec. ¶6; Van Dusen Dec. ¶6; Wood Dec. ¶6.

DEFENDANTS' RESPONSE:

Disputed.  Owner-Operators are free to accept and decline freight loads offered to them by Swift.  (Mussig Decl., ¶ 7, Ex. F, Berry Depo., pgs. 157:21-158:4; Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 1.)  Owner-Operators are also entitled to haul for other carriers as long as they removed any Swift indicia from their truck.  (Mussig Decl., ¶ 7, Ex. F, Berry Depo., pg. 216:1-25; Mussig Decl., ¶ 3, Ex. B, Sheer's ICOA, ¶ 5(b).)

1    <u>Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403)</u>.  Swift's policies

2    applicable to employee drivers have no bearing on whether Swift properly classified

3    Owner-Operators, including Plaintiff, as independent contractors.

4

5    6.    Lease Operators are supervised by their Driver Managers.  Sheer Dec. ¶6;

6    Van Dusen Dec. ¶ 6; Wood Dec. ¶ 5.

7    <u>DEFENDANTS' RESPONSE:</u>

8    <u>Disputed</u>.  While Owner-Operators did have a "Driver Manager" (a mere

9    point of contact at their home terminals), their Driver Managers were not their

10   "supervisors."  (*See* Berry Decl., ¶ 6.)  As Plaintiff Wood testified, Owner-

11   Operators had the authority to fire their Driver Managers and in fact Wood did fire

12   his Driver Manager because they did not see eye to eye. (Stancu Decl., ¶ 4, Ex. M,

13   Stancu Decl., ¶ 4, Ex. M, Wood Depo., pg. 65:15-22.)

14

15   7.    Lease Operators are also supervised by their Fleet Manager and the Rapid

16   Response Team.  Wood Dec. ¶5; Van Dusen Dec. ¶6.

17   <u>DEFENDANTS' RESPONSE:</u>

18   <u>Disputed</u>.  Owner Operators were not supervised by Fleet Managers, the

19   Rapid Response Team or anyone else at Swift.  (Supp. Mussig Decl., ¶ 4, Ex. I,

20   Berry Depo., pgs. 76:25-82:13.)  Indeed, several Plaintiffs testified that nobody met

21   them at pick-up or drop-off sites to check in or supervise them.  (Supp. Mussig

22   Decl., ¶ 5, Ex. J, Van Dusen Depo., pgs. 94:17-21, 94:23-95:3; Stancu Decl., ¶ 4,

23   Ex. M, Wood Depo., pgs. 180:25-181:22; Stancu Decl., ¶ 3, Ex. L, Motolinia

24   Depo., pgs. 95:1-5, 106:22-25, 149:8-14; Stancu Decl., ¶ 2, Ex. K, Schwalm Depo.,

25   pgs. 102:21-104:4; *see also* Berry Decl., ¶ 6.)

26

27   8.    Plaintiffs never had a supervisor ride-along in their truck while they were

28   company drivers.  Sheer Dec. ¶7; Van Dusen Dec. ¶7; Wood Dec. ¶6.

1    DEFENDANTS' RESPONSE:

2        Undisputed but Immaterial and Irrelevant (LRCiv 56.1(a); FRE 402, 403).

3    Swift's policies applicable to employee drivers have no bearing on whether Swift

4    properly classified Owner-Operators, including Plaintiff, as independent

5    contractors.

6

7    9.    The weight of a given load, and whether it had to be driven over mountains

8    or level ground, had much more of an effect on driver fuel efficiency than anything they

9    could control by the way they drove.  Sheer Dec. ¶8; Van Dusen Dec. ¶8; Wood Dec. ¶7.

10    DEFENDANTS' RESPONSE:

11        Disputed.  The weight of a given load, whether it had to be driven over

12    mountains or level ground affect, and numerous other factors may affect fuel

13    efficiency, but no single factor controls.  It is undisputed that the route Plaintiff

14    chose to take impacted his fuel efficiency.

15        Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).  What affects the

16    fuel efficiency of a load, has no bearing on any of the issues before this Court.  This

17    is particularly true given that Plaintiff was able to accept or decline any load offered

18    by Swift and chose his own routes.

19

20    10.    Defendant sets forth rules, policies and practices f or Lease Operators in a

21    series of documents which it gives to drivers:  1) the Swift Driver Manual (by its terms

22    applicable to both employee drivers and Lease drivers), 2) the Contracted Driver Manual

23    (applicable just to Lease drivers), 3) the Handshake to Horsepower, and 4) the Swift CABS

24    Training handout.  *See* PSOF ¶¶ 98-101.  Swift provided each of the documents in

25    discovery to Plaintiffs.  These policies and instructions are described below.

