1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2    Including Professional Corporations
   RONALD J. HOLLAND, Cal. Bar No. 148687 *(Pro Hac Vice)*
3  rholland@sheppardmullin.com
   ELLEN M. BRONCHETTI, Cal. Bar No. 226975 *(Pro Hac Vice)*
4  ebronchetti@sheppardmullin.com
   PAUL S. COWIE, Cal. Bar No. 250131 *(Pro Hac Vice)*
5  pcowie@sheppardmullin.com
   Four Embarcadero Center, 17th Floor
6  San Francisco, California 94111-4109
   Telephone:    415-434-9100
7  Facsimile:    415-434-3947

8  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
9    Including Professional Corporations
   ROBERT MUSSIG, Cal. Bar No. 240369 *(Pro Hac Vice)*
10 rmussig@sheppardmullin.com
   ANNA M. STANCU, Cal. Bar No. 288283 *(Pro Hac Vice)*
11 astancu@sheppardmullin.com
   333 South Hope Street, 43rd Floor
12 Los Angeles, California 90071
   Telephone:    213-620-1780
13 Facsimile:    213-620-1398

14 Attorneys for Defendants
   SWIFT TRANSPORTATION CO. OF
15 ARIZONA, LLC, INTERSTATE EQUIPMENT
   LEASING, LLC, CHAD KILLEBREW and
16 JERRY MOYES

17               UNITED STATES DISTRICT COURT

18               FOR THE DISTRICT OF ARIZONA

19 VIRGINIA VAN DUSEN; JOHN DOE 1;        Case No. CV 10-899-PHX-JWS
   and JOSEPH SHEER, individually and on
20 behalf of all other similarly situated    **DEFENDANTS' REPLY TO**
   persons,                                   **PLAINTIFFS' CONTROVERTING**
21                                            **AND ADDITIONAL STATEMENTS**
                Plaintiffs,                   **OF FACT RE DEFENDANTS'**
22                                            **MOTION FOR PARTIAL SUMMARY**
                                              **JUDGMENT AS TO PLAINTIFF**
23 v.                                         **VIRGINIA VAN DUSEN'S STATUS AS**
                                              **AN INDEPENDENT CONTRACTOR**
24
25 SWIFT TRANSPORTATION CO., INC.;          [Filed concurrently with Reply to
   INTERSTATE EQUIPMENT LEASING,           Plaintiff's Opposition, Supplemental
26 INC.; CHAD KILLIBREW; and JERRY         Declaration of Robert Mussig, and
   MOYES,                                  Declaration of Anna M. Stancu]
27
                Defendants.
28

Defendants Swift Transportation Co. of Arizona, LLC and Interstate Equipment Leasing Co. hereby reply to Plaintiff Virginia Van Dusen's purported "Controverting and Additional Statements of Fact" filed in response to Defendants' Separate Statement of Undisputed Material Facts.

**DEFENDANTS' UNDISPUTED MATERIAL FACTS, PLAINTIFF'S PURPORTED "CONTROVERTING AND ADDITIONAL STATEMENTS OF FACT, AND DEFENDANTS' REPLY**

1.      During Van Dusen's employment with Swift as a company driver, she decided that wanted to form a business relationship with Swift, and thus approached Swift about becoming an Owner-Operator.  [Declaration of Robert Mussig ("Mussig Decl."), ¶ 2, Ex. A, Deposition of Virginia Van Dusen ("Van Dusen Depo."), pgs. 36:11-19, 68:25-69:101

PLAINTIFF'S RESPONSE:

DENIED.  Plaintiff never testified that she wanted to form a business relationship with Swift.  Deposition of Virginia Van Dusen, Doc. 772-2, Ex. 1 (hereinafter "VVD") 36:11-19 says nothing about forming a business relationship with Swift.  It merely says she saw recruiting pin-ups and approached Swift about being an owner operator.  The question about beginning such a relationship at VVD 69:6-8 were properly objected to as compound and vague.  Van Dusen also had a meeting a week or two prior to signing the lease in which a recruiter made various representations about the lease program.  VVD 44:9-45:12 (lease was "walk-away lease" and lease operators could take loads from other company's via "load board.").  Plaintiffs admit that the Company used the term "owner operator" as a colloquial label for Lease Operators and that usage induced drivers to use the same terminology.  However, at no time did Van Dusen obtain an ownership interest in the truck Defendants leased to her.  Lease, Ex. 8; PSOF ¶ 49.

-1-

1   Accordingly, the term "owner-operator" is incorrectly applied to her and

2   Plaintiff objects to and disputes its use throughout Defendants' Statement of

3   Facts.

4   DEFENDANTS' REPLY:

5   Plaintiff admits that she "approached Swift" about becoming an Owner-

6   Operator.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 36:15-19.)  Plaintiff

7   also admits that, when she became an Owner-Operator, she "understood that [her]

8   relationship with Swift was changing," and that she "underst[ood] that [her]

9   employment relationship was ending and [she was] beginning a **business**

10  **relationship** with Swift".  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 68:25-

11  69:10 (emphasis added).)  Plaintiff cannot dispute her own deposition testimony.

12  Further, Plaintiff's reliance on the terms of her lease with IEL is

13  misplaced.  The lease has no bearing on whether Plaintiff was in an

14  independent contractor relationship with Swift while she was an Owner-

15  Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶

16  21.)  Plaintiff cannot dispute that she was able to lease her truck from

17  companies other than IEL.  (*See* Mussig Decl., ¶ 3, Ex. B, Van Dusen's

18  March 3, 2009 ICOA, ¶ 4; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8,

19  2009 ICOA, ¶ 4; Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21, 2010,

20  ICOA, ¶ 4.)

21  Finally, Plaintiff's claim that she did not have any equity interest in

22  the truck she leased from IEL is disingenuous.  Similar to a car lease,

23  Plaintiff had the option to purchase the truck for an agreed-upon residual

24  value upon the expiration of the lease.  (Supp. Mussig Decl., ¶ 4, Ex. M,

25  Spence Depo., pgs. 80:19-82:4.)  The lease contained a provision that

26  governed Plaintiff's possible purchase of the truck from IEL following the

27  expiration of the lease term.  (Van Dusen's Lease Agreement with IEL dated

28

1   March 3, 2009 (Mussig Decl., ¶ 6, Ex. E, "Van Dusen's Lease Agreement", ¶

2   18.)

3

4   2.      On March 3, 2009, Van Dusen became an Owner-Operator for Swift.

5   [Mussig Decl., f 2, Ex. A, Van Dusen Depo., pg. 50:11-19; Mussig Decl., ¶ 3, Ex. B, Van

6   Dusen's Independent Contractor Operating Agreement with Swift dated March 3, 2009;

7   Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA.]

8   PLAINTIFF'S RESPONSE:

9   DENIED.  Ms. Van Dusen signed a lease/contract document on March 3,

10   2009 by which she leased a tractor from IEL and simultaneously leased it

11   back to Swift.  Lease Operators obtain no equity or ownership interest in the

12   truck leased to them by Swift by paying "rent."  *See* Lease generally.  Pl.

13   Ex. 6; PSOF ¶49.  Accordingly, the term "owner-operator" as used

14   throughout this statement by Swift is incorrect as applied to her.  Plaintiffs

15   admit that the Company used the term "owner operator" as a colloquial label

16   for Lease Operators and that usage was correspondingly used by drivers on

17   occasion.

18   DEFENDANT'S REPLY:

19   Plaintiff admits that she entered into an ICOA with Swift on March 3,

20   2009, thereby becoming an Owner-Operator for Swift.  As such, Plaintiff

21   does not actually dispute this Undisputed Material Fact.

22   Further, Plaintiff's reliance on the terms of her lease with IEL is

23   misplaced.  The lease has no bearing on whether Plaintiff was in an

24   independent contractor relationship with Swift while she was an Owner-

25   Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶

26   21.)  Plaintiff cannot dispute that she was able to lease her truck from

27   companies other than IEL.  (*See* Mussig Decl., ¶ 3, Ex. B, Van Dusen's

28   March 3, 2009 ICOA, ¶ 4; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8,

-3-

2009 ICOA, ¶ 4; Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21, 2010, ICOA, ¶ 4.)

Finally, Plaintiff's claim that she did not have any equity interest in the truck she leased from IEL is disingenuous.  Similar to a car lease, Plaintiff had the option to purchase the truck for an agreed-upon residual value upon the expiration of the lease.  (Supp. Mussig Decl., ¶ 4, Ex. M, Spence Depo., pgs. 80:19-82:4.)  The lease contained a provision that governed Plaintiff's possible purchase of the truck from IEL following the expiration of the lease term.  (Mussig Decl., ¶ 6, Ex. E, Van Dusen's Lease Agreement),¶ 18.)

3.      While she was an Owner-Operator, Van Dusen entered into multiple ICOAs with Swift which set forth the terms and conditions of the parties' independent contractor relationship.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 50:11-19; Mussig Decl., ¶ 3, Ex. B, Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA; Mussig Decl., ¶ 4, Ex. C, Van Dusen's Independent Contractor Operating Agreement with Swift dated June 8, 2009 ("Van Dusen's June 8, 2009 ICOA"); Mussig Decl., ¶ 4, Ex. D, Van Dusen's Independent Contractor Operating Agreement with Swift dated January 21, 2010 ("Van Dusen's January 21, 2010 ICOA").]

PLAINTIFF'S RESPONSE:

DENIED.  Ms. Van Dusen admits that she entered into multiple contracts with Swift and IEL on the dates indicated.  Plaintiff denies that she owned any of the equipment she used and was not, therefore, an owner-operator. Plaintiff admits that the contracts sat forth, in part, the terms and conditions of her relationship with Swift but denies that the nature of the relationship was an independent contractor relationship.  Swift cites no evidence to support its assertion that Ms. Van Dusen owned the equipment she was

leasing or that her relationship with Swift was that of an independent

contractor.

DEFENDANTS' REPLY:

Plaintiff admits that she signed multiple ICOAs with Swift, which set

forth the terms and conditions of their relationship and states that she was an

independent contractor, not an employee, of Swift.  As such, Plaintiff does

not actually dispute this Undisputed Material Fact.

Further, Plaintiff's reliance on the terms of her lease with IEL is misplaced.

The lease has no bearing on whether Plaintiff was in an independent contractor

relationship with Swift while she was an Owner-Operator, as IEL and Swift are

distinct and separate entities.  (Berry Decl., ¶ 21.)  Plaintiff cannot dispute that she

was able to lease her truck from companies other than IEL.  (*See* Mussig Decl., ¶ 3,

Ex. B, Van Dusen's March 3, 2009 ICOA ¶ 4; Mussig Decl., ¶ 4, Ex. C, Van

Dusen's June 8, 2009 ICOA ¶ 4; Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21,

2010, ICOA ¶ 4.)

Plaintiff's claim that she did not have any equity interest in the trucks she

leased from IEL is disingenuous.  Similar to a car lease, Plaintiff had the option to

purchase the truck for an agreed-upon residual value upon the expiration of the

lease.  (Supp. Mussig Decl., ¶ 4, Ex. M, Spence Depo., pgs. 80:19-82:4.)  The lease

contained a provision that governed Plaintiff's possible purchase of the truck from

IEL following the expiration of the lease term.  (Mussig Decl., ¶ 6, Ex. E, Van

Dusen's Lease Agreement, ¶ 18.)

4.     The ICOAs between Van Dusen and Swift state that "[Van Dusen] shall be

considered an Independent Contractor and not an employee of [Swift]."  [Mussig Decl., ¶

3, Ex. B, Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA, ¶ 18; Mussig Decl.,

¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶ 17; Mussig Decl., ¶ 4, Ex. D, Van Dusen's

January 21, 2010 ICOA, ¶ 17.]

PLAINTIFF'S RESPONSE:

DENIED.  Plaintiff admits that the quoted sentence appears in the contracts she signed, and that Swift intended to treat lease operators as independent contractors and drafted the contract to so state, but denies that her relationship with Swift was that of an independent contractor.  The contract, which was presented to drivers on a "take it or leave it" basis (PSOF ¶¶ 73-77), read as a whole in light of the circumstances of the whole activity establishes that she was an employee not an independent contractor.  *See* PSOF, ¶¶ 81, 93-96.

DEFENDANTS' REPLY:

Plaintiff admits that her ICOAs with Swift state that she was independent contractor, not an employee, of Swift.  As such, Plaintiff does not actually dispute this Undisputed Material Fact.

Plaintiff's claim that the ICOA "was presented to drivers on a 'take it or leave it' basis," is inflammatory and irrelevant.  There is no claim that Plaintiff was forced to enter into the ICOA, or that she was under duress when she entered into the ICOA.

Finally, Plaintiff improperly relies on testimony of the other Plaintiffs as evidence of her own personal experiences.  Such testimony cannot create a genuine issue of disputed fact as a matter of both law and common sense.

5.      The ICOAs between Van Dusen and Swift state that Van Dusen was solely responsible for determining the "method, means and manner" of performing work and providing services under the ICOA.  [Mussig Decl., ¶ 3, Ex. B, Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA, ¶ 18; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶ 17; Mussig Decl., ¶ 4, Ex. D, Van Dusen's January 21, 2010 ICOA, ¶ 17.]

PLAINTIFF'S RESPONSE:

DENIED.  Plaintiff admits that the quoted sentence appears in the contract but denies the truth of the statement.  The contract/lease read as a whole and in light of the circumstances of the whole activity establishes that Swift controlled all necessary aspects of the method, means and manner of performing her work.  The quoted section of the ICOA is contradicted by numerous other sections of the I COA and the Lease and by the rules and regulations of Swift.  *See e.g.* Defendants' "exclusive possession, control, and use of the equipment during the term of this [Contract]."  Contract ¶ 5A; Swift 30(b)(6) by Berry at 21.  *See also* PSOF ¶¶ 27, 38, 41, 42, 49, 51-57, 101, 134, 140, 141, 162.  *And see* PSOF ¶ 65.  (This exclusive control was further implemented by Swift's ability to terminate the driver without cause, repossess the truck and force the driver into debt and collections).

DEFENDANTS' REPLY:

Plaintiff admits that her ICOAs with Swift state that she was solely responsible for the method, means and manner of performing work and services under the ICOA.  As such, Plaintiff does not actually dispute this Undisputed Material Fact.

Indeed, Plaintiff admits that her experience was consistent with this contract language.  For example, Plaintiff admits that she was free to accept or decline loads offered by Swift as an Owner-Operator and that she, in fact, had declined some loads.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 97:16-24.)

There is absolutely no evidence in this case that Swift took "possession, control [or] use" of Plaintiff's truck.  Plaintiff's reference to any such an unexercised "right" is simply a red herring.

Finally, Plaintiff improperly relies on testimony of the other Plaintiffs as evidence of her own personal experiences.  Such testimony cannot create a genuine issue of disputed fact as a matter of both law and common sense.

6.     The ICOAs between Van Dusen and Swift state that Van Dusen was "not required to purchase or rent any products, equipment, or services from [Swift]."  [Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA, ¶ 4; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶ 4; Mussig Decl., ¶ 4, Ex. D, Van Dusen's January 21, 2010 ICOA, ¶4.]

PLAINTIFF'S RESPONSE:

DENIED.  Plaintiff admits that the quoted sentence appears in the contract but denies the truth of the statement.  The contract/lease read as a whole and in light of the circumstances of the whole activity establishes that Plaintiff was, as a practical matter, required to purchase or rent a variety of products, equipment and services from Swift including insurance and the Qualcomm device in her truck.  VVD: 121:23-122:4, 122:23-124:7 (had option to rent or purchase Qualcomm from Swift; VVD did not know that renting from was optional); 125:9-22 (had to rent PrePass from Swift); 143:2-144:9 (obtained her insurance through Swift because it was the least expensive).  *See also* PSOF ¶ 199.  Swift insisted that all drivers have insurance acceptable to it. PSOF ¶¶ 84, 87-89, 205-206.  Swift made available to all lease operators insurance policies which met its minimum criteria.  PSOF ¶¶ 84-85.  The insurance that Swift required lease operators to purchase was provided through its wholly-owned captive insurance subsidiary, Mohave Transportation Insurance Company, from which it earns premium revenue. Plaintiffs' Additional Statements of Fact ¶¶ 21-25.  All Plaintiffs signed for Swift's insurance.  P1. Ex. 6, DEF001371 (Van Dusen); Pl. Ex. 7, DEF001324 (Sheer); Pl. Ex. 8, DEF002018-19 (Motolinia); Pl. Ex. 9, DEF002103-4 (Schwalm); Pl. Ex. 10a, DEF002361 (Wood).  Once lease drivers signed their approval for Swift's insurance, Swift paid the insurance (JS 156:17-18; VVD 29:9-12), and deducted the cost of insurance premiums (including its margin) directly from the drivers weekly settlement pay.  VVD

-8-

53:23.  *See also* Deposition of Jose Motolinia, Doc. 772-4, Ex. 3 (hereinafter "JM") 138, 143-144 (Swift provided insurance).  Swift set Plaintiff Van Dusen's mileage rate at a level that would allow her to pay for normal expenses of that type if she drove as many miles as were expected of employee drivers.  PSOF ¶¶ 113-117.

All Plaintiffs required Swift products, equipment, and services to participate in the Swift lease program.  Swift made available all equipment (*e.g.* truck, Qualcomm unit) it required drivers to have, PSOF ¶¶ 84-91, along with all services (insurance, accounting).  Swift extended its credit to drivers to obtain this equipment which was then recovered by Swift as a weekly deduction to settlement payments.  *Id.  And see* PSOF ¶ 199 (requiring Qualcomm units onboard for satellite communication between Swift managers and drivers).  Furthermore, if truck maintenance was not performed to IEL's satisfaction, the company could perform the service and bill the driver.  PSOF ¶ 189; Lease 6(c).

DEFENDANTS' REPLY:

Plaintiff admits her ICOAs with Swift state that she was not required to purchase or rent any products, equipment, or services from Swift.  As such, Plaintiff does not actually dispute this Undisputed Material Fact.

Further, Plaintiff admits that her experience was consistent with this contract language.  Plaintiff admits that she was not required to purchase or rent any products or equipment through Swift.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 123:1-10.)  As a specific example, Plaintiff testified that, although Swift presented Plaintiff with the opportunity to obtain multiple transponders through Swift, she opted not to do so.  (*Id.* at Van Dusen Depo., pgs. 129:8-24, 130:15-25.)  Plaintiff also admits that she initially declined American Truck Business Services ("ATBS") tax serves,

-9-

1  but then later chose to use ATBS voluntarily.  (Supp. Mussig Decl., ¶ 2,

2  Ex. K, Van Dusen Depo., pgs. 155:6-158:1.)

3       Plaintiff's reliance on the terms of her lease with IEL is misplaced.  The

4  lease has no bearing on whether Plaintiff was in an independent contractor

5  relationship with Swift while she was an Owner-Operator, as IEL and Swift are

6  distinct and separate entities.  (Berry Decl., ¶ 21.)  Even if the lease were relevant,

7  Murray Spence repeatedly testified that Paragraph 6(c) in the Lease was not

8  enforced.  (Supp. Mussig Decl., ¶ 4, Ex. M, Spence Depo., pgs. 66:17-67:15, 71:2-

9  7.)  Spence also testified that IEL "would not terminate the lease based on a

10  violation of 6(c)."  (Supp. Mussig Decl., ¶ 4, Ex. M, Spence Depo., pg. 70:14-17.)

11       The fact that Owner-Operators are required to maintain minimal levels of

12  insurance in compliance with federal law and had the ***option*** to purchase insurance

13  from Mohave Transportation Insurance Company, an entity that is distinct and

14  separate from Swift, has no bearing on whether Swift exerted "control" over

15  Plaintiff.

16       Swift does not have mileage expectations for Owner-Operators,

17  including Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators are free to drive

18  as many or as few miles as they considered optimal for their business.

19  (Berry Decl., ¶ 13.)  How Swift determined Plaintiff's mileage rate has no

20  bearing on whether Swift exerted control over Plaintiff.  If Plaintiff was

21  unhappy with the mileage rate, she could have driven for another carrier.

22       Finally, Plaintiff improperly relies on testimony of the other Plaintiffs

23  as evidence of her own personal experiences.  Such testimony cannot create a

24  genuine issue of disputed fact as a matter of both law and common sense.

25

26  7.    The ICOAs between Van Dusen and Swift state that Van Dusen had no

27  obligation to accept any loads tendered by Swift.  [Mussig Decl., ¶ 3, Ex. B, Van Dusen's

28

-10-

March 3, 2009 ICOA, ¶ 1; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶ 1; Mussig Decl., ¶ 4, Ex. D, Van Dusen's January 21, 2010 ICOA, ¶ 1.]

