UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| **John Doe 1,** *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | 2:10-cv-00899 JWS |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| **Swift Transportation Co., Inc.,** *et al.*, | ) | [Re: Motion at 885] |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.  MOTION PRESENTED

At docket 885, the five named plaintiffs in this lawsuit ("Plaintiffs") filed a motion for temporary restraining order and preliminary injunction regarding a new independent contractor operating agreement ("ICOA") that Defendant Swift Transportation Co., Inc. ("Swift") is currently requiring current contract drivers, whom Plaintiffs refer to as lease operators, to sign before March 1, 2017.  Defendants Swift, Interstate Equipment Leasing, Inc. ("IEL"), Chad Killebrew, and Jerry Moyes (collectively, "Defendants") were given an opportunity to respond and did so at docket 899.  Plaintiffs reply at docket 906.  Oral argument was heard on February 15, 2017.

## II. BACKGROUND

The complete factual and procedural background of this case is set forth in the court's order at docket 862 and will not be repeated in full here. It should be noted that the operative complaint at docket 588 includes class action claims. On January 5, 2017, the court ruled that Plaintiffs had contracts of employment, which effectively denied Defendants' request to compel arbitration pursuant to a provision in those contracts. A few days after this court issued the order effectively denying arbitration, Swift informed its current contract drivers operating trucks under a lease agreement ("Lease Operators") via its on-board satellite communications system, Qualcomm, that they must sign a new ICOA by March 1, 2017, or be terminated.[1] The message indicated that the new agreement will be retroactively effective as of January 1, 2017, and that the new agreement "is not intended to change rates or compensation."[2] However, the message did not inform the Lease Operators as to what provisions were altered or what the new ICOA was intended to address. The message stated that Lease Operators can approve of and sign the new ICOA simply by replying to the message through the Qualcomm system.[3] It informed them that they can seek independent advice from counsel.[4] Swift thereafter continued sending Qualcomm

---

[1] Doc. 885-5.

[2] Doc. 885-5 at p. 3.

[3] Doc. 885-5 at p. 5.

[4] Doc. 885-5 at p. 6.

messages to Lease Operators requesting that Lease Operators sign the new ICOA before the March 1 deadline.[5]

The new ICOA is presented to the court as Exhibit A to Plaintiffs' motion.[6] It states that Lease Operators are independent contractors, and it is generally similar in this respect and others to the previous agreement that the court analyzed in its January order at docket 862. The pertinent difference is that the new ICOA contains two new provisions, inserted as paragraphs 16 and 17E, which set forth payment and indemnification obligations in the event of a "reclassification decision." Plaintiffs argue that these provisions "are having a profound chilling effect on the Lease Operators who are being required by Swift to sign the [ICOA]" because they could reasonably be read to limit damages and to make the Lease Operator liable for Swift's attorneys' fees if Plaintiffs ultimately fail to prevail on their claims in this case.[7] They assert that, prior to filing the motion, Defendants' counsel refused to disavow the applicability of the new provisions to the case at hand or clarify the scope and meaning of these provisions. Plaintiffs ask that the court take the following actions: (1) enjoin the application of paragraphs 16 and 17E of the new ICOA; (2) require Defendants to inform all lease operators, including those who have already signed the Agreement, that paragraphs 16 and 17E are not operative; (3) enjoin Defendants and their counsel from engaging in any further contacts with current opt-ins and putative class members regarding the

---

[5] Docs. 885-6 and 885-7.

[6] Doc. 885-2.

[7] Doc. 885 at p. 9.

matters raised in this suit, including communications that request or require Lease Operators to enter into agreements that may in any way impact the liability or damages issues that are currently pending before this court without first informing Plaintiffs' counsel and obtaining permission from the court.[8]

At oral argument, Defendants represented that the challenged provisions were not meant to intimidate Lease Operators or affect their rights in this case. While maintaining the position that paragraphs 16 and 17E are not misleading, Defendants nevertheless voluntarily offered to issue a clarifying communication to the recipients of the new ICOA. The court directed the parties to confer and to file any proposed notices with the court. Defendants and Plaintiffs were unable to agree on a proposed notice. Defendants filed their proposed notice and memorandum at docket 912, and Plaintiffs filed their proposed notice and memorandum at docket 914.

