**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **John Doe 1, *et al.*,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**Swift Transportation Co., Inc., *et al.*,**<br><br>**Defendants.** | **2:10-cv-00899 JWS**<br><br>**ORDER AND OPINION**<br><br>**[Re: Motions at 879, 883, and 884]** |

## I. MOTION PRESENTED

At docket 879, Defendants Swift Transportation Co., Inc. ("Swift"), Interstate Equipment Leasing, Inc. ("IEL"), Chad Killebrew, and Jerry Moyes (collectively, Defendants) filed a motion for stay pending appellate review of the court's January 6, 2017 order at docket 862. The five named plaintiffs in this suit ("Plaintiffs") respond at docket 899. Defendants reply at docket 902. Oral argument was heard on February 15, 2017.

Plaintiffs filed a renewed motion to conditionally certify a Fair Labor Standards Act collective action at docket 883. They filed a motion for class certification as to their state law claims and leave to amend the complaint at docket 884.

## II. BACKGROUND

The complete factual and procedural background of this case is set forth in the court's order at docket 862. Suffice it to say for purposes of the motion to stay, after a lengthy procedural history, the court ultimately ruled that Plaintiffs had contracts of employment, which effectively was a denial of Defendants' request to compel arbitration pursuant to Plaintiffs' contracts with Swift. Given the intractable issue plaguing this litigation about whether the court should only look at the contract terms or whether it should consider how the parties' relationships functioned in practice, the court's opinion made clear that under either approach, Plaintiffs operated under contracts of employment. Looking solely to the terms of the contracts between the Plaintiffs and Swift and the terms of the lease agreements between Plaintiffs and IEL, which the court concluded were necessarily part of Plaintiffs' overall agreements with Swift, the contracts were ones of employment. Evidence regarding how those terms operated in practice only strengthened the court's conclusion.

Defendants appealed the court's ruling and subsequently filed the motion to stay, requesting that the court stop all further litigation in this matter, including class certification issues, pending the Ninth Circuit's review of the court's decision.

## III. DISCUSSION

In the Ninth Circuit, unlike the Third, Fourth, Seventh, Tenth, and Eleventh Circuits, an appeal from a district court's denial of a motion to compel arbitration does not trigger an automatic stay.[1] Rather, the court may, after applying the traditional test for granting stays pending appeal, use its discretion to stay the litigation or proceed with matters not involved in the appeal. The basis for the Ninth Circuit's position is that, generally, appellate review of a collateral order does not deprive the district court of jurisdiction to proceed with matters not involved in the appeal and arbitrability is an issue easily severable from the merits of the underlying dispute. Here, however, the arbitration exemption issue is not easily severable from the underlying merits. Arbitrability is intertwined with Plaintiffs' underlying claim that Defendants violated employment laws by failing to pay them minimum wage. When the Ninth Circuit reviews this court's order at docket 862, it will necessarily review whether Plaintiffs had contracts of employment, which will require it to examine the terms of the contracts and decide whether the terms established an employment relationship. The appellate court could also potentially look at other evidence to see if, in practice, those terms were implemented in such a way as to create an employment relationship. Another basis for the appellate court's rule against automatic stays is that it prevents a defendant from "stall[ing] trial simply by bringing a frivolous motion to compel arbitration."[2] No such frivolous motion is presented here.

---

[1] *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1411-12 (9th Cir. 1990).

[2] *Id.* at 1412.

The court will apply the traditional test for granting a stay pending appeal. The test involves a balancing of four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies."[3] The first two factors are of critical importance.[4] The Ninth Circuit applies a continuum approach to balancing these two factors so that a stay is warranted where an applicant "'shows[s] either a probability of success on the merits and the possibility of irreparable injury, or that serious legal questions are raised and the balance of hardships tips sharply in [the applicant's] favor.'"[5]

**Success on the Merits**

Defendants assert that success on the merits is likely given the dissenting and concurring opinions in *In re Swift Transportation Co. Inc*.[6] In that case, while the panel ultimately denied mandamus relief from the court's scheduling and planning order, the dissenting and concurring judges indicated that the court should look only to the terms of the contract when determining the § 1 exemption issue. This court's subsequent opinion acknowledged the dissenting judge's view in its order and attempted to apply

---

[3]*Hilton v. Braunskill,* 481 U.S. 770, 776 (1987).