26    DEFENDANTS' RESPONSE:

27        Disputed.  Several Plaintiffs, including Sheer, admit that Swift did not

28    provide them with, nor require them to be familiar with, any policies or handbooks

1   as Owner-Operators, including the Pre-CABS Training manual, the "Handshake to

2   Horsepower," and the Contracted Driver Manual, and Plaintiffs could not be

3   disciplined for failing to follow company policies and procedures while they were

4   Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 121:17-21; *see also*

5   Supp. Mussig Decl., ¶ 5, Ex. J, Van Dusen Depo., pgs. 187:22-188:3; Stancu Decl.,

6   ¶ 3, Ex. L, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Stancu Decl., ¶ 4,

7   Ex. M, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 2, Ex. K, Schwalm Depo., pg.

8   45:12-16; Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo. at pg. 258:16-24.)

9          <u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>

10   Plaintiff does not establish that Swift provided him with a Driver Manual, the

11   Contracted Driver Manual, the Handshake-to-Horsepower document, and/or the

12   Pre-CABS Training document, such that he could be familiar with, let along bound

13   by, their contents.  These purported policies lack foundation and proper

14   authentication.

15

16       11.    Defendant Swift maintains a "Swift Driver Manual" which is set forth as

17   Exhibit 14 (14A and 14B) to Plaintiffs' Summary Judgment Motion.  Swift supplied

18   Plaintiffs (and all employee drivers) with the Swift Driver Manual when the driver first

19   starts working for Swift.  See PSOF ¶¶ 98-101.

20       <u>DEFENDANTS' RESPONSE:</u>

21       <u>Disputed</u>.  Several Plaintiffs, including Sheer, admit that Swift did not

22   provide them with, nor require them to be familiar with, any policies or handbooks

23   as Owner-Operators, including the Driver Manual, and Plaintiffs could not be

24   disciplined for failing to follow company policies and procedures while they were

25   Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 121:17-21; *see also*

26   Supp. Mussig Decl., ¶ 5, Ex. J, Van Dusen Depo., pgs. 187:22-188:3; Stancu Decl.,

27   ¶ 3, Ex. L, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Stancu Decl., ¶ 4,

28

1  Ex. M, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 2, Ex. K, Schwalm Depo., pg.

2  45:12-16; Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo., pg. 258:16-24.)

3      The ICOA rather than Plaintiffs' Exhibit 14 governs the relationship between

4  Owner-Operators and Swift.  (Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo.,

5  pgs. 160:25-161:6.)  Indeed, Plaintiffs' Exhibit 14 at DEF004946 is the Employee

6  Acknowledgment of the Driver Manual.  It does not mention lease operators at all.

7          <u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>

8  Plaintiff fails to offer any evidence that Swift provided him with the Driver Manual,

9  such that he could be familiar with, let alone bound by, its contents.  The Driver

10 Manual lacks foundation and proper authentication.

11

12     12.    The Swift Driver Manual, by its own terms refers both to company drivers

13 (employees) and to Lease Operators.  For example, the following provisions make clear

14 that Swift Driver Manual applies to Lease Drivers as well as employee drivers:

15     **OWNER OPERATORS**

16 •     All previous procedures apply to Owner Operators.

17 •     Owner Operators, can if they choose, fuel at our bulk fueling facilities with

18        charges for the fuel appearing on their weekly settlements.

19 •     All amounts due on Owner Operator maintenance performed are due upon

20        completion, unless other arrangements have been made with your Driver

21        Manager.

22 Ex. 14b, p. 3, Bates 5408.  And the Swift Driver Manual goes on to state:  "There is no

23 distinction with regard to whether you are a Company Driver, Contract Driver, or Owner

24 Operator."  Ex. 14b, Sec. 6, p. 1, DEF 5064.

25     **10.    PERSONAL USAGE OF COMMERCIAL VEHICLE**

26 . . . When a driver, including Contract Drivers and Owner Operators, is

27 relieved from all responsibility for performing work, time spent traveling

28 from the Driver's home to his/her terminal (normal work reporting location),

1   or from the Driver's terminal to his/her home, may be considered off-duty

2   time.

3   Ex. 14b, Sec. 6, p. 5, Def. 5064.  Further, Swift states that "All usage of a CMV

4   [Commercial Motor Vehicle] for personal conveyance must be flagged and identified as

5   such on the Drivers log, including Owner Operators' and Contract Drivers' logs."  Ex. 14b,

6   Sec. 6, p. 6, Def. 5069.  And see Def. 5070 (charts of employee and lease driver

7   discipline).

8   <u>DEFENDANTS' RESPONSE:</u>

9   <u>Disputed.</u>  Several Plaintiffs, including Sheer, admit that Swift did not

10  provide them with, nor require them to be familiar with, any policies or handbooks as

11  Owner-Operators, including the Driver Manual, and Plaintiffs could not be disciplined for

12  failing to follow company policies and procedures while they were Owner-Operators.