<u>PLAINTIFF'S RESPONSE:</u>

DENIED.  Plaintiff admits that paragraph 1 of the contract stated that she was not required to accept every load tendered by Swift but denies the truth of the statement.  The contract/lease read as a whole and in light of the circumstances of the whole activity establishes that Plaintiff was not free to turn down loads because doing so risked the possibility of sitting for long periods of time before another load was offered.  VVD: 97:16-100:3 (had discretion to turn down loads but if she did Swift "would either continue sending the load until you got so sick of the Qualcomm going off that you took the load . . . or they'd let you sit for about 23 and half hours before they sent you another load.  So you didn't turn down Swift loads."  VVD turned down only two loads as a lease operator).  Employee drivers had the same right to turn down loads."  VVD 29:23-30:4 (as an employee "[y]ou could turn down an assignment, but if you turned down an assignment you'd be sitting for 24 to 48 hours until they decided to give you another); VVD 192:13-193:14 (didn't turn down loads because "You turn down loads and sit, you don't make—unless the wheels are turning you're not making money.").  The contract also explicitly grants Defendants "exclusive possession, control, and use of the equipment during the term of this [Contract]."  Swift:  21; Contract ¶ 5A; PSOF ¶ 65.  (This exclusive control was further implemented by Swift's ability to terminate the driver without cause, repossess the truck and force the driver into debt and collections).  PSOF ¶¶ 27, 38, 41, 42, 49, 51-57.  Defendants' authority to place drivers in "default" of the contract at will gave Swift the authority to demand compliance with its directions.  *Id.  And see* PSOF ¶¶ 133-142 (no

-11-

1    knowledge of other options, no choice offered, Swift's admission drivers

2    can/will sit if refuse loads, other de facto punishment(s)).

3    DEFENDANTS' REPLY:

4          Plaintiff admits that her ICOAs with Swift state that she had no

5    obligation to accept any loads tendered by Swift.  As such, Plaintiff does not

6    actually dispute this Undisputed Material Fact.  Indeed, Plaintiff admits that

7    her experience was consistent with this contract language.  At deposition,

8    Plaintiff specifically testified that she was free to accept or decline loads

9    offered by Swift as an Owner-Operator and that she, in fact, declined loads.

10   (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 97:16-24.)

11         Moreover, Plaintiff's claim that delays in being offered loads constituted

12   "discipline" is entirely speculative and erroneous.  Plaintiff's ICOAs make it

13   explicitly clear that the ICOA "shall not . . . be construed as an agreement by

14   [Swift] to furnish any specific tonnage of freight for transportation by [Plaintiff] at

15   any particular time, or at any particular place."  (Mussig Decl., ¶ 3, Ex. B, Van

16   Dusen's March 3, 2009 ICOA, ¶ 1; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8,

17   2009 ICOA, ¶ 1; Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21, 2010, ICOA, ¶

18   1.)  There are various reasons why an individual might not be offered a new load

19   right when he or she asks for one, including the fact that one simply is not available

20   in his or her area.  (*See* Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 35:25-

21   39:10.)  Mere speculation and conjecture are insufficient to create a genuine issue of

22   disputed fact.

23         There is absolutely no evidence in this case that Swift took

24   "possession, control [or] use" of Plaintiff's truck.  Plaintiff's reference to any

25   such an unexercised "right" is simply a red herring.

26         Furthermore, Swift's ability to terminate the ICOA without cause is

27   irrelevant.  Plaintiff had the same right, and if she chose to exercise that right, she

28   could have simply driven for another carrier.  (Mussig Decl., ¶ 3, Ex. B, Van

-12-

1    Dusen's March 3, 2009 ICOA, ¶¶ 5(b), 17(a); Mussig Decl., ¶ 4, Ex. C, Van

2    Dusen's June 8, 2009 ICOA, ¶¶ 5(b), 17(a); Mussig Decl., ¶ 5, Ex. D, Van Dusen's

3    January 21, 2010, ICOA, ¶¶ 5(b), 17(a); Supp. Mussig Decl., ¶ 4, Ex. M, Spence

4    Depo., pgs. 59:5-60:17.)

5           Plaintiff's reliance on the terms of her lease with IEL is misplaced.  The IEL

6    lease has no bearing on whether Plaintiff was in an independent contractor

7    relationship with Swift while she was an Owner-Operator, as IEL and Swift are

8    distinct and separate entities.  (Berry Decl., ¶ 21.)

9           Finally, Plaintiff improperly relies on testimony of the other Plaintiffs

10   as evidence of her own personal experiences.  Such testimony cannot create a

11   genuine issue of disputed fact as a matter of both law and common sense.

12

13   8.     The ICOAs between Van Dusen and Swift state that Van Dusen had no

14   obligation to purchase fuel from Swift.  [Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3,

15   2009 ICOA, ¶ 15; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶ 15;

16   Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21, 2010 ICOA, ¶ 15.]

17   PLAINTIFF'S RESPONSE:

18   DENIED.  Plaintiff admits that the contract stated that she was not required

19   to purchase fuel from Swift but denies the truth of the statement.  The

20   contract/lease read as a whole and in light of the circumstances of the whole

21   activity establishes that as a practical matter she had to purchase fuel at Swift

22   approved locations.  VVD 175:5-176:8 (Swift approved fuel locations were

23   the only locations where she could get the fuel surcharge rebate set forth in

24   her contract); PSOF ¶ 218 (could lose fuel surcharge if non-approved

25   location).

26   DEFENDANTS' REPLY:

27          Plaintiff admits her ICOAs with Swift state that she had no obligation

28   to purchase fuel from Swift.  As such, Plaintiff's response is insufficient to

-13-

1    create a genuine issue of disputed fact.  The fact that Plaintiff had the option

2    to voluntarily choose to purchase fuel at a discounted rate at "Swift approved

3    fuel locations" does not establish that Swift exerted "control" over Plaintiff.

4

5    9.    The ICOAs between Van Dusen and Swift state that Van Dusen was solely

6    responsible for providing the equipment and the labor necessary to perform all work under

7    the ICOAs.  [Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA, ¶ 1; Mussig

8    Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶ 1; Mussig Decl., ¶ 4, Ex. 5, Van

9    Dusen's January 21, 2010 ICOA, ¶ 1.]

10   PLAINTIFF'S RESPONSE:

11   DENIED.  See Plaintiff Van Dusen's response to ¶ 6 above.  Plaintiff admits

12   that the contract stated this but denies the truth of the statement.  The

13   contract/lease read as a whole and in light of the circumstances of the whole

14   activity establishes that Swift provided the equipment (*e.g.*, truck,

15   Qualcomm) it required of all lease operators by leasing it with no money

16   down and 100% financing which Swift paid itself for by deducting the

17   weekly cost of leasing and other credit extended by Swift from the higher

18   mileage rate paid to lease operators, which rate was set at a level that would

19   cover Swift's extension of credit if a lease operator drove the same number

20   of miles per week as was expected of employee drivers PSOF ¶¶ 82-92.

21   Swift made available all equipment it required drivers to have (e.g. truck,

22   Qualcomm, insurance).  PSOF ¶¶ 3-4, 84-91.

23   DEFENDANTS' REPLY:

24   Defendants incorporate their reply in support of Undisputed Material Fact

25   No. 6.

26   Plaintiff admits that her ICOAs with Swift state that she was solely

27   responsible for paying her own operating and maintenance expenses.  As

28   such, Plaintiff does not actually dispute this Undisputed Material Fact.

-14-

1    Indeed, Plaintiff admits that her experience was consistent with this contract

2    language.  She specifically admits she was responsible for the repairs,

3    maintenance, and upkeep of her equipment.  (Mussig Decl., ¶ 2, Ex. A, Van

4    Dusen Depo., pgs. 74:13-75:9.)  She also admits that she was responsible for

5    her insurance coverage.  (*Id.* at Van Dusen Depo., pgs. 75:10-76:7.)  Plaintiff

6    admits that she was not required to purchase or rent any products or

7    equipment through Swift.  (*Id.* at Van Dusen Depo., pg. 123:1-10.)  Plaintiff

8    admits that she was responsible for paying for the fuel she purchased.  (*Id.* at

9    Van Dusen Depo., pgs. 76:19-77:4, 175:5-8.)  Plaintiff admits she paid for

10   her own truck insurance, truck payment, maintenance fees, Qualcomm fees,

11   PrePass fees, fuel fees, and other expenses.  (*Id.* at Van Dusen Depo.,

12   pg. 53:14-25.)

13           The fact that Swift may have deducted money from Plaintiff's account

14   and made payments on behalf of Plaintiff is irrelevant, as this was simply a

15   pass-through done as a convenience to Plaintiff.  Plaintiff admits she paid for

16   these expenses herself out of her earnings as an Owner-Operator.  (*Id.* at Van

17   Dusen Depo., pg. 53:14-25.)

18           Further, Swift does not have mileage expectations for Owner-

19   Operators, including Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators are

20   free to drive as many or as few miles as they considered optimal for their

21   business.  (Berry Decl., ¶ 13.)  How Swift determined Plaintiff's mileage rate

22   has no bearing on whether Swift exerted "control" over Plaintiff.  If Plaintiff

23   was unhappy with the mileage rates, she could have driven for another

24   carrier.

25           Finally, Plaintiff improperly relies on testimony of the other Plaintiffs

26   as evidence of her own personal experiences.  Such testimony cannot create a

27   genuine issue of disputed fact as a matter of both law and common sense.

28

-15-

10.    The ICOAs between Van Dusen and Swift state that Van Dusen was solely responsible for paying her own operating and maintenance expenses.  [Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA, ¶¶ 10-11, 13; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶¶ 10-11, 13; Mussig Decl., ¶ 4, Ex. D, Van Dusen's January 21, 2010 ICOA, ¶¶ 10-11, 13.]

PLAINTIFF'S RESPONSE:

DENIED.  Plaintiff admits that the contract stated this but denies the truth of the statement.  The contract/lease read as a whole and in light of the circumstances of the whole activity establishes that Swift extended credit for operating and maintenance expenses and set the higher mileage rate paid to lease operators, at a level that would cover normal operating expenses including maintenance if a lease operator drove the same number of miles per week as was expected of employee drivers PSOF ¶¶ 113-117.  Swift extended its credit to drivers for fuel, tolls, and other expenses, through use of Swift's Comdata card and Comcheks.  PSOF ¶¶ 218-224.  These expenses were later deducted from drivers' per-mile pay on their settlements.  PSOF ¶ 223.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 6.

Plaintiff admits that her ICOAs with Swift state that she was solely responsible for paying her own operating and maintenance expenses.  As such, Plaintiff does not actually dispute this Undisputed Material Fact.  Indeed, Plaintiff admits that her experience was consistent with this contract language.  She specifically admits she was responsible for the repairs, maintenance, and upkeep of her equipment.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 74:13-75:9.)  She also admits that she was responsible for her insurance coverage.  (*Id.* at Van Dusen Depo., pgs. 75:10-76:7.)  Plaintiff

-16-

admits that she was not required to purchase or rent any products or equipment through Swift.  (*Id.* at Van Dusen Depo., 123:1-10.)  Plaintiff admits that she was responsible for paying for the fuel she purchased.  (*Id.* at Van Dusen Depo., pgs. 76:19-77:4, 175:5-8.)  Plaintiff admits she paid for her own truck insurance, truck payment, maintenance fees, Qualcomm fees, PrePass fees, fuel fees, and other expenses.  (*Id.* at Van Dusen Depo., pg. 53:14-25.)

The fact is that Owner-Operators had the **<u>option</u>** to obtain equipment and services through Swift or from some other third party.  Swift may have deducted money from Plaintiff's account and made payments on behalf of Plaintiff, but this was simply a pass-through done as a convenience to Plaintiff.  Plaintiff admits she paid for these expenses himself out of her earnings as an Owner-Operator.  (*Id.* at Van Dusen Depo., pg. 53:14-25.)

Swift does not have mileage expectations for Owner-Operators, including Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators are free to drive as many or as few miles as they considered optimal for their business.  (Berry Decl., ¶ 13.)  How Swift determined Plaintiff's mileage rate has no bearing on whether Swift exerted "control" over Plaintiff.  If Plaintiff was unhappy with the mileage rates, she could have driven for another carrier.

Finally, Plaintiff improperly relies on testimony of the other Plaintiffs as evidence of her own personal experiences.  Such testimony cannot create a genuine issue of disputed fact as a matter of both law and common sense.

11.    The ICOAs between Van Dusen and Swift state that Van Dusen was entitled to haul for other carriers as long as she removed any Swift indicia from her truck.  [Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA, ¶¶ 10-11, 13; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶¶ 10-11, 13; Mussig Decl., ¶ 4, Ex. D, Van Dusen's

January 21, 2010 ICOA, ¶¶ 10-11, 13; Mussig Decl., ¶ 7, Ex. F, Deposition of David Berry ("Berry Depo.") pg. 216:1-25.]

PLAINTIFF'S RESPONSE:

DENIED.  (1) the statement is incomplete.  Paragraph 5B of her contract stated "Contractor may provide services to another carrier during the term of this Agreement, provided, that at such times, Contractor agrees that it will remove from the Equipment any and all identification devices, licenses and base plates pertaining to Company and will return them to Company. Contractor agrees to indemnify, defend and hold Company harmless from any liability arising from contracting or providing services to another carrier or company.  Contractor agrees that hauling for any other party will not be performed while using Company's resources, equipment, name or authorities."  (emphasis added).  (2) Plaintiff admits that the contract contained the language in ¶ 5B but denies the truth of the statement.  The contract/lease read as a whole and in light of the circumstances of the entire activity prohibited driving for any carrier other than Swift.  Paragraph 6 of the lease forbid driving for anyone other than Swift and Swift informed Plaintiff repeatedly that she could only drive for Swift.  VVD 45:3-46:12, 48:1-5 (told by recruiter before signed lease that could operate under her own authority but after signed was told by David Leedom, her driver manager, and by Swift Rapid Response Team that she could not do so that "they were Swift's trucks and we were Swift's operators.").  *See also* PSOF ¶¶ 169-173 (ICOA says one thing, Lease restricts USD of truck to Swift only); VVD: 46:5-48:8 (Told by Swift "Rapid Response Unit" lease operators not permitted to get own authority); JM 96:25-98:9 (Swift told lease operators could not drive for other carriers.  That is what Swift told him both as an employee driver and as a lease operator); JM: 100:9-15 (same).

DEFENDANTS' REPLY:

1   Plaintiff admits her ICOAs with Swift state that she was entitled to

2   haul for other carriers as long as she removed any Swift indicia from her

3   truck.  Plaintiff had a clear contractual right to haul for other carriers.

4   (Mussig Decl., ¶ 7, Ex. F, Berry Depo., pg. 216:1-25; Mussig Decl., ¶ 3,

5   Ex. B, Van Dusen's March 3, 2009 ICOA, ¶ 5(b); Mussig Decl., ¶ 4, Ex. C,

6   Van Dusen's June 8, 2009 ICOA, ¶ 5(b); Mussig Decl., ¶ 5, Ex. D, Van

7   Dusen's January 21, 2010, ICOA, ¶ 5(b)).  Indeed, Van Dusen admits that

8   she could deliver a load under her *own* authority (not Swift's). (Mussig

9   Decl., ¶ 2, Ex. A Van Dusen Depo., pgs. 45:20-46:1.)  As such, Plaintiff's

10  response is insufficient to create a genuine issue of disputed fact.

11  Furthermore, Plaintiff's reliance on the terms of her lease with IEL is

12  misplaced.  The lease has no bearing on whether Plaintiff was in an independent

13  contractor relationship with Swift while she was an Owner-Operator, as IEL and

14  Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  Even if the lease was

15  relevant, Murray Spence repeatedly testified that Paragraph 6(c) in the Lease was

16  not enforced.  (Supp. Mussig Decl., ¶ 4, Ex. M, Spence Depo., pgs. 66:17-67:15,

17  71:2-7.)  Spence also testified that IEL "would not terminate the lease based on a

18  violation of 6(c)." (*Id.* at Spence Depo., pg. 70:14-17.)  The evidence also

19  establishes that IEL never enforced any purported contract language limiting the

20  ability of Owner-Operators to drive for carriers other than Swift, as it leased to

21  individuals with no affiliation with Swift whatsoever.  (*Id.* at Spence Depo.,

22  pgs. 59:5-60:17.)  Plaintiff offers no evidence that any of these contract provisions

23  were ever enforced against her.

24  Notably, Plaintiff fails to identify the purported individual(s) who

25  allegedly violated Swift company policy and told her she was not permitted

26  to drive for other carriers, so it is impossible for Swift to submit testimony

27  from any specific person refuting Plaintiff's self-serving allegations.

28

-19-

1    Finally, Plaintiff improperly relies on testimony of the other Plaintiffs

2    as evidence of her own personal experiences.  Such testimony cannot create a

3    genuine issue of disputed fact as a matter of both law and common sense.

4

5    12.    In February 2010, Van Dusen decided to terminate her independent

6    contractor relationship with Swift because she was unhappy with the relationship.  [Mussig

7    Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 50:11-19; 206:20-207:22.]

8    PLAINTIFF'S RESPONSE:

9    DENIED.  Incomplete and inaccurate statement as to why the relationship

10   ended.  Plaintiff s testimony continued from 50:20 to 51:6 where she

11   explained that the relationship ended "Because when I'm bringing home—

12   some of my paychecks are $178 or some of my paychecks are $400 and it's

13   barely making ends meet, I can't continue.  And I couldn't continue.  We

14   were in debt at that point because we lived off credit cards."

15   DEFENDANTS' REPLY:

16   Plaintiff admits she terminated her independent contractor relationship

17   with Swift because she was unhappy with the relationship.  As such,

18   Plaintiff's response is insufficient to create a genuine issue of disputed fact.

19   Additionally, it is important to note that Plaintiff ran her own business

20   and was able to haul freight for Swift or other carriers to make her business

21   profitable.  Indeed, Plaintiff's ICOAs specifically allowed her to haul goods

22   for third parties provided that she removed any Swift indicia from her truck.

23   (Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA, ¶ 5(b); Mussig

24   Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶ 5(b); Mussig Decl., ¶

25   5, Ex. D, Van Dusen's January 21, 2010, ICOA, ¶ 5(b); Mussig Decl., ¶ 7,

26   Ex. F, Berry Depo., pg. 216:1-25.)  The fact that Plaintiff chose not to

27   exercise this right is irrelevant to her independent contractor status.

28

13.     In total, Van Dusen was an Owner-Operator for less than one year.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 50:11-19.]

PLAINTIFF'S RESPONSE:

ADMITTED IN PART, DENIED IN PART.  Admitted that Van Dusen worked for Swift under a contract/lease for approximately 11 months. Plaintiff denies that there is any evidence that she owned any of the equipment she operated.

DEFENDANTS' REPLY:

Plaintiff admits she terminated her relationship with Swift after approximately 11 months after signing her first ICOA.  As such, Plaintiff does not actually dispute this Undisputed Material Fact.

Additionally, Plaintiff's claim that she did not have any equity interest in the truck she leased from IEL is disingenuous.  Similar to a car lease, Plaintiff had the option to purchase the truck for an agreed-upon residual value upon the expiration of the lease.  (Supp. Mussig Decl., ¶ 4, Ex. M, Spence Depo., pgs.  80:19-82:4.)  The lease contained a provision that governed Plaintiff's possible purchase of the truck from IEL following the expiration of the lease term.  (Mussig Decl., ¶ 6, Ex. E, Van Dusen's Lease Agreement, ¶ 18.)


14.     When Van Dusen started work as an Owner-Operator, she did not receive a handbook or any other documents or instruction from Swift outlining any policies, rules, or regulations, aside from a handout suggesting that she regularly clean out her trailer. [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 149:19-150:13, 152:17-19.]

PLAINTIFF'S RESPONSE:

DENIED.  Plaintiff testified at VVD 149:19-150:5, 151:6-152:25 that she received a CABS training document and was required to complete the training.  That document, which appears at Ex. 11, contains policies that

-21-

lease operators were required to comply with.  PSOF ¶ 98.  It is referenced at page 46 of 63 of Plaintiff s 3/3/2009 contract/lease where Plaintiff acknowledged that she had "60 days to successfully complete this required course."  At page 35 of 63 of her 3/3/2009 contract/lease she acknowledged that "it is a Swift policy for me to attend Swift Independent Contractor Orientation within 14-days of my contract date."  *See also* VVD 176:10-177:23 (Swift policy that she participate in driving simulator training every 60 days as a lease operator communicated to her by Qualcomm).  Swift provided new drivers with a copy of its policies and procedures applicable to all drivers and those policies are by their own terms expressly applicable to both employee and lease drivers PSOF ¶¶ 98- 101(a-u) (all policies apply to both employee and lease driver); Plaintiffs' Additional Statements of Fact ¶¶ 10-14.  *And see* VVD 149:25-151:1 (Swift required employee drivers and Los to sweep empty trailers).