### III. LEGAL STANDARD

Plaintiffs structure their motion as one for an injunction, first as a temporary restraining order and then as a preliminary injunction. In setting an expedited briefing schedule and holding a hearing, the court effectively rejected Plaintiffs' request for an immediate restraining order. There was no reason provided to the court to enjoin Defendants without notice as provided for under Rule 65(b).

Both parties have now been heard, as Plaintiffs' request for an injunction has been fully briefed and argued. In a typical order addressing a request for a preliminary injunction, the court would apply the familiar four-factor test involving the movant's

---

[8]Doc. 885 at p. 21.

likelihood of success on the merits, the possibility of irreparable harm in the absence of preliminary relief, the balance of equities, and the public interest. Here, however, such an analysis makes little sense. There is nothing preliminary about Plaintiffs' request, because resolution of the underlying case will not resolve the questions put to the court in this motion. Thus, a finding that Plaintiffs are likely to succeed on the merits is meaningless in this situation.

Instead, the court finds its authority to address the dispute here in Rule 23(d) of the Federal Rules of Civil Procedure. Rule 23(d) provides that the court may issue orders that "require—to protect members and fairly conduct the action–giving appropriate notice to some or all class members of . . . any step in the action," "impose conditions on the representative parties," or "deal with similar procedural matters."[9] According to the Advisory Committee Notes, the provision is "concerned with the fair and efficient conduct of the action . . . ."[10]

As the Supreme Court has acknowledged, courts presiding over a class action have "both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."[11] The Ninth Circuit in *Wang v. Chinese Daily News, Inc.*,[12] explained that this duty and authority extends to control over certain communications with class members: "In the face of

---

[9]Fed. R. Civ. P. 23(d).

[10]Fed. R. Civ. P. 23(d) advisory committee's note to 1996 amendment.

[11]*Gulf Oil v. Bernard*, 452 U.S. 89, 100 (1981).

[12]623 F.3d 743 (9th Cir. 2010), *vacated on other grounds* by 565 U.S. 801, 132 S. Ct. 74 (2011).

coercive behavior by a party opposing a class, district courts may regulate communications with class members related to the notice and opt-out process."[13] The Wang court cited *Kleiner v. First National Bank of Atlanta*[14] with approval, noting that the Eleventh Circuit acknowledged that a trial court's power to manage a class action includes the power to prohibit unilateral communications with the class.[15] While *Wang* dealt with improper attempts to persuade employees to opt out of a class action suit, the district court's power also extends to any communication that "threatens the fairness of the litigation."[16] Communications that affect participation in the lawsuit are included in this category.[17]

> [A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23. In addition, such a weighing—identifying the potential abuses being addressed—should result

When exercising its authority to limit communications, however, the court must tailor its order to prevent potential interference with the rights of the parties.

---

[13]*Id.* at 755.

[14]751 F.2d 1193 (11th Cir. 1985).

[15]*Wang,* 623 F.3d at 755.

[16]*Id.* at 756.

[17]*Balasanyan v. Nordstrom, Inc.*, Case No. 11-cv-2609, 10-cv-2671, 2012 WL 760566, at * 3 (S.D. Cal. Mar. 8, 2012). Defendants' new assertion in its memorandum at docket 912, which was not supposed to be another opportunity to address the merits of the motion, that the ICOA is not a "communication" is without merit. *See O'Connor v. Uber Techs.,Inc.*, No. C-13-3826, 2013 WL 6407583, at *4 (N.D. Cal. Dec. 6, 2013) (discussing a new licensing agreement and rejecting the defendant's argument that the agreement was an ordinary business communication and not a class communication).

in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.[18]

"[A]n order limiting communications regarding ongoing litigation between a class and class opponents will satisfy first amendment concerns if it is grounded in good cause and issued with a 'heightened sensitivity' for first amendment concerns."[19]

## IV.  DISCUSSION

**Standing**

Defendants argue that there is no class action to manage given the class has not yet been certified and that the five named Plaintiffs do not otherwise have standing to challenge the new ICOA because they are no longer employed by Swift.  The court finds such an argument unavailing.  The named Plaintiffs certainly have an interest in what current drivers are being required to sign to the extent it affects this case. Plaintiffs are alleging that the challenged provisions in the new ICOA are misleading and confusing to current Lease Operators in that they suggest participation in this class action lawsuit could result in the Lease Operators having to pay damages and attorneys' fees.  Such a misunderstanding has the potential to undermine Plaintiffs' ability to obtain participation and cooperation from putative class members.  The court agrees that Plaintiffs have standing to protect the putative class.[20]  Indeed, the Supreme Court in *Gulf Oil* recognized that the lower courts' Rule 23(d) authority

---

[18] *Gulf Oil*, 452 U.S. at 101-02.