[4]*Nken v. Holder*, 556 U.S. 418, 434 (2009).

[5]*Leiva-Perez*, 640 F.3d 962, 964, 966 (9th Cir. 2011) (quoting and affirming the balancing approach in *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)).

[6]830 F.3d 913 (9th Cir. 2016).

the "categorical" approach she believed was warranted.[7] The court looked to the terms of the agreements between Plaintiffs and Swift to determine how those terms reflect on factors that define employment – control, payment, opportunity for profit and loss, autonomy, duration of relationship, and type of work.[8] It ruled, however, that the terms of the agreements between Plaintiffs and Swift necessarily include the IEL lease terms as well. Based on the language in both the contracts and the leases, the court concluded that Plaintiffs had employment contracts with Swift.[9] The court went on to discuss evidence reflecting on how the terms actually operated, but its ruling was not dependent on such outside evidence. Therefore, the court disagrees with Defendants' argument that their success on appeal is likely because the court failed to apply the proper procedure in its § 1 determination. It did limit its analysis to the terms of the contracts and nonetheless found in favor of Plaintiffs' position. To the extent Defendants believe that success is likely based on the merits of the court's conclusion, rather than the process it used in reaching that conclusion, they failed to present anything to cause the court to reconsider its ruling and find that it is likely to be overturned.

As noted above, however, Defendants could still satisfy the first factor by looking toward the other end of the continuum—where an applicant need only show that "serious legal questions" are raised in the appeal if the balance of harm tips *"sharply"* in

---

[7]Doc. 862 at pp. 9-10.

[8]Doc. 862 at p. 10.

[9]Doc. 862 at p. 22.

its favor. Here, while the court believes its conclusion is correct, it recognizes that the appeal presents serious legal questions as to how a court should properly determine whether a contract of employment existed. Indeed, the Ninth Circuit stated that the issue was one of first impression.[10] The dissent in *In re Swift* suggested that the court undertake a "categorical approach that focuses solely on the words of the contract and the definition of the relevant category."[11] In an attempt to properly apply this approach, the court ended up looking at how the terms reflect on typical indicators of employment and ended up concluding that the IEL lease terms should also be considered. While the court believes it applied the categorical approach correctly, given the lack of precedent on the issue, it nonetheless acknowledges that the appeal does raise serious legal questions as to the proper method for analyzing the contract terms.

**Balance of hardships**

Given that Defendants satisfied the first factor related to success based on the low end of the continuum—serious legal questions, rather than probability of success—Defendants consequently must show that the irreparable harm factor tilts sharply in its favor. The harm Defendants allege they will suffer is in the form of increased cost of litigation associated with defending a proposed class action and the loss of the benefits of arbitration.[12] Litigation costs generally do not qualify as

---

[10]*In re Swift*, 830 F.3d at 917.

[11]*Id.* at 920.

[12]Defendants quoted *Steiner v. Apple Comput., Inc.*, No. C 07-04486, 2008 WL 1925197, at *4-5 (N.D. Cal. Apr. 29, 2008) for the proposition that "almost every California district court to recently consider whether to stay a matter, pending appeal of an order denying a motion to compel arbitration, has issued a stay," but a subsequent case, *Mohamed v. Uber Techs.*, 115 F. Supp. 3d 1024, 1028 n.4 (N.D. Cal. 2015), clarified that such a proposition no

irreparable harm. However, in potential class actions, courts have found lost time and money to constitute irreparable harm depending on the circumstances.[13] In *Steiner v. Apple Computer, Inc.*, the district court found that absent a stay the defendant would not just face "standard costs and burden associated with consumer litigation" but would also bear costs associated with defending against a class certification, a potential appeal from any certification ruling, and "expensive and burdensome notification and certification procedures."[14] The court agrees with the *Steiner* court's assessment; if the court proceeds with the litigation only to have the Ninth Circuit reverse its decision on arbitrability, Defendants will have incurred substantial class action defense costs unnecessarily, which constitutes irreparable harm.

Plaintiffs argue that any costs associated with class certification would be similarly incurred in arbitration, but the arbitration provisions in the agreements between Swift and Plaintiffs expressly prohibit class claims, and the court ruled in 2010 that the waivers were valid.[15] Plaintiff argues that such waivers have subsequently been deemed invalid by *Morris v. Ernst & Young, LLP*,[16] which held that the National Labor

---

longer stands and that the California district courts both grant and deny such stays. Therefore, Defendants' assertion that it is basically routine to grant a stay after a denial of arbitration is not accurate.