13  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 121:17-21; *see also* Supp. Mussig Decl., ¶ 5,

14  Ex. J, Van Dusen Depo., pgs. 187:22-188:3; Stancu Decl., ¶ 3, Ex. L, Motolinia Depo.,

15  pgs. 36:11-37:3, 124:5-18, 128:1-4; Stancu Decl., ¶ 4, Ex. M, Wood Depo., pg. 21:12-20;

16  Stancu Decl., ¶ 2, Ex. K, Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶ 4, Ex. I,

17  Berry Depo., pg. 258:16-24.)

18  The ICOA rather than Plaintiffs' Exhibit 14 governs the relationship between

19  Owner-Operators and Swift. (Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo., pg. 160:25-

20  161:6.)  Indeed, Plaintiffs' Exhibit 14 at DEF004946 is the Employee Acknowledgment of

21  the Driver Manual.  It does not mention lease operators at all.

22  <u>Misstated Evidence.</u>  Plaintiff misstates the Swift Driver Manual.  For example,

23  Plaintiff misstates the statement on DEF005064 regarding a "lack of distinction."  This

24  statement merely states that all drivers, whether employee drivers or Owner-Operators, are

25  required by law to comply with the hours of service limits ***set by the federal government***.

26  It does not purport to say that employee drivers or Owner-Operators are the same in any

27  other way.  Additionally, DEF005408, DEF0064, and DEF0069 do not contain any of the

28  text that Plaintiff claims they do.

-60-

1      <u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>

2 Plaintiff fails to offer any evidence that Swift provided him with the Driver Manual, such

3 that he could be familiar with, let along bound by, its contents.  The Driver Manual lacks

4 foundation and proper authentication.

5

6     13.     The rules and policies set forth in the Swift Driver Manual include:

7         a.     Speed for lease drivers (68 mph) and company drivers (65 mph).

8               Ex. 14A, Sec. 2, p. 12.

9         b.     "Swift Transportation Co., Inc. retains full ownership of all equipment

10               and the right to assign equipment for use by its Drivers as it sees fit."

11               Ex. 14A, Sec. 2, p. 43.

12 <u>DEFENDANTS' RESPONSE:</u>

13     <u>Disputed.</u>  Several Plaintiffs, including Sheer, admit that Swift did not

14 provide them with, nor require them to be familiar with, any policies or handbooks

15 as Owner-Operators, including the Driver Manual, and Plaintiffs could not be

16 disciplined for failing to follow company policies and procedures while they were

17 Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 121:17-21; *see also*

18 Supp. Mussig Decl., ¶ 5, Ex. J, Van Dusen Depo., pgs. 187:22-188:3; Stancu Decl.,

19 ¶ 3, Ex. L, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Stancu Decl., ¶ 4,

20 Ex. M, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 2, Ex. K, Schwalm Depo., pg.

21 45:12-16, Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo., pg. 258:16-24.)

22     The ICOA rather than Plaintiffs' Exhibit 14 governs the relationship between

23 Owner-Operators and Swift. (Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo., pg.

24 160:25-161:6.)  Indeed, Plaintiffs' Exhibit 14 at DEF004946 is the Employee

25 Acknowledgment of the Driver Manual.  It does not mention Owner-Operators at

26 all.

27     <u>Misstates Evidence.</u>  Plaintiff misstates the Driver Manual.  For example,

28 Plaintiff's citation to the statement on page DEF004799 (page 43) regarding Swift's

-61-

1  ownership rights applies to employee drivers only.  It does not apply to Owner-
2  Operators.
3      Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).
4  Plaintiff fails to offer any evidence that Swift provided him with the Driver Manual,
5  such that he could be familiar with, let along bound by, its contents.  The Driver
6  Manual lacks foundation and proper authentication.
7
8  **SWIFT'S CONTRACTED DRIVER MANUAL (Ex. 12)**
9      14.   The Contracted Driver Manual (by its terms applicable just to Lease drivers),
10 states a series of Swift policies, including, but not limited to:
11      a.   Setting a 68 mph speed limit Lease Operators may drive, Sec. 2, p. 1
12           (e.g. "The Company has no tolerance for flagrant overspeed").
13      b.   No alcohol within 12 hours of duty, Sec. 2, p. 2.  *Compare*.  49 C.F.R.
14           §392.5 (federal limit of 4 hours).
15      c.   Swift authorization for any passengers (and paperwork pertaining
16           thereto), Sec. 2, p. 3.
17      d.   Drug and alcohol testing program, Sec. 2, pp. 4-12.
18      e.   Equipment security locking policies, Sec. 2, pp. 12-13.
19      f.   Prohibiting dropping loaded trailers in locations other than terminals
20           and yards, Sec. 2, p. 13.
21      g.   Parking with loaded trailers, Sec. 2, p. 13.
22      h.   Padlocks, king-pin, and enforcer locks, Sec. 2, p. 14.
23      i.   Special procedures for "High value loads" mandating compliance
24           with company directions and procedures (e.g. trailer must be kept in
25           sight at all times, may not deviate from route, no stopping along road),
26           Sec. 2, p. 14-15.
27      j.   Swift's accident and cargo claims procedures, Sec. 2, p. 16.
28      k.   Swift's facilities policies, Sec. 2, p. 18.

-62-

l.  Swift's Qualcomm, Internet, email policies (e.g. "no messages with derogatory or inflammatory remarks . . .".), Sec. 2, p. 19.

m.  Termination and disciplinary policies, Sec. 2, p. 20.

n.  Swift's pre-tri p and post-trip inspections more expansive than federal requirements, Sec. 3, p. 2.  Compare 49 C.F.R. Part 396.

o.  Chain requirements for winter driving, Sec. 3, p. 6.

DEFENDANTS' RESPONSE:

Disputed.  Several Plaintiffs, including Sheer, admit that Swift did not provide them with, nor require them to be familiar with, any policies or handbooks as Owner-Operators, including the Contracted Driver Manual, and that they could not be disciplined for failing to follow company policies and procedures while they were Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 121:17-21; *see also* Supp. Mussig Decl., ¶ 5, Ex. J, Van Dusen Depo., pgs. 187:22-188:3; Stancu Decl., ¶ 3, Ex. L, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Sheer Depo., pg. 121:17-21; Stancu Decl., ¶ 4, Ex. M, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 2, Ex. K, Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo., pg. 258:16-24.)

Misstated Evidence.  Plaintiff misstates the Contracted Driver Manual.  For example, Plaintiff asserts that Swift requires Owner-Operators to put on snow chains a specific way; however, the manual is merely illustrating how snow tires are generally put on truck trailers.  This is illustrated by the fact that the cited page even states, "Contact the Local Highway Patrol Office with any questions."

Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).  Plaintiff fails to offer any evidence that Swift provided him with the Contracted Driver Manual, such that he could be familiar with, let alone bound by, its contents.  The Contracted Driver Manual lacks foundation and proper authentication.

-63-

1    **SWIFT'S "HANDSHAKE TO HORSEPOWER"**

2        15.    The Handshake to Horsepower, (Ex. 13, Bates DEF1455-DEF1475) provides

3    new Lease Operators with a variety of instructions:

4            a.    equipment that must be onboard (Comdata card, original copy of

5                contracts, permit book, temporary registration, Qualcomm), p. 3.

6            b.    instructions on logging into Qualcomm, p. 4.

7            c.    fueling instructions ("Do not fill up your tanks unless your trip miles

8                require it" p. 6.

9            d.    Speed limit of 68 mph., p. 12.

10           e.    Penalties for overspeed occurrences (written notice to termination),

11               p. 12.

12           f.    Penalty for "coasting out of gear or tampering with the speed control

13               equipment may result in termination" p. 12.

14           g.    Instructions that "If you have any repairs completed on your truck

15               outside of the Swift network, you are required to file a Monthly

16               Maintenance Report ... p. 13.

17           h.    Swift's "Required Decal Placement", p. 17.

18    DEFENDANTS' RESPONSE:

19        Disputed.  Several Plaintiffs, including Sheer, admit that Swift did not

20    provide them with, nor require them to be familiar with, any policies or handbooks

21    as Owner-Operators, including the Handshake to Horsepower document, and that

22    they could not be disciplined for failing to follow company policies and procedures

23    while they were Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg.

24    121:17-21; *see also* Supp. Mussig Decl., ¶ 5, Ex. J, Van Dusen Depo., pgs. 187:22-

25    188:3; Stancu Decl., ¶ 3, Ex. L, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-

26    4; Stancu Decl., ¶ 4, Ex. M, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 2, Ex. K,

27    Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo., pg.

28    258:16-24.)

1        <u>Misstates Evidence.</u>  Plaintiff misstates the Handshake to Horsepower

2   document.  For example, Plaintiff lists equipment that allegedly must be onboard.

3   However, DEF001457 merely recommends that Owner-Operators have crucial

4   items, such as the original copy of their contracts and temporary truck registration,

5   before they leave the terminal for the first time as Owner-Operators – a reasonable

6   recommendation.  DEF001458 simply notes that former employee drivers that are

7   now Owner-Operators will follow different Qualcomm log-on procedures, which

8   demonstrate one of many differences between employee drivers and Owner-

9   Operators.  Also, Swift does not provide fueling instructions; rather, DEF001460

10  lists "a few tips that will help you put less money in your tanks and more money in

11  your wallet" by increasing fuel efficiency.  Additionally, DEF001471 describes

12  federal requirements for the placement of decals, not Swift policy as Plaintiff

13  suggests.

14       <u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>

15  Plaintiff fails to offer any evidence that Swift provided him with a Handshake to

16  Horsepower document, such that he could be familiar with, let alone bound by, its

17  contents.  The Handshake to Horsepower document lacks foundation and proper

18  authentication.

19

20  16.    The Swift Pre- CABS Training (Ex. 11 (Bates DEF002988-DEF3085)) is a

21  four-part driver training program created by Swift. P. 6.

22      <u>DEFENDANTS' RESPONSE:</u>

23       <u>Disputed.</u>  Several Plaintiffs, including Sheer, admit that Swift did not

24  provide them with, nor require them to be familiar with, any policies or handbooks

25  as Owner-Operators, including the Pre-CABS Training document, and that they

26  could not be disciplined for failing to follow company policies and procedures

27  while they were Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg.

28  121:17-21; *see also* Supp. Mussig Decl., ¶ 5, Ex. J, Van Dusen Depo., pgs. 187:22-

-65-

188:3; Stancu Decl., ¶ 3, Ex. L, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Stancu Decl., ¶ 4, Ex. M, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 2, Ex. K, Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo., pg. 258:16-24.)

<u>Misstates Evidence.</u>  ATBS, a completely separate and distinct company from Swift, conducted the Pre-CABS Training.  (Berry Decl., ¶ 4.)  It was provided as a convenience to Owner-Operators and was completely voluntary.  (*Id.*)  There were no consequences if Owner-Operators chose not to participate in the training.  (*Id.*)

<u>Vague and Ambiguous.</u>  Plaintiff's page citations to the Pre-CAB Training document are vague and ambiguous and, as such, Plaintiff fails to "refer to a specific admissible portion of the record" as required by LRCiv 56.1(a).  Specifically, this document has multiple pages labeled as "Page 6," making it impossible to determine what evidence Plaintiff purport to cite.

<u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>  Plaintiff fails to offer any evidence that Swift provided him with the Pre-CABS Training document, such that he could be familiar with, let alone bound by, its contents.  This policy lacks foundation and proper authentication.

17.  The Pre-CABS training includes Swift policies such as:

    a.  Qualcomm Rental policies, p. 12.

    b.  Mandatory insurance, p. 13.

    c.  Insurance claim policies, p. 14.

    d.  Authorization required for pets and passengers, p. 15 ("All drivers who would like to have passengers ride with him/her must comply with the Rider or Pet Rider program"), p. 15.

    e.  "Lease Term—You are responsible for the full length—all payments of the lease, regardless of whether you quit, turn in the truck early or

1    leave Swift.  Walking away from the lease will be considered a
2    default of the lease and you will be subject to collections, including
3    any costs for repair of the truck that is needed."  P. 22.
4    f.    No modifications to truck ("Since your leased truck does not belong
5          to you, you cannot make any modifications to the equipment without
6          prior written consent from IEL.").  P. 22.
7    g.    Required trip paperwork, p. 26.
8    h.    $30 fee to use authorized, but non-Swift repair shop, p. 53.

9    DEFENDANTS' RESPONSE:

10   Disputed.  Several Plaintiffs, including Sheer, admit that Swift did not
11   provide them with, nor require them to be familiar with, any policies or handbooks
12   as Owner-Operators, including the Handshake to Horsepower document, and that
13   they could not be disciplined for failing to follow company policies and procedures
14   while they were Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg.
15   121:17-21; *see also* Supp. Mussig Decl., ¶ 5, Ex. J, Van Dusen Depo., pgs. 187:22-
16   188:3; Stancu Decl., ¶ 3, Ex. L, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-
17   4; Stancu Decl., ¶ 4, Ex. M, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 2, Ex. K,
18   Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo., pg.
19   258:16-24.)

20   Misstates Evidence.  Plaintiff misstates the Pre-CABS Training document.
21   For example, DEF002999 merely states that Owner-Operators "*may* rent [their]
22   QualComm communications equipment" through Swift.  (emphasis added).
23   DEF003001 explains how to file an insurance claim if an Owner-Operator chooses
24   to obtain insurance through Swift.  (*See* DEF003000 ("If you do purchase through
25   Swift . . . ,"  "if you choose to purchase [insurance] available through Swift," etc.).)
26   Additionally, the requirements under the lease have no bearing on whether
27   Plaintiff was in an independent contractor relationship with Swift while he was an

28

-67-

Owner-Operator, as Swift and IEL are distinct and separate entities.  (Berry Decl., ¶ 21.)

Vague and Ambiguous. Plaintiff's page citations to the Pre-CAB Training document are vague and ambiguous and, as such, Plaintiffs fail to "refer to a specific admissible portion of the record" as required by LRCiv 56.1(a). For example, this document has multiple pages labeled as "Page 12," making it impossible to determine what evidence Plaintiffs purport to cite.

Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)). Plaintiff fails to offer any evidence that Swift provided him with the Pre-CABS Training document, such that he could be familiar with, let alone bound by, its contents.  The Pre-CABS Training document lacks foundation and proper authentication.


**SWIFT PROVIDED THESE MATERIALS IN DISCOVERY**

18.    Swift provided each of these policy documents in discovery and indicated the specific document demand topic to which each document was responsive.  Ex. 30 attached to Declaration of Lesley Tse in Support of Plaintiffs' Opposition to Defendants' Motions for Summary Judgment, dated July 22, 2016 ("Tse Dec.").

DEFENDANTS' RESPONSE:

Partially Disputed.  Swift admits that it produced the Driver Manual, Contracted Driver Manual, Handshake to Horsepower documents, and Pre-CABS Training documents.  However, Defendants dispute that these policies were distributed and applied to Plaintiff.  Several Plaintiffs, including Sheer, admit that Swift did not provide them with, nor require them to be familiar with, any policies or handbooks as Owner-Operators and that they could not be disciplined for failing to follow company policies and procedures while they were Owner-Operators. (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 121:17-21; *see also* Supp. Mussig Decl., ¶ 5, Ex. J, Van Dusen Depo., pgs. 187:22-188:3; Stancu Decl., ¶ 3, Ex. L,

Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Stancu Decl., ¶ 4, Ex. M, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 2, Ex. K, Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo., pg. 258:16-24.)  Furthermore, as explicitly stated in Plaintiffs' Exhibit 30, "[n]o incidental or implied admissions [were] intended by [the] log."  (Pl.'s Ex. 30, 1:12-13.)  Simply because a policy document was in the possession, control, or custody of the Defendants does not mean it was distributed and enforced., and certainly does not mean it was provided to this particular Plaintiff.

Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)). Plaintiff fails to offer any evidence that Swift provided him with the Driver Manual, Contracted Driver Manual, Handshake to Horsepower documents, and/or the Pre-CABS Training documents, such that he could be familiar with, let along bound by, their contents.  These purported policies lack foundation and proper authentication.

19.    Swift identified the Contracted Driver Manual, Handshake to Horsepower, and Pre-Cabs Training" as "Defendants' instructions to named-plaintiffs as to when, where, and how to work." *Id.*

DEFENDANTS' RESPONSE:

Partially Disputed.  Swift admits it produced the Contracted Driver Manual, Handshake to Horsepower documents, and Pre-CABS Training documents. However, Defendants dispute that these policies were distributed and applied to Plaintiff.  Several Plaintiffs, including Sheer, admit that Swift did not provide them with, nor require them to be familiar with, any policies or handbooks as Owner-Operators and that they could not be disciplined for failing to follow company policies and procedures while they were Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pg. 121:17-21; *see also* Supp. Mussig Decl., ¶ 5, Ex. J, Van Dusen Depo., pgs. 187:22-188:3; Stancu Decl., ¶ 3, Ex. L, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Stancu Decl., ¶ 4, Ex. M, Wood Depo., pg. 21:12-

20; Stancu Decl., ¶ 2, Ex. K, Schwalm Depo., pg. 45:12-16; *see* Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo., pg. 258:16-24.)  Furthermore, as explicitly stated in Plaintiffs' Exhibit 30, "[n]o incidental or implied admissions [were] intended by [the] log."  (Pl.'s Ex. 30, 1:12-13.)  Simply because a policy document was in the possession, control, or custody of the Defendants does not mean it was distributed and enforced, and certainly does not mean that it was provided to this particular Plaintiff.

<u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>  Plaintiff fails to offer any evidence that Swift provided him with the Contracted Driver Manual, Handshake to Horsepower documents, and/or Pre-CABS Training documents, such that he could be familiar with, let alone bound by, their contents. These purported policies lack foundation and proper authentication.

20.     Swift identified the Swift Driver Manual as "Handbooks or other statements of policies, regulations, or practices with respect to employee drivers."  *Id.*

<u>DEFENDANTS' RESPONSE:</u>

<u>Partially Disputed.</u>  Defendants admit that it produced the Driver Manual, and that it contains policies applicable to employee drivers.  However, Defendants dispute that any of the policies in the Driver Manual applied to Plaintiff while he was an Owner-Operator.

<u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>  Plaintiff fails to offer any evidence that Swift provided him with the Driver Manual such that he could be familiar with, let alone bound by, its contents.  This policy lacks foundation and proper authentication.

**INSURANCE PROVIDED BY SWIFT FOR LEASE OPERATORS**

21.     Swift provides various types of mandatory insurance to lease operators through Mohave Transportation Insurance Company ("Mohave"), including Occupational

1   Accident Insurance, Non-Trucking Liability (Bobtail) Insurance, and Physical Damage

2   (Collision) Insurance.  See Ex. 11 to PSOF (Doc. 775-2) at pp. 13-15, Ex. 6 to PSOF Doc.

3   772-7) at pp. 21, 82; Ex. 10a to PSOF (Doc. 775) at p. 80; Ex. 10b to PSOF (Doc. 775-1)

4   at p. 62; Ex. 32.  Swift also provides various types of non-mandatory insurance to lease

5   operators through Mohave, including GI ass Coverage and Loaner Truck Program.  *See id.*;

6   *see also* Ex. 18 to PSOF (Doc. 775-10) at pp. 9-11.

7        DEFENDANTS' RESPONSE:

8        Disputed.  Plaintiff admits he was required to finance his own insurance.

9   (Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 155:25-156:21; *see also* Stancu Decl.,

10   ¶ 3, Ex. L, Motolinia Depo., pg. 139:8-23; Supp. Mussig Decl., ¶ 5, Ex. J, Van

11   Dusen Depo., 53:14-25, 75:25-76:7; Stancu Decl., ¶ 2, Ex. K, Schwalm Depo., pgs.

12   148:11-150:2, 150:12-154:2; Stancu Decl., ¶ 4, Ex. M, Wood Depo., pg. 144:2-15;

13   Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo., pgs. 57:15-58:10.)  While Owner-

14   Operators had the option to purchase insurance from a third party insurer through

15   Swift, Swift did not pay for any Owner-Operator's insurance and did not insure any

16   Owner-Operator and therefore did not "provide" any insurance.  (Berry Decl., ¶ 9;

17   Mussig Decl., ¶ 2, Ex. A, Sheer Depo., pgs. 155:25-156:21; Stancu Decl., ¶ 3, Ex.

18   L, Motolinia Depo., pg. 139:8-23; Supp. Mussig Decl., ¶ 5, Ex. J, Van Dusen

19   Depo., 53:14-25, 75:25-76:7; Stancu Decl., ¶ 2, Ex. K, Schwalm Depo., pgs.

20   148:11-150:2, 150:12-154:2; Stancu Decl., ¶ 4, Ex. M, Wood Depo., pg. 144:2-15;

21   Supp. Mussig Decl., ¶ 4, Ex. I, Berry Depo., pgs. 57:15-58:10.)

22        Misstates Evidence.  Plaintiff's Exhibits 6, 10a, and 10b only show that Van

23   Dusen and Wood purchased insurance from a third party insurer through Swift, not

24   that Swift provided insurance to Sheer, or even Van Dusen, Wood, or other Owner-

25   Operators.

26        Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).

27   Plaintiff's Exhibits 11 and 18 lack foundation and proper authentication.  Plaintiff

28

does not establish that Swift provided him with Exhibits 11 and 18, such that he could be familiar with, let alone bound by, their contents.

22.     Mohave is a wholly-owned captive insurance subsidiary of Swift.  *See* Ex. 31 at p. 3, Tse Dec. ¶ 5; Ex. 32, Tse Dec. ¶ 6.

DEFENDANTS' RESPONSE:

Disputed.  The cited evidence does not show that Mohave is owned by Defendant Swift Transportation Co. of Arizona, LLC.  Rather, it shows that Mohave and Swift Transportation Co. of Arizona, LLC have the same corporate parent, Swift Transportation Company.

23.     Swift insures a "significant portion" of its risks through Mohave.  *See* Ex. 31 at p. 22.  Mohave provides reinsurance associated with a share of Swift's automobile liability risk.  *Id.* at p. 3.  In addition to insuring a proportionate share of Swift's corporate casualty risk, Mohave provides reinsurance coverage to third-party insurance companies associated with Swift's affiliated companies' lease operators.  *Id.*  While under dispatch and Swift's operating authority, Swift's lease operators are covered by its liability coverage and self-insurance retention limits.  *Id.*

DEFENDANTS' RESPONSE:

Disputed.  Page 3 of Plaintiff's Exhibit 13 does not contain this information.  Additionally, Page 26 states, "[E]ach [Owner-Operator] is responsible for physical damage to his or her own equipment, occupational accident coverage and liability exposure while the truck is used for non-company purposes.  Additionally, fleet operators are responsible for any applicable workers' compensation requirements for their employees."  (Pl.'s Ex. 31, at p. 26.)

Immaterial and Irrelevant (LRCiv 56.1(a); FRE 402, 403).  Swift, IEL, and Mohave are distinct and separate corporate entities.  There is no evidence in this case that the entities were improperly commingled.

-72-

1    24.    Swift earns premium revenue from its captive insurance companies.  *Id.* at

2  p. 31.

3      DEFENDANTS' RESPONSE:

4        Disputed.  The cited evidence does not show that Mohave is owned by

5  Defendant Swift Transportation Co. of Arizona, LLC.  Rather, it shows that

6  Mohave and Swift Transportation Co. of Arizona, LLC have the same corporate

7  parent, Swift Transportation Company.  There is no evidence that Defendant Swift

8  Transportation Co. of Arizona, LLC earns revenue from Mohave.

9        Immaterial and irrelevant (LRCiv 56.1(a); FRE 402, 403)  Swift, IEL, and

10  Mohave are distinct and separate corporate entities.  There is no evidence in this

11  case that the entities were improperly comingled.

12

13    25.    Swift uses Aon Hewitt, its insurance broker, to manage Mohave.  *See* Ex. 32

14  ("Swift approached Aon, the firm's existing broker, to manage the captive."); Ex. 6 to

15  PSOF (Doc. 772-7 at p. 80) ("Aon Trucking Practice works as a Risk Management &

16  Insurance Brokerage Firm providing insurance programs for the trucking industry.  The

17  program within this flyer is available solely to independent contractors of Swift

18  Transportation.  Premiums are paid via weekly settlement deductions."); Ex. 10a to PSOF

19  (Doc. 775) at p. 78 (same); Ex. 18 to PSOF (Doc. 775-10) at pp. 17, 30, 39, 45, 54, 68, 77

20  ("AON Trucking Practice works as a Risk Management & Insurance Brokerage Firm

21  providing insurance programs for the trucking industry.  They offer truck insurance as well

22  as occupational accident coverage."); Ex. 10b (Doc. 775-1) at pp. 94-97; Ex. 13 to PSOF

23  (Doc. 775-4) at p. 20.

24      DEFENDANTS' RESPONSE:

25        Disputed.  Defendant Swift Transportation Co. of Arizona, LLC does not

26  manage Mohave, as it is not the corporate parent of Mohave.

27

28

-73-

1       Immaterial and irrelevant (LRCiv 56.1(a); FRE 402, 403).  Swift, IEL, and

2   Mohave are distinct and separate corporate entities.  There is no evidence in this

3   case that the entities were improperly commingled.

4

5   **SWIFT'S CONTROL OF LEASE OPERATORS' SPEED THROUGH**

6   **SPEED GOVERNORS**

7       26.    Swift monitors and controls the speed that lease operators drive through its

8   use of speed governors affixed to lease operators' trucks.  See 30(b)(6) depo of IEL, Ex. 26

9   to PSOF (Doc. 776-7) at 121:20-122:8 (IEL monitors lease operators' job performance,

10  specifically speed, through truck governor); Ex. 18 to PSOF (Doc. 775-10) at pp. 15, 26,

11  37, 43, 52, 64, 75 (trucks leased through IEL governed at 68 mph, mentor trainers

12  governed at 65 mph); Ex. 7 to PSOF (Doc. 772-8) at p. 14 (trainers' trucks required to be

13  governed at 65 mph); Ex. 9 to PSOF (Doc. 772-10) at p. 35 (same); Ex. 10a to PSOF (Doc.

14  775) at p. 63 (same).

15     DEFENDANTS' RESPONSE:

16      Disputed.  No one from Swift monitors or controls Owner-Operators'

17  location or tracks their progress towards their destination.  (Berry Decl. ¶ 7.).

18      Additionally, Plaintiff's reliance on the lease is misplaced.  The lease has no

19  bearing on whether Plaintiff was in an independent contractor relationship with

20  Swift while he was an Owner-Operator, as IEL and Swift are distinct and separate

21  entities.  (Berry Decl., ¶ 21.)

22      Misstates Testimony.  Murray Spence's testimony immediately following the

23  testimony cited by Plaintiff establishes that IEL does not monitor the speed  of

24  Swift drivers.  (Mussig Decl., ¶ 2, Ex. A, Spence Depo., pg. 122:13-15 ("Q: And do

25  you monitor any of this information with respect to Swift drivers, Swift Company

26  drivers?  A: No.").)

27      Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).

28  Plaintiff's Exhibit 18 lacks foundation and proper authentication.  Plaintiff does not

-74-

1    establish that Swift provided him with Exhibit 18, such that he could be familiar

2    with, let alone bound by, its contents.

3

4    Dated:  September 30, 2016          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

5
                                 By _____
6                                         /s/ Robert Mussig
                                      RONALD HOLLAND
7                                    ELLEN M. BRONCHETTI
                                      PAUL S. COWIE
8                                    ROBERT MUSSIG

9                                   Attorneys for Defendants
                              SWIFT TRANSPORTATION CO. OF ARIZONA,
10                            LLC, INTERSTATE EQUIPMENT LEASING, LLC,
                                CHAD KILLEBREW and JERRY MOYES
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2016, I electronically transmitted the attached

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

Notice of Electronic filing to the following CM/ECF registrants:


Susan Joan Martin
Jennifer Lynn Kroll
Martin & Bonnett PLLC
1850 N. Central Ave.; Ste. 2010
Phoenix, AZ  85004

Dan Getman
Edward John Tuddenham
Lesley Tse
Getman & Sweeney, PLLC
9 Paradies La.
New Paltz, NY  12561

Attorneys for Defendants

*/s/ Robert Mussig*

SMRH:478720380.1
DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL
STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO SHEER