DEFENDANTS' REPLY:

At deposition, Plaintiff admitted that she did not receive any **written** policy documents from Swift as an Owner-Operator.  Specifically, when asked, "When you became an owner-operator, were you given handbooks or – or guidelines, policies, written policies," Plaintiff responded, "**They didn't give us anything written** – they gave us what they called CABS training, which I don't even know what that was."  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 149:19-150:5 (emphasis added).)  She testified that ATBS, a third-party company with no alleged shared ownership relationship with Swift, provided her with a "book," but stated unequivocally that the ATBS "book" and the alleged "CABS training" are separate and distinct.  (Supp. Mussig Decl., ¶ 2, Ex. K, Van Dusen Depo., pgs. 151:6-152:19.)  Because Plaintiff admitted she never received any policy documents from Swift while she was an Owner-Operator (including the Driver Manual, Contracted Driver

-22-

1  Manual, Handshake-to-Horsepower manual, or any Pre-CABS Training

2  manuals), Plaintiff cannot argue that she was bound by such documents.

3  Furthermore, David Berry's testimony establishes that Swift does not

4  regularly enforce the provision in Plaintiff's Independent Contractor Check

5  List requesting that Owner-Operators attend an orientation within 14-days of

6  their contract date.  (Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo.,

7  pgs. 241:21-242:5.)  Plaintiff offers no evidence that she attended such an

8  orientation.

9

10  15.     Aside from that cleaning handout, Swift did not provide her with, nor require

11  her to be familiar with, any Swift policies or procedures as an Owner-Operator.  [Mussig

12  Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 149:19-150:13.]

13  PLAINTIFF'S RESPONSE:

14  DENIED.  The contract/lease ¶ 17 stated that Plaintiff s contract could be

15  terminated immediately for violation of "any Company policy."  By virtue of

16  that provision of the contract Swift required Plaintiff to be familiar with all

17  Swift policies and procedures on pain of termination.  Swift provided new

18  drivers with a copy of its Swift Driver Manual (Pl. Exs 14A and 14B) a

19  statement of policies and procedures applicable to all employee and lease

20  drivers and those policies are by their own terms expressly applicable to both

21  employee and lease drivers Plaintiffs' Additional Statements of Fact ¶¶ 10-

22  20.  Swift also made its policies and instructions dear in its Contracted

23  Driver Manual, Handshake to Horsepower, and Pre-CABS Training.  *Id.  See*

24  *also* PSOF ¶¶ 98-101(a-u) (all policies apply to both employee and lease

25  drivers).  Plaintiff testified regarding Swift's policies for driving high-value

26  loads that she had to comply with both as an employee driver and as a lease

27  operator including its policy that she could not stop within 250 miles, that

28

someone always had to be with the truck VVD 190:1-191:16.  Plaintiff also

received other instructions from Swift by Qualcomm.  VVD 191: 25-192:8.

DEFENDANTS' REPLY:

At deposition, Plaintiff admitted that she did not receive any **written**

policy documents from Swift as an Owner-Operator.  Specifically, when

asked, "When you became an owner-operator, were you given handbooks or

– or guidelines, policies, written policies," Plaintiff responded, "**They didn't**

**give us anything written** – they gave us what they called CABS training,

which I don't even know what that was."  (Mussig Decl., ¶ 2, Ex. A, Van

Dusen Depo., pgs. 149:19-150:5 (emphasis added.)  She testified that ATBS,

a third-party company with no alleged shared ownership relationship with

Swift, provided her with a "book," but stated unequivocally that the ATBS

"book" and the alleged "CABS training" are separate and distinct.  (Supp.

Mussig Decl., ¶ 2, Ex. K, Van Dusen Depo., pgs. 151:6-152:19.)  Because

Plaintiff admitted she never received any policy documents from Swift while

she was an Owner-Operator (including the Driver Manual, Contracted Driver

Manual, Handshake-to-Horsepower manual, or any Pre-CABS Training

manuals), Plaintiff cannot argue that she was bound by such documents.

Furthermore, David Berry's testimony establishes that Swift did not

enforce Paragraph 17 of the ICOA, and Plaintiff has offered no evidence to

the contrary, either as to Plaintiff specifically or as to any other Owner-

Operator.  (Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 114:21-115:6,

216:1-220:13, 241:21-242:5, 270:4-17; Berry Decl., ¶ 14.)

16.     Swift did not conduct performance evaluations for Van Dusen when she was

an Owner-Operator.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 187:22-188:3.]

PLAINTIFF'S RESPONSE:

DENIED.  The cited testimony only says that Van Dusen did not remember getting an evaluation.  Defendant has proffered no evidence that Swift failed to review Van Dusen's performance.  There is no evidence to support the statement that Swift did not conduct performance evaluations.  The evidence shows that Swift evaluated lease driver performance through its Driver Manager and other managers, as well as on-board sensors.  *See* PSOF ¶¶ 101(j), 104, 119, 127, 146, 149, 152, 155, 159.  In addition, Swift could monitor the performance of a lease operator based on the number of miles they were paid for each week and whether the lease operator earned a sufficient amount each week to allow Swift to deduct the "Total Lease Payment" and reimburse itself for all credit extended to the driver during the week.

DEFENDANTS' REPLY:

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  When asked if she was ever subject to a performance evaluation, Plaintiff testified, "**No**.  I don't remember ever getting an evaluation."  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 187:22-188:3 (emphasis added).)  Plaintiff cannot create a disputed issue of fact by contradicting her own deposition testimony.

Additionally, no one from Swift monitors Owner-Operators' location or tracks their progress towards their destination.  (Berry Decl. ¶ 7.)  Instead, it is the responsibility of the Owner-Operators (not the company) to let Swift know if they are unable to transport a load within a certain timeframe or if there are any significant updates regarding the transportation.  (*Id.*)  There is no evidence to support any claim to the contrary.  Further, Plaintiff admits that nobody from Swift met her to direct or supervise her when she picked up her loads.  (Mussig Decl., ¶ 7, Ex. F, Van Dusen Depo., pgs. 94:17-21, 94:23-95:3.)

-25-

17.     Swift did not subject Van Dusen to any disciplinary action when she was an Owner-Operator.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 187:22-188:3.]

PLAINTIFF'S RESPONSE:

DENIED.  The cited question was objected to as vague and the Plaintiff only said that she did not think so.  However, Plaintiff testified that she was forced to wait for loads when she turned down a load, a form of discipline. VVD 97:16- 100:3.  Plaintiff was subject to discipline for violation of any company policy, Contract ¶ 17, including discipline ranging from step discipline for violations of speed policies, PSOF ¶ 242, and losing the right to drive for two weeks for missing required training, VVD: 181:23-182:23, to termination, Contract ¶ 17.  See PSOF ¶¶ 242-245.

DEFENDANTS' REPLY:

This Undisputed Material Fact is taken directly from Plaintiff's deposition testimony.  At deposition, Plaintiff specifically testified that she did not recall receiving disciplinary action.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 187:22-188:3)  Plaintiff cannot create a disputed issue of fact by contradicting her own deposition testimony.

Moreover, Plaintiff's claim that delays in being offered loads constituted "discipline" is entirely speculative and erroneous.  Plaintiff's ICOAs make it explicitly clear that the ICOA "shall not . . . be construed as an agreement by [Swift] to furnish any specific tonnage of freight for transportation by [Plaintiff] at any particular time, or at any particular place."  (Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA, ¶ 1; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶ 1; Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21, 2010 ICOA, ¶ 1.)  There are various reasons why an individual might not be offered a new load right when he or she asks for one, including the fact that one simply is not available in his or her area.  (See Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 35:25-

1   39:10.)  Mere speculation and conjecture are insufficient to create a genuine issue of

2   disputed fact.

3          Furthermore, David Berry's testimony establishes that Swift does not

4   enforce Paragraph 17 in the ICOA, either as to Plaintiff specifically or as to

5   any other Owner Operator.  (Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo.,

6   pgs. 114:21-115:6, 216:1-220:13, 241:21-242:5, 270:4-17; Berry Decl., ¶

7   14.)

8

9          18.    Swift did not require Van Dusen to take any particular route when delivering

10  her freight while she was an Owner-Operator.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen

11  Depo., pgs. 101:19-102: 21.]

12  PLAINTIFF'S RESPONSE:

13  DENIED.  The cited deposition testimony is incomplete.  The complete

14  passage is VVD 101:2-102:21 in which Plaintiff testifies that Swift told her

15  the route to take and that she had to follow that route or she would not get

16  her fuel surcharge.  "Anytime we deviated from [Swift's] routes, we would

17  call and get permission and have them resent it across the Qualcomm."  *See*

18  *also* Contract ¶ 11 (lease operator required to take Swift route to obtain

19  reimbursement for tolls; PSOF ¶¶ 158, 159, 218.  *And see* PSOF 101(o)

20  (Swift set separate policies for high value loads that included mandatory

21  routing) and JM 86:23-87:16 (re following Swift policies for high value

22  loads).

23

24  Moreover, Swift had the exclusive control over the truck, Swift: 21, Contract

25  ¶ 5A, PSOF ¶ 65, and the ability to terminate a driver for any reason or no

26  reason, PSOF ¶¶ 27, 38, 41, 42, 49, 51-57, and thereby had the authority and

27  power to direct routes or terminate a driver for failing to comply with its

28  instructions, whether it did so or not.  Lease drivers would follow Swift's

-27-

routing instructions in order to obtain reimbursement for tolls and to be able to use Swift's credit for fuel purchases so they would receive their fuel surcharge.  Contract ¶ 11; PSOF ¶¶ 158-159, 218.

DEFENDANTS' REPLY:

At deposition, Plaintiff specifically testified that she was not required to take a particular route when delivering her freight as an Owner-Operator and that, indeed, she took different routes than were recommended by Swift. (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 101:19-102:21.)  Plaintiff cannot dispute her own deposition testimony.

There is absolutely no evidence in this case that Swift ever took "possession, control [or] use" of Plaintiff's truck.  Plaintiff's reference to any such an unexercised "right" is simply a red herring.

Furthermore, Swift's ability to terminate the ICOA without cause is irrelevant.  Plaintiff had the same right, and if she chose to exercise that right, she could have simply driven for another carrier.  (Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA, ¶ 5(b); Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶ 5(b); Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21, 2010, ICOA, ¶ 5(b); Mussig Decl., ¶ 7, Ex. F, Berry Depo., pg. 216:1-25.)

Plaintiff's reliance on the terms of the lease with IEL is misplaced.  The lease has no bearing on whether Plaintiff was in an independent contractor relationship with Swift while she was an Owner-Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  Plaintiff was able to lease from companies other than IEL.  (*See* Mussig Decl., ¶ 6, Ex. E, Van Dusen Lease Agreement; Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA, ¶ 4; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶ 4; Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21, 2010, ICOA, ¶ 4.)

1    Finally, Plaintiff improperly relies on testimony of the other Plaintiffs

2    as evidence of her own personal experiences.  Such testimony cannot create a

3    genuine issue of disputed fact as a matter of both law and common sense.

4

5    19.    Van Dusen was free to accept and decline freight loads offered to her as an

6    Owner-Operator.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 97:16-24; Mussig

7    Decl., ¶ 7, Ex. F, Berry Depo., pgs. 157:21-158:4.]

8    <u>PLAINTIFF'S RESPONSE:</u>

9    DENIED.  See Plaintiff Van Dusen's response to ¶ 7 above.  Plaintiff admits

10   that paragraph 1 of the contract stated that she was not required to accept

11   every load tendered by Swift but denies the truth of the statement.  The

12   contract/lease read as a whole and in light of the circumstances of the whole

13   activity establishes that Plaintiff was not free to turn down loads because

14   doing so risked the possibility of sitting for long periods of time before Swift

15   offered another load.  VVD: 97:16-100:3 (had discretion to turn down loads

16   but if did Swift "would either continue sending the load until you got so sick

17   of the Qualcomm going off that you took the load . . . or they'd let you sit for

18   about 23 and half hours before they sent you another load.  So you didn't

19   turn down Swift loads."  VVD turned down only two loads as a lease

20   operator).  Employee drivers had the same right to turn down loads.  VVD

21   29:23-30:4 (as an employee "[y]ou could turn down an assignment, but if

22   you turned down an assignment you'd be sitting for 24 to 48 hours until they

23   decided to give you another); VVD 192:13-193:14 (didn't turn down loads

24   because "You turn down loads and sit, you don't make—unless the wheels

25   are turning you're not making money.")  *See also* PSOF ¶¶ 133-142.

26

27   The testimony of Swift through its Rule 30(b)(6) designee Berry at 157:21-

28   158:4 to the effect that Swift doesn't assign loads, drivers "choose" loads is

-29-

DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL
STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO VAN DUSEN

1  contradicted by Berry himself who repeatedly refers to Swift assigning loads

2  to lease operators, see e.g. Berry 47:12-48:14; 65:24-66:7; 67:12-19.  Berry

3  also acknowledged that in the normal course only one load is communicated

4  to a driver at a time and has a period of time to accept it or not.  Berry 74:15-

5  75:2.  *See also* PSOF ¶¶ 135-136.  Mr. Berry also acknowledged that drivers

6  could wait for 48 hours for another load assignment if they declined a load,

7  depending on conditions Swift (Berry) 82:14-83:5.  She also acknowledged

8  that if drivers turn down loads it may require planners to rejigger their entire

9  load plan.  Swift (Berry) 69:25-71:11.

10  DEFENDANTS' REPLY:

11        Defendants incorporate their reply in support of Undisputed Material

12  Fact No. 7.

13        Plaintiff admits her ICOAs with Swift state that she had no obligation

14  to accept any loads tendered by Swift.  Indeed, Plaintiff testified that her

15  experience was consistent with the terms of the ICOA.  At deposition,

16  Plaintiff admitted that she was free to accept or decline loads offered by

17  Swift and that she, in fact, did so.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen

18  Depo., pg. 97:16-24; *see also* Mussig Decl., ¶ 7, Ex. F, Berry Depo.,

19  pgs. 157:21-158:4.)  Plaintiff cannot dispute her own sworn testimony.

20        Moreover, Plaintiff's claim that delays in being offered loads constituted

21  "discipline" is entirely speculative and erroneous.  Plaintiff's ICOAs make it

22  explicitly clear that the ICOA "shall not . . . be construed as an agreement by

23  [Swift] to furnish any specific tonnage of freight for transportation by [Plaintiff] at

24  any particular time, or at any particular place."  (Mussig Decl., ¶ 3, Ex. B, Van

25  Dusen's March 3, 2009 ICOA, ¶ 1; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8,

26  2009 ICOA, ¶ 11; Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21, 2010 ICOA.)

27  There are various reasons why an individual might not be offered a new load right

28  when he or she asks for one, including the fact that one simply is not available in his

1   or her area.  (*See* Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 35:25-39:10.)

2   Mere speculation and conjecture are insufficient to create a genuine issue of

3   disputed fact.

4   　　　Furthermore, the fact Dave Berry may have echoed Plaintiffs'

5   counsel's use of the word "assign" during his deposition does not negate

6   Plaintiff's deposition admissions.

7   　　　Finally, Plaintiff improperly relies on testimony of the other Plaintiffs

8   as evidence of her own personal experiences.  Such testimony cannot create a

9   genuine issue of disputed fact as a matter of both law and common sense.

10

11   　　20.　　While Van Dusen rarely turned down loads, this was entirely her choice, as

12   she felt it was a smart business decision to maximize the loads she delivered.  [Mussig

13   Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 193:9-14.]

14   PLAINTIFF'S RESPONSE

15   DENIED.  See Plaintiff Van Dusen's responses to ¶¶ 7 and 19 above.  The

16   　　statement mischaracterizes Plaintiffs testimony.  Plaintiff said nothing about

17   　　a smart business decision or choice.  Plaintiff stated she was "in the trucking

18   　　business to make money" and she would not make money if she turned down

19   　　loads.  Furthermore, Van Dusen testified that Swift punished employee

20   　　drivers and lease drivers if they turned down loads.  VVD 97:22-98:14

21   　　(describing punishment of LOs who turned down loads); VVD 192:13-15

22   　　(employee drivers turn down loads); VVD 29:23-30:6 (employee drivers

23   　　who turned down loads made to sit).  *See also* PSOF ¶¶ 133-142.

24   DEFENDANTS' REPLY:

25   　　　Plaintiff admits her ICOAs with Swift state that she had no obligation

26   　　to accept any loads tendered by Swift.  Indeed, Plaintiff testified that her

27   　　experience was consistent with the terms of the ICOA.  At deposition,

28   　　Plaintiff admitted that she was free to accept or decline loads offered by

1    Swift and that she, in fact, did so.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen

2    Depo., pg. 97:16-24; *see also* Mussig Decl., ¶ 7, Ex. F, Berry Depo., pgs.

3    157:21-158:4.)  Plaintiff cannot dispute her own sworn testimony.

4         Moreover, Plaintiff's claim that delays in being offered loads constituted

5    "discipline" is entirely speculative and erroneous.  Plaintiff's ICOAs make it

6    explicitly clear that the ICOA "shall not . . . be construed as an agreement by

7    [Swift] to furnish any specific tonnage of freight for transportation by [Plaintiff] at

8    any particular time, or at any particular place."  (Mussig Decl., ¶ 3, Ex. B, Van

9    Dusen's March 3, 2009 ICOA, ¶ 1; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8,

10   2009 ICOA, ¶ 11; Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21, 2010 ICOA.)

11   There are various reasons why an individual might not be offered a new load right

12   when he or she asks for one, including the fact that one simply is not available in his

13   or her area.  (*See* Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 35:25-39:10.)

14   Mere speculation and conjecture are insufficient to create a genuine issue of

15   disputed fact.

16        Furthermore, the fact Dave Berry may have echoed Plaintiffs'

17   counsel's use of the word "assign" during his deposition does not negate

18   Plaintiff's deposition admissions.

19        There is absolutely no evidence in this case that Swift ever took "possession,

20   control [or] use" of Plaintiff's truck.  Plaintiff's reference to any such unexercised

21   "right" is simply a red herring.

22        Furthermore, Swift's ability to terminate the ICOA without cause is

23   irrelevant.  Plaintiff had the same right, and if she chose to exercise that

24   right, she could have simply driven for another carrier.  (Mussig Decl., ¶ 3,

25   Ex. B, Van Dusen's March 3, 2009 ICOA, ¶ 5(b); Mussig Decl., ¶ 4, Ex. C,

26   Van Dusen's June 8, 2009 ICOA, ¶ 5(b); Mussig Decl., ¶ 5, Ex. D, Van

27   Dusen's January 21, 2010, ICOA, ¶ 5(b); Mussig Decl., ¶ 7, Ex. F, Berry

28   Depo., pg. 216:1-25.)

1        Plaintiff's reliance on the terms of her lease with IEL is misplaced.  The

2  lease has no bearing on whether Plaintiff was in an independent contractor

3  relationship with Swift while she was an Owner-Operator, as IEL and Swift are

4  distinct and separate entities.  (Berry Decl., ¶ 21.)  Plaintiff was able to lease from

5  companies other than IEL.  (*See* Mussig Decl., ¶ 6, Ex. E, Van Dusen Lease

6  Agreement; Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA, ¶ 4;

7  Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶ 4; Mussig Decl., ¶ 5,

8  Ex. D, Van Dusen's January 21, 2010, ICOA, ¶ 4.)

9        Finally, Plaintiff improperly relies on testimony of the other Plaintiffs

10  as evidence of her own personal experiences.  Such testimony cannot create a

11  genuine issue of disputed fact as a matter of both law and common sense.

12

13      21.    Just as Van Dusen was not required to accept the loads offered to her, Swift

14  was not required to give her a specific number of loads.  [Mussig Decl., ¶ 2, Ex. A, Van

15  Dusen Depo., pg. 170:18-22.]

16  <u>PLAINTIFF'S RESPONSE:</u>

17  ADMITTED IN PART, DENIED IN PART.  Plaintiff admits that under the

18  contract Swift was not required to give Plaintiff any specific number of loads

19  Plaintiff denies that she was not required to accept the loads offered to her.

20  *See* Response to ¶ 20 above.  Because she could only drive for Swift, see

21  response to statement ¶ 19 above, she would not make money if she turned

22  down loads.  VVD 193:9-14.

23  <u>DEFENDANTS' REPLY:</u>

24        Defendants incorporate their reply in support of Undisputed Material

25  Fact No. 20.

26        Plaintiff admits her ICOAs with Swift state that she had no obligation

27  to accept any loads tendered by Swift.  Plaintiff testified that her experience

28  was consistent with the terms of the ICOA.  (Mussig Decl., ¶ 2, Ex. A, Van

1    Dusen Depo., pg. 97:16-24; *see* Mussig Decl., ¶ 7, Ex. F, Berry Depo., pgs.

2    157:21-158:4.)  Further, Plaintiff had a clear contractual right to haul for

3    other carriers if she chose.  (Mussig Decl., ¶ 7, Ex. F, Berry Depo., pg.

4    216:1-25; Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA, ¶

5    5(b); Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶5(b);

6    Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21, 2010, ICOA, ¶ 5(b) Van

7    Dusen's ICOA, ¶ 5(b)).  Indeed, Van Dusen admits that she could deliver a

8    load under her *own* authority (not Swift's). (Mussig Decl., ¶ 2, Ex. A, Van

9    Dusen Depo., 45:20-46:1.)  Plaintiff's response is insufficient to create a

10   genuine issue of disputed fact.

11        Plaintiff improperly relies on testimony of the other Plaintiffs as

12   evidence of her own personal experiences.  Such testimony cannot create a

13   genuine issue of disputed fact as a matter of both law and common sense.

14

15        22.    No one from Swift was ever present while Van Dusen performed her work as

16   an Owner-Operator to direct her on how to carry out her work.  [Mussig Decl., ¶ 2, Ex. A,

17   Van Dusen Depo., pgs. 94:23-95:3.]

18   <u>PLAINTIFF'S RESPONSE:</u>

19   DENIED.  The cited testimony is out of context and does not support the

20   statement.  The deposition passage begins at VVD 94:17-95:8 and states that

21   no one from Swift was there when she picked up a load because "they had no

22   reason to be."  No one was directing her how to pick up the load because

23   "that all came across the Qualcomm messages if there was special

24   instructions."  In addition, both lease drivers and company drivers were

25   required to send macro messages through Qualcomm devices when they

26   arrived at shippers, when they left shippers, when they arrived at receivers,

27   and when they left receivers PSOF ¶¶ 146, 148, 149, 150 (monitoring via

28   Omni-tracs/Sensor-tracs.  Swift managers based at Swift terminals regularly

-34-

1   monitored all drivers' job performance through its electronic monitoring and

2   communications systems Plaintiff Van Dusen travelled to Swift's Phoenix

3   terminal two to three times a month.  VVD 33:18-34:23, and her home

4   terminal was the Syracuse Terminal.  VVD 24:25-25:6.  Further, Swift

5   monitored and controlled the speed that lease operators drove through its use

6   of speed governors affixed to lease operators' trucks.  Plaintiffs' Additional

7   Statements of Fact ¶ 26.  Lease operators' trucks were governed at 68 mph,

8   unless they were trainers, in which case their trucks were governed at 65

9   mph. *Id.*

10  DEFENDANTS' REPLY:

11          This Undisputed Material Fact is taken directly from Plaintiff's

12  deposition testimony.  At deposition, Plaintiff unequivocally agreed "there

13  was no one directing [her] how to pick up [loads]" "because they had no

14  reason to be."  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 94:17-

15  95:3.)  Plaintiff cannot dispute her own sworn testimony.

16          Additionally, the evidence establishes that Swift does not require that

17  Owner-Operators, including Plaintiff, check in with Swift while they are

18  hauling loads.  (Berry Decl., ¶ 6.)  Nobody meets with Owner-Operators at

19  pick-up or drop-off sites to check in or supervise them.  (*Id*.)  Swift does not

20  require that Owner-Operators notify their driver managers when they arrive

21  at a shipper to pick up a load.  (Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo.,

22  pg. 110:16-18.)

23          Finally, no one from Swift monitors Owner-Operators' location or

24  tracks their progress towards their destination.  (Berry Decl. ¶ 7.)  It is the

25  responsibility of the Owner-Operators (not the company) to let Swift know if

26  they are unable to transport a load within a certain timeframe or if there are

27  any significant updates regarding the transportation.  (*Id*.)

28

-35-

23.     No one from Swift met with Van Dusen at freight pick-up sites.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 94:17-21.]

PLAINTIFF'S RESPONSE:

DENIED as incomplete.  The deposition passage begins at VVD 94:17-95:8 and states that no one from Swift was there when she picked up a load because "they had no reason to be."  No one was directing her how to pick up the load because "that all came across the Qualcomm messages if there was special instructions."  *See* Response to Statement 22.

DEFENDANTS' REPLY:

Defendants incorporate their reply in support of Undisputed Material Fact No. 22.

At deposition, Plaintiff specifically admitted there was no one from Swift to meet her when she picked up her loads. (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 94:17-95:3.)  Plaintiff cannot dispute her own sworn testimony.

Additionally, the evidence establishes that Swift does not require that Owner-Operators, including Plaintiff, check in with Swift while they are hauling loads.  (Berry Decl., ¶ 6.)  Nobody meets with Owner-Operators at pick-up or drop-off sites to check in or supervise them.  (*Id.*)  Swift do not require that Owner-Operators notify their driver managers when they arrive at a shipper to pick up a load.  (Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo., pg. 110:16-18.)

24.     Van Dusen was not required to visit any particular repair shops, maintenance shops, or fuel stops while she was an Owner-Operator.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., 137:20-138:3; 175:5-8; Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3,

2009 ICOA, ¶¶ 4, 15; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶¶ 4, 15; Mussig Decl., ¶ 4, Ex. D, Van Dusen's January 21, 2010 ICOA, ¶¶ 4, 15; Mussig Decl., ¶ 8, Ex. G, Deposition of Murray Spence ("Spence Depo.") pg. 65:20-66:16.]

25.

<u>PLAINTIFF'S RESPONSE:</u>

DENIED.  With respect to repair and maintenance locations the Lease ¶ 6(c) states that lain Equipment repairs and maintenance shall be performed at facilities designated or approved by the Lessor."  In addition, repairs performed outside of a Swift facility that cost more than $1000 must be approved in advance by Swift's Rapid Response Team.  Ex. 11 (Pre-CABS Training manual at 3039).  *See* PSOF ¶¶ 189-191.  *See also* PSOF ¶ 195 (three Swift terminals had inspection lines that trucks had to go through whenever they went through the fuel line).  The cited testimony from Spence, IEL's 30(b)(6) witness is incomplete.  It continues from VVD 65:20 through 75:5 and indicates that approval was required for repairs and, that while the witness did not know about the extent of enforcement, IEL expected contractors to execute the contract in good faith.  *See also* Wood Depo 150:21-24 (no choice if breakdown, Swift told where to go).

With respect to fuel stops, the cited passage at 175:5-8 merely says that Plaintiff paid for her own fuel.  The passage continues at 175:9-176:3 in which Plaintiff states that she would fuel at Swift facilities and only Swift approved fuel places because that was the only way to get her fuel surcharge payment.  See PSOF ¶¶ 159, 218.

<u>DEFENDANTS' REPLY:</u>

At deposition, Plaintiff admitted that she was not required to take her truck to a Swift facility for maintenance.  (Mussig Decl., ¶ 2, Ex. A, Van

Dusen Depo., pgs. 137:20-138:3.)  Plaintiff also testified that she was not required to fuel at Swift facilities but chose to do so because it made "good business sense."  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 175:21-176:8.).  Plaintiff admits that she signed multiple ICOAs with Swift which stated that she was "not required to purchase or rent any products, equipment or services from [Swift]" and that she had no obligation to purchase fuel from Swift.  (Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA, ¶¶ 4, 15; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶¶ 4, 15; Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21, 2010 ICOA.)  For all these reasons, Plaintiff's response is insufficient to create a genuine issue of disputed fact.

Additionally, Plaintiff's reliance on the terms of her lease with IEL is misplaced.  The lease has no bearing on whether Plaintiff was in an independent contractor relationship with Swift while she was an Owner-Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  Even if the lease were relevant, Murray Spence repeatedly testified that Paragraph 6(c) in the Lease was not enforced.  (Supp. Mussig Decl., ¶ 4, Ex. M, Spence Depo., pgs. 66:17-67:15, 71:2-7.)  Spence also testified that IEL "would not terminate the lease based on a violation of 6(c)."  (Id. at Spence Depo., pg. 70:14-17.)

Finally, Plaintiff improperly relies on testimony of the other Plaintiffs as evidence of her own personal experiences.  Such testimony cannot create a genuine issue of disputed fact as a matter of both law and common sense.

26.    As an Owner-Operator, Van Dusen could drive in a "team" if she preferred and indeed, she did so.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 107:5-108:2.]

PLAINTIFF'S RESPONSE:

1   DENIED.  Swift assigned Van Dusen to drive with her husband who was a

2   Swift driver when she first began working for Swift as an employee driver

3   and she was her "mentor" trainer.  VVD 18:20-19:12.  The ICOA drafted by

4   Swift does not confer authority on drivers to choose whether to drive as a

5   team.  Both employee drivers and lease operators could request permission

6   from Swift to drive as a team.  No driver could be part of a "driver team"

7   unless Swift approved both members of the team to drive for Swift and

8   approved both members to drive as a team.  PSOF ¶¶ 174-178.  *And see* JM:

9   22:23-23:7 (JM drove as a team on two occasions as an employee) and JM:

10  93:9-20 (JM never drove as a team as a lease operator.  Understood that she

11  could drive as a team if she had Swift's permission).

12  DEFENDANTS' REPLY:

13      At deposition, Plaintiff admitted that she drove as part of a team with

14  her husband.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 107:5-10.)

15  She also admitted that potential Owner-Operators could "choose" to be a

16  team driver.  (*Id.* at Van Dusen Depo., pgs. 107:19-108:2.)  Plaintiff cannot

17  create a disputed issue of fact by contradicting her own clear deposition

18  testimony.

19

20  27.     Van Dusen's choice to be a team driver was driven by her desire to

21  maximize her income.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 108:7-9.]

22  PLAINTIFF'S RESPONSE:

23  ADMITTED IN PART, DENIED IN PART.  Admitted that Plaintiff drove

24  as a team with her husband because she desired to increase their family

25  income.  Plaintiff does not admit that it did increase her income.

26

27

28

-39-

1    DEFENDANTS' REPLY:

2        Plaintiff admits that she chose to drive in a team with her husband

3    because she desired to increase their income.  Whether it actually increased

4    her income or not is irrelevant; many business risks do not ultimately pay

5    off.  Plaintiff's response is insufficient to create a genuine issue of disputed

6    fact.

7

8    28.    Van Dusen could also assign someone of her choosing to deliver freight or

9    perform other work in her place.  [Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009

10   ICOA, ¶ 7; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶ 7; Mussig

11   Decl.¶ 4, Ex. D, Van Dusen's January 21, 2010 ICOA, ¶ 7.]

12   PLAINTIFF'S RESPONSE:

13   DENIED.  Although ¶ 7 of the Contract purported to give that right the ¶ 6(a)

14   of the Lease required the Imam to be the driver of the truck unless the lessee

15   was "ill, disabled, or otherwise unable to drive the Equipment" in which case

16   she could submit a written request to substitute another driver.  Any such

17   request not approved by IEL in 10 days was deemed denied.  Even if

18   approved, any such substitute driver was required to meet the criteria set

19   forth in ¶ 6(a) of the lease and ¶ 7 of the Contract and be approved by IEL

20   and Swift.  *See* PSOF ¶¶ 174-178 (lease forbids use of other drivers or

21   helpers if ill, driver can request permission to use a substitute driver under

22   IEL's conditions); Lease ¶ 6; and PSOF ¶¶ 181-183.  Plaintiff was unaware

23   of any procedure to allow same one to drive her truck in her place.  VVD

24   106:11-15.

25   DEFENDANTS' REPLY:

26       The evidence clearly establishes that Plaintiff had the ability to hire

27   drivers to work for her while she was an Owner-Operator, as long as such

28   individuals met DOT regulations and other state and federal legal

-40-

requirements (in this regard, Plaintiff was subject to the same hiring limitations as Swift).  (Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA, ¶ 7; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶ 7; Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21, 2010, ICOA, ¶ 7.)  In practice, Swift exerted little to no oversight regarding the employees that Owner-Operators chose to hire, and rarely took any action regarding an Owner-Operator's decision to hire a particular employee.  (Berry Decl., ¶ 10.)  Swift does not set any "standards" that such employees have to meet.  (*Id.*)

Plaintiff attempts to distract the Court by arguing that her lease with IEL precluded her from assigning someone to drive in her place.  This argument fails.  Plaintiff's reliance on the lease is misplaced.  The lease has no bearing on whether Plaintiff was in an independent contractor relationship with Swift while she was an Owner-Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  Moreover, the lease did not preclude her from assigning someone to drive in her place.  Paragraph 6(a) of the lease specifically states that she may "substitute a competent, licensed driver who will be under his/her control and direction."


29.    Van Dusen could hire her own employees or laborers to work for her as an Owner-Operator. [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 102:22-103:3, 104:17- 23; Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA, ¶ 7; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶ 7; Mussig Decl., ¶ 4, Ex. D, Van Dusen's January 21, 2010 ICOA, ¶ 7.]

PLAINTIFF'S RESPONSE:

DENIED.  Denied with respect to hiring employee drivers for the reasons set forth in the response to Statement 27 above.  As for other kinds of employees and laborers, the statement is incomplete.  Paragraph 7 of the Contract requires that, prior to hiring any such employees or laborers, the lease

1    operator obtain worker compensation coverage, provide proof of such

2    coverage to Swift and meet a number of other requirements set forth in

3    Paragraph 7.  Swift reserves the right to ensure that a lease operator's

4    employees meet all applicable state and federal requirements and reserves

5    the right to bar employees from operating the Equipment.  There was no

6    reason for lease operators to hire non-driving employees or laborers as Swift

7    would pay for such workers under the provisions of Schedule D of the

8    contract.  See PSOF ¶ 184.

9    DEFENDANTS' REPLY:

10         The evidence clearly establishes that Plaintiff had the ability to hire

11   drivers to work for her while she was an Owner-Operator, as long as such

12   individuals met DOT regulations and other state and federal legal

13   requirements (in this regard, Plaintiff was subject to the same hiring

14   limitations as Swift).  (Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009

15   ICOA, ¶ 7; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶ 7;

16   Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21, 2010, ICOA, ¶ 7.)  In

17   practice, Swift exerted little to no oversight regarding the employees that

18   Owner-Operators chose to hire, and rarely took any action regarding an

19   Owner-Operator's decision to hire a particular employee.  (Berry Decl., ¶

20   10.)  Swift does not set any "standards" that such employees have to meet.

21   (*Id.*)

22         Plaintiff attempts to distract the Court by arguing that her lease with IEL

23   precluded her from assigning someone to drive in her place.  This argument fails.

24   Plaintiff's reliance on the lease is misplaced.  The lease has no bearing on whether

25   Plaintiff was in an independent contractor relationship with Swift while she was an

26   Owner-Operator, as IEL and Swift are distinct and separate entities.  (Berry Decl.,

27   ¶ 21.)  Moreover, the lease did not preclude her from assigning someone to drive in

28

-42-

1    her place.  Paragraph 6(a) of the lease specifically states that she may "substitute a

2    competent, licensed driver who will be under his/her control and direction."

3

4        30.    Van Dusen could have her dog ride with her in her truck as an Owner-

5    Operator and did not need permission for her dog to ride with her.  [Mussig Decl., ¶ 2,

6    Ex. A, Van Dusen Depo., pgs. 106:18-25; 117:8-15.]

7        PLAINTIFF'S RESPONSE:

8        DENIED as incomplete.  Plaintiff states at VVD 106:18-25 and again at

9        VVD 117:8-18 that she was required to inform Swift before taking her dog

10       with her.  Swift had a pet policy for both employee and lease drivers Swift

11       PRE-CABS Training (Pl. Ex. 11, p. 15) explains that Swift requires

12       authorization for pets and passengers, p. 15 (Bates DEF003002).

13       DEFENDANTS' REPLY:

14           At deposition, Plaintiff testified that she took her dog with her while

15       hauling freight for Swift (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo.,

16       pg. 106:18-22), and admitted that she did not need Swift's permission to do

17       so.  (Id. at Van Dusen Depo., pg. 117:5-15 ("Q: . . . You didn't need Swift's

18       permission to do that; right? A: No.")  Plaintiff cannot create a disputed issue

19       of fact by contradicting her own clear deposition testimony.

20           Further, Plaintiff also admitted that she did not receive any policy

21       documents from Swift as an Owner-Operator, including any purported Pre-

22       CABS Training manual.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo.,

23       pgs. 149:19-150:5.)   Plaintiff cannot argue that she was bound by documents

24       she never received.

25

26       31.    Van Dusen was free to, and indeed did, take her truck on her personal

27    errands.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 112:3-25.]

28       PLAINTIFF'S RESPONSE:

-43-

DENIED as incomplete.  The cited deposition passage in incomplete.  The full passage is VVD 111:13-112:25.  Plaintiff admits that she could use the truck to go to WalMart and that she would let Swift know when she did.  The deposition testimony cited only states that Van Dusen informed her driver manager that she was going to WalMart or errands, so that she would not be upset if she did not immediately answer Qualcomm messages.  The testimony does not say that she was "free to . . . take her truck on her personal errands."  Nor does it indicate if trips to WalMart were for work supplies.  Plaintiff denies that there is any evidence limiting the cited testimony to the period she was a lease operator.  The evidence shows that employee drivers could also run errands with their trucks without seeking prior permission.  Deposition of Vickii Schwalm, Doc. 772-5, Ex. 4: 154-155.  Both the lease and contract restricted use of lease operators' trucks to business purposes only.  See PSOF ¶ 168.

DEFENDANTS' REPLY:

At deposition, Plaintiff admitted she was free to take her truck on personal errands.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 112:3-11 ("Q: And did anyone from Swift ever criticize you in any way for taking the truck to Walmart or – or other errands? . . . A: No.").)  Furthermore, Plaintiff admitted that it was her choice to notify Swift when she took her truck to complete personal errands.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 112:12-25.)  Plaintiff cannot dispute her own sworn testimony.  The cited testimony is clearly limited to Plaintiff's time as an Owner-Operator because, all of the questions at that point in the deposition were limited to the time she was an Owner-Operator.  (*See* Supp. Mussig Decl., ¶ 2, Ex. K, Van Dusen Depo., pg. 111:5-8.)

Additionally, Swift's policies applicable to employee drivers have no bearing on whether Swift properly classified Owner-Operators, including

1    Plaintiff, as independent contractors.  Even if they were relevant, the

2    evidence establishes that employee drivers are not allowed to use their trucks

3    for personal use like Owner-Operators.  (Supp. Mussig Decl., ¶ 3, Ex. L,

4    Berry Depo., pg. 119:15-22 ("Q: …is an employee driver allowed to use that

5    truck for personal errands, to run to Walmart or to drive home from a

6    terminal if she lives near the terminal? A: The short answer is no.").)

7        Plaintiff improperly relies on testimony of the other Plaintiffs as

8    evidence of her own personal experiences.  Such testimony cannot create a

9    genuine issue of disputed fact as a matter of both law and common sense.

10

11   32.    Van Dusen was not required to wear a uniform, nor adhere to any rules

12   regarding her attire as an Owner-Operator.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo.,

13   pgs. 32:25-33:2, 187:16-21.]

14   PLAINTIFF'S RESPONSE:

15   DENIED.  Plaintiff testified that she was not required to wear a uniform or

16   particular clothing either as an employee or as a lease operator.  The Driver

17   Manual, Ex. 14 at 5060, and the Contracted Driver Manual, Ex. 12 at 1685

18   both require drivers to "[a]lways wear clean and appropriate clothing.  Jeans

19   and T-shirts are acceptable but button down shirts are preferred."  PSOF

20   ¶ 101 (d).

21   DEFENDANTS' REPLY:

22       Plaintiff admits that she was not required to wear a uniform, nor

23   adhere to any rules regarding her attire as an Owner-Operator.  Thus,

24   Plaintiff does not actually dispute this Undisputed Material Fact.

25       Plaintiff also admitted that she did not receive any policy documents

26   from Swift as an Owner-Operator.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen

27   Depo., pgs. 149:19-150:5.)   Plaintiff cannot argue that she was bound by

28   documents she never received.

-45-

33.     As an Owner-Operator, Swift did not provide Van Dusen with anything she needed to perform her work free of charge.  [Mussig Decl., ¶ 6, Ex. E, Van Dusen's Lease Agreement; Mussig Decl., ¶ 9, Ex. H, Van Dusen's Qualcomm Rental Agreement; Mussig Decl., ¶ 10, Ex. I, Van Dusen's Prepass Plus Agreement; Mussig Decl., ¶ 11, Ex. J, Van Dusen's New Business Partner Independent Contractor Checklist; Mussig Decl., ¶ 7, Ex. F, Berry Depo., pgs. 57:15-58:10.]

PLAINTIFF'S RESPONSE:

DENIED.  Swift provided trip records, trailers, binders, straps, chains and similar items free of charge.  Contract ¶¶ 2A, 13, 17B, Swift also offered to provide everything else necessary to perform the job on credit and paid lease operators a high enough mileage rate that that credit could be paid back each week if the lease operator drove the same number of miles as were expected of employee drivers.  PSOF ¶¶ 82-92, 113-117, 207-208, 216-227, 231, 236-237.  As to the truck lease, Swift only required a down payment of $500 and waived that frequently.  PSOF ¶ 83 (three of the five Plaintiffs did not even put up a down payment for their trucks).  Everything a lease operator needed: insurance, taxes, bond, lease payments, was financed on Swift's credit with no financial outlay by the Plaintiffs at all.  PSOF ¶¶ 82-91.  And, by virtue of the fuel cards, weekly advances and other credit offered by Swift, lease operators could continue to drive week after week without any financial outlay at all as long as Swift offered, and they drove, sufficient miles each week.  PSOF ¶¶ 207-237.

The quote from Mr. Berry is incomplete and should continue through 62:4.  Mr. Berry is talking about calculating costs to Swift and through 58:10, he says they don't know what lease operators pay for operating expenses, but then he continues that they know what they pay in mileage and that lease operator trucks cost Swift less than company trucks.

-46-

DEFENDANTS' REPLY:

Plaintiff admits her ICOAs with Swift state that she was solely responsible for providing the equipment and the labor necessary to perform all work under the ICOAs.  (Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA; Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21, 2010 ICOA.) Furthermore, Plaintiff admits that her experience was consistent with the terms of the ICOA.  She specifically admits she was responsible for the repairs, maintenance, and upkeep of her equipment.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 74:13-75:9.)  She also admits that she was responsible for her insurance coverage.  (*Id.* at Van Dusen Depo., pgs. 75:10-76:7.)  Plaintiff admits that she was not required to purchase or rent any products or equipment through Swift.  (*Id.* at Van Dusen Depo., pg. 123:1-10.)  Plaintiff admits that she was responsible for paying for the fuel she purchased.  (*Id.* at Van Dusen Depo., pgs. 76:19-77:4, 175:5-8.)  Plaintiff admits she paid for her own truck insurance, truck payment, maintenance fees, Qualcomm fees, PrePass fees, fuel fees, and other expenses.  (*Id.* at Van Dusen Depo., pg. 53:14-25.)

Swift may have deducted money from Plaintiff's account and made payments on behalf of Plaintiff, but this was simply a pass-through done as a convenience to Plaintiff.  Plaintiff admits she paid for these expenses herself out of her earnings as an Owner-Operator.  (*Id.* at Van Dusen Depo., pg. 53:14-25.)

Further, Swift does not have mileage expectations for Owner-Operators, including Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators are free to drive as many or as few miles as they considered optimal for their business.  (Berry Decl., ¶ 13.)  How Swift determined Plaintiff's mileage rate

-47-

1   has no bearing on whether Swift exerted "control" over Plaintiff.  If Plaintiff

2   was unhappy with the mileage rate, she could have driven for another carrier.

3          Finally, Plaintiff improperly relies on testimony of the other Plaintiffs

4   as evidence of her own personal experiences.  Such testimony cannot create a

5   genuine issue of disputed fact as a matter of both law and common sense.

6

7   34.     Van Dusen invested thousands of dollars into her truck.  [Mussig Decl., ¶ 2,

8   Ex. A, Van Dusen Depo., pg. 53:14-25; Mussig Decl., ¶ 6, Ex. E, Van Dusen's Lease

9   Agreement.]

10          PLAINTIFF'S RESPONSE:

11          DENIED.  Plaintiff's only investment was a $500 down payment.  Ex. 6 at

12          DEF 1386.  All other payments related to her truck were financed by Swift

13          and deducted weekly from Plaintiff s settlement.  Those payments did not

14          earn Plaintiff any equity in her truck.  PSOF ¶ 49.  Van Dusen paid $540 per

15          week for the truck lease.  VVD 53:14-25.  The weekly lease payment was

16          deducted from her pay and covered the cost of IEL's lease from the

17          equipment manufacturer and a 10% profit margin for Swift.  IEL 48:6-15,

18          79:17-22.  Van Dusen invested nothing as she obtained no equity in truck by

19          virtue of any of her lease payments.  PSOF ¶ 49.  Swift's deduction of the

20          lease expense conferred no ownership or transferrable right to a driver.  *See*

21          Lease generally and lease "rent."  *And see* PSOF ¶¶ 82-91 (financing of

22          entire leasing process.); "Swift Transportation Co., Inc. retains full

23          ownership of all equipment and the right to assign equipment for use by its

24          Drivers as it sees fit."  Swift Driver Manual, Pl. Ex. 14A, Sec. 2, p. 43.

25          DEFENDANTS' REPLY:

26          Plaintiff admits that she entered into a Lease Agreement with IEL.  (Mussig

27          Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 141:21-24; Mussig Decl., ¶ 6, Ex. E, Van

28          Dusen's Lease Agreement.)  Plaintiff admits that, pursuant to the lease, Plaintiff

-48-

paid $500 down and $540 per week for her truck.  Since Plaintiff was an Owner-Operator for approximately eleven months, Plaintiff clearly invested thousands of dollars into her truck.  ($500 + ($530 x 47 weeks) = $25,380.)  Plaintiff also made additional payments to maintain her truck beyond this amount.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 53:14-25.)  As such, Plaintiff admits she invested thousands of dollars into her truck, and her response is insufficient to create a genuine issue of disputed fact.

Furthermore, the fact that Swift deducted lease payments from Plaintiff's settlements has no bearing on this Undisputed Material Fact.  Plaintiff made her lease payments with her own earnings as an Owner-Operator.  Also, Plaintiff's claim that she did not have any equity interest in the truck she leased from IEL is disingenuous.  Similar to a car lease, Plaintiff had the option to purchase the truck for an agreed-upon residual value upon the expiration of the lease.  (Supp. Mussig Decl., ¶ 4, Ex. M, Spence Depo., pgs. 80:19-82:4.)  The lease contained a provision that governed Plaintiff's possible purchase of the truck from IEL following the expiration of the lease term.  (Mussig Decl., ¶ 6, Ex. E, Van Dusen's Lease Agreement, ¶ 18.)

35.    Van Dusen was responsible for the repair, maintenance, and upkeep of her truck as an Owner-Operator, as well as fuel.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 76:19-77:4; 175:5-8; 74:13-75:23; Mussig Decl., ¶ 11, Ex. J, Van Dusen's New Business Partner Independent Contractor Checklist; Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA, ¶¶ 10, 15; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶¶ 10, 15; Mussig Decl., ¶ 4, Ex. D, Van Dusen's January 21, 2010 ICOA, ¶¶ 10, 15.]

PLAINTIFF'S RESPONSE:

DENIED.  Swift, not Van Dusen, determined the maintenance schedule and standards for her truck.  Swift required drivers to perform mandatory

maintenance.  PSOF ¶¶ 187-188.  And if Swift was unhappy with any

repairs, it would perform the work itself and charge the driver.  PSOF

¶¶ 189-190.  Plaintiff was not solely responsible for where maintenance and

repairs were performed as the Lease required all maintenance and repairs to

be performed by Swift or I EL approved vendors Lease ¶ 6(c).  Plaintiff

admits that Defendants deducted the cost of repairs either from Plaintiffs'

settlement or maintenance account for the cost of repairs, maintenance and

upkeep of her truck while her lease/contract was in effect and that Swift set

her mileage rate at a level that would pay for normal expenses of that type if

she drove as many miles as were expected of employee drivers.  PSOF

¶¶ 113-117.  Plaintiff denies she owned any of her equipment or that she was

an owner-operator.

DEFENDANTS' REPLY:

Plaintiff admits that her ICOAs with Swift state that she was solely

responsible for paying her own operating, repair, and maintenance expenses.

Moreover, Plaintiff admits that her experience was consistent with this

contract language.  She specifically admits she was responsible for the

repairs, maintenance, and upkeep of her equipment.  (Mussig Decl., ¶ 2,

Ex. A, Van Dusen Depo., pgs. 74:13-75:9.)  She also admits that she was

responsible for her insurance coverage.  (*Id.* at Van Dusen Depo., pgs. 75:10-

76:7.)  Plaintiff admits that she was not required to purchase or rent any

products or equipment through Swift.  (*Id.* at Van Dusen Depo., 123:1-10.)

Plaintiff admits that she was responsible for paying for the fuel she

purchased.  (*Id.* at Van Dusen Depo., pgs. 76:19-77:4, 175:5-8.)  Plaintiff

admits she paid for her own truck insurance, truck payment, maintenance

fees, Qualcomm fees, PrePass fees, fuel fees, and other expenses.  (*Id.* at Van

Dusen Depo., pg. 53:14-25.)

1    Swift may have deducted money from Plaintiff's account and made

2    payments on behalf of Plaintiff, but this was simply a pass-through done as a

3    convenience to Plaintiff.  Plaintiff admits she paid for these expenses herself

4    out of her earnings as an Owner-Operator.  (*Id.* at Van Dusen Depo.,

5    pg. 53:14-25.)

6    The evidence establishes that Swift does not have mileage

7    expectations for Owner-Operators, including Plaintiff.  (Berry Decl., ¶ 13.)

8    Owner-Operators are free to drive as many or as few miles as they

9    considered optimal for their business.  (Berry Decl., ¶ 13.)  How Swift

10   determined Plaintiff's mileage rate has no bearing on whether Swift exerted

11   "control" over Plaintiff.  If Plaintiff was unhappy with the mileage rate, she

12   could have driven for another carrier.

13   Plaintiff's reliance on the terms of her lease with IEL is misplaced.

14   The lease has no bearing on whether Plaintiff was in an independent

15   contractor relationship with Swift while she was an Owner Operator, as IEL

16   and Swift are distinct and separate entities.  (Berry Decl., ¶ 21.)  Plaintiff

17   cannot dispute that she was able to lease her truck from companies other than

18   IEL.  (*See* Van Dusen's March 3, 2009 ICOA, ¶ 4; Mussig Decl., ¶ 4, Ex. C,

19   Van Dusen's June 8, 2009 ICOA, ¶ 4; Mussig Decl., ¶ 5, Ex. D, Van Dusen's

20   January 21, 2010, ICOA, ¶ 4.)

21   Plaintiff's claim that she did not have any equity interest in the truck

22   she leased from IEL is disingenuous.  Similar to a car lease, Plaintiff had the

23   option to purchase the truck for an agreed-upon residual value upon the

24   expiration of the lease.  (Supp. Mussig Decl., ¶ 4, Ex. M, Spence Depo.,

25   pgs. 80:19-82:4.)  The lease contained a provision that governed Plaintiff's

26   possible purchase of the truck from IEL following the expiration of the lease

27   term.  (Mussig Decl., ¶ 6, Ex. E, Van Dusen's Lease Agreement, ¶ 18.)

28

-51-

1        Finally, Plaintiff improperly relies on testimony of the other Plaintiffs

2    as evidence of her own personal experiences.  Such testimony cannot create a

3    genuine issue of disputed fact as a matter of both law and common sense.

4

5       36.    Van Dusen paid for her own damage insurance, health insurance, and

6  workers' compensation insurance as an Owner-Operator.  [Mussig Decl., ¶ 2, Ex. A, Van

7  Dusen Depo., pgs. 53:14-25; 75:25-76:7; Mussig Decl., ¶ 11, Ex. J, Van Dusen's New

8  Business Partner Independent Contractor Checklist.]

9    <u>PLAINTIFF'S RESPONSE:</u>

10    DENIED.  Swift insisted that all drivers have insurance acceptable to it.  Pl.

11    Ex. 11, p. 13 (Bates DEF003000); PSOF ¶¶ 84, 87-89, 205-206.  Swift made

12    available to all Lease drivers insurance policies which met its minimum

13    criteria.  PSOF ¶¶ 84-85.  The insurance that Swift required lease operators

14    to purchase was provided through its wholly-owned captive insurance

15    subsidiary, Mohave Transportation Insurance Company, which it earns

16    premium revenue from.  Plaintiffs' Additional Statements of Fact ¶¶ 21-25.

17    All Plaintiffs signed for Swift's insurance.  Ex. 6, DEF001371 (Van Dusen);

18    Ex. 7, DEF001324 (Sheer); Ex. 8, DEF002018-19 (Motolinia); Ex. 9,

19    DEF002103-4 (Schwalm); Ex. 10a, DEF002361 (Wood).  Once lease drivers

20    signed their approval for Swift's insurance, Swift paid the insurance (JS

21    156:17-18; VVD 29:9-12), and deducted the cost of insurance directly from

22    the drivers weekly settlement pay.  VVD 53:23.  *See also* JM 138, 143-144

23    (Swift provided insurance).  Swift set Van Dusen's mileage rate at a level

24    that would allow her to pay for normal expenses of that type if she drove as

25    many miles as were expected of employee drivers.  PSOF ¶¶ 113-117.

26

27    Plaintiff also denies that she was responsible for worker compensation

28    insurance as she had no employees and the lease/contract read as a whole and

1   in light of the circumstances of the whole activity shows that she was an
2   employee and that Swift was responsible for her worker compensation
3   insurance.

4   DEFENDANTS' REPLY:

5       Plaintiff admits that she was responsible for her own insurance
6   coverage, including workers' compensation insurance if she had chosen to
7   hire employees for her business.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen
8   Depo., pgs. 75:10-76:7.)  Plaintiff also admits that she paid for her insurance
9   and other expenses.  (*Id.* at Van Dusen Depo., pg. 53:14-25.)  Plaintiff
10  cannot create a disputed issue of fact by contradicting her own deposition
11  testimony.

12      Plaintiff admits that Swift did not finance any of her expenses.  Swift
13  may have deducted money from Plaintiff's account and made payments on
14  behalf of Plaintiff, but this was simply a pass-through done as a convenience
15  to Plaintiff.  Plaintiff admits she paid for these expenses herself out of her
16  earnings as an Owner-Operator.  (*Id.* at Van Dusen Depo., pg. 53:14-25.)

17      The fact that Owner-Operators are required to maintain minimal
18  levels of insurance in compliance with federal law and had the ***option*** to
19  purchase insurance from Mohave Transportation Insurance Company, an
20  entity that is distinct and separate from Swift, has no bearing on whether
21  Swift everted control over Plaintiff.

22      Swift does not have mileage expectations for Owner-Operators,
23  including Plaintiff.  (Berry Decl., ¶ 13.)  Owner-Operators are free to drive
24  as many or as few miles as they considered optimal for their business.
25  (Berry Decl., ¶ 13.)  How Swift determined Plaintiff's mileage rate has no
26  bearing on whether Swift exerted "control" over Plaintiff.  If Plaintiff was
27  unhappy with the mileage rate, she could have driven for another carrier.

28

1       Finally, Plaintiff improperly relies on testimony of the other Plaintiffs

2    as evidence of her own personal experiences.  Such testimony cannot create a

3    genuine issue of disputed fact as a matter of both law and common sense.

4

5    37.    Van Dusen paid for her own Bluetooth when she worked as an Owner-

6  Operator.  [Mussig Decl., ¶ 2 , Ex. A, Van Dusen Depo., pgs. 207:25-208:1.]

7    PLAINTIFF'S RESPONSE:

8    ADMITTED IN PART, DENIED IN PART.  Plaintiff admits she paid for a

9    Bluetooth CB.  She denies that she owned her equipment or that she was an

10    owner-operator.  Further, there is no evidence the purchase occurred when

11    she was a lease driver and not an employee driver.  Plaintiff s private

12    Bluetooth was not a requirement of the job, not a requirement for operating a

13    business, and does not evidence that she was a contractor.  Lease and

14    employee drivers could purchase a Bluetooth unit for personal reasons.

15    DEFENDANTS' REPLY:

16    At deposition, Plaintiff admitted that she paid for the Bluetooth.

17    (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 207:25-208:1.)  She

18    testified she did so to assist her while she hauled loads.  (*See* Supp. Mussig

19    Decl., ¶ 2, Ex. K, Van Dusen Depo., 199:8-19.)  Plaintiff cannot dispute her

20    own deposition testimony.

21

22    38.    Van Dusen rented her own Qualcomm system and transponder when she

23  worked as an Owner-Operator.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 53:21-

24  25; Mussig Decl., ¶ 10, Ex. H, Van Dusen's Qualcomm Agreement; Mussig Decl., ¶ 11,

25  Ex. I, Van Dusen's Prepass Plus Agreement.]

26    PLAINTIFF'S RESPONSE:

27    DENIED.  See Plaintiff Van Dusen's responses to ¶¶ 6, 9 and 32 above.

28    Swift required all drivers to have a Qualcomm unit onboard their truck.

1    PSOF ¶ 125.  Swift provided Van Dusen with the Qualcomm unit for a rental

2    charge of $20 per week.  Def. Ex. H.  The Van Dusen testimony above does

3    not state what Swift claims it states, and states only that Swift deducted a

4    charge for the unit from Van Dusen's pay.

5    DEFENDANTS' REPLY:

6         Defendants incorporate their replies in support of Undisputed Material

7    Fact Nos. 6, 9, and 32.

8         At deposition, Plaintiff admitted that she rented a Qualcomm system

9    and PrePass Plus transponder.  (Supp. Mussig Decl., ¶ 2, Ex. K, Van Dusen

10   Depo., pgs. 53:21- 25, 54:18-55:5.)  Plaintiff cannot create an issue of

11   disputed fact by contradicting her own sworn deposition testimony.

12        The fact it was necessary for Plaintiff to have a Qualcomm unit, a

13   common means of communication in the trucking industry that could be used

14   with other trucking companies, has no bearing on any relevant issue.

15

16   39.    When Van Dusen was an Owner-Operator, she was aware she could take

17   business risks in order to earn more money, such as leasing or owning multiple trucks, and

18   hiring employees to drive and perform other work for her.  [Mussig Decl., ¶ 2, Ex. A, Van

19   Dusen Depo., pgs. 102:22-103:3, 104:17-23; 163:23-164:4.]

20   PLAINTIFF'S RESPONSE:

21   DENIED.  Plaintiff stated at VVD 102:22-23 that she didn't consider her

22   husband an employee and at VVD 104:17-23 that she was unaware of the

23   right to hire employees until six months after she signed her lease.  At VVD

24   163:23-164:4 when asked if she had a second truck she could increase the

25   amount of money she made, she stated "I couldn't make money with one

26   truck.  How was I going to make money with two?"  Plaintiff never testified

27   that she was aware that she could take business risks as a way to earn more

28   money.  Because Swift financed her lease and her operating expenses, see

-55-

1    response to Statements 32-35, Plaintiff did not take "business" risks nor did

2    she have an opportunity to make a profit from such risks.  The cited

3    testimony says nothing of what Defendants claim it says.

4    DEFENDANTS' REPLY:

5         Plaintiff admits that she was aware that she could hire employees.

6    (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 104:17-23.)  Plaintiff also

7    admits that an Owner-Operator could potentially increase the amount of

8    money made by operating a second truck.  (*Id.* at Van Dusen Depo.,

9    pgs. 163:23-164:4.)  The fact that Plaintiff chose not to hire employees or

10   obtain multiple trucks does not create a disputed issue of fact.

11        Furthermore, Plaintiff's claim that Swift "financed her lease and

12   operating expenses" fails.  At deposition, Plaintiff admitted that Swift did not

13   finance her fuel, tolls, or other expenses.  Swift may have deducted money

14   from Plaintiff's account and made payments on behalf of Plaintiff, but this

15   was simply a pass-through done as a convenience to Plaintiff.  Plaintiff

16   admits she paid for these expenses herself out of her earnings as an Owner-

17   Operator.  (*Id.* at Van Dusen Depo., pg. 53:14-25.)

18

19   40.    Van Dusen knew of other Owner-Operators with Swift who operated entire

20   fleets of trucks.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 103:23-104:6.]

21   PLAINTIFF'S RESPONSE:

22   DENIED.  The cited testimony is inadmissible hearsay that Plaintiff had

23   "heard" some drivers had more than one truck.  The testimony does not

24   establish that there were lease operators who operated entire fleets of trucks.

25   The quoted testimony is also incomplete.  Plaintiff's testimony continued

26   from VVD 104:6 through 104:13 that she only heard of two operators who

27   had fleets of trucks and that "they always got the premium loads."  At VVD

28   164:5-24 she testified that they "were favorites of the Phoenix terminal."

-56-

1    DEFENDANTS' REPLY:

2        At deposition, Plaintiff testified she knew of two Owner-Operators

3    who operated fleets of trucks.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo.,

4    pgs. 103:24-104:6.)  Plaintiff cannot dispute her own deposition testimony.

5        Further, the cited testimony is not hearsay because it is not offered to

6    establish that there were, in fact, other Owner-Operators who operated entire

7    fleets of trucks.  Rather, it demonstrates that Plaintiff knew this was a

8    business opportunity she could have taken advantage of.

9

10    41.    Van Dusen understood that managing multiple trucks could enable her to

11    make more money.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 163:23-164:11.]

12    PLAINTIFF'S RESPONSE:

13    DENIED.  In the cited testimony Plaintiff stated "I couldn't make money

14    with one truck.  How was I going to make money with two?"

15    DEFENDANTS' REPLY:

16        At deposition, Plaintiff testified that an Owner-Operator could

17    "[p]otentially" increase his or her financial gain by operating a second truck.

18    (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 163:23-164:4.)  Plaintiff

19    cannot dispute her own deposition testimony.  The fact that Plaintiff viewed

20    expansion as too risky is irrelevant.  Plaintiff's response is insufficient to

21    create a genuine issue of disputed fact.

22

23    42.    Van Dusen also understood that she could make more money if she was a

24    "team" driver, and based on this she made the decision to form a driving "team" with her

25    husband.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 107:5-108:9.]

26    PLAINTIFF'S RESPONSE:

27    DENIED.  The testimony was not that she understood, but she supposed she

28    might make more money:

-57-

19    Q    So I see-- so if you choose to be a team

20        driver, you can make more money?

21    A    Supposedly.

VVD 107:19 to 107:21.

DEFENDANTS' REPLY:

Plaintiff admitted that "team drivers are premium because the loads get there…. The [business operates] 22 hours a day. [The truck] only shuts off for fueling and to change drivers." (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 107:11-18.) Plaintiff explained that team drivers get better mileage because "a solo driver can only do, like, 2,500 to 3,000 miles. Teams can do twice that, 8,000 – 8 to 10" per day. (Supp. Mussig Decl., ¶ 2, Ex. K, Van Dusen Depo., pgs. 110:15-111:4.) As such, Plaintiff understood that she could make more money if she was a team driver because team drivers are considered "premium" and the business can operate for more hours in a day.

Plaintiff clarified what she meant when she said that team drivers can "supposedly" make more money. She testified that "[t]here are some teams that don't want to run, so, therefore, they don't make the money." (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 107:25-108:2.) Thus, Plaintiff understood that team drivers would not necessarily make more money than non-team drivers if they did not use the opportunity to operate their business more hours in a day.

With this knowledge and understanding of team drivers, Plaintiff made the decision to form a driving "team" with her husband. (*Id.* at Van Dusen Depo., pg. 19:4-13.) Plaintiff's response is insufficient to create a genuine issue of disputed fact.

43.    Van Dusen understood there was no limit to the amount of money she could make as an Owner-Operator. [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 162:23-163:5.]

PLAINTIFF'S RESPONSE:

DENIED.  The cited deposition passage is incomplete and misstates Plaintiff's answer.  At VVD 162:23-164:4 Plaintiff at first stated there wasn't a limit but then explained that there was a $.09 penalty for driving over 11,000 miles a month and that if you "weren't making money, you couldn't afford to run over those 11,000 miles a month because you couldn't pay the $.09 a mile over the 11,000.  So they kind of had us limited on what we could do." She then stated that she was limited in the amount of money she could make with a single truck and as for additional trucks, "if I couldn't make money with one truck How was I going to make money with two trucks?"  The amount of money a lease operator could make was limited by the number of loads (miles) assigned by Swift and the limitations of DOT regulations on the hours that driver can legally driver.  Swift established the rate per mile it paid drivers for driving and delivering Swift's customers' freight.  PSOF ¶ 58.

DEFENDANTS' REPLY:

At deposition, Plaintiff specifically testified that there was no limit to the amount of money she could make as an Owner-Operator.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 162:23-163:2.)  In doing so, Plaintiff admitted that, although there may be a limit to how much she could make as an Owner-Operator with one truck because of the 11,000 miles cap, she could obtain a second truck and potentially make more money as an Owner-Operator.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 163:13-164:4.)  Plaintiff's response simply ignores this testimony, and is therefore insufficient to create a genuine issue of disputed fact.

Additionally, it is irrelevant that Plaintiff was not earning as much money as she had desired operating her own business.  Plaintiff was able to transport freight for Swift or other carriers.  (Mussig Decl., ¶ 3, Ex. B, Van

Dusen's March 3, 2009 ICOA, ¶¶ 10-11, 13; Mussig Decl., ¶ 4, Ex. C, Van

Dusen's June 8, 2009 ICOA, ¶¶ 10-11, 13; Mussig Decl., ¶ 5, Ex. D, Van

Dusen's January 21, 2010 ICOA, ¶¶ 10-11, 13; Supp. Mussig Decl., ¶ 3,

Ex. L, Berry Depo., pgs. 218:5-219:9; Supp. Mussig Decl., ¶ 4, Ex. M,

Spence Depo., pgs. 59:5-60:17.)  Plaintiff even admits that she could deliver

a load under her *own* authority (not Swift's).  (Mussig Decl., ¶ 2, Ex. A, Van

Dusen Depo., pgs. 45:20-46:1.)  Plaintiff had the potential to earn more

money but chose not to pursue these types of business opportunities.

44.    As an Owner-Operator, Van Dusen made decisions regarding which loads to accept or decline based on her desire to "make money."  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 193:9-14.]

PLAINTIFF'S RESPONSE:

DENIED.  What Plaintiff said is "If you turn down loads you don't make

money."  In other words, the only way to make money was to accept the

loads offered.  She said nothing about making decisions about which loads to

accept or decline, let alone making such decisions as a way to make money.

*See also* VVD 192:9-193:14.  If they did turn down a load, they were either

pressured to take the load through persistent Qualcomm messages or made to

wait for 23.5 hours before another (equally poor) load was offered.  *See also*

JM 19:15-20:3 (no change from employee to lease); 21:10-13 ("If I did not

accept the load, I would not get any miles"); 40:16-21 ("if you didn't accept

it, you didn't work"); 53:5-58:20 (turning down a load and being threatened

and eventually having to take the load); 60:17-61:2 ("I already told you.  If

you did not accept a load, you didn't work."); 61:19-64:19 (Swift refused to

give JM load until she accepted a rejected load); 68:10-18 (had to follow

Swift's line); 69:6-12 (if didn't accept loads, didn't get work); 131:16-132:1

1   (became an lease operator because she thought she could refuse loads, but

2   not true); 135:5-10 (if refused a load, Swift would refuse him work for

3   between 1 and 5 days.

4

5   Both employee and lease drivers were able to turn down loads, though Swift

6   encouraged and directed all drivers to take all assigned loads, including

7   punishing drivers who refused loads.  PSOF ¶¶ 133-142.  Few drivers turned

8   down loads as lease operators.  PSOF ¶ 142.

9   <u>DEFENDANTS' REPLY:</u>

10          Plaintiff admits that her decision to accept or decline loads was

11   motivated by her desire to make money.  When asked why she generally did

12   not turn down loads, Plaintiff testified, "we were in the trucking business to

13   make money."  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 193:9-14.)

14   Plaintiff testified that she only declined loads twice as an Owner-Operator –

15   once when she was sick and another time when the distance was short and

16   the pay was not up to her standards.  (Supp. Mussig Decl., ¶ 2, Ex. K, Van

17   Dusen Depo., pgs. 97:25-98:5.)  Plaintiff cannot avoid her own deposition

18   testimony.

19          Also, Plaintiff's claim that she was pressured to take loads or required to

20   wait for other loads as an Owner-Operator is unfounded because the testimony

21   Plaintiff cites to support this allegation refers to Plaintiff's work as an employee

22   driver, not as an Owner-Operator.  (Supp. Mussig Decl., ¶ 2, Ex. K, Van Dusen

23   Depo., pg. 192:9-22.)  Even if Plaintiff was "pressured" to accept loads as an

24   Owner-Operator, it would not establish any sort of "control" exerted by Swift over

25   Plaintiff.  It is not unusual for business partners to pressure one another to perform

26   tasks, particularly if performing those tasks would benefit the overall enterprise.

27          Furthermore, Plaintiff's claim that delays in being offered loads constituted

28   "discipline" is entirely speculative and erroneous.  Plaintiff's ICOA makes it

explicitly clear that the ICOA "shall not . . . be construed as an agreement by [Swift] to furnish any specific tonnage of freight for transportation by [Plaintiff] at any particular time, or at any particular place."  (Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA, ¶ 1; Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶ 11; Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21, 2010 ICOA.) There are various reasons why an individual might not be offered a new load right when he or she asks for one, including the fact that one simply is not available in his or her area.  (*See* Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 35:25-39:10.) Mere speculation and conjecture are insufficient to create a genuine issue of disputed fact.

Finally, Plaintiff improperly relies on the testimony of the other Plaintiffs as evidence of her own personal experiences.


45.     When Van Dusen became an Owner-Operator, she understood that her relationship with Swift was changing, and that in becoming an Owner-Operator, she was beginning a business relationship with Swift.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 68:25-69:10.]

PLAINTIFF'S RESPONSE:

ADMITTED IN PART, DENIED IN PART.  Plaintiff admits that she understood that her relationship was supposed to change.  After she became a lease operator she realized that her relationship with Swift had not changed.  VVD 98:21-99:4; 198:4-11.  What Plaintiff Van Dusen thought she understood before starting as a lease operator cannot override the economic realities of the parties' actual relationship, and the cited testimony does not say anything about the reality of the agreement after she signed it. Plaintiff denies the remainder of the statement.  The question cited was objected to as to form (compound and vague as to the meaning of "business relationship").

1    DEFENDANTS' REPLY:

2         Plaintiff's response contradicts her own deposition testimony.

3    Plaintiff specifically admitted at deposition that when she became an Owner-

4    Operator, she "understood that [her] relationship with Swift was changing,"

5    and that she "underst[ood] that [her] employment relationship was ending

6    and [she was] beginning a business relationship with Swift.  (Mussig Decl.,

7    ¶ 2, Ex. A, Van Dusen Depo., pgs. 68:25-69:10.)  Plaintiff cannot dispute her

8    own deposition testimony.

9         Furthermore, the question on Page 69 of Plaintiff's deposition

10   transcript is not compound because Plaintiff was asked whether she

11   understood a single concept, namely, whether she a formed a new business

12   relationship with Swift when she became an Owner-Operator.  (*Id.* at Van

13   Dusen Depo., pgs. 68:25-69:10.)

14

15   46.    When she first became an Owner-Operator, Van Dusen knew that she was an

16   independent contractor and not an employee of Swift.  [Mussig Decl., ¶ 2, Ex. A, Van

17   Dusen Depo., pgs. 71:1-24; 119:6-17; Mussig Decl. ¶ 11, Ex. J, Van Dusen's New

18   Business Partner Independent Contractor Checklist.]

19   PLAINTIFF'S RESPONSE:

20   DENIED.  The statement mischaracterizes Plaintiffs testimony and is

21   incomplete.  In the cited testimony Plaintiff acknowledged that she initialed

22   the statement that she was an independent contractor and stated that "I

23   understood and agreed with that statement because that's how it was

24   supposed to be."  She subsequently testified that "they didn't treat us any

25   different [as lease operators] than when we were employees.  We still were

26   told how to do—do things.  We were still told how to pick up the loads.  We

27   were still told what routes to take.  We weren't—couldn't turn down loads.

28   Just like you couldn't when you were a company driver."  VVD 98:21-99:4.

-63-

1  She elaborated further in response to the question "Did anything change in

2  your relationship with Swift between the time you –before you signed the

3  contractor agreement and lease agreement and after?  A: Nothing changed.  It

4  just– we—we did the same thing we did as company drivers.  We got the

5  same Qualcomm messages.  We got the same types of loads.  We were under

6  the same type of requirements.  The only thing that changes was we paid for

7  their truck."  VVD: 198:4-11.  *See also* PSOF ¶¶ 246-249.

8  DEFENDANTS' REPLY:

9       Plaintiff admits that, when she was an Owner-Operator, "[she] knew

10  [she and other Owner-Operators] weren't employees."  (Mussig Decl., ¶ 2,

11  Ex. A, Van Dusen Depo., pg. 119:6-17.)  Plaintiff admits that she signed the

12  Business Partner Independent Contractor Checklist acknowledging that she

13  understood that she was an independent contractor and not an employee of

14  Swift.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 71:1-4; Mussig

15  Decl., ¶ 11, Ex. J, Van Dusen's Business Partner Independent Contractor

16  Checklist.)  Plaintiff cannot dispute her own deposition testimony.

17       Additionally, Plaintiff testified at length about several major changes

18  she experienced when she became an Owner-Operator.  For example,

19  Plaintiff had the ability to hire drivers and driver helpers to work for her

20  while she was an Owner-Operator, as long as such individuals met DOT

21  regulations and other state and federal legal requirements (in this regard,

22  Plaintiff was subject to the same hiring limitations as Swift).  (Mussig Decl.,

23  ¶ 2, Ex. A, Van Dusen Depo., 104:17-23; Mussig Decl., ¶ 3, Ex. B, Van

24  Dusen's March 3, 2009 ICOA, ¶ 7; Mussig Decl., ¶ 4, Ex. C, Van Dusen's

25  June 8, 2009 ICOA, ¶ 7; Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21,

26  2010 ICOA, ¶ 7.)

27

28

DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL
STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO VAN DUSEN

1    Finally, Plaintiff's experiences when she was an employee of Swift

2    have no bearing whatsoever on whether she was properly classified as an

3    independent contractor when she became an Owner-Operator.

4

5    47.    As an Owner-Operator, Van Dusen was paid per the completion of each trip–

6    not by the hour.  [Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA; Mussig

7    Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA; Mussig Decl., ¶ 4, Ex. D, Van Dusen's

8    January 21, 2010 ICOA.]

9    PLAINTIFF'S RESPONSE:

10   DENIED.  Plaintiff admits she was not paid by the hour but denies the

11   remainder of the statement.  While operating under her contract/lease

12   Plaintiff was paid a fixed rate per HHG (Rand-McNally "household good")

13   mile.  March 3, 2009 Contract at Schedule D (p. 32 of 63).  The Lease ¶ 2(e)

14   indicates that the driver is to be paid weekly.  While ¶ 3 of the contract

15   required Plaintiff to turn in certain documentation to get credit for the miles

16   driven during a trip, she was not paid per trip.  She was paid by the number

17   of miles she drove for which the required documentation was submitted

18   during the week.

19   DEFENDANTS' REPLY:

20   Plaintiff admits she was not paid by the hour.  She also does not deny

21   that she was paid on a mileage basis, *upon the completion of the trip*.  As

22   such, Plaintiff's response is insufficient to create a genuine issue of disputed

23   fact.

24

25   48.    As an Owner-Operator, Van Dusen was paid via weekly settlements, while

26   employees are paid through payroll checks.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo.,

27   pg. 53:7-25; Mussig Decl., ¶ 7, Ex. F, Berry Depo., pg. 268:8-13.]

28   PLAINTIFF'S RESPONSE:

ADMITTED IN PART, DENIED IN PART.  Plaintiff admits that she was paid via weekly settlements while working under her lease/contract but denies that employees were not paid via weekly settlements.  PSOF ¶¶ 7, 8. Both Lease operators and employees could receive money due them pursuant to their settlements by check or direct deposit.  Ex. 14 at DEF 4960; Ex. 12 at 1735-36.  Plaintiff s testimony was that she received a "settlement" with deductions, which was direct-deposited.  The citation supplies no evidence of any difference between a payroll check and a settlement.  Swift's testimony (through Berry) states that both employee drivers and lease operators get weekly settlements, though those settlements are calculated differently in that employee drivers don't have operating expenses deducted from their settlements the way that lease operators do unless they forget to turn in receipts, and employee drivers have deductions for health insurance, locks, and company store purchases.  *See* Swift 30(b)(6) "Berry Depo." at 179:13-181:10.

DEFENDANTS' REPLY:

Plaintiff admits that as an Owner-Operator she was paid via weekly settlements.  Additionally, Plaintiff admits that the weekly settlements she received as an Owner-Operator did not contain tax deductions like the payroll checks she received as an employee driver.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 188:5-19.)  Plaintiff also admits that she was issued a Form 1099 rather than a W-2 as an Owner-Operator.  (*Id.* at Van Dusen Depo., pg. 188:20-24.)  As for employee drivers, David Berry unequivocally testified that they are paid through a "payroll check."  (Mussig Decl., ¶ 7, Ex. F, Berry Depo., pg. 268:14-17.)  This testimony is uncontroverted.  Plaintiff's response is insufficient to create a genuine issue of disputed fact.

1       Furthermore, there is no evidence that Plaintiff ever received a Driver

2    Manual or Contracted Driver Manual.  Plaintiff cannot argue that she was

3    bound by documents she never received.

4

5       49. Swift did not deduct taxes from Van Dusen's settlement payments when she

6    was an Owner-Operator and she was responsible for her own taxes.  [Mussig Decl., ¶ 2,

7    Ex. A, Van Dusen Depo., pg. 188:5-24.]

8    PLAINTIFF'S RESPONSE:

9    ADMITTED IN PART, DENIED IN PART.  Plaintiff admits that, as a result

10   of Swift's decision to characterize her as an independent contractor, Swift

11   did not deduct taxes from Plaintiff s settlement payments making her

12   responsible for her own taxes.  Plaintiff denies that that practice is evidence

13   that an independent contractor relationship actually existed, or that Swift's

14   unilateral decision not to deduct taxes was lawful.

15   DEFENDANTS' REPLY:

16      Plaintiff admits Swift did not deduct taxes from her settlement

17   payments when she was an Owner-Operator and she was responsible for her

18   own taxes.  Therefore, while argumentative, Plaintiff's purported response

19   does not actually dispute this Undisputed Material Fact.

20      As explained in Defendants' moving papers, Plaintiff was properly

21   classified as an independent contractor.

22

23      50. As an Owner-Operator, Van Dusen received an Internal Revenue Service

24   Form 1099, not a W-2.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 78:14-79:7;

25   Mussig Decl., ¶ 11, Ex. J, Van Dusen's New Business Partner Independent Contractor

26   Checklist; Mussig Decl., ¶ 7, Ex. F, Berry Depo., pg. 268:5-17.]

27   PLAINTIFF'S RESPONSE:

28

ADMITTED IN PART, DENIED IN PART.  Plaintiff admits that, as a result of Swift's decision to characterize her as an independent contractor, Swift (not the IRS) sent her a FORM 1099.  Plaintiff denies that that practice is evidence that an independent contractor relationship actually existed, or that Swift's unilateral decision to issue a 1099 was lawful.

DEFENDANTS' REPLY:

Plaintiff admits that she received an Internal Revenue Service Form 1099, not a W-2.  Therefore, while argumentative, Plaintiff's purported response does not actually dispute this Undisputed Material Fact.

As explained in Defendants' moving papers, Plaintiff was properly classified as an independent contractor.

51.     Van Dusen did not receive any employee benefits from Swift while she was an Owner-Operator.  [Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 72:1-11; 121:10-22; Mussig Decl., ¶ 11, Ex. J, Van Dusen's New Business Partner Independent Contractor Checklist.]

PLAINTIFF'S RESPONSE:

ADMITTED IN PART, DENIED IN PART.  Plaintiff admits that, as a result of Swift's decision to characterize her as an independent contractor, she did not receive employee benefits Plaintiff denies that that practice is evidence that an independent contractor relationship actually existed, or that Swift's unilateral decision not to provide employee benefits was lawful.

DEFENDANTS' REPLY:

Plaintiff admits that she did not receive any employee benefits from Swift while she was an Owner-Operator.  Therefore, while argumentative, Plaintiff's purported response does not actually dispute this Undisputed Material Fact.

As explained in Defendants' moving papers, Plaintiff was properly classified as an independent contractor.

## PLAINTIFF'S ADDITIONAL STATEMENT OF FACTS

1.     Both company drivers and lease operators have no need to communicate with Swift managers until the driver near the point of delivery.  For example, if a load took 3-4 days to deliver, drivers would have no need to communicate with Swift until near the point of delivery, unless they were running late.  Sheer Dec. ¶2; Wood Dec. ¶2; Van Dusen Dec. ¶2.

DEFENDANTS' RESPONSE:

Partially Disputed.  While this is true for Owner-Operators, it is false for employee drivers.  Employee drivers are required to communicate with their managers at times other than when they are near the point of delivery. For example, Plaintiff Sheer testified that, as an employee driver, he was required to check in with Swift every morning via Qualcomm.  (Mussig Decl., ¶ 5, Ex. N, Sheer Depo., pgs. 43:22-45:20.)  Sheer also testified that he generally checked in with his manager one or two times a day even if he was hauling a load that took multiple days to deliver.  (Mussig Decl., ¶ 5, Ex. N, Sheer Depo., pgs. 46:14-47:13.)

Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).  Swift's policies applicable to employee drivers have no bearing on whether Swift properly classified Owner-Operators, including Plaintiff, as independent contractors.

2.     Company Drivers were permitted by Swift to state a preference about what division (e.g. Over the Road, Dedicated, Flatbed, Dry Van, Intermodal, etc.) they would work in, and which terminal they preferred to work from.  Swift afforded the same

1  opportunity to Lease Operators.  Sheer Dec. ¶3; Wood Dec. ¶3; Van Dusen Dec. ¶3.  Swift

2  did not always honor the driver's preference.  Wood Dec. ¶3.

3      DEFENDANTS' RESPONSE:

4          Disputed.  The evidence shows that Owner-Operators, including

5  Plaintiff, are able to choose what terminal they are based out of, as well as

6  what division they wanted to drive for (line-haul, dedicated, or intermodal),

7  whereas employee drivers are assigned a home terminal and division.  (Supp.

8  Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 15:14-16:6; 19:11-20:14; *see*

9  *also* Stancu Decl., ¶ 2, Ex. O, Schwalm Depo., pgs. 77:17-79:14.)

10          Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).  Swift's

11  policies applicable to employee drivers have no bearing on whether Swift

12  properly classified Owner-Operators, including Plaintiff, as independent

13  contractors.

14

15      3.    Both Company Drivers and Lease Operators were allowed by Swift to use

16  their truck to make personal trips to go food shopping or attend to other necessities while

17  on the road.  Sheer Dec. ¶4; Van Dusen Dec. ¶4; Wood Dec. ¶4.

18      DEFENDANTS' RESPONSE:

19          Partially Disputed.  While the fact is true for Owner-Operators, it is false for

20  employee drivers.  Swift policy does not permit employee drivers to use their truck

21  to make personal trips to go food shopping or attend to other necessities while on

22  the road.  (Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 119:15-120:6.)

23          Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).  Swift's policies

24  applicable to employee drivers have no bearing on whether Swift properly classified

25  Owner-Operators, including Plaintiff, as independent contractors.

26

27      4.    The hours Company Drivers and Lease Operators work—were determined

28  primarily by the requirements and deadlines established by Swift in its load assignments

1   (such as pick up and drop off times), shipment mileage, and factors determined by shippers

2   and receivers (wait times, whether the trailer was pre-loaded, load times).  Hours of

3   driving were also affected by the drive hours available to them through the FMCSA Hours-

4   of-Service Rules.  Sheer Dec. ¶5; Van Dusen Dec. ¶5; Wood Dec. ¶5.

5   DEFENDANTS' RESPONSE:

6        Partially Disputed.  Defendants admit that the hours that employee drivers

7        and Owner-Operators drive are affected by federal regulations.  Defendants also

8        admit that the hours that employee drivers drive are primarily affected by Swift.

9        However, Defendants dispute that the hours that Owner-Operators drive are

10        primarily affected by Swift.  Owner-Operators are free to accept and decline freight

11        loads offered to them by Swift.  (Mussig Decl., ¶ 7, Ex. F, Berry Depo., pgs.

12        157:21-158:4.)  Indeed, Owner-Operators are entitled to haul for other carriers as

13        long as they removed any Swift indicia from their truck.  (Id. at Berry Depo., pg.

14        216:1-25; Van Dusen's March 3, 2009 ICOA, ¶ 5(b); Mussig Decl., ¶ 4, Ex. C, Van

15        Dusen's June 8, 2009 ICOA, ¶ 5(b); Mussig Decl., ¶ 5, Ex. D, Van Dusen's January

16        21, 2010, ICOA, ¶ 5(b).)  Therefore, the hours Owner-Operators drive are primarily

17        determined by their own preferences.

18        Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).  Swift's policies

19        applicable to employee drivers have no bearing on whether Swift properly classified

20        Owner-Operators, including Plaintiff, as independent contractors.

21

22        5.     As both a Company Driver and a Lease Operator, Plaintiffs were only

23   permitted to haul freight at the direction of/on behalf of Swift Transportation.  Sheer Dec.

24   ¶6; Van Dusen Dec. ¶6; Wood Dec. ¶6.

25   DEFENDANTS' RESPONSE:

26        Disputed.  Owner-Operators are entitled to haul for other carriers as long as

27        they removed any Swift indicia from their truck.  (Mussig Decl., ¶ 7, Ex. F, Berry

28        Depo., pg. 216:1-25; Mussig Decl., ¶ 3, Ex. B, Van Dusen's March 3, 2009 ICOA,

-71-

¶ 5(b); Mussig Decl., ¶ 4, Ex. C, Van Dusen's June 8, 2009 ICOA, ¶ 5(b); Mussig Decl., ¶ 5, Ex. D, Van Dusen's January 21, 2010, ICOA, ¶ 5(b) Van Dusen's ICOA, ¶ 5.b.)  Owner-Operators are also free to accept and decline freight loads offered to them by Swift.  (Mussig Decl., ¶ 7, Ex. F, Berry Depo., pgs. 157:21-158:4; Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pg. 97:16-24.)

Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403).  Swift's policies applicable to employee drivers have no bearing on whether Swift properly classified Owner-Operators, including Plaintiff, as independent contractors.

6.    Lease Operators are supervised by their Driver Managers.  Sheer Dec. ¶6; Van Dusen Dec. ¶ 6; Wood Dec. ¶ 5.

DEFENDANTS' RESPONSE:

Disputed.  While Owner-Operators did have a "Driver Manager" (or mere point of contact at their home terminals), their Driver Managers were not their "supervisors."  As Plaintiff Wood testified, Owner-Operators had the authority to fire their Driver Managers and in fact Wood did fire his Driver Manager because they did not see eye to eye. (Stancu Decl., ¶ 4, Ex. Q, Wood Depo., pg. 65:15-22.)  Plaintiff testified that nobody met her at pick-up or drop-off sites to check in or supervise her. (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 94:17-21, 94:23-95:3; *see also* Stancu Decl., ¶ 4, Ex. Q, Wood Depo., pgs. 180:25-181:22; Stancu Decl., ¶ 3, Ex. P, Motolinia Depo., pgs. 95:1-5, 106:22-25, 149:8-14; Stancu Decl., ¶ 2, Ex. O,  Schwalm Depo., pgs. 102:21-104:4; Berry Decl., ¶ 6.)

7.    Lease Operators are also supervised by their Fleet Manager and the Rapid Response Team.  Wood Dec. ¶5; Van Dusen Dec. ¶6.

DEFENDANTS' RESPONSE:

Disputed.  Owner-Operators were not supervised by Fleet Managers, the Rapid Response Team or anyone else at Swift.  (Supp. Mussig Decl., ¶ 3, Ex. L,

-72-

Berry Depo., pgs. 76:25-82:13.)  Indeed, Plaintiff testified that nobody met her at pick-up or drop-off sites to check in or supervise her.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 94:17-21, 94:23-95:3; *see also* Stancu Decl., ¶ 4, Ex. Q, Wood Depo., pgs. 180:25-181:22; Stancu Decl., ¶ 3, Ex. P, Motolinia Depo., pgs. 95:1-5, 106:22-25, 149:8-14; Stancu Decl., ¶ 2, Ex. O,  Schwalm Depo., pgs. 102:21-104:4; Berry Decl., ¶ 6.)  No purported supervisor conducted performance evaluations for Van Dusen when she was an Owner-Operator.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 187:22-188:3.)

8.      Plaintiffs never had a supervisor ride-along in their truck while they were company drivers.  Sheer Dec. ¶7; Van Dusen Dec. ¶7; Wood Dec. ¶6.

<u>DEFENDANTS' RESPONSE:</u>

<u>Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403)</u>.  Swift's policies applicable to employee drivers have no bearing on whether Swift properly classified Owner-Operators, including Plaintiff, as independent contractors.

9.      The weight of a given load, and whether it had to be driven over mountains or level ground, had much more of an effect on driver fuel efficiency than anything they could control by the way they drove.  Sheer Dec. ¶8; Van Dusen Dec. ¶8; Wood Dec. ¶7.

<u>DEFENDANTS' RESPONSE:</u>

<u>Disputed.</u>  The weight of a given load, whether it had to be driven over mountains or level ground affect, and numerous other factors may affect fuel efficiency, but no single factor controls.  It is undisputed that the route Plaintiff chose to take impacted her fuel efficiency.

<u>Immaterial and Irrelevant (LRCiv 561(a); FRE 402, 403)</u>.  What affects the fuel efficiency of a load has no bearing on any of the issues before this Court.  This is particularly true given that Plaintiff was able to accept or decline any load offered by Swift and chose her own routes.

1

2      10.     Defendant sets forth rules, policies and practices f or Lease Operators in a

3   series of documents which it gives to drivers:  1) the Swift Driver Manual (by its terms

4   applicable to both employee drivers and Lease drivers), 2) the Contracted Driver Manual

5   (applicable just to Lease drivers), 3) the Handshake to Horsepower, and 4) the Swift CABS

6   Training handout.  *See* PSOF ¶¶ 98-101.  Swift provided each of the documents in

7   discovery to Plaintiffs.  These policies and instructions are described below.

8          <u>DEFENDANTS' RESPONSE:</u>

9              <u>Disputed</u>.  Several Plaintiffs, including Van Dusen, admit that Swift did not

10             provide them with, nor require them to be familiar with, any policies or handbooks

11             while they were Owner-Operators, including the Pre-CABS Training manual, the

12             "Handshake to Horsepower", and the Contracted Driver Manual, and that they

13             could not be disciplined for failing to follow company policies and procedures

14             while they were Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo.,

15             pgs. 187:22-188:3; *see also* Supp. Mussig Decl., ¶ 5, Ex. N, Sheer Depo., pg.

16             121:17-21; Stancu Decl., ¶ 4, Ex. Q, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 3,

17             Ex. P, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Stancu Decl., ¶ 2,

18             Ex. O,  Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo.,

19             pg. 258:16-24.)

20             <u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4))</u>.

21             Plaintiff fails to offer any evidence that Swift provided her with a Driver Manual,

22             Contracted Driver Manual, Handshake-to-Horsepower document, and/or Pre-CABS

23             Training document, such that she could be familiar with, let along bound by, their

24             contents.  These purported "policies" lack foundation and proper authentication.

25

26     11.     Defendant Swift maintains a "Swift Driver Manual" which is set forth as

27   Exhibit 14 (14A and 14B) to Plaintiffs' Summary Judgment Motion.  Swift supplied

28

DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL
STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO VAN DUSEN

1 | Plaintiffs (and all employee drivers) with the Swift Driver Manual when the driver first

2 | starts working for Swift.  See PSOF ¶¶ 98-101.

3 |    DEFENDANTS' RESPONSE:

4 |        Disputed.  Several Plaintiffs, including Van Dusen, admit that Swift did not

5 | provide them with, nor require them to be familiar with, any policies or handbooks

6 | as Owner-Operators, including the Swift Driver Manual, and that they could not be

7 | disciplined for failing to follow company policies and procedures while they were

8 | Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 187:22-188:3;

9 | *see also* Supp. Mussig Decl., ¶ 5, Ex. N, Sheer Depo., pg. 121:17-21; Stancu Decl.,

10 | ¶ 4, Ex. Q, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 3, Ex. P, Motolinia Depo.,

11 | pgs. 36:11-37:3, 124:5-18, 128:1-4; Stancu Decl., ¶ 2, Ex. O,  Schwalm Depo., pg.

12 | 45:12-16; Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo., pg. 258:16-24.)

13 |        The ICOA rather than Plaintiffs' Exhibit 14 governs the relationship between

14 | Owner-Operators and Swift. (Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo.,

15 | pgs. 160:25-161:6.)  Indeed, Plaintiffs' Exhibit 14 at DEF004946 is the Employee

16 | Acknowledgment of the Driver Manual.  It does not mention Owner-Operators at

17 | all.

18 |        Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).

19 | Plaintiff fails to offer any evidence that Swift provided her with a Driver Manual,

20 | such that she could be familiar with, let along bound by, its contents.  The Driver

21 | Manual lacks foundation and proper authentication.

22 |

23 |    12.    The Swift Driver Manual, by its own terms refers both to company drivers

24 | (employees) and to Lease Operators.  For example, the following provisions make clear

25 | that Swift Driver Manual applies to Lease Drivers as well as employee drivers:

26 | **OWNER OPERATORS**

27 |    •    All previous procedures apply to Owner Operators.

28 |

- Owner Operators, can if they choose, fuel at our bulk fueling facilities with charges for the fuel appearing on their weekly settlements.

- All amounts due on Owner Operator maintenance performed are due upon completion, unless other arrangements have been made with your Driver Manager.

Ex. 14b, p. 3, Bates 5408.  And the Swift Driver Manual goes on to state:  "There is no distinction with regard to whether you are a Company Driver, Contract Driver, or Owner Operator."  Ex. 14b, Sec. 6, p. 1, DEF 5064.

   10.   PERSONAL USAGE OF COMMERCIAL VEHICLE

   . . . When a driver, including Contract Drivers and Owner Operators, is
   relieved from all responsibility for performing work, time spent traveling
   from the Driver's home to his/her terminal (normal work reporting location),
   or from the Driver's terminal to his/her home, may be considered off-duty
   time.

Ex. 14b, Sec. 6, p. 5, Def. 5064.  Further, Swift states that "All usage of a CMV [Commercial Motor Vehicle] for personal conveyance must be flagged and identified as such on the Drivers log, including Owner Operators' and Contract Drivers' logs."  Ex. 14b, Sec. 6, p. 6, Def. 5069.  And see Def. 5070 (charts of employee and lease driver discipline).

   DEFENDANTS' RESPONSE:

   Disputed.  Several Plaintiffs, including Van Dusen, admit that Swift did not provide them with, nor require them to be familiar with, any policies or handbooks as Owner-Operators, including the Swift Driver Manual, and that they could not be disciplined for failing to follow company policies and procedures while they were Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 187:22-188:3; *see also* Supp. Mussig Decl., ¶ 5, Ex. N, Sheer Depo., pg. 121:17-21; Stancu Decl., ¶ 4, Ex. Q, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 3, Ex. P, Motolinia Depo.,

pgs. 36:11-37:3, 124:5-18, 128:1-4; Stancu Decl., ¶ 2, Ex. O,  Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo., pg. 258:16-24.)

The ICOA rather than Plaintiffs' Exhibit 14 governs the relationship between Owner-Operators and Swift. (Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 160:25-161:6.)  Indeed, Plaintiffs' Exhibit 14 at DEF004946 is the Employee Acknowledgment of the Driver Manual.  It does not mention Owner-Operators at all.

Misstates the Evidence.  Plaintiff misstates the Swift Driver Manual.  For example, Plaintiff misstates the statement on DEF005064 regarding a "lack of distinction."  This statement merely states that all drivers, whether employee drivers or Owner-Operators, are required by law to comply with the hours of service limits *set by the federal government*.  It does not purport to say that employee drivers and Owner-Operators are the same in any other way.  Additionally, DEF005408, DEF0064, and DEF0069 do not contain any of the text that Plaintiff claims they do.

Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)). Plaintiff fails to offer any evidence that Swift provided her with a Driver Manual, such that she could be familiar with, let along bound by, its contents.  The Driver Manual lacks foundation and proper authentication.

13.    The rules and policies set forth in the Swift Driver Manual include:
    a.    Speed for lease drivers (68 mph) and company drivers (65 mph). Ex. 14A, Sec. 2, p. 12.
    b.    "Swift Transportation Co., Inc. retains full ownership of all equipment and the right to assign equipment for use by its Drivers as it sees fit." Ex. 14A, Sec. 2, p. 43.

DEFENDANTS' RESPONSE:

Disputed.  Several Plaintiffs, including Van Dusen, admit that Swift did not provide them with, nor require them to be familiar with, any policies or handbooks

1    as Owner-Operators, including the Swift Driver Manual, and that they could not be

2    disciplined for failing to follow company policies and procedures while they were

3    Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 187:22-188:3;

4    *see also* Supp. Mussig Decl., ¶ 5, Ex. N, Sheer Depo., pg. 121:17-21; Stancu Decl.,

5    ¶ 4, Ex. Q, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 3, Ex. P, Motolinia Depo.,

6    pgs. 36:11-37:3, 124:5-18, 128:1-4; Stancu Decl., ¶ 2, Ex. O,  Schwalm Depo., pg.

7    45:12-16; Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo., pg. 258:16-24.)

8          The ICOA rather than Plaintiffs' Exhibit 14 governs the relationship between

9    Owner-Operators and Swift. (Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo.,

10    pgs. 160:25-161:6.)  Indeed, Plaintiffs' Exhibit 14 at DEF004946 is the Employee

11    Acknowledgment of the Driver Manual.  It does not mention Owner-Operators at

12    all.

13          <u>Misstated Evidence.</u>  Plaintiff misstates the Swift Driver Manual.  For

14    example, Plaintiff's citation to the statement on page DEF004799 (page 43)

15    regarding Swift's ownership rights applies to employee drivers only.  By its own

16    terms, it does not apply to Owner-Operators.

17          <u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>

18    Plaintiff fails to offer any evidence that Swift provided her with a Driver Manual,

19    such that she could be familiar with, let along bound by, its contents.  The Driver

20    Manual lacks foundation and proper authentication.

21

22        14.    The Contracted Driver Manual (by its terms applicable just to Lease drivers),

23    states a series of Swift policies, including, but not limited to:

24          a.    Setting a 68 mph speed limit Lease Operators may drive, Sec. 2, p. 1

25              (e.g. "The Company has no tolerance for flagrant overspeed").

26          b.    No alcohol within 12 hours of duty, Sec. 2, p. 2.  *Compare*.  49 C.F.R.

27              §392.5 (federal limit of 4 hours).

28

c.    Swift authorization for any passengers (and paperwork pertaining thereto), Sec. 2, p. 3.

d.    Drug and alcohol testing program, Sec. 2, pp. 4-12.

e.    Equipment security locking policies, Sec. 2, pp. 12-13.

f.    Prohibiting dropping loaded trailers in locations other than terminals and yards, Sec. 2, p. 13.

g.    Parking with loaded trailers, Sec. 2, p. 13.

h.    Padlocks, king-pin, and enforcer locks, Sec. 2, p. 14.

i.    Special procedures for "High value loads" mandating compliance with company directions and procedures (e.g. trailer must be kept in sight at all times, may not deviate from route, no stopping along road), Sec. 2, p. 14-15.

j.    Swift's accident and cargo claims procedures, Sec. 2, p. 16.

k.    Swift's facilities policies, Sec. 2, p. 18.

l.    Swift's Qualcomm, Internet, email policies (e.g. "no messages with derogatory or inflammatory remarks . . .".), Sec. 2, p. 19.

m.    Termination and disciplinary policies, Sec. 2, p. 20.

n.    Swift's pre-trip and post-trip inspections more expansive than federal requirements, Sec. 3, p. 2.  Compare 49 C.F.R. Part 396.

o.    Chain requirements for winter driving, Sec. 3, p. 6.

<u>DEFENDANTS' RESPONSE:</u>

<u>Disputed.</u>  Several Plaintiffs, including Van Dusen, admit that Swift did not provide them with, nor require them to be familiar with, any policies or handbooks as Owner-Operators, including the Contracted Driver Manual, and that they could not be disciplined for failing to follow company policies and procedures while they were Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 187:22-188:3; *see also* Supp. Mussig Decl., ¶ 5, Ex. N, Sheer Depo., pg. 121:17-21; Stancu Decl., ¶ 4, Ex. Q, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 3, Ex. P, Motolinia

-79-

Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Stancu Decl., ¶ 2, Ex. O, Schwalm

Depo., pg. 45:12-16; Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo., pg. 258:16-24.)

<u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>

Plaintiff fails to offer any evidence that Swift provided her with a Contracted Driver

Manual, such that she could be familiar with, let alone bound by, its contents.  The

Contracted Driver Manual lacks foundation and proper authentication.

15.     The Handshake to Horsepower, (Ex. 13, Bates DEF1455-DEF1475) provides

new Lease Operators with a variety of instructions:

        a.     equipment that must be onboard (Comdata card, original copy of

                contracts, permit book, temporary registration, Qualcomm), p. 3.

        b.     instructions on logging into Qualcomm, p. 4.

        c.     fueling instructions ("Do not fill up your tanks unless your trip miles

                require it" p. 6.

        d.     Speed limit of 68 mph., p. 12.

        e.     Penalties for overspeed occurrences (written notice to termination),

                p. 12.

        f.     Penalty for "coasting out of gear or tampering with the speed control

                equipment may result in termination" p. 12.

        g.     Instructions that "If you have any repairs completed on your truck

                outside of the Swift network, you are required to file a Monthly

                Maintenance Report ... p. 13.

        h.     Swift's "Required Decal Placement", p. 17.

<u>DEFENDANTS' RESPONSE:</u>

    <u>Disputed.</u>  Several Plaintiffs, including Van Dusen, admit that Swift did not

provide them with, nor require them to be familiar with, any policies or handbooks

as Owner-Operators, including the Handshake to Horsepower document, and that

they could not be disciplined for failing to follow company policies and procedures

-80-

1   while they were Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo.,

2   pgs. 187:22-188:3; *see also* Supp. Mussig Decl., ¶ 5, Ex. N, Sheer Depo., pg.

3   121:17-21; Stancu Decl., ¶ 4, Ex. Q, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 3,

4   Ex. P, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Stancu Decl., ¶ 2, Ex.

5   O, Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo.,

6   pg. 258:16-24.)

7           Misstated Evidence.  Plaintiff misstates the Handshake to Horsepower

8   document.  For example, Plaintiff lists equipment that allegedly must be onboard.

9   However, DEF001457 merely recommends that Owner-Operators have crucial

10  items, such as the original copy of their contracts and temporary truck registration,

11  before they leave the terminal for the first time as Owner-Operators – a reasonable

12  recommendation.  DEF001458 simply notes that former employee drivers who are

13  now Owner-Operators will follow different Qualcomm log-on procedures, which

14  demonstrate one of many differences between employee drivers and Owner-

15  Operators.  Also, Swift does not provide fueling instructions; rather, DEF001460

16  lists "a few tips that will help you put less money in your tanks and more money in

17  your wallet" by increasing fuel efficiency.  Additionally, DEF001471 describes

18  federal requirements for the placement of decals, not Swift policy as Plaintiff

19  suggests.

20          Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).

21  Plaintiff fails to offer any evidence that Swift provided her with the Handshake to

22  Horsepower document, such that she could be familiar with, let along bound by, its

23  contents.  The Handshake to Horsepower document lacks foundation and proper

24  authentication.

25

26  16.     The Swift Pre- CABS Training (Ex. 11 (Bates DEF002988-DEF3085)) is a

27  four-part driver training program created by Swift. P. 6.

28          DEFENDANTS' RESPONSE:

1    Disputed.  Several Plaintiffs, including Van Dusen, admit that Swift did not

2    provide them with, nor require them to be familiar with, any policies or handbooks

3    as Owner-Operators, including the Pre-CABS Training document, and that they

4    could not be disciplined for failing to follow company policies and procedures

5    while they were Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo.,

6    pgs. 187:22-188:3; *see also* Supp. Mussig Decl., ¶ 5, Ex. N, Sheer Depo., pg.

7    121:17-21; Stancu Decl., ¶ 4, Ex. Q, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 3,

8    Ex. P, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Stancu Decl., ¶ 2, Ex.

9    O, Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo.,

10   pg. 258:16-24.)

11   Misstates Evidence.  ATBS, a completely separate and distinct company

12   from Swift, conducted the Pre-CABS Training.  (Berry Decl., ¶ 4.)  It was provided

13   as a convenience to Owner-Operators and was completely voluntary.  (*Id*.)  There

14   were no consequences if Owner-Operators chose not to participate in the training.

15   (*Id*.)

16   Vague and Ambiguous.  Plaintiff's page citations to the Pre-CAB Training

17   document are vague and ambiguous and, as such, Plaintiffs fail to "refer to a

18   specific admissible portion of the record" as required by LRCiv 56.1(a).

19   Specifically, this document has multiple pages labeled as "Page 6," making it

20   impossible to determine what evidence Plaintiffs purport to cite.

21   Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).

22   Plaintiff fails to offer any evidence that Swift provided her with the Pre-CABS

23   Training document, such that she could be familiar with, let along bound by, its

24   contents.  The Pre-CABS Training document lacks foundation and proper

25   authentication.

26

27   17.    The Pre-CABS training includes Swift policies such as:

28          a.    Qualcomm Rental policies, p. 12.

-82-

1    b.    Mandatory insurance, p. 13.

2    c.    Insurance claim policies, p. 14.

3    d.    Authorization required for pets and passengers, p. 15 ("All drivers

4          who would like to have passengers ride with him/her must comply

5          with the Rider or Pet Rider program"), p. 15.

6    e.    "Lease Term—You are responsible for the full length—all payments

7          of the lease, regardless of whether you quit, turn in the truck early or

8          leave Swift.  Walking away from the lease will be considered a

9          default of the lease and you will be subject to collections, including

10         any costs for repair of the truck that is needed."  P. 22.

11   f.    No modifications to truck ("Since your leased truck does not belong

12         to you, you cannot make any modifications to the equipment without

13         prior written consent from IEL.").  P. 22.

14   g.    Required trip paperwork, p. 26.

15   h.    $30 fee to use authorized, but non-Swift repair shop, p. 53.

16   DEFENDANTS' RESPONSE:

17       Disputed.  Several Plaintiffs, including Van Dusen, admit that Swift did not

18   provide them with, nor require them to be familiar with, any policies or handbooks

19   as Owner-Operators, including the Pre-CABS Training document, and that they

20   could not be disciplined for failing to follow company policies and procedures

21   while they were Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo.,

22   pgs. 187:22-188:3; *see also* Supp. Mussig Decl., ¶ 5, Ex. N, Sheer Depo., pg.

23   121:17-21; Stancu Decl., ¶ 4, Ex. Q, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 3,

24   Ex. P, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Stancu Decl., ¶ 2, Ex.

25   O, Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo.,

26   pg. 258:16-24.)

27       Misstates  Evidence.  Plaintiff misstates the Pre-CABS Training document.

28   For example, DEF002999 merely states that Owner-Operators "*may* rent [their]

QualComm communications equipment" through Swift.  (emphasis added).
DEF003001 explains how to file an insurance claim if an Owner-Operator chooses
to obtain insurance through Swift.  (*See* DEF003000 ("If you do purchase through
Swift . . . ,"  "if you choose to purchase [insurance] available through Swift," etc.).)

Vague and Ambiguous. Plaintiff's page citations to the Pre-CAB Training
document are vague and ambiguous and, as such, Plaintiffs fail to "refer to a
specific admissible portion of the record" as required by LRCiv 56.1(a). For
example, this document has multiple pages labeled as "Page 12," making it
impossible to determine what evidence Plaintiffs purport to cite.

Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).
Plaintiff fails to offer any evidence that Swift provided her with the Pre-CABS
Training document, such that she could be familiar with, let along bound by, its
contents.  The Pre-CABS Training document lacks foundation and proper
authentication.

18.     Swift provided each of these policy documents in discovery and indicated
the specific document demand topic to which each document was responsive.  Ex. 30
attached to Declaration of Lesley Tse in Support of Plaintiffs' Opposition to Defendants'
Motions for Summary Judgment, dated July 22, 2016 ("Tse Dec.").

DEFENDANTS' RESPONSE:

Partially Disputed.  Swift admits that it produced the Driver Manual,
Contracted Driver Manual, Handshake to Horsepower documents, and Pre-CABS
Training documents.  However, Defendants dispute that these policies were
distributed and applied to Plaintiff.  Several Plaintiffs, including Van Dusen, admit
that Swift did not provide them with, nor require them to be familiar with, any
policies or handbooks as Owner-Operators, including the Pre-CABS Training
manual, the "Handshake to Horsepower", and the Contracted Driver Manual, and
that they could not be disciplined for failing to follow company policies and

-84-

procedures while they were Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 187:22-188:3; *see also* Supp. Mussig Decl., ¶ 5, Ex. N, Sheer Depo., pg. 121:17-21; Stancu Decl., ¶ 4, Ex. Q, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 3, Ex. P, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Stancu Decl., ¶ 2, Ex. O, Schwalm Depo., pg. 45:12-16; Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo., pg. 258:16-24.)  Furthermore, as explicitly stated in Plaintiffs' Exhibit 30, "[n]o incidental or implied admissions [were] intended by [the] log."  (Pl.'s Ex. 30, 1:12-13.)  Simply because a policy document was in the possession, control, or custody of the Defendants does not mean it was distributed and enforced, and certainly does not mean it was provided to this particular Plaintiff.

   Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).  Plaintiff fails to offer any evidence that Swift provided her with a Driver Manual, Contracted Driver Manual, Handshake-to-Horsepower document, and/or Pre-CABS Training document, such that she could be familiar with, let along bound by, their contents.  These documents lack foundation and proper authentication.

   19. Swift identified the Contracted Driver Manual, Handshake to Horsepower, and Pre-Cabs Training" as "Defendants' instructions to named-plaintiffs as to when, where, and how to work."  *Id.*

  DEFENDANTS' RESPONSE:

   Partially Disputed.  Swift admits it produced the Contracted Driver Manual, Handshake to Horsepower documents, and Pre-CABS Training documents in discovery.  However, Defendants dispute that these documents were distributed and applied to Plaintiff.  Several Plaintiffs, including Van Dusen, admit that Swift did not provide them with, nor require them to be familiar with, any policies or handbooks as Owner-Operators, including the Pre-CABS Training manual, the "Handshake to Horsepower", and the Contracted Driver Manual, and that they could not be disciplined for failing to follow company policies and procedures

while they were Owner-Operators.  (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 187:22-188:3; *see also* Supp. Mussig Decl., ¶ 5, Ex. N, Sheer Depo., pg. 121:17-21; Stancu Decl., ¶ 4, Ex. Q, Wood Depo., pg. 21:12-20; Stancu Decl., ¶ 3, Ex. P, Motolinia Depo., pgs. 36:11-37:3, 124:5-18, 128:1-4; Stancu Decl., ¶ 2, Ex. O, Schwalm Depo., pg. 45:12-16;  Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo., pg. 258:16-24.)  Furthermore, as explicitly stated in Plaintiffs' Exhibit 30, "[n]o incidental or implied admissions [were] intended by [the] log."  (Pl.'s Ex. 30, 1:12-13.)  Simply because a policy document was in the possession, control, or custody of the Defendants does not mean it was distributed and enforced, and certainly does not mean it was provided to this particular Plaintiff.

     <u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4))</u>. Plaintiff fails to offer any evidence that Swift provided her with a Driver Manual, Contracted Driver Manual, Handshake-to-Horsepower document, and/or Pre-CABS Training document, such that she could be familiar with, let along bound by, their contents.  These documents lack foundation and proper authentication.

20.    Swift identified the Swift Driver Manual as "Handbooks or other statements of policies, regulations, or practices with respect to employee drivers."  *Id.*

    <u>DEFENDANTS' RESPONSE:</u>

    <u>Partially Disputed.</u>  Defendants admit that it produced the Driver Manual, and that it contains policies applicable to employee drivers.  However, Defendants dispute that any of the policies in the Driver Manual applied to Plaintiff while she was an Owner-Operator.

    <u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4))</u>. Plaintiff fails to offer any evidence that Swift provided her with a Driver Manual, such that she could be familiar with, let along bound by, its contents.  This manual lacks foundation and proper authentication.

1

2   21.  Swift provides various types of mandatory insurance to lease operators

3 through Mohave Transportation Insurance Company ("Mohave"), including Occupational

4 Accident Insurance, Non-Trucking Liability (Bobtail) Insurance, and Physical Damage

5 (Collision) Insurance.  See Ex. 11 to PSOF (Doc. 775-2) at pp. 13-15, Ex. 6 to PSOF Doc.

6 772-7) at pp. 21, 82; Ex. 10a to PSOF (Doc. 775) at p. 80; Ex. 10b to PSOF (Doc. 775-1)

7 at p. 62; Ex. 32.  Swift also provides various types of non-mandatory insurance to lease

8 operators through Mohave, including GI ass Coverage and Loaner Truck Program.  *See id.*;

9 *see also* Ex. 18 to PSOF (Doc. 775-10) at pp. 9-11.

10 <u>DEFENDANTS' RESPONSE:</u>

11  <u>Disputed.</u>  Plaintiff admits she was required to finance her own insurance.

12 (Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 53:14-25, 75:25-76:7; *see also*

13 Supp. Mussig Decl., ¶ 5, Ex. N, Sheer Depo., pgs. 155:25-156:21; Stancu Decl., ¶ 4,

14 Ex. Q, Wood Depo., pg. 144:2-15; Stancu Decl., ¶ 3, Ex. P, Motolinia Depo., pg.

15 139:8-23; Stancu Decl., ¶ 2, Ex. O, Schwalm Depo., pgs. 148:11-150:2, 150:12-

16 154:2;  Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo., 57:15-58:10.)  While Owner-

17 Operators had the option to purchase insurance from a third party insurer through

18 Swift, Swift did not pay for any Owner-Operator's insurance and did not insure any

19 Owner-Operator and therefore did not "provide" any insurance.  (Berry Decl., ¶ 9;

20 Mussig Decl., ¶ 2, Ex. A, Van Dusen Depo., pgs. 53:14-25, 75:25-76:7; *see* Supp.

21 Mussig Decl., ¶ 5, Ex. N, Sheer Depo., pgs. 155:25-156:21; Stancu Decl., ¶ 4, Ex.

22 Q, Wood Depo., pg. 144:2-15; Stancu Decl., ¶ 3, Ex. P, Motolinia Depo., pg. 139:8-

23 23; Stancu Decl., ¶ 2, Ex. O, Schwalm Depo., pgs. 148:11-150:2, 150:12-154:2;

24 Supp. Mussig Decl., ¶ 3, Ex. L, Berry Depo., pgs. 57:15-58:10.)

25  <u>Misstates Evidence.</u>  Plaintiff's Exhibit 6, 10a, and 10b only show that Van

26 Dusen and Wood purchased insurance from a third party insurer through Swift, not

27 that Swift provided insurance to Van Dusen or Wood.

28

1    Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).

2    Plaintiff's Exhibits 11 and 18 lack foundation and proper authentication.  Plaintiff

3    does not offer any evidence that Swift provided Exhibits 11 and 18 to Plaintiff, such

4    that she could be familiar with, let alone bound by, their contents.

5

6    22.    Mohave is a wholly-owned captive insurance subsidiary of Swift.  *See* Ex. 31

7    at p. 3, Tse Dec. ¶ 5; Ex. 32, Tse Dec. ¶ 6.

8    DEFENDANTS' RESPONSE:

9    Disputed.  The cited evidence does not show that Mohave is owned by

10   Defendant Swift Transportation Co. of Arizona, LLC.  Rather, it shows that

11   Mohave and Swift Transportation Co. of Arizona, LLC have the same corporate

12   parent, Swift Transportation Company.

13

14   23.    Swift insures a "significant portion" of its risks through Mohave.  *See* Ex. 31

15   at p. 22.  Mohave provides reinsurance associated with a share of Swift's automobile

16   liability risk.  *Id.* at p. 3.  In addition to insuring a proportionate share of Swift's corporate

17   casualty risk, Mohave provides reinsurance coverage to third-party insurance companies

18   associated with Swift's affiliated companies' lease operators.  *Id.*  While under dispatch

19   and Swift's operating authority, Swift's lease operators are covered by its liability

20   coverage and self-insurance retention limits.  *Id.*

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL
STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO VAN DUSEN

DEFENDANTS' RESPONSE:

Disputed.  Page 3 of Plaintiff's Exhibit 13 does not contain this information. Additionally, Page 26 states, "[E]ach [Owner-Operator] is responsible for physical damage to his or her own equipment, occupational accident coverage and liability exposure while the truck is used for non-company purposes. Additionally, fleet operators are responsible for any applicable workers' compensation requirements for their employees."  (Pl.'s Ex. 31, at p. 26.)

Immaterial and Irrelevant (LRCiv 56.1(a); FRE 402, 403).  Swift, IEL, and Mohave are distinct and separate corporate entities.  There is no evidence in this case that the entities were improperly commingled.

24.   Swift earns premium revenue from its captive insurance companies.  *Id.* at p. 31.

DEFENDANTS' RESPONSE:

Disputed.  The cited evidence does not show that Mohave is owned by Defendant Swift Transportation Co. of Arizona, LLC.  Rather, it shows that Mohave and Swift Transportation Co. of Arizona, LLC have the same corporate parent, Swift Transportation Company.  There is no evidence that Defendant Swift Transportation Co. of Arizona, LLC earns revenue from Mohave.

Immaterial and irrelevant (LRCiv 56.1(a); FRE 402, 403)  Swift, IEL, and Mohave are distinct and separate corporate entities.  There is no evidence in this case that the entities were improperly commingled.

25.   Swift uses Aon Hewitt, its insurance broker, to manage Mohave.  *See* Ex. 32 ("Swift approached Aon, the firm's existing broker, to manage the captive."); Ex. 6 to PSOF (Doc. 772-7 at p. 80) ("Aon Trucking Practice works as a Risk Management & Insurance Brokerage Firm providing insurance programs for the trucking industry.  The program within this flyer is available solely to independent contractors of Swift

-89-

1   Transportation.  Premiums are paid via weekly settlement deductions."); Ex. 10a to PSOF

2   (Doc. 775) at p. 78 (same); Ex. 18 to PSOF (Doc. 775-10) at pp. 17, 30, 39, 45, 54, 68, 77

3   ("AON Trucking Practice works as a Risk Management & Insurance Brokerage Firm

4   providing insurance programs for the trucking industry.  They offer truck insurance as well

5   as occupational accident coverage."); Ex. 10b (Doc. 775-1) at pp. 94-97; Ex. 13 to PSOF

6   (Doc. 775-4) at p. 20.

7          DEFENDANTS' RESPONSE:

8          Disputed.  Defendant Swift Transportation Co. of Arizona, LLC does not

9   manage Mohave, as it is not the corporate parent of Mohave.

10          Immaterial and irrelevant (LRCiv 56.1(a); FRE 402, 403).  Swift, IEL, and

11   Mohave are distinct and separate corporate entities.  There is no evidence in this

12   case that the entities were improperly commingled.

13

14   26.     Swift monitors and controls the speed that lease operators drive through its

15   use of speed governors affixed to lease operators' trucks.  See 30(b)(6) depo of IEL, Ex. 26

16   to PSOF (Doc. 776-7) at 121:20-122:8 (IEL monitors lease operators' job performance,

17   specifically speed, through truck governor); Ex. 18 to PSOF (Doc. 775-10) at pp. 15, 26,

18   37, 43, 52, 64, 75 (trucks leased through IEL governed at 68 mph, mentor trainers

19   governed at 65 mph); Ex. 7 to PSOF (Doc. 772-8) at p. 14 (trainers' trucks required to be

20   governed at 65 mph); Ex. 9 to PSOF (Doc. 772-10) at p. 35 (same); Ex. 10a to PSOF (Doc.

21   775) at p. 63 (same).

22          DEFENDANTS' RESPONSE:

23          Disputed.  No one from Swift monitors or controls Owner-Operators'

24   location or tracks their progress towards their destination.  (Berry Decl. ¶ 7.)

25          Additionally, Plaintiff's reliance on the lease is misplaced.  The lease has no

26   bearing on whether Plaintiff was in an independent contractor relationship with

27   Swift while she was an Owner-Operator, as IEL and Swift are distinct and separate

28   entities.  (Berry Decl., ¶ 21.)

1      <u>Misstates Testimony.</u>  Murray Spence's testimony immediately following the

2   testimony cited by Plaintiff establishes that IEL does not monitor the speed  of

3   Swift drivers.  (Supp. Mussig Decl., ¶ 4, Ex. M, Spence Depo., pg. 122:13-15 ("Q:

4   And do you monitor any of this information with respect to Swift drivers, Swift

5   Company drivers?  A: No.").)

6      <u>Lacks Foundation / Lacks Proper Authentication (FRE 901; FRCP 56(c)(4)).</u>

7   Plaintiff's Exhibit 18 lacks foundation and proper authentication.  Plaintiff does not

8   establish that Swift provided her with Exhibit 18, such that she could be familiar

9   with, let alone bound by, its contents.

10

11  Dated:  September 30, 2016            SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

12                                By_____/s/ Robert Mussig_____

13                                         RONALD HOLLAND
                                         ELLEN M. BRONCHETTI
14                                         PAUL S. COWIE
                                         ROBERT MUSSIG
15
                                         Attorneys for Defendants
16                                 SWIFT TRANSPORTATION CO. OF ARIZONA,
                                 LLC, INTERSTATE EQUIPMENT LEASING, LLC,
17                                 CHAD KILLEBREW and JERRY MOYES

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL
STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO VAN DUSEN

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2016, I electronically transmitted the attached

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

Notice of Electronic filing to the following CM/ECF registrants:


Susan Joan Martin
Jennifer Lynn Kroll
Martin & Bonnett PLLC
1850 N. Central Ave.; Ste. 2010
Phoenix, AZ  85004

Dan Getman
Edward John Tuddenham
Lesley Tse
Getman & Sweeney, PLLC
9 Paradies La.
New Paltz, NY  12561

Attorneys for Defendants

*/s/ Robert Mussig*

SMRH:478720725.2
DEFENDANTS' REPLY TO PLAINTIFFS' CONTROVERTING AND ADDITIONAL
STATEMENTS OF FACT RE DEFENDANTS' MSJ AS TO VAN DUSEN