[19] *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1205 (11th Cir. 1985).

[20] *Cf. Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980) (holding that a plaintiff has standing to protect a putative class and may appeal the denial of class certification even if he has been offered all his damages).

extends to communications between counsel and "prospective class members."[21] Courts exercising their authority under Rule 23(d) have invalidated communications made by a defendant to putative class members before class certification.[22]

Moreover, as noted by Plaintiffs in their reply brief, "Swift's standing argument ignores the fact that [the] motion is made on behalf of all the parties in this case, including the opt-ins that currently drive for Swift and are clearly affected by being made to sign the new [ICOA]."[23] Opt-in plaintiffs are parties to this action unless the court finds that the parties are not similarly situated and declines to certify the class.[24] There are more than 650 opt-in plaintiffs, and certainly some have received the new agreement and have standing to seek the relief requested.

**Paragraphs 16 and 17E**

"Courts . . . have limited communications, as well as invalidated agreements that resulted from those communications, when they omitted critical information or were

---

[21] *Gulf Oil*, 452 U.S. at 99.

[22] *See Slavkov v. Fast Water Heater Partners I, LP*, No. 14-cv-04324, 2015 WL 6674575 (N.D. Cal. Nov. 2, 2015); *Balasanyan*, 2012 WL 760566 at * 2-4.

[23] Doc. 906 at p. 10.

[24] See 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *Wellens v. Daiichi Sankyo Inc.*, No. C-13-00581, 2014 WL 7385990, at *1 (N.D. Cal. Dec. 29, 2014) (recognizing that the individuals who opted in before the class was certified and the notices were sent were parties to the lawsuit); *Jaso v. Bulldog Connection Specialists LLC*, No. 2:15-cv-269, 2015 WL 11144603, at *3 (S.D. Tex. Oct. 15, 2015) (acknowledging that three opt-in plaintiffs joined the case prior to notice being issued).

otherwise misleading or coercive."[25]  Plaintiffs assert that both paragraph 16 and paragraph 17E are misleading and coercive because they are written so as to suggest that they will affect Lease Operators' damages in this case.

Paragraph 16 provides that "[i]f any of [Lease Operator's] workers is determined to be an employee of [Swift] . . . either party may, at its election, rescind this Agreement back to the time of its formation and both parties would then be returned to their respective positions before it was signed."  Paragraph 16C allows either party to terminate the agreement on one (1) day's notice in the event of a decision reclassifying the workers as employees of Swift.  In the event either party rescinds the ICOA, paragraph 16A then states that the Lease Operator will "owe [Swift], for the period of time this [ICOA] was in effect, all gross compensation . . . previously paid to [Lease Operator] by [Swift]" less any expenses the driver incurred in performance of the ICOA that were not paid for by Swift.  Swift then under 16B "will immediately owe the [Lease Operator] . . . the then-applicable "mean hourly wage" for Occupation Code 53-3032 in the Phoenix, Arizona metropolitan area, as published by the Bureau of Labor Statistics of the U.S. Department of Labor (or, if higher, the federal minimum hourly wage but only to the extent [Lease Operators's] wage-earning activities occurred in that state), multiplied by [Lease Operator's] total hours spent actually performing on-duty work for Swift, consisting of both driving and non-driving time, under any applicable hours-of-service regulations."

---

[25]*Slavkov v. Fast Water Heater Partners I, LP*, No. 14-cv-04324, 2015 WL 6674575, at *2 (N.D. Cal. Nov. 2, 2015).

-9-

This paragraph is misleading in that it suggests Swift may impose its own measure of damages in the event of a reclassification decision. Paragraph 16, Swift fairly suggests that, in the event of a reclassification, it will simply recapture mileage payments given to drivers and substitute hourly wages, but the FLSA is considered on a workweek by workweek basis and does not permit averaging of hours over two or more weeks as Swift proposes.[26] The FLSA provides the proper remedial mechanisms that cannot be changed by an agreement to use a different approach.[27] Paragraph 16 also suggests that Swift's approach of recapture and substitution will satisfy its FLSA obligations; that is not the case. The FLSA also entitles prevailing workers to liquidated damages and a worker may not waive the right to liquidated damages through private agreement.[28] Therefore, Paragraph 16 is misleading and confusing.

Paragraph 17 is entitled "Indemnification" and subparagraph E requires that the Lease Operator indemnify Swift for all reasonable attorneys' fees and litigation expenses that Swift may incur in defending against any claims "by any of [Lease Operator's] workers, or, at [Lease Operator's] instance or with [Lease Operator's] consent, by any union or other private organization or member of the public, alleging that any of [Lease Operator's] workers is an employee of Swift," but which suit is ultimately unsuccessful. This paragraph makes a Lease Operator liable for Swift's

---

[26]*See* 29 C.F.R. § 778.104.

[27]*Brooklyn Savings Bank v. O'Neill*, 324 U.S. 697 (1945).

[28]29 U.S.C. § 216 (b); *Brooklyn Savings Bank*, 324 U.S. at 713.

-10-

attorneys' fees in the event a suit seeking to have a worker treated as an employee is unsuccessful. Again, this is misleading to those considering participating in the class action, because the FLSA's fee-shifting provision refers only to a prevailing plaintiff.[29] A successful defendant is generally not entitled to attorneys' fees under the FLSA.[30]

Defendant's assertion that paragraph 16 of the new agreement only applies to persons employed by the Lease Operators (but not signing Lease Operators themselves) is belied by section 16C. Paragraph 16C states as follows: "[b]ecause reclassification of [Lease Operator] or any of its workers as an employee of [Swift] would fundamentally change the parties' assumptions and expectations, either party may, upon issuance of a Reclassification Decision, terminate this Agreement on 1 day's notice." It references the reclassification of the Lease Operator himself. Thus, paragraph 16 is fairly readable to include the opt-in plaintiffs and putative class members who are Lease Operators and not just subcontracting drivers the Lease Operators themselves may employ. Looking to 17E, the indemnification obligation applies to any action brought "by [Lease Operators'] workers" or "by any . . . member of

---

[29] 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

[30] *Richardson v. Alaska Airlines, Inc.*, 750 F.2d 763, 767 (9th Cir. 1984); *see also Coughlin v. Shimizu Am. Corp.*, 991 F. Supp. 1226, 1231 (D. Oregon 1998) ("Although [the defendant] cited a case in which a court approved of awarding attorneys fees to defendants prevailing in a FLSA action because the plaintiff acted in bad faith or vexatiously, . . . it is uncommon for prevailing defendants to be awarded attorney fees"); *cf. Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978) (holding that the Title VII statute awarding fees to the "prevailing party," nonetheless requires a prevailing defendant to show that the claim was "frivolous, unreasonable, or groundless").

the public" "with the [Lease Operator's] consent." Such language certainly could be read to include claims made by the Lease Operators themselves, especially given the language in paragraph 16C.

Read together paragraphs 16 and 17E have a coercive effect on potential class members who, after reading the agreement, have a well-founded fear that they may end up owing Swift money whether or not the case is ultimately resolved in their favor. Under paragraph 16, a Lease Operator could rightly fear that even if the Lease Operators prevail he could nonetheless end up owing Swift money if his mileage wages average more than minimum wages over the course of the agreement. Under Paragraph 17E, a Lease Operator may fear that he will owe Swift attorneys' fees and costs if the claims prove unsuccessful. The threat of owing money undoubtedly has a chilling effect on participation in the class action, particularly in the context of an employer-worker relationship such as here.[31] The coercive nature of the new provisions is only heightened by the fact that Swift's request for current Lease Operators to sign the new agreement by March 1, 2017, is explicitly tied to preservation of their jobs. "Set against the backdrop of the employer-employee relationship"[32] the deficiencies noted above—related to damage calculations and fee shifting—create confusion in current Lease Operators as to the risk involved with participation in the lawsuit, and therefore potentially interfere with the rights of the putative class.

---

[31] *See Slavkov*, 2015 WL 6674575, at *3.

[32] *Id.* at *6.

-12-

Defendants argue that Plaintiffs failed to provide specific evidence of a chilling effect. The court is not convinced that they need to do so for the court to exercise its authority under Rule 23(d) because the language is misleading and coercive on its face.[33]

Defendants' assertion that the new ICOA has no retroactive effect to prior agreements is also unavailing. The court agrees with the Plaintiffs that a Lease Operator reading the ICOA would certainly not understand the effect of the challenged provisions on the current class action. Moreover, "Swift's statement [that it has no retroactive effect] might mean that they intend that a driver who wins reclassification under the prior agreement will not owe Swift money ever under the terms of the new agreement. Or it might mean that Swift only purports to unilaterally remedy so much of a money judgment that impacts earnings on or after the date of the new agreement but not earnings or payment prior thereto."[34] Thus, their mere representation to the court about the provisions' effect on the Plaintiffs' or putative class members' claims does not cure the deficiency. As one district court noted, "[a]n employee who signs [a statement waiving the right to unpaid wages] does not necessarily understand such legal subtleties and may well believe that, having signed the statement, he is precluded from

---

[33]A Rule 23(d) order under *Gulf Oil* does not require a finding of actual misconduct but rather the key finding is whether there is "potential interference" with the rights of the parties in a class action. *Slavkov*, 2015 WL 6674575, at * 2 (citing *O'Connor v. Uber Techs., Inc.*, No. C-13-3826, 2013 WL 6407583, at * 4-5 (N.D. Cal. Dec. 6, 2013)).

[34]Doc. 906 at p. 12.

opting in to [the] litigation."[35]  Similarly, here, an employee who signs an agreement does not understand the legal subtleties that could affect how those provisions are applied after the resolution of this class action and may well believe that he now has to avoid participation in the case or risk financial harm.

**Remedy**

In light of the court's conclusion that paragraphs 16 and 17E mislead Lease Operators by suggesting an improper method of damage calculation and fee shifting that could lead to class members owing Swift money regardless of the outcome of this litigation, and given the employer-worker relationship between Swift and the Lease Operators signing the new ICOA, these two paragraphs create "potential interference" with the right of the putative class and require judicial intervention under Rule 23(d).[36] The proper judicial intervention here to prevent the potential chilling effect is an order that Defendant send out a corrective notice explaining that the payment obligations and indemnification provisions will not apply to the calculation of remedies and attorneys' fees that may be awarded in this case.  The court declines, however, to enjoin any future communications between Defendants and their Lease Operators at this time.  As noted above, any order limiting communications between parties and putative class members must be narrow and limit as little speech as possible.  Given that the new ICOA did not explicitly encourage putative class members to refrain from participation in

---

[35]*Zamboni v. Pepe W. 48th St. LLC*, No. 12-civ-3157, 2013 WL 978935, at *3 (S.D.N.Y. Mar. 12, 2013).

[36]*See Slavkov*, 2015 WL 6674575, at *6.

this litigation or specifically provide information about or refer to this class action, as is the situation in many of the cases applying Rule 23(d) authority, the court cannot find that the communications were so harmful or blatant that limits on future contact should be restricted.

Although Defendants disagree with the court's conclusion as to the misleading nature of the challenged provisions, they have nonetheless already agreed to submit a clarifying notice in an abundance of caution. At docket 912, Defendants propose the following notice:

> Dear Contractor: We understand there may be some confusion regarding interpretation of certain provisions of the new ICOA issued on January 9, 2017. We are sending this message to clarify several points. First, Paragraphs 16 and 17 of the new ICOA are not intended to interfere with or limit in any way your right to participate in ongoing court proceedings in existence prior to January 9, 2017. Swift will not retaliate against an Owner-Operator who chooses to participate in any ongoing court proceedings. Second, Paragraphs 16 and 17 do not have any retroactive effect on issues covered by any prior ICOA you may have signed. Third, Paragraphs 16 and 17 do not waive or limit any personal rights or remedies you may have under any state or federal wage payment statutes, including the Fair Labor Standards Act. Finally, the indemnification provision in Paragraph 17e does not require payment of attorneys' fees for actions regarding your personal rights under any state or federal wage payment statute. If you have additional questions regarding these points or any others, you are entitled to review the new ICOA with independent legal counsel if you desire.[37]

Plaintiffs assert that the proposed notice is insufficient.[38] They assert that Defendants' notice does not adequately identify the subject matter of the challenged

---

[37]Doc. 912.

[38]Doc. 914.

-15-

provisions and why they are causing confusion. "Drivers will only see the message from the Qualcomm in their tractors, divorced from the body of the contract and while many are en route to or from a delivery."[39] The court agrees with Plaintiffs' assessment that identifying the subject matter of the challenged provisions is prudent. It furthers the purpose behind the notice, which is to provide clarification.

Plaintiffs also argue that Defendants' proposed language does not unambiguously state that the new provisions will not affect the remedies in this case, even if putative class members have already signed the new agreements. The court agrees. The corrective notice needs to adequately explain this court's conclusion—that the payment and indemnification provisions do not govern how damages and attorneys' fees will be awarded to the parties in this case.

Plaintiffs also object to Defendants' improper insertion of the word "personal" in Defendants' discussion of the indemnification provision. As noted above, Defendants propose to inform drivers that paragraph 17E is inapplicable to actions affecting the drivers' "personal rights." For the reasons set forth in Plaintiffs' response at docket 914, the court agrees that the proposed language does not provide adequate clarification.

Lastly, Plaintiffs argue that it is proper to include their counsel's contact information in the corrective notice. Defendants assert that putting contact information in makes the corrective notice equivalent to a class certification notice even though the class has not yet been certified. The court agrees with Plaintiff. Simply telling drivers

---

[39]Doc. 914 at p. 2.

that they may get advice from counsel when the deadline for signing the new ICOA will be a day or two away is ineffective.  Given the circumstances in this case and the court's prior rulings, there is no compelling reason why Lease Operators who are uncertain about the notice cannot receive information that puts them in touch with knowledgeable counsel.

The notice that Plaintiffs propose at docket 914-1 more adequately corrects the deficiencies noted by this court.  The court has made some changes to that notice and the final approved notice is set forth in Exhibit A to this order.

## V.  CONCLUSION

Based on the preceding discussion, Plaintiffs' motion at docket 885 is GRANTED IN PART.  Plaintiffs' request that Defendants send a curative notice is granted. Defendants are directed to send via Qualcomm the notice attached as Exhibit A to this order to those drivers who have been instructed to sign Swift's new ICOA.  The Qualcomm message with the notice shall be sent on three consecutive days, starting February 27, 2017.  Defendants are also directed to send a copy of the notice via first class mail to those same drivers.

Plaintiffs' request to enjoin Defendants from engaging in future contact with putative class members regarding matters in this suit is denied as unnecessarily restrictive.

DATED this 24th day of February 2017.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

-17-

**EXHIBIT A**

IMPORTANT NOTICE TO ALL SWIFT CONTRACTORS REGARDING THE NEW ICOA

Dear Contractor:

We understand there may be some concern and confusion regarding interpretation of certain provisions of the new ICOA issued on January 9, 2017, and the effect of those provisions on your rights in ongoing legal proceedings, including the lawsuit currently pending in the United States District Court in Phoenix, Arizona, titled *Van Dusen v. Swift Transportation Company Inc.*  We are sending this message to clarify that the new ICOA will not interfere with your rights to participate or recover monetary relief in ongoing court proceedings in existence on January 9, 2017.  Specifically, two paragraphs of the new ICOA, Paragraph 16 ("The Parties' Obligations Upon Reclassification") and Paragraph 17(E) ("Indemnification" in relation to unsuccessful proceedings alleging employee status of "Contractor's workers"), will not apply with respect to any relief granted to the parties in the *Van Dusen* lawsuit.  This is true regardless of whether or not you have already signed the new ICOA.  Paragraphs 16 and 17(E) do not waive or limit any rights or remedies you may have under any state or federal wage payment laws and statutes, including the Fair Labor Standards Act.  The indemnification provision in Paragraph 17(E) will not require you to pay the Company's attorneys' fee or expenses for any claims you bring or which are brought on your behalf in the *Van Dusen* lawsuit.

*Swift will not retaliate against any Contractor who chooses to participate in any ongoing court proceedings.*

-1-

If you have any questions about these points or any others, you can consult with an attorney. The attorneys for the Plaintiffs in the Van Dusen case are:
DAN GETMAN, GETMAN, SWEENEY & DUNN, PLLC., (845) 255-9370,
DGETMAN@GETMANSWEENEY.COM

THIS MESSAGE HAS BEEN APPROVED BY THE COURT IN *VAN DUSEN*. THE COURT HAS NOT YET RULED AND TAKES NO POSITION ON THE MERITS OF PLAINTIFFS' CLAIMS FOR RELIEF.