[13] *See Steiner*, 2008 WL 1925197, at *4-5 (finding that the costs of potential class action constitute irreparable harm). *See also Rajagopalan v. Noteworld, LLC*, No. C11-5574, 2012 WL 2115482, at *3 (W.D. Wash., June 11, 2012) (noting that in putative class actions, the probable harm to defendants becomes much greater than in a typical motion to stay pending denial of arbitration).

[14] *Steiner*, 2008 WL 1925197, at *4-5.

[15] Doc. 223 at pp. 12-13.

[16] 834 F.3d 975 (9th Cir. 2016).

Relations Act (NLRA) precludes employees from waiving the right to arbitrate their disputes collectively. Application of the NLRA is not an issue in this case. The court in *Morris* explicitly found it unnecessary to address whether such a waiver violates the FLSA whose application is an issue in this case. Therefore, the court cannot conclude that the class arbitration waiver is unenforceable at this juncture.

The court also concludes that Defendants risk losing the efficiency associated with arbitration if the court were to continue with the litigation.

> If this case is allowed to proceed on the merits (e.g., to summary judgment or class certification) without a ruling from the Ninth Circuit on the appeal herein, and the Ninth Circuit ultimately reverses this Court and compels [plaintiff's] claim to arbitration, this Court's substantive rulings may be for naught, and the parties will have expended significant resources to obtain what, in all likelihood, would constitute non-binding advisory opinions. Alternatively, were any ruling on the merits by the Court to have some binding effect on the arbitration, [defendant] would lose the benefit or arbitration.[17]

Such a loss is irreparable harm to Defendants.

The primary harm suffered by Plaintiffs is delay. The case was filed more than seven years ago. After the Ninth Circuit reversed this court's initial order compelling arbitration based on the fact that the court, not an arbitrator, should decide the § 1 exemption issue, the court finally determined the arbitration issue this past January. The court concludes that a relatively short additional delay pending appeal is not of great consequence given the lengthy procedural history and specifically the delay resulting from the appellate court's questioning of this court's prior rulings on the issue of arbitrability. A stay while the court awaits the Ninth Circuit's final ruling on arbitrability

---

[17] *Mohamed v. Uber Techs.*, 115 F. Supp. 3d 1024, 1034 (N.D. Cal. 2015).

is prudent given the prior history here. Plaintiffs assert that more delay will only make discovery more difficult as memories dim and relevant witnesses disperse. However, Plaintiffs have already conducted significant discovery as to employment status in conjunction with the arbitrability issue under § 1 of the FAA and have already filed their motions for class certification with supporting materials. Furthermore, the proposed class is defined as those lease operators with agreements dating back to 2006.[18] Consequently, discovery necessarily will involve potentially stale or hard to locate material and witnesses regardless of the stay. Thus, the court concludes that the balance of hardships here weighs strongly in favor of Defendants.

**Public Interest**

A stay is also in the public's interest because it avoids potential waste of judicial time and resources. Moreover, in the absence of a stay, there is a chance the court will certify a class and the class would then be notified of the action. "Once certified, most class actions are resolved through settlement. But it is difficult to envision productive settlement negotiations in the shadow of the present appeal."[19] Moreover, if the Defendants prevail on appeal, any class would likely have to be decertified, requiring additional notices. Multiple, inconsistent notices would likely result in substantial confusion and wasted efforts.

---

[18] *See* doc. 108 at p. 2 defining the class as: "all truckers who lease a truck from IEL to drive for Swift during the three years preceding the filing of the initial complaint and up through the date of final judgment here . . . ." The initial complaint was filed in 2009.

[19] *Ontiveros v. Zamora*, No. CIV. S–08–567, 2013 WL1785891, at *6 (E.D. Cal. Apr. 25, 2013).

## IV. CONCLUSION

Based on the preceding discussion, Defendants' motion at docket 879 is GRANTED. This case is stayed pending appeal. Plaintiffs' motions at docket 883 and 884 are denied without prejudice to renewal if appropriate following conclusion of the appeal.

DATED this 24th day of February 2017.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT